**ORAL ARGUMENT REQUESTED**

No. 24-9004

In the

# United States Court of Appeals
## for the Tenth Circuit

LIBERTY GLOBAL, INC.,

*Petitioner-Appellant*,

v.

UNITED STATES,

*Respondent-Appellee.*

On Appeal from the United States Tax Court, No. 341-21,
Hon. Emin Toro, *Judge*

**PETITIONER-APPELLANT LIBERTY GLOBAL, INC.'S
OPENING BRIEF**

Shay Dvoretzky
Rajiv Madan
Christopher Bowers
Nathan Wacker
Parker Rider-Longmaid
Sylvia O. Tsakos
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
Telephone: 202-371-7000
parker.rider-longmaid@skadden.com

*Counsel for Petitioner-Appellant
Liberty Global, Inc.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................ vi

STATEMENT OF RELATED CASES ............................................... xiii

GLOSSARY ................................................................................... xiv

INTRODUCTION ............................................................................. 1

JURISDICTIONAL STATEMENT ....................................................... 8

STATEMENT OF THE ISSUE ........................................................... 8

PERTINENT STATUTES AND REGULATIONS ................................... 8

STATEMENT OF THE CASE ............................................................ 9

      A.    Legal background ................................................................ 9

            1.    The foreign tax credit regime seeks to mitigate the risk of double taxation by the United States and foreign countries by allowing domestic corporations to claim credits for foreign income taxes ........................... 10

            2.    The Tax Code and Treasury regulations provide rules for determining what is or will be deemed foreign-source income. .......................................... 14

            3.    I.R.C. § 904(f)'s OFL regime takes into account foreign income, taxes, and losses, and overrides other sourcing and gain-recognition rules in the Tax Code. ........................................................... 15

            4.    I.R.C. § 904(f)(3)(A) governs every transaction in which a taxpayer with an OFL account balance sells CFC stock, and is silent about how to treat gain and sourcing where the gain from the sale exceeds the OFL balance. ........................................................... 19

# TABLE OF CONTENTS
(continued)

Page

5. Given § 904(f)(3)(A)'s silence, Treasury promulgated regulations addressing the gain from and sourcing of dispositions of property when a taxpayer has an OFL account. ...............................................23

B. Factual and procedural background ...............................................27

1. LGI sells its interest in J:COM, a Japanese CFC, and reports the gain beyond the amount in its OFL account as foreign-source income. ......................................27

2. The IRS issues a notice of deficiency after initially agreeing to a tentative settlement.......................................29

3. LGI timely petitions the Tax Court to redetermine the deficiency, and the Tax Court subjects LGI to double taxation, holding that approximately $474 million of the gain from the J:COM sale is foreign-source income and the remaining gain is U.S.-source. ..................................................................................30

SUMMARY OF ARGUMENT ........................................................................32

STANDARD OF REVIEW ..............................................................................39

ARGUMENT....................................................................................................40

A. Section 904(f)(3) is silent about how to treat dispositions of property generating gain beyond the amount needed to recapture an OFL, authorizing Treasury to provide the answer. ................................................................................41

1. Section 904(f)(3) governs the treatment of dispositions of foreign trade or business property, including CFC stock, when the taxpayer has an OFL account.................................................................41

# TABLE OF CONTENTS
## (continued)

Page

2.   Section 904(f)(3) is silent about the treatment of transactions where the gain exceeds any OFL account balance, authorizing Treasury to provide the rule by regulation. ...........................................................43

B.   Under the OFL Sourcing Rule, gain from the disposition of property exceeding the amount needed to recapture an OFL account balance is treated as foreign-source income. ........44

1.   The OFL Sourcing Rule's plain text directs that, when a taxpayer with an OFL account balance disposes of covered property, all the gain is foreign-source. .......................................................................44

2.   Statutory and regulatory history likewise confirm that, when a taxpayer with an OFL account balance disposes of covered property, all the gain is treated as foreign-source income. ......................................................47

3.   Treating the income from a disposition as foreign-source aligns with the tax policy reflected in other Code provisions and avoids double taxation. ...................49

C.   Under I.R.C. § 904(f)(3) and the OFL Sourcing Rule, LGI's gain from the sale of J:COM stock—including the gain beyond the amount necessary to recapture LGI's OFL account—is treated as foreign-source income. ...........................51

D.   The Tax Court's reasoning and the government's arguments lack merit. ......................................................................52

1.   The Tax Court's reasoning ignores the OFL Sourcing Rule's plain text. ....................................................53

# TABLE OF CONTENTS
## (continued)

**Page**

2. Reading the OFL Sourcing Rule as treating all the gain as foreign-source is consistent with § 904(f)(3)(A), which applies "notwithstanding" other Code provisions. ...........................................54

3. The Tax Court wrongly suggested that § 1.904(f)-2(d)(1) doesn't apply to the sale of CFC stock. .................56

4. Contrary to the Tax Court's conclusion, context shows that the gain is treated as foreign-source. ..............57

5. The Tax Court's policy concerns can't override plain text, and they fail in any event. ............................................58

CONCLUSION ........................................................................................62

REQUEST FOR ORAL ARGUMENT....................................................62

CERTIFICATE OF COMPLIANCE ......................................................64

CERTIFICATE OF SERVICE ...............................................................65

ADDENDUM............................................................................... Add.1

Opinion, 161 T.C. No. 10,
 T.C. Doc. 38 (Nov. 8, 2023) .................................................. Add.1

Decision, T.C. Doc. 45 (Mar. 27, 2024)................................. Add.22

I.R.C. § 865
 (effective Dec. 17, 1999, to Dec. 21, 2017)......................... Add.24

I.R.C. § 901
 (effective Dec. 29, 2007, to Aug. 9, 2010) .......................... Add.28

I.R.C. § 904
 (effective Feb. 17, 2009)........................................................ Add.36

- iv -

## TABLE OF CONTENTS
(continued)

**Page**

26 C.F.R. § 1.904(f)-2
   (effective Aug. 25, 1987, to Dec. 21, 2007) ........................................ Add.58

26 C.F.R. § 1.904(f)-2
   (effective Dec. 21, 2007, to Mar. 22, 2010) ........................................ Add.66

26 C.F.R. § 1.904(f)-2 (current) ............................................................... Add.74

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bittner v. United States,*
  598 U.S. 85 (2023)...........................................................................54

*Burnet v. Chicago Portrait Co.,*
  285 U.S. 1 (1932)............................................................................11

*Cisneros v. Alpine Ridge Group,*
  508 U.S. 10 (1993)............................................................................4

*Cook v. Tait,*
  265 U.S. 47 (1924)..........................................................................10

*Crooks v. Harrelson,*
  282 U.S. 55 (1930)..........................................................................59

*Davis v. United States,*
  495 U.S. 472 (1990).........................................................................48

*Eateries, Inc. v. J.R. Simplot Co.,*
  346 F.3d 1225 (10th Cir. 2003) .........................................................51

*Energy West Mining Co. v. Lyle ex rel. Lyle,*
  929 F.3d 1202 (10th Cir. 2019) .........................................................47

*Gitlitz v. Commissioner,*
  531 U.S. 206 (2001)................................................................... 39, 58

*Gould v. Gould,*
  245 U.S. 151 (1917).........................................................................56

*Hassett v. Welch,*
  303 U.S. 303 (1938).........................................................................56

*Helvering v. R. J. Reynolds Tobacco Co.,*
  306 U.S. 110 (1939).........................................................................48

*Hershey Foods Corp. v. Commissioner,*
  76 T.C. 312 (1981)............................................................... 19, 20, 50

*In re Mallo,*
  774 F.3d 1313 (10th Cir. 2014) .........................................................58

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*King v. Burwell*,
   576 U.S. 473 (2015).................................................................45

*Kisor v. Wilkie*,
   588 U.S. 558 (2019).................................................................54

*Kitchen v. Herbert*,
   755 F.3d 1193 (10th Cir. 2014).............................................59

*Koshland v. Helvering*,
   298 U.S. 441 (1936).................................................................57

*Littlefield v. Mashpee Wampanoag Indian Tribe*,
   951 F.3d 30 (1st Cir. 2020)....................................................45

*Loper Bright Enterprises v. Raimondo*,
   144 S. Ct. 2244 (2024)............................. 34, 43, 44, 54, 56, 57

*Niz-Chavez v. Garland*,
   593 U.S. 155 (2021).................................................................53

*Robbins v. Chronister*,
   435 F.3d 1238 (10th Cir. 2006) (en banc)............................58

*Scanlon White, Inc. v. Commissioner*,
   472 F.3d 1173 (10th Cir. 2006) ...................................... 39, 40

*Theo H. Davies & Co. v. Commissioner*,
   75 T.C. 443 (1980)......................................................... 11, 12

*United States v. Dolan*,
   571 F.3d 1022 (10th Cir. 2009).............................................42

*United States v. Morgan*,
   922 F.2d 1495 (10th Cir. 1991) ...................................... 39, 58

*Weyerhaeuser Co. v. United States*,
   395 F.2d 1005 (Ct. Cl. 1968) .................................................47

*Woods Investment Co. v. Commissioner*,
   85 T.C. 274 (1985)..................................................................62

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

**STATUTES**

I.R.C. § 61 ..................................................................................10

I.R.C. § 63 ................................................................................3, 16

I.R.C. § 78 ..................................................................................60

I.R.C. § 165(a) ...........................................................................15

I.R.C. § 351 ................................................................................21

I.R.C. § 368 ................................................................................21

I.R.C. § 861 ..................................................................... 2, 3, 10, 14

   I.R.C. § 861(a)(6) .................................................................23

I.R.C. § 862 ..................................................................... 2, 3, 10, 14

   I.R.C. § 862(a)(6) (1976) ......................................................23

I.R.C. § 863 ..................................................................... 2, 3, 10, 14

I.R.C. § 864 ................................................................................14

I.R.C. § 865 ..................................................................... 2, 3, 10, 14,

................................................................. 15, 21, 22, 23 31

   I.R.C. § 865(a) ............................................................ 14, 15, 49

   I.R.C. § 865(a) (1986) ..........................................................23

   I.R.C. § 865(e)(1) ..................................................................15

   I.R.C. § 865(f) ......................................................................36

   I.R.C. § 865(f)(1) .................................................. 15, 49, 50, 59

I.R.C. § 884(f)(1) .......................................................................14

I.R.C. § 901 .................................................................... 8, 28, 29

   I.R.C. § 901(b)(1) ............................................................ 2, 10, 11

I.R.C. § 902 ................................................................. 11, 28, 29, 60

I.R.C. § 904 ................................................................................29

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

I.R.C. § 904(a) ........................................................................ 3, 11, 51

I.R.C. § 904(d) ............................................................................ 13, 14

I.R.C. § 904(d)(1) ...............................................................................13

I.R.C. § 904(f) ............................................. 4, 9, 15, 16, 18, 35

I.R.C. § 904(f)(1) ............................................. 4, 5, 17, 18,
................................................................................... 19, 20, 21, 36,
................................................................ 41, 42, 45, 46, 50, 51

I.R.C. § 904(f)(2) .......................................................... 4, 16, 17

I.R.C. § 904(f)(3) ..................................................... 8, 19, 23, 24, 25,
.......................................................... 26, 34, 35, 36, 37, 38,
.......................................................... 39, 40, 41, 42, 43, 44, 45,
.......................................... 46, 47, 48, 51, 52, 54, 57, 58, 59

I.R.C. § 904(f)(3)(A) ......................................... 4, 5, 6, 19, 21,
.......................................................... 22, 23, 27, 31, 32,
.......................................................... 33, 35, 37, 38, 39, 50,
.......................................................... 51, 52, 53, 54, 55, 56, 62

I.R.C. § 904(f)(3)(A)(i) ......................................... 4, 5, 6, 7,
.......................................................... 18, 19, 20, 21,
.......................................................... 22, 23, 33, 36, 41,
.......................................................... 42, 43, 44, 51, 55, 56

I.R.C. § 904(f)(3)(B)(i) ...............................................................19

I.R.C. § 904(f)(3)(D) ......................................... 4, 19, 25, 26,
.......................................................... 33, 36, 47, 50, 51, 56

I.R.C. § 904(f)(3)(D)(i) .......................................................... 38, 56

I.R.C. § 904(h) ...............................................................................14

I.R.C. § 957(a) .......................................................... 1, 14, 27

I.R.C. § 960 ...............................................................................11

I.R.C. § 1001 .......................................................... 25, 31

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

I.R.C. § 1248 ................................................................ 28, 31, 60

I.R.C. § 6213 .......................................................................8

I.R.C. § 6405(a) ...............................................................29

I.R.C. § 7442 .......................................................................8

I.R.C. § 7482(a)(1) (2024) ........................................ 8, 39, 40

I.R.C. § 7483 (2024) ...........................................................8

I.R.C. § 7805(a) .......................................... 7, 23, 24, 34, 43, 44

I.R.C. § 1366(a)(1)(A) ......................................................58

Tax Reform Act of 1976, Pub. L. No. 94-455,
    § 1032(a), 90 Stat. 1520, 1624-25 ...............................4, 16

American Jobs Creation Act of 2004, Pub. L. No. 108-357,
    § 895, 118 Stat. 1418, 1647-48 ........................... 19, 25, 26

**REGULATIONS**

26 C.F.R. § 1.1248-1 *et seq.* .............................................28

26 C.F.R. § 1.861-1 *et seq.* ..............................................14

26 C.F.R. § 1.861-8 *et seq.* ..............................................16

26 C.F.R. § 1.904(f)-1(b) .................................................18

26 C.F.R. § 1.904(f)-2(a) ............................... 20, 21, 24, 45, 46

26 C.F.R. § 1.904(f)-2(b) ................................................ 45, 46

26 C.F.R. § 1.904(f)-2(c) ............................................ 18, 45, 46

26 C.F.R. § 1.904(f)-2(d) ........................................ 24, 26, 47, 51

    26 C.F.R. § 1.904(f)-2(d) (2014) .................................26

    26 C.F.R. § 1.904(f)-2(d)(1) ............................ 8, 24, 25, 34, 35,
    ................................................................ 37, 38, 40, 44, 45, 46,
    ................................................................ 52, 53, 54, 55, 56, 57, 58, 61

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

26 C.F.R. § 1.904(f)-2(d)(1)(i) ............................................................. 24, 34, 35,
................................................................................ 37, 44, 45, 48, 53

26 C.F.R. § 1.904(f)-2(d)(1)(ii) ...................................................... 5, 6, 7, 9, 23,
................................................................................ 24, 26, 30, 31, 32,
................................................................................ 33, 34, 35, 37, 38, 39,
................................................................... 41, 44, 45, 48, 51, 53, 54, 57

26 C.F.R. § 1.904(f)-2(d)(1)(iii) .............................................. 24, 34, 35, 44, 45

26 C.F.R. § 1.904(f)-2(d)(2) ............................................................... 24, 25

26 C.F.R. § 1.904(f)-2(d)(3) ............................................................ 24, 25, 38,
................................................................................ 39, 45, 46, 47

26 C.F.R. § 1.904(f)-2(d)(3)(ii) (2014) ...................................................... 26, 27

26 C.F.R. § 1.904(f)-2(d)(4) ............................................................... 24, 25

26 C.F.R. § 1.904(f)-2(d)(7), Example 1 ....................................................... 25

26 C.F.R. § 1.904(f)-2(e) (2014) ............................................................... 49

26 C.F.R. § 1.904-4 ....................................................................... 13, 14

*Income Tax; Recapture of Overall Foreign Losses,*
51 Fed. Reg. 3,193 (Jan. 24, 1986) .......................................................... 23

*Income Taxes; Recapture of Overall Foreign Losses,*
52 Fed. Reg. 31,992 (Aug. 25, 1987) ...................................................... 23, 24

*Treatment of Overall Foreign and Domestic Losses,*
72 Fed. Reg. 72,592 (Dec. 21, 2007) ......................................................... 26

*Treatment of Overall Foreign and Domestic Losses,*
77 Fed. Reg. 37,576 (June 22, 2012) ...................................................... 26, 54, 62

**OTHER AUTHORITIES**

IRS National Office Field Service Advice Memorandum
No. 200041004 (Oct. 13, 2000),
https://www.irs.gov/pub/irs-wd/0041004.pdf. ............................... 20, 50

**TABLE OF AUTHORITIES**

(continued)

**Page(s)**

Kuntz & Peroni,
   *U.S. International Taxation* (Mar. 2024). .................................................. 10, 16

Liberty Global, Inc., Ex. 99.1 to Current Report (Form 8-K),
   (Jan. 25, 2010), https://www.sec.gov/Archives/
   edgar/data/1316631/ 000110465910002646/
   a10-2362_1ex99d1.htm.............................................................................. 27, 28

Staff on Joint Committee on Taxation, 100th Cong., 1st Sess.,
   *General Explanation of the Tax Reform Act of 1986*
   (J. Comm. Print, 1987).......................................................................15

## STATEMENT OF RELATED CASES

Petitioner-Appellant Liberty Global, Inc., is unaware of any prior or related appeals that must be identified under Tenth Circuit Rule 28.2(C)(3).

## GLOSSARY

| | |
|---|---|
| App. | Appellant's Appendix |
| Add. | Addendum bound with this brief |
| CFC | Controlled foreign corporation, as defined in I.R.C. § 957(a) |
| Commissioner | Commissioner of the Internal Revenue Service |
| I.R.C. | Internal Revenue Code (*i.e.,* Title 26 of the U.S. Code). Unless otherwise indicated, all section references and citations are to the Code provisions in effect for LGI's 2010 tax year—the tax year at issue. |
| IRS | Internal Revenue Service |
| J:COM | Jupiter Telecommunications Co. Ltd., a Japanese former CFC of LGI's |
| LGI | Liberty Global, Inc., a U.S. corporation and subsidiary of Liberty Global plc |
| Liberty Global plc | A U.K. corporation and ultimate owner of LGI and its affiliates |
| OFL | Overall foreign loss |
| Tax Code or Code | Title 26 of the U.S. Code—the Internal Revenue Code |
| Treasury regulations | Title 26 of the Code of Federal Regulations. Unless otherwise indicated, all section references and citations are to the regulations in effect for LGI's 2010 tax year—the tax year at issue. |

## INTRODUCTION

This case is about whether Liberty Global, Inc. (LGI), can claim foreign tax credits from selling its Japanese business to avoid double taxation from the United States and Japan—when it has already paid Japan hundreds of millions of dollars in taxes. The Tax Code and the regulations the Treasury Department promulgated to fill up statutory silence provide the answer: yes.

LGI and its affiliates operated broadband and communications businesses in Japan through a Japanese entity, Jupiter Telecommunications Co. Ltd. (J:COM). J:COM was a controlled foreign corporation (CFC)—a foreign corporation majority-owned or -controlled by U.S. shareholders, I.R.C. § 957(a)—because LGI owned a majority of its voting stock. In 2010, LGI decided to leave the Japanese market to focus on other markets and business initiatives. So LGI sold its J:COM stock for billions of dollars reflecting the present value of J:COM's future business income. By the time of that sale, J:COM had paid Japan about $248 million in taxes on LGI's share of its foreign earnings.

When LGI sold its J:COM stock, LGI sought to credit those Japanese taxes against the U.S. tax imposed on the resulting income under the Tax Code's "foreign tax credit" regime. The regime is designed to avoid

- 1 -

situations, like this one, in which a taxpayer would otherwise be subject to double taxation from the United States and a foreign government. Understanding why LGI is entitled to claim foreign tax credits requires some background on the foreign tax credit regime.

1.     Many U.S. corporations, like LGI, do business overseas. The United States historically has taxed the worldwide income of U.S. corporations, including income derived outside the United States—*i.e.*, foreign-source income. But other countries *also* tax income earned in their jurisdictions. So absent some credit mechanism, there's a risk that a U.S. corporation will be taxed twice on its foreign income.

Congress sought to mitigate that risk over a century ago by establishing foreign tax credits. Under that regime, a U.S. corporation can claim a tax credit for "the amount of any income, war profits, and excess profits taxes paid or accrued during the taxable year to any foreign country or to any possession of the United States." I.R.C. § 901(b)(1). The regime was designed to alleviate the risk of double taxation and facilitate companies' ability to engage in business overseas unimpeded by that risk.

An important factor in determining how much foreign tax credits a taxpayer can claim is how much foreign-source income it has. All income is

either U.S.-source or foreign-source, and the Tax Code has rules for determining which bucket income falls into. *See, e.g.*, I.R.C. §§ 861–863, 865. Generally, the more foreign-source income a taxpayer has, the more foreign tax credits it can claim. The Tax Code also limits the amount of credits a U.S. corporation can claim for foreign income taxes it has paid on foreign-source income. Generally, taxpayers cannot claim a foreign income tax credit in an amount that is greater than the amount of U.S. tax imposed on the taxpayer's net foreign-source taxable income. *See* I.R.C. § 904(a). After all, if the United States was only going to collect, say, $35 in tax, the taxpayer couldn't claim credits for $40 worth of taxes paid to foreign governments.

Taxpayers also often can claim deductions for net foreign *losses*. Those losses can reduce the taxpayer's taxable income in the United States because the corporation can offset its U.S.-source income with losses sustained overseas. *See generally* I.R.C. § 63. Sometimes, however, a taxpayer sustains foreign losses, but in later years, earns foreign income making up for those losses. Over several years, a taxpayer could receive a benefit from sustaining foreign losses (by being able to claim deductions) that it later makes up with foreign earnings that could allow it to claim foreign tax credits.

To address this issue, Congress enacted I.R.C. § 904(f) in 1976. Tax Reform Act of 1976, Pub. L. No. 94-455, § 1032(a), 90 Stat. 1520, 1624-25. Section 904(f) contains a specific sourcing rule for transactions in which a taxpayer has an "overall foreign loss" (OFL). An OFL arises when a taxpayer's foreign-source deductions exceed its foreign-source income, producing a net deduction in the United States as described above. *See* I.R.C. § 904(f)(2). Under § 904(f)(1), when a taxpayer "sustains an [OFL] for any taxable year," some or all "of the taxpayer's taxable income from sources without the United States for each succeeding year … shall be treated as income from sources within the United States (and not as income from sources without the United States)." In that way, taxpayers must "recapture"—or recharacterize—some or all of their later net positive foreign-source income as U.S.-source income to counterbalance the previously deducted foreign loss.

Section 904(f)(3)(A), in turn, provides a specific rule for transactions in which a taxpayer with an OFL disposes of "property … used predominantly outside the United States," including CFC stock, I.R.C. § 904(f)(3)(D). The rule gives the government a last chance to recapture an OFL—*i.e.*, to tax income to offset earlier foreign-source deductions—before the property leaves the taxpayer's hands. Specifically, under § 904(f)(3)(A)(i), "the taxpayer,

- 4 -

notwithstanding any other provision of this chapter (other than paragraph (1) [which sets out the general recapture rule])" is treated as receiving and recognizing taxable foreign-source income "in the taxable year of the disposition," *and* is treated as receiving foreign-source income, all "in an amount equal to the lesser of" the net gain "or the remaining amount of the overall foreign losses" from prior years. Section 904(f)(3)(A) thus provides an express rule for transactions in which a taxpayer disposes of property, and the resulting income is *less* than or equal to the OFL balance.

But although § 904(f)(3)(A) addresses CFC sales "notwithstanding any other provision," displacing other Tax Code provisions that might otherwise apply, it doesn't specify how to treat income beyond the amount necessary to recapture an OFL. To fill that silence and provide answers, Treasury has long exercised the discretionary rulemaking authority Congress granted it. Under the applicable version of 26 C.F.R. § 1.904(f)-2(d)(1)(ii) — the OFL Sourcing Rule — *all* the gain from a covered disposition is treated as foreign-source. And treating that gain as foreign-source means that a taxpayer can claim foreign tax credits after its OFL is recaptured. That was Treasury's rule for more than two decades, until it rewrote the regulations in 2012 to cap the

amount of gain treated as foreign-source income at the amount necessary to recapture an OFL.

2.    Now back to the J:COM sale. When LGI sold its interest in J:COM, it had an OFL balance. The transaction resulted in income, however, that exceeded that balance. So when LGI filed its 2010 tax return, it claimed foreign tax credits, because under § 904(f)(3)(A) and the OFL Sourcing Rule, all the gain from the sale is considered foreign-source. The IRS disagreed and sought additional taxes. Siding with the IRS, the Tax Court held that the gain beyond the amount necessary to recapture LGI's OFL wasn't foreign-source, so LGI couldn't claim foreign tax credits.

3.    That was error. It is undisputed that § 904(f)(3)(A)(i) applies to the J:COM sale. The only question is how to treat a transaction, like that sale, that results in gain beyond the amount necessary to recapture an OFL balance. The statute is silent on that question, but the regulations answer it: the gain is foreign-source.

To explain: § 904(f)(3)(A)(i) governs *every* transaction in which a taxpayer with an OFL disposes of CFC stock, "notwithstanding any other provision" of the Tax Code (as relevant here) that might say otherwise. The statute provides the express rule when the taxpayer receives income in the

amount of its OFL balance or less: the taxpayer must recognize the gain and treat it as foreign-source.

But although § 904(f)(3)(A)(i) applies to every disposition of a CFC by a taxpayer with an OFL account, the statute is silent as to the question in this case: how to treat a disposition that results in gain *beyond* what is necessary to recapture an OFL balance. Even so, the provision continues to apply "notwithstanding any other provision," creating a silence Congress authorized Treasury to fill with regulations. *See* I.R.C. § 7805(a). And the OFL Sourcing Rule Treasury promulgated provides the answer, "notwithstanding" other Code provisions. The plain text of the applicable version of § 1.904(f)-2(d)(1)(ii) directs that, when a taxpayer with an OFL balance disposes of covered property, *all* the gain is treated as foreign-source income. Statutory and regulatory history and policy support that reading, too.

Here, that means that all the gain from the J:COM sale is foreign-source, entitling LGI to foreign tax credits. The Tax Court's contrary conclusion and the IRS's arguments ignore the plain text of the regulation and are meritless. The Court should reverse.

## JURISDICTIONAL STATEMENT

The Tax Court had jurisdiction under I.R.C. §§ 6213 and 7442. On October 30, 2020, the IRS issued a notice of deficiency to LGI for the 2010 tax year and the tax year ending December 31, 2014. App.25, App.40. On January 26, 2021, within 90 days, LGI petitioned for a redetermination of the alleged deficiency. App.10.

This Court has jurisdiction under I.R.C. §§ 7482(a)(1) (2024) and 7483 (2024). On March 27, 2024, the Tax Court entered its decision disposing of all claims. Add.22. On June 21, 2024, within 90 days, LGI timely appealed. App.348.

## STATEMENT OF THE ISSUE

Whether LGI is entitled to a foreign tax credit under I.R.C. § 901 because all income recognized from the sale of its stock in a CFC is foreign-source income under I.R.C. § 904(f)(3) and 26 C.F.R. § 1.904(f)-2(d)(1).

## PERTINENT STATUTES AND REGULATIONS

The addendum reproduces pertinent authorities. Add.22-82.

## STATEMENT OF THE CASE

### A.     Legal background

This case is about whether LGI's gain from the sale of its Japanese business, J:COM, should be considered foreign-source income or U.S.-source income. If (intuitively) the gain is foreign-source, then it counts towards LGI's foreign tax credit limit, allowing LGI to take credits for taxes it paid to Japan. But if (counterintuitively) the Japanese sale is deemed U.S.-source, it won't count towards LGI's foreign tax credit limit, resulting in double taxation by the Japanese and U.S. governments.

The Tax Code's OFL regime, set out in § 904(f), governs that question. The OFL regime tracks a taxpayer's foreign losses and earnings over the years in an effort to determine the amount of foreign tax credits the taxpayer should be allowed to claim. Understanding the foreign tax credit regime and its interplay with the OFL framework requires an overview of § 904(f) and its implementing regulations, including the then-applicable, pre-2012 version of the OFL Sourcing Rule (26 C.F.R. § 1.904(f)-2(d)(1)(ii)).

1.    **The foreign tax credit regime seeks to mitigate the risk of double taxation by the United States and foreign countries by allowing domestic corporations to claim credits for foreign income taxes.**

The United States historically has taxed the worldwide income of U.S. corporations, no matter where that income is earned. Kuntz & Peroni, *U.S. International Taxation* § B1.03[1], at *1 (Mar. 2024); *see Cook v. Tait*, 265 U.S. 47, 56 (1924); I.R.C. § 61. That means the government typically taxes both income derived from sources within the United States—that is, U.S.-source income—and income derived from sources outside the United States—that is, foreign-source income. All income is either U.S.-source or foreign-source, and the Tax Code has rules for determining whether income is U.S.-source or foreign-source. *Infra* pp. 14-26; *see, e.g.*, I.R.C. §§ 861-863, 865.

Because the United States taxes domestic corporations' foreign-source income, there's a risk that domestic corporations will be subject to double taxation, paying taxes on the same income to the United States *and* the foreign country where the income was earned. To address that concern, Congress enacted the foreign tax credit regime in 1918. Kuntz & Peroni, *supra*, § B4.01, at *1. Under that regime, a U.S. corporation can claim a tax credit for "the amount of any income, war profits, and excess profits taxes paid or

accrued during the taxable year to any foreign country." I.R.C. § 901(b)(1).

The corporation also can claim a credit for taxes that it is deemed to have

paid or accrued with respect to income earned by affiliated foreign corpora-

tions. I.R.C. §§ 902, 960. The "primary design of the [foreign tax credit] was

to mitigate the evil of double taxation." *Burnet v. Chicago Portrait Co.*, 285 U.S.

1, 7 (1932). The idea was that allowing investors to claim a credit for foreign

taxes paid would enable them to conduct business overseas without the risk

that double taxation would steer their business decisions. *Id.* at 9.

There are limits, however, on the amount of credits that a domestic

corporation can claim for foreign income taxes it has paid. Generally, tax-

payers cannot claim a foreign income tax credit in an amount greater than

the amount of U.S. tax imposed on the taxpayer's net foreign-source taxable

income. Specifically, I.R.C. § 904(a) provides that the "total amount of the

[foreign tax credit] shall not exceed the same proportion of the tax against

which such credit is taken which the taxpayer's taxable income from sources

without the United States (but not in excess of the taxpayer's entire taxable

income) bears to his entire taxable income for the same taxable year." The

provision can be expressed as an equation, where the U.S. tentative tax is the

tax against which the credit is taken:

$$\text{Maximum foreign tax credit} = \frac{\text{net foreign source income}}{\text{worldwide taxable income}} \bullet \text{U. S. tentative tax}$$

*Theo H. Davies & Co. v. Commissioner*, 75 T.C. 443, 444-45 (1980). This equation can be expressed in an even simpler form, because the U.S. tax rate equals the U.S. tentative tax divided by worldwide taxable income:

Maximum foreign tax credit = net foreign-source income • U.S. tax rate

To see how the limitation works, suppose that the applicable U.S. tax rate is 35%, and the applicable foreign tax rate is 40%. If a corporation earns $100 of net foreign-source income, it can claim only $35 in foreign tax credits (foreign-source income • 35% U.S. tax rate), even though it paid $40 in taxes to the foreign government. After all, $35 is the most the U.S. government would have collected on the $100 of net taxable income.

As these equations show, the amount of taxable foreign-source income plays a major role in calculating the foreign tax credit limit. The more foreign-source income a domestic corporation has, the higher its foreign tax credit limit—meaning the more foreign taxes it can claim as credits to offset it U.S. income tax.

Take another example. Suppose a domestic corporation earns $100 of net foreign-source income and pays foreign tax of $30. At a 35% tax rate, the

foreign tax credit limit would be $35. The corporation could credit all $30 of the foreign taxes it paid toward its U.S. tax and would owe an additional $5 of U.S. tax ($35 U.S. tax on $100 of income, minus the $30 foreign tax credit). But if the $100 of net taxable income were considered U.S.-source income (despite being earned abroad), the corporation couldn't claim any foreign tax credit ($0 • 35% = 0). The corporation would thus pay tax at the combined foreign rate on foreign earnings *and* the U.S. rate—in this example, $30 of foreign tax and $35 of U.S. tax, for a total tax bill of $65 on $100 of net taxable income. The corporation would suffer double taxation.

Rather than imposing one uniform foreign tax credit limit for all types of foreign income, the Tax Code establishes several categories, or "baskets," of income, each with a different foreign tax credit limit. I.R.C. § 904(d). For example, there are separate limitations depending on whether income is categorized as "general" business income or "passive" income. I.R.C. § 904(d)(1). Any foreign taxes paid on income described in one basket is creditable up to the U.S. tax rate times the aggregate taxable income in that basket. Under this framework, foreign taxes aren't traced to specific foreign income. Instead, the limitation for a particular basket is based on the aggregate foreign-source income in the basket and the aggregate foreign taxes that

relate to that type of foreign source income. I.R.C. § 904(d); *see also* 26 C.F.R. § 1.904-4.

> ### 2. The Tax Code and Treasury regulations provide rules for determining what is or will be deemed foreign-source income.

As discussed, a taxpayer must have net foreign-source income to claim foreign tax credits. The Tax Code and Treasury regulations provide rules for determining what is or will be deemed foreign-source income. For example, §§ 861 through 865 provide general rules for determining when income is U.S.-source and when it is foreign-source. The Code also has other more reticulated sourcing rules for specific contexts. For example, under I.R.C. § 884(f)(1), interest paid by a foreign corporation engaged in a U.S. trade or business is treated as U.S.-source income. And § 904(h) establishes a set of rules governing sourcing for U.S.-owned foreign corporations. Treasury has issued regulations under many of these Code provisions, further detailing how to source particular types of income. *See* 26 C.F.R. § 1.861-1 *et seq.*

This case involves a U.S. corporation's sale of stock in a controlled foreign corporation, or CFC, which is a foreign corporation that is majority-owned or -controlled by U.S. shareholders. I.R.C. § 957(a). The sourcing rules for gains from such sales typically are found in § 865. In general, when a

taxpayer realizes gain from the sale of stock, § 865(a) provides that the gain is sourced by reference to the seller's residence. (This rule doesn't usually result in double taxation because the foreign country often doesn't tax a U.S. seller on gains from its stock sale.) So a U.S. corporation's income from the sale would typically be U.S.-source, and thus ineligible for the foreign tax credit. But § 865 includes exceptions when the property has a close nexus to a foreign country. *See* Staff of Joint Committee on Taxation, 100th Cong., 1st Sess., *General Explanation of the Tax Reform Act of 1986*, 919-22 (J. Comm. Print, 1987). Most importantly, gain from the sale of foreign affiliate stock that "occurs in a foreign country in which such affiliate is engaged in the active conduct of a trade or business" is treated as foreign-source. I.R.C. § 865(f)(1). And § 865(e)(1) provides that a sale of stock, business, or other personal property through an office or other fixed place of business in a foreign country that is subject to at least a 10-percent foreign tax is treated as foreign-source income.

> **3.      I.R.C. § 904(f)'s OFL regime takes into account foreign income, taxes, and losses, and overrides other sourcing and gain-recognition rules in the Tax Code.**

A basic federal income tax rule is that corporations typically can deduct losses from their tax bill. *See* I.R.C. § 165(a). As discussed above, the Tax

Code divvies up taxpayer income into net foreign-source taxable income and net U.S.-source taxable income to determine the amount of foreign tax credit a taxpayer can claim. The more foreign-source income the corporation has, the more foreign tax credit it can claim, allowing the corporation to avoid double taxation. The Code also has special rules to allocate and apportion deductions to determine net foreign-source taxable income and net U.S.-source taxable income. 26 C.F.R. § 1.861-8 *et seq.;* Kuntz & Peroni § A2.05[2], at *2-3. Apportioned deductions can exceed foreign-source income and create net foreign losses. Net foreign losses generally may reduce the corporation's taxable income in the United States because the corporation can offset its U.S.-source income with losses sustained overseas. *See generally* I.R.C. § 63. For example, a U.S. corporation may earn $100 of net U.S.-source taxable income but suffer a $45 net foreign-source loss on its operations abroad. In that situation, the corporation need only pay tax on $55 of total worldwide income.

Enacted in 1976, § 904(f) is part of the foreign tax credit regime and contains a specific sourcing rule for circumstances in which a taxpayer has an OFL. *See* Tax Reform Act of 1976, § 1032(a), 90 Stat. 1624-25. An OFL is generally defined as "the amount by which the gross income for the taxable

year from sources without the United States … for such year is exceeded by the sum of the deductions" (*i.e.*, allocable foreign-source deductions exceeding foreign-source income). I.R.C. § 904(f)(2). Thus, in the example above, the taxpayer would have an OFL of $45.

In some instances, a taxpayer might sustain losses overseas that offset its U.S.-source income and then later *earn* foreign-source income. That raises an issue when considering multiple years. For example, a taxpayer could have a $100 foreign loss in Year 1 and be able to claim a $100 deduction. The same taxpayer could then earn $100 of foreign-source income in Year 2. The taxpayer would then say that the foreign-source income allows it to claim a foreign tax credit in Year 2, even though the taxpayer realized no net foreign-source income across the two years ($100 loss offset by $100 of income).

Congress addressed that situation by requiring the taxpayer to "recapture"—or recharacterize—some or all of its later net positive foreign-source income as U.S.-source income to reverse the effect of the previously deducted foreign loss. In particular, § 904(f)(1) provides that when a taxpayer "sustains an [OFL] for any taxable year," some or all "of the taxpayer's taxable income from sources without the United States for each succeeding

taxable year … shall be treated as income from sources within the United States."

Under the § 904(f) regulations, a taxpayer with an OFL must maintain an account to track the amount of the taxpayer's OFL over time and must report its account balances annually to the IRS. *See* 26 C.F.R. § 1.904(f)-1(b). The amount of net positive foreign-source taxable income subject to recharacterization in a given year is generally the lesser of the previously deducted foreign losses (*i.e.*, the OFL account balance) or 50% of the taxpayer's total net foreign-source taxable income for the taxable year (the general recapture rule). I.R.C. § 904(f)(1); 26 C.F.R. § 1.904(f)-2(c). The OFL regime thus addresses the issue illustrated in the example above (at 17). Under the OFL regime, the taxpayer would be required to "recapture" a portion of its $100 OFL account in Year 2, resulting in net foreign-source income's recharacterization as U.S.-source income, "notwithstanding any other provision" of the Code. I.R.C. § 904(f)(1), (3)(A)(i).

Reducing the taxpayer's foreign-source income will reduce its foreign tax credit limit under the formula shown above (at 12). This framework accounts for the fact that the taxpayer was allowed to offset its U.S.-source income with net foreign losses, but then earned positive net foreign-source

income. Thus, "when the year(s) of excess loss and the year(s) of recharac-terization are viewed together, U.S. source income will bear its full tax share." *Hershey Foods Corp. v. Commissioner*, 76 T.C. 312, 323 (1981).

>    **4.    I.R.C. § 904(f)(3)(A) governs every transaction in which a taxpayer with an OFL account balance sells CFC stock, and is silent about how to treat gain and sourcing where the gain from the sale exceeds the OFL balance.**

Section 904(f)(3)(A) provides a special sourcing and gain-recognition rule for situations when a taxpayer with an OFL account disposes of "trade or business" property that has "been used predominantly" abroad. A "disposition" includes "a sale, exchange, distribution, or gift of property whether or not gain is recognized on the transfer." I.R.C. § 904(f)(3)(B)(i). And as of 2004, § 904(f)(3)'s rules generally apply to the disposition of CFC stock. American Jobs Creation Act of 2004, Pub. L. No. 108-357, § 895, 118 Stat. 1418, 1647-48. In particular, I.R.C. § 904(f)(3)(D) treats the disposition of CFC stock "in the same manner as if it were a disposition of [trade or business] property" "used predominantly" overseas.

Section 904(f)(3)(A)(i) provides that in a covered disposition:

>    the taxpayer, notwithstanding any other provision of this chapter (other than paragraph (1)), shall be deemed to have received and recognized taxable income from sources without the United States in the taxable year of the disposition,

> by reason of such disposition, in an amount equal to the lesser of the excess of the fair market value of such property over the taxpayer's adjusted basis in such property or the remaining amount of the overall foreign losses which were not used under paragraph (1) for such taxable year or any prior taxable year.

The provision allows a "last chance" to recapture a taxpayer's OFL when the taxpayer disposes of property used in a foreign trade or business. *Hershey Foods*, 76 T.C. at 323. It does so by "accelerat[ing] the recapture process upon [a covered] disposition by requiring" the taxpayer to recognize foreign-source income "at the time of disposition." *Id.* As the IRS has explained, the taxpayer's gain from the disposition is treated "as a surrogate for the income that would have been generated by the property and recharacterized under the general recapture rules of section 904(f)(1) if the property had been retained." IRS National Office Field Service Advice (FSA) Memorandum No. 200041004, at 6 (Oct. 13, 2000), https://www.irs.gov/pub/irs-wd/0041004.pdf. That makes sense, because if the property had continued to be used in the foreign business and had produced profits, those profits would have eventually caused recapture of the taxpayer's entire OFL account. *See* 26 C.F.R. § 1.904(f)-2(a) ("Recapture continues until … the amount

of foreign source taxable income recharacterized as United States source income equals the amount in the overall foreign loss account.").

Here's how § 904(f)(3)(A) works. When a taxpayer disposes of covered property, § 904(f)(3)(A)(i) does two things. *First*, it says that "the taxpayer, notwithstanding any other provision of this chapter (other than paragraph (1) [which sets out the general recapture rule]), shall be deemed to have received and recognized taxable income … in the taxable year of the disposition … in an amount equal to the lesser of" the total gain "or the remaining amount of the overall foreign losses." I.R.C. § 904(f)(3)(A)(i). Stated simply, that means that the taxpayer must recognize taxable gain in the transaction up to the OFL amount even if the Code otherwise dictates that the transaction does not result in gain recognition (like with tax-free incorporations under I.R.C. § 351 or tax-free reorganizations under § 368).

*Second*, § 904(f)(3)(A)(i) states that the "taxable income" "received" shall be deemed to be "from sources without the United States"—that is, deemed to be foreign-source—"in an amount equal to the lesser of" the total gain "or the remaining amount of the overall foreign losses." In simpler terms, that means the taxpayer must treat the gain from the disposition as

foreign-source income even if other sourcing provisions, like § 865, *supra* pp. 14-15, would treat the gain as U.S.-source income.

Putting it all together: § 904(f)(3)(A)(i) directly addresses situations in which a taxpayer disposes of "property which has been used predominantly without the United States in a trade or business," "notwithstanding any other provision" that might provide for different treatment. It then provides express rules for gain recognition and foreign-source treatment of the resulting income up to the amount remaining in the OFL account. That's because the taxpayer is deemed to have recognized and realized foreign-source income "in an amount equal to the lesser of" (i) the property's fair market value less the taxpayer's basis in the property *or* (ii) the amount in the taxpayer's OFL account. In that situation, § 904(f)(3)(A)(i) directs that all of the gain is treated as foreign-source income. But, even though applying "notwithstanding any other provision," § 904(f)(3)(A) is silent as to the treatment—recognition or nonrecognition, foreign-source or U.S.-source—of gain beyond the amount necessary to recapture a taxpayer's OFL account.

5.    **Given § 904(f)(3)(A)'s silence, Treasury promulgated regulations addressing the gain from and sourcing of dispositions of property when a taxpayer has an OFL account.**

Treasury first issued proposed regulations to implement and interpret § 904(f)(3) in 1986. *Income Tax; Recapture of Overall Foreign Losses*, 51 Fed. Reg. 3,193 (Jan. 24, 1986). Those regulations provided, in relevant part, that "gain recognized on the disposition of property that was used or held for use to generate foreign source taxable income subject to a separate limitation will be treated as foreign source gain subject to the same separate limitation." *Id.* at 3,200. At the time Treasury proposed the regulations, a disposition of trade or business property generally would have resulted in foreign-source income under rules applicable to situations not implicating the OFL regime. *See* I.R.C. §§ 861(a)(6), 862(a)(6) (1976) (sourcing income based on where title passes). Later in 1986, Congress enacted § 865 to treat certain property dispositions (including CFC stock, in most cases) by U.S. taxpayers as generating U.S.-source income. I.R.C. § 865(a) (1986) (sourcing income by reference to seller's residence).

Then, in 1987, Treasury issued final regulations, including the OFL Sourcing Rule, which governs here, under the rulemaking authority

Congress conferred in I.R.C. § 7805(a). *Income Taxes; Recapture of Overall Foreign Losses*, 52 Fed. Reg. 31,992, 31,992 (Aug. 25, 1987). Specifically, § 1.904(f)-2(d) addresses "dispositions" under I.R.C. § 904(f)(3). The applicable version of § 1.904(f)-2(d)(1) provides, in full, that:

> *In general*. If a taxpayer disposes of property used or held for use predominantly without the United States in a trade or business during a taxable year and that property generates foreign source taxable income subject to a separate limitation to which [Reg. § 1.904(f)-2(a)] is applicable
>
> (i)  gain will be recognized on the disposition of such property,
>
> (ii) such gain will be treated as foreign source income subject to the same limitation as the income the property generated, and
>
> (iii) the applicable overall foreign loss account shall be recaptured as provided in [Reg. § 1.904(f)-2](d)(2), (d)(3), and (d)(4).

The regulation thus instructs that, when "a taxpayer disposes of [trade or business] property" that was used "predominantly" abroad, "and that property generates foreign source taxable income" subject to § 904(f)(3)'s general recapture rule, three results follow: "(i) gain will be recognized on the disposition of such property, (ii) such gain will be treated as foreign source income subject to the same limitation as the income the property

generated, and (iii) the applicable overall foreign loss account shall be recaptured" as provided in the regulations. *Id.* § 1.904(f)-2(d)(1). Once the amount of gain is determined, the regulation treats all the gain as foreign-source no matter the amount of the OFL account. Subsection (d)(3) then makes clear for taxable transactions that the "gain" discussed in subsection (d)(1) is the "gain … recognized irrespective of section 904(f)(3)"—that is, the gain that other Code provisions, if not displaced by § 904(f)(3), would require the taxpayer to recognize. *Id.* § 1.904(f)-2(d)(3). *Compare id. with id.* § 1.904(f)-2(d)(4) (for "[d]ispositions in which gain would not otherwise be recognized," gain is recognized only up to OFL balance). The regulations thus answered the question left silent in the statute: in dispositions where the gain that would otherwise be recognized exceeds the OFL account, all the gain is recognized and all that gain is foreign-source. *See id.* § 1.904(f)-2(d)(7), Example 1 (applying I.R.C. § 1001 to disposition subject to subsection (d)(3)). Subsections (d)(2) through (d)(4) then provide specific rules about how to recapture the OFL amount. *See id.* § 1.904(f)-2(d)(2)–(4).

As discussed (at 19), in 2004, Congress passed the American Jobs Creation Act and, among other things, amended § 904(f)(3) by making its sourcing and gain-recognition rules apply to the disposition of stock in a

CFC. *See* I.R.C. § 904(f)(3)(D). As a result, a disposition of stock subject to § 904(f)(3) would result in foreign-source income under the OFL Sourcing Rule, rather than U.S.-source income under pre-2004 law. Treasury responded to the Act in 2007 by comprehensively revising the regulations. *Treatment of Overall Foreign and Domestic Losses*, 72 Fed. Reg. 72,592 (Dec. 21, 2007). But Treasury did not change the rule controlling the source of § 904(f)(3) gain. Indeed, the revised regulations retained the rule that "such gain will be treated as foreign source income subject to the same limitation as the income the property generated." 26 C.F.R. § 1.904(f)-2(d)(1)(ii).

Treasury ultimately amended the regulations in 2012, though did not purport to apply them retroactively to the sale of J:COM (discussed below). *See Treatment of Overall Foreign and Domestic Losses*, 77 Fed. Reg. 37,576 (June 22, 2012). This time, Treasury rewrote § 1.904(f)-2(d) to limit the amount of gain reclassified as foreign-source income. The amended regulations no longer state that "such gain [from the disposition of property] will be treated as foreign source income subject to the same limitation as the income the property generated." *See* 26 C.F.R. § 1.904(f)-2(d) (2014). The regulations now specifically limit the amount of gain that can be treated as foreign-source: "The amount of gain treated as foreign source and the amount of overall

foreign loss recaptured shall be the lesser of the balance in the overall foreign loss account or the full amount of the gain recognized on the disposition." *Id.* § 1.904(f)-2(d)(3)(ii). The amended regulation thus recognizes all the gain in transactions that, outside of § 904(f)(3)(A), would be taxable (like the J:COM sale), but treats only the portion of the gain necessary to recapture the OFL as foreign-source.

### B.    Factual and procedural background

#### 1.    LGI sells its interest in J:COM, a Japanese CFC, and reports the gain beyond the amount in its OFL account as foreign-source income.

LGI is a U.S. corporation and parent company of a multinational group of affiliated corporations operating worldwide. Add.4. During 2010, the group operated broadband, communications, and converged video businesses around the world, including in Japan. *Id*. As part of the Japanese operations, LGI had indirectly owned more than 50% of the voting interests in J:COM, a Japanese entity, making J:COM a CFC for 2010, *see* I.R.C. § 957(a). Add.4.

In 2010, LGI decided to exit the Japanese market by selling its J:COM stock to a third party. Add.4. LGI determined that, at that point, it could "[e]xit[] the Japanese market at a substantial premium," allowing the

business to redirect its resources and focus to its "core markets" and other business initiatives. Liberty Global, Inc., Ex. 99.1 to Current Report (Form 8-K) (Jan. 25, 2010), https://www.sec.gov/Archives/edgar/data/1316631/000110465910002646/a10-2362_1ex99d1.htm. In February 2010, LGI sold its entire controlling interest in J:COM for $3,961,608,988, resulting in a $3,256,557,143 gain. Add.4. Through the date of the sale, J:COM paid approximately $248 million in taxes to Japan on its foreign earnings attributable to LGI. App.89.

LGI timely filed its 2010 U.S. consolidated income tax return. Add.5. LGI reported the $3,256,557,143 recognized gain from the sale of its J:COM stock. *Id*. LGI's return also showed a balance of $474,372,166, in its general OFL account. *Id*. LGI characterized the gain as follows:

- $438,135,179 of the gain was characterized as a dividend under I.R.C. § 1248. Add.5, Add.12. That amount, the parties agree, was properly characterized as a dividend. *Id*. Given that dividend, LGI was deemed to pay approximately $248 million in Japanese taxes that had been imposed on J:COM's earnings. App.89; *see* I.R.C. §§ 902, 1248; 26 C.F.R. § 1.1248-1 *et seq.*

- The remaining $2,818,421,964 was treated as capital gain. Add.5. LGI treated that gain as foreign-source income. *Id*.

By treating the gain from the J:COM sale as foreign-source (just as it would treat underlying operating income from the J:COM business), LGI

would be able to avoid double taxation, because it could claim a foreign tax credit under §§ 901 and 902, *supra* pp. 10-11, for the Japanese and other foreign income taxes imposed on J:COM's operations. I.R.C. §§ 901, 904. Even so, LGI treated the entire $3.2 billion of gain as taxable at the then-applicable 35% tax rate (*i.e.*, for a potential liability of over $1 billion), and claimed credits of only $240 million. App.89.

### 2. The IRS issues a notice of deficiency after initially agreeing to a tentative settlement.

The IRS disagreed with LGI's decision to treat the gain from the J:COM sale as foreign-source. App.31. The IRS's position was that more than $2.3 billion of the $2.8 billion of gain should be treated as U.S.-source income. *Id.* LGI thus wouldn't be entitled to foreign tax credits for the income taxes paid to Japan and other countries.

After the IRS completed its audit, LGI invoked the IRS's internal mediation process, and the IRS and LGI agreed to tentative settlement terms in 2014. App.20-21, App.66. Because LGI would have received a refund, App.21, App.66, the IRS had to inform the Joint Committee on Taxation of the facts of the case and the reasons for the IRS's decision before the refund could be paid, *see* I.R.C. § 6405(a).

In 2015, the IRS informed LGI that the Committee recommended that the IRS not move forward with the tentative settlement. App.66. The IRS thus refused to settle on the previously agreed-upon terms. App.67.

In 2020, the IRS issued LGI a notice of deficiency for the 2010 tax year and the tax year ending December 31, 2014. App.25, App.41. The notice said that LGI owed $241,791,309.00 and stated that "no foreign tax credit is allowed due to adjustments affecting foreign source income" because "[t]he amount of U.S. source gain that is recharacterized as foreign source under [§] 904(f)(3) is limited to the amount necessary to recapture of the [OFLs] in the OFL account at the beginning of the year." App.31. Thus, the IRS explained, for LGI's 2010 and 2014 tax years, it could claim $0.00, rather than $241,791,309, and $2,014,294, respectively. *Id*.

> **3.**    **LGI timely petitions the Tax Court to redetermine the deficiency, and the Tax Court subjects LGI to double taxation, holding that approximately $474 million of the gain from the J:COM sale is foreign-source income and the remaining gain is U.S.-source.**

LGI timely petitioned the Tax Court for a redetermination of the deficiency. Add.6. LGI argued, among other things, that under 26 C.F.R. § 1.904(f)-2(d)(1)(ii), the gain recognized on the J:COM sale must "be treated as foreign source income subject to the same limitation as the income the

property generated." App.17. Treating that gain as foreign-source would mean that LGI could claim a foreign tax credit.

The Tax Court disagreed, holding that only approximately $474 million of the gain from the J:COM sale—only the amount necessary to recapture the OFL—represents foreign-source income, and the remaining gain is U.S.-source. Add.17-19, Add.21. The Tax Court held that § 904(f)(3)(A) "speaks only" to the "gain necessary to recapture an OFL balance." App.20. In the court's view, because § 904(f)(3)(A) is "silent as to the treatment of any gain" beyond the amount needed to recapture an OFL, "the provision's inaction leaves other applicable Code sections (here, section 865, 1001, and 1248) to operate unimpeded." Add.14-15.

The regulations didn't change the result either, the Tax Court concluded. Add.18-19. In the court's view, "the regulations, like the statute, speak to the amount of gain necessary to effect the recapture of an OFL, nothing more." Add.19. The Tax Court reasoned that the applicable version of 26 C.F.R. § 1.904(f)-2(d)(1)(ii)—which, before the 2012 amendments (*supra* p. 23-26), said that "such gain [from the disposition] will be treated as foreign source income subject to the same limitation as the income the property generated"—didn't require all the gain to be treated as foreign-source. Instead,

"all [that provision] … tell[s] us, in plain terms, is that when a taxpayer disposes of qualifying property (1) some amount of gain is recognized, (2) 'such [recognized] gain will be treated as foreign source income,' and (3) any OFL balance will be recaptured." Add.20 (fourth alteration in original). Thus, in the court's view, § 1.904(f)-2(d)(1)(ii) "does not specify the amount of gain to be recognized nor, by implication, the amount of gain to be treated as foreign-source income." *Id*. Nor does it "say that it applies to amounts beyond those necessary for recapturing an OFL balance." *Id*.

In sum, the Tax Court concluded that the statute and regulations apply "only to amounts necessary to recapture an OFL balance," and that only some of the gain from the J:COM sale could be treated as foreign-source income, with the rest treated as U.S.-source. Add.21. As a result, the court held that LGI could not claim a foreign tax credit. Add.3-4, Add.21. The court thus entered final judgment for the government, Add.22, and LGI timely appealed, App.348.

## SUMMARY OF ARGUMENT

Under § 904(f)(3)(A) and Treasury's OFL Sourcing Rule, 26 C.F.R. § 1.904(f)-2(d)(1)(ii), the gain on LGI's sale of J:COM stock is foreign-source,

permitting LGI to claim foreign tax credits and avoid double taxation on its foreign earnings.

**A.    1.**    Section 904(f)(3)(A) is a sourcing and gain-recognition rule that applies "notwithstanding" other Code provisions whenever a taxpayer with an OFL account balance sells, or otherwise disposes of, CFC stock (or other property used in a foreign trade or business). *See* I.R.C. § 904(f)(3)(D). Up to the "amount equal to the lesser of" the income from the property and the OFL account balance, the provision requires the taxpayer to recognize the gain from the disposition *and* to treat it as foreign-source. I.R.C. § 904(f)(3)(A)(i). Section 904(f)(3)(A) thus expressly addresses situations in which a taxpayer disposes of property, and recognizes gain in the amount of its OFL account balance or less, and it overrides Code provisions that would dictate a different result.

**2.**    While § 904(f)(3)(A) applies "notwithstanding any other provision" whenever a taxpayer with an OFL account sells CFC stock, thus displacing other Code provisions, § 904(f)(3)(A) is silent as to the source and recognition treatment where the gain from the transaction exceeds the amount needed to recapture an OFL account, as the Tax Court recognized. That silence is the best reading of the statute's treatment of such transactions

(like the J:COM sale). And that silence authorizes Treasury "to prescribe rules to 'fill up the details' of [the] statutory scheme," *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2263 (2024), because Treasury may "prescribe all needful rules and regulations for the enforcement of" the Tax Code, *see* I.R.C. § 7805(a). That silence, and the rulemaking it authorizes, provide the rule for gain recognition and sourcing for all disposition transactions involving an OFL account, "notwithstanding" other Code provisions.

**B.**     Exercising the authority Congress gave it, Treasury filled the silence with the OFL Sourcing Rule, 26 C.F.R. § 1.904(f)-2(d)(1)(ii).

**1.**     The plain text of § 1.904(f)-2(d)(1)(ii) directs that, when a taxpayer with an OFL account balance disposes of covered property, all the gain from the disposition is treated as foreign-source income. In particular, § 1.904(f)-2(d)(1) provides that, when "a taxpayer disposes of [foreign trade or business] property," "and that property generates foreign source taxable income" subject to § 904(f)(3)'s general recapture rule, three results follow: "(i) gain will be recognized on the disposition of such property, (ii) *such gain will be treated as foreign source income* subject to the same limitation as the income the property generated, and (iii) the applicable overall foreign loss account shall be recaptured" as provided in the regulations. (emphasis

added). The ordinary reading of "such gain" in the OFL Sourcing Rule, is that it refers to the "gain … on the disposition of such property" in the preceding clause, *id.* § 1.904(f)-2(d)(1)(i). That means *all* of the gain is treated as foreign-source—including the amount exceeding what is necessary to recapture an OFL account.

**2.** Statutory and regulatory history confirm that reading. For more than 25 years—from 1987 until 2012—Treasury's rule was that when a taxpayer with an OFL account balance disposed of covered property, all the gain from the disposition is treated as foreign-source. In 2004, Congress ratified that understanding, and the understanding that Treasury was filling § 904(f)(3)(A)'s silence, when it amended § 904(f) and the foreign tax credit regime against the backdrop of Treasury's steadfast adherence to the OFL Sourcing Rule. And when Treasury revamped the implementing regulations in 2007 in response to those amendments, it retained the same rule. It wasn't until 2012 that Treasury changed the regulations to cap the amount of gain recharacterized as foreign-source income at the amount necessary to recapture an OFL account balance. But those rules are prospective only. They do not apply to the J:COM sale.

**3.** Treating all the gain from a covered disposition when a taxpayer has an OFL account as foreign-source also aligns with tax policy, as reflected in other Code provisions. For example, § 865(f) treats gain from the sale of foreign affiliate stock that occurs in a foreign country where the affiliate does business (like the sale of J:COM stock here) as foreign-source. Treating all the gain as foreign-source also avoids double taxation—the chief evil the foreign tax credit regime seeks to avoid. And it's consistent with the understanding, which the IRS has acknowledged, that the gain from a disposition of foreign property is meant to serve as a proxy for the income the property would have generated had it been retained. Had the property been retained, the income it generated would be considered foreign source after the OFL account was recaptured.

**C.** There is no dispute that § 904(f)(3)(A)(i) applies to LGI's sale of J:COM stock. At the time LGI sold its interest in J:COM, LGI owned more than 50% of stock in J:COM (which was thus a CFC) and LGI had an OFL account balance. *See* I.R.C. § 904(f)(1), (f)(3)(D). The only dispute is how to treat its income that exceeded the amount necessary to recapture LGI's OFL account balance. With § 904(f)(3) silent on the gain and source of the income in such transactions, Congress authorized Treasury to promulgate

regulations to fill in the rules. And because, once triggered, § 904(f)(3)(A) applies "notwithstanding" other Code provisions, those regulations—not other Code provisions—supply the answer. The regulations are clear: *all* of the gain from the disposition is recognized and treated as foreign-source. 26 C.F.R. § 1.904(f)-2(d)(1). As a result, LGI is entitled to foreign tax credits to mitigate the double taxation of its foreign income.

**D.**    The Tax Court's reasoning and the IRS's arguments lack merit.

**1.**    The Tax Court ignored the plain text of 26 C.F.R. § 1.904(f)-2(d)(1). The Tax Court summarized the regulation as saying that "when a taxpayer disposes of qualifying property (1) some amount of gain is recognized" and "(2) 'such [recognized] gain will be treated as foreign source income.'" Add.20. But the then-applicable version of § 1.904(f)-2(d)(1)(i) doesn't say "some amount of gain." It says that "gain will be recognized on the disposition of such property"—and that means the entire amount of gain from the disposition. And "such gain will be treated as foreign source income." 26 C.F.R. § 1.904(f)-2(d)(1)(ii). The plain meaning of that text is that all of the gain from the disposition is treated as foreign-source.

**2.**    The Tax Court also erred in concluding that LGI's reading of the OFL Sourcing Rule is contrary to statutory text. Section 904(f)(3)(A) is silent

as to the treatment of transactions where the gain exceeds the amount necessary to recapture an OFL account balance, and Congress directed Treasury to fill that gap by prescribing the applicable rules. That's what Treasury did when it promulgated § 1.904(f)-2(d)(1) and provided specific rules for determining the source and recognition of gain. And because § 904(f)(3)(A) applies "notwithstanding" other Code provisions, those regulations—not other Code provisions—apply, and the OFL Sourcing Rule is consistent with statutory text.

3.     The Tax Court also suggested that § 1.904(f)-2(d)(1) might not apply because it addresses "trade or business" property, and does not explicitly address CFC stock. But § 904(f)(3)(D)(i) says that the disposition of CFC stock is treated "in the same manner as if it were a disposition of property" used in a trade or business abroad. Given Congress's directive, § 1.904(f)-2(d)(1) also *must* treat the disposition of CFC stock just as it treats a disposition of trade or business property.

4.     The Tax Court also thought context shows that § 1.904(f)-2(d)(1) doesn't address the source of gain beyond the amount required to recapture an OFL. To the contrary, other provisions, like § 1.904(f)-2(d)(3), make clear that the foreign-source income from a disposition under § 904(f)(3) can

exceed the taxpayer's OFL balance, including because of the operation of § 1.904(f)-2(d)(1)(ii).

**5.**     Finally, the Tax Court reasoned that § 904(f)(3) was meant to limit a taxpayer's foreign tax credits, so it shouldn't be applied to allow LGI to claim a tax benefit. That argument fails, too. Policy concerns can't override plain text, as the Supreme Court and this Court repeatedly have recognized in the tax context. *See, e.g.*, *Gitlitz v. Commissioner*, 531 U.S. 206, 219-20 (2001); *United States v. Morgan*, 922 F.2d 1495, 1496-97 (10th Cir. 1991). Plus, policy is on LGI's side anyway, because treating the gain as foreign-source avoids double taxation, which is what the foreign tax credit regime is designed to do in the first place. Had Treasury wanted to exercise its statutory discretion differently, it could have done so. Indeed, that's exactly what it did in 2012, when it rewrote the regulations to incorporate a new rule that the gain on § 904(f)(3)(A) dispositions is treated as foreign-source income only to the extent of the taxpayer's OFL account balance.

## STANDARD OF REVIEW

Because the facts are undisputed, this appeal involves purely legal questions. This Court reviews the Tax Court's legal conclusions, including questions of statutory and regulatory interpretation, de novo. I.R.C.

§ 7482(a)(1) (2024); *Scanlon White, Inc. v. Commissioner*, 472 F.3d 1173, 1174-75 (10th Cir. 2006).

## ARGUMENT

The question in this case is about how to characterize the source—U.S. or foreign—of gain that LGI recognized on the sale of its interest in J:COM, above the amount necessary to recapture LGI's OFL account. Is that gain from selling a CFC treated as foreign-source income, which would increase LGI's foreign tax credit limit (as LGI contends)? Or is it treated as U.S.-source income, which would require taxpayers like LGI to pay tax to both the U.S. government *and* the foreign government (as the IRS contends and the Tax Court concluded)? As explained below, § 904(f)(3) and 26 C.F.R. § 1.904(f)-2(d)(1) make clear that the gain from a transaction subject to OFL recapture is treated as foreign-source. That makes sense: it avoids massive double taxation, an important policy of the Tax Code. The Tax Court's contrary conclusion rests on a misreading of the statute and regulations. The Court should reverse.

**A.  Section 904(f)(3) is silent about how to treat dispositions of property generating gain beyond the amount needed to recapture an OFL, authorizing Treasury to provide the answer.**

Section 904(f)(3) applies to transactions where a taxpayer with an OFL account balance sells, or otherwise disposes of, certain property predominantly used abroad, including CFC stock. It says that the taxpayer must recognize gain and treat it as foreign-source "in an amount equal to the lesser of" the built-in gain of the property and the OFL account balance. But although § 904(f)(3)(A)(i) applies "notwithstanding any other provision," thus displacing the rest of the Code, it is silent about the treatment of income beyond the amount needed to recapture an OFL account. That silence authorizes Treasury to promulgate regulations to provide the answer. Section 1.904(f)-2(d)(1)(ii) fills the silence and requires that the gain be treated as foreign-source.

**1.  Section 904(f)(3) governs the treatment of dispositions of foreign trade or business property, including CFC stock, when the taxpayer has an OFL account.**

As explained (at 19-22), § 904(f)(3) applies whenever a taxpayer with an OFL account balance disposes of certain property predominantly used abroad, including CFC stock. Once triggered, § 904(f)(3) applies

"notwithstanding any other provision of [Chapter 1 of the Code] (other than [§ 904(f)(1)])." I.R.C. § 904(f)(3)(A)(i). Section 904(f)(3) thus "override[s] conflicting provisions of any other section," *Cisneros v. Alpine Ridge Group*, 508 U.S. 10, 18 (1993); *United States v. Dolan*, 571 F.3d 1022, 1026 (10th Cir. 2009), displacing other Code provisions that might otherwise apply. Accordingly, § 904(f)(3) controls the treatment of a disposition of foreign property or CFC stock when the taxpayer has an OFL account, overriding provisions that, for example, might otherwise make the disposition a non-taxable event, that would require the gain to be treated as U.S.-source income, or that would otherwise require calculating a different amount of taxable income. And because § 904(f)(3) applies "notwithstanding" other Code provisions, when Treasury promulgates regulations to fill the statute's silence about the treatment of transactions where income exceeds the OFL amount, those regulations apply. *Infra* pp. 43-44.

Take a transaction that otherwise would not require a taxpayer to recognize gain as an example of how the § 904(f)(3) override works. Suppose a U.S. corporation has an OFL account balance of $60, it disposes of covered property that cost it $0, and in return it receives $100 in a nontaxable (*i.e.*, nonrecognition) transaction. Under § 904(f)(3)(A)(i), the U.S. corporation is

deemed to recognize an amount of foreign-source income equal to the lesser of the gain ($100) or the OFL account balance ($60). The result is $60 in taxable income—even though, absent an OFL account and the application of § 904(f)(3)(A)(i), the taxpayer wouldn't be taxed on the transaction.

>**2.** **Section 904(f)(3) is silent about the treatment of transactions where the gain exceeds any OFL account balance, authorizing Treasury to provide the rule by regulation.**

To recap, § 904(f)(3) applies when a taxpayer with an OFL account disposes of covered foreign property, "notwithstanding" the rest of the Tax Code. Section 904(f)(3) expressly addresses situations in which a taxpayer's gain from the disposition is the amount of its OFL account balance or less. For those transactions, § 904(f)(3) requires that the taxpayer recognize and report the full amount of the gain as foreign-source.

But § 904(f)(3) is silent on the key question in this case: how to determine the treatment of gain from the disposition of property *where that gain exceeds* the amount needed to recapture an OFL account, *accord* Add.14 (Tax Court opinion), like the remaining $40 from the gain in the example above (at 42-43). That silence is the best reading of the statute's treatment of gain from those dispositions. And with § 904(f)(3)'s "notwithstanding" clause

displacing Code provisions that might otherwise apply, that silence authorizes Treasury "to prescribe rules to 'fill up the details' of [the] statutory scheme," *Loper Bright*, 144 S. Ct. at 2263, because it directs Treasury to "prescribe all needful rules and regulations for the enforcement of" the Tax Code, I.R.C. § 7805(a). That silence, and the rulemaking it authorizes, provide the rule for the treatment of these transactions, "notwithstanding" other Code provisions. I.R.C. § 904(f)(3)(A)(i). "[A]uthorized to exercise a degree of discretion," *Loper Bright*, 144 S. Ct. at 2263, Treasury prescribed the applicable rules in § 1.904(f)-2(d)(1). *Supra* pp. 23-26.

> **B.    Under the OFL Sourcing Rule, gain from the disposition of property exceeding the amount needed to recapture an OFL account balance is treated as foreign-source income.**

The OFL Sourcing Rule, § 1.904(f)-2(d)(1)(ii), fills the silence. Its plain text directs that, in a § 904(f)(3) transaction, all the gain is treated as foreign-source income. Text, statutory and regulatory history, and policy all confirm that reading of the regulations.

> **1.    The OFL Sourcing Rule's plain text directs that, when a taxpayer with an OFL account balance disposes of covered property, all the gain is foreign-source.**

**a.**    Start with the regulation's text. As explained (at 23-26), § 1.904(f)-2(d)(1) directs that, in a transaction where "a taxpayer disposes of

- 44 -

[foreign trade or business] property," "and that property generates foreign source taxable income" subject to § 904(f)(3)'s general recapture rule, three results follow: "(i) gain will be recognized on the disposition of such property, (ii) *such gain will be treated as foreign source income* subject to the same limitation as the income the property generated, and (iii) the applicable overall foreign loss account shall be recaptured" as provided in the regulations. 26 C.F.R. § 1.904(f)-2(d)(1) (emphasis added). The ordinary reading of "such gain," *id.* § 1.904(f)-2(d)(1)(ii), is that it refers to the "gain … on the disposition of such property" in the preceding clause, *id.* § 1.904(f)-2(d)(1)(i). *See King v. Burwell*, 576 U.S. 473, 487 (2015) ("such Exchange" in one section means the "*same* Exchange" described in a related section of the same Act); *Littlefield v. Mashpee Wampanoag Indian Tribe*, 951 F.3d 30, 37 (1st Cir. 2020) ("such" refers to the antecedent phrase). That means *all* the gain is treated as foreign-source—including the amount exceeding what is necessary to recapture an OFL account.

**b.** Other provisions in the applicable version of the regulations reinforce that reading. For example, § 1.904(f)-2(d)(3) makes clear that the foreign-source income in a § 904(f)(3) transaction can exceed the taxpayer's OFL account balance, just as § 1.904(f)-2(d)(1)(ii) contemplates. Specifically,

- 45 -

§ 1.904(f)-2(d)(3), entitled "Dispositions where gain is recognized irrespective of section 904(f)(3)," provides that:

> If a taxpayer recognizes foreign source gain subject to a separate limitation on the disposition of property described in paragraph (d)(1) of this section, and there is a balance in a taxpayer's overall foreign loss account that is attributable to a loss under such limitation after applying paragraph (c) of this section [addressing § 904(f)(1) recapture], an additional portion of such balance shall be recaptured in accordance with paragraphs (a) and (b) of this section. The amount recaptured shall be the *lesser of such balance or 100 percent of the foreign source gain recognized on the disposition that was not previously recharacterized*.

(emphasis added). In other words, § 1.904(f)-2(d)(3) contemplates a situation under subsection (d)(1) in which all the gain from a disposition is recognized as income (as it would be, per the provision's title, if § 904(f)(3), didn't apply), is foreign-source, *and* is greater than the OFL account. Indeed, the entire premise of § 1.904-2(d)(3) is that the foreign-source income under subsection (d)(1) does *not* equal the OFL account—it can be less than, or (like in the case of LGI's sale of J:COM stock), *greater than* the account balance. Indeed, it would be unnecessary to refer to "the lesser of [the OFL] balance" if the amount of the foreign-source income were capped at the balance of the taxpayer's OFL account.

The regulatory text is clear, and the IRS "must follow its own regulations." *Energy West Mining Co. v. Lyle ex rel. Lyle*, 929 F.3d 1202, 1209 (10th Cir. 2019). Treasury Regulations "are as binding on the Government as they are on the taxpayer." *Weyerhaeuser Co. v. United States*, 395 F.2d 1005, 1008 (Ct. Cl. 1968).

> **2.    Statutory and regulatory history likewise confirm that, when a taxpayer with an OFL account balance disposes of covered property, all the gain is treated as foreign-source income.**

Statutory and regulatory history confirm that the regulation means what it says: the gain from the disposition of property beyond the amount needed to recapture an OFL account is treated as foreign-source. For more than 25 years the rule was that when a taxpayer with an OFL account balance disposes of covered property, all the gain from the disposition is treated as foreign-source. That was the rule in 1987, when Treasury first promulgated § 1.904(f)-2(d). And Treasury retained the rule when it amended the regulations in 2007, after Congress enacted § 904(f)(3)(D) so that § 904(f)(3)'s gain recognition and sourcing rules apply to dispositions of CFC stock. *Supra* pp. 23-26.

By consistently retaining the same regulatory rule throughout major statutory changes, Treasury confirmed its understanding that when a transaction is subject to § 904(f)(3), "gain will be recognized on the disposition of such property," 26 C.F.R. § 1.904(f)-2(d)(1)(i), *and* "such gain"—*i.e. all* of the gain—"will be treated as foreign source income," *id.* § 1.904(f)-2(d)(1)(ii). What's more, by amending the statute without changing the operation of the regulations, Congress ratified the understanding that the best reading of the statute is that it is silent as to the treatment of transactions where the gain exceeds the amount necessary to recapture an OFL account, and that Treasury is authorized to fill that silence. *See Helvering v. R. J. Reynolds Tobacco Co.*, 306 U.S. 110, 114-15 (1939) (Congress "approved the administrative construction" of a statute when regulation was uniform amid statutory revisions); *cf. Davis v. United States*, 495 U.S. 472, 482 (1990) ("Congress' reenactment of [a statute], using the same language, indicates its apparent satisfaction with the prevailing interpretation").

It wasn't until 2012 that Treasury changed the regulations to cap the amount of gain recharacterized as foreign-source at the amount necessary to recapture an OFL account balance. In doing so, Treasury also removed from the regulations the language directing that "such gain will be treated as

foreign source income subject to the same limitation as the income the property generated." *Supra* p. 26. But the 2012 regulations had only prospective effect. 26 C.F.R. § 1.904(f)-2(e) (2014). Thus, the rule that gain beyond the amount necessary to recapture an OFL account balance is foreign-source remained for earlier transactions, including the J:COM sale, which occurred before Treasury amended the regulations in 2012.

### 3. Treating the income from a disposition as foreign-source aligns with the tax policy reflected in other Code provisions and avoids double taxation.

Treating the income beyond the amount needed to recapture an OFL account also aligns with the policy reflected in other sourcing provisions in the Code, and it avoids double taxation. It's also consistent with the understanding, which the IRS has acknowledged, that the gain from a disposition of foreign property is meant to serve as a proxy for the income the property would have generated had it been retained.

**a.** As explained (at 14-15), when a U.S. taxpayer realizes a gain from the sale of stock, § 865(a) typically would provide that the gain is U.S.-source. But there are exceptions when the property has a close nexus to a foreign country. In particular, gain from the sale of foreign affiliate stock that "occurs in a foreign country in which such affiliate is engaged in the active

conduct of a trade or business" is treated as foreign-source. I.R.C. § 865(f)(1).

Although not technically applicable here, that provision is consistent with, and supports, treating *all* the gain from the disposition of a CFC as foreign-source when the taxpayer has an OFL account balance. After all, in both scenarios, the taxpayer has gain from the sale of foreign affiliate stock that occurs in a foreign country where the affiliate conducts business.

**b.**    What's more, treating the gain beyond the amount necessary to recapture an OFL account as foreign-source makes sense, because had the property been retained, the income that it would have generated would have been treated as foreign-source anyway. As the IRS has acknowledged, the taxpayer's gain in a § 904(f)(3)(A) transaction is treated "as a surrogate for the income that would have been generated by the property and recharacterized under the general recapture rules of section 904(f)(1) if the property had been retained." IRS FSA Memorandum No. 200041004, at 6. The recapture process is just accelerated at the time of the disposition, as the last chance to recapture a taxpayer's OFL account balance before the taxpayer disposes of the property. *Hershey Foods*, 76 T.C. at 323. That's the case whether the taxpayer disposes of trade or business property, I.R.C.

§ 904(f)(3)(A), or CFC stock, which I.R.C. § 904(f)(3)(D) treats as trade or business property.

The taxpayer's gain from the disposition of the property is generally considered to be the present value of the cash flows the property is expected to generate in the future. *See Eateries, Inc. v. J.R. Simplot Co.*, 346 F.3d 1225, 1236 (10th Cir. 2003). And had the taxpayer retained that property, rather than disposing of it, the continued cash flows would have been foreign-source income that could be used to recapture the taxpayer's OFL account balance, I.R.C. § 904(f)(1), and allow the taxpayer to claim foreign tax credits, I.R.C. § 904(a). Because § 904(f)(3) just accelerates that process, it make sense that § 1.904(f)-2(d) treats all the gain from a § 904(f)(3) disposition as foreign-source.

**C.    Under I.R.C. § 904(f)(3) and the OFL Sourcing Rule, LGI's gain from the sale of J:COM stock—including the gain beyond the amount necessary to recapture LGI's OFL account—is treated as foreign-source income.**

There is no dispute that § 904(f)(3)(A)(i) applies to the J:COM sale. At the time LGI sold its interest in J:COM, LGI owned more than 50% of stock in J:COM (making J:COM a CFC) and it had an OFL account balance. *See* I.R.C. § 904(f)(1), (f)(3)(D). The only dispute is how to treat the gain beyond

the amount necessary to recapture LGI's OFL account balance. With § 904(f)(3) silent on how to treat transactions where the recognized gain exceeds an OFL account balance, Congress authorized Treasury to promulgate regulations to answer that question. And because, once triggered, § 904(f)(3)(A) applies "notwithstanding" other Code provisions, those regulations—not other Code provisions—supply the answer. The regulations are clear. *All* of the gain from the disposition is recognized and treated as foreign-source. 26 C.F.R. § 1.904(f)-2(d)(1). *Supra* pp. 44-51. The upshot is that LGI is entitled to foreign tax credits to mitigate the double taxation of its foreign income.

### D. The Tax Court's reasoning and the government's arguments lack merit.

The Tax Court agreed that § 904(f)(3)(A) is "silent as to the treatment of any gain" beyond the amount needed to recapture an OFL. Add.14. So far, so good. But it then held that, given the silence, other Code sections "operate unimpeded" and require the excess gain to be treated as U.S.-source. Add.15. It further held that "the regulations, like the statute, speak to the amount of gain necessary to effect the recapture of an OFL, nothing more," and so did not require treating the gain as foreign-source, either. Add.19. That was

error. The court overrode Treasury's congressionally delegated authority to provide the rule given § 904(f)(3)(A)'s silence and ignored the regulation's plain text in an attempt to impose the court's own view of good policy. But "no amount of policy-talk can overcome" the regulation's plain meaning. *Niz-Chavez v. Garland*, 593 U.S. 155, 171 (2021).

> **1.    The Tax Court's reasoning ignores the OFL Sourcing Rule's plain text.**

The Tax Court ignored the plain text of 26 C.F.R. § 1.904(f)-2(d)(1) in holding that the provision doesn't require the gain from the sale of CFC stock beyond the amount needed to recapture an OFL to be treated as foreign-source. To recap, the regulation provides that when a taxpayer with an OFL account disposes of covered property, "gain will be recognized on the disposition of such property," 26 C.F.R. § 1.904(f)-2(d)(1)(i), and "such gain will be treated as foreign source income," *id.* § 1.904(f)-2(d)(1)(ii). But the Tax Court summarized the regulation as saying that "when a taxpayer disposes of qualifying property (1) some amount of gain is recognized" and "(2) 'such [recognized] gain will be treated as foreign source income.'" Add.20. But the applicable version of § 1.904(f)-2(d)(1)(i) *doesn't say* "some amount of gain." It says "gain will be recognized on the disposition of such property"—and

that means the entire amount of gain from the disposition. The plain meaning of the regulations is that all of the gain from the disposition is recognized *and* treated as foreign-source.

To be sure, when it amended the regulations in 2012, Treasury claimed it was merely "clarify[ing]" the meaning of the 1987 regulations—not imposing an entirely new rule that the gain on § 904(f)(3)(A) dispositions "is recharacterized as foreign source income only to the extent of the applicable section 904(f)(3) recapture amount." 77 Fed. Reg. at 37,577; *see* Add.21 n.16. But revisionist history can't alter plain meaning, either (nor could it even before *Loper Bright*, *see Kisor v. Wilkie*, 588 U.S. 558, 573-80 (2019)). Treasury's post hoc statements don't change the fact that before 2012, the plain meaning of § 1.904(f)-2(d)(1) was that *all* the gain from a covered disposition was treated as foreign-source. And "when the government … speaks out of both sides of its mouth, no one should be surprised if its latest utterance isn't the most convincing one." *Bittner v. United States*, 598 U.S. 85, 98 n.5 (2023).

### 2. Reading the OFL Sourcing Rule as treating all the gain as foreign-source is consistent with § 904(f)(3)(A), which applies "notwithstanding" other Code provisions.

The Tax Court next reasoned that because § 904(f)(3)(A) "applies only to amounts necessary to recapture an OFL balance," LGI's reading of the

regulation is contrary to statutory text. Add.21. Not so. As explained (at 40-43), § 904(f)(3)(A) by its plain text governs *every* disposition of covered property by an OFL accountholder, yet it provides no rule for gain-recognition or sourcing treatment beyond the amount necessary to recapture the OFL balance. In the Tax Court's view, that silence required resort to other Tax Code provisions. Add.14-15, Add.20. But that was error given § 904(f)(3)(A)(i)'s "notwithstanding" clause, which displaces other Code provisions. Given § 904(f)(3)(A)'s broad coverage and "notwithstanding" clause, the best reading of the provision is that it is silent as to gain-recognition and sourcing above the OFL account balance, without negatively implying that gain exceeding the OFL account cannot also be treated as recognized foreign-source gain. Indeed, there can't be any such negative implication. If there were, it would mean that § 904(f)(3)(A) would prohibit gain above the OFL account balance from being recognized and taxed—a proposition the Tax Court called "remarkable." Add.13.

In short, § 904(f)(3)(A) controls the treatment of the J:COM transaction, but is silent as to the treatment of transactions where the gain exceeds the amount necessary to recapture an OFL account balance. Treasury filled that silence with the applicable rules in § 1.904(f)-2(d)(1). And because

§ 904(f)(3)(A) applies "notwithstanding" other Code provisions, those regulations—not other Code provisions—apply, and there is no conflict with statutory text. *Supra* pp. 41-51.

The Tax Court also was wrong that, as a provision about "exclusions from income," § 904(f)(3)(A)(i) "must be narrowly construed." Add.15. That principle doesn't extend to provisions, like § 904(f)(3)(A)(i), that govern how to determine the source of income. The rule for sourcing provisions that are part of Congress's regime to relieve taxpayers from double taxation is construction in the *taxpayer's* favor. *Hassett v. Welch*, 303 U.S. 303, 314 (1938); *Gould v. Gould*, 245 U.S. 151, 153 (1917) (statutes levying taxes are construed "in favor of the citizen").

### 3. The Tax Court wrongly suggested that § 1.904(f)-2(d)(1) doesn't apply to the sale of CFC stock.

The Tax Court also suggested that § 1.904(f)-2(d)(1) might not apply at all, because it addresses "trade or business" property, not CFC stock. Add.19. But statutory and regulatory text preclude that argument. In § 904(f)(3)(D), Congress directed that the disposition of CFC stock be treated "in the same manner as if it were a disposition of property" used in a trade or business abroad. I.R.C. § 904(f)(3)(D)(i). Given Congress's directive, the

regulations—including § 1.904(f)-2(d)(1)—*must* treat the disposition of CFC stock just like a disposition of trade or business property. *See Loper Bright*, 144 S. Ct. at 2263 (agencies must exercise delegated discretion within boundaries set by Congress). Where, as here, "the provisions of the [statute] are unambiguous, and its directions specific, there is no power to amend it by regulation." *Koshland v. Helvering*, 298 U.S. 441, 447 (1936). And, indeed, Treasury didn't change the OFL Sourcing Rule, which treated the disposition of CFC stock just like a disposition of business property, when it amended the regulations in 2007. *Supra* pp. 25-27.

### 4. Contrary to the Tax Court's conclusion, context shows that the gain is treated as foreign-source.

The Tax Court also thought context shows that § 1.904(f)-2(d)(1) doesn't address the source of gain beyond the amount required to recapture an OFL in a § 904(f)(3) transaction. Add.20. But the opposite is true. As discussed (at 45-46), the applicable version of § 1.904(f)-2(d)(3), a recapture provision, refers to recognition of gain under subsection (d)(1) and provides that "[t]he amount recaptured shall be the lesser of [the taxpayer's OFL] balance or 100 percent of the foreign source gain recognized on the disposition that was not previously recharacterized." That language makes clear that

there will be situations under subsection (d)(1)—like the J:COM sale—in which *all* the gain from a disposition is recognized as foreign-source, even though the gain is *greater* than the OFL account.

### 5. The Tax Court's policy concerns can't override plain text, and they fail in any event.

In the Tax Court's view, § 904(f)(3) (and, by extension, the regulations) limits a taxpayer's foreign tax credits, so it shouldn't be applied to allow LGI to claim a tax benefit. Add.13, Add.16. That reasoning fails.

**a.** For starters, policy concerns can't override plain text, including in the tax context. For example, in *Gitlitz*, 531 U.S. at 219-20, the Supreme Court upheld a taxpayer's plain language reading of § 1366(a)(1)(A), even though the government argued that policy considerations required a different result. "Because the Code's plain text permits the taxpayers here to receive these benefits," the Court explained, it "need not address [the government's] policy concern." *Id*. at 220. This Court repeatedly has followed that principle. *See Morgan*, 922 F.2d at 1496 (interpretation of text "begin[s] with the plain language"); *Robbins v. Chronister*, 435 F.3d 1238, 1241, 1243 (10th Cir. 2006) (en banc); *In re Mallo*, 774 F.3d 1313, 1327-28 (10th Cir. 2014).

The Tax Court's incorrect view that allowing LGI to claim a foreign tax credit is too "remarkable" to be true, Add.13, "is not determinative," *Kitchen v. Herbert*, 755 F.3d 1193, 1237 (10th Cir. 2014). Legislative choices inevitably "involve line-drawing." *Id.* Indeed, "Congress may select the subjects of taxation and qualify them differently as it sees fit"—as Treasury did here with the discretion Congress gave it—and a court can't "modify the law by construction." *Crooks v. Harrelson*, 282 U.S. 55, 61 (1930).

**b.** What's more, treating the gain from the J:COM sale as foreign-source aligns with the policies reflected in other Code provisions, like § 865(f)(1), which treats the gain from the sale of foreign affiliate stock that "occurs in a foreign country" where the affiliate conducts business as foreign-source. Plus, § 904(f)(3) treats the gain from a stock disposition as a proxy for income that would have been generated if the taxpayer had retained the stock. *Supra* pp. 49-51. And after the OFL was recaptured, the income in future years would have been treated as foreign-source anyway—consistent with LGI's treatment of its gain here. In other words, treating LGI's gain from the J:COM sale as foreign-source income simply allows the same treatment LGI would have had if it had never sold its stock, *supra* pp. 49-51, and would permit LGI to credit foreign taxes it actually paid. But

requiring the excess income to be treated as U.S.-source also would result in double taxation, given that LGI already paid $248 million in taxes on its foreign earnings to Japan, and the risk of double taxation is precisely what the foreign tax credit regime is meant to mitigate. *Supra* pp. 10-11.

A hypothetical example similar to the facts here illustrates the point. Suppose a U.S. corporation (USCo) has an OFL account balance and makes a $1 billion investment in a Japanese subsidiary (JSub). JSub operates a business earning $200 million a year, on which Japan imposes an $80 million income tax (40%), leaving $120 million in yearly after-tax profit. After 10 years, JSub has accumulated $1.2 billion in after-tax earnings and paid $800 million of Japanese income taxes.

In Year 11, USCo sells JSub for $2.7 billion (reflecting the $1 billion initial investment, $1.2 billion in after-tax earnings, and $500 million of gain reflecting the present value of JSub's future earnings). Under § 1248, $1.2 billion of the proceeds are treated as a deemed dividend to USCo, which is thus deemed to pay the $800 million of taxes (under § 902), and receive an additional $800 million dividend (under § 78). In total, USCo is deemed to have received a dividend of $2 billion. And *that* allows USCo to claim a foreign

tax credit for $700 million of the $800 million of Japanese taxes it paid ($2 billion times the 35% U.S. rate).

That leaves $500 million of gain not treated as a dividend. That sum is subject to U.S. tax of $175 million ($500 million times the 35% U.S. rate). Under the government's reading of the regulations, that gain is treated as U.S.-source income and *none* of the remaining $100 million of Japanese taxes paid can be credited. USCo is thus subject to $100 million of double taxation for amounts paid to Japan *and* the United States.

If, instead, the $500 million of gain is treated as foreign-source income under § 1.904(f)-2(d)(1), then USCo can claim the $100 million of Japanese taxes as a foreign tax credit and reduce its U.S. tax liability on the gain to $75 million ($175 million potential tax *less* $100 million of foreign tax credits). The result: over the life of the investment, USCo made $2.5 billion: $2 billion annually ($200 million for ten years) and $500 million on the stock disposition. USCo will have paid $800 million in Japanese taxes ($80 million per year for ten years) and $75 million of U.S. tax on the disposition (after foreign tax credits), for total taxes on the investment of $875 million—which is exactly 35% of $2.5 billion. Thus, over the life of its investment, USCo will have paid the statutory 35% rate, with no double taxation.

**c.**    Regardless, had Treasury wanted to exercise the discretion Congress gave it differently, it could have done so. *See Woods Investment Co. v. Commissioner*, 85 T.C. 274, 282 (1985). That's what Treasury did prospectively in 2012, when it amended the regulations so that the gain on § 904(f)(3)(A) dispositions can't be recharacterized as foreign-source income beyond the taxpayer's OFL account balance, 77 Fed. Reg. at 37,577.

## CONCLUSION

The Court should reverse the grant of summary judgment for the government and order entry of summary judgment for LGI.

## REQUEST FOR ORAL ARGUMENT

This appeal presents an important issue that the Tax Court incorrectly resolved, with hundreds of millions of dollars in foreign tax credit to avoid double taxation at stake. LGI respectfully submits that oral argument would help the Court decide this case.

Dated: September 4, 2024

Respectfully submitted,

*/s/ Parker Rider-Longmaid*

Shay Dvoretzky
Rajiv Madan
Christopher Bowers
Nathan Wacker
Parker Rider-Longmaid
Sylvia O. Tsakos
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
Telephone: 202-371-7000
parker.rider-longmaid@skadden.com

*Counsel for Petitioner-Appellant*
   *Liberty Global, Inc.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because, as calculated by Microsoft Word, it contains 12,995 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Circuit Rule 32(B). I also certify that this brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) and Circuit Rule 32(A) because it has been prepared in a proportionally spaced typeface using Microsoft Word in a 14-point Book Antiqua font.

Dated: September 4, 2024         Respectfully submitted,

*/s/ Parker Rider-Longmaid*
Parker Rider-Longmaid
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
202-371-7000
parker.rider-longmaid@skadden.com

*Counsel for Petitioner-Appellant
  Liberty Global, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2024, I electronically filed this brief and addendum with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: September 4, 2024          Respectfully submitted,

/s/ Parker Rider-Longmaid
Parker Rider-Longmaid
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
202-371-7000
parker.rider-longmaid@skadden.com

*Counsel for Petitioner-Appellant*
  *Liberty Global, Inc.*

# United States Tax Court

161 T.C. No. 10

LIBERTY GLOBAL, INC.,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

_____

Docket No. 341-21.                    Filed November 8, 2023.

_____

At the beginning of 2010, P had an overall foreign loss (OFL) account balance of approximately $474 million. That year, P sold all its stock in a controlled foreign corporation (CFC), realizing gain of more than $3.25 billion.

On its 2010 return, P reported approximately $438 million of the gain as dividend income pursuant to I.R.C. § 1248 and approximately $2.8 billion as foreign-source income, taking the view that Treas. Reg. § 1.904(f)-2(d)(1) required this result. The increased foreign-source income allowed P to claim foreign tax credits of more than $240 million for the year.

R examined P's 2010 return and eventually issued a Notice of Deficiency determining that P overstated its foreign-source income for the year and consequently overstated its foreign tax credit.

P timely petitioned our Court for redetermination of the deficiency. The case is before us for decision under Rule 122. The parties agree that I.R.C. § 904(f)(3) applied to P's sale of CFC stock. Furthermore, they agree that I.R.C. § 904(f)(3)(A) recaptured P's OFL through the recognition of gain in an amount equal to P's OFL

**Served 11/08/23**

2

($474 million) and recharacterization of that amount as foreign-source income. But they disagree regarding the implications of I.R.C. § 904(f)(3) for P's gain beyond the amount needed to accomplish its OFL recapture.

P contends that I.R.C. § 904(f)(3)(A), when applicable, is the only mechanism for recognizing gain from the disposition of CFC stock, overriding all other recognition provisions in chapter 1 of the Internal Revenue Code. As a result, P claims that it was not required to recognize any gain that exceeded what was necessary to recapture its OFL balance. Alternatively, P argues that I.R.C. § 904(f)(3)(A) is ambiguous and that Treas. Reg. § 1.904(f)-2(d)(1) requires treating the gain as foreign-source income. Further in the alternative, P elects to deduct its foreign taxes under I.R.C. § 164(a)(3).

R maintains that I.R.C. § 904(f)(3)(A) does not govern the treatment of the remaining $2.8 billion in gain, which is instead subject to the rules of I.R.C. §§ 865, 1001, and 1248. R disagrees that I.R.C. § 904(f)(3)(A) is ambiguous and also disagrees with P's reading of Treas. Reg. § 1.904(f)-2(d)(1). R agrees, however, that P is entitled to elect to deduct its foreign taxes under I.R.C. § 164(a)(3).

*Held*: I.R.C. § 904(f)(3)(A) speaks only to the gain necessary to recapture the OFL, and no more.

*Held, further*, I.R.C. § 904(f)(3)(A) does not override any recognition provisions under chapter 1.

*Held, further*, I.R.C. § 904(f)(3)(A) is not ambiguous and does not recharacterize as foreign source gain in excess of that necessary to recapture the OFL.

*Held, further*, Treas. Reg. § 1.904(f)-2(d)(1) does not recharacterize as foreign source gain in excess of that necessary to recapture the OFL.

*Held, further*, for 2010, P may deduct its foreign taxes under I.R.C. § 164(a)(3).

_____

3

*Rajiv Madan* and *Nathan P. Wacker*, for petitioner.

*Matthew J. Avon* and *Timothy L. Smith*, for respondent.


OPINION

TORO, *Judge*:  This deficiency case calls on us to confront an issue of first impression regarding the scope of section 904(f)(3).[1]  As relevant here, that provision governs the recapture[2] of an overall foreign loss (OFL) (a concept we discuss in detail below in Discussion Part I.C), when a taxpayer disposes of shares of stock in a controlled foreign corporation (CFC) in certain types of transactions.  The parties offer competing interpretations of the statute.

Petitioner, Liberty Global, Inc., the successor to Liberty Global, Inc., and Liberty Global, Inc. & Subsidiaries (collectively, Liberty Global), maintains that section 904(f)(3) not only operates to recapture its 2010 OFL beginning account balance of some $474 million, but also exempts from U.S. taxation altogether some $2.8 billion of the gain Liberty Global realized (and ordinarily would recognize) when disposing of the stock of one of its CFCs.  Alternatively, Liberty Global maintains that section 904(f)(3) coupled with Treasury Regulation § 1.904(f)-2(d)(1) operates to convert more than $2.8 billion from U.S.-source income to foreign-source income, increasing Liberty Global's foreign tax credit by more than $240 million and offsetting its federal income tax liability accordingly.

The  Commissioner  of  Internal  Revenue  counters  that section 904(f)(3) and the relevant regulations have a much more modest scope.  In his view, they serve to recapture Liberty Global's OFL of about

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (I.R.C. or Code), in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

[2] In tax parlance, the term "recapture" typically refers to a scenario where a taxpayer has received a tax benefit in a prior year and circumstances change such that, in the current year, the taxpayer is required to "recapture"—i.e., give back—that benefit.

4

$474 million, but otherwise neither exempt from taxation the remaining portion of Liberty Global's gain nor change its source.

As we explain below, the text of the relevant statutory and regulatory provisions, the structure of the Code, and policy considerations all favor the Commissioner's interpretation.[3]

*Background*

The parties submitted this case fully stipulated under Rule 122. The facts below are based on the pleadings and the parties' Stipulation of Facts (including the Exhibits attached thereto). The parties' Stipulation of Facts with the accompanying Exhibits is incorporated herein by this reference.

Liberty Global is a Delaware corporation with its principal place of business in Colorado. It is the ultimate U.S. parent company, and the direct or indirect owner, of an affiliated group of U.S. and foreign corporations. Liberty Global, together with its affiliates, operated converged video, broadband, and communications businesses during 2010.

In January 2010, Liberty Global indirectly owned more than 50% of the voting interests in Jupiter Telecommunications Co. Ltd. (J:COM), a Japanese entity, making J:COM a CFC, as defined in section 957, for 2010.[4] In a series of transactions that took place on February 18, 2010, Liberty Global's interests in J:COM were transferred to an unaffiliated foreign corporation for $3,961,608,988 in a transaction treated as a sale for U.S. federal income tax purposes.[5] Liberty Global did not own any stock in J:COM following the sale.

---

[3] In the event the Court agrees with the Commissioner on the primary issues in the case, Liberty Global elects to deduct its foreign taxes under section 164(a)(3) for one of the years at issue. The Commissioner does not dispute that Liberty Global may do so. Given our disposition, Liberty Global's election shall be taken into account when the parties prepare the computations under Rule 155.

[4] Liberty Global indirectly owned and eventually disposed of the J:COM stock through a complex network of affiliates. Because this organizational structure does not affect our analysis, we do not discuss it further.

[5] To simplify our discussion, we refer to these transactions collectively as Liberty Global's sale of the stock of J:COM, even though Liberty Global transferred its ownership interests in J:COM in transactions involving various indirectly owned entities.

5

Liberty Global timely filed its 2010 U.S. consolidated income tax return. That return reported recognized gain of $3,256,557,143 from the sale of the J:COM stock and showed a beginning balance of $474,372,166 for Liberty Global's general limitation category OFL account. Liberty Global characterized $438,135,179 of the gain as dividend income pursuant to section 1248 and the remaining $2,818,421,964 as capital gain. It treated the capital gain as foreign-source income.

Liberty Global attached to its 2010 return Schedule UTP (Form 1120), Uncertain Tax Position Statement. The Schedule UTP stated as follows:

> [Liberty Global] entered into a transaction to sell its entire interest in its Japanese subsidiary, [J:COM], during the year. [Liberty Global] recognized a gain on the sale and due to recharacterization of the gain also recognized deemed section 902 credits as part of the overall transaction. The issues are the application of the rules under section 904 to the transaction and whether the amount of the foreign tax credit taken as a result of the transaction is appropriate.

The Commissioner examined Liberty Global's 2010 return and issued a Notice of Deficiency, in which he determined a deficiency of $241,791,309. In relevant part, the Commissioner determined that Liberty Global overstated its foreign-source income and was not entitled to any foreign tax credit for the year. The Notice of Deficiency explained the determination as follows:

> It is determined that no foreign tax credit is allowed due to adjustments affecting foreign source income. The amount of U.S. source gain that is recharacterized as foreign source under [I.R.C. §] 904(f)(3) is limited to the amount necessary to recapture of the Overall Foreign Losses ("OFLs") in the OFL account at the beginning of the year. . . . [Y]our foreign tax credit allowed for [the] tax year ended December 31, 2010 is $0.00 rather than . . . $241,791,309.00.

6

Liberty Global timely petitioned our Court for redetermination of the deficiency.[6]

*Discussion*

I.    *The Foreign Tax Credit*

    A.    *General Principles*

The United States generally taxes the worldwide income of its citizens and domestic corporations. *See, e.g.*, *Cook v. Tait*, 265 U.S. 47, 56 (1924); *Huff v. Commissioner*, 135 T.C. 222, 230 (2010). This policy choice creates the potential for double taxation—that is, the taxation of the same income by both the United States and another country. *See AptarGroup Inc. v. Commissioner*, 158 T.C. 110, 112 (2022). To address the risk of double taxation, the Code allows U.S. citizens and domestic corporations to elect to claim a credit for income tax paid to a foreign country. I.R.C. § 901(a); *see also Am. Chicle Co. v. United States*, 316 U.S. 450, 451 (1942). A domestic corporation may also claim a credit for a tax that it is deemed to have paid or accrued. I.R.C. § 960; *AptarGroup Inc.*, 158 T.C. at 112.

For almost as long as the foreign tax credit has been part of the U.S. tax system, Congress has expressed concern that the foreign tax credit might be misused to reduce U.S. tax due on U.S.-source income. *See* Dirk J.J. Suringa, *The Foreign Tax Credit Limitation Under Section 904* (Section 904 Portfolio), 6060-1st Tax Mgmt. (BNA) at III (setting out an abbreviated history of the foreign tax credit and highlighting Congress's addition of limitations on the credit); *see also* 1 Joel D. Kuntz & Robert J. Peroni, *U.S. International Taxation* ¶ B4.16[1], at B4-185–86 (2022). Several Code provisions address this concern, chief among them, section 904. *See AptarGroup Inc.*, 158 T.C. at 112 (citing *Theo. H. Davies & Co. v. Commissioner*, 75 T.C. 443, 446 n.9 (1980), *aff'd per curiam*, 678 F.2d 1367 (9th Cir. 1982)).

---

[6] The Commissioner also issued to Liberty Global a Notice of Deficiency for 2014, and Liberty Global timely sought redetermination of that deficiency. Because the Commissioner's determination concerning 2014 flows directly from his determination with respect to 2010, we do not discuss it separately.

7

B.     *Section 904(a)—The Foreign Tax Credit Limitation*

The principal rule in section 904 appears at subsection (a), which provides as follows:

> The total amount of the credit taken under section 901(a) shall not exceed the same proportion of the tax against which such credit is taken which the taxpayer's taxable income from sources without the United States (but not in excess of the taxpayer's entire taxable income) bears to his entire taxable income for the same taxable year.

We have previously expressed the limitation set out in section 904(a) as an equation:

$$\text{Maximum credit} = \frac{\text{Taxable income from without U.S.}}{\text{Worldwide taxable income}} \times \text{U.S. tentative tax}$$

*Theo. H. Davies & Co.*, 75 T.C. at 444.  As the formula makes clear, the amount of taxable income from sources without the United States (also known as foreign-source income) is a key driver of the section 904(a) limitation.  All else being equal, the higher the foreign-source income, the higher the foreign tax credit a taxpayer may be entitled to take.

C.     *Section 904(f)—OFL Recapture*

The provision at the core of this case—section 904(f)—also sets out rules intended to protect the right of the United States to impose U.S. tax on U.S.-source income.  Some background may be helpful to understand how section 904(f) operates and the potential issues an OFL presents.  We find it easiest to provide that background through an example.

1.     *The OFL Problem*

Imagine that USCo, a U.S. corporation with existing U.S. operations, opens a branch in Country A at the beginning of Year 1.[7]  Now assume that, by the end of Year 1, USCo's U.S. operations generate taxable income of $300 (or, in tax parlance, $300 of U.S.-source

---

[7] Generally speaking, a branch is a division of a business within a corporation. *See Dover Corp. & Subs. v. Commissioner*, 122 T.C. 324, 351 (2004).  As relevant here, the U.S. tax system generally requires that a U.S. parent include in its taxable income the profits earned by its foreign branches.  *See Columbian Rope Co. v. Commissioner*, 42 T.C. 800, 817 (1964).

8

income), while the branch's operations result in a loss of $100. Assuming that USCo has no other foreign operations, the $100 loss comprises its OFL for the year. *See* I.R.C. § 904(f)(2) (generally providing that an OFL exists when a taxpayer's gross foreign-source income for the year is less than the deductions properly apportioned or allocated to that income).

Under our regime of worldwide taxation, USCo must report in its Year 1 U.S. federal income tax return both the income from its operations in the United States and the loss from the branch's operations in Country A. Thus, USCo's overall taxable income for Year 1 would be $200 ($300 U.S.-source income less the $100 foreign-source loss). Assuming a tax rate of 35%, USCo's Year 1 return would show $70 of tax due ($200 taxable income × 35%).

Imagine further that in Year 2 USCo's U.S. operations again generate U.S.-source income of $300, but this time the branch's operations turn profitable, generating foreign-source income of $100. Once again, under our regime of worldwide taxation, USCo must report in its Year 2 return the results of its U.S. and Country A operations, and its overall taxable income would be $400 ($300 U.S.-source income plus $100 foreign-source income). Assuming a tax rate of 35%, one would expect USCo's Year 2 return to show $140 of tax due ($400 taxable income × 35%).

Here is where the foreign tax credit may complicate things. Assume that, under Country A's rules, USCo's branch is not permitted to use prior year losses to offset current year income and that Country A imposes a 35% tax on income from Country A sources. Under these rules, the branch would be required to pay to Country A $35 of tax for Year 2 ($100 of Country A source income × the 35% Country A tax rate). If the usual foreign tax credit rules were applied without modification for Year 2, under the section 904(a) formula discussed above, USCo would be allowed a foreign tax credit of $35, computed as follows: Taxable income from without the United States (i.e., foreign-source income) ($100) / worldwide income ($400) × U.S. tentative tax ($140) = Maximum credit of $35. Thus, taking into account the foreign tax credit, USCo would be required to pay only $105 in U.S. tax for Year 2 (U.S. tentative tax of $140 less $35 foreign tax credit).

Considering the two years together, we notice that USCo earned $600 in U.S.-source income ($300 in each year) and no income from the Country A branch (the $100 income in Year 2 is offset by the $100 loss

9

in Year 1).  Given these results, one would have expected USCo to have paid $210 in U.S. tax ($600 × 35%) and no tax in Country A.  But, as the example shows, the combined effect of (a) Country A's decision not to permit branch losses to be carried forward and offset future income and (b) the ordinary application of section 904(a) would lead to the United States collecting only $175 in tax ($70 in Year 1 and $105 in Year 2), while Country A would collect $35 in tax (all in Year 2).

Congress did not believe this outcome to be consistent with the objectives of the foreign tax credit, *see Hershey Foods Corp. v. Commissioner*, 76 T.C. 312, 322–23 (1981) (citing Staff of J. Comm. on Tax'n, 94th Cong., General Explanation of the Tax Reform Act of 1976, at 236 (J. Comm. Print), *as reprinted in* 1976-3 C.B. (Vol. 2) 1, 248; S. Rep. No. 94-938, at 236 (1976), *as reprinted in* 1976-3 C.B. (Vol. 3) 248, 274); Section 904 Portfolio at III.J.2; James P. Fuller & Robert Feinschreiber, *The New Foreign Tax Credit Rules: Analysis and Planning*, 3 Int'l Tax J. 393, 394 (1977), and in 1976 added a new section 904(f) to address the issue, *see* Tax Reform Act of 1976, Pub. L. No. 94-455, § 1032(a), 90 Stat. 1520, 1624–25; *Hershey Foods Corp.*, 76 T.C. at 322; Section 904 Portfolio at III.J.2.  As relevant here, Congress proceeded in two steps.

2.    *Section 904(f)(1)—OFL Recapture from Future Income*

First, in section 904(f)(1), Congress addressed the fact pattern illustrated by the example—a taxpayer that earns foreign-source income after having incurred a foreign-source loss that previously offset U.S.-source income (i.e., an OFL).[8]  *See Hershey Foods Corp.*, 76 T.C.

---

[8] In 2010, section 904(f)(1) read as follows:

(1) General rule.—For purposes of this subpart and section 936, in the case of any taxpayer who sustains an overall foreign loss for any taxable year, that portion of the taxpayer's taxable income from sources without the United States for each succeeding taxable year which is equal to the lesser of—

(A) the amount of such loss (to the extent not used under this paragraph in prior taxable years), or

(B) 50 percent (or such larger percent as the taxpayer may choose) of the taxpayer's taxable income from sources without the United States for such succeeding taxable year,

shall be treated as income from sources within the United States (and not as income from sources without the United States).

at 322–23. Section 904(f)(1) requires such taxpayers to recharacterize, for purposes of determining their foreign tax credit, some or all of the foreign-source income as U.S.-source. This resourcing reduces the amount reflected in the numerator of the section 904(a) formula, thus reducing the foreign tax credit available to the taxpayer. Put another way, section 904(f)(1) recaptures the prior benefit of permitting USCo to offset its U.S. income with the foreign-source loss, so that "when the year(s) of excess loss and the year(s) of recharacterization are viewed together, U.S. source income will bear its full tax share." *See Hershey Foods Corp.*, 76 T.C. at 323.[9]

Congress recognized, though, that a taxpayer might dispose of the assets used in its foreign operations before an OFL had been fully recaptured. *See id.* The disposition of those assets would leave the mechanism reflected in section 904(f)(1) ineffectual as the taxpayer would no longer have any foreign-source income that might be recharacterized as U.S.-source.

>    3.    *Section 904(f)(3)—OFL Recapture from Asset Dispositions*

That led Congress to its second step: adding rules that govern the disposition of assets used in foreign operations in section 904(f)(3). The provision "accelerates the recapture process upon such disposition by requiring recognition at the time of disposition of an amount of income equal to the lesser of the gain realized or the amount of any previously unrecaptured excess foreign loss." *Hershey Foods Corp.*, 76 T.C. at 323; *see also* Harvey P. Dale, *The Reformed Foreign Tax Credit: A Path Through the Maze*, 33 Tax L. Rev. 175, 217 (1978) ("[Section 904(f)(3)'s] evident purpose is to prevent avoidance of [section 904(f)(1)'s] rule by transfer or abandonment of a business which is pregnant with OFL recapture.").

Following passage of the Tax Reform Act of 1976, section 904(f)(3)(A) read in relevant part:

---

With exceptions not pertinent to our discussion, section 904(f)(2) defined the term "overall foreign loss" to mean "the amount by which the gross income for the taxable year from sources without the United States . . . for such year is exceeded by the sum of deductions properly apportioned or allocated thereto."

[9] To maintain fairness, section 904(g) now includes similar rules allowing taxpayers to recapture "overall domestic losses" that limited the availability of foreign tax credits in prior years.

11

In general.—For purposes of this chapter, if property which has been used predominantly without the United States in a trade or business is disposed of during any taxable year—

> (i) the taxpayer, notwithstanding any other provision of this chapter (other than paragraph (1)), shall be deemed to have received and recognized taxable income from sources without the United States in the taxable year of the disposition, by reason of such disposition, in an amount equal to the lesser of the excess of the fair market value of such property over the taxpayer's adjusted basis in such property or the remaining amount of the overall foreign losses which were not used under paragraph (1) for such taxable year or any prior taxable year, and

> (ii) paragraph (1) shall be applied with respect to such income by substituting "100 percent" for "50 percent".[10]

In 2004, Congress amended section 904(f)(3) to cover certain dispositions of stock in a CFC.[11] *See* American Jobs Creation Act of 2004, Pub. L. No. 108-357, § 895, 118 Stat. 1418, 1647; I.R.C. § 904(f)(3)(D). That amendment made section 904(f)(3) applicable to Liberty Global's sale of J:COM stock in 2010, giving rise to the dispute before us.

---

[10] Section 904(f)(3)(B)(i) provides that "[f]or purposes of this subsection, the term 'disposition' includes a sale, exchange, distribution, or gift of property whether or not gain or loss is recognized on the transfer." Under section 904(f)(3)(B)(ii), "[a]ny taxable income recognized solely by reason of subparagraph (A) shall have the same characterization it would have had if the taxpayer had sold or exchanged the property."

[11] As relevant to our discussion, in 2010, section 904(f)(3)(D) read as follows:

> (i) In general.—This paragraph shall apply to an applicable disposition in the same manner as if it were a disposition of property described in subparagraph (A) . . . .
> (ii) Applicable disposition.—For purposes of clause (i), the term "applicable disposition" means any disposition of any share of stock in a controlled foreign corporation in a transaction or series of transactions if, immediately before such transaction or series of transactions, the taxpayer owned more than 50 percent (by vote or value) of the stock of the controlled foreign corporation.

12

II.    *Application of Section 904(f) to the Sale of J:COM Stock*

The parties agree on many of the issues in this case.  They agree, for example, that Liberty Global realized gain of more than $3.25 billion on its sale of J:COM stock.  They further agree that, absent section 904(f)(3), the Code's normal rules would require the gain to be fully recognized under section 1001, would treat the gain as U.S.-source income under section 865, and would recharacterize approximately $438 million of the gain as dividend income under section 1248.

Even regarding the application of section 904(f)(3), the parties agree on a great deal.  They agree that Liberty Global's sale of J:COM stock was a qualifying disposition under section 904(f)(3)(D) and therefore that section 904(f)(3)(A) applied to recharacterize at least a portion of the gain from that transaction.  They further agree that section 904(f)(3) operated as intended to the extent of Liberty Global's beginning OFL balance of $474,372,166—i.e., that the provision recaptured the OFL by (1) recharacterizing $474,372,166 of gain from the J:COM stock sale as foreign-source income, *see* I.R.C. § 904(f)(3)(A)(i), and (2) applying paragraph 904(f)(1) with respect to that income, substituting 100% for 50%, *see* I.R.C. § 904(f)(3)(A)(ii).

Where the parties diverge is on the implications of section 904(f)(3) for Liberty Global's remaining gain—in other words, gain beyond the amount needed to accomplish the OFL recapture.

According to the Commissioner, section 904(f)(3) has no further implications.  Once it recaptures the outstanding OFL, its work is done and it does not affect the balance of a taxpayer's gain.  Instead, the remaining gain is taxed under other Code provisions, which in this case require the gain to be fully recognized (section 1001), to some extent recharacterized (section 1248), and treated as U.S.-source income (section 865).

Liberty Global, on the other hand, says that section 904(f)(3) does a great deal more than recapture the beginning balance of its OFL account, offering two competing interpretations.  First, Liberty Global contends that, when section 904(f)(3) applies, it is the only mechanism for recognizing gain from a transaction, overriding section 1001 and any other gain recognition provisions in chapter 1 of the Code.  As a result, Liberty Global says it was not required to recognize any gain on its sale of J:COM stock beyond the $474,372,166 needed to recapture its OFL.  In other words, Liberty Global's first argument is that section 904(f)(3)

13

completely exempted its remaining $2.8 billion of gain from U.S. federal income tax.[12]

Second, in the event we disagree with this outcome, Liberty Global argues that section 904(f)(3) is by necessity ambiguous and that Treasury Regulation § 1.904(f)-2(d)(1) requires it to treat all its gain as foreign-source income. In combination with the section 904(a) formula we have already discussed, this view results in Liberty Global being allowed foreign tax credits totaling more than $240 million for 2010, permitting it to offset U.S. tax on gain that, absent the proposed recharacterization, would have been U.S.-source.

Notably, Liberty Global makes no attempt to explain why, in a rule that it agrees was adopted "to prevent a taxpayer from offsetting U.S.-source income in one year, then claiming foreign tax credits on positive foreign-source income in a subsequent year," Pet'r's Opening Br. 9–10, Congress would have provided for either one of these rather remarkable results. Indeed, it seems to acknowledge the absence of any potential rationale in its briefing. Pet'r's Opening Br. 23 ("[Liberty Global] acknowledges that this results in no tax on approximately $2.8 billion of income that would otherwise be taxed under other provisions of the Code. . . . However, 'the best evidence of Congress's intent is the statutory text.'" (quoting *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 544 (2012))). The Court agrees that policy arguments cannot override clear text. *See United States ex rel. Schutte v. SuperValu Inc.*, 143 S. Ct. 1391, 1404 (2023) ("Nor do we need to address any of the parties' policy arguments, which 'cannot supersede the clear statutory text.'" (quoting *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 192 (2016))). But we disagree with Liberty Global's reading of the text. We take its two arguments in turn.

A.   *Section 904(f)(3) Does Not Cap Liberty Global's Recognized Gain.*

Liberty Global first argues that section 904(f)(3)(A)(i) served to limit the gain it recognized on the stock sale to $474,372,166—i.e., the

---

[12] The parties appear to disagree about whether, if Liberty Global were to prevail on either of its arguments, amounts effecting OFL recapture under section 904(f)(3) could also be recharacterized as dividends under section 1248, essentially performing double duty. Because we reject both of Liberty Global's arguments, this dispute does not affect the outcome of the case, and we do not address it further.

14

amount of its OFL balance. "As in all statutory construction cases, we begin with the language of the statute." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002). And as the Supreme Court has explained:

> In statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself. *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 407 (2011). Where . . . that examination yields a clear answer, judges must stop. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999).

*Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019).

In 2010, section 904(f)(3)(A) read the same as it did following the passage of the Tax Reform Act of 1976. In relevant part, section 904(f)(3)(A)(i) says that upon the disposition of certain property,

> the taxpayer, notwithstanding any other provision of this chapter (other than paragraph (1)), shall be deemed to have received and recognized taxable income from sources without the United States in the taxable year of the disposition, by reason of such disposition, in an amount equal to the lesser of the excess of the fair market value of such property over the taxpayer's adjusted basis in such property or the remaining amount of the overall foreign losses which were not used under paragraph (1) for such taxable year or any prior taxable year . . . .

In other words, when a taxpayer disposes of the right kind of property, the taxpayer, notwithstanding any other provision of chapter 1, is deemed to recognize foreign-source income in an amount sufficient to offset its remaining OFL, but only to the extent of the taxpayer's actual gain from the transaction.

As the quoted text demonstrates, section 904(f)(3)(A) mandates specific treatment for a portion of a taxpayer's gain from a disposition (i.e., an amount equal to the lesser of the taxpayer's remaining OFL and its actual gain). But the provision is silent as to the treatment of any gain beyond that amount.

The parties infer very different outcomes from this silence. The Commissioner posits that existing Code provisions continue to apply to the remaining gain, while Liberty Global contends that

15

section 904(f)(3)(A)(i) supplants all other Code sections, precluding the taxation of any gain beyond the amount it specifies. The statute provides a clear answer to this dispute, which we resolve in the Commissioner's favor.

To begin with, the Commissioner's interpretation adheres to the text of section 904(f)(3)(A)(i), which provides no instruction at all regarding amounts in excess of the gain necessary to recapture an OFL balance. Nor does that provision say that any amount from an applicable disposition is exempt from recognition. We take the statute at its word: If the text does not speak to the excess gain, then it does not control the treatment of that gain. Silence is insufficient to create a new exclusion. *Cf. Commissioner v. Schleier*, 515 U.S. 323, 328 (1995) (noting that "exclusions from income must be narrowly construed" (quoting *United States v. Burke*, 504 U.S. 229, 248 (1992) (Souter, J., concurring in the judgment)). Instead, we read section 904(f)(3)(A)(i) as doing exactly what it purports to do regarding excess gain—nothing. And the provision's inaction leaves other applicable Code sections (here, sections 865, 1001, and 1248) to operate unimpeded.

Adopting Liberty Global's opposing interpretation would require us to infer a limiting principle that is not present in the statute's text. Specifically, we would need to read the provision as requiring gain recognition that is *limited to* the amount specified therein. But neither those words nor similar ones appear in section 904(f)(3), and we decline Liberty Global's invitation to add them. *See, e.g.*, *Bates v. United States*, 522 U.S. 23, 29 (1997) ("[W]e ordinarily resist reading words or elements into a statute that do not appear on its face.").

Liberty Global might counter that the statute mandates its preferred result by negative inference. In other words, in Liberty Global's view, because section 904(f)(3)(A) requires a taxpayer to recognize a specified amount of gain as taxable income, it must follow that the remaining gain need not be recognized. But what the statute actually says is that, with respect to the specified gain, "the taxpayer . . . *shall be deemed* to have received and recognized taxable income from sources without the United States." I.R.C. § 904(f)(3)(A)(i) (emphasis added). Thus, even if one were to accept an argument by negative inference, the more natural inference would be that there is no deeming with respect to the excess gain. Or, put differently, that existing Code provisions continue to apply with respect to the excess gain.

16

Importantly, our interpretation is far more consistent with the broader statutory scheme. *See West Virginia v. EPA*, 142 S. Ct. 2587, 2607 (2022) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." (quoting *Davis v. Mich. Dept. of Treasury*, 489 U.S. 803, 809 (1989))). In order to apply section 904, generally a taxpayer must first elect to claim the foreign tax credit. *See* I.R.C. § 901(a). And, even when applying section 904, a taxpayer turns to subsection (f) only if it has an outstanding OFL balance, and to paragraph (f)(3) only if, in addition to having an outstanding OFL balance, it also disposes of qualifying foreign property. One would not expect such a narrow rule, helpfully titled "Recapture of overall foreign loss" and adopted to *limit* a taxpayer's foreign tax credit, to serve the dual function of exempting billions of dollars of gain from U.S. taxation. As the Supreme Court has said, "Congress does not 'hide elephants in mouseholes' by 'alter[ing] the fundamental details of a regulatory scheme in vague terms or ancillary provisions." *Sackett v. EPA*, 143 S. Ct. 1322, 1340 (2023) (quoting *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001)).

Consider the following example, which illustrates the implications of Liberty Global's interpretation: Assume that, in the same tax year, taxpayer A and taxpayer B each sell 100% of their stock in separate CFCs.[13] Each taxpayer realizes $500 million of gain from its respective sale. Taxpayer A has a beginning OFL balance of $10, and taxpayer B has no OFL. Because taxpayer A has an OFL and made a qualified disposition of CFC stock, section 904(f)(3) would apply. Under our reading of that section, $10 of taxpayer A's gain would be recharacterized as foreign-source income and subject to the recapture rule in section 904(f)(1). I.R.C. § 904(f)(3). And that is where the reach of section 904(f)(3) would end. But, in Liberty Global's view, the mere fact that section 904(f)(3) applies also means that all of taxpayer A's remaining gain ($499,999,990) would not be recognized and would therefore be exempt from U.S. tax. By contrast, because taxpayer B had no OFL to implicate section 904(f)(3), all $500 million of its gain would be recognized and taxable. We see nothing in the statute, nor indeed in common sense, to support these drastically disparate results.

Liberty Global makes much of section 904(f)(3)(A)(i)'s prefatory language, which states that the provision applies "notwithstanding any

---

[13] For simplicity, we assume that there is no dividend recharacterization under section 1248 for either transaction.

17

other provision of this chapter." To Liberty Global, this text signals that section 904(f)(3) turns off all other recognition provisions. But Liberty Global overreads the text.

"In statutes, the word ['notwithstanding'] 'shows which provision prevails in the event of a clash.'" *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 301 (2017) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 126–27 (2012)). On the facts before us, there is no conflict between section 904(f)(3) and section 1001 or any other provision requiring recognition. Rather, section 904(f)(3) operates to ensure the minimum amount of recognition necessary to recapture a taxpayer's OFL. It does not prevent recognition beyond the minimum amount and, as a result, does not conflict with provisions that require additional recognition. The text of section 904(f)(3)(A)(i) confirms this point, as Liberty Global itself appears to acknowledge in its brief:

> Indeed, the statute does refer to the "deem[ing]" of income and uses "fair market value" of property to measure income. That language makes more sense in the context of nonrecognition transactions; for recognition transactions, income would not be deemed, and income would be measured using [the] amount realized (or purchase price) rather than fair market value.

Pet'r's Opening Br. 31.

Section 904(f)(3) does, however, sometimes conflict with *nonrecognition* provisions (e.g., section 351). And it does sometimes conflict with sourcing rules (e.g., section 865), as in the case before us. And in those circumstances, the rule of section 904(f)(3) prevails over the conflicting rule elsewhere in the Code. In short, although the inclusion of "notwithstanding" in the statute makes perfect sense, it does not support Liberty Global's reading.

Liberty Global's argument that the Commissioner's and our interpretation of the statute impermissibly creates different rules for recognition and nonrecognition transactions fails for similar reasons. When it applies, section 904(f)(3) ensures an amount of recognition sufficient to recapture a taxpayer's OFL. This rule, by its nature, has different implications for recognition transactions, where no recharacterization is required to effect recapture (at least as to recognition), and nonrecognition transactions, where at least some recharacterization is required. Nothing about this result is

18

impermissible; rather, it reflects the statute operating as drafted. And this result is fully consistent with this Court's interpretation of section 904(f)(3) shortly after it was adopted. *See Hershey Foods Corp.*, 76 T.C. at 323 ("Section 904(f)(3) accelerates the recapture process upon such disposition by requiring recognition at the time of disposition of an amount of income equal to the lesser of the gain realized or the amount of any previously unrecaptured excess foreign loss."). Liberty Global's reading, on the other hand, would result in different recognition rules being applied to taxpayers with OFL balances and those without, giving the taxpayers with OFL balances much more beneficial tax treatment, as our example above illustrates. Moreover, as the Commissioner points out, Liberty Global's reading is internally inconsistent when it comes to recognition and nonrecognition transactions. *See* Resp't's Answering Br. 24–25 ("Under [Liberty Global's] interpretation, in the case of recognition transactions, taxpayers would be exempt from realizing and recognizing the excess gain, while, in the case of non-recognition transactions, the unrecognized portion of the gain would merely be deferred until the property is disposed of in a recognition transaction.").

In summary, we disagree that section 904(f)(3) exempts the excess gain from Liberty Global's sale of J:COM stock and decide this issue in the Commissioner's favor.

B.    *Treasury Regulation § 1.904(f)-2(d)(1) Does Not Permit Liberty Global to Treat All of Its Gain on the J:COM Stock Sale as Foreign-Source Income.*

Alternatively, Liberty Global argues that the statute is ambiguous and that, because of the ambiguity, Treasury Regulation § 1.904(f)-2(d)(1) applies to treat all of its gain on the J:COM stock sale as foreign-source income. If Liberty Global were correct, then any gain in excess of its remaining OFL balance, which would otherwise be U.S.-source income under section 865, would become foreign-source income. As a result, the numerator in its foreign tax credit computation under section 904(a) would increase, allowing it to use more than $240 million in additional foreign tax credits.

As we have already discussed, however, the statute is not ambiguous. By its plain terms, the statute directs a taxpayer to deem amounts necessary to recapture an OFL as recognized foreign-source taxable income. It does not speak to gain beyond that amount because it has no reason to. And silence in this instance, where other Code

19

provisions address the salient points, is not ambiguity; rather, section 904(f)(3)(A)(i) leaves those other provisions to do their work.

Even assuming, however, for the sake of argument only, that the statute were ambiguous, we do not read the regulations as supplying the rule that Liberty Global attempts to draw from them.

We begin with the observation that the regulatory text Liberty Global relies on was adopted in 1987, long before Congress enacted the statutory provision applicable here.[14]  It would be unusual for a regulation to speak with specificity regarding an issue not implicated at all by the then-existing statute.  And, indeed, the regulation did not address sales of CFC stock.  Instead, paragraph (d)(1) at the time read the same as it did in 2010.  Specifically, it instructed taxpayers on what to do "[i]f [the] taxpayer disposes of property used or held for use predominantly without the United States in a trade or business."  Treas. Reg. § 1.904(f)-2(d)(1).  Needless to say, Liberty Global did not dispose of such property in 2010, calling into question the relevance of the regulation to the facts before us.

Even more problematic for Liberty Global's position, the regulations, like the statute, speak to the amount of gain necessary to effect the recapture of an OFL, nothing more.  This is evident from both the text of the specific rule on which Liberty Global relies and the overall regulatory context.

Starting with the former, the text of the relevant regulation reads as follows:

> Treas. Reg. § 1.904(f)-2(d)(1)  In general.  If a taxpayer disposes of property used or held for use predominantly without the United States in a trade or business during a taxable year and that property generates foreign source taxable income subject to a separate limitation to which paragraph (a) of this section is applicable, (i) gain will be recognized on the disposition of such property, (ii) such gain will be treated as foreign source income subject to the

---

[14] We refer to section 904(f)(3)(D), which (as we have already noted) was added in 2004 to apply existing rules to certain dispositions of stock in a CFC.  *See* American Jobs Creation Act of 2004, § 895, 118 Stat. at 1647; *see also* Section 904 Portfolio at XII.E.4.e ("Until 2004, § 904(f)(3) did not apply to gain realized on the transfer of corporate stock held for investment purposes, which covered most types of stock ownership.").

20

same limitation as the income the property generated, and (iii) the applicable overall foreign loss account shall be recaptured as provided in paragraphs (d)(2), (d)(3), and (d)(4) of this section.

Liberty Global asks us to read paragraph (d)(1), and in particular paragraph (d)(1)(ii), of the regulation in isolation, a method prohibited by our caselaw.[15] But even if we were to take this approach, all it would tell us, in plain terms, is that when a taxpayer disposes of qualifying property (1) some amount of gain is recognized, (2) "such [recognized] gain will be treated as foreign source income," and (3) any OFL balance will be recaptured. Treas. Reg. § 1.904(f)-2(d)(1). It does not specify the amount of gain to be recognized nor, by implication, the amount of gain to be treated as foreign-source income. And it certainly does not say that it applies to amounts beyond those necessary for recapturing an OFL balance.

Moreover, when we read the regulation in the context of the greater regulatory scheme, its meaning becomes even more apparent. Treasury Regulation § 1.904(f)-2(d)(1) directs us to paragraph (a) for the portion of income to which it applies. Treasury Regulation § 1.904(f)-2(a) says that "[r]ecapture is accomplished by treating as United States source income *a portion of the taxpayer's foreign source taxable income of the same limitation as the foreign source loss that resulted in an overall foreign loss*." (Emphasis added.) In other words, the regulation speaks only to the portion of gain necessary to recapture an OFL balance. *See also, e.g.*, Treas. Reg. § 1.904(f)-2(a) ("A taxpayer shall be required to recapture an overall foreign loss as provided in this section."); *id.* para. (b)(1) (explaining how to determine the amount of a taxpayer's "overall foreign loss subject to recapture"); *id.* para. (d)(4)(iii) ("The provisions of paragraphs (a) and (b) of this section shall be applied to the extent of 100 percent of the foreign source taxable income which is recognized under paragraph (d)(4)(i) of this section."); *id.* subpara. (7) (example 3). The broad sourcing rule that Liberty Global advances is nowhere to be found in the regulation.

Finally, it is worth noting that Liberty Global's preferred reading of the regulation is disfavored under general rules of interpretation. We

---

[15] We interpret regulations using canons of statutory construction, beginning with the text of the regulation, and giving effect to its plain meaning. *See, e.g.*, *Austin v. Commissioner*, 141 T.C. 551, 563 (2013). To determine a regulation's plain meaning, we look to its text as well as the text and design of the regulation as a whole. *See, e.g.*, *id.*

21

interpret regulations in a manner that avoids conflicts with the corresponding statute. *See, e.g.*, *Austin*, 141 T.C. at 563 (citing *Phillips Petroleum Co. & Affiliated Subs. v. Commissioner*, 97 T.C. 30, 35 (1991), *aff'd without published opinion*, 70 F.3d 1282 (10th Cir. 1995)). Because the statute applies only to amounts necessary to recapture an OFL balance, Liberty Global's reading of the regulation is directly at odds with the statutory text.[16]

In summary, section 904(f)(3)(A)(i) is not ambiguous, and Treasury Regulation § 1.904(f)-2(d)(1) does not support Liberty Global's position. We therefore find for the Commissioner on this issue as well.

III.  *Election to Deduct Foreign Taxes*

Because we decide against Liberty Global with respect to both its arguments under section 904(f)(3), it alternatively wishes to deduct its foreign taxes under section 164(a)(3), which it says will also cause the reversal of income recognized for its 2010 tax year under section 78.[17] The Commissioner has conceded that Liberty Global may deduct its foreign taxes in lieu of claiming a foreign tax credit. Therefore, we have no occasion to discuss the matter further and conclude that Liberty Global may deduct its foreign taxes and reverse the income recognized under section 78.

IV.  *Conclusion*

For the reasons stated above, we resolve the case as it relates to section 904(f)(3) in favor of the Commissioner, but conclude that Liberty Global may deduct its foreign taxes for 2010.

To reflect the foregoing,

*Decision will be entered under Rule 155.*

---

[16] Liberty Global argues that subsequent amendments to the regulation in 2012 support its interpretation. *See* T.D. 9595, 2012-30 I.R.B. 71, 71. But the fact that the regulation was later clarified does not change our reading of the plain text for the years at issue, for the reasons we have already discussed. Moreover, for the same reasons, we find unpersuasive Liberty Global's argument that the Commissioner is improperly attempting to apply here a regulatory rule that did not become effective until after 2010.

[17] For a general description of the objective and operation of section 78, see *Champion International Corp. v. Commissioner*, 81 T.C. 424, 426–27 & n.6 (1983).

# UNITED STATES TAX COURT

LIBERTY GLOBAL, INC.,           )
                                        )
       Petitioner,         )
                                          )
       v.                )  Docket No. 341-21
                                          )  Judge Toro
COMMISSIONER OF INTERNAL     )
REVENUE,                  )  Filed Electronically
                                          )
       Respondent.      )

## DECISION

Pursuant to the opinion of the Court filed November 8, 2023, and incorporating herein the facts recited in respondent's computation as the findings of the Court, it is

ORDERED AND DECIDED: That there is a deficiency in income tax due from petitioner for the taxable year 2010 in the amount of $153,585,549.00 and,

That there is a deficiency in income tax due from petitioner for the taxable year 2014 in the amount of $2,014,291.00, without regard to any net operating loss carryback from the taxable year 2019.

**(Signed) Emin Toro**
**Judge**

Entered:

\*   \*   \*   \*   \*

**Entered and Served 03/27/24**

The parties stipulate that the foregoing decision is in accordance with the opinion of the Court and respondent's computation, and that the Court may enter this decision, without prejudice to the right of either party to contest the correctness of the decision entered herein.

It is further stipulated that interest will be assessed as provided by law on the deficiency in tax due from petitioner.

It is further stipulated that the foregoing decision does not take into consideration the Form 1139 Corporate Application for Tentative Refund, filed on December 22, 2020, claiming a carryback of a net operating loss from the 2019 taxable year to taxable year 2014. Petitioner reserves the right to claim such carrybacks and respondent reserves the right to adjust the net operating loss and any carryback amounts upon examination.

MARJORIE A. ROLLINSON
Chief Counsel
Internal Revenue Service

RAJIV MADAN
Counsel for Petitioner
Skadden, Arps, Slate, Meagher
& Flom LLP

Tax Court Bar No. MR1190

By:

Matthew J. Avon
Digitally signed by Matthew J. Avon
Date: 2024.03.25 15:00:19 -04'00'

MATTHEW J. AVON
Special Trial Attorney
(Strategic Litigation)

Tax Court Bar No. AM0304

Amendment by Pub. L. 94–455 effective for taxable years beginning after Dec. 31, 1976, see section 1901(d) of Pub. L. 94–455, set out as a note under section 2 of this title.

EFFECTIVE DATE OF 1966 AMENDMENT

Amendment by Pub. L. 89–809 applicable with respect to taxable years beginning after Dec. 31, 1966, except that in applying section 864(c)(4)(B)(iii) of this title with respect to a binding contract entered into on or before Feb. 24, 1966, activities in the United States on or before such date in negotiating or carrying out such contract shall not be taken into account, see section 102(e)(1) of Pub. L. 89–809, set out as a note under section 861 of this title.

APPLICABILITY OF CERTAIN AMENDMENTS BY PUB. L. 99–514 IN RELATION TO TREATY OBLIGATIONS OF UNITED STATES

For applicability of amendment by section 1201(d)(4) of Pub. L. 99–514 notwithstanding any treaty obligation of the United States in effect on Oct. 22, 1986, and for nonapplication of amendments by sections 1211(b)(2) and 1242(a) of Pub. L. 99–514 to the extent application of such amendments would be contrary to any treaty obligation of the United States in effect on Oct. 22, 1986, with provision that for such purposes any amendment by title I of Pub. L. 100–647 be treated as if it had been included in the provision of Pub. L. 99–514 to which such amendment relates, see section 1012(aa)(2) to (4) of Pub. L. 100–647, set out as a note under section 861 of this title.

PLAN AMENDMENTS NOT REQUIRED UNTIL JANUARY 1, 1989

For provisions directing that if any amendments made by subtitle A or subtitle C of title XI [§§ 1101–1147 and 1171–1177] or title XVIII [§§ 1800–1899A] of Pub. L. 99–514 require an amendment to any plan, such plan amendment shall not be required to be made before the first plan year beginning on or after Jan. 1, 1989, see section 1140 of Pub. L. 99–514, as amended, set out as a note under section 401 of this title.

### § 865. Source rules for personal property sales

**(a) General rule**

Except as otherwise provided in this section, income from the sale of personal property—

(1) by a United States resident shall be sourced in the United States, or

(2) by a nonresident shall be sourced outside the United States.

**(b) Exception for inventory property**

In the case of income derived from the sale of inventory property—

(1) this section shall not apply, and

(2) such income shall be sourced under the rules of sections 861(a)(6), 862(a)(6), and 863.

Notwithstanding the preceding sentence, any income from the sale of any unprocessed timber which is a softwood and was cut from an area in the United States shall be sourced in the United States and the rules of sections 862(a)(6) and 863(b) shall not apply to any such income. For purposes of the preceding sentence, the term "unprocessed timber" means any log, cant, or similar form of timber.

**(c) Exception for depreciable personal property**

**(1) In general**

Gain (not in excess of the depreciation adjustments) from the sale of depreciable per-

sonal property shall be allocated between sources in the United States and sources outside the United States—

(A) by treating the same proportion of such gain as sourced in the United States as the United States depreciation adjustments with respect to such property bear to the total depreciation adjustments, and

(B) by treating the remaining portion of such gain as sourced outside the United States.

**(2) Gain in excess of depreciation**

Gain (in excess of the depreciation adjustments) from the sale of depreciable personal property shall be sourced as if such property were inventory property.

**(3) United States depreciation adjustments**

For purposes of this subsection—

**(A) In general**

The term "United States depreciation adjustments" means the portion of the depreciation adjustments to the adjusted basis of the property which are attributable to the depreciation deductions allowable in computing taxable income from sources in the United States.

**(B) Special rule for certain property**

Except in the case of property of a kind described in section 168(g)(4), if, for any taxable year—

(i) such property is used predominantly in the United States, or

(ii) such property is used predominantly outside the United States,

all of the depreciation deductions allowable for such year shall be treated as having been allocated to income from sources in the United States (or, where clause (ii) applies, from sources outside the United States).

**(4) Other definitions**

For purposes of this subsection—

**(A) Depreciable personal property**

The term "depreciable personal property" means any personal property if the adjusted basis of such property includes depreciation adjustments.

**(B) Depreciation adjustments**

The term "depreciation adjustments" means adjustments reflected in the adjusted basis of any property on account of depreciation deductions (whether allowed with respect to such property or other property and whether allowed to the taxpayer or to any other person).

**(C) Depreciation deductions**

The term "depreciation deductions" means any deductions for depreciation or amortization or any other deduction allowable under any provision of this chapter which treats an otherwise capital expenditure as a deductible expense.

**(d) Exception for intangibles**

**(1) In general**

In the case of any sale of an intangible—

(A) this section shall apply only to the extent the payments in consideration of such sale are not contingent on the productivity, use, or disposition of the intangible, and

(B) to the extent such payments are so contingent, the source of such payments shall be determined under this part in the same manner as if such payments were royalties.

**(2) Intangible**

For purposes of paragraph (1), the term ''intangible'' means any patent, copyright, secret process or formula, goodwill, trademark, trade brand, franchise, or other like property.

**(3) Special rule in the case of goodwill**

To the extent this section applies to the sale of goodwill, payments in consideration of such sale shall be treated as from sources in the country in which such goodwill was generated.

**(4) Coordination with subsection (c)**

**(A) Gain not in excess of depreciation adjustments sourced under subsection (c)**

Notwithstanding paragraph (1), any gain from the sale of an intangible shall be sourced under subsection (c) to the extent such gain does not exceed the depreciation adjustments with respect to such intangible.

**(B) Subsection (c)(2) not to apply to intangibles**

Paragraph (2) of subsection (c) shall not apply to any gain from the sale of an intangible.

**(e) Special rules for sales through offices or fixed places of business**

**(1) Sales by residents**

**(A) In general**

In the case of income not sourced under subsection (b), (c), (d)(1)(B) or (3), or (f), if a United States resident maintains an office or other fixed place of business in a foreign country, income from sales of personal property attributable to such office or other fixed place of business shall be sourced outside the United States.

**(B) Tax must be imposed**

Subparagraph (A) shall not apply unless an income tax equal to at least 10 percent of the income from the sale is actually paid to a foreign country with respect to such income.

**(2) Sales by nonresidents**

**(A) In general**

Notwithstanding any other provisions of this part, if a nonresident maintains an office or other fixed place of business in the United States, income from any sale of personal property (including inventory property) attributable to such office or other fixed place of business shall be sourced in the United States. The preceding sentence shall not apply for purposes of section 971 (defining export trade corporation).

**(B) Exception**

Subparagraph (A) shall not apply to any sale of inventory property which is sold for

use, disposition, or consumption outside the United States if an office or other fixed place of business of the taxpayer in a foreign country materially participated in the sale.

**(3) Sales attributable to an office or other fixed place of business**

The principles of section 864(c)(5) shall apply in determining whether a taxpayer has an office or other fixed place of business and whether a sale is attributable to such an office or other fixed place of business.

**(f) Stock of affiliates**

If—

(1) a United States resident sells stock in an affiliate which is a foreign corporation,

(2) such sale occurs in a foreign country in which such affiliate is engaged in the active conduct of a trade or business, and

(3) more than 50 percent of the gross income of such affiliate for the 3-year period ending with the close of such affiliate's taxable year immediately preceding the year in which the sale occurred was derived from the active conduct of a trade or business in such foreign country,

any gain from such sale shall be sourced outside the United States. For purposes of paragraphs (2) and (3), the United States resident may elect to treat an affiliate and all other corporations which are wholly owned (directly or indirectly) by the affiliate as one corporation.

**(g) United States resident; nonresident**

For purposes of this section—

**(1) In general**

Except as otherwise provided in this subsection—

**(A) United States resident**

The term ''United States resident'' means—

(i) any individual who—

(I) is a United States citizen or a resident alien and does not have a tax home (as defined in section 911(d)(3)) in a foreign country, or

(II) is a nonresident alien and has a tax home (as so defined) in the United States, and

(ii) any corporation, trust, or estate which is a United States person (as defined in section 7701(a)(30)).

**(B) Nonresident**

The term ''nonresident'' means any person other than a United States resident.

**(2) Special rules for United States citizens and resident aliens**

For purposes of this section, a United States citizen or resident alien shall not be treated as a nonresident with respect to any sale of personal property unless an income tax equal to at least 10 percent of the gain derived from such sale is actually paid to a foreign country with respect to that gain.

**(3) Special rule for certain stock sales by residents of Puerto Rico**

Paragraph (2) shall not apply to the sale by an individual who was a bona fide resident of

Puerto Rico during the entire taxable year of stock in a corporation if—

(A) such corporation is engaged in the active conduct of a trade or business in Puerto Rico, and

(B) more than 50 percent of its gross income for the 3-year period ending with the close of such corporation's taxable year immediately preceding the year in which such sale occurred was derived from the active conduct of a trade or business in Puerto Rico.

For purposes of the preceding sentence, the taxpayer may elect to treat a corporation and all other corporations which are wholly owned (directly or indirectly) by such corporation as one corporation.

**(h) Treatment of gains from sale of certain stock or intangibles and from certain liquidations**

**(1) In general**

In the case of gain to which this subsection applies—

(A) such gain shall be sourced outside the United States, but

(B) subsections (a), (b), and (c) of section 904 and sections 902, 907, and 960 shall be applied separately with respect to such gain.

**(2) Gain to which subsection applies**

This subsection shall apply to—

**(A) Gain from sale of certain stock or intangibles**

Any gain—

(i) which is from the sale of stock in a foreign corporation or an intangible (as defined in subsection (d)(2)) and which would otherwise be sourced in the United States under this section,

(ii) which, under a treaty obligation of the United States (applied without regard to this section), would be sourced outside the United States, and

(iii) with respect to which the taxpayer chooses the benefits of this subsection.

**(B) Gain from liquidation in possession**

Any gain which is derived from the receipt of any distribution in liquidation of a corporation—

(i) which is organized in a possession of the United States, and

(ii) more than 50 percent of the gross income of which during the 3-taxable year period ending with the close of the taxable year immediately preceding the taxable year in which the distribution is received is from the active conduct of a trade or business in such possession.

**(i) Other definitions**

For purposes of this section—

**(1) Inventory property**

The term "inventory property" means personal property described in paragraph (1) of section 1221(a).

**(2) Sale includes exchange**

The term "sale" includes an exchange or any other disposition.

**(3) Treatment of possessions**

Any possession of the United States shall be treated as a foreign country.

**(4) Affiliate**

The term "affiliate" means a member of the same affiliated group (within the meaning of section 1504(a) without regard to section 1504(b)).

**(5) Treatment of partnerships**

In the case of a partnership, except as provided in regulations, this section shall be applied at the partner level.

**(j) Regulations**

The Secretary shall prescribe such regulations as may be necessary or appropriate to carry out the purpose of this section, including regulations—

(1) relating to the treatment of losses from sales of personal property,

(2) applying the rules of this section to income derived from trading in futures contracts, forward contracts, options contracts, and other instruments, and

(3) providing that, subject to such conditions (which may include provisions comparable to section 877) as may be provided in such regulations, subsections (e)(1)(B) and (g)(2) shall not apply for purposes of sections 931, 933, and 936.

**(k) Cross references**

**(1) For provisions relating to the characterization as dividends for source purposes of gains from the sale of stock in certain foreign corporations, see section 1248.**

**(2) For sourcing of income from certain foreign currency transactions, see section 988.**

(Added Pub. L. 99–514, title XII, § 1211(a), Oct. 22, 1986, 100 Stat. 2533; amended Pub. L. 100–647, title I, § 1012(d)(1)–(6), (8), (9), (11), (12), Nov. 10, 1988, 102 Stat. 3497–3499; Pub. L. 101–508, title XI, § 11813(b)(18), Nov. 5, 1990, 104 Stat. 1388–555; Pub. L. 103–66, title XIII, § 13239(c), Aug. 10, 1993, 107 Stat. 509; Pub. L. 104–188, title I, § 1704(f)(4)(A), Aug. 20, 1996, 110 Stat. 1880; Pub. L. 106–170, title V, § 532(c)(1)(E), Dec. 17, 1999, 113 Stat. 1930.)

AMENDMENTS

1999—Subsec. (i)(1). Pub. L. 106–170 substituted "section 1221(a)" for "section 1221".

1996—Subsec. (b)(2). Pub. L. 104–188 substituted "863" for "863(b)".

1993—Subsec. (b). Pub. L. 103–66 inserted at end "Notwithstanding the preceding sentence, any income from the sale of any unprocessed timber which is a softwood and was cut from an area in the United States shall be sourced in the United States and the rules of sections 862(a)(6) and 863(b) shall not apply to any such income. For purposes of the preceding sentence, the term 'unprocessed timber' means any log, cant, or similar form of timber."

1990—Subsec. (c)(3)(B). Pub. L. 101–508 substituted "section 168(g)(4)" for "section 48(a)(2)(B)".

1988—Subsec. (d)(2). Pub. L. 100–647, § 1012(d)(12), inserted "franchise," after "trade brand,".

Subsec. (d)(4). Pub. L. 100–647, § 1012(d)(1), added par. (4).

Subsec. (e)(1)(A). Pub. L. 100–647, § 1012(d)(2), (9), substituted "(d)(1)(B) or (3)" for "(d)" and "in a foreign country" for first reference to "outside the United States".

Subsec. (e)(2)(B). Pub. L. 100–647, § 1012(d)(5), amended subpar. (B) generally. Prior to amendment, subpar. (B) read as follows: "Subparagraph (A) shall not apply to—

"(i) any sale of inventory property which is sold for use, disposition, or consumption outside the United States if an office or other fixed place of business of

the taxpayer outside the United States materially participated in the sale, or

"(ii) any amount included in gross income under section 951(a)(1)(A).''

Subsec. (f). Pub. L. 100–647, § 1012(d)(4), amended subsec. (f) generally. Prior to amendment, subsec. (f) read as follows: "If—

"(1) a United States resident sells stock in an affiliate which is a foreign corporation,

"(2) such affiliate is engaged in the active conduct of a trade or business, and

"(3) such sale occurs in the foreign country in which the affiliate derived more than 50 percent of its gross income for the 3-year period ending with the close of the affiliate's taxable year immediately preceding the year during which such sale occurred,

any gain from such sale shall be sourced outside the United States."

Subsec. (g)(1)(A)(i). Pub. L. 100–647, § 1012(d)(1), amended cl. (i) generally. Prior to amendment, cl. (i) read as follows: "any individual who has a tax home (as defined in section 911(d)(3)) in the United States, and''.

Subsec. (g)(1)(A)(ii). Pub. L. 100–647, § 1012(d)(3)(A), struck out "partnership," after "corporation,''.

Subsec. (g)(3). Pub. L. 100–647, § 1012(d)(6)(A), added par. (3).

Subsec. (h). Pub. L. 100–647, § 1012(d)(8), added subsec. (h) and redesignated former subsec. (h) as (i).

Pub. L. 100–647, § 1012(d)(3)(B), added par. (5) to subsec. (h) prior to redesignation as subsec. (i).

Subsec. (i). Pub. L. 100–647, § 1012(d)(8), redesignated former subsec. (h) as (i). Former subsec. (i) redesignated (j).

Pub. L. 100–647, § 1012(d)(6)(B), added par. (3) to subsec. (i) prior to redesignation as subsec. (j).

Subsec. (i)(5). Pub. L. 100–647, § 1012(d)(3)(B), added par. (5) to subsec. (h) prior to redesignation as subsec. (i).

Subsec. (j). Pub. L. 100–647, § 1012(d)(8), redesignated former subsec. (i) as (j). Former subsec. (j) redesignated (k).

Subsec. (j)(3). Pub. L. 100–647, § 1012(d)(6)(B), added par. (3) to subsec. (i) prior to redesignation as subsec. (j).

Subsec. (k). Pub. L. 100–647, § 1012(d)(8), redesignated former subsec. (j) as (k).

EFFECTIVE DATE OF 1999 AMENDMENT

Amendment by Pub. L. 106–170 applicable to any instrument held, acquired, or entered into, any transaction entered into, and supplies held or acquired on or after Dec. 17, 1999, see section 532(d) of Pub. L. 106–170, set out as a note under section 170 of this title.

EFFECTIVE DATE OF 1996 AMENDMENT

Pub. L. 104–188, title I, § 1704(f)(4)(B), Aug. 20, 1996, 110 Stat. 1880, provided that: "The amendment made by subparagraph (A) [amending this section] shall take effect as if included in the amendments made by section 1211 of the Tax Reform Act of 1986 [Pub. L. 99–514].''

EFFECTIVE DATE OF 1993 AMENDMENT

Pub. L. 103–66, title XIII, § 13239(e), Aug. 10, 1993, 107 Stat. 509, provided that: "The amendments made by this section [amending this section and sections 927, 954, and 993 of this title] shall apply to sales, exchanges, or other dispositions after the date of the enactment of this Act [Aug. 10, 1993].''

EFFECTIVE DATE OF 1990 AMENDMENT

Amendment by Pub. L. 101–508 applicable to property placed in service after Dec. 31, 1990, but not applicable to any transition property (as defined in section 49(e) of this title), any property with respect to which qualified progress expenditures were previously taken into account under section 46(d) of this title, and any property described in section 46(b)(2)(C) of this title, as such sections were in effect on Nov. 4, 1990, see section 11813(c) of Pub. L. 101–508, set out as a note under section 45K of this title.

EFFECTIVE DATE OF 1988 AMENDMENT

Pub. L. 100–647, title I, § 1012(d)(5), Nov. 10, 1988, 102 Stat. 3497, provided that the amendment made by that section is effective with respect to taxable years beginning after Dec. 31, 1987.

Amendment by section 1012(d)(1)–(4), (6), (8), (9), (11), (12) of Pub. L. 100–647 effective, except as otherwise provided, as if included in the provision of the Tax Reform Act of 1986, Pub. L. 99–514, to which such amendment relates, see section 1019(a) of Pub. L. 100–647, set out as a note under section 1 of this title.

EFFECTIVE DATE

Pub. L. 99–514, title XII, § 1211(c), Oct. 22, 1986, 100 Stat. 2536, provided that:

"(1) IN GENERAL.—Except as provided in paragraph (2), the amendments made by this section [enacting this section, amending sections 861 to 864, 871, 881, and 904 of this title, and enacting provisions set out below] shall apply to taxable years beginning after December 31, 1986.

"(2) SPECIAL RULE FOR FOREIGN PERSONS.—In the case of any foreign person other than any controlled foreign corporations (within the meaning of section 957(a) of the Internal Revenue Code of 1954 [now 1986]), the amendments made by this section shall apply to transactions entered into after March 18, 1986.''

SAVINGS PROVISION

For provisions that nothing in amendment by Pub. L. 101–508 be construed to affect treatment of certain transactions occurring, property acquired, or items of income, loss, deduction, or credit taken into account prior to Nov. 5, 1990, for purposes of determining liability for tax for periods ending after Nov. 5, 1990, see section 11821(b) of Pub. L. 101–508, set out as a note under section 45K of this title.

APPLICABILITY OF CERTAIN AMENDMENTS BY PUB. L. 99–514 IN RELATION TO TREATY OBLIGATIONS OF UNITED STATES

For nonapplication of amendment by section 1211(a) of Pub. L. 99–514 (enacting this section) to the extent application of such amendment would be contrary to any treaty obligation of the United States in effect on Oct. 22, 1986, with provision that for such purposes any amendment by title I of Pub. L. 100–647 be treated as if it had been included in the provision of Pub. L. 99–514 to which such amendment relates, see section 1012(aa)(3), (4) of Pub. L. 100–647, set out as a note under section 861 of this title.

STUDY OF SOURCE RULES FOR SALES OF INVENTORY PROPERTY

Pub. L. 99–514, title XII, § 1211(d), Oct. 22, 1986, 100 Stat. 2536, directed Secretary of the Treasury or his delegate to conduct a study of source rules for sales of inventory property and, not later than Sept. 30, 1987 (due date extended to Jan. 1, 1992, by Pub. L. 101–508, title XI, § 11831(b), Nov. 5, 1990, 104 Stat. 1388–559), to submit to Committee on Ways and Means of House of Representatives and Committee on Finance of Senate a report of such study (together with recommendations he deemed advisable).

PART II—NONRESIDENT ALIENS AND FOREIGN CORPORATIONS

Subpart
A.   Nonresident alien individuals.
B.   Foreign corporations.
C.   Tax on gross transportation income.
D.   Miscellaneous provisions.

AMENDMENTS

1986—Pub. L. 99–514, title XII, § 1212(b)(2), Oct. 22, 1986, 100 Stat. 2538, added item for subpart C and redesignated item for former subpart C as D.

1962—Pub. L. 87–834, §12(b)(3), Oct. 16, 1962, 76 Stat. 1031, added items for subparts F and G.

SUBPART A—FOREIGN TAX CREDIT

Sec.
901.    Taxes of foreign countries and of possessions of United States.
902.    Deemed paid credit where domestic corporation owns 10 percent or more of voting stock of foreign corporation.
903.    Credit for taxes in lieu of income, etc., taxes.
904.    Limitation on credit.
905.    Applicable rules.
906.    Nonresident alien individuals and foreign corporations.
907.    Special rules in case of foreign oil and gas income.
908.    Reduction of credit for participation in or cooperation with an international boycott.

AMENDMENTS

1986—Pub. L. 99–514, title XII, §1202(d), Oct. 22, 1986, 100 Stat. 2531, substituted ''Deemed paid credit where domestic corporation owns 10 percent or more of voting stock of foreign corporation'' for ''Credit for corporate stockholder in foreign corporation'' in item 902.

1976—Pub. L. 94–455, title X, §1061(b), Oct. 4, 1976, 90 Stat. 1650, added item 908.

1975—Pub. L. 94–12, title VI, §601(c), Mar. 29, 1975, 89 Stat. 57, added item 907.

1966—Pub. L. 89–809, title I, §106(a)(2), Nov. 13, 1966, 80 Stat. 1569, added item 906.

## §901. Taxes of foreign countries and of possessions of United States

### (a) Allowance of credit

If the taxpayer chooses to have the benefits of this subpart, the tax imposed by this chapter shall, subject to the limitation of section 904, be credited with the amounts provided in the applicable paragraph of subsection (b) plus, in the case of a corporation, the taxes deemed to have been paid under sections 902 and 960. Such choice for any taxable year may be made or changed at any time before the expiration of the period prescribed for making a claim for credit or refund of the tax imposed by this chapter for such taxable year. The credit shall not be allowed against any tax treated as a tax not imposed by this chapter under section 26(b).

### (b) Amount allowed

Subject to the limitation of section 904, the following amounts shall be allowed as the credit under subsection (a):

#### (1) Citizens and domestic corporations

In the case of a citizen of the United States and of a domestic corporation, the amount of any income, war profits, and excess profits taxes paid or accrued during the taxable year to any foreign country or to any possession of the United States; and

#### (2) Resident of the United States or Puerto Rico

In the case of a resident of the United States and in the case of an individual who is a bona fide resident of Puerto Rico during the entire taxable year, the amount of any such taxes paid or accrued during the taxable year to any possession of the United States; and

#### (3) Alien resident of the United States or Puerto Rico

In the case of an alien resident of the United States and in the case of an alien individual who is a bona fide resident of Puerto Rico during the entire taxable year, the amount of any such taxes paid or accrued during the taxable year to any foreign country; and

#### (4) Nonresident alien individuals and foreign corporations

In the case of any nonresident alien individual not described in section 876 and in the case of any foreign corporation, the amount determined pursuant to section 906; and

#### (5) Partnerships and estates

In the case of any person described in paragraph (1), (2), (3), or (4), who is a member of a partnership or a beneficiary of an estate or trust, the amount of his proportionate share of the taxes (described in such paragraph) of the partnership or the estate or trust paid or accrued during the taxable year to a foreign country or to any possession of the United States, as the case may be. Under rules or regulations prescribed by the Secretary, in the case of any foreign trust of which the settlor or another person would be treated as owner of any portion of the trust under subpart E but for section 672(f), the allocable amount of any income, war profits, and excess profits taxes imposed by any foreign country or possession of the United States on the settlor or such other person in respect of trust income.

### (c) Similar credit required for certain alien residents

Whenever the President finds that—

(1) a foreign country, in imposing income, war profits, and excess profits taxes, does not allow to citizens of the United States residing in such foreign country a credit for any such taxes paid or accrued to the United States or any foreign country, as the case may be, similar to the credit allowed under subsection (b)(3),

(2) such foreign country, when requested by the United States to do so, has not acted to provide such a similar credit to citizens of the United States residing in such foreign country, and

(3) it is in the public interest to allow the credit under subsection (b)(3) to citizens or subjects of such foreign country only if it allows such a similar credit to citizens of the United States residing in such foreign country,

the President shall proclaim that, for taxable years beginning while the proclamation remains in effect, the credit under subsection (b)(3) shall be allowed to citizens or subjects of such foreign country only if such foreign country, in imposing income, war profits, and excess profits taxes, allows to citizens of the United States residing in such foreign country such a similar credit.

### (d) Treatment of dividends from a DISC or former DISC

For purposes of this subpart, dividends from a DISC or former DISC (as defined in section 992(a)) shall be treated as dividends from a foreign corporation to the extent such dividends are treated under part I as income from sources without the United States.

**(e) Foreign taxes on mineral income**

**(1) Reduction in amount allowed**

Notwithstanding subsection (b), the amount of any income, war profits, and excess profits taxes paid or accrued during the taxable year to any foreign country or possession of the United States with respect to foreign mineral income from sources within such country or possession which would (but for this paragraph) be allowed under such subsection shall be reduced by the amount (if any) by which—

(A) the amount of such taxes (or, if smaller, the amount of the tax which would be computed under this chapter with respect to such income determined without the deduction allowed under section 613), exceeds

(B) the amount of the tax computed under this chapter with respect to such income.

**(2) Foreign mineral income defined**

For purposes of paragraph (1), the term ''foreign mineral income'' means income derived from the extraction of minerals from mines, wells, or other natural deposits, the processing of such minerals into their primary products, and the transportation, distribution, or sale of such minerals or primary products. Such term includes, but is not limited to—

(A) dividends received from a foreign corporation in respect of which taxes are deemed paid by the taxpayer under section 902, to the extent such dividends are attributable to foreign mineral income, and

(B) that portion of the taxpayer's distributive share of the income of partnerships attributable to foreign mineral income.

**(f) Certain payments for oil or gas not considered as taxes**

Notwithstanding subsection (b) and sections 902 and 960, the amount of any income, or profits, and excess profits taxes paid or accrued during the taxable year to any foreign country in connection with the purchase and sale of oil or gas extracted in such country is not to be considered as tax for purposes of section 275(a) and this section if—

(1) the taxpayer has no economic interest in the oil or gas to which section 611(a) applies, and

(2) either such purchase or sale is at a price which differs from the fair market value for such oil or gas at the time of such purchase or sale.

**(g) Certain taxes paid with respect to distributions from possessions corporations**

**(1) In general**

For purposes of this chapter, any tax of a foreign country or possession of the United States which is paid or accrued with respect to any distribution from a corporation—

(A) to the extent that such distribution is attributable to periods during which such corporation is a possessions corporation, and

(B)(i) if a dividends received deduction is allowable with respect to such distribution under part VIII of subchapter B, or

(ii) to the extent that such distribution is received in connection with a liquidation or other transaction with respect to which gain or loss is not recognized,

shall not be treated as income, war profits, or excess profits taxes paid or accrued to a foreign country or possession of the United States, and no deduction shall be allowed under this title with respect to any amount so paid or accrued.

**(2) Possessions corporation**

For purposes of paragraph (1), a corporation shall be treated as a possessions corporation for any period during which an election under section 936 applied to such corporation, during which section 931 (as in effect on the day before the date of the enactment of the Tax Reform Act of 1976) applied to such corporation, or during which section 957(c) (as in effect on the day before the date of the enactment of the Tax Reform Act of 1986) applied to such corporation.

**[(h) Repealed. Pub. L. 110–172, § 11(g)(9), Dec. 29, 2007, 121 Stat. 2490]**

**(i) Taxes used to provide subsidies**

Any income, war profits, or excess profits tax shall not be treated as a tax for purposes of this title to the extent—

(1) the amount of such tax is used (directly or indirectly) by the country imposing such tax to provide a subsidy by any means to the taxpayer, a related person (within the meaning of section 482), or any party to the transaction or to a related transaction, and

(2) such subsidy is determined (directly or indirectly) by reference to the amount of such tax, or the base used to compute the amount of such tax.

**(j) Denial of foreign tax credit, etc., with respect to certain foreign countries**

**(1) In general**

Notwithstanding any other provision of this part—

(A) no credit shall be allowed under subsection (a) for any income, war profits, or excess profits taxes paid or accrued (or deemed paid under section 902 or 960) to any country if such taxes are with respect to income attributable to a period during which this subsection applies to such country, and

(B) subsections (a), (b), and (c) of section 904 and sections 902 and 960 shall be applied separately with respect to income attributable to such a period from sources within such country.

**(2) Countries to which subsection applies**

**(A) In general**

This subsection shall apply to any foreign country—

(i) the government of which the United States does not recognize, unless such government is otherwise eligible to purchase defense articles or services under the Arms Export Control Act,

(ii) with respect to which the United States has severed diplomatic relations,

(iii) with respect to which the United States has not severed diplomatic relations but does not conduct such relations, or

(iv) which the Secretary of State has, pursuant to section 6(j) of the Export Ad-

ministration Act of 1979, as amended, designated as a foreign country which repeatedly provides support for acts of international terrorisms.

**(B) Period for which subsection applies**

This subsection shall apply to any foreign country described in subparagraph (A) during the period—

(i) beginning on the later of—

(I) January 1, 1987, or

(II) 6 months after such country becomes a country described in subparagraph (A), and

(ii) ending on the date the Secretary of State certifies to the Secretary of the Treasury that such country is no longer described in subparagraph (A).

**(3) Taxes allowed as a deduction, etc.**

Sections 275 and 78 shall not apply to any tax which is not allowable as a credit under subsection (a) by reason of this subsection.

**(4) Regulations**

The Secretary shall prescribe such regulations as may be necessary or appropriate to carry out the purposes of this subsection, including regulations which treat income paid through 1 or more entities as derived from a foreign country to which this subsection applies if such income was, without regard to such entities, derived from such country.

**(5) Waiver of denial**

**(A) In general**

Paragraph (1) shall not apply with respect to taxes paid or accrued to a country if the President—

(i) determines that a waiver of the application of such paragraph is in the national interest of the United States and will expand trade and investment opportunities for United States companies in such country; and

(ii) reports such waiver under subparagraph (B).

**(B) Report**

Not less than 30 days before the date on which a waiver is granted under this paragraph, the President shall report to Congress—

(i) the intention to grant such waiver; and

(ii) the reason for the determination under subparagraph (A)(i).

**(k) Minimum holding period for certain taxes on dividends**

**(1) Withholding taxes**

**(A) In general**

In no event shall a credit be allowed under subsection (a) for any withholding tax on a dividend with respect to stock in a corporation if—

(i) such stock is held by the recipient of the dividend for 15 days or less during the 31-day period beginning on the date which is 15 days before the date on which such share becomes ex-dividend with respect to such dividend, or

(ii) to the extent that the recipient of the dividend is under an obligation (whether pursuant to a short sale or otherwise) to make related payments with respect to positions in substantially similar or related property.

**(B) Withholding tax**

For purposes of this paragraph, the term ''withholding tax'' includes any tax determined on a gross basis; but does not include any tax which is in the nature of a prepayment of a tax imposed on a net basis.

**(2) Deemed paid taxes**

In the case of income, war profits, or excess profits taxes deemed paid under section 853, 902, or 960 through a chain of ownership of stock in 1 or more corporations, no credit shall be allowed under subsection (a) for such taxes if—

(A) any stock of any corporation in such chain (the ownership of which is required to obtain credit under subsection (a) for such taxes) is held for less than the period described in paragraph (1)(A)(i), or

(B) the corporation holding the stock is under an obligation referred to in paragraph (1)(A)(ii).

**(3) 45-day rule in the case of certain preference dividends**

In the case of stock having preference in dividends and dividends with respect to such stock which are attributable to a period or periods aggregating in excess of 366 days, paragraph (1)(A)(i) shall be applied—

(A) by substituting ''45 days'' for ''15 days'' each place it appears, and

(B) by substituting ''91-day period'' for ''31-day period''.

**(4) Exception for certain taxes paid by securities dealers**

**(A) In general**

Paragraphs (1) and (2) shall not apply to any qualified tax with respect to any security held in the active conduct in a foreign country of a business as a securities dealer of any person—

(i) who is registered as a securities broker or dealer under section 15(a) of the Securities Exchange Act of 1934,

(ii) who is registered as a Government securities broker or dealer under section 15C(a) of such Act, or

(iii) who is licensed or authorized in such foreign country to conduct securities activities in such country and is subject to bona fide regulation by a securities regulating authority of such country.

**(B) Qualified tax**

For purposes of subparagraph (A), the term ''qualified tax'' means a tax paid to a foreign country (other than the foreign country referred to in subparagraph (A)) if—

(i) the dividend to which such tax is attributable is subject to taxation on a net basis by the country referred to in subparagraph (A), and

(ii) such country allows a credit against its net basis tax for the full amount of the tax paid to such other foreign country.

**(C) Regulations**

The Secretary may prescribe such regulations as may be appropriate to carry out this paragraph, including regulations to prevent the abuse of the exception provided by this paragraph and to treat other taxes as qualified taxes.

**(5) Certain rules to apply**

For purposes of this subsection, the rules of paragraphs (3) and (4) of section 246(c) shall apply.

**(6) Treatment of bona fide sales**

If a person's holding period is reduced by reason of the application of the rules of section 246(c)(4) to any contract for the bona fide sale of stock, the determination of whether such person's holding period meets the requirements of paragraph (2) with respect to taxes deemed paid under section 902 or 960 shall be made as of the date such contract is entered into.

**(7) Taxes allowed as deduction, etc.**

Sections 275 and 78 shall not apply to any tax which is not allowable as a credit under subsection (a) by reason of this subsection.

**(l) Minimum holding period for withholding taxes on gain and income other than dividends etc.**

**(1) In general**

In no event shall a credit be allowed under subsection (a) for any withholding tax (as defined in subsection (k)) on any item of income or gain with respect to any property if—

(A) such property is held by the recipient of the item for 15 days or less during the 31-day period beginning on the date which is 15 days before the date on which the right to receive payment of such item arises, or

(B) to the extent that the recipient of the item is under an obligation (whether pursuant to a short sale or otherwise) to make related payments with respect to positions in substantially similar or related property.

This paragraph shall not apply to any dividend to which subsection (k) applies.

**(2) Exception for taxes paid by dealers**

**(A) In general**

Paragraph (1) shall not apply to any qualified tax with respect to any property held in the active conduct in a foreign country of a business as a dealer in such property.

**(B) Qualified tax**

For purposes of subparagraph (A), the term "qualified tax" means a tax paid to a foreign country (other than the foreign country referred to in subparagraph (A)) if—

(i) the item to which such tax is attributable is subject to taxation on a net basis by the country referred to in subparagraph (A), and

(ii) such country allows a credit against its net basis tax for the full amount of the tax paid to such other foreign country.

**(C) Dealer**

For purposes of subparagraph (A), the term "dealer" means—

(i) with respect to a security, any person to whom paragraphs (1) and (2) of subsection (k) would not apply by reason of paragraph (4) thereof, and

(ii) with respect to any other property, any person with respect to whom such property is described in section 1221(a)(1).

**(D) Regulations**

The Secretary may prescribe such regulations as may be appropriate to carry out this paragraph, including regulations to prevent the abuse of the exception provided by this paragraph and to treat other taxes as qualified taxes.

**(3) Exceptions**

The Secretary may by regulation provide that paragraph (1) shall not apply to property where the Secretary determines that the application of paragraph (1) to such property is not necessary to carry out the purposes of this subsection.

**(4) Certain rules to apply**

Rules similar to the rules of paragraphs (5), (6), and (7) of subsection (k) shall apply for purposes of this subsection.

**(5) Determination of holding period**

Holding periods shall be determined for purposes of this subsection without regard to section 1235 or any similar rule.

**(m) Cross reference**

**(1) For deductions of income, war profits, and excess profits taxes paid to a foreign country or a possession of the United States, see sections 164 and 275.**

**(2) For right of each partner to make election under this section, see section 703(b).**

**(3) For right of estate or trust to the credit for taxes imposed by foreign countries and possessions of the United States under this section, see section 642(a).**

**(4) For reduction of credit for failure of a United States person to furnish certain information with respect to a foreign corporation or partnership controlled by him, see section 6038.**

(Aug. 16, 1954, ch. 736, 68A Stat. 285; Pub. L. 86–780, §3(a), (b), Sept. 14, 1960, 74 Stat. 1013; Pub. L. 87–834, §§9(d)(3), 12(b)(1), Oct. 16, 1962, 76 Stat. 1001, 1031; Pub. L. 88–272, title II, §207(b)(7), Feb. 26, 1964, 78 Stat. 42; Pub. L. 89–384, §1(c)(2), Apr. 8, 1966, 80 Stat. 102; Pub. L. 89–809, title I, §106(a)(4), (5), (b)(1), (2), Nov. 13, 1966, 80 Stat. 1569; Pub. L. 91–172, title III, §301(b)(9), title V, §506(a), Dec. 30, 1969, 83 Stat. 585, 634; Pub. L. 92–178, title V, §502(b)(1), Dec. 10, 1971, 85 Stat. 549; Pub. L. 93–406, title II, §§2001(g)(2)(C), 2002(g)(3), 2005(c)(5), Sept. 2, 1974, 88 Stat. 957, 968, 991; Pub. L. 94–12, title VI, §601(b), Mar. 29, 1975, 89 Stat. 57; Pub. L. 94–455, title X, §§1031(b)(1), 1051(d), title XIX, §1901(b)(1)(H)(iii), (37)(A), Oct. 4, 1976, 90 Stat. 1622, 1645, 1791, 1803; Pub. L. 95–600, title VII, §701(u)(1)(A), (B), Nov. 6, 1978, 92 Stat. 2912; Pub. L. 97–248, title II, §201(d)(8)(A), formerly §201(c)(8)(A), §265(b)(2)(A)(iv), Sept. 3, 1982, 96 Stat. 420, 547, renumbered §201(d)(8)(A), Pub. L. 97–448, title III, §306(a)(1)(A)(i), Jan. 12, 1983, 96 Stat. 2400; Pub. L. 98–369, div. A, title IV, §474(r)(20), title VI, §612(e)(1), title VII, §713(c)(1)(C), title VIII, §801(d)(1), July 18, 1984, 98 Stat. 843, 912, 957, 995;

Pub. L. 99–509, title VIII, §8041(a), Oct. 21, 1986, 100 Stat. 1962; Pub. L. 99–514, title I, §112(b)(3), title XII, §1204(a), title XVIII, §1876(p)(2), Oct. 22, 1986, 100 Stat. 2109, 2532, 2902; Pub. L. 100–203, title X, §10231(a), (b), Dec. 22, 1987, 101 Stat. 1330–418, 1330–419; Pub. L. 100–647, title I, §1012(j), title II, §2003(c)(1), Nov. 10, 1988, 102 Stat. 3512, 3598; Pub. L. 103–149, §4(b)(8)(A), Nov. 23, 1993, 107 Stat. 1505; Pub. L. 104–188, title I, §1904(b)(2), Aug. 20, 1996, 110 Stat. 1912; Pub. L. 105–34, title X, §1053(a), title XI, §1142(e)(4), Aug. 5, 1997, 111 Stat. 941, 983; Pub. L. 105–206, title VI, §6010(k)(3), July 22, 1998, 112 Stat. 815; Pub. L. 106–200, title VI, §601(a), May 18, 2000, 114 Stat. 305; Pub. L. 108–311, title IV, §406(g), Oct. 4, 2004, 118 Stat. 1190; Pub. L. 108–357, title IV, §405(b), title VIII, §832(a), (b), Oct. 22, 2004, 118 Stat. 1498, 1587, 1588; Pub. L. 109–135, title IV, §403(aa)(2), Dec. 21, 2005, 119 Stat. 2630; Pub. L. 110–172, §11(g)(9), Dec. 29, 2007, 121 Stat. 2490.)

### References in Text

The date of the enactment of the Tax Reform Act of 1976, referred to in subsec. (g)(2), is the date of enactment of Pub. L. 94–455, which was approved Oct. 4, 1976.

The date of the enactment of the Tax Reform Act of 1986, referred to in subsec. (g)(2), is the date of enactment of Pub. L. 99–514, which was approved Oct. 22, 1986.

The Arms Export Control Act, referred to in subsec. (j)(2)(A)(i), is Pub. L. 90–269, Oct. 22, 1968, 82 Stat. 1320, as amended, which is classified principally to chapter 39 (§2751 et seq.) of Title 22, Foreign Relations and Intercourse. For complete classification of this Act to the Code, see Short Title note set out under section 2751 of Title 22 and Tables.

Section 6(j) of the Export Administration Act of 1979, referred to in subsec. (j)(2)(A)(iv), is classified to section 2405(j) of Title 50, Appendix, War and National Defense.

Sections 15(a) and 15C(a) of the Securities Exchange Act of 1934, referred to in subsec. (k)(4)(A)(i), (ii), are classified to sections 78*o*(a) and 78*o*–5(a), respectively, of Title 15, Commerce and Trade.

### Amendments

2007—Subsec. (h). Pub. L. 110–172 struck out subsec. (h), which read as follows: "No credit shall be allowed under this section for any income, war profits, and excess profits taxes paid or accrued with respect to the foreign trade income (within the meaning of section 923(b)) of a FSC, other than section 923(a)(2) non-exempt income (within the meaning of section 927(d)(6))."

2005—Subsec. (*l*)(2)(C)(i). Pub. L. 109–135 struck out "if such security were stock" after "paragraph (4) thereof".

2004—Subsec. (b)(5). Pub. L. 108–357, §405(b), substituted "any person" for "any individual".

Subsec. (k). Pub. L. 108–357, §832(b), inserted "on dividends" after "taxes" in heading.

Subsec. (k)(1)(A)(i). Pub. L. 108–311, §406(g)(1), substituted "31-day period" for "30-day period".

Subsec. (k)(3)(B). Pub. L. 108–311, §406(g)(2), substituted "91-day period" for "90-day period" and "31-day period" for "30-day period".

Subsecs. (*l*), (m). Pub. L. 108–357, §832(a), added subsec. (*l*) and redesignated former subsec. (*l*) as (m).

2000—Subsec. (j)(5). Pub. L. 106–200 added par. (5).

1998—Subsec. (k)(4)(A). Pub. L. 105–206 substituted "business as a securities dealer" for "securities business" in introductory provisions.

1997—Subsec. (k). Pub. L. 105–34, §1053(a), added subsec. (k). Former subsec. (k) redesignated (*l*).

Subsec. (*l*). Pub. L. 105–34, §1053(a), redesignated subsec. (k) as (*l*).

Subsec. (*l*)(4). Pub. L. 105–34, §1142(e)(4), which directed amendment of subsec. (k)(4) by substituting "foreign corporation or partnership" for "foreign corporation", was executed to subsec. (*l*)(4) to reflect the probable intent of Congress and the redesignation of subsec. (k) as (*l*) by Pub. L. 105–34, §1053(a). See above.

1996—Subsec. (b)(5). Pub. L. 104–188 inserted at end "Under rules or regulations prescribed by the Secretary, in the case of any foreign trust of which the settlor or another person would be treated as owner of any portion of the trust under subpart E but for section 672(f), the allocable amount of any income, war profits, and excess profits taxes imposed by any foreign country or possession of the United States on the settlor or such other person in respect of trust income."

1993—Subsec. (j)(2)(C). Pub. L. 103–149 struck out heading and text of subpar. (C). Text read as follows:

"(i) In general.—In addition to any period during which this subsection would otherwise apply to South Africa, this subsection shall apply to South Africa during the period—

"(I) beginning on January 1, 1988, and

"(II) ending on the date the Secretary of State certifies to the Secretary of the Treasury that South Africa meets the requirements of section 311(a) of the Comprehensive Anti-Apartheid Act of 1986 (as in effect on the date of the enactment of this subparagraph).

"(ii) South Africa defined.—For purposes of clause (i), the term 'South Africa' has the meaning given to such term by paragraph (6) of section 3 of the Comprehensive Anti-Apartheid Act of 1986 (as so in effect)."

1988—Subsec. (g)(2). Pub. L. 100–647, §1012(j), inserted "(as in effect on the day before the date of the enactment of the Tax Reform Act of 1986)" after "section 957(c)".

Subsec. (j)(3). Pub. L. 100–647, §2003(c)(1), inserted ", etc." at end of heading and substituted "Sections 275 and 78" for "Section 275" in text.

1987—Subsec. (j)(1). Pub. L. 100–203, §10231(b), substituted "during which" for "to which" in subpar. (A) and "such country" for "any country so identified" in subpar. (B).

Subsec. (j)(2)(C). Pub. L. 100–203, §10231(a), added subpar. (C).

1986—Subsec. (h). Pub. L. 99–514, §1876(p)(2), inserted closing parenthesis after "section 927(d)(6)".

Subsec. (i). Pub. L. 99–514, §1204(a), added subsec. (i). Former subsec. (i) redesignated (j).

Subsec. (i)(3). Pub. L. 99–514, §112(b)(3), substituted "section 642(a)" for "section 642(a)(1)".

Subsec. (j). Pub. L. 99–509 added subsec. (j). Former subsec. (j) redesignated (k).

Pub. L. 99–514, §1204(a), redesignated former subsec. (i) as (j).

Subsec. (k). Pub. L. 99–509 redesignated former subsec. (j) as (k).

1984—Subsec. (a). Pub. L. 98–369, §612(e)(1), substituted "section 26(b)" for "section 25(b)".

Pub. L. 98–369, §474(r)(20), substituted "The credit shall not be allowed against any tax treated as a tax not imposed by this chapter under section 25(b)" for "The credit shall not be allowed against the tax imposed by section 56 (relating to corporate minimum tax), against the tax imposed for the taxable year under section 72(m)(5)(B) (relating to 10 percent tax on premature distributions to owner-employees) section 72(q)(1) (relating to 5-percent tax on premature distributions under annuity contracts),, against the tax imposed by section 402(e) (relating to tax on lump sum distributions), against the tax imposed for the taxable year by section 408(f) (relating to additional tax on income from certain retirement accounts), against the tax imposed by section 531 (relating to the tax on accumulated earnings), against the additional tax imposed for the taxable year under section 1351 (relating to recoveries of foreign expropriation losses), or against the personal holding company tax imposed by section 541".

Pub. L. 98–369, §713(c)(1)(C), substituted "premature distributions to key employees" for "premature distributions to owner-employees".

Subsecs. (h), (i). Pub. L. 98–369, §801(d)(1), added subsec. (h) and redesignated former subsec. (h) as (i).

1982—Subsec. (a). Pub. L. 97–248 substituted "(relating to corporate minimum tax)" for "(relating to minimum tax for tax preferences)" after "section 56", and inserted "section 72(q)(1) (relating to 5-percent tax on premature distributions under annuity contracts)," after "owner employees)".

1978—Subsec. (g)(1). Pub. L. 95–600, §701(u)(1)(A), inserted provisions prohibiting a deduction for any tax of a foreign country or possession of the United States which is paid or accrued with respect to any distribution from a corporation if a dividends received deduction is allowable with respect to that distribution from a corporation under part VIII of subchapter B.

Subsec. (g)(2). Pub. L. 95–600, §701(u)(1)(B), inserted provision relating to application of section 957(c) of this title.

1976—Subsec. (a). Pub. L. 94–455, §§1031(b)(1), 1901(b)(37)(A), struck out "under section 1333 (relating to war loss recoveries) or" after "imposed for the taxable year" and "applicable" after "subject to the".

Subsec. (b). Pub. L. 94–455, §1031(b)(1), struck out "applicable" after "Subject to the".

Subsec. (d). Pub. L. 94–455, §1051(d)(1), struck out provisions relating to corporations receiving a large percentage of their gross receipts from sources within a possession of the United States and a corporation organized under the China Trade Act, 1922 (15 U.S.C. chapter 4).

Subsecs. (g), (h). Pub. L. 94–455, §§1051(d)(2), 1901(b)(1)(H)(iii), added subsec. (g), redesignated former subsec. (g) as (h), and, as redesignated, substituted "section 642(a)(1)" for "section 642(a)(2)" in par. (3).

1975—Subsec. (f), (g). Pub. L. 94–12 added subsec. (f) and redesignated former subsec. (f) as (g).

1974—Subsec. (a). Pub. L. 93–460 inserted references to the tax imposed for the taxable year under section 72(m)(5)(B) (relating to 10 percent tax on premature distributions to owner-employees), the tax imposed for the taxable year by section 408(f) (relating to additional tax on income from certain retirement accounts), and the tax imposed by section 402(e) (relating to tax on lump sum distributions).

1971—Subsec. (d). Pub. L. 92–178 inserted provision for treatment of dividends from a DISC or former DISC as dividends from a foreign corporation to the extent such dividends are treated under part I as income from sources without the United States.

1969—Subsec. (a). Pub. L. 91–172, §301(b)(9), inserted "against the tax imposed by section 56 (relating to minimum tax for tax preferences)," after "not be allowed" in last sentence.

Subsecs. (e), (f). Pub. L. 91–172, §506(a), added subsec. (e) and redesignated former subsec. (e) as (f).

1966—Subsec. (a). Pub. L. 89–384 added the additional tax imposed under section 1351 (relating to recoveries of foreign expropriation losses) to the list of taxes against which the foreign tax credit may not be allowed.

Subsec. (b)(3). Pub. L. 89–809, §106(b)(1), struck out provisions which made the allowance of the credit dependent upon whether the foreign country of which the alien resident was a citizen or subject, in imposing such taxes, allowed a similar credit to citizens of the United States residing in such country.

Subsec. (b)(4), (5). Pub. L. 89–809, §106(a)(4), (5), added par. (4), redesignated former par. (4) as (5) and inserted reference to par. (4).

Subsecs. (c) to (e). Pub. L. 89–809, §106(b)(2), added subsec. (c) and redesignated former subsecs. (c) and (d) as (d) and (e), respectively.

1964—Subsec. (d)(1). Pub. L. 88–272 inserted reference to section 275.

1962—Subsec. (a). Pub. L. 87–834, §12(b)(1), substituted "sections 902 and 960" for "section 902".

Subsec. (d)(4). Pub. L. 87–834, §9(d)(3), added par. (4).

1960—Subsec. (a). Pub. L. 86–780, §3(a), (b), inserted "applicable" before "limitation" and substituted "Such choice for any taxable year may be made or changed at any time before the expiration of the period prescribed for making a claim for credit or refund of the tax imposed by this chapter for such taxable year" for "Such choice may be made or changed at any time prior to the expiration of the period prescribed for making a claim for credit or refund of the tax against which the credit is allowable."

Subsec. (b). Pub. L. 86–780, §3(b), inserted "applicable" before "limitation".

EFFECTIVE DATE OF 2005 AMENDMENT

Amendment by Pub. L. 109–135 effective as if included in the provision of the American Jobs Creation Act of 2004, Pub. L. 108–357, to which such amendment relates, see section 403(nn) of Pub. L. 109–135, set out as a note under section 26 of this title.

EFFECTIVE DATE OF 2004 AMENDMENTS

Pub. L. 108–357, title IV, §405(c), Oct. 22, 2004, 118 Stat. 1498, provided that: "The amendments made by this section [amending this section and section 902 of this title] shall apply to taxes of foreign corporations for taxable years of such corporations beginning after the date of the enactment of this Act [Oct. 22, 2004]."

Pub. L. 108–357, title VIII, §832(c), Oct. 22, 2004, 118 Stat. 1588, provided that: "The amendments made by this section [amending this section] shall apply to amounts paid or accrued more than 30 days after the date of the enactment of this Act [Oct. 22, 2004]."

Amendment by Pub. L. 108–311 effective as if included in the provisions of the Taxpayer Relief Act of 1997, Pub. L. 105–34, to which such amendment relates, see section 406(h) of Pub. L. 108–311, set out as a note under section 55 of this title.

EFFECTIVE DATE OF 2000 AMENDMENT

Pub. L. 106–200, title VI, §601(b), May 18, 2000, 114 Stat. 305, provided that: "The amendment made by this section [amending this section] shall apply on or after February 1, 2001."

EFFECTIVE DATE OF 1998 AMENDMENT

Amendment by Pub. L. 105–206 effective, except as otherwise provided, as if included in the provisions of the Taxpayer Relief Act of 1997, Pub. L. 105–34, to which such amendment relates, see section 6024 of Pub. L. 105–206, set out as a note under section 1 of this title.

EFFECTIVE DATE OF 1997 AMENDMENT

Amendment by section 1053(a) of Pub. L. 105–34 applicable to dividends paid or accrued more than 30 days after Aug. 5, 1997, see section 1053(c) of Pub. L. 105–34, set out as a note under section 853 of this title.

Amendment by section 1142(e)(4) of Pub. L. 105–34 applicable to annual accounting periods beginning after Aug. 5, 1997, see section 1142(f) of Pub. L. 105–34, set out as a note under section 318 of this title.

EFFECTIVE DATE OF 1996 AMENDMENT

Amendment by Pub. L. 104–188 effective Aug. 20, 1996, with exception for certain trusts, see section 1904(d) of Pub. L. 104–188, set out as a note under section 643 of this title.

EFFECTIVE DATE OF 1988 AMENDMENT

Amendment by section 1012(j) of Pub. L. 100–647 effective, except as otherwise provided, as if included in the provision of the Tax Reform Act of 1986, Pub. L. 99–514, to which such amendment relates, see section 1019(a) of Pub. L. 100–647, set out as a note under section 1 of this title.

Section 2003(c)(2) of Pub. L. 100–647 provided that: "The amendments made by paragraph (1) [amending this section] shall take effect on January 1, 1987."

EFFECTIVE DATE OF 1987 AMENDMENT

Section 10231(c) of Pub. L. 100–203 provided that: "The amendments made by this section [amending this section] shall apply to taxable years beginning after December 31, 1987."

### EFFECTIVE DATE OF 1986 AMENDMENTS

Amendment by section 112(b)(3) of Pub. L. 99–514 applicable to taxable years beginning after Dec. 31, 1986, see section 151(a) of Pub. L. 99–514, set out as a note under section 1 of this title.

Section 1204(b) of Pub. L. 99–514 provided that: ''The amendment made by subsection (a) [amending this section] shall apply to foreign taxes paid or accrued in taxable years beginning after December 31, 1986.''

Amendment by section 1876(p)(2) of Pub. L. 99–514 effective, except as otherwise provided, as if included in the provisions of the Tax Reform Act of 1984, Pub. L. 98–369, div. A, to which such amendment relates, see section 1881 of Pub. L. 99–514, set out as a note under section 48 of this title.

Section 8041(c) of Pub. L. 99–509 provided that: ''The amendments made by this section [amending this section and section 952 of this title] shall take effect on January 1, 1987.''

### EFFECTIVE DATE OF 1984 AMENDMENT

Amendment by section 474(r)(20) of Pub. L. 98–369 applicable to taxable years beginning after Dec. 31, 1983, and to carrybacks from such years, see section 475(a) of Pub. L. 98–369, set out as a note under section 21 of this title.

Amendment by section 612(e)(1) of Pub. L. 98–369 applicable to interest paid or accrued after Dec. 31, 1984, on indebtedness incurred after Dec. 31, 1984, see section 612(g) of Pub. L. 98–369, set out as an Effective Date note under section 25 of this title.

Amendment by section 713(c)(1)(C) of Pub. L. 98–369 effective as if included in the provision of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97–248, to which such amendment relates, see section 715 of Pub. L. 98–369, set out as a note under section 31 of this title.

Amendment by section 801(d)(1) of Pub. L. 98–369 applicable to transactions after Dec. 31, 1984, in taxable years ending after such date, see section 805(a)(1) of Pub. L. 98–369, as amended, set out as a note under section 245 of this title.

### EFFECTIVE DATE OF 1982 AMENDMENT

Amendment by section 201(d)(8)(A) of Pub. L. 97–248 applicable to taxable years beginning after Dec. 31, 1982, see section 201(e)(1) of Pub. L. 97–248, set out as a note under section 5 of this title.

Amendment by section 265(b)(2)(A)(iv) of Pub. L. 97–248 applicable to distributions after Dec. 31, 1982, see section 265(c)(2) of Pub. L. 97–248, set out as a note under section 72 of this title.

### EFFECTIVE DATE OF 1978 AMENDMENT

Section 701(u)(1)(C) of Pub. L. 95–600, as amended by Pub. L. 99–514, §2, Oct. 22, 1986, 100 Stat. 2095, provided that: ''The amendment made by subparagraph (A) [amending this section] shall apply as if included in section 901(g) of the Internal Revenue Code of 1986 [formerly I.R.C. 1954] as added by section 1051(d)(2) of the Tax Reform Act of 1976 [section 1051(d)(2) of Pub. L. 94–455]. The amendments made by subparagraph (B) [amending this section] shall apply to distributions made after the date of the enactment of this Act [Nov. 6, 1978] in taxable years ending after such date.''

### EFFECTIVE DATE OF 1976 AMENDMENT

Amendment by section 1031(b)(1) of Pub. L. 94–455 applicable to taxable years beginning after Dec. 31, 1975, with certain exceptions, see section 1031(c) of Pub. L. 94–455, set out as a note under section 904 of this title.

Amendment by section 1051(d)(1) of Pub. L. 94–455 applicable to taxable years beginning after Dec. 31, 1975, with certain exceptions, and the provisions of subsec. (g) not to apply to any tax imposed by a possession of the United States with respect to the complete liquidation occurring before Jan. 1, 1979, of a corporation to the extent that such tax is attributable to earnings and profits accumulated by such corporation during periods ending before Jan. 1, 1976, see section 1051(i) of Pub. L. 94–455, set out as a note under section 27 of this title.

Amendment by section 1901(b)(1)(H)(iii), (37)(A) of Pub. L. 94–455 applicable with respect to taxable years beginning after Dec. 31, 1976, see section 1901(d) of Pub. L. 94–455, set out as a note under section 2 of this title.

### EFFECTIVE DATE OF 1975 AMENDMENT

Amendment by Pub. L. 94–12 applicable to taxable years ending after Dec. 31, 1974, see section 601(d) of Pub. L. 94–12, set out as an Effective Date note under section 907 of this title.

### EFFECTIVE DATE OF 1974 AMENDMENT

Amendment by section 2001(g)(2)(C) of Pub. L. 93–406, which inserted reference to the tax imposed for the taxable year under section 72(m)(5)(B) (relating to 10 percent tax on premature distributions to owner-employees), applicable to distributions made in taxable years beginning after Dec. 31, 1975, see section 2001(i)(4) of Pub. L. 93–406, set out as a note under section 72 of this title.

Amendment by section 2002(g)(3) of Pub. L. 93–406, which inserted reference to the tax imposed for the taxable year by section 408(f) (relating to additional tax on income from certain retirement accounts), effective on Jan. 1, 1975, see section 2002(i)(2) of Pub. L. 93–406, set out as an Effective Date note under section 4973 of this title.

Amendment by section 2005(c)(5) of Pub. L. 93–406, which inserted reference to the tax imposed for the taxable year under section 402(e) (relating to tax on lump sum distributions), applicable only with respect to distributions or payments made after Dec. 31, 1973, in taxable years beginning after Dec. 31, 1973, see section 2005(d) of Pub. L. 93–406, set out as a note under section 402 of this title.

### EFFECTIVE DATE OF 1971 AMENDMENT

Amendment by Pub. L. 92–178 applicable with respect to taxable years ending after Dec. 31, 1971, except that a corporation may not be a DISC for any taxable year beginning before Jan. 1, 1972, see section 507 of Pub. L. 92–178, set out as an Effective Date note under section 991 of this title.

### EFFECTIVE DATE OF 1969 AMENDMENT

Amendment by section 301(b)(9) of Pub. L. 91–172 applicable to taxable years ending after Dec. 31, 1969, see section 301(c) of Pub. L. 91–172, set out as a note under section 5 of this title.

Section 506(c) of Pub. L. 91–172 provided that: ''The amendments made by this section [amending this section and section 904 of this title] shall apply with respect to taxable years beginning after December 31, 1969.''

### EFFECTIVE DATE OF 1966 AMENDMENTS

Amendment by section 106(a)(4), (5) of Pub. L. 89–809 applicable with respect to taxable years beginning after Dec. 31, 1966, see section 106(a)(6) of Pub. L. 89–809, set out as a note under section 874 of this title.

Section 106(b)(4) of Pub. L. 89–809 provided that: ''The amendments made by this subsection (other than paragraph (3)) [amending this section] shall apply with respect to taxable years beginning after December 31, 1966. The amendment made by paragraph (3) [amending section 2014 of this title] shall apply with respect to estates of decedents dying after the date of enactment of this Act [Nov. 13, 1966].''

Amendment by Pub. L. 89–384 applicable with respect to amounts received after December 31, 1964, in respect of foreign expropriation losses (as defined in section 1351(b) of this title) sustained after December 31, 1958, see section 2 of Pub. L. 89–384, set out as an Effective Date note under section 1351 of this title.

### EFFECTIVE DATE OF 1964 AMENDMENT

Amendment by Pub. L. 88–272 applicable to taxable years beginning after Dec. 31, 1963, see section 207(c) of

Pub. L. 88–272, set out as a note under section 164 of this title.

EFFECTIVE DATE OF 1962 AMENDMENT

Amendment by section 12(b)(1) of Pub. L. 87–834 applicable with respect to taxable years of foreign corporations beginning after Dec. 31, 1962, and to taxable years of United States shareholders within which or with which such taxable years of such foreign corporations end, see section 12(c) of Pub. L. 87–834, set out as an Effective Date note under section 951 of this title.

EFFECTIVE DATE OF 1960 AMENDMENT

Amendment by section 3(a) of Pub. L. 86–780 applicable to taxable years beginning after Dec. 31, 1960, and amendment by section 3(b) of Pub. L. 86–780 applicable to taxable years beginning after Dec. 31, 1953, and ending after Aug. 16, 1954, see section 4 of Pub. L. 86–780, set out as a note under section 904 of this title.

EFFECT OF AMENDMENT BY PUB. L. 103–149 ON
REVENUE RULING 92–62

Amendment by section 4(b)(8)(A) of Pub. L. 103–149 not to be construed as affecting any of the transitional rules contained in Revenue Ruling 92–62 which apply by reason of the termination of the period for which subsec. (j) of this section was applicable to South Africa, see section 4(b)(8)(B) of Pub. L. 103–149 set out in a Repeal of Chapter; South African Democratic Transition Support note under section 5001 of Title 22, Foreign Relations and Intercourse.

PLAN AMENDMENTS NOT REQUIRED UNTIL
JANUARY 1, 1989

For provisions directing that if any amendments made by subtitle A or subtitle C of title XI [§§ 1101–1147 and 1171–1177] or title XVIII [§§ 1800–1899A] of Pub. L. 99–514 require an amendment to any plan, such plan amendment shall not be required to be made before the first plan year beginning on or after Jan. 1, 1989, see section 1140 of Pub. L. 99–514, as amended, set out as a note under section 401 of this title.

## § 902. Deemed paid credit where domestic corporation owns 10 percent or more of voting stock of foreign corporation

### (a) Taxes paid by foreign corporation treated as paid by domestic corporation

For purposes of this subpart, a domestic corporation which owns 10 percent or more of the voting stock of a foreign corporation from which it receives dividends in any taxable year shall be deemed to have paid the same proportion of such foreign corporation's post-1986 foreign income taxes as—

(1) the amount of such dividends (determined without regard to section 78), bears to

(2) such foreign corporation's post-1986 undistributed earnings.

### (b) Deemed taxes increased in case of certain lower tier corporations

#### (1) In general

If—

(A) any foreign corporation is a member of a qualified group, and

(B) such foreign corporation owns 10 percent or more of the voting stock of another member of such group from which it receives dividends in any taxable year,

such foreign corporation shall be deemed to have paid the same proportion of such other member's post-1986 foreign income taxes as would be determined under subsection (a) if such foreign corporation were a domestic corporation.

#### (2) Qualified group

For purposes of paragraph (1), the term "qualified group" means—

(A) the foreign corporation described in subsection (a), and

(B) any other foreign corporation if—

(i) the domestic corporation owns at least 5 percent of the voting stock of such other foreign corporation indirectly through a chain of foreign corporations connected through stock ownership of at least 10 percent of their voting stock,

(ii) the foreign corporation described in subsection (a) is the first tier corporation in such chain, and

(iii) such other corporation is not below the sixth tier in such chain.

The term "qualified group" shall not include any foreign corporation below the third tier in the chain referred to in clause (i) unless such foreign corporation is a controlled foreign corporation (as defined in section 957) and the domestic corporation is a United States shareholder (as defined in section 951(b)) in such foreign corporation. Paragraph (1) shall apply to those taxes paid by a member of the qualified group below the third tier only with respect to periods during which it was a controlled foreign corporation.

### (c) Definitions and special rules

For purposes of this section—

#### (1) Post-1986 undistributed earnings

The term "post-1986 undistributed earnings" means the amount of the earnings and profits of the foreign corporation (computed in accordance with sections 964(a) and 986) accumulated in taxable years beginning after December 31, 1986—

(A) as of the close of the taxable year of the foreign corporation in which the dividend is distributed, and

(B) without diminution by reason of dividends distributed during such taxable year.

#### (2) Post-1986 foreign income taxes

The term "post-1986 foreign income taxes" means the sum of—

(A) the foreign income taxes with respect to the taxable year of the foreign corporation in which the dividend is distributed, and

(B) the foreign income taxes with respect to prior taxable years beginning after December 31, 1986, to the extent such foreign taxes were not attributable to dividends distributed by the foreign corporation in prior taxable years.

#### (3) Special rule where foreign corporation first qualifies after December 31, 1986

##### (A) In general

If the 1st day on which the requirements of subparagraph (B) are met with respect to any foreign corporation is in a taxable year of such corporation beginning after December 31, 1986, the post-1986 undistributed earnings and the post-1986 foreign income taxes of such foreign corporation shall be deter-

such amendment relates, see section 1019(a) of Pub. L. 100–647, set out as a note under section 1 of this title.

### Effective Date of 1986 Amendment

Section 1202(e) of Pub. L. 99–514 provided that: "The amendments made by this section [amending this section and sections 960 and 6038 of this title] shall apply to distributions by foreign corporations out of, and to inclusions under section 951(a) of the Internal Revenue Code of 1986 attributable to, earnings and profits for taxable years beginning after December 31, 1986.''

### Effective Date of 1976 Amendment

Section 1033(c) of Pub. L. 94–455, as amended by Pub. L. 99–514, §2, Oct. 22, 1986, 100 Stat. 2095, provided that: "The amendments made by this section [amending this section and sections 78, 535, 545, and 960 of this title] shall apply—

''(1) in respect of any distribution received by a domestic corporation after December 31, 1977, and

''(2) in respect of any distribution received by a domestic corporation before January 1, 1978, in a taxable year of such corporation beginning after December 31, 1975, but only to the extent that such distribution is made out of the accumulated profits of a foreign corporation for a taxable year (of such foreign corporation) beginning after December 31, 1975.

For purposes of paragraph (2), a distribution made by a foreign corporation out of its profits which are attributable to a distribution received from a foreign corporation to which section 902(b) of the Internal Revenue Code of 1986 [formerly I.R.C. 1954] applies shall be treated as made out of the accumulated profits of a foreign corporation for a taxable year beginning before January 1, 1976, to the extent that such distribution was paid out of the accumulated profits of such foreign corporation for a taxable year beginning before January 1, 1976.''

### Effective Date of 1975 Amendment

Amendment by Pub. L. 94–12 applicable to taxable years of foreign corporations beginning after Dec. 31, 1975, and to taxable years of United States shareholders (within the meaning of section 951(b) of this title) within which or with which such taxable years of such foreign corporations end, see section 602(f) of Pub. L. 94–12, set out as an Effective Date note under section 955 of this title.

### Effective Date of 1971 Amendment

Section 3 of Pub. L. 91–684 provided that: "The amendments made by this Act [amending this section] shall apply with respect to all taxable years of domestic corporations, ending after the date of enactment of this Act [Jan. 12, 1971], but only in respect of dividends paid by one corporation to another corporation after the date of the enactment of this Act.''

### Effective Date of 1962 Amendment

Section 9(e) of Pub. L. 87–834 provided that: "The amendments made by this section [enacting section 78 of this title and amending this section and sections 535, 545, 861, and 901 of this title] shall apply—

''(1) in respect of any distribution received by a domestic corporation after December 31, 1964, and

''(2) in respect of any distribution received by a domestic corporation before January 1, 1965, in a taxable year of such corporation beginning after December 31, 1962, but only to the extent that such distribution is made out of the accumulated profits of a foreign corporation for a taxable year (of such foreign corporation) beginning after December 31, 1962.

For purposes of paragraph (2), a distribution made by a foreign corporation out of its profits which are attributable to a distribution received from a foreign subsidiary to which section 902(b) applies shall be treated as made out of the accumulated profits of a foreign corporation for a taxable year beginning before January 1, 1963, to the extent that such distribution was paid out

of the accumulated profits of such foreign subsidiary for a taxable year beginning before January 1, 1963.''

### Effective Date of 1960 Amendment

Amendment by Pub. L. 86–780 applicable to taxable years beginning after Dec. 31, 1960, see section 6(c) of Pub. L. 86–780), set out as an Effective Date note under section 6038 of this title.

### Increase in Earnings and Profits of Foreign Corporations Under Section 1023(e)(3)(C) of Pub. L. 99–514

Section 1012(b)(3) of Pub. L. 100–647 provided that: "For purposes of sections 902 and 960 of the 1986 Code, the increase in earnings and profits of any foreign corporation under section 1023(e)(3)(C) of the Reform Act [Pub. L. 99–514, set out as an Effective Date note under section 846 of this title] shall be taken into account ratably over the 10-year period beginning with the corporation's first taxable year beginning after December 31, 1986.''

## § 903. Credit for taxes in lieu of income, etc., taxes

For purposes of this part and of sections 164(a) and 275(a), the term "income, war profits, and excess profits taxes'' shall include a tax paid in lieu of a tax on income, war profits, or excess profits otherwise generally imposed by any foreign country or by any possession of the United States.

(Aug. 16, 1954, ch. 736, 68A Stat. 287; Pub. L. 88–272, title II, §207(b)(8), Feb. 26, 1964, 78 Stat. 42; Pub. L. 100–647, title I, §1012(v)(9), Nov. 10, 1988, 102 Stat. 3530; Pub. L. 106–519, §4(4), Nov. 15, 2000, 114 Stat. 2433; Pub. L. 108–357, title I, §101(b)(7), Oct. 22, 2004, 118 Stat. 1423.)

### Amendments

2004—Pub. L. 108–357 substituted "164(a)'' for "114, 164(a),''.

2000—Pub. L. 106–519 substituted "114, 164(a),'' for "164(a)''.

1988—Pub. L. 100–647 substituted "this part'' for "this subpart''.

1964—Pub. L. 88–272 substituted "sections 164(a) and 275(a)'' for "section 164(b)''.

### Effective Date of 2004 Amendment

Amendment by Pub. L. 108–357 applicable to transactions after Dec. 31, 2004, see section 101(c) of Pub. L. 108–357, set out as a note under section 56 of this title.

### Effective Date of 2000 Amendment

Amendment by Pub. L. 106–519 applicable to transactions after Sept. 30, 2000, with special rules relating to existing foreign sales corporations, see section 5 of Pub. L. 106–519, set out as a note under section 56 of this title.

### Effective Date of 1988 Amendment

Amendment by Pub. L. 100–647 effective, except as otherwise provided, as if included in the provision of the Tax Reform Act of 1986, Pub. L. 99–514, to which such amendment relates, see section 1019(a) of Pub. L. 100–647, set out as a note under section 1 of this title.

### Effective Date of 1964 Amendment

Amendment by Pub. L. 88–272 applicable to taxable years beginning after Dec. 31, 1963, see section 207(c) of Pub. L. 88–272, set out as a note under section 164 of this title.

## § 904. Limitation on credit

### (a) Limitation

The total amount of the credit taken under section 901(a) shall not exceed the same propor-

tion of the tax against which such credit is taken which the taxpayer's taxable income from sources without the United States (but not in excess of the taxpayer's entire taxable income) bears to his entire taxable income for the same taxable year.

**(b) Taxable income for purpose of computing limitation**

**(1) Personal exemptions**

For purposes of subsection (a), the taxable income in the case of an individual, estate, or trust shall be computed without any deduction for personal exemptions under section 151 or 642(b).

**(2) Capital gains**

For purposes of this section—

**(A) In general**

Taxable income from sources outside the United States shall include gain from the sale or exchange of capital assets only to the extent of foreign source capital gain net income.

**(B) Special rules where capital gain rate differential**

In the case of any taxable year for which there is a capital gain rate differential—

(i) in lieu of applying subparagraph (A), the taxable income from sources outside the United States shall include gain from the sale or exchange of capital assets only in an amount equal to foreign source capital gain net income reduced by the rate differential portion of foreign source net capital gain,

(ii) the entire taxable income shall include gain from the sale or exchange of capital assets only in an amount equal to capital gain net income reduced by the rate differential portion of net capital gain, and

(iii) for purposes of determining taxable income from sources outside the United States, any net capital loss (and any amount which is a short-term capital loss under section 1212(a)) from sources outside the United States to the extent taken into account in determining capital gain net income for the taxable year shall be reduced by an amount equal to the rate differential portion of the excess of net capital gain from sources within the United States over net capital gain.

**(C) Coordination with capital gains rates**

The Secretary may by regulations modify the application of this paragraph and paragraph (3) to the extent necessary to properly reflect any capital gain rate differential under section 1(h) or 1201(a) and the computation of net capital gain.

**(3) Definitions**

For purposes of this subsection—

**(A) Foreign source capital gain net income**

The term ''foreign source capital gain net income'' means the lesser of—

(i) capital gain net income from sources without the United States, or

(ii) capital gain net income.

**(B) Foreign source net capital gain**

The term ''foreign source net capital gain'' means the lesser of—

(i) net capital gain from sources without the United States, or

(ii) net capital gain.

**(C) Section 1231 gains**

The term ''gain from the sale or exchange of capital assets'' includes any gain so treated under section 1231.

**(D) Capital gain rate differential**

There is a capital gain rate differential for any taxable year if—

(i) in the case of a taxpayer other than a corporation, subsection (h) of section 1 applies to such taxable year, or

(ii) in the case of a corporation, any rate of tax imposed by section 11, 511, or 831(a) or (b) (whichever applies) exceeds the alternative rate of tax under section 1201(a) (determined without regard to the last sentence of section 11(b)(1)).

**(E) Rate differential portion**

**(i) In general**

The rate differential portion of foreign source net capital gain, net capital gain, or the excess of net capital gain from sources within the United States over net capital gain, as the case may be, is the same proportion of such amount as—

(I) the excess of the highest applicable tax rate over the alternative tax rate, bears to

(II) the highest applicable tax rate.

**(ii) Highest applicable tax rate**

For purposes of clause (i), the term ''highest applicable tax rate'' means—

(I) in the case of a taxpayer other than a corporation, the highest rate of tax set forth in subsection (a), (b), (c), (d), or (e) of section 1 (whichever applies), or

(II) in the case of a corporation, the highest rate of tax specified in section 11(b).

**(iii) Alternative tax rate**

For purposes of clause (i), the term ''alternative tax rate'' means—

(I) in the case of a taxpayer other than a corporation, the alternative rate of tax determined under section 1(h), or

(II) in the case of a corporation, the alternative rate of tax under section 1201(a).

**(4) Coordination with section 936**

For purposes of subsection (a), in the case of a corporation, the taxable income shall not include any portion thereof taken into account for purposes of the credit (if any) allowed by section 936 (without regard to subsections (a)(4) and (i) thereof).

**(c) Carryback and carryover of excess tax paid**

Any amount by which all taxes paid or accrued to foreign countries or possessions of the United States for any taxable year for which the

taxpayer chooses to have the benefits of this subpart exceed the limitation under subsection (a) shall be deemed taxes paid or accrued to foreign countries or possessions of the United States in the first preceding taxable year and in any of the first 10 succeeding taxable years, in that order and to the extent not deemed taxes paid or accrued in a prior taxable year, in the amount by which the limitation under subsection (a) for such preceding or succeeding taxable year exceeds the sum of the taxes paid or accrued to foreign countries or possessions of the United States for such preceding or succeeding taxable year and the amount of the taxes for any taxable year earlier than the current taxable year which shall be deemed to have been paid or accrued in such preceding or subsequent taxable year (whether or not the taxpayer chooses to have the benefits of this subpart with respect to such earlier taxable year). Such amount deemed paid or accrued in any year may be availed of only as a tax credit and not as a deduction and only if the taxpayer for such year chooses to have the benefits of this subpart as to taxes paid or accrued for that year to foreign countries or possessions of the United States.

**(d) Separate application of section with respect to certain categories of income**

**(1) In general**

The provisions of subsections (a), (b), and (c) and sections 902, 907, and 960 shall be applied separately with respect to—

(A) passive category income, and

(B) general category income.

**(2) Definitions and special rules**

For purposes of this subsection—

**(A) Categories**

**(i) Passive category income**

The term ''passive category income'' means passive income and specified passive category income.

**(ii) General category income**

The term ''general category income'' means income other than passive category income.

**(B) Passive income**

**(i) In general**

Except as otherwise provided in this subparagraph, the term ''passive income'' means any income received or accrued by any person which is of a kind which would be foreign personal holding company income (as defined in section 954(c)).

**(ii) Certain amounts included**

Except as provided in clause (iii), the term ''passive income'' includes, except as provided in subparagraph (E)(iii)[1] or paragraph (3)(I)[1], any amount includible in gross income under section 1293 (relating to certain passive foreign investment companies).

**(iii) Exceptions**

The term ''passive income'' shall not include—

[1] See References in Text note below.

(I) any export financing interest, and

(II) any high-taxed income.

**(iv) Clarification of application of section 864(d)(6)**

In determining whether any income is of a kind which would be foreign personal holding company income, the rules of section 864(d)(6) shall apply only in the case of income of a controlled foreign corporation.

**(v) Specified passive category income**

The term ''specified passive category income'' means—

(I) dividends from a DISC or former DISC (as defined in section 992(a)) to the extent such dividends are treated as income from sources without the United States, and

(II) distributions from a former FSC (as defined in section 922) out of earnings and profits attributable to foreign trade income (within the meaning of section 923(b)) or interest or carrying charges (as defined in section 927(d)(1)) derived from a transaction which results in foreign trade income (as defined in section 923(b)).

Any reference in subclause (II) to section 922, 923, or 927 shall be treated as a reference to such section as in effect before its repeal by the FSC Repeal and Extraterritorial Income Exclusion Act of 2000.

**(C) Treatment of financial services income and companies**

**(i) In general**

Financial services income shall be treated as general category income in the case of—

(I) a member of a financial services group, and

(II) any other person if such person is predominantly engaged in the active conduct of a banking, insurance, financing, or similar business.

**(ii) Financial services group**

The term ''financial services group'' means any affiliated group (as defined in section 1504(a) without regard to paragraphs (2) and (3) of section 1504(b)) which is predominantly engaged in the active conduct of a banking, insurance, financing, or similar business. In determining whether such a group is so engaged, there shall be taken into account only the income of members of the group that are—

(I) United States corporations, or

(II) controlled foreign corporations in which such United States corporations own, directly or indirectly, at least 80 percent of the total voting power and value of the stock.

**(iii) Pass-thru entities**

The Secretary shall by regulation specify for purposes of this subparagraph the treatment of financial services income received or accrued by partnerships and by other pass-thru entities which are not members of a financial services group.

**(D) Financial services income**

**(i) In general**

Except as otherwise provided in this subparagraph, the term "financial services income" means any income which is received or accrued by any person predominantly engaged in the active conduct of a banking, insurance, financing, or similar business, and which is—

(I) described in clause (ii), or

(II) passive income (determined without regard to subparagraph (B)(iii)(II)).

**(ii) General description of financial services income**

Income is described in this clause if such income is—

(I) derived in the active conduct of a banking, financing, or similar business,

(II) derived from the investment by an insurance company of its unearned premiums or reserves ordinary and necessary for the proper conduct of its insurance business, or

(III) of a kind which would be insurance income as defined in section 953(a) determined without regard to those provisions of paragraph (1)(A) of such section which limit insurance income to income from countries other than the country in which the corporation was created or organized.

**(E) Noncontrolled section 902 corporation**

**(i) In general**

The term "noncontrolled section 902 corporation" means any foreign corporation with respect to which the taxpayer meets the stock ownership requirements of section 902(a) (or, for purposes of applying paragraph (3) or (4), the requirements of section 902(b)). A controlled foreign corporation shall not be treated as a noncontrolled section 902 corporation with respect to any distribution out of its earnings and profits for periods during which it was a controlled foreign corporation.

**(ii) Treatment of inclusions under section 1293**

If any foreign corporation is a non-controlled section 902 corporation with respect to the taxpayer, any inclusion under section 1293 with respect to such corporation shall be treated as a dividend from such corporation.

**(F) High-taxed income**

The term "high-taxed income" means any income which (but for this subparagraph) would be passive income if the sum of—

(i) the foreign income taxes paid or accrued by the taxpayer with respect to such income, and

(ii) the foreign income taxes deemed paid by the taxpayer with respect to such income under section 902 or 960,

exceeds the highest rate of tax specified in section 1 or 11 (whichever applies) multiplied by the amount of such income (determined with regard to section 78). For purposes of

the preceding sentence, the term "foreign income taxes" means any income, war profits, or excess profits tax imposed by any foreign country or possession of the United States.

**(G) Export financing interest**

For purposes of this paragraph, the term "export financing interest" means any interest derived from financing the sale (or other disposition) for use or consumption outside the United States of any property—

(i) which is manufactured, produced, grown, or extracted in the United States by the taxpayer or a related person, and

(ii) not more than 50 percent of the fair market value of which is attributable to products imported into the United States.

For purposes of clause (ii), the fair market value of any property imported into the United States shall be its appraised value, as determined by the Secretary under section 402 of the Tariff Act of 1930 (19 U.S.C. 1401a) in connection with its importation.

**(H) Treatment of income tax base differences**

**(i) In general**

In the case of taxable years beginning after December 31, 2006, tax imposed under the law of a foreign country or possession of the United States on an amount which does not constitute income under United States tax principles shall be treated as imposed on income described in paragraph (1)(B).

**(ii) Special rule for years before 2007**

**(I) In general**

In the case of taxes paid or accrued in taxable years beginning after December 31, 2004, and before January 1, 2007, a taxpayer may elect to treat tax imposed under the law of a foreign country or possession of the United States on an amount which does not constitute income under United States tax principles as tax imposed on income described in subparagraph (C) or (I) of paragraph (1).

**(II) Election irrevocable**

Any such election shall apply to the taxable year for which made and all subsequent taxable years described in subclause (I) unless revoked with the consent of the Secretary.

**(I) Related person**

For purposes of this paragraph, the term "related person" has the meaning given such term by section 954(d)(3), except that such section shall be applied by substituting "the person with respect to whom the determination is being made" for "controlled foreign corporation" each place it appears.

**(J) Transitional rule**

For purposes of paragraph (1)—

(i) taxes paid or accrued in a taxable year beginning before January 1, 1987, with respect to income which was described in subparagraph (A) of paragraph (1) (as in effect on the day before the date of the en-

actment of the Tax Reform Act of 1986) shall be treated as taxes paid or accrued with respect to income described in subparagraph (A) of paragraph (1) (as in effect after such date),

(ii) taxes paid or accrued in a taxable year beginning before January 1, 1987, with respect to income which was described in subparagraph (E) of paragraph (1) (as in effect on the day before the date of the enactment of the Tax Reform Act of 1986) shall be treated as taxes paid or accrued with respect to income described in subparagraph (I) of paragraph (1) (as in effect after such date) except that—

(I) such taxes shall be treated as paid or accrued with respect to shipping income to the extent the taxpayer establishes to the satisfaction of the Secretary that such taxes were paid or accrued with respect to such income,

(II) in the case of a person described in subparagraph (C)(i), such taxes shall be treated as paid or accrued with respect to financial services income to the extent the taxpayer establishes to the satisfaction of the Secretary that such taxes were paid or accrued with respect to such income, and

(III) such taxes shall be treated as paid or accrued with respect to high withholding tax interest to the extent the taxpayer establishes to the satisfaction of the Secretary that such taxes were paid or accrued with respect to such income, and

(iii) taxes paid or accrued in a taxable year beginning before January 1, 1987, with respect to income described in any other subparagraph of paragraph (1) (as so in effect before such date) shall be treated as taxes paid or accrued with respect to income described in the corresponding subparagraph of paragraph (1) (as so in effect after such date).

**(K) Transitional rules for 2007 changes**

For purposes of paragraph (1)—

(i) taxes carried from any taxable year beginning before January 1, 2007, to any taxable year beginning on or after such date, with respect to any item of income, shall be treated as described in the subparagraph of paragraph (1) in which such income would be described were such taxes paid or accrued in a taxable year beginning on or after such date, and

(ii) the Secretary may by regulations provide for the allocation of any carryback of taxes with respect to income from a taxable year beginning on or after January 1, 2007, to a taxable year beginning before such date for purposes of allocating such income among the separate categories in effect for the taxable year to which carried.

**(3) Look-thru in case of controlled foreign corporations**

**(A) In general**

Except as otherwise provided in this paragraph, dividends, interest, rents, and royal-

ties received or accrued by the taxpayer from a controlled foreign corporation in which the taxpayer is a United States shareholder shall not be treated as passive category income.

**(B) Subpart F inclusions**

Any amount included in gross income under section 951(a)(1)(A) shall be treated as passive category income to the extent the amount so included is attributable to passive category income.

**(C) Interest, rents, and royalties**

Any interest, rent, or royalty which is received or accrued from a controlled foreign corporation in which the taxpayer is a United States shareholder shall be treated as passive category income to the extent it is properly allocable (under regulations prescribed by the Secretary) to passive category income of the controlled foreign corporation.

**(D) Dividends**

Any dividend paid out of the earnings and profits of any controlled foreign corporation in which the taxpayer is a United States shareholder shall be treated as passive category income in proportion to the ratio of—

(i) the portion of the earnings and profits attributable to passive category income, to

(ii) the total amount of earnings and profits.

**(E) Look-thru applies only where subpart F applies**

If a controlled foreign corporation meets the requirements of section 954(b)(3)(A) (relating to de minimis rule) for any taxable year, for purposes of this paragraph, none of its foreign base company income (as defined in section 954(a) without regard to section 954(b)(5)) and none of its gross insurance income (as defined in section 954(b)(3)(C)) for such taxable year shall be treated as passive category income, except that this sentence shall not apply to any income which (without regard to this sentence) would be treated as financial services income. Solely for purposes of applying subparagraph (D), passive income of a controlled foreign corporation shall not be treated as passive category income if the requirements of section 954(b)(4) are met with respect to such income.

**(F) Coordination with high-taxed income provisions**

(i) In determining whether any income of a controlled foreign corporation is passive category income, subclause (II) of paragraph (2)(B)(iii) shall not apply.

(ii) Any income of the taxpayer which is treated as passive category income under this paragraph shall be so treated notwithstanding any provision of paragraph (2); except that the determination of whether any amount is high-taxed income shall be made after the application of this paragraph.

**(G) Dividend**

For purposes of this paragraph, the term "dividend" includes any amount included in

gross income in section 951(a)(1)(B). Any amount included in gross income under section 78 to the extent attributable to amounts included in gross income in section 951(a)(1)(A) shall not be treated as a dividend but shall be treated as included in gross income under section 951(a)(1)(A).

**(H) Look-thru applies to passive foreign investment company inclusion**

If—

(i) a passive foreign investment company is a controlled foreign corporation, and

(ii) the taxpayer is a United States shareholder in such controlled foreign corporation,

any amount included in gross income under section 1293 shall be treated as income in a separate category to the extent such amount is attributable to income in such category.

**(4) Look-thru applies to dividends from noncontrolled section 902 corporations**

**(A) In general**

For purposes of this subsection, any dividend from a noncontrolled section 902 corporation with respect to the taxpayer shall be treated as income described in a subparagraph of paragraph (1) in proportion to the ratio of—

(i) the portion of earnings and profits attributable to income described in such subparagraph, to

(ii) the total amount of earnings and profits.

**(B) Earnings and profits of controlled foreign corporations**

In the case of any distribution from a controlled foreign corporation to a United States shareholder, rules similar to the rules of subparagraph (A) shall apply in determining the extent to which earnings and profits of the controlled foreign corporation which are attributable to dividends received from a noncontrolled section 902 corporation may be treated as income in a separate category.

**(C) Special rules**

For purposes of this paragraph—

**(i) Earnings and profits**

**(I) In general**

The rules of section 316 shall apply.

**(II) Regulations**

The Secretary may prescribe regulations regarding the treatment of distributions out of earnings and profits for periods before the taxpayer's acquisition of the stock to which the distributions relate.

**(ii) Inadequate substantiation**

If the Secretary determines that the proper subparagraph of paragraph (1) in which a dividend is described has not been substantiated, such dividend shall be treated as income described in paragraph (1)(A).

**(iii) Coordination with high-taxed income provisions**

Rules similar to the rules of paragraph (3)(F) shall apply for purposes of this paragraph.

**(iv) Look-thru with respect to carryover of credit**

Rules similar to subparagraph (A) also shall apply to any carryforward under subsection (c) from a taxable year beginning before January 1, 2003, of tax allocable to a dividend from a noncontrolled section 902 corporation with respect to the taxpayer. The Secretary may by regulations provide for the allocation of any carryback of tax allocable to a dividend from a noncontrolled section 902 corporation from a taxable year beginning on or after January 1, 2003, to a taxable year beginning before such date for purposes of allocating such dividend among the separate categories in effect for the taxable year to which carried.

**(5) Controlled foreign corporation; United States shareholder**

For purposes of this subsection—

**(A) Controlled foreign corporation**

The term "controlled foreign corporation" has the meaning given such term by section 957 (taking into account section 953(c)).

**(B) United States shareholder**

The term "United States shareholder" has the meaning given such term by section 951(b) (taking into account section 953(c)).

**(6) Regulations**

The Secretary shall prescribe such regulations as may be necessary or appropriate for the purposes of this subsection, including regulations—

(A) for the application of paragraph (3) and subsection (f)(5) in the case of income paid (or loans made) through 1 or more entities or between 2 or more chains of entities,

(B) preventing the manipulation of the character of income the effect of which is to avoid the purposes of this subsection, and

(C) providing that rules similar to the rules of paragraph (3)(C) shall apply to interest, rents, and royalties received or accrued from entities which would be controlled foreign corporations if they were foreign corporations.

**[(e) Repealed. Pub. L. 101–508, title XI, § 11801(a)(31), Nov. 5, 1990, 104 Stat. 1388–521]**

**(f) Recapture of overall foreign loss**

**(1) General rule**

For purposes of this subpart and section 936, in the case of any taxpayer who sustains an overall foreign loss for any taxable year, that portion of the taxpayer's taxable income from sources without the United States for each succeeding taxable year which is equal to the lesser of—

(A) the amount of such loss (to the extent not used under this paragraph in prior taxable years), or

(B) 50 percent (or such larger percent as the taxpayer may choose) of the taxpayer's taxable income from sources without the United States for such succeeding taxable year,

shall be treated as income from sources within the United States (and not as income from sources without the United States).

**(2) Overall foreign loss defined**

For purposes of this subsection, the term "overall foreign loss" means the amount by which the gross income for the taxable year from sources without the United States (whether or not the taxpayer chooses the benefits of this subpart for such taxable year) for such year is exceeded by the sum of the deductions properly apportioned or allocated thereto, except that there shall not be taken into account—

    (A) any net operating loss deduction allowable for such year under section 172(a), and

    (B) any—

        (i) foreign expropriation loss for such year, as defined in section 172(h) (as in effect on the day before the date of the enactment of the Revenue Reconciliation Act of 1990), or

        (ii) loss for such year which arises from fire, storm, shipwreck, or other casualty, or from theft,

to the extent such loss is not compensated for by insurance or otherwise.

**(3) Dispositions**

    **(A) In general**

For purposes of this chapter, if property which has been used predominantly without the United States in a trade or business is disposed of during any taxable year—

        (i) the taxpayer, notwithstanding any other provision of this chapter (other than paragraph (1)), shall be deemed to have received and recognized taxable income from sources without the United States in the taxable year of the disposition, by reason of such disposition, in an amount equal to the lesser of the excess of the fair market value of such property over the taxpayer's adjusted basis in such property or the remaining amount of the overall foreign losses which were not used under paragraph (1) for such taxable year or any prior taxable year, and

        (ii) paragraph (1) shall be applied with respect to such income by substituting "100 percent" for "50 percent".

In determining for purposes of this subparagraph whether the predominant use of any property has been without the United States, there shall be taken into account use during the 3-year period ending on the date of the disposition (or, if shorter, the period during which the property has been used in the trade or business).

    **(B) Disposition defined and special rules**

        (i) For purposes of this subsection, the term "disposition" includes a sale, exchange, distribution, or gift of property whether or not gain or loss is recognized on the transfer.

        (ii) Any taxable income recognized solely by reason of subparagraph (A) shall have the same characterization it would have had if the taxpayer had sold or exchanged the property.

        (iii) The Secretary shall prescribe such regulations as he may deem necessary to provide for adjustments to the basis of property to reflect taxable income recognized solely by reason of subparagraph (A).

    **(C) Exceptions**

Notwithstanding subparagraph (B), the term "disposition" does not include—

        (i) a disposition of property which is not a material factor in the realization of income by the taxpayer, or

        (ii) a disposition of property to a domestic corporation in a distribution or transfer described in section 381(a).

    **(D) Application to certain dispositions of stock in controlled foreign corporation**

    **(i) In general**

This paragraph shall apply to an applicable disposition in the same manner as if it were a disposition of property described in subparagraph (A), except that the exception contained in subparagraph (C)(i) shall not apply.

    **(ii) Applicable disposition**

For purposes of clause (i), the term "applicable disposition" means any disposition of any share of stock in a controlled foreign corporation in a transaction or series of transactions if, immediately before such transaction or series of transactions, the taxpayer owned more than 50 percent (by vote or value) of the stock of the controlled foreign corporation. Such term shall not include a disposition described in clause (iii) or (iv), except that clause (i) shall apply to any gain recognized on any such disposition.

    **(iii) Exception for certain exchanges where ownership percentage retained**

A disposition shall not be treated as an applicable disposition under clause (ii) if it is part of a transaction or series of transactions—

        (I) to which section 351 or 721 applies, or under which the transferor receives stock in a foreign corporation in exchange for the stock in the controlled foreign corporation and the stock received is exchanged basis property (as defined in section 7701(a)(44)), and

        (II) immediately after which, the transferor owns (by vote or value) at least the same percentage of stock in the controlled foreign corporation (or, if the controlled foreign corporation is not in existence after such transaction or series of transactions, in another foreign corporation stock in[2] which was received by the transferor in exchange for stock in the controlled foreign corporation) as the percentage of stock in the controlled foreign corporation which the taxpayer owned immediately before such transaction or series of transactions.

    **(iv) Exception for certain asset acquisitions**

A disposition shall not be treated as an applicable disposition under clause (ii) if it

---

[2] So in original.

is part of a transaction or series of transactions in which the taxpayer (or any member of an affiliated group of corporations filing a consolidated return under section 1501 which includes the taxpayer) acquires the assets of a controlled foreign corporation in exchange for the shares of the controlled foreign corporation in a liquidation described in section 332 or a reorganization described in section 368(a)(1).

**(v) Controlled foreign corporation**

For purposes of this subparagraph, the term ''controlled foreign corporation'' has the meaning given such term by section 957.

**(vi) Stock ownership**

For purposes of this subparagraph, ownership of stock shall be determined under the rules of subsections (a) and (b) of section 958.

**(4) Accumulation distributions of foreign trust**

For purposes of this chapter, in the case of amounts of income from sources without the United States which are treated under section 666 (without regard to subsections (b) and (c) thereof if the taxpayer chose to take a deduction with respect to the amounts described in such subsections under section 667(d)(1)(B)) as having been distributed by a foreign trust in a preceding taxable year, that portion of such amounts equal to the amount of any overall foreign loss sustained by the beneficiary in a year prior to the taxable year of the beneficiary in which such distribution is received from the trust shall be treated as income from sources within the United States (and not income from sources without the United States) to the extent that such loss was not used under this subsection in prior taxable years, or in the current taxable year, against other income of the beneficiary.

**(5) Treatment of separate limitation losses**

**(A) In general**

The amount of the separate limitation losses for any taxable year shall reduce income from sources within the United States for such taxable year only to the extent the aggregate amount of such losses exceeds the aggregate amount of the separate limitation incomes for such taxable year.

**(B) Allocation of losses**

The separate limitation losses for any taxable year (to the extent such losses do not exceed the separate limitation incomes for such year) shall be allocated among (and operate to reduce) such incomes on a proportionate basis.

**(C) Recharacterization of subsequent income**

If—

(i) a separate limitation loss from any income category (hereinafter in this subparagraph referred to as ''the loss category'') was allocated to income from any other category under subparagraph (B), and

(ii) the loss category has income for a subsequent taxable year,

such income (to the extent it does not exceed the aggregate separate limitation losses from the loss category not previously recharacterized under this subparagraph) shall be recharacterized as income from such other category in proportion to the prior reductions under subparagraph (B) in such other category not previously taken into account under this subparagraph. Nothing in the preceding sentence shall be construed as recharacterizing any tax.

**(D) Special rules for losses from sources in the United States**

Any loss from sources in the United States for any taxable year (to the extent such loss does not exceed the separate limitation incomes from such year) shall be allocated among (and operate to reduce) such incomes on a proportionate basis. This subparagraph shall be applied after subparagraph (B).

**(E) Definitions**

For purposes of this paragraph—

**(i) Income category**

The term ''income category'' means each separate category of income described in subsection (d)(1).

**(ii) Separate limitation income**

The term ''separate limitation income'' means, with respect to any income category, the taxable income from sources outside the United States, separately computed for such category.

**(iii) Separate limitation loss**

The term ''separate limitation loss'' means, with respect to any income category, the loss from such category determined under the principles of section 907(c)(4)(B).

**(F) Dispositions**

If any separate limitation loss for any taxable year is allocated against any separate limitation income for such taxable year, except to the extent provided in regulations, rules similar to the rules of paragraph (3) shall apply to any disposition of property if gain from such disposition would be in the income category with respect to which there was such separate limitation loss.

**(g) Recharacterization of overall domestic loss**

**(1) General rule**

For purposes of this subpart and section 936, in the case of any taxpayer who sustains an overall domestic loss for any taxable year beginning after December 31, 2006, that portion of the taxpayer's taxable income from sources within the United States for each succeeding taxable year which is equal to the lesser of—

(A) the amount of such loss (to the extent not used under this paragraph in prior taxable years), or

(B) 50 percent of the taxpayer's taxable income from sources within the United States for such succeeding taxable year,

shall be treated as income from sources without the United States (and not as income from sources within the United States).

**(2) Overall domestic loss**

For purposes of this subsection—

**(A) In general**

The term ''overall domestic loss'' means—

(i) with respect to any qualified taxable year, the domestic loss for such taxable year to the extent such loss offsets taxable income from sources without the United States for the taxable year or for any preceding qualified taxable year by reason of a carryback, and

(ii) with respect to any other taxable year, the domestic loss for such taxable year to the extent such loss offsets taxable income from sources without the United States for any preceding qualified taxable year by reason of a carryback.

**(B) Domestic loss**

For purposes of subparagraph (A), the term ''domestic loss'' means the amount by which the gross income for the taxable year from sources within the United States is exceeded by the sum of the deductions properly apportioned or allocated thereto (determined without regard to any carryback from a subsequent taxable year).

**(C) Qualified taxable year**

For purposes of subparagraph (A), the term ''qualified taxable year'' means any taxable year for which the taxpayer chose the benefits of this subpart.

**(3) Characterization of subsequent income**

**(A) In general**

Any income from sources within the United States that is treated as income from sources without the United States under paragraph (1) shall be allocated among and increase the income categories in proportion to the loss from sources within the United States previously allocated to those income categories.

**(B) Income category**

For purposes of this paragraph, the term ''income category'' has the meaning given such term by subsection (f)(5)(E)(i).

**(4) Coordination with subsection (f)**

The Secretary shall prescribe such regulations as may be necessary to coordinate the provisions of this subsection with the provisions of subsection (f).

**(h) Source rules in case of United States-owned foreign corporations**

**(1) In general**

The following amounts which are derived from a United States-owned foreign corporation and which would be treated as derived from sources outside the United States without regard to this subsection shall, for purposes of this section, be treated as derived from sources within the United States to the extent provided in this subsection:

(A) Any amount included in gross income under—

(i) section 951(a) (relating to amounts included in gross income of United States shareholders), or

(ii) section 1293 (relating to current taxation of income from qualified funds).

(B) Interest.

(C) Dividends.

**(2) Subpart F and passive foreign investment company inclusions**

Any amount described in subparagraph (A) of paragraph (1) shall be treated as derived from sources within the United States to the extent such amount is attributable to income of the United States-owned foreign corporation from sources within the United States.

**(3) Certain interest allocable to United States source income**

Any interest which—

(A) is paid or accrued by a United States-owned foreign corporation during any taxable year,

(B) is paid or accrued to a United States shareholder (as defined in section 951(b)) or a related person (within the meaning of section 267(b)) to such a shareholder, and

(C) is properly allocable (under regulations prescribed by the Secretary) to income of such foreign corporation for the taxable year from sources within the United States,

shall be treated as derived from sources within the United States.

**(4) Dividends**

**(A) In general**

The United States source ratio of any dividend paid or accrued by a United States-owned foreign corporation shall be treated as derived from sources within the United States.

**(B) United States source ratio**

For purposes of subparagraph (A), the term ''United States source ratio'' means, with respect to any dividend paid out of the earnings and profits for any taxable year, a fraction—

(i) the numerator of which is the portion of the earnings and profits for such taxable year from sources within the United States, and

(ii) the denominator of which is the total amount of earnings and profits for such taxable year.

**(5) Exception where United States-owned foreign corporation has small amount of United States source income**

Paragraph (3) shall not apply to interest paid or accrued during any taxable year (and paragraph (4) shall not apply to any dividends paid out of the earnings and profits for such taxable year) if—

(A) the United States-owned foreign corporation has earnings and profits for such taxable year, and

(B) less than 10 percent of such earnings and profits is attributable to sources within the United States.

For purposes of the preceding sentence, earnings and profits shall be determined without any reduction for interest described in paragraph (3) (determined without regard to subparagraph (C) thereof).

**(6) United States-owned foreign corporation**

For purposes of this subsection, the term "United States-owned foreign corporation" means any foreign corporation if 50 percent or more of—

(A) the total combined voting power of all classes of stock of such corporation entitled to vote, or

(B) the total value of the stock of such corporation,

is held directly (or indirectly through applying paragraphs (2) and (3) of section 958(a) and paragraph (4) of section 318(a)) by United States persons (as defined in section 7701(a)(30)).

**(7) Dividend**

For purposes of this subsection, the term "dividend" includes any gain treated as ordinary income under section 1246[3] or as a dividend under section 1248.

**(8) Coordination with subsection (f)**

This subsection shall be applied before subsection (f).

**(9) Treatment of certain domestic corporations**

For purposes of this subsection—

(A) in the case of interest treated as not from sources within the United States under section 861(a)(1)(A), the corporation paying such interest shall be treated as a United States-owned foreign corporation, and

(B) in the case of any dividend treated as not from sources within the United States under section 861(a)(2)(A), the corporation paying such dividend shall be treated as a United States-owned foreign corporation.

**(10) Coordination with treaties**

**(A) In general**

If—

(i) any amount derived from a United States-owned foreign corporation would be treated as derived from sources within the United States under this subsection by reason of an item of income of such United States-owned foreign corporation,

(ii) under a treaty obligation of the United States (applied without regard to this subsection and by treating any amount included in gross income under section 951(a)(1) as a dividend), such amount would be treated as arising from sources outside the United States, and

(iii) the taxpayer chooses the benefits of this paragraph,

this subsection shall not apply to such amount to the extent attributable to such item of income (but subsections (a), (b), and (c) of this section and sections 902, 907, and 960 shall be applied separately with respect to such amount to the extent so attributable).

**(B) Special rule**

Amounts included in gross income under section 951(a)(1) shall be treated as a dividend under subparagraph (A)(ii) only if divi-

dends paid by each corporation (the stock in which is taken into account in determining whether the shareholder is a United States shareholder in the United States-owned foreign corporation), if paid to the United States shareholder, would be treated under a treaty obligation of the United States as arising from sources outside the United States (applied without regard to this subsection).

**(11) Regulations**

The Secretary shall prescribe such regulations as may be necessary or appropriate for purposes of this subsection, including—

(A) regulations for the application of this subsection in the case of interest or dividend payments through 1 or more entities, and

(B) regulations providing that this subsection shall apply to interest paid or accrued to any person (whether or not a United States shareholder).

**(i) Coordination with nonrefundable personal credits**

In the case of any taxable year of an individual to which section 26(a)(2) does not apply, for purposes of subsection (a), the tax against which the credit is taken is such tax reduced by the sum of the credits allowable under subpart A of part IV of subchapter A of this chapter (other than sections 23, 24, 25A(i), 25B, 30 30B,[2] and 30D).

**(j) Limitation on use of deconsolidation to avoid foreign tax credit limitations**

If 2 or more domestic corporations would be members of the same affiliated group if—

(1) section 1504(b) were applied without regard to the exceptions contained therein, and

(2) the constructive ownership rules of section 1563(e) applied for purposes of section 1504(a),

the Secretary may by regulations provide for resourcing the income of any of such corporations or for modifications to the consolidated return regulations to the extent that such resourcing or modifications are necessary to prevent the avoidance of the provisions of this subpart.

**(k) Certain individuals exempt**

**(1) In general**

In the case of an individual to whom this subsection applies for any taxable year—

(A) the limitation of subsection (a) shall not apply,

(B) no taxes paid or accrued by the individual during such taxable year may be deemed paid or accrued under subsection (c) in any other taxable year, and

(C) no taxes paid or accrued by the individual during any other taxable year may be deemed paid or accrued under subsection (c) in such taxable year.

**(2) Individuals to whom subsection applies**

This subsection shall apply to an individual for any taxable year if—

(A) the entire amount of such individual's gross income for the taxable year from sources without the United States consists of qualified passive income,

---

[3] See References in Text note below.

(B) the amount of the creditable foreign taxes paid or accrued by the individual during the taxable year does not exceed $300 ($600 in the case of a joint return), and

(C) such individual elects to have this subsection apply for the taxable year.

**(3) Definitions**

For purposes of this subsection—

**(A) Qualified passive income**

The term ''qualified passive income'' means any item of gross income if—

(i) such item of income is passive income (as defined in subsection (d)(2)(B) without regard to clause (iii) thereof), and

(ii) such item of income is shown on a payee statement furnished to the individual.

**(B) Creditable foreign taxes**

The term ''creditable foreign taxes'' means any taxes for which a credit is allowable under section 901; except that such term shall not include any tax unless such tax is shown on a payee statement furnished to such individual.

**(C) Payee statement**

The term ''payee statement'' has the meaning given to such term by section 6724(d)(2).

**(D) Estates and trusts not eligible**

This subsection shall not apply to any estate or trust.

**(l) Cross reference**

**(1) For increase of limitation under subsection (a) for taxes paid with respect to amounts received which were included in the gross income of the taxpayer for a prior taxable year as a United States shareholder with respect to a controlled foreign corporation, see section 960(b).**

**(2) For modification of limitation under subsection (a) for purposes of determining the amount of credit which can be taken against the alternative minimum tax, see section 59(a).**

(Aug. 16, 1954, ch. 736, 68A Stat. 287; Pub. L. 85–866, title I, §42(a), Sept. 2, 1958, 72 Stat. 1639; Pub. L. 86–780, §1, Sept. 14, 1960, 74 Stat. 1010; Pub. L. 87–834, §§10(a), 12(b)(2), Oct. 16, 1962, 76 Stat. 1002, 1031; Pub. L. 88–272, title II, §234(b)(6), Feb. 26, 1964, 78 Stat. 116; Pub. L. 89–809, title I, §106(c)(1), Nov. 13, 1966, 80 Stat. 1570; Pub. L. 91–172, title V, §506(b), Dec. 30, 1969, 83 Stat. 635; Pub. L. 92–178, title V, §502(b)(2)–(4), Dec. 10, 1971, 85 Stat. 549; Pub. L. 94–455, title V, §503(b)(1), title X, §1031(a), 1032(a), 1034(a), 1051(e), title XIX, §1901(b)(10)(B), Oct. 4, 1976, 90 Stat. 1562, 1620, 1624, 1629, 1646, 1795; Pub. L. 95–30, title I, §102(b)(11), May 23, 1977, 91 Stat. 138; Pub. L. 95–600, title IV, §403(c)(4), 421(e)(6), title VII, §701(q)(2), (u)(2)(A)–(C), (3)(A), (4)(A), (B), (8)(C), Nov. 6, 1978, 92 Stat. 2868, 2876, 2910, 2913, 2916; Pub. L. 96–222, title I, §104(a)(3)(D), Apr. 1, 1980, 94 Stat. 215; Pub. L. 97–248, title II, §211(c)(2), Sept. 3, 1982, 96 Stat. 449; Pub. L. 98–21, title I, §122(c)(1), Apr. 20, 1983, 97 Stat. 87; Pub. L. 98–369, div. A, title I, §§121(a), 122(a), title IV, §474(r)(21), title VIII, §801(d)(2), July 18, 1984, 98 Stat. 638, 643, 843, 995; Pub. L. 99–514, title I, §104(b)(13), title VII, §701(e)(4)(H), title XII, §§1201(a), (b), (d)(1)–(3), 1203(a), 1211(b)(3),

1235(f)(4), title XVIII, §§1810(f)(1)(A), (b)(1)–(4)(A), 1876(d)(2), 1899A(24), Oct. 22, 1986, 100 Stat. 2105, 2343, 2520, 2525, 2531, 2536, 2575, 2821, 2823, 2899, 2959; Pub. L. 100–647, title I, §§1003(b)(2), 1012(a)(1)(A), (2)–(4), (6)–(11), (c), (p)(11), (29), (q)(12), (bb)(4)(A), title II, §2004(l), Nov. 10, 1988, 102 Stat. 3383, 3493–3497, 3517, 3521, 3525, 3534, 3606; Pub. L. 101–239, title VII, §§7402(a), 7811(i)(1), Dec. 19, 1989, 103 Stat. 2357, 2409; Pub. L. 101–508, title XI, §§11101(d)(5), 11401(a)(31), Nov. 5, 1990, 104 Stat. 1388–405, 1388–521; Pub. L. 103–66, title XIII, §§13227(d), 13235(a)(2), Aug. 10, 1993, 107 Stat. 494, 504; Pub. L. 104–188, title I, §§1501(b)(1), (12), 1703(i)(1), 1704(t)(36), Aug. 20, 1996, 110 Stat. 1825, 1826, 1876, 1889; Pub. L. 105–34, title III, §311(c)(3), title XI, §§1101(a), 1105(a), (b), 1111(b), 1163(b), Aug. 5, 1997, 111 Stat. 835, 963, 967, 969, 987; Pub. L. 106–170, title V, §501(b)(2), Dec. 17, 1999, 113 Stat. 1919; Pub. L. 107–16, title II, §§201(b)(2)(G), 202(f)(2)(C), title VI, §618(b)(2)(D), June 7, 2001, 115 Stat. 46, 49, 108; Pub. L. 107–147, title IV, §417(23)(B), title V, §601(b)(1), Mar. 9, 2002, 116 Stat. 57, 59; Pub. L. 108–311, title III, §312(b)(1), Oct. 4, 2004, 118 Stat. 1181; Pub. L. 108–357, title IV, §§402(a), 403(a)–(b)(5), 404(a)–(f), 413(c)(14), (15), 417(a), title VIII, §895(a), Oct. 22, 2004, 118 Stat. 1491–1495, 1508, 1512, 1647; Pub. L. 109–135, title IV, §§402(i)(3)(G), 403(k), (o), Dec. 21, 2005, 119 Stat. 2614, 2625, 2626; Pub. L. 110–172, §11(f)(3), (g)(10), Dec. 29, 2007, 121 Stat. 2489, 2490; Pub. L. 111–5, div. B, title I, §§1004(b)(5), 1142(b)(1)(E), 1144(b)(1)(E), Feb. 17, 2009, 123 Stat. 314, 330, 332.)

AMENDMENT OF SECTION

*For termination of amendment by section 402(i)(3)(H) of Pub. L. 109–135, see Effective and Termination Dates of 2005 Amendment note below.*

*For termination of amendment by section 901 of Pub. L. 107–16, see Effective and Termination Dates of 2001 Amendment note below.*

REFERENCES IN TEXT

Subparagraph (E)(iii) of subsection (d)(2) of this section, referred to in subsec. (d)(2)(B)(ii), was redesignated as subparagraph (E)(ii) by Pub. L. 108–357, title IV, §403(b)(4)(B), Oct. 22, 2004, 118 Stat. 1494.

Paragraph (3) of subsection (d) of this section, referred to in subsec. (d)(2)(B)(ii), was amended generally by Pub. L. 108–357, title IV, §404(f)(4), Oct. 22, 2004, 118 Stat. 1496, and as so amended, no longer contains a subpar. (I).

The FSC Repeal and Extraterritorial Income Exclusion Act of 2000, referred to in subsec. (d)(2)(B)(v), is Pub. L. 106–519, Nov. 15, 2000, 114 Stat. 2423. For complete classification of this Act to the Code, see Short Title of 2000 Amendments note set out under section 1 of this title and Tables.

The date of the enactment of the Tax Reform Act of 1986, referred to in subsec. (d)(2)(J), is the date of the enactment of Pub. L. 99–514, which was approved Oct. 22, 1986.

Section 172(h), referred to in subsec. (f)(2)(B)(i), was repealed by Pub. L. 101–508, title XI, §11811(b)(1), Nov. 5, 1990, 104 Stat. 1388–532.

The date of the enactment of the Revenue Reconciliation Act of 1990, referred to in subsec. (f)(2)(B)(i), is the date of enactment of Pub. L. 101–508, title XI, which was approved Nov. 5, 1990.

Section 1246, referred to in subsec. (h)(7), was repealed by Pub. L. 108–357, title IV, §413(a)(2), Oct. 22, 2004, 118 Stat. 1506.

### AMENDMENTS

2009—Subsec. (i). Pub. L. 111–5, §1144(b)(1)(E), inserted "30B," after "30".

Pub. L. 111–5, §1142(b)(1)(E), substituted "25B, 30, and 30D" for "and 25B".

Pub. L. 111–5, §1004(b)(5), inserted "25A(i)," after "24,".

2007—Subsec. (d)(2)(B)(v). Pub. L. 110–172, §11(g)(10), inserted "and" at end of subcl. (I), redesignated subcl. (III) as (II), substituted "a former FSC (as defined in section 922)" for "a FSC or a former FSC)" in subcl. (II), struck out former subcl. (II), which read as follows: "taxable income attributable to foreign trade income (within the meaning of section 923(b)), and", and added concluding provisions.

Subsec. (f)(3)(D)(iv). Pub. L. 110–172, §11(f)(3), substituted "an affiliated group" for "a controlled group".

2005—Subsec. (d)(2)(D). Pub. L. 109–135, §403(o), inserted "as in effect before its repeal" after "section 954(f)".

Subsec. (g)(2). Pub. L. 109–135, §403(k), amended heading and text of par. (2) generally. Prior to amendment, text read as follows: "For purposes of this subsection—

"(A) IN GENERAL.—The term 'overall domestic loss' means any domestic loss to the extent such loss offsets taxable income from sources without the United States for the taxable year or for any preceding taxable year by reason of a carryback. For purposes of the preceding sentence, the term 'domestic loss' means the amount by which the gross income for the taxable year from sources within the United States is exceeded by the sum of the deductions properly apportioned or allocated thereto (determined without regard to any carryback from a subsequent taxable year).

"(B) TAXPAYER MUST HAVE ELECTED FOREIGN TAX CREDIT FOR YEAR OF LOSS.—The term 'overall domestic loss' shall not include any loss for any taxable year unless the taxpayer chose the benefits of this subpart for such taxable year."

Subsec. (i). Pub. L. 109–135, §402(i)(3)(G), (H), temporarily reenacted heading without change and amended text generally. Prior to amendment, text read as follows: "In the case of an individual, for purposes of subsection (a), the tax against which the credit is taken is such tax reduced by the sum of the credits allowable under subpart A of part IV of subchapter A of this chapter (other than sections 23, 24, and 25B). This subsection shall not apply to taxable years beginning during 2000, 2001, 2002, 2003, 2004, or 2005." See Effective and Termination Dates of 2005 Amendment note below.

2004—Subsec. (c). Pub. L. 108–357, §417(a), struck out "in the second preceding taxable year," before "in the first preceding taxable year" and substituted "and in any of the first 10" for ", and in the first, second, third, fourth, or fifth".

Subsec. (d)(1). Pub. L. 108–357, §404(a), reenacted heading without change and amended text of par. (1) generally, substituting provisions relating to applicability of subsecs. (a), (b), and (c) and sections 902, 907, and 960 to passive category income and general category income, for provisions relating to applicability of subsecs. (a), (b), and (c) and sections 902, 907, and 960 to passive income, high withholding tax interest, financial services income, shipping income, certain dividends from a DISC or former DISC, taxable income attributable to foreign trade income, certain distributions from a FSC or a former FSC, and income other than income previously described.

Subsec. (d)(1)(E). Pub. L. 108–357, §403(b)(1), struck out subpar. (E) which read as follows: "in the case of a corporation, dividends from noncontrolled section 902 corporations out of earnings and profits accumulated in taxable years beginning before January 1, 2003,".

Subsec. (d)(2)(A). Pub. L. 108–357, §404(b), added subpar. (A). Former subpar. (A) redesignated (B).

Subsec. (d)(2)(A)(ii). Pub. L. 108–357, §413(c)(14), reenacted heading without change and amended text of cl. (ii) generally. Prior to amendment, text read as follows: "Except as provided in clause (iii), the term 'passive income' includes any amount includible in gross income under section 551 or, except as provided in subparagraph (E)(iii) or paragraph (3)(I), section 1293 (relating to certain passive foreign investment companies)."

Subsec. (d)(2)(B). Pub. L. 108–357, §404(b), redesignated subpar. (A) as (B) and struck out former subpar. (B), which defined the term "high withholding tax interest".

Subsec. (d)(2)(B)(iii). Pub. L. 108–357, §404(f)(1), redesignated subcls. (II) and (III) as (I) and (II), respectively, and struck out former subcl. (I) which read as follows: "any income described in a subparagraph of paragraph (1) other than subparagraph (A),".

Subsec. (d)(2)(B)(v). Pub. L. 108–357, §404(c), added cl. (v).

Subsec. (d)(2)(C). Pub. L. 108–357, §404(d), added subpar. (C). Former subpar. (C) redesignated (D).

Subsec. (d)(2)(C)(iii). Pub. L. 108–357, §403(b)(2), inserted "and" at end of subcl. (I), redesignated subcl. (III) as (II), and struck out former subcl. (II) which read as follows: "any dividend from a noncontrolled section 902 corporation out of earnings and profits accumulated in taxable years beginning before January 1, 2003, and".

Subsec. (d)(2)(D). Pub. L. 108–357, §404(d), redesignated subpar. (C) as (D) and struck out heading and text of former subpar. (D). Text read as follows: "The term 'shipping income' means any income received or accrued by any person which is of a kind which would be foreign base company shipping income (as defined in section 954(f) as in effect before its repeal). Such term does not include any financial services income."

Pub. L. 108–357, §403(b)(3), substituted "Such term does not include any financial services income" for "Such term does not include any dividend from a noncontrolled section 902 corporation out of earnings and profits accumulated in taxable years beginning before January 1, 2003 and does not include any financial services income".

Subsec. (d)(2)(D)(i). Pub. L. 108–357, §404(f)(2), inserted "or" at end of subcl. (I), added subcl. (II), and struck out former subcls. (II) and (III) which read as follows:

"(II) passive income (determined without regard to subclauses (I) and (III) of subparagraph (A)(iii)), or

"(III) export financing interest which (but for subparagraph (B)(ii)) would be high withholding tax interest."

Subsec. (d)(2)(D)(iii). Pub. L. 108–357, §404(f)(3), which directed striking out of cl. (iii) "as so redesignated and amended by section 404(b)(3)", was executed by striking out heading and text of cl. (iii) as amended by section 403(b)(2) and redesignated by section 404(d), to reflect the probable intent of Congress. Text read as follows: "The term 'financial services income' does not include—

"(I) any high withholding tax interest, and

"(II) any export financing interest not described in clause (i)(III)."

Subsec. (d)(2)(E)(i). Pub. L. 108–357, §403(b)(4)(A), inserted "or (4)" after "paragraph (3)".

Subsec. (d)(2)(E)(ii), (iii). Pub. L. 108–357, §403(b)(4)(B), redesignated cl. (iii) as (ii) and struck out heading and text of former cl. (ii). Text read as follows: "If a foreign corporation is a noncontrolled section 902 corporation with respect to the taxpayer, taxes on high withholding tax interest (to the extent imposed at a rate in excess of 5 percent) shall not be treated as foreign taxes for purposes of determining the amount of foreign taxes deemed paid by the taxpayer under section 902."

Subsec. (d)(2)(E)(iv). Pub. L. 108–357, §403(b)(4)(B), struck out heading and text of cl. (iv). Text read as follows: "All noncontrolled section 902 corporations which are not passive foreign investment companies (as defined in section 1297) shall be treated as one noncontrolled section 902 corporation for purposes of paragraph (1)."

Subsec. (d)(2)(H) to (J). Pub. L. 108–357, §404(e), added subpar. (H) and redesignated former subpars. (H) and (I) as (I) and (J), respectively.

Subsec. (d)(2)(K). Pub. L. 108–357, §404(f)(5), added sub-par. (K).

Subsec. (d)(3). Pub. L. 108–357, §404(f)(4), reenacted heading without change and amended text of par. (3) generally, substituting provisions consisting of pars. (A) to (H) for former subpars. (A) to (I) which contained similar provisions.

Subsec. (d)(3)(F)(i). Pub. L. 108–357, §403(b)(5), substituted ''or (D)'' for ''(D), or (E)''.

Subsec. (d)(4). Pub. L. 108–357, §403(a), reenacted heading without change and amended text of par. (4) generally, substituting provisions relating to dividends from noncontrolled section 902 corporations, earnings and profits of controlled foreign corporations, and setting forth special rules, for provisions relating to treatment of applicable dividends, defining the term ''applicable dividend'', and setting forth special rules.

Subsec. (f)(3)(D). Pub. L. 108–357, §895(a), added subpar. (D).

Subsec. (g). Pub. L. 108–357, §402(a), added subsec. (g). Former subsec. (g) redesignated (h).

Subsec. (h). Pub. L. 108–357, §402(a), redesignated subsec. (g) as (h). Former subsec. (h) redesignated (i).

Pub. L. 108–311 substituted ''2003, 2004, or 2005'' for ''or 2003''.

Subsec. (h)(1)(A). Pub. L. 108–357, §413(c)(15)(A), inserted ''or'' at end of cl. (i), redesignated cl. (iii) as (ii), and struck out former cl. (ii) which read as follows: ''section 551 (relating to foreign personal holding company income taxed to United States shareholders), or''.

Subsec. (h)(2). Pub. L. 108–357, §413(c)(15)(B), struck out ''foreign personal holding or'' before ''passive foreign investment'' in heading.

Subsecs. (i), (j). Pub. L. 108–357, §402(a), redesignated subsecs. (h) and (i) as (i) and (j), respectively. Former subsec. (j) redesignated (k).

Subsec. (k). Pub. L. 108–357, §402(a), redesignated subsec. (j) as (k). Former subsec. (k) redesignated (l).

Subsec. (k)(3)(A)(i). Pub. L. 108–357, §404(f)(6), which directed amendment of subsec. (j)(3)(A)(i) by substituting ''subsection (d)(2)(B)'' for ''subsection (d)(2)(A)'', was executed to subsec. (k)(3)(A)(i) to reflect the probable intent of Congress and the amendment by Pub. L. 108–357, §402(a). See above.

Subsec. (l). Pub. L. 108–357, §402(a), redesignated subsec. (k) as (l).

2002—Subsec. (h). Pub. L. 107–147, §601(b)(1), substituted ''during 2000, 2001, 2002, or 2003'' for ''during 2000 or 2001''.

Pub. L. 107–147, §417(23)(B), amended directory language of Pub. L. 107–16, §618(b)(2)(D). See 2001 Amendment note below.

2001—Subsec. (h). Pub. L. 107–16, §618(b)(2)(D), as amended by Pub. L. 107–147, §417(23)(B), substituted '', 24, and 25B'' for ''and 24''.

Pub. L. 107–16, §202(f)(2)(C), 901, temporarily substituted ''sections 23 and 24'' for ''section 24''. See Effective and Termination Dates of 2001 Amendment note below.

Pub. L. 107–16, §201(b)(2)(G), 901, inserted ''(other than section 24)'' after ''chapter''. See Effective and Termination Dates of 2001 Amendment note below.

1999—Subsec. (h). Pub. L. 106–170 inserted at end ''This subsection shall not apply to taxable years beginning during 2000 or 2001.''

1997—Subsec. (b)(2)(C). Pub. L. 105–34, §311(c)(3), added subpar. (C).

Subsec. (d)(1)(E). Pub. L. 105–34, §1105(a)(1), amended subpar. (E) generally. Prior to amendment, subpar. (E) read as follows: ''in the case of a corporation, dividends from each noncontrolled section 902 corporation,''.

Subsec. (d)(2)(C)(i)(II). Pub. L. 105–34, §1163(b), substituted ''subclauses (I) and (III)'' for ''subclause (I)''.

Subsec. (d)(2)(C)(iii)(II), (D). Pub. L. 105–34, §1105(a)(3), inserted ''out of earnings and profits accumulated in taxable years beginning before January 1, 2003'' after ''corporation''.

Subsec. (d)(2)(E)(i). Pub. L. 105–34, §1111(b), struck out ''and except as provided in regulations, the taxpayer was a United States shareholder in such corporation'' after ''was a controlled foreign corporation''.

Subsec. (d)(2)(E)(iv). Pub. L. 105–34, §1105(a)(2), added cl. (iv).

Subsec. (d)(4) to (6). Pub. L. 105–34, §1105(b), added par. (4) and redesignated former pars. (4) and (5) as (5) and (6), respectively.

Subsec. (j), (k). Pub. L. 105–34, §1101(a), added subsec. (j) and redesignated former subsec. (j) as (k).

1996—Subsec. (d)(3)(G). Pub. L. 104–188, §1501(b)(1), (12), amended subpar. (G) identically, substituting ''section 951(a)(1)(B)'' for ''subparagraph (B) or (C) of section 951(a)(1)''.

Pub. L. 104–188, §1703(i)(1), substituted ''subparagraph (B) or (C) of section 951(a)(1)'' for ''section 951(a)(1)(B)''.

Subsec. (f)(2)(B)(i). Pub. L. 104–188, §1704(t)(36), inserted ''(as in effect on the day before the date of the enactment of the Revenue Reconciliation Act of 1990)'' after ''section 172(h)''.

1993—Subsec. (b)(4). Pub. L. 103–66, §13227(d), inserted before period at end ''(without regard to subsections (a)(4) and (i) thereof)''.

Subsec. (d)(2)(A)(iii)(II) to (IV). Pub. L. 103–66, §13235(a)(2), inserted ''and'' at end of subcl. II, substituted ''income.'' for ''income, and'' in subcl. III, and struck out subcl. (IV) which read as follows: ''any foreign oil and gas extraction income (as defined in section 907(c)).''

1990—Subsec. (b)(3)(D)(i). Pub. L. 101–508, §11101(d)(5)(A), substituted ''subsection (h)'' for ''subsection (j)''.

Subsec. (b)(3)(E)(iii)(I). Pub. L. 101–508, §11101(d)(5)(B), substituted ''section 1(h)'' for ''section 1(j)''.

Subsec. (e). Pub. L. 101–508, §11801(a)(31), struck out subsec. (e) which related to transitional rules for carrybacks and carryovers for taxpayers on the per-country limitation.

1989—Subsec. (d)(1)(H). Pub. L. 101–239, §7811(i)(1), substituted ''interest or carrying charges (as defined in section 927(d)(1)) derived from a transaction which results in foreign trade income (as defined in section 923(b))'' for ''qualified interest and carrying charges (as defined in section 245(c))''.

Subsecs. (i), (j). Pub. L. 101–239, §7402(a), added subsec. (i) and redesignated former subsec. (i) as (j).

1988—Subsec. (b)(2). Pub. L. 100–647, §1003(b)(2)(A), amended par. (2) generally, substituting general provisions and provisions setting special rules where there is a capital gain rate differential for provisions for corporations and for other taxpayers.

Subsec. (b)(3)(D). Pub. L. 100–647, §1003(b)(2)(B), added subpar. (D) and struck out former subpar. (D), Rate differential portion, which read as follows: ''The 'rate differential portion' of foreign source net capital gain, net capital gain, or the excess of net capital gain from sources within the United States over net capital gain, as the case may be, is the same proportion of such amount as the excess of the highest rate of tax specified in section 1(b) over the alternative rate of tax under section 1201(a) bears to the highest rate of tax specified in section 1(b).''

Subsec. (b)(3)(D)(ii). Pub. L. 100–647, §2004(l), substituted ''section 11(b)(1)'' for ''section 11(b)''.

Subsec. (b)(3)(E). Pub. L. 100–647, §1003(b)(2)(B), added subpar. (E).

Subsec. (d)(1)(E). Pub. L. 100–647, §1012(a)(11), inserted ''in the case of a corporation,'' before ''dividends''.

Subsec. (d)(2)(A)(ii). Pub. L. 100–647, §1012(a)(6)(A), (p)(29)(A), substituted ''Except as provided in clause (iii), the term'' for ''The term'' and ''or, except as provided in subparagraph (E)(iii) or paragraph (3)(I), section 1293'' for ''or section 1293''.

Subsec. (d)(2)(A)(iv). Pub. L. 100–647, §1012(a)(6)(B), added cl. (iv).

Subsec. (d)(2)(B)(iii). Pub. L. 100–647, §1012(a)(8), amended cl. (iii) generally. Prior to amendment, cl. (iii) read as follows: ''The Secretary may by regulations provide that amounts (not otherwise high withholding tax interest) shall be treated as high withholding tax interest where necessary to prevent avoidance of the purposes of this subparagraph.''

Subsec. (d)(2(C. Pub. L. 100–647, §1012(a)(1)(A), amended subpar. (C) generally, revising and restating as cls. (i) to (iii) provisions of former cls. (i) to (iv).

Subsec. (d)(2)(D). Pub. L. 100–647, § 1012(a)(2), provided for exclusion from term "shipping income" any dividend from a noncontrolled section 902 corporation and any financial services income.

Subsec. (d)(2)(E)(i). Pub. L. 100–647, § 1012(a)(10), inserted "and except as provided in regulations, the taxpayer was a United States shareholder in such corporation" before period at end.

Subsec. (d)(2)(E)(iii). Pub. L. 100–647, § 1012(p)(29)(B), added cl. (iii).

Subsec. (d)(2)(I)(ii). Pub. L. 100–647, § 1012(a)(9), substituted "except that—" for "except to the extent that—", added subcls. (I) to (III), and struck out former subcls. (I) and (II) which read as follows:

"(I) the taxpayer establishes to the satisfaction of the Secretary that such taxes were paid or accrued with respect to shipping income, or

"(II) in the case of an entity meeting the requirements of subparagraph (C)(ii), the taxpayer establishes to the satisfaction of the Secretary that such taxes were paid or accrued with respect to financial services income, and".

Subsec. (d)(3)(E). Pub. L. 100–647, § 1012(a)(4), inserted first sentence, struck out former first sentence which read "If a controlled foreign corporation meets the requirements of section 954(b)(3)(A) (relating to de minimis rule) for any taxable year, for purposes of this paragraph, none of its income for such taxable year shall be treated as income in a separate category.", and in second sentence substituted "passive income" for "income (other than high withholding tax interest and dividends from a noncontrolled section 902 corporation)".

Subsec. (d)(3)(F). Pub. L. 100–647, § 1012(a)(7), amended subpar. (F) generally. Prior to amendment, subpar. (F) read as follows: "For purposes of this paragraph, the term 'separate category' means any category of income described in subparagraph (A), (B), (C), (D), or (E) of paragraph (1)."

Subsec. (d)(3)(H). Pub. L. 100–647, § 1012(a)(3), added subpar. (H).

Subsec. (d)(3)(I). Pub. L. 100–647, § 1012(p)(11), added subpar. (I).

Subsec. (f)(5)(F). Pub. L. 100–647, § 1012(c), added subpar. (F).

Subsec. (g)(9)(A). Pub. L. 100–647, § 1012(q)(12), substituted "861(a)(1)(A)" for "861(a)(1)(B)".

Subsec. (g)(10), (11). Pub. L. 100–647, § 1012(bb)(4)(A), added par. (10) and redesignated former par. (10) as (11).

1986—Subsec. (a). Pub. L. 99–514, § 104(b)(13), struck out last sentence "For purposes of the preceding sentence, in the case of an individual the entire taxable income shall be reduced by an amount equal to the zero bracket amount."

Subsec. (b)(3)(C). Pub. L. 99–514, § 1211(b)(3), redesignated subpar. (E) as (C) and struck out former subpar. (C), exception for gain from the sale of certain personal property, which read as follows: "There shall be included as gain from sources within the United States any gain from sources without the United States from the sale or exchange of a capital asset which is personal property which—

"(i) in the case of an individual, is sold or exchanged outside of the country (or possession) of the individual's residence,

"(ii) in the case of a corporation, is stock in a second corporation sold or exchanged other than in a country (or possession) in which such second corporation derived more than 50 percent of its gross income for the 3-year period ending with the close of such second corporation's taxable year immediately preceding the year during which the sale or exchange occurred, or

"(iii) in the case of any taxpayer, is personal property (other than stock in a corporation) sold or exchanged other than in a country (or possession) in which such property is used in a trade or business of the taxpayer or in which such taxpayer derived more than 50 percent of its gross income for the 3-year period ending with the close of its taxable year imme-

diately preceding the year during which the sale or exchange occurred,

unless such gain is subject to an income, war profits, or excess profits tax of a foreign country or possession of the United States, and the rate of tax applicable to such gain is 10 percent or more of the gain from the sale or exchange (computed under this chapter)."

Subsec. (b)(3)(D). Pub. L. 99–514, § 1211(b)(3), redesignated subpar. (F) as (D) and struck out former subpar. (D), gain from liquidation of certain foreign corporations, which read as follows: "Subparagraph (C) shall not apply with respect to a distribution in liquidation of a foreign corporation to which part II of subchapter C applies if such corporation derived less than 50 percent of its gross income from sources within the United States for the 3-year period ending with the close of such corporation's taxable year immediately preceding the year during which the distribution occurred."

Subsec. (b)(3)(E), (F). Pub. L. 99–514, § 1211(b)(3), redesignated former subpars. (E) and (F) as (C) and (D), respectively.

Subsec. (d). Pub. L. 99–514, § 1201(d)(1), substituted "certain categories of income" for "certain interest income and income from DISC, former DISC, FSC, or former FSC" in heading.

Subsec. (d)(1). Pub. L. 99–514, § 1201(a), (d)(2), (3), inserted "and sections 902, 907, and 960" in introductory provisions, added subpars. (A) to (E), struck out former subpar. (A) which read "the interest income described in paragraph (2)", redesignated former subpars. (B), (C), (D), and (E) as (F), (G), (H), and (I), respectively, and in subpar. (I), substituted "in any of the preceding subparagraphs" for "in subparagraph (A), (B), (C), or (D)".

Pub. L. 99–514, § 1899A(24), made technical correction clarifying heading. See 1984 Amendment note below.

Subsec. (d)(1)(D). Pub. L. 99–514, § 1876(d)(2), amended subpar. (D) generally. Prior to amendment, subpar. (D) read as follows: "distributions from a FSC (or former FSC) out of earnings and profits attributable to foreign trade income (within the meaning of section 923(b)), and".

Subsec. (d)(2). Pub. L. 99–514, § 1201(b), added par. (2) and struck out former par. (2), interest income to which applicable, which read as follows: "For purposes of this subsection, the interest income described in this paragraph is interest other than interest—

"(A) derived from any transaction which is directly related to the active conduct by the taxpayer of a trade or business in a foreign country or a possession of the United States,

"(B) derived in the conduct by the taxpayer of a banking, financing, or similar business,

"(C) received from a corporation in which the taxpayer (or one or more includible corporations in an affiliated group, as defined in section 1504, of which the taxpayer is a member) owns, directly or indirectly, at least 10 percent of the voting stock, or

"(D) received on obligations acquired as a result of the disposition of a trade or business actively conducted by the taxpayer in a foreign country or possession of the United States or as a result of the disposition of stock or obligations of a corporation in which the taxpayer owned at least 10 percent of the voting stock.

For purposes of subparagraph (C), stock owned, directly or indirectly, by or for a foreign corporation, shall be considered as being proportionately owned by its shareholders. For purposes of this subsection, interest (after the operation of section 904(d)(3)) received from a designated payor corporation described in section 904(d)(3)(E)(iii) by a taxpayer which owns directly or indirectly less than 10 percent of the voting stock of such designated payor corporation shall be treated as interest described in subparagraph (A) to the extent such interest would have been so treated had such taxpayer received it from other than a designated payor corporation."

Pub. L. 99–514, § 1810(b)(3), inserted at end "For purposes of this subsection, interest (after the operation of section 904(d)(3)) received from a designated payor cor-

poration described in section 904(d)(3)(E)(iii) by a taxpayer which owns directly or indirectly less than 10 percent of the voting stock of such designated payor corporation shall be treated as interest described in subparagraph (A) to the extent such interest would have been so treated had such taxpayer received it from other than a designated payor corporation,''.

Subsec. (d)(3). Pub. L. 99–514, §1201(b), added par. (3) and struck out former par. (3) treating as interest certain amounts attributable to United States-owned foreign corporations, etc., subpars. thereof relating to following subject matter: (A) general provisions, (B) separate limitation interest, (C) exception where designated corporation has small amount of separate limitation interest, (D) treatment of certain interest, (E) designated payor corporation, (F) determination of year to which amount is attributable, (G) ordering rules, (H) dividend, (I) interest and dividends from members of same affiliated group, and (J) distributions through other entities.

Subsec. (d)(3)(C). Pub. L. 99–514, §1810(b)(1), inserted at end ''The preceding sentence shall not apply to any amount includible in gross income under section 551 or 951.''

Subsec. (d)(3)(E). Pub. L. 99–514, §1810(b)(4)(A), inserted at end:

''(iv) any other corporation formed or availed of for purposes of avoiding the provisions of this paragraph. For purposes of this paragraph, the rules of paragraph (9) of subsection (g) shall apply.''

Subsec. (d)(3)(I). Pub. L. 99–514, §1810(b)(2), redesignated subpar. (I) as (J) and added a new subpar. (I), interest and dividends from members of same affiliated group, which read as follows: ''For purposes of this paragraph, dividends and interest received or accrued by the designated payor corporation from another member of the same affiliated group (determined under section 1504 without regard to subsection (b)(3) thereof) shall be treated as separate limitation interest if (and only if) such amounts are attributable (directly or indirectly) to separate limitation interest of any other member of such group.''

Subsec. (d)(3)(J). Pub. L. 99–514, §1810(b)(2), redesignated subpar. (I) as (J) and struck out former subpar. (J), interest from members of same affiliated group, which read as follows: ''For purposes of this paragraph, interest received or accrued by the designated payor corporation from another member of the same affiliated group (determined under section 1504 without regard to subsection (b)(3) thereof) shall not be treated as separate limitation interest, unless such interest is attributable directly or indirectly to separate limitation interest of such other member.''

Subsec. (d)(4), (5). Pub. L. 99–514, §1201(b), added pars. (4) and (5).

Subsec. (f)(5). Pub. L. 99–514, §1203(a), added par. (5).

Subsec. (g)(1)(A)(iii). Pub. L. 99–514, §1235(f)(4)(A), added cl. (iii).

Subsec. (g)(2). Pub. L. 99–514, §1235(f)(4)(B), substituted ''holding or passive foreign investment company'' for ''holding company'' in heading.

Subsec. (g)(9), (10). Pub. L. 99–514, §1810(a)(1)(A), added par. (9) and redesignated former par. (9) as (10).

Subsec. (i)(2). Pub. L. 99–514, §701(e)(4)(H), struck out ''by an individual'' after ''can be taken'' and substituted ''section 59(a)'' for ''section 55(c)''.

1984—Subsec. (d). Pub. L. 98–369, §801(d)(2)(C), which directed amendment of par. (1) heading by substituting ''Separate application of section with respect to certain interest income and income from DISC, former DISC, FSC, or former FSC'' for ''Application of section in case of certain interest income and dividends from a DISC or former DISC'' was executed to subsec. (d) heading to reflect the probable intent of Congress.

Subsec. (d)(1)(B) to (E). Pub. L. 98–369, §801(d)(2)(A), (B), struck out ''and'' after ''United States,'' at end of subpar. (B), substituted ''taxable income attributable to foreign trade income (within the meaning of section 923(b)),'' for ''income other than the interest income described in paragraph (2) and dividends described in sub-

paragraph (B),'' in subpar. (C), and added subpars. (D) and (E).

Subsec. (d)(3). Pub. L. 98–369, §122(a), added par. (3).

Subsec. (g). Pub. L. 98–369, §121(a), added subsec. (g). Former subsec. (g) redesignated (h).

Pub. L. 98–369, §474(r)(21), amended subsec. (g) generally, substituting ''Coordination with nonrefundable personal credits'' for ''Coordination with credit for the elderly'' in heading and in text substituting ''reduced by the sum of the credits allowable under subpart A of part IV of subchapter A of this chapter'' for ''reduced by the amount of the credit (if any) for the taxable year allowable under section 37 (relating to credit for the elderly and the permanently and totally disabled)''.

Subsec. (h), (i). Pub. L. 98–369, §121(a), redesignated former subsecs. (g) and (h) as (h) and (i), respectively.

1983—Subsec. (g). Pub. L. 98–21 substituted ''relating to credit for the elderly and the permanently and totally disabled'' for ''relating to credit for the elderly''.

1982—Subsec. (f)(4) to (6). Pub. L. 97–248 struck out par. (4) which provided for the determination of foreign oil related loss where section 907 was applicable, redesignated par. (5) as (4), and purported to redesignate par. (6) as (5). However, subsec. (f) did not contain a par. (6).

1980—Subsec. (b)(3)(F). Pub. L. 96–222, §104(a)(3)(D)(i), redesignated subpar. (E) ''Rate differential portion'', added by Pub. L. 95–600, as (F).

1978—Subsec. (b)(2). Pub. L. 95–600, §§403(c)(4)(A), 701(u)(2)(A), (3)(A), in subpar. (A) substituted ''this section'' for ''subsection (a)'', ''the rate differential portion'' for ''three eighths'' wherever appearing, and ''for purposes of determining taxable income from sources without the United States, any net capital loss (and any amount which is a short term capital loss under section 1212(a))'' for ''any net capital loss''.

Subsec. (b)(3). Pub. L. 95–600, §§403(c)(4)(B), 701(u)(2)(B), (C), as amended by Pub. L. 96–222, §104(a)(3)(D)(ii), substituted ''There'' for ''For purposes of this paragraph, there'', added subpar. (D), redesignated former subpar. (D), relating to section 1231 gains, as subpar. (E), and added another subpar. (E), relating to rate differential portion. See 1980 Amendment note above.

Subsec. (f)(2)(A). Pub. L. 95–600, §701(u)(4)(A), struck out provision relating to capital loss carrybacks and carryovers.

Subsec. (f)(4). Pub. L. 95–600, §701(u)(4)(B), (8)(C), substituted in introductory provisions ''In making the separate computation under this subsection with respect to foreign oil related income which is required by section 907(b)'' for ''In the case of a corporation to which section 907(b)(1) applies'' and in subpar. (A) struck out provision relating to capital loss carrybacks and carryovers.

Subsec. (f)(5). Pub. L. 95–600, §701(q)(2), added par. (5).

Subsec. (h). Pub. L. 95–600, §421(e)(6), designated existing provisions as par. (1) and added par. (2).

1977—Subsec. (a). Pub. L. 95–30 provided that, for purposes of determining the maximum total amount of the credit taken under section 901(a), in the case of an individual, the entire taxable income shall be reduced by an amount equal to the zero bracket amount.

1976—Subsec. (a). Pub. L. 94–455, §1031(a), struck out provisions allowing the per-country limitation, made the overall limitation applicable to all taxpayers to determine their foreign tax credit limitation, and inserted reference to section 901(a).

Subsec. (b). Pub. L. 94–455, §§1031(a), 1034(a), 1051(e), redesignated subsec. (c) as (b)(1), inserted provisions that the net United States capital losses would offset net foreign capital gains and, in the case of corporations, that only ³⁰⁄₄₈ of the net foreign source gain would be included in the foreign tax credit limitation, and that the gain from the sale or exchange of personal property outside the United States would be considered United States source income unless one of three exceptions applied, and added par. (4).

Subsec. (c). Pub. L. 94–455, §1031(a), redesignated subsec. (d) as (c), and amended the redesignated subsec. (c) generally to conform to the elimination of the per-

country limitation in subsec. (a). Former subsec. (c) re-designated (b)(1).

Subsec. (d). Pub. L. 94–455, § 1031(a), redesignated subsec. (f)(1), (2), as (d). Former subsec. (d) redesignated (c).

Subsec. (e). Pub. L. 94–455, § 1031(a), added subsec. (e). Former subsec. (e) was eliminated in view of the amendment of subsec. (a).

Subsec. (f). Pub. L. 94–455, §§ 1031(a), 1032(a), 1901(b)(10)(B), added subsec. (f), and substituted "section 172(h)" for "section 172(k)(1)" in pars. (2)(B)(i) and (4)(B)(i). Former subsec. (f)(1), (2), was redesignated (d). Former subsecs. (f)(3), (4), (5) were omitted.

Subsec. (g). Pub. L. 94–455, §§ 1032(a), 503(b)(1), added subsec. (g). Former subsec. (f) redesignated (g), and further redesignated (h).

Subsec. (h). Pub. L. 94–455, § 503(b)(1), redesignated former subsec. (g) as (h).

1971—Subsec. (f). Pub. L. 92–178, § 502(b)(2), inserted "and dividends from a DISC or former DISC" after "interest income" in the heading.

Subsec. (f)(1). Pub. L. 92–178, § 502(b)(2), inserted "each of the following items of income" in introductory text, added subpar. (B), and redesignated former subpar. (B) as (C), inserting therein provisions respecting dividends described in subparagraph (B).

Subsec. (f)(3). Pub. L. 92–178, § 502(b)(3), provided that the limitation provided by subsec. (a)(2) shall not apply to dividends described in paragraph (1)(B) and substituted "limitation provided by subsection (a)(2) applies with respect to income described in paragraph (1)(B) and (C)" for "limitation provided by subsection (a)(2) applies with respect to income other than the interest income described in paragraph (2)".

Subsec. (f)(5). Pub. L. 92–178, § 502(b)(4), added par. (5).

1969—Subsec. (b)(1). Pub. L. 91–172, § 506(b)(1), substituted "(A) with the consent of the Secretary or his delegate with respect to any taxable year or (B) for the taxpayer's first taxable year beginning after December 31, 1969" for "with the consent of the Secretary or his delegate with respect to any taxable year".

Subsec. (b)(2). Pub. L. 91–172, § 506(b)(2), substituted "Except in a case to which paragraph (1)(B) applies, if the taxpayer" for "If a taxpayer".

1966—Subsec. (f)(2). Pub. L. 89–809 inserted reference to includible corporations in an affiliated group, as defined in section 1504, of which the taxpayer is a member and inserted reference to both direct and indirect ownership in subpar. (C) and inserted provision that, for purposes of subpar. (C), stock owned directly or indirectly by or for a foreign corporation shall be considered as being proportionately owned by its shareholders.

Subsec. (g)(2). Pub. L. 88–272 substituted "section 1503(b)" for "section 1503(d)".

1964—Subsec. (g)(2). Pub. L. 88–272 substituted "section 1503(b)" for "section 1503(d)".

1962—Subsec. (f). Pub. L. 87–834, § 10(a), added subsec. (f). Former subsec. (f) redesignated (g).

Subsec. (g). Pub. L. 87–834, §§ 10(a), 12(b)(2), redesignated former subsec. (f) as (g), designated existing provisions as par. (2), and added par. (1).

1960—Subsec. (f). Pub. L. 86–780, § 1(a), designated existing provisions as par. (1), inserted introductory clause "In the case of any taxpayer who elects the limitation provided by this paragraph" and inserted "foreign", "or possession of the United States" and "or possession" therein and added par. (2).

Subsec. (b). Pub. L. 86–780, § 1(a), redesignated subsec. (b). Former subsec. (b) redesignated (c).

Subsec. (c). Pub. L. 86–780, § 1(b), redesignated former subsec. (b) as (c) and inserted "applicable" before "limitation" therein. Former subsec. (c) redesignated (d).

Subsec. (d). Pub. L. 86–780, § 1(c), redesignated former subsec. (c) as (d) and inserted "applicable" before "limitation" in two places.

Subsecs. (e), (f). Pub. L. 86–780, § 1(d), added subsecs. (e) and (f).

1958—Subsec. (c). Pub. L. 85–866 added subsec. (c).

### EFFECTIVE DATE OF 2009 AMENDMENT

Amendment by section 1004(b)(5) of Pub. L. 111–5 applicable to taxable years beginning after Dec. 31, 2008,

see section 1004(d) of Pub. L. 111–5, set out as an Effective and Termination Dates of 2009 Amendment note under section 24 of this title.

Amendment by section 1142(b)(1)(E) of Pub. L. 111–5 applicable to vehicles acquired after Feb. 17, 2009, see section 1142(c) of Pub. L. 111–5, set out as an Effective and Termination Dates of 2009 Amendment note under section 24 of this title.

Amendment by section 1144(b)(1)(E) of Pub. L. 111–5 applicable to taxable years beginning after Dec. 31, 2008, see section 1144(c) of Pub. L. 111–5, set out as an Effective and Termination Dates of 2009 Amendment note under section 24 of this title.

### EFFECTIVE DATE OF 2007 AMENDMENT

Pub. L. 110–172, § 11(f)(4), Dec. 29, 2007, 121 Stat. 2489, provided that: "The amendments made by this subsection [amending this section and sections 1298 and 9502 of this title] shall take effect as if included in the provisions of the American Jobs Creation Act of 2004 [Pub. L. 108–357] to which they relate."

### EFFECTIVE AND TERMINATION DATES OF 2005 AMENDMENT

Amendment by section 402(i)(3)(G) of Pub. L. 109–135 subject to title IX of the Economic Growth and Tax Relief Reconciliation Act of 2001, Pub. L. 107–16, § 901, in the same manner as the provisions of such Act to which such amendment relates, see section 402(i)(3)(H) of Pub. L. 109–135, set out as a note under section 23 of this title.

Amendment by section 402(i)(3)(G) of Pub. L. 109–135 effective as if included in the provisions of the Energy Policy Act of 2005, Pub. L. 109–58, to which it relates and applicable to taxable years beginning after Dec. 31, 2005, see section 402(m) of Pub. L. 109–135, set out as a note under section 23 of this title.

Amendments by section 403(k), (o) of Pub. L. 109–135 effective as if included in the provisions of the American Jobs Creation Act of 2004, Pub. L. 108–357, to which they relate, see section 403(nn) of Pub. L. 109–135, set out as a note under section 26 of this title.

### EFFECTIVE DATE OF 2004 AMENDMENTS

Amendment by section 402(a) of Pub. L. 108–357 applicable to losses for taxable years beginning after Dec. 31, 2006, see section 402(c) of Pub. L. 108–357, set out as a note under section 535 of this title.

Amendment by section 403(a), (b)(1)–(5) of Pub. L. 108–357 applicable to taxable years beginning after Dec. 31, 2002, see section 403(c) of Pub. L. 108–357, set out as a note under section 864 of this title.

Amendment by section 403(a), (b)(1)–(5) of Pub. L. 108–357 not applicable to taxable years beginning after Dec. 31, 2002, and before Jan. 1, 2005, with a specific provision for application of subsec. (d)(4)(C)(iv) of this section, if taxpayer so elects, see section 403(d) of Pub. L. 108–357, set out as a note under section 864 of this title.

Pub. L. 108–357, title IV, § 404(g), Oct. 22, 2004, 118 Stat. 1497, provided that:

"(1) IN GENERAL.—The amendments made by this section [amending this section] shall apply to taxable years beginning after December 31, 2006.

"(2) TRANSITIONAL RULE RELATING TO INCOME TAX BASE DIFFERENCE.—Section 904(d)(2)(H)(ii) of the Internal Revenue Code of 1986, as added by subsection (e), shall apply to taxable years beginning after December 31, 2004."

Amendment by section 413(c)(14), (15) of Pub. L. 108–357 applicable to taxable years of foreign corporations beginning after Dec. 31, 2004, and to taxable years of United States shareholders with or within which such taxable years of foreign corporations end, see section 413(d)(1) of Pub. L. 108–357, set out as an Effective and Termination Dates of 2004 Amendments note under section 1 of this title.

Pub. L. 108–357, title IV, § 417(c), Oct. 22, 2004, 118 Stat. 1512, provided that:

"(1) CARRYBACK.—The amendments made by subsections (a)(1) and (b)(1) [amending this section and sec-

tion 907 of this title] shall apply to excess foreign taxes arising in taxable years beginning after the date of the enactment of this Act [Oct. 22, 2004].

''(2) CARRYOVER.—The amendments made by subsections (a)(2) and (b)(2) [amending this section and section 907 of this title] shall apply to excess foreign taxes which (without regard to the amendments made by this section [amending this section and section 907 of this title]) may be carried to any taxable year ending after the date of the enactment of this Act [Oct. 22, 2004].''

Pub. L. 108–357, title VIII, §895(b), Oct. 22, 2004, 118 Stat. 1648, provided that: ''The amendment made by this section [amending this section] shall apply to dispositions after the date of the enactment of this Act [Oct. 22, 2004].''

Amendment by Pub. L. 108–311 applicable to taxable years beginning after Dec. 31, 2003, see section 312(c) of Pub. L. 108–311, set out as a note under section 26 of this title.

### Effective Date of 2002 Amendment

Amendment by section 601(b)(1) of Pub. L. 107–147 applicable to taxable years beginning after Dec. 31, 2001, see section 601(c) of Pub. L. 107–147, set out as a note under section 26 of this title.

### Effective and Termination Dates of 2001 Amendment

Amendment by sections 201(b), 202(f), and 618(b) of Pub. L. 107–16 inapplicable to taxable years beginning during 2004 or 2005, see section 312(b)(2) of Pub. L. 108–311, set out as a note under section 23 of this title.

Amendment by sections 201(b), 202(f), and 618(b) of Pub. L. 107–16 inapplicable to taxable years beginning during 2002 and 2003, see section 601(b)(2) of Pub. L. 107–147, set out as a note under section 23 of this title.

Amendment by section 201(b)(2)(G) of Pub. L. 107–16 applicable to taxable years beginning after Dec. 31, 2001, see section 201(e)(2) of Pub. L. 107–16, set out as a note under section 24 of this title.

Amendment by section 202(f)(2)(C) of Pub. L. 107–16 applicable to taxable years beginning after Dec. 31, 2001, see section 202(g)(1) of Pub. L. 107–16, set out as a note under section 23 of this title.

Amendment by section 618(b)(2)(D) of Pub. L. 107–16 applicable to taxable years beginning after Dec. 31, 2001, see section 618(d) of Pub. L. 107–16, set out as a note under section 24 of this title.

Amendment by sections 201(b)(2)(G) and 202(f)(2)(C) of Pub. L. 107–16 inapplicable to taxable, plan, or limitation years beginning after Dec. 31, 2010, and the Internal Revenue Code of 1986 to be applied and administered to such years as if such amendment had never been enacted, see section 901 of Pub. L. 107–16, set out as a note under section 1 of this title.

### Effective Date of 1999 Amendment

Amendment by Pub. L. 106–170 applicable to taxable years beginning after Dec. 31, 1998, see section 501(c) of Pub. L. 106–170, set out as a note under section 24 of this title.

### Effective Date of 1997 Amendment

Amendment by section 311(c)(3) of Pub. L. 105–34 applicable to taxable years ending after May 6, 1997, see section 311(d) of Pub. L. 105–34, set out as a note under section 1 of this title.

Section 1101(b) of Pub. L. 105–34 provided that: ''The amendment made by subsection (a) [amending this section] shall apply to taxable years beginning after December 31, 1997.''

Section 1105(c) of Pub. L. 105–34 provided that: ''The amendments made by this section [amending this section] shall apply to taxable years beginning after December 31, 2002.''

Section 1111(c)(2) of Pub. L. 105–34 provided that: ''The amendment made by subsection (b) [amending this section] shall apply to distributions after the date of the enactment of this Act [Aug. 5, 1997].''

Amendment by section 1163(b) of Pub. L. 105–34 effective Aug. 5, 1997, see section 1163(c) of Pub. L. 105–34, set out as a note under section 902 of this title.

### Effective Date of 1996 Amendment

Section 1501(d) of Pub. L. 104–188 provided that: ''The amendments made by this section [amending this section and sections 951, 956, 959, 989, and 1297 of this title and repealing section 956A of this title] shall apply to taxable years of foreign corporations beginning after December 31, 1996, and to taxable years of United States shareholders within which or with which such taxable years of foreign corporations end.''

Amendment by section 1703(i)(1) of Pub. L. 104–188 effective as if included in the provision of the Revenue Reconciliation Act of 1993, Pub. L. 103–66, §§13001–13444, to which such amendment relates, see section 1703(o) of Pub. L. 104–188, set out as a note under section 39 of this title.

### Effective Date of 1993 Amendment

Amendment by section 13227(d) of Pub. L. 103–66 applicable to taxable years beginning after Dec. 31, 1993, see section 13227(f) of Pub. L. 103–66 set out as a note under section 56 of this title.

Section 13235(c) of Pub. L. 103–66 provided that: ''The amendments made by this section [amending this section and sections 907 and 954 of this title] shall apply to taxable years beginning after December 31, 1992.''

### Effective Date of 1990 Amendment

Amendment by section 11101(d)(5) of Pub. L. 101–508 applicable to taxable years beginning after Dec. 31, 1990, see section 11101(e) of Pub. L. 101–508, set out as a note under section 1 of this title.

### Effective Date of 1989 Amendment

Section 7402(b) of Pub. L. 101–239 provided that: ''The amendment made by subsection (a) [amending this section] shall apply to taxable years beginning after July 10, 1989.''

Amendment by section 7811(i)(1) of Pub. L. 101–239 effective, except as otherwise provided, as if included in the provision of the Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100–647, to which such amendment relates, see section 7817 of Pub. L. 101–239, set out as a note under section 1 of this title.

### Effective Date of 1988 Amendment

Section 1012(bb)(4)(B) of Pub. L. 100–647 provided that: ''The amendment made by subparagraph (A) [amending this section] shall take effect as if included in the amendment made by section 121 of the Tax Reform Act of 1984 [Pub. L. 98–369].''

Amendment by sections 1003(b)(2) and 1012(a)(1)(A), (2)–(4), (6)–(11), (c), (p)(11), (29), (q)(12) of Pub. L. 100–647 effective, except as otherwise provided, as if included in the provision of the Tax Reform Act of 1986, Pub. L. 99–514, to which such amendment relates, see section 1019(a) of Pub. L. 100–647, set out as a note under section 1 of this title.

Amendment by section 2004(l) of Pub. L. 100–647 effective, except as otherwise provided, as if included in the provisions of the Revenue Act of 1987, Pub. L. 100–203, title X, to which such amendment relates, see section 2004(u) of Pub. L. 100–647, set out as a note under section 56 of this title.

### Effective Date of 1986 Amendment

Amendment by section 104(b)(13) of Pub. L. 99–514 applicable to taxable years beginning after Dec. 31, 1986, see section 151(a) of Pub. L. 99–514, set out as a note under section 1 of this title.

Amendment by section 701(e)(4)(H) of Pub. L. 99–514 applicable to taxable years beginning after Dec. 31, 1986, with certain exceptions and qualifications, see section 701(f) of Pub. L. 99–514, set out as an Effective Date note under section 55 of this title.

Section 1201(e) of Pub. L. 99–514, as amended by Pub. L. 100–647, title I, §1012(a)(5), Nov. 10, 1988, 102 Stat. 3495; Pub. L. 101–239, title VII, §7404(a), Dec. 19, 1989, 103 Stat. 2361, provided that:

‘‘(1) IN GENERAL.—Except as provided in this subsection, the amendments made by this section [amending this section and sections 864 and 954 of this title] shall apply to taxable years beginning after December 31, 1986.

‘‘[(2) Repealed. Pub. L. 101–239, title VII, §7404(a), Dec. 19, 1989, 103 Stat. 2361.]

‘‘(3) SPECIAL RULE FOR TAXPAYER WITH OVERALL FOREIGN LOSS.—

‘‘(A) IN GENERAL.—If a taxpayer incorporated on June 20, 1928, the principal headquarters of which is in Minneapolis, Minnesota, sustained an overall foreign loss (as defined in section 904(f)(2) of the Internal Revenue Code of 1954 [now 1986]) in taxable years beginning before January 1, 1986, in connection with 2 separate trades or businesses which the taxpayer had, during 1985, substantially disposed of in tax-free transactions pursuant to section 355 of such Code, then an amount, not to exceed $40,000,000 of foreign source income, which, but for this paragraph, would not be treated as overall limitation income, shall be so treated.

‘‘(B) SUBSTANTIAL DISPOSITION.—For purposes of this paragraph, a taxpayer shall be treated as having substantially disposed of a trade or business if the retained portion of such business had sales of less than 10 percent of the annual sales of such business for taxable years ending in 1985.’’

[Section 7404(b), (c) of Pub. L. 101–239 provided that: [‘‘(b) EFFECTIVE DATE.—The repeal made by subsection (a) [amending section 1201(e) of Pub. L. 99–514, set out above] shall apply to taxable years beginning after December 31, 1989.

[‘‘(c) EXCEPTION FOR CERTAIN TAXPAYERS WITH SUBSTANTIAL LOAN LOSS RESERVES.—

[‘‘(1) IN GENERAL.—The repeal made by subsection (a) shall not apply to any taxpayer if, on any financial statement filed by such taxpayer for regulatory purposes with respect to any quarter ending during the period beginning on March 31, 1989, and ending on December 31, 1989, such taxpayer showed loss reserves against its qualified loans equal to at least 25 percent of the amount of such loans.

[‘‘(2) DEFINITIONS AND SPECIAL RULES.—For purposes of this subsection—

[‘‘(A) QUALIFIED LOAN.—The term ‘qualified loan’ has the meaning given such term by section 1201(e)(2)(H) of the Tax Reform Act of 1986 [Pub. L. 99–514, formerly set out above] (as in effect before its repeal by subsection (a)).

[‘‘(B) PARENT-SUBSIDIARY CONTROLLED GROUPS.—In the case of any taxpayer which is a member of a parent-subsidiary controlled group (as defined in section 585(c)(5)(A) [26 U.S.C. 585(c)(5)(A)]), this subsection shall be applied by treating all members of such group as 1 taxpayer.’’]

Section 1203(b) of Pub. L. 99–514 provided that: ‘‘The amendment made by subsection (a) [amending this section] shall apply to losses incurred in taxable years beginning after December 31, 1986.’’

Amendment by section 1211(b)(3) of Pub. L. 99–514 applicable to taxable years beginning after Dec. 31, 1986, except as otherwise provided, see section 1211(c) of Pub. L. 99–514, set out as an Effective Date note under section 865 of this title.

Amendment by section 1235(f)(4) of Pub. L. 99–514 applicable to taxable years of foreign corporations beginning after Dec. 31, 1986, see section 1235(h) of Pub. L. 99–514, set out as an Effective Date note under section 1291 of this title.

Section 1810(a)(1)(B) of Pub. L. 99–514 provided that: ‘‘The amendment made by subparagraph (A) [amending this section] shall take effect on March 28, 1985. In the case of any taxable year ending after such date of any corporation treated as a United States-owned foreign corporation by reason of the amendment made by subparagraph (A)—

‘‘(i) only income received or accrued by such corporation after such date shall be taken into account under section 904(g) of the Internal Revenue Code of 1954 [now 1986]; except that

‘‘(ii) paragraph (5) of such section 904(g) shall be applied by taking into account all income received or accrued by such corporation during such taxable year.’’

Section 1810(b)(4)(B) of Pub. L. 99–514 provided that:

‘‘(i) The amendment made by subparagraph (A) [amending this section] insofar as it adds the last sentence to subparagraph (E) of section 905(d)(3) [904(d)(3)] shall take effect on March 28, 1985. In the case of any taxable year ending after such date of any corporation treated as a designated payor corporation by reason of the amendment made by subparagraph (A)—

‘‘(I) only income received or accrued by such corporation after such date shall be taken into account under section 904(d)(3) of the Internal Revenue Code of 1954 [now 1986]; except that

‘‘(II) subparagraph (C) of such section 904(d)(3) shall be applied by taking into account all income received or accrued by such corporation during such taxable year.

‘‘(ii) The amendment made by subparagraph (A) insofar as it adds clause (iv) to subparagraph (E) of section 904(d)(3) shall take effect on December 31, 1985. For purposes of such amendment, the rule of the second sentence of clause (i) shall be applied by taking into account December 31, 1985, in lieu of March 28, 1985.’’

Amendment by sections 1810(b)(1)–(3) and 1876(d)(2) of Pub. L. 99–514 effective, except as otherwise provided, as if included in the provisions of the Tax Reform Act of 1984, Pub. L. 98–369, div. A, to which such amendment relates, see section 1881 of Pub. L. 99–514, set out as a note under section 48 of this title.

### EFFECTIVE DATE OF 1984 AMENDMENT

Section 121(b) of Pub. L. 98–369, as amended by Pub. L. 99–514, §2, title XVIII, §1810(a)(2), (3), Oct. 22, 1986, 100 Stat. 2095, 2822, provided that:

‘‘(1) IN GENERAL.—Except as otherwise provided in this subsection, the amendment made by subsection (a) [amending this section] shall take effect on the date of the enactment of this Act [July 18, 1984]. In the case of any taxable year of any United States-owned foreign corporation ending after the date of the enactment of this Act—

‘‘(A) only income received or accrued by such foreign corporation after such date of enactment shall be taken into account under section 904(g) of the Internal Revenue Code of 1986 [formerly I.R.C. 1954] (as added by subsection (a)); except that

‘‘(B) paragraph (5) of such section 904(g) (relating to exception where small amount of United States source income) shall be applied by taking into account all income received or accrued by such foreign corporation during such taxable year.

‘‘(2) SPECIAL RULE FOR APPLICABLE CFC.—

‘‘(A) IN GENERAL.—In the case of qualified interest received or accrued by an applicable CFC before January 1, 1992—

‘‘(i) such interest shall not be taken into account under section 904(g) of the Internal Revenue Code of 1986 (as added by subsection (a)), except that

‘‘(ii) such interest shall be taken into account for purposes of applying paragraph (5) of such section 904(g) (relating to exception where small amount of United States source income).

‘‘(B) QUALIFIED INTEREST.—For purposes of subparagraph (A), the term ‘qualified interest’ means—

‘‘(i) the aggregate amount of interest received or accrued during any taxable year by an applicable CFC on United States affiliate obligations held by such applicable CFC, multiplied by,

‘‘(ii) a fraction (not in excess of 1)—

‘‘(I) the numerator of which is the sum of the aggregate principal amount of United States affiliate obligations held by the applicable CFC on March 31, 1984, but not in excess of the applicable limit, and

"(II) the denominator of which is the average daily principal amount of United States affiliate obligations held by such applicable CFC during the taxable year.

Proper adjustments shall be made to the numerator described in clause (ii)(I) for original issue discount accruing after March 31, 1984, on CFC obligations and United States affiliate obligations.

"(C) ADJUSTMENT FOR RETIREMENT OF CFC OBLIGATIONS.—The amount described in subparagraph (B)(ii)(I) for any taxable year shall be reduced by the sum of—

"(i) the excess of (I) the aggregate principal amount of CFC obligations which are outstanding on March 31, 1984, but only with respect to obligations issued before March 8, 1984, or issued after March 7, 1984, by the applicable CFC pursuant to a binding commitment in effect on March 7, 1984, over (II) the average daily outstanding principal amount during the taxable year of the CFC obligations described in subclause (I), and

"(ii) the portion of the equity of such applicable CFC allocable to the excess described in clause (i) (determined on the basis of the debt-equity ratio of such applicable CFC on March 31, 1984).

"(D) APPLICABLE CFC.—For purposes of this paragraph, the term 'applicable CFC' means any controlled foreign corporation (within the meaning of section 957)—

"(i) which was in existence on March 31, 1984, and

"(ii) the principal purpose of which on such date consisted of the issuing of CFC obligations (or short-term borrowing from nonaffiliated persons) and lending the proceeds of such obligations (or such borrowing) to affiliates.

"(E) AFFILIATES; UNITED STATES AFFILIATES.—For purposes of this paragraph—

"(i) AFFILIATE.—The term 'affiliate' means any person who is a related person (within the meaning of section 482 of the Internal Revenue Code of 1986) to the applicable CFC.

"(ii) UNITED STATES AFFILIATE.—The term 'United States affiliate' means any United States person which is an affiliate of the applicable CFC.

"(iii) TREATMENT OF CERTAIN FOREIGN CORPORATIONS ENGAGED IN BUSINESS IN UNITED STATES.—For purposes of clause (ii), a foreign corporation shall be treated as a United States person with respect to any interest payment made by such corporation if—

"(I) at least 50 percent of the gross income from all sources of such corporation for the 3-year period ending with the close of its last taxable year ending on or before March 31, 1984, was effectively connected with the conduct of a trade or business within the United States, and

"(II) at least 50 percent of the gross income from all sources of such corporation for the 3-year period ending with the close of its taxable year preceding the payment of such interest was effectively connected with the conduct of a trade or business within the United States.

"(F) UNITED STATES AFFILIATE OBLIGATIONS.—For purposes of this paragraph, the term 'United States affiliate obligations' means any obligation of (and payable by) a United States affiliate.

"(G) CFC OBLIGATION.—For purposes of this paragraph, the term 'CFC obligation' means any obligation of (and issued by) a CFC if—

"(i) the requirements of clause (i) of section 163(f)(2)(B) of the Internal Revenue Code of 1986 are met with respect to such obligation, and

"(ii) in the case of an obligation issued after December 31, 1982, the requirements of clause (ii) of such section 163(f)(2)(B) are met with respect to such obligation.

"(H) TREATMENT OF OBLIGATIONS WITH ORIGINAL ISSUE DISCOUNT.—For purposes of this paragraph, in the case of any obligation with original issue discount, the principal amount of such obligation as of any day shall be treated as equal to the revised issue price as of such day (as defined in section 1278(a)(4) of the Internal Revenue Code of 1986).

"(I) APPLICABLE LIMIT.—For purposes of subparagraph (B)(ii)(I), the term 'applicable limit' means the sum of—

"(i) the equity of the applicable CFC on March 31, 1984, and

"(ii) the aggregate principal amount of CFC obligations outstanding on March 31, 1984, which were issued by an applicable CFC—

"(I) before March 8, 1984, or

"(II) after March 7, 1984, pursuant to a binding commitment in effect on March 7, 1984.

"(3) EXCEPTION FOR CERTAIN TERM OBLIGATIONS.—The amendments made by subsection (a) shall not apply to interest on any term obligations held by a foreign corporation on March 7, 1984. The preceding sentence shall not apply to any United States affiliate obligation (as defined in paragraph (2)(F)) held by an applicable CFC (as defined in paragraph (2)(D)).

"(4) DEFINITIONS.—Any term used in this subsection which is also used in section 904(g) of the Internal Revenue Code of 1986 (as added by subsection (a)) shall have the meaning given such term by such section 904(g).

"(5) SEPARATE APPLICATION OF SECTION 904 IN CASE OF INCOME COVERED BY TRANSITIONAL RULES.—Subsections (a), (b), and (c) of section 904 of the Internal Revenue Code of 1986 shall be applied separately to any amount not treated as income derived from sources within the United States but which (but for the provisions of paragraph (2) or (3) of this subsection) would be so treated under the amendments made by subsection (a). Any such separate application shall be made before any separate application required under section 904(d) of such Code.

"(6) APPLICATION OF PARAGRAPH (5) DELAYED IN CERTAIN CASES.—In the case of a foreign corporation—

"(A) which is a subsidiary of a domestic corporation which has been engaged in manufacturing for more than 50 years, and

"(B) which issued certificates with respect to obligations on—

"(i) September 24, 1979, denominated in French francs,

"(ii) September 10, 1981, denominated in Swiss francs,

"(iii) July 14, 1982, denominated in Swiss francs, and

"(iv) December 1, 1982, denominated in United States dollars,

with a total principal amount of less than 200,000,000 United States dollars.[,]

then paragraph (5) shall not apply to the proceeds from relending such obligations or related capital before January 1, 1986."

Section 122(b) of Pub. L. 98–369 provided that:

"(1) IN GENERAL.—The amendment made by subsection (a) [amending this section] shall take effect on the date of the enactment of this Act [July 18, 1984].

"(2) SPECIAL RULES FOR INTEREST INCOME.—

"(A) IN GENERAL.—Interest income received or accrued by a designated payor corporation shall be taken into account for purposes of the amendment made by subsection (a) only in taxable years beginning after the date of the enactment of this Act.

"(B) EXCEPTION FOR INVESTMENT AFTER JUNE 22, 1984.—Notwithstanding subparagraph (A), the amendment made by subsection (a) shall apply to interest income received or accrued by a designated payor corporation after the date of enactment of this Act if it is attributable to investment in the designated payor corporation after June 22, 1984.

"(3) TERM OBLIGATIONS OF DESIGNATED PAYOR CORPORATION WHICH IS NOT APPLICABLE CFC.—In the case of any designated payor corporation which is not an applicable CFC (as defined in section 121(b)(2)(D) [section 121(b)(2)(D) of Pub. L. 98–369, set out above]), any interest received or accrued by such corporation on a term obligation held by such corporation on March 7, 1984, shall not be taken into account."

Amendment by section 474(r)(21) of Pub. L. 98–369 applicable to taxable years beginning after Dec. 31, 1983, and to carrybacks from such years, see section 475(a) of Pub. L. 98–369, set out as a note under section 21 of this title.

Amendment by section 801(d)(2) of Pub. L. 98–369 applicable to transactions after Dec. 31, 1984, in taxable years ending after such date, see section 805(a)(1) of Pub. L. 98–369, as amended, set out as a note under section 245 of this title.

#### EFFECTIVE DATE OF 1983 AMENDMENT

Amendment by Pub. L. 98–21 applicable to taxable years beginning after Dec. 31, 1983, except that if an individual's annuity starting date was deferred under section 105(d)(6) of this title as in effect on the day before Apr. 20, 1983, such deferral shall end on the first day of such individual's first taxable year beginning after Dec. 31, 1983, see section 122(d) of Pub. L. 98–21, set out as a note under section 22 of this title.

#### EFFECTIVE DATE OF 1982 AMENDMENT

Amendment by Pub. L. 97–248 applicable to taxable years beginning after Dec. 31, 1982, except that former subsec. (f)(4), which had provided for the determination of foreign oil related loss where section 907 of this title was applicable, shall continue to apply in certain instances where the taxpayer has had a foreign loss from an activity not related to oil and gas, see section 211(e) of Pub. L. 97–248, set out as a note under section 907 of this title.

#### EFFECTIVE DATE OF 1980 AMENDMENT

Amendment by Pub. L. 96–222 effective, except as otherwise provided, as if it had been included in the provisions of the Revenue Act of 1978, Pub. L. 95–600, to which such amendment relates, see section 201 of Pub. L. 96–222, set out as a note under section 32 of this title.

#### EFFECTIVE DATE OF 1978 AMENDMENT

Amendment by section 403(c)(4) of Pub. L. 95–600 effective on Nov. 6, 1978, see section 403(d)(3) of Pub. L. 95–600, set out as a note under section 528 of this title.

Amendment by section 421(e)(6) of Pub. L. 95–600 applicable to taxable years beginning after Dec. 31, 1978, see section 421(g) of Pub. L. 95–600, set out as note under section 5 of this title.

Amendment by section 701(a)(8)(C) of Pub. L. 95–600 applicable, in the case of individuals, to taxable years ending after Dec. 31, 1974, and, in the case of corporations, to taxable years ending after Dec. 31, 1976, see section 701(u)(8)(D) of Pub. L. 95–600, set out as a note under section 907 of this title.

Section 701(q)(3)(B) of Pub. L. 95–600, as amended by Pub. L. 99–514, § 2, Oct. 22, 1986, 100 Stat. 2095, provided that: ''The amendments made by paragraph (2) [amending this section] shall take effect as if included in section 904(f) of the Internal Revenue Code of 1986 [formerly I.R.C. 1954], as such provision was added to such Code by section 1032(a) of the Tax Reform Act of 1976 [section 1032(a) of Pub. L. 94–455].''

Section 701(u)(2)(D) of Pub. L. 95–600 provided that: ''The amendments made by this paragraph [amending this section] shall apply to taxable years beginning after December 31, 1975.''

Section 701(u)(3)(B) of Pub. L. 95–600 provided that: ''The amendment made by subparagraph (A) [amending this section] shall apply to taxable years beginning after December 31, 1975.''

Section 701(u)(4)(C) of Pub. L. 95–600 provided that: ''The amendments made by this paragraph [amending this section] shall apply—

''(i) to overall foreign losses sustained in taxable years beginning after December 31, 1975, and

''(ii) to foreign oil related losses sustained in taxable years ending after December 31, 1975.''

#### EFFECTIVE DATE OF 1977 AMENDMENT

Amendment by Pub. L. 95–30 applicable to taxable years beginning after Dec. 31, 1976, see section 106(a) of Pub. L. 95–30, set out as a note under section 1 of this title.

#### EFFECTIVE DATE OF 1976 AMENDMENT

Amendment by section 503(b)(1) of Pub. L. 94–455 applicable to taxable years beginning after Dec. 31, 1975, see section 508 of Pub. L. 94–455, set out as a note under section 3 of this title.

Section 1031(c) of Pub. L. 94–455, as amended by Pub. L. 95–600, title VII, § 701(u)(6), (7)(B)(ii), Nov. 6, 1978, 92 Stat. 2914, 2916; Pub. L. 99–514, § 2, Oct. 22, 1986, 100 Stat. 2095, provided that:

''(1) IN GENERAL.—Except as provided in paragraphs (2) and (3), the amendments made by this section [amending this section and sections 243, 383, 901, 907, 960, 1351, 1503, 6038, and 6501 of this title] shall apply to taxable years beginning after December 31, 1975.

''(2) EXCEPTION FOR CERTAIN MINING OPERATIONS.—In the case of a domestic corporation or includible corporation in an affiliated group (as defined in section 1504 of the Internal Revenue Code of 1986 [formerly I.R.C. 1954]) which has as of October 1, 1975—

''(A) been engaged in the active conduct of the trade or business of the extraction of minerals (of a character with respect to which a deduction for depletion is allowable under section 613 of such Code) outside the United States or its possessions for less than 5 years preceding the date of enactment of this Act [Oct. 4, 1976],

''(B) had deductions properly apportioned or allocated to its gross income from such trade or business in excess of such gross income in at least 2 taxable years,

''(C) 80 percent of its gross receipts are from the sale of such minerals, and

''(D) made commitments for substantial expansion of such mineral extraction activities,

the amendments made by this section [amending this section and sections 243, 383, 901, 907, 960, 1351, 1503, 6038, and 6501 of this title] shall apply to taxable years beginning after December 31, 1978. In the case of a loss sustained in a taxable year beginning before January 1, 1979, by any corporation to which this paragraph applies, if section 904(a)(1) of such Code (as in effect before the enactment of this Act [Oct. 4, 1976]) applies with respect to such taxable year, the provisions of section 904(f) of such Code shall be applied with respect to such loss under the principles of such section 904(a)(1).

''(3) EXCEPTION FOR INCOME FROM POSSESSIONS.—In the case of gross income from sources within a possession of the United States (and the deductions properly apportioned or allocated thereto), the amendments made by this section [amending this section and sections 243, 383, 901, 907, 960, 1351, 1503, 6038, and 6501 of this title] shall apply to taxable years beginning after December 31, 1978.

''(4) CARRYBACKS AND CARRYOVERS IN THE CASE OF MINING OPERATIONS AND INCOME FROM A POSSESSION.—In the case of a taxpayer to whom paragraph (2) or (3) of this subsection applies, section 904(e) of such Code [section 904(e) of this title] shall apply except that 'January 1, 1979' shall be substituted for 'January 1, 1976' each place it appears therein. If such taxpayer elects the overall limitation for a taxable year beginning before January 1, 1979, such section 904(e) shall be applied by substituting 'the January 1, of the last year for which such taxpayer is on the per-country limitation' for 'January 1, 1976' each place it appears therein.''

Section 1032(c) of Pub. L. 94–455, as amended by Pub. L. 95–600, title VII, § 701(u)(5), (7)(A), (B)(i), Nov. 6, 1978, 92 Stat. 2914; Pub. L. 99–514, § 2, Oct. 22, 1986, 100 Stat. 2095, provided that:

''(1) IN GENERAL.—Except as provided in paragraphs (2), (3), and (5), the amendment made by subsection (a) [amending this section] shall apply to losses sustained in taxable years beginning after December 31, 1975. The amendment made by subsection (b)(1) [amending section 907 of this title] shall apply to taxable years beginning after December 31, 1975. The amendment made by subsection (b)(2) [amending section 907 of this title]

shall apply to losses sustained in taxable years ending after December 31, 1975.

''(2) OBLIGATIONS OF FOREIGN GOVERNMENTS.—The amendments made by subsection (a) [amending this section] shall not apply to losses on the sale, exchange, or other disposition of bonds, notes, or other evidences of indebtedness issued before May 14, 1976, by a foreign government or instrumentality thereof for the acquisition of property located in that country or stock of a corporation (created or organized in or under the laws of that foreign country) or indebtedness of such corporation.

''(3) SUBSTANTIAL WORTHLESSNESS BEFORE ENACTMENT.—The amendments made by subsection (a) [amending this section] shall not apply to losses incurred on the loss from stock or indebtedness of a corporation in which the taxpayer owned at least 10 percent of the voting stock and which has sustained losses in 3 out of the last 5 taxable years beginning before January 1, 1976, which has sustained an overall loss for those 5 years, and with respect to which the taxpayer has terminated or will terminate all operations by reason of sale, liquidation, or other disposition before January 1, 1977, of such corporation or its assets.

''(4) LIMITATION BASED ON DEFICIT IN EARNINGS AND PROFITS.—If paragraph (3) would apply to a taxpayer but for the fact that the loss is sustained after December 31, 1976, and if the loss is sustained in a taxable year beginning before January 1, 1979, the amendments made by subsection (a) [amending this section] shall not apply to such loss to the extent that there was on December 31, 1975, a deficit in earnings and profits in the corporation from which the loss arose. For purposes of the preceding sentence, there shall be taken into account only earnings and profits of the corporation which (A) were accumulated in taxable years of the corporation beginning after December 31, 1962, and during the period in which the stock of such corporation from which the loss arose was held by the taxpayer and (B) are attributable to such stock.

''(5) FOREIGN OIL RELATED LOSSES.—The amendment made by subsection (a) [amending this section] shall apply to foreign oil related losses sustained in taxable years ending after December 31, 1975.

''(6) RECAPTURE OF POSSESSION LOSSES DURING TRANSITIONAL PERIOD WHERE TAXPAYER IS ON A PER-COUNTRY BASIS.—

''(A) APPLICATION OF PARAGRAPH.—This paragraph shall apply if—

''(i) the taxpayer sustained a loss in a possession of the United States in a taxable year beginning after December 31, 1975, and before January 1, 1979,

''(ii) such loss is attributable to a trade or business engaged in by the taxpayer in such possession on January 1, 1976, and

''(iii) the taxpayer chooses to have the benefits of subpart A of part III of subchapter N apply for such taxable year and section 904(a)(1) of the Internal Revenue Code of 1986 [formerly I.R.C. 1954] (as in effect before the enactment of this Act [Oct. 4, 1976]) applies with respect to such taxable year.

''(B) NO RECAPTURE DURING TRANSITION PERIOD.—In any case to which this paragraph applies, for purposes of determining the liability for tax of the taxpayer for taxable years beginning before January 1, 1979, section 904(f) of the Internal Revenue Code of 1986 shall not apply with respect to the loss described in subparagraph (A)(i).

''(C) RECAPTURE OF LOSS AFTER THE TRANSITION PERIOD.—In any case to which this paragraph applies—

''(i) for purposes of determining the liability for tax of the taxpayer for taxable years beginning after December 31, 1978, section 904(f) of the Internal Revenue Code of 1986 [subsec. (f) of this section] shall be applied with respect to the loss described in subparagraph (A)(i) under the principles of section 904(a)(1) of such Code (as in effect before the enactment of this Act [Oct. 4, 1976]); but

''(ii) in the case of any taxpayer and any possession, the aggregate amount to which such section

904(f) applies by reason of clause (i) shall not exceed the sum of the net incomes of all affiliated corporations from such possession for taxable years of such affiliated corporations beginning after December 31, 1975, and before January 1, 1979.

''(D) TAXPAYERS NOT ENGAGED IN TRADE OR BUSINESS ON JANUARY 1, 1976.—In any case to which this paragraph applies but for the fact that the taxpayer was not engaged in a trade or business in such possession on January 1, 1976, for purposes of determining the liability for tax of the taxpayer for taxable years beginning before January 1, 1979; if section 904(a)(1) of such Code (as in effect before the enactment of this Act [Oct. 4, 1976]) applies with respect to such taxable year, the provisions of section 904(f) of such Code shall be applied with respect to the loss described in subparagraph (A)(i) under the principles of such section 904(a)(1).

''(E) AFFILIATED CORPORATION DEFINED.—For purposes of subparagraph (C)(ii), the term 'affiliated corporation' means a corporation which, for the taxable year for which the net income is being determined, was not a member of the same affiliated group (within the meaning of section 1504 of the Internal Revenue Code of 1986) as the taxpayer but would have been a member of such group but for the application of subsection (b) of such section 1504.''

Section 1034(b) of Pub. L. 94–455 provided that: ''The amendment made by this section [amending this section] shall apply to taxable years beginning after December 31, 1975, except that the provisions of section 904(b)(3)(C) shall only apply to sales or exchanges made after November 12, 1975.''

Amendment by section 1051(e) of Pub. L. 94–455 applicable to taxable years beginning after Dec. 31, 1975, with certain exceptions, see section 1051(i) of Pub. L. 94–455, set out as a note under section 27 of this title.

Amendment by section 1901(b)(10) of Pub. L. 94–455 applicable with respect to taxable years ending after Oct. 4, 1976, see section 1901(d) of Pub. L. 94–455, set out as a note under section 2 of this title.

EFFECTIVE DATE OF 1971 AMENDMENT

Amendment by Pub. L. 92–178 applicable with respect to taxable years ending after Dec. 31, 1971, except that a corporation may not be a DISC for any taxable year beginning before Jan. 1, 1972, see section 507 of Pub. L. 92–178, set out as a note under section 991 of this title.

EFFECTIVE DATE OF 1969 AMENDMENT

Amendment by Pub. L. 91–172 applicable with respect to taxable years beginning after Dec. 31, 1969, see section 506(c) of Pub. L. 91–172, set out as a note under section 901 of this title.

EFFECTIVE DATE OF 1966 AMENDMENT

Section 106(c)(2) of Pub. L. 89–809 provided that: ''The amendments made by paragraph (1) [amending this section] shall apply to interest received after December 31, 1965, in taxable years ending after such date.''

EFFECTIVE DATE OF 1964 AMENDMENT

Amendment by Pub. L. 88–272 applicable to taxable years beginning after Dec. 31, 1963, see section 234(c) of Pub. L. 88–272, set out as a note under section 1503 of this title.

EFFECTIVE DATE OF 1962 AMENDMENT

Section 10(b) of Pub. L. 87–834 provided that: ''The amendments made by subsection (a) [amending this section] shall apply with respect to taxable years beginning after the date of the enactment of this Act [Oct. 16, 1962], but only with respect to interest resulting from transactions consummated after April 2, 1962.''

EFFECTIVE DATE OF 1960 AMENDMENT

Section 4 of Pub. L. 86–780 provided that: ''The amendments made by the first section [amending this

section], section 2 [amending section 1503 of this title], and subsection (a) of section 3 of this Act [amending section 901 of this title] shall apply with respect to taxable years beginning after December 31, 1960. The amendment made by subsection (b) of section 3 of this Act [amending section 901 of this title] shall apply with respect to taxable years beginning after December 31, 1953, and ending after August 16, 1954. The amendments made by subsection (c) of section 3 of this Act [enacting section 6501 of this title] shall apply with respect to taxable years beginning after December 31, 1957.''

EFFECTIVE DATE OF 1958 AMENDMENT

Section 42(c) of Pub. L. 85–866 provided that: ''The amendments made by subsections (a) and (b) [amending this section and section 6611 of this title] shall apply only with respect to taxable years beginning after December 31, 1957.''

SAVINGS PROVISION

For provisions that nothing in amendment by section 11801(a)(31) of Pub. L. 101–508 be construed to affect treatment of certain transactions occurring, property acquired, or items of income, loss, deduction, or credit taken into account prior to Nov. 5, 1990, for purposes of determining liability for tax for periods ending after Nov. 5, 1990, see section 11821(b) of Pub. L. 101–508, set out as a note under section 45K of this title.

APPLICABILITY OF CERTAIN AMENDMENTS BY PUB. L. 99–514 IN RELATION TO TREATY OBLIGATIONS OF UNITED STATES

For applicability of amendments by sections 701(e)(4)(H) and 1201(a), (b), (d)(1)–(3) of Pub. L. 99–514 notwithstanding any treaty obligation of the United States in effect on Oct. 22, 1986, and for nonapplication of amendment by section 1211(b)(3) of Pub. L. 99–514 to the extent application of such amendment would be contrary to any treaty obligation of the United States in effect on Oct. 22, 1986, with provision that for such purposes any amendment by title I of Pub. L. 100–647 be treated as if it had been included in the provision of Pub. L. 99–514 to which such amendment relates, see section 1012(aa)(2)–(4) of Pub. L. 100–647, set out as a note under section 861 of this title.

PLAN AMENDMENTS NOT REQUIRED UNTIL JANUARY 1, 1989

For provisions directing that if any amendments made by subtitle A or subtitle C of title XI [§§ 1101–1147 and 1171–1177] or title XVIII [§§ 1800–1899A] of Pub. L. 99–514 require an amendment to any plan, such plan amendment shall not be required to be made before the first plan year beginning on or after Jan. 1, 1989, see section 1140 of Pub. L. 99–514, as amended, set out as a note under section 401 of this title.

LIMITATION ON CARRYBACK OF FOREIGN TAX CREDITS TO TAXABLE YEARS BEGINNING BEFORE 1987

Section 1205 of Pub. L. 99–514 provided that:
''(a) DETERMINATION OF EXCESS CREDITS.—
''(1) IN GENERAL.—Any taxes paid or accrued in a taxable year beginning after 1986 may be treated under section 904(c) of the Internal Revenue Code of 1954 as paid or accrued in a taxable year beginning before 1987 only to the extent such taxes would be so treated if the tax imposed by chapter 1 of such Code for the taxable year beginning after 1986 were determined by applying section 1 or 11 of such Code (as the case may be) as in effect on the day before the date of the enactment of this Act [Oct. 22, 1986].
''(2) ADJUSTMENTS.—Under regulations prescribed by the Secretary of the Treasury or his delegate proper adjustments shall be made in the application of paragraph (1) to take into account—
''(A) the repeal of the zero bracket amount, and
''(B) the changes in the treatment of capital gains.
''(b) COORDINATION WITH SEPARATE BASKETS.—Any taxes paid or accrued in a taxable year beginning after 1986 which (after the application of subsection (a)) are treated as paid or accrued in a taxable year beginning before 1987 shall be treated as imposed on income described in section 904(d)(1)(E) of the Internal Revenue Code of 1954 (as in effect on the day before the date of the enactment of this Act [Oct. 22, 1986]). No taxes paid or accrued in a taxable year beginning after 1986 with respect to high withholding tax interest (as defined in section 904(d)(2)(B) of the Internal Revenue Code of 1986 as amended by this Act) may be treated as paid or accrued in a taxable year beginning before 1987.''

COORDINATION WITH TREATY OBLIGATIONS

Section 1810(a)(4) of Pub. L. 99–514 provided that: ''Section 904(g) of the Internal Revenue Code of 1954 shall apply notwithstanding any treaty obligation of the United States to the contrary (whether entered into on, before, or after the date of the enactment of this Act [Oct. 22, 1986]) unless (in the case of a treaty entered into after the date of the enactment of this Act) such treaty by specific reference to such section 904(g) clearly expresses the intent to override the provisions of such section.''

SEPARATE APPLICATION OF SECTION 904 IN CASE OF INCOME COVERED BY TRANSITIONAL RULES

Section 1810(a)(5) of Pub. L. 99–514, as amended by Pub. L. 100–647, title I, § 1018(g)(1), Nov. 10, 1988, 102 Stat. 3582, provided that: ''For purposes of section 121(b)(5) of the Tax Reform Act of 1984 [Pub. L. 98–369, set out above] (relating to separate application of section 904 [of the Internal Revenue Code of 1954 [now 1986]] in case of income covered by transitional rules), any carryover under section 904(c) of the Internal Revenue Code of 1954 [now 1986] allowed to a taxpayer which was incorporated on August 31, 1962, attributable to taxes paid or accrued in taxable years beginning in 1981, 1982, 1983, or 1984, with respect to amounts included in gross income under section 951 of such Code in respect of a controlled foreign corporation which was incorporated on May 27, 1977, shall be treated as taxes paid or accrued on income separately treated under such section 121(b)(5).''

§ 905. Applicable rules

(a) Year in which credit taken

The credits provided in this subpart may, at the option of the taxpayer and irrespective of the method of accounting employed in keeping his books, be taken in the year in which the taxes of the foreign country or the possession of the United States accrued, subject, however, to the conditions prescribed in subsection (c). If the taxpayer elects to take such credits in the year in which the taxes of the foreign country or the possession of the United States accrued, the credits for all subsequent years shall be taken on the same basis, and no portion of any such taxes shall be allowed as a deduction in the same or any succeeding year.

(b) Proof of credits

The credits provided in this subpart shall be allowed only if the taxpayer establishes to the satisfaction of the Secretary—

(1) the total amount of income derived from sources without the United States, determined as provided in part I,

(2) the amount of income derived from each country, the tax paid or accrued to which is claimed as a credit under this subpart, such amount to be determined under regulations prescribed by the Secretary, and

(3) all other information necessary for the verification and computation of such credits.

**Internal Revenue Service, Treasury**                    **§ 1.904(f)–2**

country C. X's taxable income and losses for its taxable year 1983 are as follows:

U.S. Source taxable income ...................$1,000
Foreign source taxable income (loss)
   subject to the general limitation
   ........................................................ ($500)
Foreign source taxable income subject
   to the passive interest limitation
   ...........................................................$200

X has a general limitation overall foreign loss of $500 for 1983 in accordance with paragraph (c) (1) of this section. Since the general limitation overall foreign loss is not considered to offset income under the separate limitation for passive interest income, it therefore offsets $500 of United States source taxable income. This amount is added to X's general limitation overall foreign loss account at the end of 1983 in accordance with paragraphs (c) (1) and (d) (1) of this section.

*Example 2.* Y Corporation is a domestic corporation with foreign branch operations in Country C. Y's taxable income and losses for its taxable year 1982 are as follows:

U.S. source taxable income ...................$1,000
Foreign source taxable income (loss)
   subject to the general limitation
   ........................................................ ($500)
Foreign source taxable income subject
   to the passive interest limitation
   ...........................................................$250

For its pre-1983 taxable years, Y filed its returns determining its overall foreign losses on a combined basis. In accordance with paragraphs (a) and (c) (1) of this section, Y may net the foreign source income and loss before offsetting the United States source income. Y therefore has a section 904(d)(1)(A-C) overall foreign loss account of $250 at the end of 1982.

*Example 3.* X Corporation is a domestic corporation with foreign branch operations in country C. For its taxable year 1985, X has taxable income (loss) determined as follows:

U.S. source taxable income ......................$200
Foreign source taxable income (loss)
   subject to the general limitation
   .................................................... ($1,000)
Foreign source taxable income (loss)
   subject to the passive limitation
   .................................................... $1,800

X has a general limitation overall foreign loss of $1,000 in accordance with paragraph (c)(1) of this section. The overall foreign loss offsets $200 of United States source taxable income in 1985 and, therefore, X has a $200 general limitation overall foreign loss account at the end of 1985. The remaining $800 general limitation loss is offset by the passive interest limitation income in 1985 so that X has no net operating loss carryover that is attributable to the general limitation loss and no additional amount attributable to that loss will be added to the overall for-

eign loss account in 1985 or in any other year.

*Example 4.* In 1986, V Corporation has $1000 of general limitation foreign source taxable income and $500 of general limitation foreign source net capital loss which has reduced $500 of United States source capital gain net income (''short term gain'') (none of which is net capital gain). Under section 904(b), the numerator of V's foreign tax credit limitation fraction for income subject to the general limitation is reduced by $500 (see §1.904 (b)–1 (a)(3)). Under paragraph (d)(5)(i) of this section, none of that $500 goes into its general limitation overall foreign loss account.

*Example 5.* Z Corporation is a domestic corporation with foreign branch operations. For the taxable year 1984, Z's taxable income and (losses) are as follows:

U.S. source taxable ordinary income
   ...........................................................$1,000
U.S. source net capital gain......................$460
Foreign source taxable ordinary in-
   come subject to the general limi-
   tation..................................................$200
Foreign source net capital loss subject
   to the general limitation ................($800)

Z had no capital gain net income in any prior taxable year. Under paragraph (d)(2) and (5) of this section, the amount to be added to Z's general limitation overall foreign loss account is the excess of the amount which has reduced United States source capital gain net income for the taxable year ($460), adjusted for the rate differential because it has reduced United States source net capital gain ($460×28/46=$280), over the amount which has reduced the numerator of Z's foreign tax credit limitation fraction under section 904(b)(2), which is $200. (The $200 amount is foreign source net capital loss that has reduced United States source net capital gain in the denominator of the fraction, but not exceeding the amount of foreign source income in the numerator before the section 904(b)(2) adjustment.) Thus, Z must add $80 (the excess of the $280 over $200) to its general limitation overall foreign loss account in 1984.

[T.D. 8153, 52 FR 31994, Aug. 25, 1987; 52 FR 43434, Nov. 12, 1987]

**§ 1.904(f)–2 Recapture of overall foreign losses.**

(a) *In general.* A taxpayer shall be required to recapture an overall foreign loss as provided in this section. Recapture is accomplished by treating as United States source income a portion of the taxpayer's foreign source taxable income of the same limitation as the foreign source loss that resulted in an overall foreign loss account. As a result, if the taxpayer elects the benefits

763

of section 901 or section 936, the taxpayer's foreign tax credit limitation with respect to such income is decreased. As provided in § 1.904 (f)–1(e)(2), the balance in a taxpayer's overall foreign loss account is reduced by the amount of loss recaptured. Recapture continues until such time as the amount of foreign source taxable income recharacterized as United States source income equals the amount in the overall foreign loss account. As provided in § 1.904 (f)–1(e)(2), the balance in an overall foreign loss account is reduced at the end of each taxable year by the amount of the loss recaptured during that taxable year. Regardless of whether recapture occurs in a year in which a taxpayer elects the benefits of section 901 or in a year in which a taxpayer deducts its foreign taxes under section 164, the overall foreign loss account is recaptured only to the extent of foreign source taxable income remaining after applying the appropriate section 904(b) adjustments, if any, as provided in paragraph (b) of this section.

(b) *Determination of taxable income from sources without the United States for purposes of recapture*—(1) *In general.* For purposes of determining the amount of an overall foreign loss subject to recapture, the taxpayer's taxable income from sources without the United States shall be computed with respect to each of the separate limitations described in § 1.904 (f)–1(c)(2) in accordance with the rules set forth in § 1.904 (f)–1(c) (1) and (3). This computation is made without taking into account foreign source taxable income (and deductions properly allocated and apportioned thereto) subject to other separate limitations. Before applying the recapture rules to foreign source taxable income, the following provisions shall be applied to such income in the following order:

(i) Former section 904(b)(3)(C) (prior to its removal by the Tax Reform Act of 1986) and the regulations thereunder shall be applied to treat certain foreign source gain as United States source gain; and

(ii) Section 904(b)(2) and the regulations thereunder shall be applied to make adjustments in the foreign tax credit limitation fraction for certain capital gains and losses.

(c) *Section 904(f)(1) recapture*—(1) *In general.* In a year in which a taxpayer elects the benefits of sections 901 or 936, the amount of any foreign source taxable income subject to recapture in a taxable year in which paragraph (a) of this section is applicable is the lesser of the balance in the applicable overall foreign loss account (after reduction of such account in accordance with § 1.904 (f)–1(e)) or fifty percent of the taxpayer's foreign source taxable income of the same limitation as the loss that resulted in the overall foreign loss account (as determined under paragraph (b) of this section). If, in any year, in accordance with sections 164(a) and section 275(a)(4)(A), a taxpayer deducts rather than credits its foreign taxes, recapture is applied to the extent of the lesser of (i) the balance in the applicable overall foreign loss account or (ii) foreign source taxable income of the same limitation type that resulted in the overall foreign loss minus foreign taxes imposed on such income.

(2) *Election to recapture more of the overall foreign loss than is required under paragraph (c)(1).* In a year in which a taxpayer elects the benefits of sections 901 or 936, a taxpayer may make an annual revocable election to recapture a greater portion of the balance in an overall foreign loss account than is required to be recaptured under paragraph (c)(1) of this section. A taxpayer may make such an election or amend a prior election by attaching a statement to its annual Form 1116 or 1118. If an amendment is made to a prior year's election, an amended tax return should be filed. The statement attached to the Form 1116 or 1118 must indicate the percentage and dollar amount of the taxpayer's foreign source taxable income that is being recharacterized as United States source income and the percentage and dollar amount of the balance (both before and after recapture) in the overall foreign loss account that is being recaptured. Except for the special recapture rules for section 936 corporations and for recapture of pre-1983 overall foreign losses determined on a combined basis, the taxpayer that elects to credit its foreign taxes may not elect to recapture an

amount in excess of the taxpayer's foreign source taxable income subject to the same limitation as the loss that resulted in the overall foreign loss account.

(3) *Special rule for recapture of losses incurred prior to section 936 election.* If a corporation elects the application of section 936 and at the time of the election has a balance in any overall foreign loss account, such losses will be recaptured from the possessions source income of the electing section 936 corporation that qualifies for the section 936 credit, including qualified possession source investment income as defined in section 936(d)(2), even though the overall foreign loss to be recaptured may not be attributable to a loss in an income category of a type that would meet the definition of qualified possession source investment income. For purposes of recapturing an overall foreign loss incurred by a consolidated group including a corporation that subsequently elects to use section 936, the electing section 936 corporation's possession source income that qualifies for the section 936 credit, including qualified possession source investment income, shall be used to recapture the section 936 corporation's share of previously incurred overall foreign loss accounts. Rules for determining the section 936 corporation's share of the consolidated groups overall foreign loss accounts are provided in § 1.1502–9(c).

(4) *Recapture of pre-1983 overall foreign losses determined on a combined basis.* If a taxpayer computed its overall foreign losses on a combined basis in accordance with § 1.904(f)–1(c)(1) for taxable years beginning before January 1, 1983, any losses recaptured in taxable years beginning after December 31, 1982, shall be recaptured from income subject to the general limitation, subject to the rules in § 1.904(f)–6 (a) and (b). Ordering rules for recapture of these losses are provided in § 1.904(f)–6(c).

(5) *Illustrations.* The rules of this paragraph (c) are illustrated by the following examples, all of which assume a United States corporate tax rate of 50 percent unless otherwise stated.

*Example 1.* X Corporation is a domestic corporation that does business in the United States and abroad. On December 31, 1983, the balance in X's general limitation overall for-

eign loss account is $600, all of which is attributable to a loss incurred in 1983. For 1984, X has United States source taxable income of $500 and foreign source taxable income subject to the general limitation of $500. For 1984, X pays $200 in foreign taxes and elects section 901. Under paragraph (c)(1) of this section, X is required to recapture $250 (the lesser of $600 or 50 percent of $500) of its overall foreign loss. As a consequence, X's foreign tax credit limitation under the general limitation is $250/$1,000×$500, or $125, instead of $500/$1,000×$500, or $250. The balance in X's general limitation overall foreign loss account is reduced by $250 in accordance with § 1.904(f)–1(e)(2).

*Example 2.* The facts are the same as in example 1 except that X makes an election to recapture its overall foreign loss to the extent of 80 percent of its foreign source taxable income subject to the general limitation (or $400) in accordance with paragraph (c)(2) of this section. As a result of recapture, X's 1984 foreign tax credit limitation for income subject to the general limitation is $100/$1,000×$500, or $50, instead of $500/$1,000×$500, or $250. X's general limitation overall foreign loss account is reduced by $400 in accordance with § 1.904(f)–1(e)(2).

*Example 3.* The facts are the same as in example 1 except that X does not elect the benefits of section 901 in 1984 and instead deducts its foreign taxes paid. In 1984, X recaptures $300 of its overall foreign loss, the difference between X's foreign source taxable income of $500 and $200 of foreign taxes paid. The balance in X's general limitation overall foreign loss account is reduced by $300 in accordance with § 1.904(f)–1(e)(2).

*Example 4.* The facts are the same as in example 1 except that in 1984, X also has $1,000 of foreign source DISC dividend income subject to the separate limitation for DISC dividends which carries a foreign tax of $50. Under paragraph (c)(1) of this section the amount of X's general limitation overall foreign loss subject to recapture is $250 (the lesser of the balance in the overall foreign loss account or 50 percent of the foreign source taxable income subject to the general limitation). There is no recapture with respect to the DISC dividend income. X's separate limitation for DISC dividend income is $1,000/$2,000×$1,000, or $500. Its general limitation is $250/$2,000×$1,000, or $125, instead of $500/$2,000×$1,000, or $250. The balance in X's general limitation overall foreign loss account is reduced by $250 in accordance with § 1.904(f)–1(e)(2).

*Example 5.* On December 31, 1980, V, a domestic corporation that does business in the United States and abroad, has a balance in its section 904(d)(1)(A-C) overall foreign loss account of $600. V also has a balance in its FORI limitation overall foreign loss account of $900. For 1981, V has foreign source taxable income subject to the general limitation of

§ 1.904(f)–2                                      26 CFR Ch. I (4–1–06 Edition)

$500 and $500 of United States source income. V also has foreign source taxable income subject to the FORI limitation of $800. V is required to recapture $250 of its section 904(d)(1)(A-C) overall foreign loss account (the lesser of $600 or 50% of $500) and its general limitation foreign tax credit limitation is $250/$1,800×$900, or $125 instead of $500/$1,800×$900, or $250. V is also required to recapture $400 of its FORI limitation overall foreign loss account (the lesser of $900 or 50% of $800). V's foreign tax credit limitation for FORI is $400/$1,800×$900, or $200, instead of $800/$1,800×$900, or $400. The balance in V's FORI limitation overall foreign loss account is reduced to $500 and the balance in V's section 904(d)(1)(A-C) account is reduced to $350, in accordance with § 1.904(f)–1(e)(2).

*Example 6.* This example assumes a United States corporate tax rate of 46 percent (under section 11(b)) and an alternative rate of tax under section 1201(a) of 28 percent. W is a domestic corporation that does business in the United States and abroad. On December 31, 1984, W has $350 in its general limitation overall foreign loss account. For 1985, W has $500 of United States source taxable income, and has foreign source income subject to the general limitation as follows:

Foreign source taxable income other than net capital gain .................................................................. $720
Foreign source net capital gain ........................................ $460

Under paragraph (b)(2) of this section, foreign source taxable income for purposes of recapture includes foreign source capital gain net income, reduced, under section 904(b)(2), by the rate differential portion of foreign source net capital gain, which adjusts for the reduced tax rate for net capital gain under section 1201(a):

Foreign source capital gain net income ..................... $460
Rate differential portion of foreign source net capital gain (18/46 of $460) ............................................... − 180

Foreign source capital gain included in foreign source taxable income ............................................. $280

The total foreign source taxable income of W for purposes of recapture in 1985 is $1,000 ($720+$280). Under paragraph (c)(1) of this section, W is required to recapture $350 (the lesser of $350 or 50 percent of $1,000), and W's general limitation overall foreign loss account is reduced to zero. W's foreign tax credit limitation for income subject to the general limitation is $650/$1,500×$690 ((.46)(500+720)+(.28)(460)), or $299, instead of $1,000/$1,500×$690, or $460.

(d) *Recapture of overall foreign losses from dispositions under section 904(f)(3)*— (1) *In general.* If a taxpayer disposes of property used or held for use predominantly without the United States in a trade or business during a taxable year and that property generates foreign source taxable income subject to a sep-

arate limitation to which paragraph (a) of this section is applicable, (i) gain will be recognized on the disposition of such property, (ii) such gain will be treated as foreign source income subject to the same limitation as the income the property generated, and (iii) the applicable overall foreign loss account shall be recaptured as provided in paragraphs (d)(2), (d)(3), and (d)(4) of this section. See paragraph (d)(5) of this section for definitions.

(2) *Treatment of net capital gain.* If the gain from a disposition of property to which this paragraph (d) applies is treated as net capital gain, all references to such gain in paragraphs (d)(3) and (d)(4) of this section shall mean such gain as adjusted under paragraph (b) of this section. The amount by which the overall foreign loss account shall be reduced shall be determined from such adjusted gain.

(3) *Dispositions where gain is recognized irrespective of section 904(f)(3).* If a taxpayer recognizes foreign source gain subject to a separate limitation on the disposition of property described in paragraph (d)(1) of this section, and there is a balance in a taxpayer's overall foreign loss account that is attributable to a loss under such limitation after applying paragraph (c) of this section, an additional portion of such balance shall be recaptured in accordance with paragraphs (a) and (b) of this section. The amount recaptured shall be the lesser of such balance or 100 percent of the foreign source gain recognized on the disposition that was not previously recharacterized.

(4) *Dispositions in which gain would not otherwise be recognized*—(i) *Recognition of gain to the extent of the overall foreign loss account.* If a taxpayer makes a disposition of property described in paragraph (d)(1) of this section in which any amount of gain otherwise would not be recognized in the year of the disposition, and such property was used or held for use to generate foreign source taxable income subject to a separate limitation under which the taxpayer had a balance in its overall foreign loss account (including a balance that arose in the year of the disposition), the taxpayer shall recognize foreign source taxable income in an amount equal to the lesser of:

766

- Add.61 -

(A) The sum of the balance in the applicable overall foreign loss account (but only after such balance has been increased by amounts added to the account for the year of the disposition or has been reduced by amounts recaptured for the year of the disposition under paragraph (c) and paragraph (d)(3) of this section) plus the amount of any overall foreign loss that would be part of a net operating loss for the year of the disposition if gain from the disposition were not recognized under section 904(f)(3), plus the amount of any overall foreign loss that is part of a net operating loss carryover from a prior year, or

(B) The excess of the fair market value of such property over the taxpayer's adjusted basis in such property. The excess of the fair market value of such property over its adjusted basis shall be determined on an asset by asset basis. Losses from the disposition of an asset shall not be recognized. Any foreign source taxable income deemed received and recognized under this paragraph (d)(4)(i) will have the same character as if the property had been sold or exchanged in a taxable transaction and will constitute gain for all purposes.

(ii) *Basis adjustment.* The basis of the property received in an exchange to which this paragraph (d)(4) applies shall be increased by the amount of gain deemed recognized, in accordance with applicable sections of subchapters C (relating to corporate distributions and adjustments), K (relating to partners and partnerships), O (relating to gain or loss on the disposition of property), and P (relating to capital gains and losses). If the property to which this paragraph (d)(4) applies was transferred by gift, the basis of such property in the hands of the donor immediately preceding such gift shall be increased by the amount of the gain deemed recognized.

(iii) *Recapture of overall foreign loss to the extent of amount recognized.* The provisions of paragraphs (a) and (b) of this section shall be applied to the extent of 100 percent of the foreign source taxable income which is recognized under paragraph (d)(4)(i) of this section. However, amounts of foreign source gain that would not be recognized except by

application of section 904(f)(3) and paragraph (d)(4)(i) of this section, and which are treated as United States source gain by application of section 904(b)(3)(C) (prior to its removal by the Tax Reform Act of 1986) and paragraph (b)(1) of this section, shall reduce the overall foreign loss account (subject to the adjustments described in paragraph (d)(2) of this section) if such gain is net capital gain, notwithstanding the fact that such amounts would otherwise not be recaptured under the ordering rules in paragraph (b) of this section.

(iv) *Priorities among dispositions in which gain is deemed to be recognized.* If, in a single taxable year, a taxpayer makes more than one disposition to which this paragraph (d)(4) is applicable, the rules of this paragraph (d)(4) shall be applied to each disposition in succession starting with the disposition which occurred earliest, until the balance in the applicable overall foreign loss account is reduced to zero. If the taxpayer simultaneously makes more than one disposition to which this paragraph (d)(4) is applicable, the rules of paragraph (d)(4) shall be applied so that the balance in the applicable overall foreign loss account to be recaptured will be allocated pro rata among the assets in proportion to the excess of the fair market value of each asset over the adjusted basis of each asset.

(5) *Definitions*—(i) *Disposition.* A disposition to which this paragraph (d) applies includes a sale; exchange; distribution; gift; transfer upon the foreclosure of a security interest (but not a mere transfer of title to a creditor upon creation of a security interest or to a debtor upon termination of a security interest); involuntary conversion; contribution to a partnership, trust, or corporation; transfer at death; or any other transfer of property whether or not gain or loss is recognized under other provisions of the Code. However, a disposition to which this paragraph (d) applies does not include:

(A) A distribution or transfer of property to a domestic corporation described in section 381(a) (provided that paragraph (d)(6) of this section applies);

(B) A disposition of property which is not a material factor in the realization

of income by the taxpayer (as defined in paragraph (d)(5)(iv) of this section);

(C) A transaction in which gross income is not realized; or

(D) The entering into of a unitization or pooling agreement (as defined in §1.614–8(b)(6) of the regulations) containing a valid election under section 761(a)(2), and in which the source of the entire gain from any disposition of the interest created by the agreement would be determined to be foreign source under section 862(a)(5) if the disposition occurred presently.

(ii) *Property used in a trade or business.* Property is used in a trade or business if it is held for the principal purpose of promoting the present or future conduct of the trade or business. This generally includes property acquired and held in the ordinary course of a trade or business or otherwise held in a direct relationship to a trade or business. In determining whether an asset is held in a direct relationship to a trade or business, principal consideration shall be given to whether the asset is used in the trade or business. Property will be treated as held in a direct relationship to a trade or business if the property was acquired with funds generated by that trade or business or if income generated from the asset is available for use in that trade or business. Property used in a trade or business may be tangible or intangible, real or personal property. It includes property, such as equipment, which is subject to an allowance for depreciation under section 167 or cost recovery under section 168. Property may be considered used in a trade or business even if it is a capital asset in the hands of the taxpayer. However, stock of another corporation shall not be considered property used in a trade or business if a substantial investment motive exists for acquiring and holding the stock. On the other hand, stock acquired or held to assure a source of supply for a trade or business shall be considered property used in that trade or business. Inventory is generally not considered property used in a trade or business. However, when disposed of in a manner not in the ordinary course of a trade or business, inventory will be considered property used in the trade or business. A partnership interest will

be treated as property used in a trade or business if the underlying assets of the partnership would be property used in a trade or business. For purposes of section 904(f) (3) and §1.904(f)–2 (d) (1) and (5), a disposition of a partnership interest to which this section applies will be treated as a disposition of a proportionate share of each of the assets of the partnership. For purposes of allocating the purchase price of the interest and the seller's basis in the interest to those assets, the principles of §1.751–1(a) will apply.

(iii) *Property used predominantly outside the United States.* Property will be considered used predominantly outside the United States if for a 3-year period ending on the date of the disposition (or, if shorter, the period during which the property has been used in the trade or business) such property was located outside the United States more than 50 percent of the time. An aircraft, railroad rolling stock, vessel, motor vehicle, container, or other property used for transportation purposes is deemed to be used predominantly outside the United States if, during the 3-year (or shorter) period, either such property is located outside the United States more than 50 percent of the time or more than 50 percent of the miles traversed in the use of such property are traversed outside the United States.

(iv) *Property which is a material factor in the realization of income.* For purposes of this section, property used in a trade or business will be considered a material factor in the realization of income unless the taxpayer establishes that it is not (or, if the taxpayer did not realize income from the trade or business in the taxable year, would not be expected to be) necessary to the realization of income by the taxpayer.

(6) *Carryover of overall foreign loss accounts in a corporate acquisition to which section 381(a) applies.* In the case of a distribution or transfer described in section 381(a), an overall foreign loss account of the distributing or transferor corporation shall be treated as an overall foreign loss account of the acquiring or transferee corporation as of the close of the date of the distribution or transfer. If the transferee corporation had an overall foreign loss account under the same separate limitation

**Internal Revenue Service, Treasury**

§ 1.904(f)–2

prior to the distribution or transfer, the balance in the transferor's account must be added to the transferee's account. If not, the transferee must adopt the transferor's overall foreign loss account. An overall foreign loss of the transferor will be treated as incurred by the transferee in the year prior to the year of the transfer.

(7) *Illustrations.* The rules of this paragraph (d) are illustrated by the following examples which assume that the United States corporate tax rate is 50 percent (unless otherwise stated). For purposes of these examples, none of the foreign source gains are treated as net capital gains (unless so stated).

*Example 1.* X Corporation has a balance in its general limitation overall foreign loss account of $600 at the close of its taxable year ending December 31, 1984. In 1985, X sells assets used predominantly outside the United States in a trade or business and recognizes $1,000 of gain on the sale under section 1001. This gain is subject to the general limitation. This sale is a disposition within the meaning of paragraph (d)(5)(i) of this section, and to which this paragraph (d) applies. X has no other foreign source taxable income in 1985 and has $1,000 of United States source taxable income. Under paragraph (c), X is required to recapture $500 (the lesser of the balance in X's general limitation overall foreign loss account ($600) or 50 percent of $1,000) of its overall foreign loss account. The balance in X's general limitation overall foreign loss account is reduced to $100 in accordance with §1.904(f)-1(e)(2). In addition, under paragraph (d)(3) of this section, X is required to recapture $100 (the lesser of the remaining balance in its general limitation overall foreign loss account ($100) or 100 percent of its foreign source taxable income recognized on such disposition that has not been previously recharacterized ($500)). The total amount recaptured is $600. X's foreign tax credit limitation for income subject to the general limitation in 1985 is $200 ($400/ $2,000×$1,000) instead of $500 ($1,000/ $2,000×$1,000). The balance in X's general limitation overall foreign loss account is reduced to zero in accordance with §1.904(f)- 1(e)(2).

*Example 2.* On December 31, 1984, Y Corporation has a balance in its general limitation overall foreign loss account of $1,500. In 1985, Y has $500 of United States source taxable income and $200 of foreign source taxable income subject to the general limitation. Y's foreign source taxable income is from the sale of property used predominantly outside of the United States in a trade or business. This sale is a disposition to which this paragraph (d) is applicable. In

1985, Y also transferred property used predominantly outside of the United States in a trade or business to another corporation. Under section 351, no gain was recognized on this transfer. Such property had been used to generate foreign source taxable income subject to the general limitation. The excess of the fair market value of the property transferred over Y's adjusted basis in such property was $2,000. In accordance with paragraph (c) of this section, Y is required to recapture $100 (the lesser of $1,500, the amount in Y's general limitation overall foreign loss account, or 50 percent of $200, the amount of general limitation foreign source taxable income for the current year) of its general limitation overall foreign loss. Y is then required to recapture an additional $100 of its general limitation overall foreign loss account under paragraph (d)(3) of this section out of the remaining gain recognized on the sale of assets, because 100 percent of such gain is subject to recapture. The balance in Y's general limitation overall foreign loss account is reduced to $1,300 in accordance with §1.904(f)-1(e)(2). Y corporation is then required to recognize $1,300 of foreign source taxable income on its section 351 transfer under paragraph (d)(4) of this section. The remaining $700 of potential gain associated with the section 351 transfer is not recognized. Under paragraph (d)(4), 100 percent of the $1,300 is recharacterized as United States source taxable income, and Y's general limitation overall foreign loss account is reduced to zero. Y's entire taxable income for 1985 is:

| | |
|---|---|
| U.S. source taxable income ................................. | $500 |
| Foreign source taxable income subject to the general limitation that is recharacterized as U.S. source income by paragraphs (c) and (d)(3) of this section ......................................... | 200 |
| Gain recognized under section 904(f)(3) and paragraph (d)(4) of this section, and recharacterized as U.S. source income ............. | 1,300 |
| Total ....................................................... | $2,000 |

Y's foreign tax credit limitation for 1985 for income subject to the general limitation is $0 ($0/$2,000×$1,000) instead of $100 ($200/ $700×$350).

*Example 3.* W Corporation is a calendar year domestic corporation with foreign branch operations in country C. As of December 31, 1984, W has no overall foreign loss accounts and has no net operating loss carryovers. W's entire taxable income in 1985 is:

| | |
|---|---|
| U.S. source taxable income ................................. | $800 |
| Foreign source taxable income (loss) subject to the general limitation ......................................... | ($1,000) |

W cannot carry back its 1985 NOL to any earlier year. As of December 31, 1985, W therefore has $800 in its general limitation overall foreign loss account. In 1986, W earns $400 United States source taxable income and has an additional $1,000 loss from the operations

769

of the foreign branch. Income in the loss category would be subject to the general limitation. Also in 1986, W disposes of property used predominantly outside the United States in a trade or business. Such property generated income subject to the general limitation. The excess of the property's fair market value over its adjusted basis is $3,000. The disposition is of a type described in § 1.904 (f)–2(d)(4)(i). W has no other income in 1986. Under § 1.904 (f)–2(d)(4)(i), W is required to recognize foreign source taxable income on the disposition in an amount equal to the lesser of $2,000 ($800 (the balance in the general limitation overall foreign loss account as of 1985) + $400 (the increase in the general limitation overall foreign loss account attributable to the disposition year) + $600 (the general limitation overall foreign loss that is part of the NOL from 1986) + $200 (the general limitation overall foreign loss that is part of the NOL from 1985)) or $3,000. The $2,000 foreign source income required to be recognized under section 904(f)(3) is reduced to $1,200 by the remaining $600 loss in 1986 and the $200 net operating loss carried forward from 1985. This $1,200 of income is subject to the general limitation. In computing foreign tax credit limitation for general limitation income, the $1,200 of foreign source income is treated as United States source income and, therefore, W's foreign tax credit limitation for income subject to the general limitation is zero. W's overall foreign loss account is reduced to zero.

*Example 4.* Z Corporation has a balance in its FORI overall foreign loss account of $1,500 at the end of its taxable year 1980. In 1981, Z has $1,600 of foreign oil related income subject to the separate limitation for FORI income and no United States source income. In addition, in 1981, Z makes two dispositions of property used predominantly outside the United States in a trade or business on which no gain was recognized. Such property generated foreign oil related income. The excess of the fair market value of the property transferred in the first disposition over Z's adjusted basis in such property is $575. The excess of the fair market value of the property transferred in the second disposition over Z's adjusted basis in such property is $1,000. Under paragraph (c) of this section, Z is required to recapture $800 (the lesser of 50 percent of its foreign oil related income of $1,600 or the balance ($1,500) in its FORI overall foreign loss account) of its foreign oil related loss. In accordance with paragraphs (d)(4) (i) and (iv) of this section, Z is required to recognize foreign oil related income in the amount of $575 on the first disposition and, since the foreign oil related loss account is now reduced by $1,375 (the $800 and $575 amounts previously recaptured), Z is required to recognize foreign oil related income in the amount of $125 on the second disposition. In accordance with para-

graph (d)(4)(iii) of this section, the entire amount recognized is treated as United States source income and the balance in the FORI overall foreign loss account is reduced to zero under § 1.904 (f)–1 (e)(2). Z's foreign tax credit limitation for FORI is $400 ($800/$2,300×$1,150) instead of $800 ($1,600/$1,600×$800).

*Example 5.* The facts are the same as in example 4, except that the gain from the two dispositions of property is treated as net capital gain and the United States corporate tax rate is assumed to be 46 percent. As in example 4, Z is required to recapture $800 of its foreign oil related loss from its 1981 ordinary foreign oil related income. In accordance with paragraph (d)(4) (i) and (iv) of this section, Z is first required to recognize foreign oil related income (which is net capital gain) on the first disposition in the amount of $575. Under paragraphs (b) and (d) (2) of this section, this net capital gain is adjusted by subtracting the rate differential portion of such gain from the total amount of such gain to determine the amount by which the foreign oil related loss account is reduced, which is $350 ($575 − ($575×18/46)). The balance remaining in Z's foreign oil related loss account after this step is $350. Therefore, this process will be repeated, in accordance with paragraph (d)(4)(iv) of this section, to recapture that remaining balance out of the gain deemed recognized on the second disposition, resulting in reduction of the foreign oil related loss account to zero and net capital gain required to be recognized from the second disposition in the amount of $575, which must also be adjusted by subtracting the rate differential portion to determine the amount by which the foreign oil related loss account is reduced (which is $350). The $575 of net capital gain from each disposition is recharacterized as United States source net capital gain. Z's section 907 (b) foreign tax credit limitation is the same as in example 4, and Z has $1,150 ($575+$575) of United States source net capital gain.

[T.D. 8153, 52 FR 31997, Aug. 25, 1987; 52 FR 43434, Nov. 12, 1987]

## § 1.904(f)–3 Allocation of net operating losses and net capital losses.

(a) *Allocation of net operating loss carrybacks and carryovers that include overall foreign losses.* If a taxpayer sustains an overall foreign loss that is part of a net operating loss for the year, then, in carrying such net operating loss back to an earlier year or forward to a later year in accordance with section 172 (or § 1.1502–21(b) (or §§ 1.1502–21A(b) and 1.1502–79A(a), as appropriate)), the portion, if any, of the net operating loss attributable to a

U.S. Source taxable income ...................$1,000
Foreign source taxable income (loss)
  subject to the general limitation
     .......................................................... ($500)
Foreign source taxable income subject
  to the passive interest limitation
     ..........................................................$200

X has a general limitation overall foreign loss of $500 for 1983 in accordance with paragraph (c) (1) of this section. Since the general limitation overall foreign loss is not considered to offset income under the separate limitation for passive interest income, it therefore offsets $500 of United States source taxable income. This amount is added to X's general limitation overall foreign loss account at the end of 1983 in accordance with paragraphs (c) (1) and (d) (1) of this section.

*Example 2.* Y Corporation is a domestic corporation with foreign branch operations in Country C. Y's taxable income and losses for its taxable year 1982 are as follows:

U.S. source taxable income ...................$1,000
Foreign source taxable income (loss)
  subject to the general limitation
     .......................................................... ($500)
Foreign source taxable income subject
  to the passive interest limitation
     ..........................................................$250

For its pre-1983 taxable years, Y filed its returns determining its overall foreign losses on a combined basis. In accordance with paragraphs (a) and (c) (1) of this section, Y may net the foreign source income and loss before offsetting the United States source income. Y therefore has a section 904(d)(1)(A-C) overall foreign loss account of $250 at the end of 1982.

*Example 3.* X Corporation is a domestic corporation with foreign branch operations in country C. For its taxable year 1985, X has taxable income (loss) determined as follows:

U.S. source taxable income .......................$200
Foreign source taxable income (loss)
  subject to the general limitation
     ..........................................................($1,000)
Foreign source taxable income (loss)
  subject to the passive limitation
     .......................................................... $1,800

X has a general limitation overall foreign loss of $1,000 in accordance with paragraph (c)(1) of this section. The overall foreign loss offsets $200 of United States source taxable income in 1985 and, therefore, X has a $200 general limitation overall foreign loss account at the end of 1985. The remaining $800 general limitation loss is offset by the passive interest limitation income in 1985 so that X has no net operating loss carryover that is attributable to the general limitation loss and no additional amount attributable to that loss will be added to the overall foreign loss account in 1985 or in any other year.

(g) [Reserved] For further guidance, see §1.904(f)–1T(g).

[T.D. 8153, 52 FR 31994, Aug. 25, 1987; 52 FR 43434, Nov. 12, 1987, as amended by T.D. 9371, 72 FR 72597, Dec. 21, 2007]

**§ 1.904(f)–1T   Overall foreign loss and the overall foreign loss account (temporary).**

(a)(1) [Reserved] For further guidance, see §1.904(f)–1(a)(1).

(2) *Application to post-1986 taxable years.* The principles of §§1.904(f)–1 through 1.904(f)–5 shall apply to overall foreign loss sustained in taxable years beginning after December 31, 1986, modified so as to take into account the effect of statutory amendments.

(b) through (d)(3) [Reserved] For further guidance, see §1.904(f)–1(b) through (d)(3).

(d)(4) *Adjustments for capital gains and losses.* If a taxpayer has capital gains or losses, the taxpayer shall make adjustments to such capital gains and losses to the extent required under section 904(b)(2) and §1.904(b)–1 before applying the provisions of §1.904(f)–1T. See §1.904(b)–1(h).

(e) and (f) [Reserved] For further guidance, see §1.904(f)–1(e) and (f).

(g) *Effective/applicability date.* This section applies to taxable years beginning after *December 21, 2007.*

(h) *Expiration date.* The applicability of this section expires on December 20, 2010.

[T.D. 9371, 72 FR 72597, Dec. 21, 2007]

**§ 1.904(f)–2   Recapture of overall foreign losses.**

(a) *In general.* A taxpayer shall be required to recapture an overall foreign loss as provided in this section. Recapture is accomplished by treating as United States source income a portion of the taxpayer's foreign source taxable income of the same limitation as the foreign source loss that resulted in an overall foreign loss account. As a result, if the taxpayer elects the benefits of section 901 or section 936, the taxpayer's foreign tax credit limitation with respect to such income is decreased. As provided in §1.904 (f)–1(e)(2), the balance in a taxpayer's overall foreign loss account is reduced by the amount of loss recaptured. Recapture continues until such time as the

amount of foreign source taxable income recharacterized as United States source income equals the amount in the overall foreign loss account. As provided in § 1.904 (f)–1(e)(2), the balance in an overall foreign loss account is reduced at the end of each taxable year by the amount of the loss recaptured during that taxable year. Regardless of whether recapture occurs in a year in which a taxpayer elects the benefits of section 901 or in a year in which a taxpayer deducts its foreign taxes under section 164, the overall foreign loss account is recaptured only to the extent of foreign source taxable income remaining after applying the appropriate section 904(b) adjustments, if any, as provided in paragraph (b) of this section.

(b) *Determination of taxable income from sources without the United States for purposes of recapture*—(1) *In general.* For purposes of determining the amount of an overall foreign loss subject to recapture, the taxpayer's taxable income from sources without the United States shall be computed with respect to each of the separate limitations described in § 1.904 (f)–1(c)(2) in accordance with the rules set forth in § 1.904 (f)–1(c) (1) and (3). This computation is made without taking into account foreign source taxable income (and deductions properly allocated and apportioned thereto) subject to other separate limitations. Before applying the recapture rules to foreign source taxable income, the following provisions shall be applied to such income in the following order:

(i) Former section 904(b)(3)(C) (prior to its removal by the Tax Reform Act of 1986) and the regulations thereunder shall be applied to treat certain foreign source gain as United States source gain; and

(ii) Section 904(b)(2) and the regulations thereunder shall be applied to make adjustments in the foreign tax credit limitation fraction for certain capital gains and losses.

(c) *Section 904(f)(1) recapture*—(1) [Reserved] For further guidance, see § 1.904(f)–2T(c)(1).

(2) *Election to recapture more of the overall foreign loss than is required under paragraph (c)(1).* In a year in which a taxpayer elects the benefits of sections 901 or 936, a taxpayer may make an an-

nual revocable election to recapture a greater portion of the balance in an overall foreign loss account than is required to be recaptured under paragraph (c)(1) of this section. A taxpayer may make such an election or amend a prior election by attaching a statement to its annual Form 1116 or 1118. If an amendment is made to a prior year's election, an amended tax return should be filed. The statement attached to the Form 1116 or 1118 must indicate the percentage and dollar amount of the taxpayer's foreign source taxable income that is being recharacterized as United States source income and the percentage and dollar amount of the balance (both before and after recapture) in the overall foreign loss account that is being recaptured. Except for the special recapture rules for section 936 corporations and for recapture of pre-1983 overall foreign losses determined on a combined basis, the taxpayer that elects to credit its foreign taxes may not elect to recapture an amount in excess of the taxpayer's foreign source taxable income subject to the same limitation as the loss that resulted in the overall foreign loss account.

(3) *Special rule for recapture of losses incurred prior to section 936 election.* If a corporation elects the application of section 936 and at the time of the election has a balance in any overall foreign loss account, such losses will be recaptured from the possessions source income of the electing section 936 corporation that qualifies for the section 936 credit, including qualified possession source investment income as defined in section 936(d)(2), even though the overall foreign loss to be recaptured may not be attributable to a loss in an income category of a type that would meet the definition of qualified possession source investment income. For purposes of recapturing an overall foreign loss incurred by a consolidated group including a corporation that subsequently elects to use section 936, the electing section 936 corporation's possession source income that qualifies for the section 936 credit, including qualified possession source investment income, shall be used to recapture the section 936 corporation's share of previously incurred overall foreign loss

807

- Add.67 -

accounts. Rules for determining the section 936 corporation's share of the consolidated groups overall foreign loss accounts are provided in § 1.1502–9(c).

(4) *Recapture of pre-1983 overall foreign losses determined on a combined basis.* If a taxpayer computed its overall foreign losses on a combined basis in accordance with § 1.904(f)–1(c)(1) for taxable years beginning before January 1, 1983, any losses recaptured in taxable years beginning after December 31, 1982, shall be recaptured from income subject to the general limitation, subject to the rules in § 1.904(f)–6 (a) and (b). Ordering rules for recapture of these losses are provided in § 1.904(f)–6(c).

(5) *Illustrations.* The rules of this paragraph (c) are illustrated by the following examples, all of which assume a United States corporate tax rate of 50 percent unless otherwise stated.

*Example 1.* X Corporation is a domestic corporation that does business in the United States and abroad. On December 31, 1983, the balance in X's general limitation overall foreign loss account is $600, all of which is attributable to a loss incurred in 1983. For 1984, X has United States source income of $500 and foreign source taxable income subject to the general limitation of $500. For 1984, X pays $200 in foreign taxes and elects section 901. Under paragraph (c)(1) of this section, X is required to recapture $250 (the lesser of $600 or 50 percent of $500) of its overall foreign loss. As a consequence, X's foreign tax credit limitation under the general limitation is $250/$1,000×$500, or $125, instead of $500/$1,000×$500, or $250. The balance in X's general limitation overall foreign loss account is reduced by $250 in accordance with § 1.904(f)–1(e)(2).

*Example 2.* The facts are the same as in example 1 except that X makes an election to recapture its overall foreign loss to the extent of 80 percent of its foreign source taxable income subject to the general limitation (or $400) in accordance with paragraph (c)(2) of this section. As a result of recapture, X's 1984 foreign tax credit limitation for income subject to the general limitation is $100/$1,000×$500, or $50, instead of $500/$1,000×$500, or $250. X's general limitation overall foreign loss account is reduced by $400 in accordance with § 1.904(f)–1(e)(2).

*Example 3.* The facts are the same as in example 1 except that X does not elect the benefits of section 901 in 1984 and instead deducts its foreign taxes paid. In 1984, X recaptures $300 of its overall foreign loss, the difference between X's foreign source taxable income of $500 and $200 of foreign taxes paid. The balance in X's general limitation overall

foreign loss account is reduced by $300 in accordance with § 1.904(f)–1(e)(2).

*Example 4.* [Reserved] For further guidance see § 1.904(f)–2T(c)(5)

*Example 5.* On December 31, 1980, V, a domestic corporation that does business in the United States and abroad, has a balance in its section 904(d)(1)(A-C) overall foreign loss account of $600. V also has a balance in its FORI limitation overall foreign loss account of $900. For 1981, V has foreign source taxable income subject to the general limitation of $500 and $500 of United States source income. V also has foreign source taxable income subject to the FORI limitation of $800. V is required to recapture $250 of its section 904(d)(1)(A-C) overall foreign loss account (the lesser of $600 or 50% of $500) and its general limitation foreign tax credit limitation is $250/$1,800×$900, or $125 instead of $500/$1,800×$900, or $250. V is also required to recapture $400 of its FORI limitation overall foreign loss account (the lesser of $900 or 50% of $800). V's foreign tax credit limitation for FORI is $400/$1,800×$900, or $200, instead of $800/$1,800×$900, or $400. The balance in V's FORI limitation overall foreign loss account is reduced to $500 and the balance in V's section 904(d)(1)(A-C) account is reduced to $350, in accordance with § 1.904(f)–1(e)(2).

*Example 6.* This example assumes a United States corporate tax rate of 46 percent (under section 11(b)) and an alternative rate of tax under section 1201(a) of 28 percent. W is a domestic corporation that does business in the United States and abroad. On December 31, 1984, W has $350 in its general limitation overall foreign loss account. For 1985, W has $500 of United States source taxable income, and has foreign source income subject to the general limitation as follows:

| | |
|---|---|
| Foreign source taxable income other than net capital gain | $720 |
| Foreign source net capital gain | $460 |

Under paragraph (b)(2) of this section, foreign source taxable income for purposes of recapture includes foreign source capital gain net income, reduced, under section 904(b)(2), by the rate differential portion of foreign source net capital gain, which adjusts for the reduced tax rate for net capital gain under section 1201(a):

| | |
|---|---|
| Foreign source capital gain net income | $460 |
| Rate differential portion of foreign source net capital gain (18/46 of $460) | − 180 |
| Foreign source capital gain included in foreign source taxable income | $280 |

The total foreign source taxable income of W for purposes of recapture in 1985 is $1,000 ($720+$280). Under paragraph (c)(1) of this section, W is required to recapture $350 (the lesser of $350 or 50 percent of $1,000), and W's general limitation overall foreign loss account is reduced to zero. W's foreign tax credit limitation for income subject to the general limitation is $650/$1,500×$690 ((.46)

(500+720)+(.28) 460)), or $299, instead of $1,000/ $1,500×$690, or $460.

(d) *Recapture of overall foreign losses from dispositions under section 904(f)(3)*— (1) *In general.* If a taxpayer disposes of property used or held for use predominantly without the United States in a trade or business during a taxable year and that property generates foreign source taxable income subject to a separate limitation to which paragraph (a) of this section is applicable, (i) gain will be recognized on the disposition of such property, (ii) such gain will be treated as foreign source income subject to the same limitation as the income that property generated, and (iii) the applicable overall foreign loss account shall be recaptured as provided in paragraphs (d)(2), (d)(3), and (d)(4) of this section. See paragraph (d)(5) of this section for definitions.

(2) *Treatment of net capital gain.* If the gain from a disposition of property to which this paragraph (d) applies is treated as net capital gain, all references to such gain in paragraphs (d)(3) and (d)(4) of this section shall mean such gain as adjusted under paragraph (b) of this section. The amount by which the overall foreign loss account shall be reduced shall be determined from such adjusted gain.

(3) *Dispositions where gain is recognized irrespective of section 904(f)(3).* If a taxpayer recognizes foreign source gain subject to a separate limitation on the disposition of property described in paragraph (d)(1) of this section, and there is a balance in a taxpayer's overall foreign loss account that is attributable to a loss under such limitation after applying paragraph (c) of this section, an additional portion of such balance shall be recaptured in accordance with paragraphs (a) and (b) of this section. The amount recaptured shall be the lesser of such balance or 100 percent of the foreign source gain recognized on the disposition that was not previously recharacterized.

(4) *Dispositions in which gain would not otherwise be recognized*—(1) *Recognition of gain to the extent of the overall foreign loss account.* If a taxpayer makes a disposition of property described in paragraph (d)(1) of this section in which any amount of gain otherwise would not be recognized in the year of the disposition, and such property was used or held for use to generate foreign source taxable income subject to a separate limitation under which the taxpayer had a balance in its overall foreign loss account (including a balance that arose in the year of the disposition), the taxpayer shall recognize foreign source taxable income in an amount equal to the lesser of:

(A) The sum of the balance in the applicable overall foreign loss account (but only after such balance has been increased by amounts added to the account for the year of the disposition or has been reduced by amounts recaptured for the year of the disposition under paragraph (c) and paragraph (d)(3) of this section) plus the amount of any overall foreign loss that would be part of a net operating loss for the year of the disposition if gain from the disposition were not recognized under section 904(f)(3), plus the amount of any overall foreign loss that is part of a net operating loss carryover from a prior year, or

(B) The excess of the fair market value of such property over the taxpayer's adjusted basis in such property.

The excess of the fair market value of such property over its adjusted basis shall be determined on an asset by asset basis. Losses from the disposition of an asset shall not be recognized. Any foreign source taxable income deemed received and recognized under this paragraph (d)(4)(i) will have the same character as if the property had been sold or exchanged in a taxable transaction and will constitute gain for all purposes.

(ii) *Basis adjustment.* The basis of the property received in an exchange to which this paragraph (d)(4) applies shall be increased by the amount of gain deemed recognized, in accordance with applicable sections of subchapters C (relating to corporate distributions and adjustments), K (relating to partners and partnerships), O (relating to gain or loss on the disposition of property), and P (relating to capital gains and losses). If the property to which

809

this paragraph (d)(4) applies was transferred by gift, the basis of such property in the hands of the donor immediately preceding such gift shall be increased by the amount of the gain deemed recognized.

(iii) *Recapture of overall foreign loss to the extent of amount recognized.* The provisions of paragraphs (a) and (b) of this section shall be applied to the extent of 100 percent of the foreign source taxable income which is recognized under paragraph (d)(4)(i) of this section. However, amounts of foreign source gain that would not be recognized except by application of section 904(f)(3) and paragraph (d)(4)(i) of this section, and which are treated as United States source gain by application of section 904(b)(3)(C) (prior to its removal by the Tax Reform Act of 1986) and paragraph (b)(1) of this section, shall reduce the overall foreign loss account (subject to the adjustments described in paragraph (d)(2) of this section) if such gain is net capital gain, notwithstanding the fact that such amounts would otherwise not be recaptured under the ordering rules in paragraph (b) of this section.

(iv) *Priorities among dispositions in which gain is deemed to be recognized.* If, in a single taxable year, a taxpayer makes more than one disposition to which this paragraph (d)(4) is applicable, the rules of this paragraph (d)(4) shall be applied to each disposition in succession starting with the disposition which occurred earliest, until the balance in the applicable overall foreign loss account is reduced to zero. If the taxpayer simultaneously makes more than one disposition to which this paragraph (d)(4) is applicable, the rules of paragraph (d)(4) shall be applied so that the balance in the applicable overall foreign loss account to be recaptured will be allocated pro rata among the assets in proportion to the excess of the fair market value of each asset over the adjusted basis of each asset.

(5) *Definitions—*(i) *Disposition.* A disposition to which this paragraph (d) applies includes a sale; exchange; distribution; gift; transfer upon the foreclosure of a security interest (but not a mere transfer of title to a creditor upon creation of a security interest or to a debtor upon termination of a security interest); involuntary conversion; contribution to a partnership, trust, or corporation; transfer at death; or any other transfer of property whether or not gain or loss is recognized under other provisions of the Code. However, a disposition to which this paragraph (d) applies does not include:

(A) A distribution or transfer of property to a domestic corporation described in section 381 (a) (provided that paragraph (d)(6) of this section applies);

(B) A disposition of property which is not a material factor in the realization of income by the taxpayer (as defined in paragraph (d)(5)(iv) of this section);

(C) A transaction in which gross income is not realized; or

(D) The entering into of a unitization or pooling agreement (as defined in §1.614–8(b)(6) of the regulations) containing a valid election under section 761(a)(2), and in which the source of the entire gain from any disposition of the interest created by the agreement would be determined to be foreign source under section 862(a)(5) if the disposition occurred presently.

(ii) *Property used in a trade or business.* Property is used in a trade or business if it is held for the principal purpose of promoting the present or future conduct of the trade or business. This generally includes property acquired and held in the ordinary course of a trade or business or otherwise held in a direct relationship to a trade or business. In determining whether an asset is held in a direct relationship to a trade or business, principal consideration shall be given to whether the asset is used in the trade or business. Property will be treated as held in a direct relationship to a trade or business if the property was acquired with funds generated by that trade or business or if income generated from the asset is available for use in that trade or business. Property used in a trade or business may be tangible or intangible, real or personal property. It includes property, such as equipment, which is subject to an allowance for depreciation under section 167 or cost recovery under section 168. Property may be considered used in a trade or business even if it is a capital asset in the hands

810

of the taxpayer. However, stock of another corporation shall not be considered property used in a trade or business if a substantial investment motive exists for acquiring and holding the stock. On the other hand, stock acquired or held to assure a source of supply for a trade or business shall be considered property used in that trade or business. Inventory is generally not considered property used in a trade or business. However, when disposed of in a manner not in the ordinary course of a trade or business, inventory will be considered property used in the trade or business. A partnership interest will be treated as property used in a trade or business if the underlying assets of the partnership would be property used in a trade or business. For purposes of section 904(f) (3) and §1.904(f)–2 (d) (1) and (5), a disposition of a partnership interest to which this section applies will be treated as a disposition of a proportionate share of each of the assets of the partnership. For purposes of allocating the purchase price of the interest and the seller's basis in the interest to those assets, the principles of §1.751–1(a) will apply.

(iii) *Property used predominantly outside the United States.* Property will be considered used predominantly outside the United States if for a 3-year period ending on the date of the disposition (or, if shorter, the period during which the property has been used in the trade or business) such property was located outside the United States more than 50 percent of the time. An aircraft, railroad rolling stock, vessel, motor vehicle, container, or other property used for transportation purposes is deemed to be used predominantly outside the United States if, during the 3-year (or shorter) period, either such property is located outside the United States more than 50 percent of the time or more than 50 percent of the miles traversed in the use of such property are traversed outside the United States.

(iv) *Property which is a material factor in the realization of income.* For purposes of this section, property used in a trade or business will be considered a material factor in the realization of income unless the taxpayer establishes that it is not (or, if the taxpayer did not realize income from the trade or business

in the taxable year, would not be expected to be) necessary to the realization of income by the taxpayer.

(6) *Carryover of overall foreign loss accounts in a corporate acquisition to which section 381(a) applies.* In the case of a distribution or transfer described in section 381(a), an overall foreign loss account of the distributing or transferor corporation shall be treated as an overall foreign loss account of the acquiring or transferee corporation as of the close of the date of the distribution or transfer. If the transferee corporation had an overall foreign loss account under the same separate limitation prior to the distribution or transfer, the balance in the transferor's account must be added to the transferee's account. If not, the transferee must adopt the transferor's overall foreign loss account. An overall foreign loss of the transferor will be treated as incurred by the transferee in the year prior to the year of the transfer.

(7) *Illustrations.* The rules of this paragraph (d) are illustrated by the following examples which assume that the United States corporate tax rate is 50 percent (unless otherwise stated). For purposes of these examples, none of the foreign source gains are treated as net capital gains (unless so stated).

*Example 1.* X Corporation has a balance in its general limitation overall foreign loss account of $600 at the close of its taxable year ending December 31, 1984. In 1985, X sells assets used predominantly outside the United States in a trade or business and recognizes $1,000 of gain on the sale under section 1001. This gain is subject to the general limitation. This sale is a disposition within the meaning of paragraph (d)(5)(i) of this section, and to which this paragraph (d) applies. X has no other foreign source taxable income in 1985 and has $1,000 of United States source taxable income. Under paragraph (c), X is required to recapture $500 (the lesser of the balance in X's general limitation overall foreign loss account ($600) or 50 percent of $1,000) of its overall foreign loss account. The balance in X's general limitation overall foreign loss account is reduced to $100 in accordance with §1.904(f)–1(c)(2). In addition, under paragraph (d)(3) of this section, X is required to recapture $100 (the lesser of the remaining balance in its general limitation overall foreign loss account ($100) or 100 percent of its foreign source taxable income recognized on such disposition that has not been previously recharacterized ($500)). The total amount recaptured is $600. X's foreign

§ 1.904(f)–2                                                    26 CFR Ch. I (4–1–09 Edition)

tax credit limitation for income subject to the general limitation in 1985 is $200 ($400/$2,000×$1,000) instead of $500 ($1,000/$2,000×$1,000). The balance in X's general limitation overall foreign loss account is reduced to zero in accordance with §1.904(f)–1(e)(2).

*Example 2.* On December 31, 1984, Y Corporation has a balance in its general limitation overall foreign loss account of $1,500. In 1985, Y has $500 of United States source taxable income and $200 of foreign source taxable income subject to the general limitation. Y's foreign source taxable income is from the sale of property used predominantly outside of the United States in a trade or business. This sale is a disposition to which this paragraph (d) is applicable. In 1985, Y also transferred property used predominantly outside of the United States in a trade or business to another corporation. Under section 351, no gain was recognized on this transfer. Such property had been used to generate foreign source taxable income subject to the general limitation. The excess of the fair market value of the property transferred over Y's adjusted basis in such property was $2,000. In accordance with paragraph (c) of this section, Y is required to recapture $100 (the lesser of $1,500, the amount in Y's general limitation overall foreign loss account, or 50 percent of $200, the amount of general limitation foreign source taxable income for the current year) of its general limitation overall foreign loss. Y is then required to recapture an additional $100 of its general limitation overall foreign loss account under paragraph (d)(3) of this section out of the remaining gain recognized on the sale of assets, because 100 percent of such gain is subject to recapture. The balance in Y's general limitation overall foreign loss account is reduced to $1,300 in accordance with §1.904(f)–1(e)(2). Y corporation is then required to recognize $1,300 of foreign source taxable income on its section 351 transfer under paragraph (d)(4) of this section. The remaining $700 of potential gain associated with the section 351 transfer is not recognized. Under paragraph (d)(4), 100 percent of the $1,300 is recharacterized as United States source taxable income, and Y's general limitation overall foreign loss account is reduced to zero. Y's entire taxable income for 1985 is:

| | |
|---|---:|
| U.S. source taxable income | $500 |
| Foreign source taxable income subject to the general limitation that is recharacterized as U.S. source income by paragraphs (c) and (d)(3) of this section | 200 |
| Gain recognized under section 904(f)(3) and paragraph (d)(4) of this section, and recharacterized as U.S. source income | 1,300 |
| Total | $2,000 |

Y's foreign tax credit limitation for 1985 for income subject to the general limitation is

$0 ($0/$2,000×$1,000) instead of $100 ($200/$700×$350).

*Example 3.* W Corporation is a calendar year domestic corporation with foreign branch operations in country C. As of December 31, 1984, W has no foreign loss accounts and has no net operating loss carryovers. W's entire taxable income in 1985 is:

| | |
|---|---:|
| U.S. source taxable income | $800 |
| Foreign source taxable income (loss) subject to the general limitation | ($1,000) |

W cannot carry back its 1985 NOL to any earlier year. As of December 31, 1985, W therefore has $800 in its general limitation overall foreign loss account. In 1986, W earns $400 United States source taxable income and has an additional $1,000 loss from the operations of the foreign branch. Income in the loss category would be subject to the general limitation. Also in 1986, W disposes of property used predominately outside the United States in a trade or business. Such property generated income subject to the general limitation. The excess of the property's fair market value over its adjusted basis is $3,000. The disposition is of a type described in §1.904 (f)–2(d)(4)(i). W has no other income in 1986. Under §1.904 (f)–2(d)(4)(i), W is required to recognize foreign source taxable income on the disposition in an amount equal to the lesser of $2,000 ($800 (the balance in the general limitation overall foreign loss account as of 1985) + $400 (the increase in the general limitation overall foreign loss account attributable to the disposition from 1986) + $600 (the general limitation overall foreign loss that is part of the NOL from 1986) + $200 (the general limitation overall foreign loss that is part of the NOL from 1985)) or $3,000. The $2,000 foreign source income required to be recognized under section 904(f)(3) is reduced to $1,200 by the remaining $600 loss in 1986 and the $200 net operating loss carried forward from 1985. This $1,200 of income is subject to the general limitation. In computing foreign tax credit limitation for general limitation income, the $1,200 of foreign source income is treated as United States source income and, therefore, W's foreign tax credit limitation for income subject to the general limitation is zero. W's overall foreign loss account is reduced to zero.

*Example 4.* Z Corporation has a balance in its FORI overall foreign loss account of $1,500 at the end of its taxable year 1980. In 1981, Z has $1,600 of foreign oil related income subject to the separate limitation for FORI income and no United States source income. In addition, in 1981, Z makes two dispositions of property used predominantly outside the United States in a trade or business on which no gain was recognized. Such property generated foreign oil related income. The excess of the fair market value of

812

- Add.72 -

**Internal Revenue Service, Treasury**                    **§ 1.904(f)–2T**

the property transferred in the first disposition over Z's adjusted basis in such property is $575. The excess of the fair market value of the property transferred in the second disposition over Z's adjusted basis in such property is $1,000. Under paragraph (c) of this section, Z is required to recapture $800 (the lesser of 50 percent of its foreign oil related income of $1,600 or the balance ($1,500) in its FORI overall foreign loss account) of its foreign oil related loss. In accordance with paragraphs (d)(4) (i) and (iv) of this section, Z is required to recognize foreign oil related income in the amount of $575 on the first disposition and, since the foreign oil related loss account is now reduced by $1,375 (the $800 and $575 amounts previously recaptured), Z is required to recognize foreign oil related income in the amount of $125 on the second disposition. In accordance with paragraph (d)(4)(iii) of this section, the entire amount recognized is treated as United States source income and the balance in the FORI overall foreign loss account is reduced to zero under §1.904 (f)–1 (e)(2). Z's foreign tax credit limitation for FORI is $400 ($800/$2,300×$1,150) instead of $800 ($1,600/$1,600×$800).

*Example 5.* The facts are the same as in example 4, except that the gain from the two dispositions of property is treated as net capital gain and the United States corporate tax rate is assumed to be 46 percent. As in example 4, Z is required to recapture $800 of its foreign oil related loss from its 1981 ordinary foreign oil related income. In accordance with paragraph (d)(4) (i) and (iv) of this section, Z is first required to recognize foreign oil related income (which is net capital gain) on the first disposition in the amount of $575. Under paragraphs (b) and (d) (2) of this section, this net capital gain is adjusted by subtracting the rate differential portion of such gain from the total amount of such gain to determine the amount by which the foreign oil related loss account is reduced, which is $350 ($575− ($575×18/46)). The balance remaining in Z's foreign oil related loss account after this step is $350. Therefore, this process will be repeated, in accordance with paragraph (d)(4)(iv) of this section, to recapture that remaining balance out of the gain deemed recognized on the second disposition, resulting in reduction of the foreign oil related loss account to zero and net capital gain required to be recognized from the second disposition in the amount of $575, which must also be adjusted by subtracting the rate differential portion to determine the amount by which the foreign oil related loss account is reduced (which is $350). The $575 of net capital gain from each disposition is recharacterized as United States source net capital gain. Z's section 907 (b) foreign tax credit limitation is the same as in example 4, and Z has $1,150 ($575+$575) of United States source net capital gain.

(e) [Reserved] For further guidance, see §1.904(f)–2T(e).

[T.D. 8153, 52 FR 31997, Aug. 25, 1987; 52 FR 43434, Nov. 12, 1987, as amended by T.D. 9371, 72 FR 72597, Dec. 21, 2007]

**§ 1.904(f)–2T  Recapture of overall foreign losses (temporary).**

(a) and (b) [Reserved] For further guidance, see §1.904(f)–2a(a) and (b).

(c) *Section 904(f)(1) recapture*—(1) *In general.* In a year in which a taxpayer elects the benefits of section 901 or 30A, the amount of foreign source taxable income subject to recharacterization in a taxable year in which paragraph (a) of this section is applicable is the lesser of the aggregate amount of maximum potential recapture in all overall foreign loss accounts or fifty percent of the taxpayer's total foreign source taxable income. If the aggregate amount of maximum potential recapture in all overall foreign loss accounts exceeds fifty percent of the taxpayer's total foreign source taxable income, foreign source taxable income in each separate category with an overall foreign loss account is recharacterized in an amount equal to the section 904(f)(1) recapture amount, multiplied by the maximum potential recapture in the overall foreign loss account, divided by the aggregate amount of maximum potential recapture in all overall foreign loss accounts. The maximum potential recapture in any account is the lesser of the balance in that overall foreign loss account (after reduction of such accounts in accordance with §1.904(f)–1(e)) or the foreign source taxable income for the year in the same separate category as the loss account. If, in any year, in accordance with section 164(a) and section 275(a)(4)(A), a taxpayer deducts rather than credits its foreign taxes, recapture is applied to the extent of the lesser of—

(i) The balance in the overall foreign loss account in each separate category; or

(ii) Foreign source taxable income minus foreign taxes in each separate category.

(c)(2) through (5) *Example 3* [Reserved] For further guidance, see §1.904(f)–2(c)(2) through (5) *Example 3.*

*Example 4.* Y Corporation is a domestic corporation that does business in the United

813

same limitation as the loss that resulted in the account and that is recaptured in accordance with § 1.904(f)–2 (c) (relating to recapture under section 904(f)(1)); § 1.904(f)–2 (d) (relating to recapture when the taxpayer disposes of certain properties under section 904(f)(3)); and § 1.904(f)–4 (relating to recapture when the taxpayer receives an accumulation distribution from a foreign trust under section 904(f)(4)).

(f) *Illustrations.* The rules of this section are illustrated by the following examples.

*Example 1.* X Corporation is a domestic corporation with foreign branch operations in country C. X's taxable income and losses for its taxable year 1983 are as follows:

U.S. Source taxable income ....................$1,000
Foreign source taxable income (loss)
    subject to the general limitation
    ....................................................... ($500)
Foreign source taxable income subject
    to the passive interest limitation
    .............................................................$200

X has a general limitation overall foreign loss of $500 for 1983 in accordance with paragraph (c) (1) of this section. Since the general limitation overall foreign loss is not considered to offset income under the separate limitation for passive interest income, it therefore offsets $500 of United States source taxable income. This amount is added to X's general limitation overall foreign loss account at the end of 1983 in accordance with paragraphs (c) (1) and (d) (1) of this section.

*Example 2.* Y Corporation is a domestic corporation with foreign branch operations in Country C. Y's taxable income and losses for its taxable year 1982 are as follows:

U.S. source taxable income ....................$1,000
Foreign source taxable income (loss)
    subject to the general limitation
    ....................................................... ($500)
Foreign source taxable income subject
    to the passive interest limitation
    .............................................................$250

For its pre-1983 taxable years, Y filed its returns determining its overall foreign losses on a combined basis. In accordance with paragraphs (a) and (c) (1) of this section, Y may net the foreign source income and loss before offsetting the United States source income. Y therefore has a section 904(d)(1)(A-C) overall foreign loss account of $250 at the end of 1982.

*Example 3.* X Corporation is a domestic corporation with foreign branch operations in country C. For its taxable year 1985, X has taxable income (loss) determined as follows:

U.S. source taxable income ......................$200
Foreign source taxable income (loss)
    subject to the general limitation

....................................................($1,000)
Foreign source taxable income (loss)
    subject to the passive limitation
    .........................................................$1,800

X has a general limitation overall foreign loss of $1,000 in accordance with paragraph (c)(1) of this section. The overall foreign loss offsets $200 of United States source taxable income in 1985 and, therefore, X has a $200 general limitation overall foreign loss account at the end of 1985. The remaining $800 general limitation loss is offset by the passive interest limitation income in 1985 so that X has no net operating loss carryover that is attributable to the general limitation loss and no additional amount attributable to that loss will be added to the overall foreign loss account in 1985 or in any other year.

(g) *Effective/applicability date.* Paragraphs (a)(2) and (d)(4) of this section shall apply to taxable years beginning on or after January 1, 2012. Taxpayers may choose to apply paragraphs (a)(2) and (d)(4) of this section to other taxable years beginning after December 21, 2007, including periods covered by 26 CFR 1.904(f)–1T (revised as of April 1, 2010).

[T.D. 8153, 52 FR 31994, Aug. 25, 1987; 52 FR 43434, Nov. 12, 1987, as amended by T.D. 9371, 72 FR 72597, Dec. 21, 2007; T.D. 9595, 77 FR 37578, June 22, 2012]

## § 1.904(f)–2 Recapture of overall foreign losses.

(a) *In general.* A taxpayer shall be required to recapture an overall foreign loss as provided in this section. Recapture is accomplished by treating as United States source income a portion of the taxpayer's foreign source taxable income of the same limitation as the foreign source loss that resulted in an overall foreign loss account. As a result, if the taxpayer elects the benefits of section 901 or section 936, the taxpayer's foreign tax credit limitation with respect to such income is decreased. As provided in § 1.904 (f)–1(e)(2), the balance in a taxpayer's overall foreign loss account is reduced by the amount of loss recaptured. Recapture continues until such time as the amount of foreign source income recharacterized as United States source income equals the amount in the overall foreign loss account. As provided in § 1.904 (f)–1(e)(2), the balance in an overall foreign loss account is reduced at the end of each taxable

**Internal Revenue Service, Treasury** § 1.904(f)–2

year by the amount of the loss recaptured during that taxable year. Regardless of whether recapture occurs in a year in which a taxpayer elects the benefits of section 901 or in a year in which a taxpayer deducts its foreign taxes under section 164, the overall foreign loss account is recaptured only to the extent of foreign source taxable income remaining after applying the appropriate section 904(b) adjustments, if any, as provided in paragraph (b) of this section.

(b) *Determination of taxable income from sources without the United States for purposes of recapture*—(1) *In general.* For purposes of determining the amount of an overall foreign loss subject to recapture, the taxpayer's taxable income from sources without the United States shall be computed with respect to each of the separate limitations described in §1.904 (f)–1(c)(2) in accordance with the rules set forth in §1.904 (f)–1(c) (1) and (3). This computation is made without taking into account foreign source taxable income (and deductions properly allocated and apportioned thereto) subject to other separate limitations. Before applying the recapture rules to foreign source taxable income, the following provisions shall be applied to such income in the following order:

(i) Former section 904(b)(3)(C) (prior to its removal by the Tax Reform Act of 1986) and the regulations thereunder shall be applied to treat certain foreign source gain as United States source gain; and

(ii) Section 904(b)(2) and the regulations thereunder shall be applied to make adjustments in the foreign tax credit limitation fraction for certain capital gains and losses.

(c) *Section 904(f)(1) recapture*—(1) *In general.* In a taxable year in which a taxpayer elects the benefits of section 901 or section 30A, the section 904(f)(1) recapture amount is the amount of foreign source taxable income subject to recharacterization in a taxable year in which recapture of an overall foreign loss is required under paragraph (a) of this section. The section 904(f)(1) recapture amount equals the lesser of the aggregate amount of maximum potential recapture in all overall foreign loss accounts or fifty percent of the taxpayer's total foreign source taxable income. If the aggregate amount of maximum potential recapture in all overall foreign loss accounts exceeds fifty percent of the taxpayer's total foreign source taxable income, foreign source taxable income in each separate category with an overall foreign loss account is recharacterized in an amount equal to the section 904(f)(1) recapture amount, multiplied by the maximum potential recapture in the overall foreign loss account, divided by the aggregate amount of maximum potential recapture in all overall foreign loss accounts. The maximum potential recapture in an overall foreign loss account in a separate category is the lesser of the balance in that overall foreign loss account or the foreign source taxable income for the year in the same separate category as the loss account. If, in any taxable year, in accordance with sections 164(a) and 275(a)(4)(A), a taxpayer deducts rather than credits its foreign taxes, recapture is applied to the extent of the lesser of—

(i) The balance in the overall foreign loss account in each separate category; or

(ii) Foreign source taxable income (net of foreign taxes) in each separate category.

(2) *Election to recapture more of the overall foreign loss than is required under paragraph (c)(1).* In a year in which a taxpayer elects the benefits of sections 901 or 936, a taxpayer may make an annual revocable election to recapture a greater portion of the balance in an overall foreign loss account than is required to be recaptured under paragraph (c)(1) of this section. A taxpayer may make such an election or amend a prior election by attaching a statement to its annual Form 1116 or 1118. If an amendment is made to a prior year's election, an amended tax return should be filed. The statement attached to the Form 1116 or 1118 must indicate the percentage and dollar amount of the taxpayer's foreign source taxable income that is being recharacterized as United States source income and the percentage and dollar amount of the balance (both before and after recapture) in the overall foreign loss account that is being recaptured. Except for the special recapture rules for section 936 corporations and for recapture

815

of pre-1983 overall foreign losses determined on a combined basis, the taxpayer that elects to credit its foreign taxes may not elect to recapture an amount in excess of the taxpayer's foreign source taxable income subject to the same limitation as the loss that resulted in the overall foreign loss account.

(3) *Special rule for recapture of losses incurred prior to section 936 election.* If a corporation elects the application of section 936 and at the time of the election has a balance in any overall foreign loss account, such losses will be recaptured from the possessions source income of the electing section 936 corporation that qualifies for the section 936 credit, including qualified possession source investment income as defined in section 936(d)(2), even though the overall foreign loss to be recaptured may not be attributable to a loss in an income category of a type that would meet the definition of qualified possession source investment income. For purposes of recapturing an overall foreign loss incurred by a consolidated group including a corporation that subsequently elects to use section 936, the electing section 936 corporation's possession source income that qualifies for the section 936 credit, including qualified possession source investment income, shall be used to recapture the section 936 corporation's share of previously incurred overall foreign loss accounts. Rules for determining the section 936 corporation's share of the consolidated groups overall foreign loss accounts are provided in §1.1502–9(c).

(4) *Recapture of pre-1983 overall foreign losses determined on a combined basis.* If a taxpayer computed its overall foreign losses on a combined basis in accordance with §1.904–1(c)(1) for taxable years beginning before January 1, 1983, any losses recaptured in taxable years beginning after December 31, 1982, shall be recaptured from income subject to the general limitation, subject to the rules in §1.904–6 (a) and (b). Ordering rules for recapture of these losses are provided in §1.904(f)–6(c).

(5) *Illustrations.* The rules of this paragraph (c) are illustrated by the following examples, all of which assume a United States corporate tax rate of 50 percent unless otherwise stated.

*Example 1.* X Corporation is a domestic corporation that does business in the United States and abroad. On December 31, 1983, the balance in X's general limitation overall foreign loss account is $600, all of which is attributable to a loss incurred in 1983. For 1984, X has United States source taxable income of $500 and foreign source taxable income subject to the general limitation of $500. For 1984, X pays $200 in foreign taxes and elects section 901. Under paragraph (c)(1) of this section, X is required to recapture $250 (the lesser of $600 or 50 percent of $500) of its overall foreign loss. As a consequence, X's foreign tax credit limitation under the general limitation is $250\$1,000×$500, or $125, instead of $500\$1,000×$500, or $250. The balance in X's general limitation overall foreign loss account is reduced by $250 in accordance with §1.904(f)–1(e)(2).

*Example 2.* The facts are the same as in example 1 except that X makes an election to recapture its overall foreign loss to the extent of 80 percent of its foreign source taxable income subject to the general limitation (or $400) in accordance with paragraph (c)(2) of this section. As a result of recapture, X's 1984 foreign tax credit limitation for income subject to the general limitation is $100\$1,000×$500, or $50, instead of $500/$1,000×$500, or $250. X's general limitation overall foreign loss account is reduced by $400 in accordance with §1.904(f)–1(e)(2).

*Example 3.* The facts are the same as in example 1 except that X does not elect the benefits of section 901 in 1984 and instead deducts its foreign taxes paid. In 1984, X recaptures $300 of its overall foreign loss, the difference between X's foreign source taxable income of $500 and $200 of foreign taxes paid. The balance in X's general limitation overall foreign loss account is reduced by $300 in accordance with §1.904(f)–1(e)(2).

*Example 4.* Y Corporation is a domestic corporation that does business in the United States and abroad. On December 31, 2007, the balance in Y's general category overall foreign loss account is $500, all of which is attributable to a loss incurred in 2007. Y has no other loss accounts subject to recapture. For 2008, Y has U.S. source taxable income of $400 and foreign source taxable income of $300 in the general category and $900 in the passive category. Under paragraph (c)(1) of this section, the amount of Y's general category income subject to recharacterization is the lesser of the aggregate maximum potential recapture or 50% of the total foreign source taxable income. In this case, Y's aggregate maximum potential recapture is $300 (the lesser of the $500 balance in the general category overall foreign loss account or $300 foreign source income in the general category for the year), which is less than 50% of Y's total foreign source taxable income ($1200 × 50% = $600). Therefore, pursuant to paragraph (c) of this section, $300 of foreign

source income in the general category is recharacterized as U.S. source income. The balance in Y's general category overall foreign loss account is reduced to $200 in accordance with § 1.904(f)–1(e)(2).

*Example 5.* On December 31, 1980, V, a domestic corporation that does business in the United States and abroad, has a balance in its section 904(d)(1)(A-C) overall foreign loss account of $600. V also has a balance in its FORI limitation overall foreign loss account of $900. For 1981, V has foreign source taxable income subject to the general limitation of $500 and $500 of United States source income. V also has foreign source taxable income subject to the FORI limitation of $800. V is required to recapture $250 of its section 904(d)(1)(A-C) overall foreign loss account (the lesser of $600 or 50% of $500) and its general limitation foreign tax credit limitation is $250/$1,800×$900, or $125 instead of $500/ $1,800×$900, or $250. V is also required to recapture $400 of its FORI limitation overall foreign loss account (the lesser of $900 or 50% of $800). V's foreign tax credit limitation for FORI is $400/$1,800×$900, or $200, instead of $800/$1,800×$900, or $400. The balance in V's FORI limitation overall foreign loss account is reduced to $500 and the balance in V's section 904(d)(1)(A-C) account is reduced to $350, in accordance with § 1.904(f)–1(e)(2).

*Example 6.* This example assumes a United States corporate tax rate of 46 percent (under section 11(b)) and an alternative rate of tax under section 1201(a) of 28 percent. W is a domestic corporation that does business in the United States and abroad. On December 31, 1984, W has $350 in its general limitation overall foreign loss account. For 1985, W has $500 of United States source taxable income, and has foreign source income subject to the general limitation as follows:

| | |
|---|---:|
| Foreign source taxable income other than net capital gain | $720 |
| Foreign source net capital gain | $460 |

Under paragraph (b)(2) of this section, foreign source taxable income for purposes of recapture includes foreign source capital gain net income, reduced, under section 904(b)(2), by the rate differential portion of foreign source net capital gain, which adjusts for the reduced tax rate for net capital gain under section 1201(a):

| | |
|---|---:|
| Foreign source capital gain net income | $460 |
| Rate differential portion of foreign source net capital gain (18/46 of $460) | – 180 |
| Foreign source capital gain included in foreign source taxable income | $280 |

The total foreign source taxable income of W for purposes of recapture in 1985 is $1,000 ($720+$280). Under paragraph (c)(1) of this section, W is required to recapture $350 (the lesser of $350 or 50 percent of $1,000), and W's general limitation overall foreign loss account is reduced to zero. W's foreign tax

credit limitation for income subject to the general limitation is $650/$1,500×$690  ((.46) (500+720)+(.28) (460)), or $299, instead of $1,000/ $1,500×$690, or $460.

(d) *Recapture of overall foreign losses from dispositions under section 904(f)(3)—* (1) *In general.* If a taxpayer disposes of property used or held for use predominantly without the United States in a trade or business during a taxable year and that property generates foreign source taxable income subject to a separate limitation to which paragraph (a) of this section applies, the applicable overall foreign loss account shall be recaptured as provided in paragraphs (d)(2), (d)(3), and (d)(4) of this section. See paragraph (d)(5) of this section for definitions. See the ordering rules under § 1.904(g)–3(f) and (i) for coordination with other loss recapture under section 904(f) and (g).

(2) *Treatment of net capital gain.* If the gain from a disposition of property to which this paragraph (d) applies is treated as net capital gain, all references to such gain in paragraphs (d)(3) and (d)(4) of this section shall mean such gain as adjusted under paragraph (b) of this section. The amount by which the overall foreign loss account shall be reduced shall be determined from such adjusted gain.

(3) *Dispositions where gain is recognized irrespective of section 904 (f)(3)—*(i) *Foreign source gain.* If a taxpayer recognizes foreign source gain in a separate category on the disposition of property described in paragraph (d)(1) of this section, and there is a balance in such separate category after applying paragraph (c) of this section, an additional portion of such balance shall be recaptured in accordance with paragraphs (a) and (b) of this section. The amount recaptured shall be the lesser of such balance or the full amount of the foreign source gain recognized on the disposition that was not previously recharacterized.

(ii) *U.S. source gain.* If a taxpayer recognizes U.S. source gain on the disposition of property described in paragraph (d)(1) of this section, and there is a balance in a taxpayer's overall foreign loss account that is attributable to a loss in the separate category to which the income generated by such property

817

is assigned after applying paragraph (c) of this section, an amount of the gain shall be treated as foreign source and an additional portion of such balance equal to that amount shall be recaptured in accordance with paragraphs (a) and (b) of this section. The amount of gain treated as foreign source and the amount of overall foreign loss recaptured shall be the lesser of the balance in the overall foreign loss account or the full amount of the gain recognized on the disposition.

(4) *Dispositions in which gain would not otherwise be recognized*—(1) *Recognition of gain to the extent of the overall foreign loss account.* If a taxpayer makes a disposition of property described in paragraph (d)(1) of this section in which any amount of gain otherwise would not be recognized in the year of the disposition, and such property was used or held for use to generate foreign source taxable income subject to a separate limitation under which the taxpayer had a balance in its overall foreign loss account (including a balance that arose in the year of the disposition), the taxpayer shall recognize foreign source taxable income in an amount equal to the lesser of:

(A) The sum of the balance in the applicable overall foreign loss account (but only after such balance has been increased by amounts added to the account for the year of the disposition or has been reduced by amounts recaptured for the year of the disposition under paragraph (c) and paragraph (d)(3) of this section) plus the amount of any overall foreign loss that would be part of a net operating loss for the year of the disposition if gain from the disposition were not recognized under section 904(f)(3), plus the amount of any overall foreign loss that is part of a net operating loss carryover from a prior year, or

(B) The excess of the fair market value of such property over the taxpayer's adjusted basis in such property. The excess of the fair market value of such property over its adjusted basis shall be determined on an asset by asset basis. Losses from the disposition of an asset shall not be recognized. Any foreign source taxable income deemed received and recognized under this paragraph (d)(4)(i) will have the same

character as if the property had been sold or exchanged in a taxable transaction and will constitute gain for all purposes.

(ii) *Basis adjustment.* The basis of the property received in an exchange to which this paragraph (d)(4) applies shall be increased by the amount of gain deemed recognized, in accordance with applicable sections of subchapters C (relating to corporate distributions and adjustments), K (relating to partners and partnerships), O (relating to gain or loss on the disposition of property), and P (relating to capital gains and losses). If the property to which this paragraph (d)(4) applies was transferred by gift, the basis of such property in the hands of the donor immediately preceding such gift shall be increased by the amount of the gain deemed recognized.

(iii) *Recapture of overall foreign loss to the extent of amount recognized.* The provisions of paragraphs (a) and (b) of this section shall be applied to the extent of 100 percent of the foreign source taxable income which is recognized under paragraph (d)(4)(i) of this section. However, amounts of foreign source gain that would not be recognized except by application of section 904(f)(3) and paragraph (d)(4)(i) of this section, and which are treated as United States source gain by application of section 904(b)(3)(C) (prior to its removal by the Tax Reform Act of 1986) and paragraph (b)(1) of this section, shall reduce the overall foreign loss account (subject to the adjustments described in paragraph (d)(2) of this section) if such gain is net capital gain, notwithstanding the fact that such amounts would otherwise not be recaptured under the ordering rules in paragraph (b) of this section.

(iv) *Priorities among dispositions in which gain is deemed to be recognized.* If, in a single taxable year, a taxpayer makes more than one disposition to which this paragraph (d)(4) is applicable, the rules of this paragraph (d)(4) shall be applied to each disposition in succession starting with the disposition which occurred earliest, until the balance in the applicable overall foreign loss account is reduced to zero. If the taxpayer simultaneously makes more than one disposition to which this paragraph (d)(4) is applicable, the

rules of paragraph (d)(4) shall be applied so that the balance in the applicable overall foreign loss account to be recaptured will be allocated pro rata among the assets in proportion to the excess of the fair market value of each asset over the adjusted basis of each asset.

(5) *Definitions*—(i) *Disposition.* A disposition to which this paragraph (d) applies includes a sale; exchange; distribution; gift; transfer upon the foreclosure of a security interest (but not a mere transfer of title to a creditor upon creation of a security interest or to a debtor upon termination of a security interest); involuntary conversion; contribution to a partnership, trust, or corporation; transfer at death; or any other transfer of property whether or not gain or loss is recognized under other provisions of the Code. However, a disposition to which this paragraph (d) applies does not include:

(A) A distribution or transfer of property to a domestic corporation described in section 381 (a) (provided that paragraph (d)(6) of this section applies);

(B) A disposition of property which is not a material factor in the realization of income by the taxpayer (as defined in paragraph (d)(5)(iv) of this section);

(C) A transaction in which gross income is not realized; or

(D) The entering into of a unitization or pooling agreement (as defined in §1.614–8(b)(6) of the regulations) containing a valid election under section 761(a)(2), and in which the source of the entire gain from any disposition of the interest created by the agreement would be determined to be foreign source under section 862(a)(5) if the disposition occurred presently.

(ii) *Property used in a trade or business.* Property is used in a trade or business if it is held for the principal purpose of promoting the present or future conduct of the trade or business. This generally includes property acquired and held in the ordinary course of a trade or business or otherwise held in a direct relationship to a trade or business. In determining whether an asset is held in a direct relationship to a trade or business, principal consideration shall be given to whether the asset is used in the trade or business.

Property will be treated as held in a direct relationship to a trade or business if the property was acquired with funds generated by that trade or business or if income generated from the asset is available for use in that trade or business. Property used in a trade or business may be tangible or intangible, real or personal property. It includes property, such as equipment, which is subject to an allowance for depreciation under section 167 or cost recovery under section 168. Property may be considered used in a trade or business even if it is a capital asset in the hands of the taxpayer. However, stock of another corporation shall not be considered property used in a trade or business if a substantial investment motive exists for acquiring and holding the stock. On the other hand, stock acquired or held to assure a source of supply for a trade or business shall be considered property used in that trade or business. Inventory is generally not considered property used in a trade or business. However, when disposed of in a manner not in the ordinary course of a trade or business, inventory will be considered property used in the trade or business. A partnership interest will be treated as property used in a trade or business if the underlying assets of the partnership would be property used in a trade or business. For purposes of section 904(f) (3) and §1.904(f)–2 (d) (1) and (5), a disposition of a partnership interest to which this section applies will be treated as a disposition of a proportionate share of each of the assets of the partnership. For purposes of allocating the purchase price of the interest and the seller's basis in the interest to those assets, the principles of §1.751–1(a) will apply.

(iii) *Property used predominantly outside the United States.* Property will be considered used predominantly outside the United States if for a 3-year period ending on the date of the disposition (or, if shorter, the period during which the property has been used in the trade or business) such property was located outside the United States more than 50 percent of the time. An aircraft, railroad rolling stock, vessel, motor vehicle, container, or other property used for transportation purposes is deemed to be used predominantly outside the

§ 1.904(f)–2                                         26 CFR Ch. I (4–1–14 Edition)

United States if, during the 3-year (or shorter) period, either such property is located outside the United States more than 50 percent of the time or more than 50 percent of the miles traversed in the use of such property are traversed outside the United States.

(iv) *Property which is a material factor in the realization of income.* For purposes of this section, property used in a trade or business will be considered a material factor in the realization of income unless the taxpayer establishes that it is not (or, if the taxpayer did not realize income from the trade or business in the taxable year, would not be expected to be) necessary to the realization of income by the taxpayer.

(6) *Carryover of overall foreign loss accounts in a corporate acquisition to which section 381(a) applies.* In the case of a distribution or transfer described in section 381(a), an overall foreign loss account of the distributing or transferor corporation shall be treated as an overall foreign loss account of the acquiring or transferee corporation as of the close of the date of the distribution or transfer. If the transferee corporation had an overall foreign loss account under the same separate limitation prior to the distribution or transfer, the balance in the transferor's account must be added to the transferee's account. If not, the transferee must adopt the transferor's overall foreign loss account. An overall foreign loss of the transferor will be treated as incurred by the transferee in the year prior to the year of the transfer.

(7) *Illustrations.* The rules of this paragraph (d) are illustrated by the following examples which assume that the United States corporate tax rate is 50 percent (unless otherwise stated). For purposes of these examples, none of the foreign source gains are treated as net capital gains (unless so stated).

*Example 1.* X Corporation has a balance in its general limitation overall foreign loss account of $600 at the close of its taxable year ending December 31, 1984. In 1985, X sells assets used predominantly outside the United States in a trade or business and recognizes $1,000 of gain on the sale under section 1001. This gain is subject to the general limitation. This sale is a disposition within the meaning of paragraph (d)(5)(i) of this section, and to which this paragraph (d) applies. X has no other foreign source taxable income

in 1985 and has $1,000 of United States source taxable income. Under paragraph (c), X is required to recapture $500 (the lesser of the balance in X's general limitation overall foreign loss account ($600) or 50 percent of $1,000) of its overall foreign loss account. The balance in X's general limitation overall foreign loss account is reduced to $100 in accordance with §1.904(f)–1(e)(2). In addition, under paragraph (d)(3) of this section, X is required to recapture $100 (the lesser of the remaining balance in its general limitation overall foreign loss account ($100) or 100 percent of its foreign source taxable income recognized on such disposition that has not been previously recharacterized ($500)). The total amount recaptured is $600. X's foreign tax credit limitation for income subject to the general limitation in 1985 is $200 ($400/$2,000×$1,000) instead of $500 ($1,000/$2,000×$1,000). The balance in X's general limitation overall foreign loss account is reduced to zero in accordance with §1.904(f)–1(e)(2).

*Example 2.* On December 31, 1984, Y Corporation has a balance in its general limitation overall foreign loss account of $1,500. In 1985, Y has $500 of United States source taxable income and $200 of foreign source taxable income subject to the general limitation. Y's foreign source taxable income is from the sale of property used predominantly outside of the United States in a trade or business. This sale is a disposition to which this paragraph (d) is applicable. In 1985, Y also transferred property used predominantly outside of the United States in a trade or business to another corporation. Under section 351, no gain was recognized on this transfer. Such property had been used to generate foreign source taxable income subject to the general limitation. The excess of the fair market value of the property transferred over Y's adjusted basis in such property was $2,000. In accordance with paragraph (c) of this section, Y is required to recapture $100 (the lesser of $1,500, the amount in Y's general limitation overall foreign loss account, or 50 percent of $200, the amount of general limitation foreign source taxable income for the current year) of its general limitation overall foreign loss. Y is then required to recapture an additional $100 of its general limitation overall foreign loss account under paragraph (d)(3) of this section out of the remaining gain recognized on the sale of assets, because 100 percent of such gain is subject to recapture. The balance in Y's general limitation overall foreign loss account is reduced to $1,300 in accordance with §1.904(f)–1(e)(2). Y corporation is then required to recognize $1,300 of foreign source taxable income on its section 351 transfer under paragraph (d)(4) of this section. The remaining $700 of potential gain associated with the section 351 transfer is not recognized. Under paragraph (d)(4), 100 percent of

- Add.80 -

the $1,300 is recharacterized as United States source taxable income, and Y's general limitation overall foreign loss account is reduced to zero. Y's entire taxable income for 1985 is:

| | |
|---|---|
| U.S. source taxable income | $500 |
| Foreign source taxable income subject to the general limitation that is recharacterized as U.S. source income by paragraphs (c) and (d)(3) of this section | 200 |
| Gain recognized under section 904(f)(3) and paragraph (d)(4) of this section, and recharacterized as U.S. source income | 1,300 |
| Total | $2,000 |

Y's foreign tax credit limitation for 1985 for income subject to the general limitation is $0 ($0/$2,000×$1,000) instead of $100 ($200/ $700×$350).

*Example 3.* W Corporation is a calendar year domestic corporation with foreign branch operations in country C. As of December 31, 1984, W has no overall foreign loss accounts and has no net operating loss carryovers. W's entire taxable income in 1985 is:

| | |
|---|---|
| U.S. source taxable income | $800 |
| Foreign source taxable income (loss) subject to the general limitation | ($1,000) |

W cannot carry back its 1985 NOL to any earlier year. As of December 31, 1985, W therefore has $800 in its general limitation overall foreign loss account. In 1986, W earns $400 United States source taxable income and has an additional $1,000 loss from the operations of the foreign branch. Income in the loss category would be subject to the general limitation. Also in 1986, W disposes of property used predominately outside the United States in a trade or business. Such property generated income subject to the general limitation. The excess of the property's fair market value over its adjusted basis is $3,000. The disposition is of a type described in §1.904 (f)–2(d)(4)(i). W has no other income in 1986. Under §1.904 (f)–2(d)(4)(i), W is required to recognize foreign source taxable income on the disposition in an amount equal to the lesser of $2,000 ($800 (the balance in the general limitation overall foreign loss account as of 1985) + $400 (the increase in the general limitation overall foreign loss attributable to the disposition year) + $600 (the general limitation overall foreign loss that is part of the NOL from 1986) + $200 (the general limitation overall foreign loss that is part of the NOL from 1985)) or $3,000. The $2,000 foreign source income required to be recognized under section 904(f)(3) is reduced to $1,200 by the remaining $600 loss in 1986 and the $200 net operating loss carried forward from 1985. This $1,200 of income is subject to the general limitation. In computing foreign tax credit limitation for general limitation income, the $1,200 of foreign source income is treated as United States source income and, therefore, W's foreign tax credit

limitation for income subject to the general limitation is zero. W's overall foreign loss account is reduced to zero.

*Example 4.* Z Corporation has a balance in its FORI overall foreign loss account of $1,500 at the end of its taxable year 1980. In 1981, Z has $1,600 of foreign oil related income subject to the separate limitation for FORI income and no United States source income. In addition, in 1981, Z makes two dispositions of property used predominantly outside the United States in a trade or business on which no gain was recognized. Such property generated foreign oil related income. The excess of the fair market value of the property transferred in the first disposition over Z's adjusted basis in such property is $575. The excess of the fair market value of the property transferred in the second disposition over Z's adjusted basis in such property is $1,000. Under paragraph (c) of this section, Z is required to recapture $800 (the lesser of 50 percent of its foreign oil related income of $1,600 or the balance ($1,500) in its FORI overall foreign loss account) of its foreign oil related loss. In accordance with paragraphs (d)(4) (i) and (iv) of this section, Z is required to recognize foreign oil related income on the first disposition in the amount of $575 on the first disposition and, since the foreign oil related loss account is now reduced by $1,375 (the $800 and $575 amounts previously recaptured), Z is required to recognize foreign oil related income in the amount of $125 on the second disposition. In accordance with paragraph (d)(4)(iii) of this section, the entire amount recognized is treated as United States source income and the balance in the FORI overall foreign loss account is reduced to zero under §1.904 (f)–1 (e)(2). Z's foreign tax credit limitation for FORI is $400 ($800/ $2,300×$1,150) instead of $800 ($1,600/ $1,600×$800).

*Example 5.* The facts are the same as in example 4, except that the gain from the two dispositions of property is treated as net capital gain and the United States corporate tax rate is assumed to be 46 percent. As in example 4, Z is required to recapture $800 of its foreign oil related loss from its 1981 ordinary foreign oil related income. In accordance with paragraph (d)(4) (i) and (iv) of this section, Z is first required to recognize foreign oil related income (which is net capital gain) on the first disposition in the amount of $575. Under paragraphs (b) and (d) (2) of this section, this net capital gain is adjusted by subtracting the rate differential portion of such gain from the total amount of such gain to determine the amount by which the foreign oil related loss account is reduced, which is $350 ($575− ($575×18/46)). The balance remaining in Z's foreign oil related loss account after this step is $350. Therefore, this process will be repeated, in accordance with paragraph (d)(4)(iv) of this section, to recapture that remaining balance out of the gain

821

deemed recognized on the second disposition, resulting in reduction of the foreign oil related loss account to zero and net capital gain required to be recognized from the second disposition in the amount of $575, which must also be adjusted by subtracting the rate differential portion to determine the amount by which the foreign oil related loss account is reduced (which is $350). The $575 of net capital gain from each disposition is recharacterized as United States source net capital gain. Z's section 907 (b) foreign tax credit limitation is the same as in example 4, and Z has $1,150 ($575+$575) of United States source net capital gain.

(e) *Effective/applicability date.* Paragraphs (c)(1), (c)(5) *Example 4,* (d)(1), and (d)(3) of this section shall apply to taxable years beginning on or after January 1, 2012. Taxpayers may choose to apply paragraphs (c)(1), (c)(5) *Example 4,* (d)(1), and (d)(3) of this section to other taxable years beginning after December 21, 2007, including periods covered by 26 CFR 1.904(f)–2T (revised as of April 1, 2010).

[T.D. 8153, 52 FR 31997, Aug. 25, 1987; 52 FR 43434, Nov. 12, 1987, as amended by T.D. 9371, 72 FR 72597, Dec. 21, 2007; T.D. 9595, 77 FR 37578, June 22, 2012]

### § 1.904(f)–3   Allocation of net operating losses and net capital losses.

For rules relating to the allocation of net operating losses and net capital losses, see § 1.904(g)–3T.

[T.D. 9371, 72 FR 72598, Dec. 21, 2007]

### § 1.904(f)–4   Recapture of foreign losses out of accumulation distributions from a foreign trust.

(a) *In general.* If a taxpayer receives a distribution of foreign source taxable income subject to a separate limitation in which the taxpayer had a balance in an overall foreign loss account and that income is treated under section 666 as having been distributed by a foreign trust in a preceding taxable year, a portion of the balance in the taxpayer's applicable overall foreign loss account shall be subject to recapture under this section. The amount subject to recapture shall be the lesser of the balance in the taxpayer's overall foreign loss account (after applying §§ 1.904(f)–1, 1.904(f)–2, 1.904(f)–3, and 1.904(f)–6) to the taxpayer's other income or loss in the current taxable year) or the entire amount of foreign

source taxable income deemed distributed in a preceding year or years under section 666.

(b) *Effect of recapture on foreign tax credit limitation under section 667(d).* If paragraph (a) of this section is applicable, then in applying the separate limitation (in accordance with section 667(d)(1) (A) and (C)) to determine the amount of foreign taxes deemed distributed under section 666 (b) and (c) that can be credited against the increase in tax in a computation year, a portion of the foreign source taxable income deemed distributed in such computation year shall be treated as United States source income. Such portion shall be determined by multiplying the amount of foreign source taxable income deemed distributed in the computation year by a fraction. The numerator of this fraction is the balance in the taxpayer's overall foreign loss account (after application of §§ 1.904(f)–1, 1.904(f)–2, 1.904(f)–3, and 1.904(f)–6), and the denominator of the fraction is the entire amount of foreign source taxable income deemed distributed under section 666. However, the numerator of this fraction shall not exceed the denominator of the fraction.

(c) *Recapture if taxpayer deducts foreign taxes deemed distributed.* If paragraph (a) of this section is applicable and if, in accordance with section 667(d)(1)(B), the beneficiary deducted rather than credited its taxes in the computation year, the beneficiary shall reduce its overall foreign loss account (but not below zero) by an amount equal to the lesser of the balance in the applicable overall foreign loss account or the amount of the actual distribution deemed distributed in the computation year (without regard to the foreign taxes deemed distributed).

(d) *Illustrations.* The provisions of this section are illustrated by the following examples:

*Example 1.* X Corporation is a domestic corporation that has a balance of $10,000 in its general limitation overall foreign loss account on December 31, 1980. For its taxable year beginning January 1, 1981, X's only income is an accumulation distribution from a foreign trust of $20,000 of general limitation foreign source taxable income. Under section 666, the amount distributed and the foreign taxes paid on such amount ($4,000) are