No. 24-9004

In the
# United States Court of Appeals
## for the Tenth Circuit

LIBERTY GLOBAL, INC.,

*Petitioner-Appellant*,

v.

COMMISSIONER OF INTERNAL REVENUE,

*Respondent-Appellee.*

On Appeal from the United States Tax Court, No. 341-21,
Hon. Emin Toro, *Judge*

## PETITIONER-APPELLANT LIBERTY GLOBAL, INC.'S APPENDIX

Shay Dvoretzky
Rajiv Madan
Christopher Bowers
Nathan Wacker
Parker Rider-Longmaid
Sylvia O. Tsakos
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
Telephone: 202-371-7000
parker.rider-longmaid@skadden.com

*Counsel for Petitioner-Appellant*
*Liberty Global, Inc.*

# TABLE OF CONTENTS

**Page**

Tax Court Docket for Case on Appeal,
*Liberty Global, Inc. v. Commissioner*, No. 341-21
(T.C., Emin Toro, J.; filed Jan. 26, 2021) ................................................App.1

LGI's Petition,
T.C. Doc. 1 (Jan. 26, 2021) ...........................................................................App.9

Exhibit A: Notice of Deficiency,
dated Oct. 30, 2020 ................................................................................App.24

Exhibit B: Notice of Deficiency,
dated Oct. 30, 2020 ................................................................................App.40

Commissioner's Answer to LGI's Petition,
T.C. Doc. 6 (Mar. 24, 2021) ......................................................................App.53

First Stipulation of Facts,
T.C. Doc. 31 (Apr. 19, 2023) ....................................................................App.70

Exhibit 6-J: Excerpt of LGI 2010 Consolidated
Federal U.S. Income Tax Return,
dated Sept. 14, 2011 ..............................................................................App.80

Commissioner's Simultaneous Opening Brief,
T.C. Doc. 34 (June 30, 2023) ....................................................................App.99

LGI's Simultaneous Opening Brief,
T.C. Doc. 35 (June 30, 2023) ..................................................................App.156

Commissioner's Simultaneous Answering Brief,
T.C. Doc. 36 (Aug. 11, 2023)..................................................................App.214

LGI's Simultaneous Reply Brief,
T.C. Doc. 37 (Aug. 11, 2023)..................................................................App.275

Opinion, 161 T.C. No. 10,
T.C. Doc. 38 (Nov. 8, 2023)....................................................................App.313

Agreed Computation for Entry of Decision,
T.C. Doc. 44 (Mar. 25, 2024) ..................................................................App.335

Decision, T.C. Doc. 45 (Mar. 27, 2024).......................................................App.344

Notice of Appeal, T.C. Doc. 46 (June 2, 2024) ........................................App.347

**TAX COURT DOCKET FOR CASE ON APPEAL,**
*LIBERTY GLOBAL, INC. V. COMMISSIONER*, **NO. 341-21**
**(T.C., EMIN TORO, J.; FILED JAN. 26, 2021)**

**United States Tax Court**

Washington, DC 20217

Liberty Global, Inc., Petitioner v. Commissioner of
Internal Revenue, Respondent

Docket No. 341-21

**<u>Printable Docket Record</u>**

| Name | Counsel |
|------|---------|
| Liberty Global, Inc. undefined | Nathan P. Wacker (WN0090) Nathan.wacker@skadden.com 202-371-7182 Rajiv Madan (MR1190) raj.madan@skadden.com 202-371-7020 |

| Respondent Counsel | Respondent Counsel Contact |
|--------------------|----------------------------|
| Timothy L. Smith | timothy.l.smith@irscounsel.treas.gov 305-982-5335 |
| Judith A. Hagley | judith.a.hagley@usdoj.gov 202-514-8126 |
| Matthew J. Avon | matthew.j.avon@irscounsel.treas.gov 646-259-8012 |

| No. | Date | Event | Filings and proceedings | Filed by | Action | Served | Parties |
|-----|------|-------|-------------------------|----------|--------|--------|---------|
| 1 | 01/26/21 | P | **Petition** | Petr. Liberty Global, Inc. | | 01/27/21 | R |
| 2 | 01/26/21 | RQT | **Request for Place of Trial at Washington, District of Columbia** | | | | |
| 3 | 01/26/21 | DISC | **Ownership Disclosure Statement** | Petr. Liberty | | 01/27/21 | R |

| No. | Date | Event | Filings and proceedings | Filed by | Action | Served | Parties |
|-----|------|-------|-------------------------|----------|--------|--------|---------|
|  |  |  | Global, Inc. |  |  |  |  |
| 4 | 01/26/21 | FEE | **Filing Fee Paid** |  |  |  |  |
| 5 | 01/27/21 | NOT | **Notice of Attachments in the Nature of Evidence** |  |  | 01/27/21 | B |
| 6 | 03/24/21 | A | **Answer** | Resp. |  | 03/24/21 | B |
| 7 | 07/15/21 | NTD | **Notice of Trial on 12/13/2021 at Washington, District of Columbia** |  |  | 07/15/21 | B |
| 8 | 07/15/21 | SPTO | **Standing Pretrial Order** |  |  | 07/15/21 | B |
| 9 | 10/27/21 | EA | **Entry of Appearance for Petr. Liberty Global, Inc.** | Nathan P. Wacker |  | 10/27/21 | B |
| 10 | 10/28/21 | NODC | **Notice of Docket Change for Docket Entry No. 9** |  |  | 10/28/21 | B |
| 11 | 10/29/21 | M006 | **Motion for Continuance (No Objection)** (No Objection) | Resp. & Petr. Liberty Global, Inc. | ORD 11/1/21 | 10/29/21 | B |
| 12 | 11/01/21 | O | **Order that the parties joint motion for continuance is granted, in that this case is stricken from the 12/13/21, Washington, DC trial session as stated herein. The motion is denied to the extent that the case is continued generally and jurisdiction is not retained by the undersigned judge.** |  |  | 11/01/21 | B |
| 13 | 02/01/22 | NTD | **Notice of Trial on 05/09/2022 at Washington, District of Columbia** |  |  | 02/01/22 | B |
| 14 | 02/01/22 | SPTO | **Standing Pretrial Order** |  |  | 02/01/22 | B |

| No. | Date | Event | Filings and proceedings | Filed by | Action | Served | Parties |
|-----|------|-------|-------------------------|----------|--------|--------|---------|
| 15 | 03/10/22 | M006 | **Motion for Continuance (No Objection)** (No Objection) | Resp. & Petr. Liberty Global, Inc. | ORD 3/14/22 | 03/10/22 | B |
| 16 | 03/14/22 | OJR | **Order that jurisdiction is retained by Judge Toro - The parties' Joint Motion for Continuance of Trial is granted in that this case is stricken from the May 9, 2022, Washington, DC trial session. Parties by May 10, 2022, shall file with the Court either a joint (or separate) report as described herein.** | | | 03/14/22 | B |
| 17 | 05/10/22 | RPT | **Status Report** | Resp. & Petr. Liberty Global, Inc. | | 05/10/22 | B |
| 18 | 05/11/22 | O | **Order parties by July 11, 2022, shall file with the Court either a joint report (or, if that is not expedient, then separate reports) as stated herein.** | | | 05/11/22 | B |
| 19 | 07/11/22 | RPT | **Status Report** | Resp & Petr. Liberty Global, Inc. | | 07/11/22 | B |
| 20 | 07/12/22 | NODC | **Notice of Docket Change for Docket Entry No. 19** | | | 07/12/22 | B |
| 21 | 07/14/22 | O | **Order parties by September 12, 2022, shall file a joint or separate status report as stated herein.** | | | 07/14/22 | B |

- App.4 -

| No. | Date | Event | Filings and proceedings | Filed by | Action | Served | Parties |
|-----|------|-------|------------------------|----------|--------|--------|---------|
| 22 | 09/12/22 | RPT | **Status Report** | Resp. & Petr. Liberty Global, Inc. | | 09/12/22 | B |
| 23 | 09/14/22 | O | **Order parties by October 14, 2022, shall file joint or separate status reports.** | | | 09/14/22 | B |
| 24 | 10/14/22 | RPT | **Status Report** | Resp. & Petr. Liberty Global, Inc. | | 10/14/22 | B |
| 25 | 10/19/22 | O | **Order parties by December 16, 2022, shall file a joint or separate status reports as stated herein.** | | | 10/19/22 | B |
| 26 | 12/16/22 | RPT | **Status Report** | Resp. & Petr. Liberty Global, Inc. | | 12/16/22 | B |
| 27 | 12/20/22 | O | **Order parties by February 17, 2023, shall file a joint or separate status report as stated herein.** | | | 12/20/22 | B |
| 28 | 02/17/23 | RPT | **Status Report** | Resp. & Petr. Liberty Global, Inc. | | 02/17/23 | B |
| 29 | 02/23/23 | O | **Order parties by March 27, 2023, shall file with the Court a joint or separate reports as stated herein.** | | | 02/23/23 | B |
| 30 | 03/27/23 | RPT | **Status Report** | Resp. & Petr. | | 03/27/23 | B |

- App.5 -

| No. | Date | Event | Filings and proceedings | Filed by | Action | Served | Parties |
|-----|------|-------|-------------------------|----------|--------|--------|---------|
| | | | | Liberty Global, Inc. | | | |
| 31 | 04/19/23 | STIP | **First Stipulation of Facts (Exhibits 1-J through 7-J)** | Resp. & Petr. Liberty Global, Inc. | | 04/19/23 | B |
| 32 | 05/09/23 | M106 | **Motion to Submit Case Pursuant to Rule 122 (No Objection)** (No Objection) | Resp. & Petr. Liberty Global, Inc. | ORD 5/11/23 | 05/09/23 | B |
| 33 | 05/11/23 | OSUB | **Order that case is submitted to Judge Toro and the parties' Joint Motion for Leave to Submit Case Under Tax Court Rule 122 is granted as stated herein. The parties' simultaneous opening briefs shall be filed on or before June 30, 2023, and the parties' simultaneous answering briefs shall be filed on or before August 11, 2023, as requested by the parties.** | | | 05/11/23 | B |
| 34 | 06/30/23 | SIOB | **Simultaneous Opening Brief** | Resp. | | 07/03/23 | B |
| 35 | 06/30/23 | SIOB | **Simultaneous Opening Brief** | Petr. Liberty Global, Inc. | | 07/03/23 | B |
| 36 | 08/11/23 | SIMB | **Simultaneous Answering Memorandum Brief** | Resp. | | 08/15/23 | B |
| 37 | 08/11/23 | SIRB | **Simultaneous Reply Brief** | Petr. Liberty Global, Inc. | | 08/15/23 | B |

| No. | Date | Event | Filings and proceedings | Filed by | Action | Served | Parties |
|-----|------|-------|-------------------------|----------|--------|--------|---------|
| 38 | 11/08/23 | TCOP | **T.C. Opinion Judge Toro 161 T.C. No. 10 (Decision will be entered under Rule 155.)** | | | 11/08/23 | B |
| 39 | 11/08/23 | O | **Order parties by January 8, 2024, shall file computations for entry of decision under Rule 155, Tax Court Rules of Practice and Procedure.** | | | 11/08/23 | B |
| 40 | 01/08/24 | M011 | **Motion for Extension of Time (for filing Rule 155 Computations) (No Objection)** (No Objection) | Resp. & Petr. Liberty Global, Inc. | ORD 1/9/24 | 01/08/24 | B |
| 41 | 01/09/24 | O | **Motion for Extension of Time GRANTED - Rule 155 computations to be filed by 3/11/2024** | | | 01/09/24 | B |
| 42 | 03/11/24 | M011 | **Motion for Extension of Time to March 25, 2024 to File Rule 155 Computations (No Objection)** (No Objection) | Resp. & Petr. Liberty Global, Inc. | ORD 03/12/24 | 03/11/24 | B |
| 43 | 03/12/24 | O | **Order the parties' Joint Motion for Extension of Time is granted in that time is extended to March 25, 2024 to file Rule 155 Computations.** | | | 03/12/24 | B |
| 44 | 03/25/24 | ACED | **Agreed Computation for Entry of Decision** | Resp. & Petr. Liberty Global, Inc. | | 03/25/24 | B |
| 45 | 03/27/24 | DEC | **Decision Entered, Judge Toro** | | | 03/27/24 | B |
| 46 | 06/21/24 | NOA | **Notice of Appeal for the 10th Circuit** | Petr. Liberty | | 06/21/24 | B |

| No. | Date | Event | Filings and proceedings | Filed by | Action | Served | Parties |
|-----|------|-------|------------------------|----------|--------|--------|---------|
| | | | | Global, Inc. | | | |
| 47 | 06/21/24 | AFP | **Appellate Filing Fee Received** | Petr. Liberty Global, Inc. | | 06/24/24 | B |
| 48 | 06/24/24 | NOT | **Notice of filing of notice of appeal to Court of Appeals** | | | 06/24/24 | B |
| 49 | 07/02/24 | EA | **Entry of Appearance for Respondent** | Resp. | | 07/02/24 | B |

**LGI'S PETITION,**
**T.C. DOC. 1 (JAN. 26, 2021)**

Received
01/26/21 05:47 pm

Filed
01/26/21

Liberty Global, Inc.,

     Petitioner

     v.

Commissioner of Internal Revenue

     Respondent

Electronically Filed
Docket No. 341-21

## Petition

# UNITED STATES TAX COURT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LIBERTY GLOBAL, INC.,

                          :

             Petitioner,

                          :

    - v -

                          :  Docket No._____

COMMISSIONER OF INTERNAL
REVENUE,                   :

             Respondent.      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## PETITION

Liberty Global, Inc. ("LGI" or "Petitioner")[1] hereby petitions for a redetermination of the deficiencies in income tax for the taxable years ending December 31, 2010 (the "2010 Tax Year") and December 31, 2014 (the "2014 Tax Year" and, collectively with the 2010 Tax Year, the "Tax Years"), determined by the Commissioner of Internal Revenue ("Respondent") in Respondent's notices of deficiency dated October 30, 2020 (the "Notices").

As the basis for this proceeding, Petitioner alleges as follows:

---

[1] Petitioner, LGI, is the successor-in-interest to another corporation named Liberty Global, Inc. (the "Former LGI"), which was in existence in the 2010 Tax Year.  In this Petition, we refer to LGI and the Former LGI interchangeably.

1.    **Taxpayer Information.**

(a)    Petitioner is a Delaware corporation with a mailing address of 1550 Wewatta Street, Suite 1000, Denver, Colorado 80202-6300.

(b)    Petitioner is the ultimate U.S. parent company, and the direct or indirect owner of an affiliated group of U.S. and foreign corporations (the "LGI Global Group"). The U.S. group of corporations file a consolidated U.S. federal income tax return and are referred to as the "LGI Consolidated Group."

(c)    Petitioner timely filed its Forms 1120 for the Tax Years with the Internal Revenue Service ("IRS") Center in Ogden, Utah.

2.    **Notice of Deficiency.**

(a)    The Notices upon which this Petition is based are dated October 30, 2020, and propose adjustments to Petitioner's Forms 1120 for the 2010 Tax Year and 2014 Tax Year.

(b)    The Notices were issued by the Independent Office of Appeals of the Internal Revenue Service. Copies of the Notices are attached hereto and are marked "Exhibit A" and "Exhibit B."

3.     **Amounts in Dispute.**

(a)     The Notices assert deficiencies in federal income taxes in the amount of $241,791,309 for the 2010 Tax Year and $2,014,291 for the 2014 Tax Year.  The full amounts of those asserted deficiencies are in dispute.

4.     **Assignments of Error.**  Respondent's asserted deficiencies are based upon the following errors:

(a)     Respondent erroneously determined that gain recognized by Petitioner on its disposition of stock in a controlled foreign corporation ("CFC") during the 2010 Tax Year was U.S. source income for purposes of determining LGI's Internal Revenue Code ("Code") section 904 foreign tax credit limitation;

(b)     On the basis of the error in paragraph 4.a, Respondent:

    i.   Erred in determining that Petitioner's foreign tax credit for the 2010 Tax Year should be reduced by $241,791,309;

    ii.  Erred in determining that Petitioner's overall foreign loss ("OFL") account as of the end of the 2010 Tax Year should reflect OFLs in the amounts of $1,021,707,013 and $98,250,860 in the general limitation category and passive income category, respectively.

iii.  Erred in determining that Petitioner's foreign tax credit for the

2014 Tax Year should be reduced by $2,014,291.

5.    **Facts.**  The facts upon which the Petitioner relies as the basis for

Petitioner's assignments of error are as follows:

*Background*

(a)    The primary issue in this case is whether all of the gain

recognized by LGI on the sale of stock in a Japanese telecommunications

company, Jupiter Telecommunications Co. Ltd. ("J:COM"), to an unrelated third

party (the "J:COM Sale") should be treated as foreign source income.  LGI's

entitlement to claim the foreign tax credits in dispute depends on treating all of the

gain from the J:COM Sale as foreign source income.

(b)    If LGI's gain on the J:COM Sale is properly treated as entirely

foreign source income, then LGI is entitled to claim the foreign tax credits at issue

for its 2010 and 2014 Tax Years.

(c)    As detailed below, the plain language of Treas. Reg. § 1.904(f)-

2(d)(1), as in effect in 2010, requires the gain at issue to be treated as foreign

source income.

4

(d)     Accordingly, LGI is entitled to the foreign tax credits disallowed in the Notices, and LGI has no deficiencies for the Tax Years before the Court.

### *LGI's Telecommunications Business and its Investment in J:COM*

(e)     LGI, together with its parent Liberty Global plc and other affiliates, operates one of the world's leading converged video, broadband and communications businesses.

(f)     In 1995, LGI's predecessor, Tele-Communications International, Inc., formed J:COM as a joint venture with Sumitomo Corporation ("Sumitomo"), an unrelated Japanese corporation.

(g)     J:COM operates a telecommunications business in Japan.  By the time of the J:COM Sale in 2010, J:COM grew to be a leading provider of wireless telephone, cable, and internet services in Japan.

### *The J:COM Sale and Its U.S. Tax Consequences*

(h)     In 2010, LGI decided to exit the Japanese market by selling its interest in J:COM.  As LGI announced at the time, LGI decided to engage in the J:COM sale, because "[e]xiting the Japanese market at a substantial premium

5

allows us to redirect our capital into more strategic consolidation opportunities in our core markets as well as our ongoing stock buyback initiatives."[2]

(i)     On February 18, 2010, the LGI Consolidated Group sold its interest in J:COM to KDDI Corporation ("KDDI"), an unrelated third-party, for $3,961,608,988 (i.e., the J:COM Sale).

(j)     As a result of the J:COM Sale, the LGI Consolidated Group recognized income of $3,256,557,143.

(k)     Of the amount described in Paragraph 5.(j), $438,135,179 was treated as a dividend under Code section 1248.  There is no dispute in this case regarding the character or treatment of this amount that was characterized as a dividend.

(l)     The remaining amount, or $2,818,421,963, was treated as gain from the J:COM Sale.  The parties dispute whether all or just a portion of this gain should be treated as foreign source income.

(m)     All of the gain described in Paragraph (l) is treated as foreign source income under Code section 904(f)(3) and the regulations thereunder.

---

[2] Liberty Global, Inc., Ex. 99.1 to Current Report (Form 8-K) (Jan. 25, 2010).

(n)     Code section 865 sets forth general rules for determining the source of income from the sale of stock and other personal property.

(o)     Code section 904(f)(3) sets forth special rules for determining the source of income realized on the sale of property which has been used predominantly without the United States in a trade or business (like the J:COM stock) where a taxpayer has an "overall foreign loss" as defined in Code section 904(f)(2).  At the time of the J:COM Sale, LGI had an OFL account balance of $474,372,166.

(p)     The Treasury Regulations in effect in 2010 plainly require that where section 904(f)(3) is applicable, <u>all gain</u> realized on the sale of property will be treated as foreign source income.  Specifically, Treas. Reg. § 1.904(f)-2(d)(1), as in effect in 2010, provided:

> "If a taxpayer disposes of property used or held for use predominantly without the United States in a trade or business during a taxable year and that property generates foreign source taxable income subject to a separate limitation to which paragraph (a) of this section is applicable, (i) gain will be recognized on the disposition of such property, (ii) <u>such gain will be treated as foreign source income subject to the same limitation as the income the property generated</u>, and (iii) the applicable overall foreign loss account shall be recaptured as provided in paragraphs (d)(2), (d)(3), and (d)(4) of this section. See paragraph (d)(5) of this section for definitions."

(Emphasis added.)

(q)     Thus, the Treasury Regulations, as in effect in 2010, required LGI to treat <u>all gain</u> recognized on the J:COM Sale as foreign source income.

### *Respondent's Improper Adjustments*

(r)     While Respondent agrees that some of the gain from the J:COM Sale should be treated as foreign source income, his Notices improperly take the position that much of that gain is U.S. source income.  That position directly contradicts the plain language of the regulations in force and effect at the time of the J:COM Sale.

(s)     Respondent agrees that Code section 904(f)(3) is applicable to the J:COM Sale.

(t)     Respondent agrees that, under Code section 904(f)(3), gain from the J:COM Sale is treated as foreign source income to the extent of LGI's OFL account balance.

(u)     However, Respondent treats the remaining, non-dividend gain from the J:COM Sale as U.S. source income.

(v)     Respondent's position described in Paragraph 5.(u) has the effect of disallowing more than $240 million in foreign tax credits claimed by LGI. Respondent does not dispute that LGI satisfied the other requirements for claiming the foreign tax credits in dispute.

8

(w)    Respondent's position is contrary to the plain language of Treas. Reg. § 1.904(f)-2(d)(1), as in effect in 2010.

(x)    As described above in Paragraphs (p)-(q), that regulation plainly provided that where a taxpayer disposes of property like the J:COM stock, gain on that disposition "will be treated as foreign source income" without any limit on the amount of gain resourced.

(y)    In 2012, Treasury amended the regulations under Code section 904(f)(3) to impose a limit on the amount of gain resourced as foreign source income.  Treasury removed the language quoted in paragraph 5.(x).  In addition, Treasury substantially revised Treas. Reg. § 1.904(f)-2(d)(3)(ii) by adding a new paragraph to specifically limit the amount of gain that can be treated as foreign source income:  "The amount of gain treated as foreign source and the amount of overall foreign loss recaptured shall be the lesser of the balance in the overall foreign loss account or the full amount of the gain recognized on the disposition."

(z)    The 2012 amendments changed the rule.  Prior to those amendments, the regulations placed no limit on the amount of gain resourced as foreign source income.  The 2012 amendments added the limitation that Respondent seeks to impose in this case:  i.e., to cap the amount of gain from the J:COM Sale treated as foreign source at "the lesser of the balance in the overall

9

foreign loss account or the full amount of the gain recognized on the disposition." Treas. Reg. § 1.904(f)-2(d)(3)(ii) (2012).

(aa)   Respondent cannot retroactively apply the 2012 amended regulations to the J:COM Sale.  Instead, Respondent is bound by the regulations in force and effect at the time of the J:COM Sale—i.e., in 2010.[3]  Those regulations unambiguously mandated that the gain from the J:COM Sale "will be treated as foreign source income."  Treas. Reg. § 1.904(f)-2(d)(1) (2010).  Thus, all of the gain from the J:COM Sale is properly treated as foreign source and the deficiencies determined in the Notices are meritless.

### *Procedural History*

(bb)   Prior to the issuance of the Notices, LGI and Respondent attempted to resolve this dispute through IRS Appeals.

(cc)   Through the "Fast Track" Appeals process, LGI, IRS Appeals, and IRS Exam agreed in principle to resolve this dispute (the "Agreement-in-Principle").

---

[3] For this reason, the 2012 amended regulations are not applicable in this case, even with respect to the 2014 Tax Year.  Respondent's disallowance of foreign tax credits in the 2014 Tax Year is premised on his failure to properly treat all of the gain from the J:COM Sale as foreign source.

(dd)    Petitioner executed a closing agreement reflecting the Agreement-in-Principle on June 10, 2014 (the "Closing Agreement").

(ee)    Due to the carryback of a net operating loss from LGI's 2011 tax year to the 2010 Tax Year, the proposed settlement would have resulted in a refund to LGI in excess of the statutory threshold in Code section 6405(a).  Thus, before counter-signing the Closing Agreement, Respondent submitted a report to the Joint Committee on Taxation ("JCT") regarding the Agreement-in-Principle.

(ff)    On January 20, 2015, Respondent informed LGI that the JCT had recommended that Respondent not resolve the case under the terms of the Agreement-in-Principle.

(gg)    Respondent refused to resolve this dispute under the terms of the Agreement-in-Principle.

(hh)    LGI and Respondent were unable to resolve the case, and Respondent issued the Notices.

### *Alternative Argument #1: Limitation on Gain from J:COM Sale*

(ii)    For the reasons set forth above, the deficiencies in Respondent's Notices are meritless and should be rejected.  Should the Court determine otherwise, then LGI is entitled to reduce the amount of gain recognized on the J:COM Sale and a corresponding reduction in income for its 2010 Tax Year.

(jj)     Specifically, Code section 904(f)(3) provides that for transactions like the J:COM Sale, "the taxpayer, <u>notwithstanding any other provision of this chapter (other than [Code section 904(f)(1)]), shall be deemed to have received and recognized taxable income</u> from sources without the United States in the taxable year of the disposition, by reason of such disposition, <u>in an amount equal to the lesser of the excess of the fair market value of such property over the taxpayer's adjusted basis in such property or the remaining amount of the [taxpayer's OFL account balance]</u>."  (Emphasis added.)

(kk)   Thus, the plain language of Code section 904(f)(3) caps the amount of gain recognized by LGI on the J:COM sale at the amount of LGI's OFL account balance, or $474,372,166.

### *Alternative Argument #2: Election to Deduct Foreign Income Taxes*

(ll)     For the reasons set forth above, the deficiencies in Respondent's Notices are meritless and should be rejected.  Should the Court determine otherwise, LGI elects not to take the benefit of Code section 901 to credit foreign income taxes for its 2010 Tax Year and, therefore, is entitled to a deduction for foreign income taxes under section 164 and a reversal of income included on its original 2010 Tax Return under Code section 78.  *See* Treas. Reg. § 1.901-1(d); Code section 164(a)(3); Code section 78.

**WHEREFORE, Petitioner prays that this Court:**

1.      Determine that there is no deficiency in Petitioner's tax for the Tax Years;

2.      In the alternative, determine that the gain recognized by LGI on the J:COM Sale should be reduced and that Petitioner's deficiencies should be reduced accordingly;

3.      In the alternative, determine that Petitioner is entitled to a deduction in its 2010 Tax Year for foreign income taxes paid or accrued and that Petitioner's deficiencies should be reduced accordingly;

4.      Grant to Petitioner such other and further relief as the Court, in its discretion, deems just and proper.

Dated:  January 26, 2021                    Respectfully submitted,


                                        /s/ Rajiv Madan
                                        Rajiv Madan
                                             Tax Court Bar No. MR1190
                                        Counsel for Petitioner
                                        Skadden, Arps, Slate, Meagher
                                             & Flom LLP
                                        1440 New York Ave., NW
                                        Washington, D.C. 20005
                                        (202) 371-7020
                                        (202) 661-9020 (fax)
                                        raj.madan@skadden.com

13

**EXHIBIT A: NOTICE OF DEFICIENCY,
DATED OCT. 30, 2020**



**Department of the Treasury**
**Internal Revenue Service**
**Independent Office of Appeals**
300 North Los Angeles Street
MS LA-8000 Room 3054
Los Angeles, CA 90012

Date:    OCT 3 0 2020

Person to contact:
Name: Gerald A Nielsen
Employee ID Number: 1000235305
Phone: 213- 372-4252
Fax: 213-576-4803
Hours:

Social Security number / Employer ID number:

Form:
1120

Last day to file petition with US tax court:
JAN 2 8 2021

LIBERTY GLOBAL INC.(EIN ████████),FORMERLY
LYNX US MERGERCO 1 CORP, AS SUCCESSOR TO
LIBERTY GLOBAL INC. (EIN ████████)
1550 WEWATTA ST STE 1000
DENVER CO  80202-6300

**Certified Mail**        7016 0340 0000 2277 5424

### Notice of Deficiency

Tax Year Ended:            December 31, 2010

Deficiency:
Increase in tax              $241,791,309.00

Dear LIBERTY GLOBAL INC:

You and your affiliated companies owe additional tax or other amounts, or both, for the tax years shown above. This letter is your **Notice of Deficiency** as we're required by law to send you. The enclosed statement shows how we figured the deficiency.

**If you agree with the Notice of Deficiency**
If you agree with our determination, sign the enclosed waiver form and return it to us at the address at the top of this page. Sending this now can help limit the accumulation of interest.

**If you disagree with the Notice of Deficiency**
If you want to contest our final determination, you have 90 days from the date of this letter (150 days if addressed to you outside of the United States) to file a petition with the United States Tax Court.

**How to file your petition**
You can get a petition form and the rules for filing from the Tax Court's website at www.ustaxcourt.gov by contacting the Office of the Clerk at the address below, or by calling 202-521-0700. Do not send your petition form to the Internal Revenue Service. Do send your completed petition form, a copy of this letter, and copies of all statements and schedules you received with this letter to the address below.

United States Tax Court
400 Second Street, NW
Washington, DC 20217

You can include all tax years you are contesting on one petition form.

**Letter 901 (Rev. 1-2020)**
Catalog Number 31589S

The Tax Court has a simplified procedure for small tax cases when the amount of the deficiency you dispute does not exceed $50,000 (including additions to tax and penalties, but not including interest) for any tax year. If you plan to file a petition for one (1) or more tax years and the amount in dispute for any tax year exceeds $50,000 (including additions to tax and penalties, but not including interest), you can't use this simplified procedure. If you use the simplified procedure, you can't appeal the Tax Court's decision. You can get information about the simplified procedure from www.ustaxcourt.gov or by writing to the court at the address above.

You can represent yourself before the Tax Court, or anyone allowed to practice before the Tax Court can represent you.

**Time limits on filing a petition**
**The court can't consider your case if you file the petition late.**
- A petition is considered timely filed if the Tax Court receives it within
  - 90 days from the date this letter was mailed to you, or
  - 150 days from the date this letter was mailed to you if this letter is addressed to you outside of the United States.
- A petition is also generally considered timely if the United States Postal Service postmark date is within the 90 or 150-day period and the envelope containing the petition is properly addressed with the correct postage. The postmark rule doesn't apply if mailed from a foreign country.
- A petition is also generally considered timely if the date recorded by a designated private delivery service in its database as received is within the 90 or 150-day period. Not all services offered by private delivery companies are designated delivery services. For a list of designated delivery services available for domestic and international mailings and rules pertaining to them, see Notice 2016-30, which is available on the IRS website at www.irs.gov/irb/2016-18_IRB/ar07.html. Please note that the list of approved delivery companies may be subject to change.
- The time you have to file a petition with the Tax Court is set by law and can't be extended or suspended, even for reasonable cause. We can't change the allowable time for filing a petition with the Tax Court.

**If we don't hear from you**
If you decide not to sign and return the waiver, and you don't file a timely petition with the Tax Court we'll assess and bill you for the deficiency (and applicable penalties and interest) after 90 days from the date of this letter (150 days if this letter is addressed to you outside of the United States).

**Note:** If you are a C corporation, we're required by Internal Revenue Code Section 6621(c) to charge an interest rate two percent higher than the normal rate on corporate underpayments in excess of $100,000.

**If you need more assistance**
If you have questions, you can contact the person at the top of this letter. If you write, include a copy of this letter, your telephone number, and the best hours to reach you.

**Letter 901 (Rev. 1-2020)**
Catalog Number 31589S

**Information about the IRS Taxpayer Advocate Service**
The IRS office whose phone number appears at the top of the notice can best address and access your tax information and help get you answers. However, you may be eligible for free help from the Taxpayer Advocate Service (TAS) if you can't resolve your tax problem with the IRS, or you believe an IRS procedure just isn't working as it should. TAS is an independent organization within the IRS that helps taxpayers and protects taxpayer rights. Contact your local Taxpayer Advocate Office at:

Internal Revenue Service
Taxpayer Advocate Office
1999 Broadway, MS 1005DEN
Denver, CO 80202
Telephone: 303-603-4600
Fax: 855-829-3838

Or call TAS at 877-777-4778. For more information about TAS and your rights under the Taxpayer Bill of Rights, go to taxpayeradvocate.irs.gov. Do not send your Tax Court petition to the TAS address listed above. Use the Tax Court address provided earlier in the letter. Contacting TAS does not extend the time to file a petition.

Thank you for your cooperation.

Sincerely,

Charles P Rettig
Commissioner
By

Gerald A Nielsen
Appeals Team Case Leader

Enclosures:
Waiver
Notice of Deficiency statement

**Letter 901 (Rev. 1-2020)**
Catalog Number 31589S

| Form **4089**<br>(Rev. January 1983) | Department of the Treasury - Internal Revenue Service<br>**Notice of Deficiency - Waiver** | Symbols:<br>AP:EX:LA:GAN:RNH |
|---|---|---|

**Name(s), SSN or EIN, and address of taxpayer(s)**

LIBERTY GLOBAL INC. (EIN █████
████), FORMERLY LYNX US
MERGERCO 1 CORP, AS
SUCCESSOR TO LIBERTY GLOBAL
INC. (EIN ██████████)
1550 WEWATTA ST STE 1000
DENVER CO  80202-6300

| Kind of Tax<br><br>Income | ___ Copy to Authorized Representative |
|---|---|

| Tax Year Ended | Deficiency |
|---|---|
| | Increase in Tax |
| 12/31/2010 | $241,791,309.00 |

**Interest, as provided by law, will be charged on the unpaid liability until it is paid in full. It is determined that the deficiency shown above is a large corporate underpayment subject to the additional 2% interest provided by section 6621(c) of the Internal Revenue Code. See the attached explanation for the above deficiencies. Affiliations Statement attached.**

I consent to the immediate assessment and collection of the deficiencies (increase in tax and penalties) shown above, plus any interest provided by law.

| Your<br>Signature | | |
|---|---|---|
| | | *(Date signed)* |
| Spouse's Signature,<br>If A Joint Return<br>Was Filed | | |
| | | *(Date signed)* |
| Taxpayer's<br>Representative<br>Sign Here | | |
| | | *(Date signed)* |
| Corporate<br>Name: | | |

| Corporate<br>Officers<br>Sign Here | *(Signature)* | *(Title)* | *(Date signed)* |
|---|---|---|---|
| | *(Signature)* | *(Title)* | *(Date signed)* |

**Note:**
    If you consent to the assessment of the amounts shown in this waiver, please sign and return it in order to limit the accumulation of interest and expedite our bill to you. Your consent will not prevent you from filing a claim for refund (after you have paid the tax) if you later believe you are entitled to a refund. It will not prevent us from later determining, if necessary, that you owe additional tax; nor will it extend the time provided by law for either action.
    If you later file a claim and the Internal Revenue Service disallows it, you may file suit for refund in a district court or in the United States Claims Court, but you may not file a petition with the United States Tax Court.

**Who Must Sign**
    If this waiver is for any year(s) for which you filed a joint return, both you and your spouse must sign the original and duplicate of this form. Sign your name exactly as it appears on the return. If you are acting under power of attorney for your spouse, you may sign as agent for him or her.
    For an agent or attorney acting under a power of attorney, a power of attorney must be sent with this form if not previously filed.
    For a person acting in a fiduciary capacity (executor, administrator, trustee), file Form 56, Notice Concerning Fiduciary Relationship, with this form if not previously filed.
    For a corporation, enter the name of the corporation followed by the signature and title of the officer(s) authorized to sign.

**If you agree, please sign one copy and return it; keep the other copy for your records.**

| Department of the Treasury - Internal Revenue Service | www.irs.gov | Form **4089**-C (Rev. 01/1983) |
|---|---|---|

## NOTICE OF DEFICIENCY - STATEMENT

**LIBERTY GLOBAL INC. (EIN ███████, FORMERLY LYNX US MERGERCO 1 CORP,
AS SUCCESSOR TO LIBERTY GLOBAL INC. (EIN ███████
Tax Year Ended 12/31/2010**

### Attachment to Form 4089:  Affiliations Statement

| NAME OF CORPORATION | Years Affiliated |
|---|---|
| PARENT COMPANY | |
| Liberty Global Inc. | 12/31/2010 |
| | |
| SUBSIDIARY COMPANIES: | |
| Associated SMR Inc. | 12/31/2010 |
| Europe Acquisition Inc. | 12/31/2010 |
| LGI International Inc. | 12/31/2010 |
| Liberty Chile Inc. | 12/31/2010 |
| Liberty FA Holdings Inc. | 12/31/2010 |
| Liberty Global Europe Inc. | 12/31/2010 |
| Liberty Home Shop International Inc. | 12/31/2010 |
| Liberty International Cable Management Inc. | 12/31/2010 |
| Liberty Japan V Inc. | 12/31/2010 |
| Liberty Japan Inc. | 12/31/2010 |
| Liberty Jupiter Finance Inc. | 12/31/2010 |
| Liberty Jupiter Vod Inc. | 12/31/2010 |
| Liberty Jupiter Inc. | 12/31/2010 |
| Liberty NC X Inc. | 12/31/2010 |
| LGI International Holdings Inc. | 12/31/2010 |
| Liberty UGC Holdings Inc. | 12/31/2010 |
| Liberty UK Radio Inc. | 12/31/2010 |
| Liberty VIV II Inc. | 12/31/2010 |
| LMI Japan Management Inc. | 12/31/2010 |
| LGI Ventures Management Inc. | 12/31/2010 |
| Unitedglobalcom Inc. | 12/31/2010 |
| LGI Broadband Operations Inc. | 12/31/2010 |

The tax liability of Liberty Global Inc. and each subsidiary company named above is stated
as provided for by regulations prescribed under Section 1502 of the Internal Revenue Code.
The deficiency shown will be assessed severally against each corporation named above in
accordance with regulations under Section 1502 of the Internal Revenue Code.

2

| Form **5278**<br>(Rev. June 2011) | **Statement - Income Tax Changes** | | Schedule<br>1 |
|---|---|---|---|

| **1. Name(s) of taxpayer(s)**<br>Liberty Global Inc. (EIN ▮▮▮▮▮ , formerly Lynx US Mergerco 1 Corp,<br>as successor to Liberty Global Inc. (EIN ▮▮▮▮▮ | | **2.**<br>Notice of Deficiency | |
|---|---|---|---|

| **3. Taxpayer Identification Number**<br>▮▮▮▮▮ | **4. Form number**<br>1120 | **5. Docket number** | **6. Office symbols**<br>AP:AO:LA:GAN:RNH |
|---|---|---|---|

| | | Tax Year(s) Ended | | |
|---|---|---|---|---|
| **7. Adjustments to income** | | 12/31/2010 | | |
| a. | | | | |
| b. | | | | |
| c. | | | | |
| d. | | | | |
| e. | | | | |
| f. | | | | |
| g. | | | | |
| h. | | | | |
| **8. Total adjustments–See Schedule 2** | | 0 | | |
| 9. Taxable income as shown in | Form 870-AD dated 10/30/2019,<br>Partial Agreement (See Schedule 3)  Form 3610 dated 2/22/2019,<br>and Form 5278 (sch. 1 to Form 3610) | 1,201,934,957 | | |
| **10. Taxable income as revised** | | 1,201,934,957 | | |
| **11. Tax** | Tax Method _____ | 420,677,235 | | |
| | Filing Status _____ | | | |
| 12. Alternative tax, if applicable | | | | |
| 13. Alternative minimum tax *(Starting in tax year 2000)* | | | | |
| **14. Corrected tax liability -** *(lesser of line 11 or 12 plus line 13)* | | 420,677,235 | | |
| 15. Less credits | a. Foreign Tax Credit–See Schedule 2 + 4 | 0 | | |
| | b. Minimum Tax Credit–See Schedule 5 | 217,833 | | |
| | c. | | | |
| **16. Balance -** *(line 14 less total of lines 15a - 15c)* | | 420,459,402 | | |
| 17. Plus other<br>taxes | a. | | | |
| | b. | | | |
| | c. | | | |
| **18. Total corrected tax liability -** *(line 16 plus lines 17a - 17c)* | | 420,459,402 | | |
| 19. Total tax ~~shown on return or~~ as previously adjusted–See Schedule 3 | | 178,668,093 | | |
| 20 Adjustments:<br>increase or<br>(decrease) to: | a. | | | |
| | b. | | | |
| | c. | | | |
| **21. Deficiency - Increase in tax** *(overassessment - decrease in tax)*<br>*(line 18 less line 19 adjusted by lines 20a - 20c)* | | 241,791,309 | | |
| 22. Adjustments to prepayment credits - Increase *(decrease)* | | | | |
| **23. Balance due or *(Overpayment)*** excluding interest and penalties<br>*(line 21 adjusted by line 22)* | | 241,791,309 | | |
| **24. Penalties and/or Additions To Tax** *(listed below)* | | | | |

Form 5278 (Rev. 6-2011)

3

| Form **886-A**<br>(Rev. January 1994) | **Explanations of Items** | Schedule number or exhibit<br><br>2 |
|---|---|---|
| Name of Taxpayer<br>Liberty Global Inc. (EIN ▮▮▮▮▮ formerly<br>Lynx US Mergerco 1 Corp, as successor to<br>Liberty Global Inc. (EIN ▮▮▮▮▮ | Tax Identification Number<br><br>▮▮▮▮▮ | Year/Period Ended<br><br>December 31, 2010 |

### Line 15a: Foreign Tax Credit – Primary Issue

It is determined that no foreign tax credit is allowed due to adjustments affecting foreign source income. The amount of U.S. source gain that is recharacterized as foreign source under Internal Revenue Code section 904(f)(3) is limited to the amount necessary to recapture of the Overall Foreign Losses ("OFLs") in the OFL account at the beginning of the year. Therefore, your 2010 foreign source income is overstated by the following amounts:

|  | **2010** |
|---|---|
| Foreign Source General Limitation Income Overstatement | $2,315,865,577 |
| Foreign Source Passive Limitation Income Overstatement | 28,184,220 |
| Total Foreign Source Income Overstatement | $2,344,049,797 |

Accordingly, your foreign tax credit allowed for tax year ended December 31, 2010 is $0.00 rather than the $241,791,309.00.

See Schedule 4 for computations.

### Line 15a: Foreign Tax Credit – Secondary Issue

The resourcing rule under Internal Revenue Code section 904(f)(3) does not apply to recharacterize U.S. source gain in order to recapture OFLs that are added to the OFL account in the same year as the U.S. source gain is recognized. Therefore, the ending OFL account per this Notice, reflecting OFLs that were added in 2010, are $1,021,707,013 and $98,250,860 in the general limitation category and passive income category, respectively.

See Schedule 4 for computations.

Liberty Global Inc. (EIN ██████████, formerly                    Schedule 3
Lynx US Mergerco 1 Corp, as successor to
Liberty Global Inc. (EIN ██████████

## DETAIL OF TAXABLE INCOME AND TAX PREVIOUSLY ASSESSED

| TAX YEAR ENDED | | |
|---|---|---|
| | 12/31/2010 | |
| | Taxable Income | Tax Liability |
| Original return | 1,242,928,735 | 212,428,078 |
| Form 1139--Tentative Allowance | | (31,854,037) |
| Partial Agreement | (40,993,778) | (1,905,948) |
| Taxable income previously assessed | 1,201,934,957 | |
| Total tax previously assessed - to Schedule 1 | | 178,668,093 |

Liberty Global Inc. (EIN █████████ formerly Lynx US Mergerco 1 Corp,
as successor to Liberty Global Inc. (EIN █████████
Schedule 4

------------------------------------------------ Summary of Regular FTC Allowed ------------------------------------------------

|  | 21: As Determined |
| --- | --- |
| Year Ending: | 12-31-2010 |
| **ELECTION:** |  |
| Deduct Foreign Tax (Y/N) | No |
| **REGULAR FTC ALLOWED:** |  |
| Cat 1: General Limitation Income | 0 |
| Cat 2: Passive Limitation Income | 0 |
|  | ------------------------- |
| Total FTC Before Boycott | 0 |
| Add: Adjustment | 0 |
| Less: Boycott Reduction | 0 |
|  | ------------------------- |
| Total Regular FTC Allowed | 0 |
|  | ================ |
| **DIVIDEND GROSS-UP FROM CATEGORIES (S78):** |  |
| Cat 1: General Limitation Income | 248,319,708 |
| Cat 2: Passive Limitation Income | 0 |
|  | ------------------------- |
| Total Gross-up from Categories | 248,319,708 |
|  | ================ |
| **AJCA 2004 S965 REPATRIATION (2004-2005):** |  |
| Tax on NCDs | n/a |
| FTC on NCDs Before Adjustment | n/a |
| Adjustment to FTC on NCDs | n/a |
|  | ------------------------- |
| FTC on Nondeductible CFC Dividends | n/a |
| FTC on Other FSTI | n/a |
|  | ------------------------- |
| Total FTC Before Boycott | n/a |
|  | ================ |

- App.33 -

Liberty Global Inc. (EIN ███████, formerly Lynx US Mergerco 1 Corp,
as successor to Liberty Global Inc. (EIN ███████
Schedule 4

-------------------------------- Reg FTC Allowed - Category 1: General Limitation Income --------------------------------

|  | 21: As Determined |
| --- | --- |
| Year Ending for FTC Category 1: | 12-31-2010 |
| **FTC AVAILABLE:** | |
| Current FTC | 251,378,751 |
| FTC Carryover | 13,118,503 |
| FTC Carryback | 2,445,054 |
| FOGEI Adjustment | 0 |
| Total FTC Available | 266,942,308 |
| **FTC FRACTION:** | |
| Numerator of Fraction | 0 |
| Taxable Income | 1,201,934,957 |
| Adjustments | 0 |
| Denominator of Fraction | 1,201,934,957 |
| Limitation Fraction | 0 |
| **NET TAX LIABILITY:** | |
| Federal Income Tax | 420,677,235 |
| Add: Inc Tax Adjustment | 0 |
| Tax on FTC Deducted | 0 |
| Less: Possessions Credit | 0 |
| Net Tax Liability | 420,677,235 |
| **FTC LIMITATION:** | |
| Section 904 Limitation | 0 |
| AJCA 2004 S965(e) Limitation | n/a |
| Limitation Adjustment | 0 |
| FTC Limitation | 0 |
| **FTC ALLOWED:** | |
| FTC Allowed Before Adjustment | 0 |
| Adjustment to FTC Allowed | 0 |
| FTC Allowed | 0 |
| **AJCA 2004 S965 REPATRIATION:** | |
| FTC on Nondeductible CFC Dividends | n/a |
| **EXCESS FTC:** | |
| Excess FTC Available | 266,942,308 |
| Excess FTC Not Available | 0 |
| **EXCESS LIMITATION:** | |
| Excess Limitation | 0 |
| **ELECTION:** | |
| Deduct Foreign Tax (Y/N) | No |

Liberty Global Inc. (EIN ███████, formerly Lynx US Mergerco 1 Corp,
as successor to Liberty Global Inc. (EIN ███████)
Schedule 4

-------------------------------------------- Reg FTC Allowed - Category 2: Passive Limitation Income --------------------------------------------

| | 21: As Determined |
|---|---|
| Year Ending for FTC Category 2: | 12-31-2010 |
| **FTC AVAILABLE:** | |
| Current FTC | 637,705 |
| FTC Carryover | 2,590,569 |
| FTC Carryback | 0 |
| FOGEI Adjustment | n/a |
| | -------------------------- |
| Total FTC Available | 3,228,274 |
| **FTC FRACTION:** | |
| Numerator of Fraction | 0 |
| Taxable Income | 1,201,934,957 |
| Adjustments | 0 |
| | -------------------------- |
| Denominator of Fraction | 1,201,934,957 |
| | -------------------------- |
| Limitation Fraction | 0 |
| | ================ |
| **NET TAX LIABILITY:** | |
| Federal Income Tax | 420,677,235 |
| Add: Inc Tax Adjustment | 0 |
| Tax on FTC Deducted | 0 |
| Less: Possessions Credit | 0 |
| | -------------------------- |
| Net Tax Liability | 420,677,235 |
| | ================ |
| **FTC LIMITATION:** | |
| Section 904 Limitation | 0 |
| AJCA 2004 S965(e) Limitation | n/a |
| Limitation Adjustment | 0 |
| | -------------------------- |
| FTC Limitation | 0 |
| | ================ |
| **FTC ALLOWED:** | |
| FTC Allowed Before Adjustment | 0 |
| Adjustment to FTC Allowed | 0 |
| | -------------------------- |
| FTC Allowed | 0 |
| | ================ |
| **AJCA 2004 S965 REPATRIATION:** | |
| FTC on Nondeductible CFC Dividends | n/a |
| **EXCESS FTC:** | |
| Excess FTC Available | 3,228,274 |
| Excess FTC Not Available | 0 |
| **EXCESS LIMITATION:** | |
| Excess Limitation | 0 |
| **ELECTION:** | |
| Deduct Foreign Tax (Y/N) | No |

Liberty Global Inc. (EIN ▉▉▉▉▉▉, formerly Lynx US Mergerco 1 Corp,
as successor to Liberty Global Inc. (EIN ▉▉▉▉▉▉
Schedule 4

------------------------------ Reg FTC: Schedule J, Part I - 12-31-2010 ------------------------------

| FTC Categories for Year Ending 12-2010: | = 13: As Previously Adjusted == | | ===== 21: As Determined ===== | | ========Adjustment ======== | |
|---|---|---|---|---|---|---|
| | Cat 1 | Cat 2 | Cat 1 | Cat 2 | Cat 1 | Cat 2 |
| Foreign Income or Loss | 1,768,530,730 | -48,213,306 | -547,334,847 | -76,397,526 | -2,315,865,577 | -28,184,220 |
| Less: Foreign NOL Carryover Absorbed | 0 | 0 | 0 | 0 | 0 | 0 |
| Subtotal A | 1,768,530,730 | -48,213,306 | -547,334,847 | -76,397,526 | -2,315,865,577 | -28,184,220 |
| AJCA 2004 S965 NCDs in A | n/a | n/a | n/a | n/a | n/a | n/a |
| S904(b) - Allocate Excess Foreign CGNI | 0 | 0 | 0 | 0 | 0 | 0 |
| Subtotal A After S904(b) | 1,768,530,730 | -48,213,306 | -547,334,847 | -76,397,526 | -2,315,865,577 | -28,184,220 |
| Allocate SLLs: | | | | | | |
| Cat 1: General Limitation Income | 0 | 0 | 0 | 0 | 0 | 0 |
| Cat 2: Passive Limitation Income | -48,213,306 | 48,213,306 | 0 | 0 | 48,213,306 | -48,213,306 |
| Subtotal B | 1,720,317,424 | 0 | -547,334,847 | -76,397,526 | -2,267,652,271 | -76,397,526 |
| AJCA 2004 S965 NCDs in B | n/a | n/a | n/a | n/a | n/a | n/a |
| Allocate OFLs | 0 | 0 | 547,334,847 | 76,397,526 | 547,334,847 | 76,397,526 |
| Allocate ODLs | -133,769,975 | 0 | 0 | 0 | 133,769,975 | 0 |
| Subtotal C | 1,586,547,449 | 0 | 0 | 0 | -1,586,547,449 | 0 |
| AJCA 2004 S965 NCDs in C | n/a | n/a | n/a | n/a | n/a | n/a |
| Recapture OFLs | -474,372,166 | 0 | 0 | 0 | 474,372,166 | 0 |
| Subtotal D | 1,112,175,283 | 0 | 0 | 0 | -1,112,175,283 | 0 |
| AJCA 2004 S965 NCDs in D | n/a | n/a | n/a | n/a | n/a | n/a |
| Recharacterize Separate Limit Income: | | | | | | |
| Cat 1: General Limitation Income | -145,426,282 | 145,426,282 | 0 | 0 | 145,426,282 | -145,426,282 |
| Cat 2: Passive Limitation Income | 0 | 0 | 0 | 0 | 0 | 0 |
| Subtotal E | 966,749,001 | 145,426,282 | 0 | 0 | -966,749,001 | -145,426,282 |
| AJCA 2004 S965 NCDs in E | n/a | n/a | n/a | n/a | n/a | n/a |
| Recapture ODLs | 0 | 0 | 0 | 0 | 0 | 0 |
| Allocate ODLs per Notice 89-3 | n/a | n/a | n/a | n/a | n/a | n/a |
| Numerator Before Carryback | 966,749,001 | 145,426,282 | 0 | 0 | -966,749,001 | -145,426,282 |
| AJCA 2004 S965 NCDs in Num Before CB | n/a | n/a | n/a | n/a | n/a | n/a |
| Increase/Decrease Due To | | | | | | |
| NOL Carryback From: | | | | | | |
| 1st Following Year | -285,140,329 | -47,077,138 | 0 | 0 | 285,140,329 | 47,077,138 |
| 2nd Following Year | 0 | 0 | 0 | 0 | 0 | 0 |
| 3rd Following Year | 0 | 0 | 0 | 0 | 0 | 0 |
| 4th-10th Following Years | 0 | 0 | 0 | 0 | 0 | 0 |
| Numerator of Limit Fraction | 681,608,672 | 98,349,144 | 0 | 0 | -681,608,672 | -98,349,144 |
| AJCA 2004 S965 NCDs in Numerator | n/a | n/a | n/a | n/a | n/a | n/a |

Bloomberg Tax & Accounting Corporate Tax Analyzer 2020.1.1

Liberty Global Inc. (EIN ███████, formerly Lynx US Mergerco 1 Corp,
as successor to Liberty Global Inc. (EIN ███████
Schedule 4

-------------------------------- Reg FTC: Schedule J, Parts II-IV - 12-31-2010 --------------------------------

| | = 13: As Previously Adjusted == | | ==== 21: As Determined ===== | |
|---|---|---|---|---|
| FTC Categories for Year Ending 12-2010: | Cat 1 | Cat 2 | Cat 1 | Cat 2 |
| Separate Limitation Loss (SLL) | | | | |
| Account at End of Year: | | | | |
| Cat 1: General Limitation Income | n/a | 0 | n/a | 193,639,588 |
| Cat 2: Passive Limitation Income | 0 | n/a | 0 | n/a |
| Overall Foreign Loss (OFL) Account: | | | | |
| OFL Beginning Balance: | | | | |
| Balance Before Adjustment | 0 | 0 | 0 | 0 |
| Adjustment to Beginning Balance | 474,372,166 | 21,853,334 | 474,372,166 | 21,853,334 |
| | --------------- | --------------- | --------------- | --------------- |
| Beginning Balance | 474,372,166 | 21,853,334 | 474,372,166 | 21,853,334 |
| Current Year Additions | 0 | 0 | 547,334,847 | 76,397,526 |
| Current Year Reductions | 0 | 0 | 0 | 0 |
| | --------------- | --------------- | --------------- | --------------- |
| OFL Subtotal | 474,372,166 | 21,853,334 | 1,021,707,013 | 98,250,860 |
| Less: Current Year Recapture | 474,372,166 | 0 | 0 | 0 |
| | --------------- | --------------- | --------------- | --------------- |
| OFL Ending Balance | 0 | 21,853,334 | 1,021,707,013 | 98,250,860 |
| | =========== | =========== | =========== | =========== |
| Overall Domestic Loss (ODL) Account: | | | | |
| Beginning Balance: | | | | |
| Balance Before Adjustment | 0 | 0 | 0 | 0 |
| Adjustment to Beginning Balance | 0 | 0 | 0 | 0 |
| | --------------- | --------------- | --------------- | --------------- |
| Beginning Balance | 0 | 0 | 0 | 0 |
| Current Year Additions | 133,769,975 | 0 | 0 | 0 |
| Current Year Reductions | 0 | 0 | 0 | 0 |
| | --------------- | --------------- | --------------- | --------------- |
| ODL Subtotal | 133,769,975 | 0 | 0 | 0 |
| Less: Current Year Recapture | 0 | 0 | 0 | 0 |
| | --------------- | --------------- | --------------- | --------------- |
| ODL Ending Balance | 133,769,975 | 0 | 0 | 0 |
| | =========== | =========== | =========== | =========== |
| Pre-2018 Portion of ODL Account: | | | | |
| Pre-2018 Beginning Balance: | | | | |
| Pre-2018 Balance Before Adjustment | 0 | 0 | 0 | 0 |
| Pre-2018 Adjustment to Beginning Balance | 0 | 0 | 0 | 0 |
| | --------------- | --------------- | --------------- | --------------- |
| Pre-2018 Beginning Balance | 0 | 0 | 0 | 0 |
| Pre-2018 Current Year Additions | 133,769,975 | 0 | 0 | 0 |
| Pre-2018 Current Year Reductions | 0 | 0 | 0 | 0 |
| | --------------- | --------------- | --------------- | --------------- |
| Pre-2018 ODL Subtotal | 133,769,975 | 0 | 0 | 0 |
| Less: Pre-2018 Current Year Recapture | 0 | 0 | 0 | 0 |
| | --------------- | --------------- | --------------- | --------------- |
| Pre-2018 ODL Ending Balance | 133,769,975 | 0 | 0 | 0 |
| | =========== | =========== | =========== | =========== |

Liberty Global Inc. (EIN ████████, formerly Lynx US Mergerco 1 Corp,
as successor to Liberty Global Inc. (EIN ████████
Schedule 5

-------------------------------------------------- Minimum Tax Credit Allowed --------------------------------------------------

|  | 21: As Determined 12-31-2010 |
|---|---|
| Year Ending: | |
| | |
| **ELECT FULL REFUND FOR 2018:** | |
| Elect Full Refund for 2018 (Y/N) (S53(e)(5)) | n/a |
| **MTC GENERATED THIS YEAR:** | |
| Net Minimum Tax | 0 |
| Less: NMT on Exclusion Items (1987-1989) | n/a |
| Plus Credits Disallowed: | |
| Orphan Drug (Pre-1995) | 0 |
| Nonconventional Fuel (Pre-2006) | 0 |
| Qualified Electric Vehicle (Pre-2007) | 0 |
| | ------------------------ |
| MTC Generated This Year | 0 |
| | ================ |
| | |
| **MTC LIMITATION FOR THIS YEAR:** | |
| Regular Income Tax | 420,677,235 |
| Less: Non-Bond Credits | n/a |
| | ------------------------ |
| Regular Tax After Credits | 420,677,235 |
| Less: Pre-2018 Tentative Minimum Tax | 317,119,503 |
| | ------------------------ |
| MTC Limitation Before S55(e)/Restrictions | 103,557,732 |
| Net Change Due to S55(e)/Restrictions | 0 |
| | ------------------------ |
| MTC Limitation After S55(e)/Restrictions | 103,557,732 |
| Increase/Decrease MTC Limit | 0 |
| | ------------------------ |
| Preliminary MTC Limitation | 103,557,732 |
| | ================ |
| MTC Limitation After S168(k)(4): | |
| S168(k)(4) Election I (2008-2009) | 0 |
| S168(k)(4) Election II (2009-2010) | 0 |
| S168(k)(4) Election III (2011-2013) | 0 |
| S168(k)(4) Election IV (2013-2014) | 0 |
| S168(k)(4) Election V (2014-2015) | 0 |
| S168(k)(4) Election VI (2015) | 0 |
| S168(k)(4) 2015-2016 Transition | 0 |
| S168(k)(4) Post-2015 Election (2016-2017) | 0 |
| Preliminary MTC Limitation (Pre-2018) | 103,557,732 |
| | ------------------------ |
| MTC Limitation After S168(k)(4) | 103,557,732 |
| | ================ |
| MTC Limitation After S53(e) (2018-2019): | |
| MTC from Previous Year | n/a |
| Less: Preliminary MTC Limitation | n/a |
| | ------------------------ |
| S53(e) Excess MTC Over Limitation | n/a |
| S53(e) Refundable Percentage (%) | n/a |
| S53(e) Short Year Factor | n/a |
| | ------------------------ |
| S53(e) Refundable MTC Limit | n/a |
| Preliminary MTC Limitation (Post-2017) | n/a |
| | ------------------------ |
| MTC Limitation After S53(e) | n/a |
| | ================ |
| **MTC ALLOWED THIS YEAR:** | |
| MTC from Previous Year | 217,833 |
| MTC Limitation | 103,557,732 |
| | ------------------------ |
| Total MTC Allowed | 217,833 |
| Less: Nonrefundable MTC Allowed | 217,833 |

Liberty Global Inc. (EIN ███████, formerly Lynx US Mergerco 1 Corp,
as successor to Liberty Global Inc. (EIN ███████ ,
Schedule 5

------------------------------------------------ Minimum Tax Credit Allowed ------------------------------------------------

|  | 21: As Determined |
|---|---|
| Year Ending: | 12-31-2010 |
|  | ---------------------- |
| Refundable MTC Allowed This Year | n/a |
|  | ================== |
| **MTC AVAILABLE FOR NEXT YEAR:** | |
| MTC to Next Year Before Adjustment | 0 |
| Increase/Decrease MTC to Next Year | 0 |
|  | ---------------------- |
| MTC Available for Next Year | 0 |
|  | ================== |
| **AJCA 2004 S965 REPATRIATION (2004-2005):** | |
| MTC Allowed This Year | n/a |
| Less: Tax After FTC on Nondeductible CFC Divs | n/a |
|  | ---------------------- |
| MTC Allowed on Income Other Than NCDs | n/a |
|  | ================== |

**EXHIBIT B: NOTICE OF DEFICIENCY,
DATED OCT. 30, 2020**



**Department of the Treasury**
**Internal Revenue Service**
**Independent Office of Appeals**
300 North Los Angeles Street
MS LA-8000 Room 3054
Los Angeles, CA 90012

**Date:** OCT 3 0 2020

**Person to contact:**
Name: Gerald A Nielsen
Employee ID Number: 1000235305
Phone: 213- 372-4252
Fax: 213-576-4803
Hours:

**Social Security number / Employer ID number:**
████████

**Form:**
1120
Last day to file petition with US tax court:
JAN 2 8 2021

LIBERTY GLOBAL INC & SUBSIDIARIES
1550 WEWATTA ST STE 1000
DENVER CO 80202-6300

**Certified Mail**    7016 0340 0000 2277 5417

### Notice of Deficiency

Tax Year Ended:    December 31, 2014

Deficiency:
Increase in tax    $2,014,291.00

Dear LIBERTY GLOBAL INC:

You and your affiliated companies owe additional tax or other amounts, or both, for the tax years shown above. This letter is your **Notice of Deficiency** as we're required by law to send you. The enclosed statement shows how we figured the deficiency.

**If you agree with the Notice of Deficiency**
If you agree with our determination, sign the enclosed waiver form and return it to us at the address at the top of this page. Sending this now can help limit the accumulation of interest.

**If you disagree with the Notice of Deficiency**
If you want to contest our final determination, you have 90 days from the date of this letter (150 days if addressed to you outside of the United States) to file a petition with the United States Tax Court.

**How to file your petition**
You can get a petition form and the rules for filing from the Tax Court's website at www.ustaxcourt.gov by contacting the Office of the Clerk at the address below, or by calling 202-521-0700. Do not send your petition form to the Internal Revenue Service. Do send your completed petition form, a copy of this letter, and copies of all statements and schedules you received with this letter to the address below.

United States Tax Court
400 Second Street, NW
Washington, DC 20217

You can include all tax years you are contesting on one petition form.

**Letter 901 (Rev. 1-2020)**
Catalog Number 31589S

The Tax Court has a simplified procedure for small tax cases when the amount of the deficiency you dispute does not exceed $50,000 (including additions to tax and penalties, but not including interest) for any tax year. If you plan to file a petition for one (1) or more tax years and the amount in dispute for any tax year exceeds $50,000 (including additions to tax and penalties, but not including interest), you can't use this simplified procedure. If you use the simplified procedure, you can't appeal the Tax Court's decision. You can get information about the simplified procedure from www.ustaxcourt.gov or by writing to the court at the address above.

You can represent yourself before the Tax Court, or anyone allowed to practice before the Tax Court can represent you.

### Time limits on filing a petition
**The court can't consider your case if you file the petition late.**
- A petition is considered timely filed if the Tax Court receives it within
  - 90 days from the date this letter was mailed to you, or
  - 150 days from the date this letter was mailed to you if this letter is addressed to you outside of the United States.
- A petition is also generally considered timely if the United States Postal Service postmark date is within the 90 or 150-day period and the envelope containing the petition is properly addressed with the correct postage. The postmark rule doesn't apply if mailed from a foreign country.
- A petition is also generally considered timely if the date recorded by a designated private delivery service in its database as received is within the 90 or 150-day period. Not all services offered by private delivery companies are designated delivery services. For a list of designated delivery services available for domestic and international mailings and rules pertaining to them, see Notice 2016-30, which is available on the IRS website at www.irs.gov/irb/2016-18_IRB/ar07.html. Please note that the list of approved delivery companies may be subject to change.
- The time you have to file a petition with the Tax Court is set by law and can't be extended or suspended, even for reasonable cause. We can't change the allowable time for filing a petition with the Tax Court.

### If we don't hear from you
If you decide not to sign and return the waiver, and you don't file a timely petition with the Tax Court we'll assess and bill you for the deficiency (and applicable penalties and interest) after 90 days from the date of this letter (150 days if this letter is addressed to you outside of the United States).

**Note:** If you are a C corporation, we're required by Internal Revenue Code Section 6621(c) to charge an interest rate two percent higher than the normal rate on corporate underpayments in excess of $100,000.

### If you need more assistance
If you have questions, you can contact the person at the top of this letter. If you write, include a copy of this letter, your telephone number, and the best hours to reach you.

**Letter 901 (Rev. 1-2020)**
Catalog Number 31589S

**Information about the IRS Taxpayer Advocate Service**

The IRS office whose phone number appears at the top of the notice can best address and access your tax information and help get you answers. However, you may be eligible for free help from the Taxpayer Advocate Service (TAS) if you can't resolve your tax problem with the IRS, or you believe an IRS procedure just isn't working as it should. TAS is an independent organization within the IRS that helps taxpayers and protects taxpayer rights. Contact your local Taxpayer Advocate Office at:

Internal Revenue Service
Taxpayer Advocate Office
1999 Broadway, MS 1005DEN
Denver, CO 80202
Telephone: 303-603-4600
Fax: 855-829-3838

Or call TAS at 877-777-4778. For more information about TAS and your rights under the Taxpayer Bill of Rights, go to taxpayeradvocate.irs.gov. Do not send your Tax Court petition to the TAS address listed above. Use the Tax Court address provided earlier in the letter. Contacting TAS does not extend the time to file a petition.

Thank you for your cooperation.

Sincerely,

Charles P Rettig
Commissioner
By

Gerald A Nielsen
Appeals Team Case Leader

Enclosures:
Waiver
Notice of Deficiency statement

**Letter 901 (Rev. 1-2020)**
Catalog Number 31589S

| Form **4089** (Rev. January 1983) | Department of the Treasury - Internal Revenue Service **Notice of Deficiency - Waiver** | Symbols: AP:EX:LA:GAN:RNH |
|---|---|---|

Name(s), SSN or EIN, and address of taxpayer(s)

LIBERTY GLOBAL INC &
SUBSIDIARIES
1550 WEWATTA ST STE 1000
DENVER CO  80202-6300



| Kind of Tax | ___ Copy to Authorized Representative |
|---|---|
| Income | |

| Tax Year Ended | Deficiency |
|---|---|

Increase in Tax

12/31/2014            $2,014,291.00

**Interest, as provided by law, will be charged on the unpaid liability until it is paid in full.  It is determined that the deficiency shown above is a large corporate underpayment subject to the additional 2% interest provided by section 6621(c) of the Internal Revenue Code.  See the attached explanation for the above deficiencies.  Affiliations Statement attached.**

I consent to the immediate assessment and collection of the deficiencies (increase in tax and penalties) shown above, plus any interest provided by law.

| Your Signature | | |
|---|---|---|
| | | *(Date signed)* |

| Spouse's Signature, If A Joint Return Was Filed | | |
|---|---|---|
| | | *(Date signed)* |

| Taxpayer's Representative Sign Here | | |
|---|---|---|
| | | *(Date signed)* |

| Corporate Name: | | |
|---|---|---|

| Corporate Officers Sign Here | *(Signature)* | *(Title)* | *(Date signed)* |
|---|---|---|---|
| | *(Signature)* | *(Title)* | *(Date signed)* |

**Note:**
If you consent to the assessment of the amounts shown in this waiver, please sign and return it in order to limit the accumulation of interest and expedite our bill to you.  Your consent will not prevent you from filing a claim for refund (after you have paid the tax) if you later believe you are entitled to a refund.  It will not prevent us from later determining, if necessary, that you owe additional tax; nor will it extend the time provided by law for either action.
If you later file a claim and the Internal Revenue Service disallows it, you may file suit for refund in a district court or in the United States Claims Court, but you may not file a petition with the United States Tax Court.

**Who Must Sign**
If this waiver is for any year(s) for which you filed a joint return, both you and your spouse must sign the original and duplicate of this form.  Sign your name exactly as it appears on the return.  If you are acting under power of attorney for your spouse, you may sign as agent for him or her.
For an agent or attorney acting under a power of attorney, a power of attorney must be sent with this form if not previously filed.
For a person acting in a fiduciary capacity (executor, administrator, trustee), file Form 56, Notice Concerning Fiduciary Relationship, with this form if not previously filed.
For a corporation, enter the name of the corporation followed by the signature and title of the officer(s) authorized to sign.

**If you agree, please sign one copy and return it; keep the other copy for your records.**

Department of the Treasury - Internal Revenue Service          www.irs.gov          Form **4089**-c (Rev. 01/1983)

NOTICE OF DEFICIENCY - STATEMENT

LIBERTY GLOBAL INC. AND SUBSIDIARIES
EIN: ▮▮▮▮▮▮▮
Tax Year Ended 12/31/2014

Attachment to Form 4089: Affiliations Statement

| NAME OF CORPORATION | Years Affiliated |
|---|---|
| PARENT COMPANY | |
| Liberty Global Inc. | 12/31/2014 |
| | |
| SUBSIDIARY COMPANIES: | |
| Associated SMR Inc. | 12/31/2014 |
| Europe Acquisition Inc. | 12/31/2014 |
| LGI International Inc. | 12/31/2014 |
| Liberty FA Holdings Inc. | 12/31/2014 |
| Liberty Global Europe Inc. | 12/31/2014 |
| Liberty Home Shop International Inc. | 12/31/2014 |
| Liberty International Cable Management Inc. | 12/31/2014 |
| Liberty Japan V Inc. | 12/31/2014 |
| LMI Japan Management  Inc. | 12/31/2014 |
| LGI International Holdings Inc. | 12/31/2014 |
| Liberty VIV II Inc. | 12/31/2014 |
| LGI Ventures Management Inc. | 12/31/2014 |
| Unitedglobalcom Inc. | 12/31/2014 |
| LGI Broadband Operations Inc. | 12/31/2014 |
| United Latin America Programming LLC | 12/31/2014 |
| LGI Technology Holdings Inc. | 12/31/2014 |

The tax liability of Liberty Global Inc. and each subsidiary company named above is stated
as provided for by regulations prescribed under Section 1502 of the Internal Revenue Code.
The deficiency shown will be assessed severally against each corporation named above in
accordance with regulations under Section 1502 of the Internal Revenue Code.

| Form **5278** (Rev. June 2011) | **Statement - Income Tax Changes** | | Schedule 1 |
|---|---|---|---|

| **1. Name(s) of taxpayer(s)** | | **2.** |
|---|---|---|
| Liberty Global, Inc. & Subsidiaries | | Notice of Deficiency |

| **3. Taxpayer Identification Number** | **4. Form number** 1120 | **5. Docket number** | **6. Office symbols** AP:AO:LA:GAN:RNH |
|---|---|---|---|
| ███████ | | | Tax Year(s) Ended |

| **7. Adjustments to income** | 12/31/2014 | | |
|---|---|---|---|
| a. | | | |
| b. | | | |
| c. | | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| h. | | | |
| **8. Total adjustments—See Schedule 2** | 0 | | |
| 9. Taxable income as shown in<br><br>     Processed Form 1120X (Schedule 3) | 11,510,234 | | |
| **10. Taxable income as revised** | 11,510,234 | | |
| **11. Tax**     Tax Method _____<br>     Filing Status | 4,028,582 | | |
| 12. Alternative tax, if applicable | | | |
| 13. Alternative minimum tax *(Starting in tax year 2000)* | | | |
| **14. Corrected tax liability -** *(lesser of line 11 or 12 plus line 13)* | 4,028,582 | | |
| 15. Less credits | a. Foreign Tax Credit–See Schedule 2 and 4 | 0 | |
| | b. | | |
| | c. | | |
| **16. Balance -** *(line 14 less total of lines 15a - 15c)* | 4,028,582 | | |
| 17. Plus other taxes | a. | | |
| | b. | | |
| | c. | | |
| **18. Total corrected tax liability -** *(line 16 plus lines 17a - 17c)* | 4,028,582 | | |
| 19. Total tax ~~shown on return or~~ as previously adjusted–See Schedule 3 | 2,014,291 | | |
| 20 Adjustments: increase or (decrease) to: | a. | | |
| | b. | | |
| | c. | | |
| **21. Deficiency - Increase in tax** *(overassessment - decrease in tax)* *(line 18 less line 19 adjusted by lines 20a - 20c)* | 2,014,291 | | |
| 22. Adjustments to prepayment credits - Increase *(decrease)* | | | |
| **23. Balance due or *(Overpayment)*** excluding interest and penalties *(line 21 adjusted by line 22)* | 2,014,291 | | |
| **24. Penalties and/or Additions To Tax** *(listed below)* | | | |

Form 5278 (Rev. 6-2011)

3

- App.46 -

| Form **886-A**<br>(Rev. January 1994) | **Explanations of Items** | Schedule number or exhibit<br><br>2 |
|---|---|---|
| Name of Taxpayer<br><br>Liberty Global, Inc. & Subsidiaries | Tax Identification Number<br><br>██████ | Year/Period Ended<br><br>December 31, 2014 |

Line 15a:  Foreign Tax Credit

Your foreign tax credit allowed for tax year ended December 31, 2014 is $0.00 rather than the $2,014,294 as previously amended.

It is determined that no foreign tax credit is allowed due to having no overall domestic loss to recapture as foreign source income.

See Schedule 4 for computations.

Form **886-A** (Rev. 1-1994)          Catalog Number 20810   publish.no.irs.gov          Department of the Treasury<br>Internal Revenue Service<br>4

- App.47 -

Liberty Global, Inc. & Subsidiaries
EIN: ▮▮▮▮▮▮▮

Schedule 3

### DETAIL OF TAXABLE INCOME AND TAX PREVIOUSLY ASSESSED

| TAX YEAR ENDED | | |
|---|---|---|
| | 12/31/2014 | |
| | Taxable Income | Tax Liability |
| Original return | 11,478,020 | 2,008,653 |
| Form 1120X | 32,214 | 5,638 |
| Taxable income previously assessed | 11,510,234 | |
| Total tax previously assessed - to Schedule 1 | | 2,014,291 |

Liberty Global, Inc. & Subsidiaries
Statutory Notice of Deficiency ("SNOD")
Schedule 4

Page 1 of 4

------------------------------------------------ Summary of Regular FTC Allowed ------------------------------------------------

| Year Ending: | 6: Form 1120X 12-31-2014 | 8: SNOD 12-31-2014 |
|---|---|---|
| **ELECTION:** | | |
| Deduct Foreign Tax (Y/N) | No | No |
| **REGULAR FTC ALLOWED:** | | |
| Cat 1: General | 2,014,291 | 0 |
| Cat 2: Passive | 0 | 0 |
| Total FTC Before Boycott | 2,014,291 | 0 |
| Add: Adjustment | 0 | 0 |
| Less: Boycott Reduction | 0 | 0 |
| Total Regular FTC Allowed | 2,014,291 | 0 |
| **DIVIDEND GROSS-UP FROM CATEGORIES (S78):** | | |
| Cat 1: General | 0 | 0 |
| Cat 2: Passive | 112,991 | 112,991 |
| Total Gross-up from Categories | 112,991 | 112,991 |
| **AJCA 2004 S965 REPATRIATION (2004-2005):** | | |
| Tax on NCDs | n/a | n/a |
| FTC on NCDs Before Adjustment | n/a | n/a |
| Adjustment to FTC on NCDs | n/a | n/a |
| FTC on Nondeductible CFC Dividends | n/a | n/a |
| FTC on Other FSTI | n/a | n/a |
| Total FTC Before Boycott | n/a | n/a |

Liberty Global, Inc. & Subsidiaries
Statutory Notice of Deficiency ("SNOD")
Schedule 4

Page 2 of 4

-------------------------------------------------------- Reg FTC Allowed - Category 1: General --------------------------------------------------------

|  | 6: Form 1120X | 8: SNOD |
|---|---|---|
| Year Ending for FTC Category 1: | 12-31-2014 | 12-31-2014 |
| **FTC AVAILABLE:** | | |
| Current FTC | 804,646 | 804,646 |
| FTC Carryover | 43,959,304 | 268,860,222 |
| FTC Carryback | 0 | 0 |
| FOGEI Adjustment | 0 | 0 |
| Total FTC Available | 44,763,950 | 269,664,868 |
| **FTC FRACTION:** | | |
| Numerator of Fraction | 5,755,117 | 0 |
| Taxable Income | 11,510,234 | 11,510,234 |
| Adjustments | 0 | 0 |
| Denominator of Fraction | 11,510,234 | 11,510,234 |
| Limitation Fraction | .5 | 0 |
| **NET TAX LIABILITY:** | | |
| Federal Income Tax | 4,028,582 | 4,028,582 |
| Add: Inc Tax Adjustment | 0 | 0 |
| Tax on FTC Deducted | 0 | 0 |
| Less: Possessions Credit | 0 | 0 |
| Net Tax Liability | 4,028,582 | 4,028,582 |
| **FTC LIMITATION:** | | |
| Section 904 Limitation | 2,014,291 | 0 |
| AJCA 2004 S965(e) Limitation | n/a | n/a |
| Limitation Adjustment | 0 | 0 |
| FTC Limitation | 2,014,291 | 0 |
| **FTC ALLOWED:** | | |
| FTC Allowed Before Adjustment | 2,014,291 | 0 |
| Adjustment to FTC Allowed | 0 | 0 |
| FTC Allowed | 2,014,291 | 0 |
| **AJCA 2004 S965 REPATRIATION:** | | |
| FTC on Nondeductible CFC Dividends | n/a | n/a |
| **EXCESS FTC:** | | |
| Excess FTC Available | 42,749,659 | 269,664,868 |
| Excess FTC Not Available | 0 | 0 |
| **EXCESS LIMITATION:** | | |
| Excess Limitation | 0 . | 0 |
| **ELECTION:** | | |
| Deduct Foreign Tax (Y/N) | No | No |

Liberty Global, Inc. & Subsidiaries
Statutory Notice of Deficiency ("SNOD")
Schedule 4

Page 3 of 4

------------------------------------------------ Reg FTC Allowed - Category 2: Passive ------------------------------------------------

|  | 6: Form 1120X | 8: SNOD |
|---|---|---|
| Year Ending for FTC Category 2: | 12-31-2014 | 12-31-2014 |
| **FTC AVAILABLE:** | | |
| Current FTC | 591,362 | 591,362 |
| FTC Carryover | 0 | 3,228,274 |
| FTC Carryback | 0 | 0 |
| FOGEI Adjustment | n/a | n/a |
| Total FTC Available | 591,362 | 3,819,636 |
| **FTC FRACTION:** | | |
| Numerator of Fraction | 0 | 0 |
| Taxable Income | 11,510,234 | 11,510,234 |
| Adjustments | 0 | 0 |
| Denominator of Fraction | 11,510,234 | 11,510,234 |
| Limitation Fraction | 0 | 0 |
| **NET TAX LIABILITY:** | | |
| Federal Income Tax | 4,028,582 | 4,028,582 |
| Add: Inc Tax Adjustment | 0 | 0 |
| Tax on FTC Deducted | 0 | 0 |
| Less: Possessions Credit | 0 | 0 |
| Net Tax Liability | 4,028,582 | 4,028,582 |
| **FTC LIMITATION:** | | |
| Section 904 Limitation | 0 | 0 |
| AJCA 2004 S965(e) Limitation | n/a | n/a |
| Limitation Adjustment | 0 | 0 |
| FTC Limitation | 0 | 0 |
| **FTC ALLOWED:** | | |
| FTC Allowed Before Adjustment | 0 | 0 |
| Adjustment to FTC Allowed | 0 | 0 |
| FTC Allowed | 0 | 0 |
| **AJCA 2004 S965 REPATRIATION:** | | |
| FTC on Nondeductible CFC Dividends | n/a | n/a |
| **EXCESS FTC:** | | |
| Excess FTC Available | 591,362 | 3,819,636 |
| Excess FTC Not Available | 0 | 0 |
| **EXCESS LIMITATION:** | | |
| Excess Limitation | 0 | 0 |
| **ELECTION:** | | |
| Deduct Foreign Tax (Y/N) | No | No |

Liberty Global, Inc. & Subsidiaries
Statutory Notice of Deficiency ("SNOD")                Page 4 of 4
Schedule 4

-------------------------- Reg FTC: Schedule J, Part I - 12-31-2014 --------------------------

| FTC Categories for Year Ending 12-2014: | ====== 6: Form 1120X ======= | | ======== 8: SNOD ========= | |
|---|---|---|---|---|
| | Cat 1 | Cat 2 | Cat 1 | Cat 2 |
| Foreign Income or Loss | (56,918,665) | 50,179,670 | (56,918,665) | 50,179,670 |
| Less: Foreign NOL Carryover Absorbed | 0 | 0 | 0 | 0 |
| Subtotal A | (56,918,665) | 50,179,670 | (56,918,665) | 50,179,670 |
| AJCA 2004 S965 NCDs in A | n/a | n/a | n/a | n/a |
| S904(b) - Allocate Excess Foreign CGNI | 0 | 0 | 0 | 0 |
| Subtotal A After S904(b) | (56,918,665) | 50,179,670 | (56,918,665) | 50,179,670 |
| Allocate SLLs: | | | | |
| Cat 1: General | 50,179,670 | (50,179,670) | 50,179,670 | (50,179,670) |
| Cat 2: Passive | 0 | 0 | 0 | 0 |
| Subtotal B | (6,738,995) | 0 | (6,738,995) | 0 |
| AJCA 2004 S965 NCDs in B | n/a | n/a | n/a | n/a |
| Allocate OFLs | 6,738,995 | 0 | 6,738,995 | 0 |
| Allocate ODLs | 0 | 0 | 0 | 0 |
| Subtotal C | 0 | 0 | 0 | 0 |
| AJCA 2004 S965 NCDs in C | n/a | n/a | n/a | n/a |
| Recapture OFLs | 0 | 0 | 0 | 0 |
| Subtotal D | 0 | 0 | 0 | 0 |
| AJCA 2004 S965 NCDs in D | n/a | n/a | n/a | n/a |
| Recharacterize Separate Limit Income: | | | | |
| Cat 1: General | 0 | 0 | 0 | 0 |
| Cat 2: Passive | 0 | 0 | 0 | 0 |
| Subtotal E | 0 | 0 | 0 | 0 |
| AJCA 2004 S965 NCDs in E | n/a | n/a | n/a | n/a |
| Recapture ODLs | 5,755,117 | 0 | 0 | 0 |
| Allocate ODLs per Notice 89-3 | n/a | n/a | n/a | n/a |
| Numerator Before Carryback | 5,755,117 | 0 | 0 | 0 |
| AJCA 2004 S965 NCDs in Num Before CB | n/a | n/a | n/a | n/a |
| Increase/Decrease Due To | | | | |
| NOL Carryback From: | | | | |
| 1st Following Year | 0 | 0 | 0 | 0 |
| 2nd Following Year | 0 | 0 | 0 | 0 |
| 3rd Following Year | 0 | 0 | 0 | 0 |
| 4th-10th Following Years | 0 | 0 | 0 | 0 |
| Numerator of Limit Fraction | 5,755,117 | 0 | 0 | 0 |
| AJCA 2004 S965 NCDs in Numerator | n/a | n/a | n/a | n/a |

- App.52 -

**COMMISSIONER'S ANSWER TO LGI'S PETITION,
T.C. DOC. 6 (MAR. 24, 2021)**

**Received**
03/24/21 05:25 pm

**Filed**
03/24/21

Liberty Global, Inc.,

      Petitioner

      v.

Commissioner of Internal Revenue

      Respondent

Electronically Filed
Docket No. 341-21

# Answer

# UNITED STATES TAX COURT

LIBERTY GLOBAL, INC.,⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀Petitioner,⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀Docket No.⠀⠀⠀341-21
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
COMMISSIONER OF INTERNAL⠀)
REVENUE,⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀Filed Electronically
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀Respondent.⠀⠀⠀⠀⠀⠀⠀)

## ANSWER

RESPONDENT, in answer to the petition filed in the above-entitled case, admits, denies, and alleges as follows:

1.⠀⠀⠀⠀Neither admits nor denies the heading "Taxpayer Information." because it does not contain any allegation that needs to be admitted or denied.

(a)⠀⠀Alleges Petitioner is Liberty Global, Inc., F.K.A. Lynx US Mergerco 1 Corp., as successor to Liberty Global Inc., and Liberty Global Inc., and Subsidiaries (herein collectively referred to as "LGI" or "Petitioner"). Admits Petitioner is a Delaware Corporation.  Denies for lack of sufficient information that the mailing address at the time of the filing of the petition was 1550 Wewatta Street, Suite 1000, Denver, Colorado 80202-6300. Alleges the Statutory Notices of Deficiency ("Notices") were mailed to 1550 Wewatta Street, Suite 1000, Denver, Colorado 80202-6300.

Docket No. 341-21                  2

(b)  First sentence. Admits. Second sentence. Admits Petitioner filed

its consolidated income tax returns for the for the tax year 2010 (the "2010 Tax

Year") and tax year 2014 (the "2014 Tax Year"; collectively with the "2010 Tax

Year," the "Tax Years"), denies for lack of sufficient information the remainder.

(c)  Admits.

2.    Neither admits nor denies the heading "<u>Notice of Deficiency</u>."

because it does not contain any allegation that needs to be admitted or denied.

(a)  Admits and alleges Respondent timely issued the Notices for the

Tax Years on October 30, 2020.

(b)  First sentence. Admits. Second sentence. Denies. Alleges that

Petitioner attached as Exhibits A and B to the petition complete copies of the

Notices of Deficiency dated October 30, 2020 and which were issued on October

30, 2020, except the copies have been redacted in accordance with Rule 27, Tax

Court Rules of Practice and Procedure.

3.    Neither admits nor denies the heading "<u>Amounts in Dispute</u>." because

it does not contain any allegation that needs to be admitted or denied.

(a)  First sentence. Denies and alleges Respondent determined there

are deficiencies in federal income taxes due from Petitioner in the amount of

Docket No. 341-21                              3

$241,791,309 for the 2010 Tax Year and $2,014,291 for the 2014 Tax Year.

Second sentence. Admits Petitioner disputes Respondent's determinations.

4.      First sentence. Neither admits nor denies the heading "<u>Assignments of</u>

<u>Error</u>." because it does not contain any allegation that needs to be admitted or

denied. Second sentence. Denies that Respondent's determinations are erroneous.

(a)   through (b)(iii), inclusive. Denies Respondent erred as alleged.

5.      First sentence. Neither admits nor denies the heading "<u>Facts.</u>" because

it does not contain any allegation that needs to be admitted or denied. Second

sentence. Denies that Respondent erred.

Neither admits nor denies the heading "*Background*" because it does not

contain any allegation that needs to be admitted or denied.

(a)   First sentence. Denies and alleges the primary issue is whether

any of the gain recognized by LGI on its sale of Jupiter Telecommunications Co.

Ltd. ("J:COM") to an unrelated third party should be treated as foreign source, and

not U.S. source, income by reason of I.R.C. §§ 904(f)(1) and 904(f)(3) for

purposes of calculating LGI's available foreign tax credits under I.R.C. §§ 901 and

904. Second sentence. Denies and alleges the characterization of the gain from the

J:COM sale as foreign source income or US source income affects the amount of

I.R.C. § 901 foreign tax credits available to LGI under I.R.C. § 904.

Docket No. 341-21                          4

(b)   Denies that any of LGI's gain on the J:COM sale is properly treated as foreign source income after application of I.R.C. § 904(f). Admits that the amount of available I.R.C. § 901 foreign tax credits for the 2010 Tax Year and 2014 Tax Year is dependent on the extent to which LGI's gain from the J:COM sale is characterized as foreign source income.

(c)   This allegation does not call for a responsive pleading as the allegation is a legal conclusion, otherwise, to the extent necessary and appropriate, Respondent denies "the plain language of Treas. Reg. § 1.904(f)-(2)(d)(1), as in effect in 2010, requires the gain at issue to be treated as foreign source income."

(d)   This allegation does not call for a responsive pleading as the allegation is a legal conclusion, otherwise, to the extent necessary and appropriate, Respondent denies "LGI is entitled to the foreign tax credits disallowed in the Notices, and LGI has no deficiencies for the Tax Years before the Court."

Neither admits nor denies the heading "*LGI's Telecommunications Business and its Investment in J:COM*" because it does not contain any allegation that needs to be admitted or denied.

(e)   Admits that during the Tax Years LGI, together with other affiliates, operated converged video, broadband and communications businesses. Denies the remainder for lack of sufficient information.

Docket No. 341-21                    5

(f)    Admits an LGI predecessor formed J:COM with Sumitomo Corporation, an unrelated Japanese corporation. Denies for lack of sufficient information LGI's predecessor entity in 1995 was Tele-Communications International, Inc.

(g)    First sentence. Admits J:COM was a broadband provider but denies for lack of sufficient information J:COM operates a "telecommunications business" in Japan. Second sentence. Denies for lack of sufficient information.

Neither admits nor denies the heading "*The J:COM Sale and Its U.S. Tax Consequences*" because it does not contain any allegation that needs to be admitted or denied.

(h)    First sentence. Denies for lack of sufficient information. Second sentence. Admits the quoted language is contained in the cited document but denies for lack of sufficient information the remainder of the sentence.

(i)    Admits.

(j)    Admits.

(k)    Admits.

(l)    First sentence. Admits the remaining amount, or $2,818,421,963, of gain recognized on the sale of J:COM is treated as gain from the J:COM sale on

Docket No. 341-21                     6

Petitioner's 2010 tax return. Second Sentence. Admits Petitioner disputes

Respondent's determination in the Notices, denies the remainder.

     (m)   This allegation does not call for a responsive pleading as the

allegation is a legal conclusion, otherwise, to the extent necessary and appropriate,

Respondent denies "all of the gain described in Paragraph (l) is treated as foreign

source income under Code section 904(f)(3) and the regulations thereunder."

     (n)   Admits.

     (o)   First sentence. This allegation does not call for a responsive

pleading as the allegation is a legal conclusion, otherwise, to the extent necessary

and appropriate, Respondent denies that "Code section 904(f)(3) sets forth special

rules for determining the source of income realized on the sale of property which

has been used predominately without the United States in a trade or business (like

the J:COM stock) where a taxpayer has an 'overall foreign loss' ("OFL") as

defined in Code section 904(f)(2)." Second sentence. Admits in the 2010 Tax Year

LGI had a beginning OFL balance of $474,372,166 in the general limitation

category.

     (p)   First sentence. This allegation does not call for a responsive

pleading as the allegation is a legal conclusion, otherwise, to the extent necessary

and appropriate, Respondent denies "The Treasury Regulations in effect in 2010

Docket No. 341-21                    7

plainly require that where section 904(f)(3) is applicable, <u>all gain</u> realized on the

sale of property will be treated as foreign source income." (emphasis in Petition).

Second sentence. Admits Treas. Reg. § 1.904(f)-2(d)(1), in effect in 2010, is

quoted correctly without emphasis.

(q)   This allegation does not call for a responsive pleading as the

allegation is a legal conclusion, otherwise, to the extent necessary and appropriate,

Respondent denies "the Treasury Regulations, as in effect in 2010, required LGI to

treat <u>all gain</u> recognized on the J:COM Sale as foreign source income." (emphasis

in Petition).

Denies the heading "*Respondent's Improper Adjustments.*"

(r)   First sentence. Denies and alleges that although some of the gain

from the J:COM sale is initially treated as foreign source income, in computing the

I.R.C. § 904 limitation on LGI's allowable foreign tax credits, all such foreign

source income is recharacterized as U.S. source income pursuant to the OFL

recapture rules of I.R.C. § 904(f).  Denies Respondent, in his Notices, improperly

takes the position the gain from the J:COM sale is U.S. source income. Second

sentence. This allegation does not call for a responsive pleading as the allegation is

a legal conclusion, otherwise, to the extent necessary and appropriate, Respondent

Docket No. 341-21                         8

denies Respondent's "position directly contradicts the plain language" of the

Treasury Regulations applicable in the 2010 Tax Year, the year of the J:COM sale.

(s)   Admits.

(t)   Denies and alleges although I.R.C. § 904(f)(3) initially treats the

lesser of the gain recognized on the J:COM sale or the balance of the OFL account

as of the end of the 2010 Tax Year as foreign source income, all such amounts are

then recharacterized as U.S. source income under the OFL recapture rules of I.R.C.

§ 904(f)(1).

(u)   Denies and alleges Respondent treats the non-dividend portion of

the gain from the sale of J:COM stock in excess of the OFL account balance as

U.S. source income for the 2010 Tax Year.

(v)   First sentence. Denies Petitioner correctly described

Respondent's position in Paragraph 5.(u). Alleges Respondent's position is the

non-dividend portion of the gain from the J:COM sale in excess of the OFL

account balance is treated as U.S. source income reduces the availability of foreign

tax credits to Petitioner, otherwise denies. Second sentence. Denies for lack of

sufficient information that LGI satisfied any requirements for claiming the foreign

tax credits in dispute.

Docket No. 341-21                    9

(w)   This allegation does not call for a responsive pleading as the allegation is a legal conclusion, otherwise, to the extent necessary and appropriate, Respondent denies.

(x)   This allegation does not call for a responsive pleading as the allegation is a legal conclusion, otherwise, to the extent necessary and appropriate, Respondent denies.

(y)   First sentence. Admits in 2012 Treasury amended the regulations under I.R.C. § 904(f)(3), denies the amendment to the regulations imposed a new limitation, and alleges the preamble to the amended regulations states:

> The Treasury Department and the IRS believe that the language of section 904(f)(3)(A) is clear that gain on such disposition is recharacterized as foreign source income only to the extent of the applicable section 904(f)(3) recapture amount. Consistent with the statutory language, the regulations clarify that this limit on recharacterization applies.

Federal Register Vol 77, No. 121 (June 22, 2012), 77 CFR 37576-01.

Second sentence. Admits the 2012 amendment to the regulations removed language including the language "will be treated as foreign source income" from Treas. Reg. § 1.904(f)-2(d)(1) as part of the revision to that paragraph. Third sentence. Admits the 2012 amended regulations added language, including the quoted language in Treas. Reg. § 1.904(f)-2(d)(3)(ii), but denies the amended language substantially revised the regulations and denies the new paragraph in

Docket No. 341-21                    10

Treas. Reg. § 1.904(f)-2(d)(3)(ii) placed a new specific limit of the amount of gain

to be treated as foreign source income or changed the meaning of the Treasury

Regulations or the Code. Alleges the determination under the 2010 and the 2012

Treasury Regulations are identical.

        (z)   First sentence. Denies the 2012 amendments to Treas. Reg. §

1.904(f)-2(d)(3) changed the effect or meaning of the Treasury Regulations or the

Code and alleges the determination under the 2010 and the 2012 Treasury

Regulations are identical. Second sentence. This allegation does not call for a

responsive pleading as the allegation is a legal conclusion, otherwise, to the extent

necessary and appropriate, Respondent denies the 2010 Treasury Regulations in

Treas. Reg. § 1.904(f)-2(d) placed no limit on the amount of gain re-sourced as

foreign source income and alleges the determination under the 2010 and the 2012

Treasury Regulations are identical. Third sentence. This allegation does not call for

a responsive pleading as the allegation is a legal conclusion, otherwise, to the

extent necessary and appropriate, Respondent denies the 2012 amendments to

Treas. Reg. § 1.904(f)-(2)(d) added a limitation on the amount of gain from the

J:COM sale to be treated as foreign source income and alleges the 2012

amendments clarified the amount of gain from the J:COM sale that was to be

Docket No. 341-21                          11

deemed as foreign source income. Further alleges the determination under the 2010

and the 2012 Treasury Regulations are identical.

      (aa)  First sentence. Denies Respondent is retroactively applying the

2012 amended regulations and alleges Respondent is applying the Treasury

Regulations in effect in the 2010 Tax Year. Second sentence. Admits and alleges

Respondent applied the Code and the Treasury Regulations in effect in the 2010

Tax Year. Footnote 3, First sentence. Denies Respondent is retroactively applying

the 2012 amended regulations or the 2012 amended regulations would result in a

different determination by Respondent. Footnote 3, Second sentence. Admits

Respondent's disallowance of foreign tax credits in the 2014 Tax Year results from

treating the non-dividend gain from the J:COM sale in excess of the OFL account

as U.S. source income and denies Respondent's determination is improper.  Third

and fourth sentences, inclusive. This allegation does not call for a responsive

pleading as the allegations are legal conclusions, otherwise, to the extent necessary

and appropriate, Respondent denies.

    Neither admits nor denies the heading "*Procedural History*" because it does

not contain any allegation that needs to be admitted or denied.

Docket No. 341-21                    12

(bb)  Admits prior to the issuance of the Notices by Appeals,
Petitioner and the IRS examination team participated with IRS Appeals in a "Fast-
Track Appeals" conference.

(cc)  Admits after the Fast-Track Appeals process there was a
proposed closing agreement. Denies the writing was an "Agreement-in-Principle."

(dd)  Admits Petitioner signed the proposed closing agreement. Denies
there was an "Agreement-in-Principle." Alleges Respondent did not countersign
the proposed closing agreement and alleges further that a closing agreement is not
effective until both parties to the proposed closing agreement execute the proposed
closing agreement.

(ee)  First sentence. Admits. Second sentence. Admits Respondent did
not execute the proposed closing agreement, and pursuant to Code § 6405(a),
Respondent submitted a report to the Joint Committee on Taxation ("JCT"),
otherwise denies.

(ff)   Admits, on or about January 20, 2015, Respondent informed
Petitioner that JCT recommended the proposed closing agreement not be executed
with respect to the I.R.C. § 904 sourcing issue. Denies there was an "Agreement-
in-Principle."

Docket No. 341-21                          13

(gg)  Admits Respondent did not execute the proposed closing agreement, otherwise denies.

(hh)  Admits Petitioner and Respondent did not resolve the case and Respondent, through its Appeals Office, issued the Notices.

Neither admits nor denies the heading "*Alternative Argument #1: Limitation on Gain from J:COM Sale*" because it does not contain any allegation that needs to be admitted or denied.

(ii) First and second sentences, inclusive. Denies.

(jj) Admits I.R.C. § 904(f)(3) contains the quoted language, without emphasis. Denies for lack of sufficient information this code section provides for transactions like the J:COM sale because the phrase "for transactions like the J:COM Sale" is ambiguous.

(kk) Admits the beginning balance of LGI's general limitation OFL account in the 2010 Tax Year was $474,372,166. The remaining allegation does not call for a responsive pleading as the remaining allegation is a legal conclusion, otherwise, to the extent necessary and appropriate, Respondent denies I.R.C. § 904(f)(3) caps the amount of gain recognized on the J:COM sale at the beginning balance of LGI's OFL account balance in the 2010 Tax Year.

Docket No. 341-21                    14

Neither admits nor denies the heading "*Alternative Argument #2: Election to Deduct Foreign Income Taxes*" because it does not contain any allegation that needs to be admitted or denied.

(ll) First sentence. Denies. Second sentence. Neither admits nor denies as the allegation constitutes neither an assignment of error nor an allegation of material fact.

6.     Denies generally each and every allegation of the petition not herein specifically admitted, qualified or denied.

WHEREFORE, it is prayed that the relief sought in the petition be denied and that Respondent's determination, as set forth in the notices of deficiency, be in all respects approved.

WILLIAM M. PAUL
Acting Chief Counsel
Internal Revenue Service

Date:  March 24, 2021          By:  _____

MATTHEW J. AVON
Special Trial Attorney (LB&I)
Tax Court Bar No. AM0304
33 Maiden Lane
12th Floor
New York, NY 10038
Telephone: 646-259-8012
Matthew.J.Avon@irscounsel.treas.gov

Docket No. 341-21                    15

_____

TIMOTHY L. SMITH
Special Trial Attorney (LB&I)
Tax Court Bar No. ST0479
51 SW 1st Avenue, Suite 1114
Miami, FL 33130
Telephone: 305-982-5335
Timothy.L.Smith@irscounsel.treas.gov


OF COUNSEL:
ROBIN GREENHOUSE
Division Counsel
(Large Business & International)

JOHN M. ALTMAN
National Strategic Litigation Counsel
(Large Business & International)

ELIZABETH P. FLORES
Senior Level Strategic Litigation Counsel
(Large Business & International)

**FIRST STIPULATION OF FACTS,**
**T.C. DOC. 31 (APR. 19, 2023)**

**Received**

04/19/23 05:22 pm

**Filed**

04/19/23

Liberty Global, Inc.,

      Petitioner

v.

Commissioner of Internal Revenue

      Respondent

Electronically Filed

Docket No. 341-21

Document No. 31

# First Stipulation of Facts

# UNITED STATES TAX COURT

| | | |
|---|---|---|
| LIBERTY GLOBAL, INC., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Docket No. 341-21 |
| | ) | |
| COMMISSIONER OF INTERNAL | ) | Filed Electronically |
| REVENUE, | ) | |
| | ) | Judge Toro |
| Respondent. | ) | |

## FIRST STIPULATION OF FACTS

Pursuant to Tax Court Rule 91, the parties stipulate, for purposes of this case, that the facts set forth below are true and correct and shall be accepted as facts in this case or as application of law to facts, and that the documents described below and attached as exhibits shall be considered authentic documents, and unless otherwise stated, shall be considered duplicates of the originals. All evidentiary objections, with the exception of relevancy, are waived unless specifically waived herein. Subject to any relevancy objection timely raised, the parties agree that all exhibits not expressly objected to in this stipulation should be admitted into evidence. The truth of assertions within stipulated documents can be rebutted or corroborated with other documents attached hereto or with additional evidence. Either party may introduce other and further evidence not inconsistent with the

facts stipulated herein. The headings used in this stipulation are for the Court and the parties and do not constitute stipulated facts.

**<u>Background</u>**

1.      Petitioner is Liberty Global, Inc., F.K.A. Lynx US Mergerco 1 Corp., as successor to Liberty Global, Inc. and Liberty Global, Inc. and Subsidiaries (herein collectively referred to as "LGI" or "Petitioner").

2.      LGI is a Delaware Corporation, and the ultimate United States parent company, and the direct or indirect owner of an affiliated group of U.S. and foreign corporations (the "LGI Global Group") and its principle place of business is located at 1550 Wewatta Street, Suite 1000, Denver, Colorado 80202-6300.

3.      LGI timely filed its consolidated income tax returns for the tax year 2010 (the "2010 Tax Year") and tax year 2014 (the "2014 Tax Year"; collectively with the "2010 Tax Year," the "Tax Years").

4.      During the 2010 Tax Year, LGI, together with other affiliates, operated converged video, broadband, and communications businesses.

5.      Attached hereto is Exhibit 1-J, a redacted copy of the Statutory Notice of Deficiency, which respondent timely issued to petitioner on October 30, 2020, for the 2010 Tax Year.

6.      In the Statutory Notice of Deficiency at Exhibit 1-J, respondent determined that petitioner is liable for a deficiency in federal income tax in the

Docket No. 341-21                         - 3 -

amount of $241,791,309 for petitioner's 2010 Tax Year.

7.    Attached hereto as Exhibit 2-J is a redacted copy of the Statutory

Notice of Deficiency which respondent timely issued to petitioner on October 30,

2020, for the 2014 Tax Year.

8.    In the Statutory Notice of Deficiency at Exhibit 2-J, respondent

determined that petitioner is liable for a deficiency in federal income tax in the

amount of $2,014,291 for petitioner's 2014 Tax Year.

9.    Respondent timely mailed the Statutory Notices of Deficiency for the

Tax Years, Exhibits 1-J and 2-J, to petitioner at 1550 Wewatta Street, Suite 1000,

Denver, Colorado 80202-6300.

10.    Petitioner timely filed its petition on January 26, 2021.

**<u>The Formation and Ownership of Jupiter Telecommunications Co. Ltd.</u>**

11.    A predecessor of LGI formed Jupiter Telecommunications Co. Ltd.

("J:COM") with Sumitomo Corporation ("Sumitomo"), an unrelated Japanese

corporation.

12.    J:COM was formed in Japan in January 1995.

13.    J:COM provided broadband services in Japan through its subsidiaries,

including during the 2010 Tax Year.

14.    From January 1995 until December 2004, J:COM was owned by

Docket No. 341-21                          - 4 -

various entities (including certain entities of LGI).

15.    In December 2004, various LGI entities and Sumitomo Corporation ("Sumitomo"), an unrelated foreign entity organized under the laws of Japan, contributed their respective ownership interests in J:COM to LGI/Sumisho Super Media LP ("Super Media"), a partnership for US tax purposes.

16.    In March 2005, J:COM completed its initial public offering.

**LGI and its Ownership of J:COM on January 25, 2010**

17.    Attached hereto, as Exhibit 3-J, is an organizational chart sent to Respondent by LGI, which reflects LGI's chain of ownership of J:COM on January 25, 2010.

18.    On January 21, 2010, LGI owned 100% of LGI International, Inc.

19.    On January 21, 2010, LGI International, Inc., owned 100% of Liberty Programming Australia, Inc.

20.    On January 21, 2010, Liberty Programming Australia, Inc., owned 100% of Liberty Media International Holdings, LLC.

21.    On January 21, 2010, Liberty Media International Holdings, LLC, owned 100% of Liberty Global Japan LLC.

22.    On January 21, 2010, Liberty Global Japan LLC, owned 100% of LGI Holdings LLC.

Docket No. 341-21                      - 5 -

23.    On January 21, 2010, Liberty Global Japan, LLC also owned Liberty Global Japan II, LLC.

24.    On January 25, 2010, LGI Holdings LLC, owned 100% of Liberty Japan Inc.

25.    On January 21, 2010, Liberty Japan Inc., owned 51.751% of Super Media LP.

26.    On January 21, 2010, Super Media LP directly owned 58.13% of J:COM.

27.    On January 21, 2010, LGI Holdings LLC, owned 85% of the common stock and 100% of the Preferred stock of Liberty Jupiter, Inc.

28.    On January 21, 2010, Liberty Jupiter, Inc., owned 6.907% of Super Media LP.

29.    Thus, on January 21, 2010, LGI owned, indirectly through Liberty Japan, Inc. and Liberty Jupiter, Inc., 58.658% of Super Media LP.

30.    Furthermore, on January 21, 2010, Liberty Global Japan II, LLC owned 3.7% of J:COM.

31.    Because of LGI's majority ownership of Super Media LP, as detailed, LGI is deemed to control the entirety of Super Media LP's 58.13% of J:COM, which is more than 50% of the vote of J:COM, making J:COM a "controlled

Docket No. 341-21                    - 6 -

foreign corporation" ("CFC"), as defined in I.R.C. § 957, during the 2010 Tax

Year.

32.    Attached hereto, as Exhibit 3-J, is an organizational chart which

reflects LGI's chain of ownership of J:COM on January 21, 2010.

**The Transaction:  LGI's Disposition of its Share of J:COM**

33.    On January 25, 2010, LGI International, Inc. agreed to sell its entire

ownership interest in J:COM to an unaffiliated foreign corporation, KDDI

Corporation ("KDDI").

34.    Attached hereto as Exhibit 4-J is the January 25, 2010, Sale and

Purchase Agreement between LGI International, Inc. and KDDI.

35.    On February 12, 2010, LGI International, Inc. and KDDI amended the

January 25, 2010, Sale and Purchase Agreement.

36.    Attached hereto as Exhibit 5-J is the February 12, 2010, amendment

to the January 25, 2010, Sale and Purchase Agreement between LGI and KDDI.

37.    On February 18, 2010, LGI International, Inc., in a series of

transactions, disposed of its interests in J:COM in a transaction treated for U.S.

federal income tax purposes as a sale of J:COM to KDDI (the "J:COM Sale").

38.    Immediately following the J:COM Sale, LGI did not directly or

indirectly own stock in J:COM, thus, the J:COM Sale is a disposition of stock in a

Docket No. 341-21                    - 7 -

controlled foreign corporation under I.R.C. § 904(f)(3)(D).

**Petitioner's Income Tax Returns and Reporting**

39.     Attached hereto as Exhibit 6-J is a redacted copy of LGI's 2010 consolidated Federal U.S. income tax return.

40.     In the 2010 Tax Year, LGI had a beginning Overall Foreign Loss ("OFL") balance of $474,372,166 in the general limitation category.

41.     LGI recognized gain of $3,256,557,143 from the J:COM Sale on its 2010 U.S. consolidated income tax return.

42.     Of the $3,256,557,143 gain LGI included in taxable income on its 2010 U.S. consolidated income tax return, LGI characterized $438,135,179 as a dividend pursuant to I.R.C. § 1248, and the remaining $2,818,421,964 as a capital gain from the sale of J:COM stock.

43.     LGI claimed a $245,651,602 indirect foreign tax credit on its 2010 U.S. consolidated income tax return.

44.     LGI included an Uncertain Tax Position Statement on a Schedule UTP with its 2010 consolidated U.S. income tax return disclosing the following:

   [LGI] entered into a transaction to sell its entire interest in its Japanese subsidiary, [JCOM].  During the year, [LGI] recognized a gain on the sale and due to recharacterization of the gain also recognized deemed section 902

Docket No. 341-21                          - 8 -

credits as part of the overall transaction.  The issues are the application of

the rules under section 904 to the transaction and whether the amount of the

foreign tax credit taken as a result of the transaction is appropriate.

45.    Attached hereto as Exhibit 7-J is a redacted copy of LGI's amended

2014 consolidated Federal U.S. income tax return, which includes a copy of LGI's

originally filed 2014 consolidated Federal U.S. income tax return.

DRITA TONUZI
Deputy Chief Counsel (Operations)
Internal Revenue Service

RAJIV MADAN
Counsel for Petitioner
Skadden, Arps, Slate, Meagher
& Flom LLP
1440 New York Ave., NW
Washington, D.C. 20005
Telephone: (202) 371-7020
Fax: (202) 661-9020
Tax Court Bar No. MR1190
raj.madan@skadden.com

By: _____
MATTHEW J. AVON
Special Trial Attorney
(Large Business & International)
33 Maiden Lane, 12th Floor
New York, NY 10038
Telephone: (646) 259-8012
Tax Court Bar No. AM0304
matthew.j.avon@irscounsel.treas.gov

Dated: April 19, 2023

Dated: April 19, 2023

**EXHIBIT 6-J: EXCERPT OF LGI 2010 CONSOLIDATED FEDERAL U.S. INCOME TAX RETURN, DATED SEPT. 14, 2011**

SUPPORTS CREDIT CLAIMED AGAINST REGULAR TAX

Form **1118**
(Rev. December 2010)
Department of the Treasury
Internal Revenue Service

# Foreign Tax Credit - Corporations

▶ See separate instructions.
▶ Attach to the corporation's tax return.

OMB No. 1545-0122

Name of corporation

LIBERTY GLOBAL, INC. & SUBSIDIARIES

Employer identification number

For calendar year  2010  or other tax year beginning _____ , and ending _____

Use a **separate** Form 1118 for each applicable category of income listed below. See Categories of Income in the instructions. Also, see **Specific Instructions.**
Check only one box on each form.

[X] Passive Category Income
[ ] General Category Income
[ ] Section 901(j) Income: Name of Sanctioned Country ▶
[ ] Income Re-sourced by Treaty: Name of Country ▶

## Schedule A   Income or (Loss) Before Adjustments *(Report all amounts in U.S. dollars. See Specific Instructions.)*

### Gross Income or (Loss) From Sources Outside the United States (*INCLUDE* Foreign Branch Gross Income here *and* on Schedule F)

| 1. Foreign Country or U.S. Possession (Enter two-letter code; use a separate line for each.)* | 2. Deemed Dividends (see instructions) (a) Exclude gross-up | (b) Gross-up (sec. 78) | 3. Other Dividends (a) Exclude gross-up | (b) Gross-up (sec. 78) | 4. Interest | 5. Gross Rents, Royalties, and License Fees | 6. Gross Income From Performance of Services | 7. Other (attach schedule) | 8. Total (add columns 2(a) through 7) |
|---|---|---|---|---|---|---|---|---|---|
| **A** AR | | | | | | | | -64,016. | -64,016. |
| **B** CI | 91,745. | | | | | | | | 91,745. |
| **C** JA | | | 17,423,355. | | 439,184. | | | -14,055,002. | 31,917,541. |
| **D** NL | | | | | 7,689,509. | | | | 7,689,509. |
| **E** OC | | | | | 278,244. | | | -2,422,172. | -2,143,928. |
| **F** RQ | | | | | 113,016. | | | 3,442,986. | 3,556,002. |
| **G** UK | 4,211. | | | | | | | | 4,211. |
| **H** NOL | | | | | | | | | |
| **Totals** (add lines A through F) | 95,956. | | 17,423,355. | | 8,519,953. | | | -15,011,800. | 41,051,064. |

* For section 863(b) income, NOLs, income from RICs, and high-taxed income, use a single line (see **Schedule A** on page 5 of the instructions).

### Deductions (*INCLUDE* Foreign Branch Deductions here and on Schedule F)

| | 9. Definitely Allocable Deductions | | | | 10. Apportioned Share of Deductions Not Definitely Allocable (enter amount from applicable line of Schedule H, Part II, column (d)) | 11. Net Operating Loss Deduction | 12. Total Deductions (add columns 9(e) through 11) | 13. Total Income (subtract column 12 from column 8) |
|---|---|---|---|---|---|---|---|---|
| | Rental, Royalty, and Licensing Expenses (a) Depreciation, Depletion, and Amortization | (b) Other Expenses | (c) Expenses Related to Gross Income From Performance of Services | (d) Other Definitely Allocable Deductions | (e) Total Definitely Allocable Deductions (add columns 9(a) through 9(d)) | | | |
| **A** | | | | | | | | -64,016. |
| **B** | | | | | | | | 91,745. |
| **C** | | | | | | | | 31,917,541. |
| **D** | | | | | | | | 7,689,509. |
| **E** | | | | 2,947. | 2,947. | | 51,238,123. | 51,241,070. | -53,384,998. |
| **F** | | | | 3,265,318. | 3,265,318. | | 644,585. | 3,909,903. | -353,901. |
| **G** | | | | | | | | | 4,211. |
| **H** | | | | | | 37,548,445. | 37,548,445. | -37,548,445. |
| **Totals** | | | | 3,268,265. | 3,268,265. | | 51,882,708. | 92,699,418. | -51,648,354. |

For Paperwork Reduction Act Notice, see separate instructions.

Form **1118** (Rev. 12-2010)

JSA
0C2210 1.000

09/14/2011  12:53:52

STIP-00000179

App.81

Exhibit 6-J
T.C. Docket No. 341-21

Form 1118 (Rev. 12-2009)                                                                Page **2**

## Schedule B  Foreign Tax Credit (Report all foreign tax amounts in U.S. dollars.)

### Part I - Foreign Taxes Paid, Accrued, and Deemed Paid (see instructions)

**1. Credit is Claimed for Taxes**

| | | Paid ☐ | Accrued ☒ |
| --- | --- | --- | --- |

**2.** Foreign Taxes Paid or Accrued (attach schedule showing amounts in foreign currency and conversion rate(s) used)

| | | Tax Withheld at Source on: | | | Other Foreign Taxes Paid or Accrued on: | | | | | **3.** Tax Deemed Paid (from Schedule C— Part I, column 10, Part II, column 8(b), and Part III, column 8) |
|---|---|---|---|---|---|---|---|---|---|---|
| Date Paid | Date Accrued | **(a)** Dividends | **(b)** Interest | **(c)** Rents, Royalties, and License Fees | **(d)** Section 863(b) Income | **(e)** Foreign Branch Income | **(f)** Services Income | **(g)** Other | **(h)** Total Foreign Taxes Paid or Accrued (add columns 2(a) through 2(h)) | |
| **A** | | | | | | | | | | |
| **B** | | | | | | | | | | NONE |
| **C** | 12/31/2010 | 423,786. | 43,895. | | | | | | 467,681. | |
| **D** | 12/31/2010 | | | | | | | | | |
| **E** | 12/31/2010 | | | 21,573. | | | | | 21,573. | |
| **F** | 12/31/2010 | | | | | | | 1,456. | 1,456. | |

**Totals** (add lines A through F)

### Part II - Separate Foreign Tax Credit (*Complete a separate Part II for each applicable category of income.*)

1 Total foreign taxes paid or accrued (total from Part I, column 2(h)) . . . . . . . . . . . .

2 Total taxes deemed paid (total from Part I, column 3) . . . . . . . . . . . . . . . . . . . .

3 Reductions of taxes paid, accrued, or deemed paid (enter total from Schedule G). . . . . .

4 Taxes reclassified under high-tax kickout . . . . . . . . . . . . . . . . . . . . . . . . . .

5 Enter the sum of any carryover of foreign taxes (from Schedule K, line 3, column (xiv)) plus any carrybacks to the current tax year . . . . . .

6 Total foreign taxes (combine lines 1 through 5) . . . . . . . . . . . . . . . . . . . . . . .

7 Enter the amount from the applicable column of Schedule J, Part I, line 11 (see instructions). If Schedule J is **not** required to be completed, enter the result from the "Totals" line of column 13 of the applicable Schedule A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

8 a Total taxable income from all sources (enter taxable income from the corporation's tax return) . . . . . . . . . . .

b Adjustments to line 8a (see instructions) . . . . . . . . . . . . . . . . . . . . . . . . .

c Subtract line 8b from line 8a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

9 Divide line 7 by line 8c. Enter the resulting fraction as a decimal (see instructions). If line 7 is greater than line 8c, enter 1 . . . . . . . .

10 Total U.S. income tax against which credit is allowed (regular tax liability (see section 26(b)) minus American Samoa economic development credit) . . . . .

11 Credit limitation (multiply line 9 by line 10) (see instructions). . . . . . . . . . . . . . . . .

12 **Separate foreign tax credit** (enter the smaller of line 6 or line 11 here and on the appropriate line of Part III) . . . . .

### Part III - Summary of Separate Credits (Enter amounts from Part II, line 12 for **each** applicable category of income. **Do not** include taxes paid to sanctioned countries.)

1 Credit for taxes on passive category income . . . . . . . . . . . . . . . . . . . . . . . . .

2 Credit for taxes on general category income . . . . . . . . . . . . . . . . . . . . . . . . .

3 Credit for taxes on income re-sourced by treaty (combine all such credits on this line) . . . . .

4 Total (add lines 1 through 3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

5 Reduction in credit for international boycott operations (see instructions) . . . . . . . . . . .

6 **Total foreign tax credit** (subtract line 5 from line 4). Enter here and on the appropriate line of the corporation's tax return . . . . .

Form **1118** (Rev. 12-2009)

Exhibit 6-J

T.C. Docket No. 341-21

09/14/2011  12:53:52

STIP-00000180

JSA

0C2220 1.000

Form 1118 (Rev. 12-2009)    Page 2

## Schedule B  Foreign Tax Credit (Report all foreign tax amounts in U.S. dollars.)

### Part I – Foreign Taxes Paid, Accrued, and Deemed Paid (see instructions)

| 1. Credit is Claimed for Taxes | | 2. Foreign Taxes Paid or Accrued (attach schedule showing amounts in foreign currency and conversion rate(s) used) | | | | | | | | 3. Tax Deemed Paid (from Schedule C— Part I, column 10, Part II, column 8(b), and Part III, column 8) |
|---|---|---|---|---|---|---|---|---|---|---|
| ☐ Paid  ☒ Accrued | | Tax Withheld at Source on: | | | Other Foreign Taxes Paid or Accrued on: | | | | (h) Total Foreign Taxes Paid or Accrued (add columns 2(a) through 2(g)) | |
| Date Paid | Date Accrued | (a) Dividends | (b) Interest | (c) Rents, Royalties, and License Fees | (d) Section 863(b) Income | (e) Foreign Branch Income | (f) Services Income | (g) Other | | |
| G | | | | | | | | | | |
| H | | | | | | | | | | NONE |
| Totals (add lines A through F) | | 423,786. | 43,895. | 21,573. | | | | 1,456. | 490,710. | 490,710. |

### Part II – Separate Foreign Tax Credit (Complete a *separate Part II for each applicable category of income*.)

| | | | |
|---|---|---|---|
| 1 | Total foreign taxes paid or accrued (total from Part I, column 2(h)) | 490,710. | |
| 2 | Total taxes deemed paid (total from Part I, column 3) | NONE | |
| 3 | Reductions of taxes paid, accrued, or deemed paid (enter total from Schedule G) | ( | ) |
| 4 | Taxes reclassified under high-tax kickout | | |
| 5 | Enter the sum of any carryover of foreign taxes (from Schedule K, line 3, column (xiv)) plus any carrybacks to the current tax year | 2,590,569. | |
| 6 | Total foreign taxes (combine lines 1 through 5) | | 3,081,279. |
| 7 | Enter the amount from the applicable column of Schedule J, Part I, line 11 (see instructions). If Schedule J is **not** required to be completed, enter the result from the "Totals" line of column 13 of the applicable Schedule A | | 141,991,233. |
| 8 a | Total taxable income from all sources (enter taxable income from the corporation's tax return) | 1,242,928,735. | |
| b | Adjustments to line 8a (see instructions) | | |
| c | Subtract line 8b from line 8a | | 1,242,928,735. |
| 9 | Divide line 7 by line 8c. Enter the resulting fraction as a decimal (see instructions). If line 7 is greater than line 8c, enter 1 | | 0.114239239 |
| 10 | Total U.S. income tax against which credit is allowed (regular tax liability (see section 26(b)) minus American Samoa economic development credit) | | 435,025,057. |
| 11 | Credit limitation (multiply line 9 by line 10) (see instructions) | | 49,696,932. |
| 12 | **Separate foreign tax credit** (enter the smaller of line 6 or line 11 here and on the appropriate line of Part III) | | 3,081,279. |

### Part III – Summary of Separate Credits (Enter amounts from Part II, line 12 for **each** applicable category of income. **Do not** include taxes paid to sanctioned countries.)

| | | |
|---|---|---|
| 1 | Credit for taxes on passive category income | |
| 2 | Credit for taxes on general category income | |
| 3 | Credit for taxes on income re-sourced by treaty (combine all such credits on this line) | |
| 4 | Total (add lines 1 through 3) | |
| 5 | Reduction in credit for international boycott operations (see instructions) | |
| 6 | **Total foreign tax credit** (subtract line 5 from line 4). Enter here and on the appropriate line of the corporation's tax return | |

Form 1118 (Rev. 12-2009)

09/14/2011  12:53:52

Exhibit 6-J

T.C. Docket No. 341-21

STIP-00000181

- App.83 -

JSA
0C2220 1.000

Form 1118 (Rev. 12-2009)

Page 3

**Schedule C** — **Tax Deemed Paid by Domestic Corporation Filing Return**

Use this schedule to figure the tax deemed paid by the corporation with respect to dividends from a first-tier foreign corporation under section 902(a), and deemed inclusions of earnings from a first- or lower-tier foreign corporation under section 960(a). **Report all amounts in U.S. dollars unless otherwise specified.**

**Part I—Dividends and Deemed Inclusions From Post-1986 Undistributed Earnings**

| 1. Name of Foreign Corporation (identify DISCs and former DISCs) | 2. Tax Year End (Yr-Mo) (see instructions) | 3. Country of Incorporation (enter country code from instructions) | 4. Post-1986 Undistributed Earnings (in functional currency - attach schedule) | 5. Opening Balance in Post-1986 Foreign Income Taxes | 6. Foreign Taxes Paid and Deemed Paid for Tax Year Indicated | | 7. Post-1986 Foreign Income Taxes (add columns 5, 6(a), and 6(b)) | 8. Dividends and Deemed Inclusions | | 9. Divide Column 8(a) by Column 4 | 10. Tax Deemed Paid (multiply column 7 by column 9) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | (a) Taxes Paid | (b) Taxes Deemed Paid (from Schedule D, Part I - see instructions) | | (a) Functional Currency | (b) U.S. Dollars | | |
| VTR BANDA ANCHA (CHILE) | 12/31/2010 | CI | -16237805409. | 1,686. | 17,614. | | 19,300. | 46,713,278. | 91,745. | 0.6703 | NONE |
| Zone Broadcasting E (T | 12/31/2010 | UK | 3,908. | | | | | 2,724. | 4,211. | | NONE |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

Total (Add amounts in column 10. Enter the result here and include on "Totals" line of Schedule B, Part I, column 3.) . . . . . . . . . . . . . ▲   NONE

**Part II—Dividends Paid Out of Pre-1987 Accumulated Profits**

| 1. Name of Foreign Corporation (identify DISCs and former DISCs) | 2. Tax Year End (Yr-Mo) (see instructions) | 3. Country of Incorporation (enter country code from instructions) | 4. Accumulated Profits for Tax Year Indicated (in functional currency computed under section 902 (attach schedule) | 5. Foreign Taxes Paid and Deemed Paid on Earnings and Profits (E&P) for Tax Year Indicated (in functional currency) (see instructions) | 6. Dividends Paid | | 7. Divide Column 6(a) by Column 4 | 8. Tax Deemed Paid (see instructions) | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | (a) Functional Currency | (b) U.S. Dollars | | (a) Functional Currency | (b) U.S. Dollars |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

Total (Add amounts in column 8b. Enter the result here and include on "Totals" line of Schedule B, Part I, column 3.) . . . . . . . . . . . . . . . . ▲

**Part III—Deemed Inclusions From Pre-1987 Earnings and Profits**

| 1. Name of Foreign Corporation (identify DISCs and former DISCs) | 2. Tax Year End (Yr-Mo) (see instructions) | 3. Country of Incorporation (enter country code from instructions) | 4. E&P for Tax Year Indicated (in functional currency translated from U.S. dollars, computed under section 964) (attach schedule) | 5. Foreign Taxes Paid and Deemed Paid for Tax Year Indicated (see instructions) | 6. Deemed Inclusions | | 7. Divide Column 6(a) by Column 4 | 8. Tax Deemed Paid (multiply column 5 by column 7) |
|---|---|---|---|---|---|---|---|---|
| | | | | | (a) Functional Currency | (b) U.S. Dollars | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

Total (Add amounts in column 8. Enter the result here and include on "Totals" line of Schedule B, Part I, column 3.) . . . . . . . . . . . . . . . . ▲

JSA
0C2230 1.000

Form **1118** (Rev. 12-2009)

09/14/2011   12:53:52

STIP-00000182

Exhibit 6-J
T.C. Docket No. 341-21

Form 1118 (Rev. 12-2009)

Page **4**

**Schedule D**　**Tax Deemed Paid by First- and Second-Tier Foreign Corporations under Section 902(b)**

Use Part I to compute the tax deemed paid by a first-tier foreign corporation with respect to dividends from a second-tier foreign corporation. Use Part II to compute the tax deemed paid by a second-tier foreign corporation with respect to dividends from a third-tier foreign corporation. **Report all amounts in U.S. dollars unless otherwise specified.**

**Part I - Tax Deemed Paid by First-Tier Foreign Corporations**

**Section A - Dividends Paid Out of Post-1986 Undistributed Earnings (Include the column 10 results in Schedule C, Part I, column 6(b).)**

| 1. Name of Second-Tier Foreign Corporation and Its Related First-Tier Foreign Corporation | 2. Tax Year End (Yr-Mo) (see instructions) | 3. Country of Incorporation (enter country code from instructions) | 4. Post-1986 Undistributed Earnings (in functional currency-attach schedule) | 5. Opening Balance in Post-1986 Foreign Income Taxes | 6. Foreign Taxes Paid and Deemed Paid for Tax Year Indicated | | 7. Post-1986 Foreign Income Taxes (add columns 5, 6(a), and 6(b)) | 8. Dividends Paid (in functional currency) | | 9. Divide Column 8(a) by Column 4 | 10. Tax Deemed Paid (multiply column 7 by column 9) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | (a) Taxes Paid | (b) Taxes Deemed Paid (see instructions) | | (a) of Second-tier Corporation | (b) of First-tier Corporation | | |
| Video 2000 SA | 12/31/2010 | SZ | 114,208. | 3,584. | | | 3,584. | 24,946. | 19,072. | 0.21881 | 784. |
| LIBERTY GLOBAL HOLDING BV | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

**Section B - Dividends Paid Out of Pre-1987 Accumulated Profits (Include the column 8(b) results in Schedule C, Part I, column 6(b).)**

| 1. Name of Second-Tier Foreign Corporation and Its Related First-Tier Foreign Corporation | 2. Tax Year End (Yr-Mo) (see instructions) | 3. Country of Incorporation (enter country code from instructions) | 4. Accumulated Profits for Tax Year Indicated (in functional currency - attach schedule) | 5. Foreign Taxes Paid and Deemed Paid for Tax Year Indicated (in functional currency - see instructions) | 6. Dividends Paid (in functional currency) | | 7. Divide Column 6(a) by Column 4 | 8. Tax Deemed Paid (see instructions) | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | (a) of Second-tier Corporation | (b) of First-tier Corporation | | (a) Functional Currency of Second-tier Corporation | (b) U.S. Dollars |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

**Part II - Tax Deemed Paid by Second-Tier Foreign Corporations**

**Section A - Dividends Paid Out of Post-1986 Undistributed Earnings (Include the column 10 results in Section A, column 6(b), of Part I above.)**

| 1. Name of Third-Tier Foreign Corporation and Its Related Second-Tier Foreign Corporation | 2. Tax Year End (Yr-Mo) (see instructions) | 3. Country of Incorporation (enter country code from instructions) | 4. Post-1986 Undistributed Earnings (in functional currency-attach schedule) | 5. Opening Balance in Post-1986 Foreign Income Taxes | 6. Foreign Taxes Paid and Deemed Paid for Tax Year Indicated | | 7. Post-1986 Foreign Income Taxes (add columns 5, 6(a), and 6(b)) | 8. Dividends Paid (in functional currency) | | 9. Divide Column 8(a) by Column 4 | 10. Tax Deemed Paid (multiply column 7 by column 9) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | (a) Taxes Paid | (b) Taxes Deemed Paid (see instructions, Schedule E, Part I, column 10) | | (a) of Third-tier Corporation | (b) of Second-tier Corporation | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

**Section B - Dividends Paid Out of Pre-1987 Accumulated Profits (Include the column 8(b) results in Section A, column 6(b), of Part I above.)**

| 1. Name of Third-Tier Foreign Corporation and Its Related Second-Tier Foreign Corporation | 2. Tax Year End (Yr-Mo) (see instructions) | 3. Country of Incorporation (enter country code from instructions) | 4. Accumulated Profits for Tax Year Indicated (in functional currency - attach schedule) | 5. Foreign Taxes Paid and Deemed Paid for Tax Year Indicated (in functional currency - see instructions) | 6. Dividends Paid (in functional currency) | | 7. Divide Column 6(a) by Column 4 | 8. Tax Deemed Paid (see instructions) | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | (a) of Third-tier Corporation | (b) of Second-tier Corporation | | (a) In Functional Currency of Third-tier Corporation | (b) U.S. Dollars |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

JSA

0C22240 1.000

Form **1118** (Rev. 12-2009)

09/14/2011　12:53:52

Exhibit 6-J

T.C. Docket No. 341-21

STIP-00000183

Form 1118 (Rev 12-2010)

Page **6**

## Schedule F — Gross Income and Definitely Allocable Deductions for Foreign Branches

| | 1. Foreign Country or U.S. Possession (Enter two-letter code from Schedule A, column 1. Use a separate line for each.) | 2. Gross Income | 3. Definitely Allocable Deductions |
|---|---|---|---|
| A | AR | | |
| B | CT | | |
| C | JA | | |
| D | NL | | |
| E | OC | -1,189,752. | |
| F | RQ | 3,556,002. | 3,265,318. |

**Totals (add lines A through F)\*** ▶

**\*Note:** *The Schedule F totals are not carried over to any other Form 1118 Schedule. (These totals were already included in Schedule A.) However, the IRS requires the corporation to complete Schedule F under the authority of section 905(b).*

## Schedule G — Reductions of Taxes Paid, Accrued, or Deemed Paid

**A** Reduction of Taxes Under Section 901(e) - Attach separate schedule

**B** Reduction of Foreign Oil and Gas Taxes - Enter amount from Schedule I, Part II, line 6

**C** Reduction of Taxes Due to International Boycott Provisions - Enter appropriate portion of Schedule C (Form 5713), line 2b. **Important:** Enter only "specifically attributable taxes" here.

**D** Reduction of Taxes for Section 6038(c) Penalty - Attach separate schedule

**E** Other Reductions of Taxes - Attach schedule(s)

**Total** (add lines A through E). Enter here and on Schedule B, Part II, line 3. . . . . . . . . . . . . . . . . . . . . . ▶

Form **1118** (Rev. 12-2010)

STIP-00000184

Exhibit 6-J
T.C. Docket No. 341-21

09/14/2011  12:53:52

- App.86 -

JSA
0C2260 1.000

Form 1118 (Rev. 12-2010)

Page **6**

## Schedule F — Gross Income and Definitely Allocable Deductions for Foreign Branches

| 1. Foreign Country or U.S. Possession (Enter two-letter code from Schedule A, column 1. Use a separate line for each.) | 2. Gross Income | 3. Definitely Allocable Deductions |
|---|---|---|
| G   UK | 2,366,250. | 3,265,318. |
| H | | |
| | | |
| | | |
| | | |
| | | |
| **Totals (add lines A through F)*** ▶ | 2,366,250. | 3,265,318. |

* **Note:** *The Schedule F totals are not carried over to any other Form 1118 Schedule. (These totals were already included in Schedule A.) However, the IRS requires the corporation to complete Schedule F under the authority of section 905(b).*

## Schedule G — Reductions of Taxes Paid, Accrued, or Deemed Paid

| | | |
|---|---|---|
| **A** | Reduction of Taxes Under Section 901(e) - Attach separate schedule | |
| **B** | Reduction of Foreign Oil and Gas Taxes - Enter amount from Schedule I, Part II, line 6 | |
| **C** | Reduction of Taxes Due to International Boycott Provisions - Enter appropriate portion of Schedule C (Form 5713), line 2b. **Important:** Enter only "specifically attributable taxes" here. | |
| **D** | Reduction of Taxes for Section 6038(c) Penalty - Attach separate schedule | |
| **E** | Other Reductions of Taxes - Attach schedule(s) | |
| | | |
| **Total** (add lines A through E). Enter here and on Schedule B, Part II, line 3. . . . . . . . . . . . . . . . . . ▲ | | |

Form **1118** (Rev. 12-2010)

JSA
0C2250 1.000

09/14/2011   12:53:52

- App.87 -

Exhibit 6-J
T.C. Docket No. 341-21

STIP-00000185

SUPPORTS CREDIT CLAIMED AGAINST REGULAR TAX

Form **1118**
(Rev. December 2010)
Department of the Treasury
Internal Revenue Service

# Foreign Tax Credit - Corporations

▶ See separate instructions.
▶ Attach to the corporation's tax return.

OMB No. 1545-0122

Name of corporation

LIBERTY GLOBAL, INC. & SUBSIDIARIES

Employer identification number

For calendar year 2010 or other tax year beginning _____, and ending _____

Use a **separate** Form 1118 for each applicable category of income listed below. See **Categories of Income** in the instructions. Also, see **Specific Instructions.**
Check only one box on each form.

☐ Passive Category Income          ☐ Section 901(j) Income: Name of Sanctioned Country ▶ _____

☒ General Category Income          ☐ Income Re-sourced by Treaty: Name of Country ▶ _____

## Schedule A  Income or (Loss) Before Adjustments (Report all amounts in U.S. dollars. See *Specific Instructions*.)

### Gross Income or (Loss) From Sources Outside the United States (INCLUDE Foreign Branch Gross Income here and on Schedule F)

| 1. Foreign Country or U.S. Possession (Enter two-letter code; use a separate line for each.) * | 2. Deemed Dividends (see instructions) | | 3. Other Dividends | | 4. Interest | 5. Gross Rents, Royalties, and License Fees | 6. Gross Income From Performance of Services | 7. Other (attach schedule) | 8. Total (add columns 2(a) through 7) |
|---|---|---|---|---|---|---|---|---|---|
| | (a) Exclude gross-up | (b) Gross-up (sec. 78) | (a) Exclude gross-up | (b) Gross-up (sec. 78) | | | | | |
| **A** AR | | | | | | | | -2,070,715. | -2,070,715. |
| **B** JA | | | 450,516,657. | 248,319,708. | | | | 1,391,445,120. | 2,090,281,485. |
| **C** NL | | | | | 94,837,284. | | | | 94,837,284. |
| **D** OC | | | | | | | | -11,077,116. | -11,077,116. |
| **E** RQ | | | | | | | | 111,335,757. | 111,335,757. |
| **F** NOL | | | | | | | | | |
| Totals (add lines A through F) | | | 450,516,657. | 248,319,708. | 94,837,284. | | | 1,489,633,046. | 2,283,306,695. |

* For section 863(b) income, NOLs, income from RICs, and high-taxed income, use a single line (see **Schedule A** on page 5 of the instructions).

### Deductions (INCLUDE Foreign Branch Deductions here and on Schedule F)

| | 9. Definitely Allocable Deductions | | | | 10. Apportioned Share of Deductions Not Definitely Allocable (enter amount from applicable line of Schedule H, Part II, column (d)) | 11. Net Operating Loss Deduction | 12. Total Deductions (add columns 9(e) through 11) | 13. Total Income or (Loss) Before Adjustments (subtract column 12 from column 8) |
|---|---|---|---|---|---|---|---|---|
| | Rental, Royalty, and Licensing Expenses | | (c) Expenses Related to Gross Income From Performance of Services | (d) Other Definitely Allocable Deductions | (e) Total Definitely Allocable Deductions (add columns 9(a) through 9(d)) | | | | |
| | (a) Depreciation, Depletion, and Amortization | (b) Other Expenses | | | | | | | |
| **A** | | | | | | | | -2,070,715. |
| **B** | | | | | | | | 2,090,281,485. |
| **C** | | | | | | | | 94,837,284. |
| **D** | | | | 162,498. | 162,498. | 278,833,323. | | 278,995,821. | -290,072,937. |
| **E** | | | | 105,578,703. | 105,578,703. | 3,507,771. | | 109,086,474. | 2,249,283. |
| **F** | | | | | | | 445,581,282. | 445,581,282. | -445,581,282. |
| Totals | | | | 105,741,201. | 105,741,201. | 282,341,094. | 445,581,282. | 833,663,577. | 1,449,643,118. |

**For Paperwork Reduction Act Notice, see separate instructions.**

JSA
0C2210 1.000

Form **1118** (Rev. 12-2010)

STIP-00000186

09/14/2011  12:53:52

Exhibit 6-J
T.C. Docket No. 341-21

App.88

Form 1118 (Rev. 12-2009)    Page 2

## Schedule B  Foreign Tax Credit (Report all foreign tax amounts in U.S. dollars.)

### Part I—Foreign Taxes Paid, Accrued, and Deemed Paid (see instructions)

| | 1. Credit is Claimed for Taxes | | 2. Foreign Taxes Paid or Accrued (attach schedule showing amounts in foreign currency and conversion rate(s) used) | | | | | | | | 3. Tax Deemed Paid (from Schedule C—Part I, column 10, Part II, column 8(b), and Part III, column 8) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Paid [ ]  Accrued [X] | | Tax Withheld at Source on: | | | Other Foreign Taxes Paid or Accrued on: | | | | (h) Total Foreign Taxes Paid or Accrued (add columns 2(a) through 2(g)) | |
| | Date Paid | Date Accrued | (a) Dividends | (b) Interest | (c) Rents, Royalties, and License Fees | (d) Section 863(b) Income | (e) Foreign Branch Income | (f) Services Income | (g) Other | | |
| A | | | | | | | | | | | |
| B | 12/31/2010 | 12/31/2010 | 715,378. | | | | | | | 715,378. | 248,319,708. |
| C | | | | | 2,272,310. | | | | | | |
| D | | 12/31/2010 | | | | | | | | 2,272,310. | |
| E | | 12/31/2010 | | | | | | | 71,355. | 71,355. | |
| F | | | | | | | | | | | |
| **Totals** (add lines A through F) | | | 715,378. | | 2,272,310. | | | | 71,355. | 3,059,043. | 248,319,708. |

### Part II—Separate Foreign Tax Credit (Complete a separate Part II for each applicable category of income.)

| | | | |
|---|---|---|---|
| 1 | Total foreign taxes paid or accrued (total from Part I, column 2(h)) . . . . . . . . . . . . . . . . . | 1 | 3,059,043. |
| 2 | Total taxes deemed paid (total from Part I, column 3). . . . . . . . . . . . . . . . . . . . . . . . | 2 | 248,319,708. |
| 3 | Reductions of taxes paid, accrued, or deemed paid (enter total from Schedule G). . . . . . . . . . . . | 3 | ( ) |
| 4 | Taxes reclassified under high-tax kickout . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4 | |
| 5 | Enter the sum of any carryover of foreign taxes (from Schedule K, line 3, column (xiv)) plus any carrybacks to the current tax year . . . . . | 5 | 12,978,322. |
| 6 | Total foreign taxes (combine lines 1 through 5) . . . . . . . . . . . . . . . . . . . . . . . . . . . | 6 | 264,357,073. |
| 7 | Enter the amount from the applicable column of Schedule J, Part I, line 11 (see instructions). If Schedule J is **not** required to be completed, enter the result from the "Totals" line of column 13 of the applicable Schedule A . . . . . . . . . . . . . . . . . | 7 | 626,565,336. |
| 8a | Total taxable income from all sources (enter taxable income from the corporation's tax return) . . . | 8a | 1,242,928,735. |
| b | Adjustments to line 8a (see instructions) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 8b | |
| c | Subtract line 8b from line 8a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 8c | 1,242,928,735. |
| 9 | Divide line 7 by line 8c. Enter the resulting fraction as a decimal (see instructions). If line 7 is greater than line 8c, enter 1 . . . . | 9 | 0.5041039911 |
| 10 | Total U.S. income tax against which credit is allowed (regular tax liability (see section 26(b)) minus American Samoa economic development credit) . . . . | 10 | 435,025,057. |
| 11 | Credit limitation (multiply line 9 by line 10) (see instructions) . . . . . . . . . . . . . . . . . . . . | 11 | 219,297,867. |
| 12 | **Separate foreign tax credit** (enter the smaller of line 6 or line 11 here and on the appropriate line of Part III) . . . . . . . | 12 | 219,297,867. |

### Part III—Summary of Separate Credits (Enter amounts from Part II, line 12 for **each** applicable category of income. **Do not** include taxes paid to sanctioned countries.)

| | | | |
|---|---|---|---|
| 1 | Credit for taxes on passive category income . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 1 | 3,081,279. |
| 2 | Credit for taxes on general category income . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 | 219,297,867. |
| 3 | Credit for taxes on income re-sourced by treaty (combine all such credits on this line) . . . . . . . | 3 | NONE |
| 4 | Total (add lines 1 through 3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4 | 222,379,146. |
| 5 | Reduction in credit for international boycott operations (see instructions) . . . . . . . . . . . . . | 5 | |
| 6 | **Total foreign tax credit** (subtract line 5 from line 4). Enter here and on the appropriate line of the corporation's tax return . . . . | 6 | 222,379,146. |

Form 1118 (Rev. 12-2009)

Exhibit 6-J
T.C. Docket No. 341-21

09/14/2011  12:53:52

STIP-00000187

JSA
0C2220 1.000

Form 1118 (Rev. 12-2009)   Page **3**

## Schedule C — Tax Deemed Paid by Domestic Corporation Filing Return

Use this schedule to figure the tax deemed paid by the corporation with respect to dividends from a first-tier foreign corporation under section 902(a), and deemed inclusions of earnings from a first- or lower-tier foreign corporation under section 960(a). **Report all amounts in U.S. dollars unless otherwise specified.**

### Part I—Dividends and Deemed Inclusions From Post-1986 Undistributed Earnings

| 1. Name of Foreign Corporation (identify DISCs and former DISCs) | 2. Tax Year End (Yr-Mo) (see instructions) | 3. Country of Incorporation (enter country code from instructions) | 4. Post-1986 Undistributed Earnings (in functional currency - attach schedule) | 5. Opening Balance in Post-1986 Foreign Income Taxes | 6. Foreign Taxes Paid and Deemed Paid for Tax Year Indicated (a) Taxes Paid | (b) Taxes Deemed Paid (from Schedule D, Part I - see instructions) | 7. Post-1986 Foreign Income Taxes (add columns 5, 6(a), and 6(b)) | 8. Dividends and Deemed Inclusions (a) Functional Currency | (b) U.S. Dollars | 9. Divide Column 8(a) by Column 4 | 10. Tax Deemed Paid (multiply column 7 by column 9) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Jupiter Telecommunicati | 12/31/2010 | JA | 5686479557. | 7,466,456. | 7,539,894. | | 15,006,350. | 1,270,330,390. | 13,726,399. | 0.22339 | 2,668,106. |
| Higashiosaka Cable Tele | 12/31/2010 | JA | 638,313,582. | 2,502,190. | 5,581,921. | | 8,084,111. | 112,283,032. | 1,235,113. | 0.7589 | 1,421,914. |
| Takatsuki Cable Network | 12/31/2010 | JA | 287,246,007. | 1,730,034. | 4,029,957. | | 5,759,991. | 36,926,152. | 406,188. | 0.2855 | 740,447. |
| Toyonaka Cable Net | 12/31/2010 | JA | 315,957,049. | 2,077,453. | 3,990,558. | | 6,068,011. | 55,201,258. | 607,214. | 0.7471 | 1,060,142. |
| Jupiter Visual Communic | 12/31/2010 | JA | 265,527,790. | 759,307. | 633,040. | | 1,392,347. | 46,042,519. | 506,468. | 0.7340 | 241,433. |
| Cablenet Shimonoseki | 12/31/2010 | JA | 441,702,920. | 2,172,436. | 4,811,011. | | 6,923,447. | 178,801,342. | 1,966,815. | 0.40480 | 2,802,611. |
| Kansai Multimedia | 12/31/2010 | JA | 353685527. | 6,637,374. | 16,267,220. | | 22,904,594. | 477,777,727. | 5,255,555. | 0.3598 | 3,114,567. |

**Total** (Add amounts in column 10. Enter the result here and include on "Totals" line of Schedule B, Part I, column 3.) . . . . . . . . . . . ▲

### Part II—Dividends Paid Out of Pre-1987 Accumulated Profits

| 1. Name of Foreign Corporation (identify DISCs and former DISCs) | 2. Tax Year End (Yr-Mo) (see instructions) | 3. Country of Incorporation (enter country code from instructions) | 4. Accumulated Profits for Tax Year Indicated (in functional currency computed under section 902) (attach schedule) | 5. Foreign Taxes Paid and Deemed Paid for Tax Year Indicated (E&P) (in functional currency) (see instructions) | 6. Dividends Paid (a) Functional Currency | (b) U.S. Dollars | 7. Divide Column 6(a) by Column 4 | 8. Tax Deemed Paid (see instructions) (a) Functional Currency | (b) U.S. Dollars |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

**Total** (Add amounts in column 8b. Enter the result here and include on "Totals" line of Schedule B, Part I, column 3.) . . . . . . . . . . . ▲

### Part III—Deemed Inclusions From Pre-1987 Earnings and Profits

| 1. Name of Foreign Corporation (identify DISCs and former DISCs) | 2. Tax Year End (Yr-Mo) (see instructions) | 3. Country of Incorporation (identify country code from instructions) | 4. E&P for Tax Year Indicated (in functional currency translated from U.S. dollars, computed under section 964) (attach schedule) | 5. Foreign Taxes Paid and Deemed Paid for Tax Year Indicated (see instructions) | 6. Deemed Inclusions (a) Functional Currency | (b) U.S. Dollars | 7. Divide Column 6(a) by Column 4 | 8. Tax Deemed Paid (multiply column 5 by column 7) |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

**Total** (Add amounts in column 8. Enter the result here and include on "Totals" line of Schedule B, Part I, column 3.) . . . .

STIP-00000188

09/14/2011   12:53:52

Exhibit 6-J
T.C. Docket No. 341-21

- App.90 -

JSA
0C2230 1.000

Form 1118 (Rev. 12-2009)

Page **3**

## Schedule C — Tax Deemed Paid by Domestic Corporation Filing Return

Use this schedule to figure the tax deemed paid by the corporation with respect to dividends from a first-tier foreign corporation under section 902(a), and deemed inclusions of earnings from a first- or lower-tier foreign corporation under section 960(a). **Report all amounts in U.S. dollars unless otherwise specified.**

### Part I—Dividends and Deemed Inclusions From Post-1986 Undistributed Earnings

| 1. Name of Foreign Corporation (identify DISCs and former DISCs) | 2. Tax Year End (Yr-Mo) (see instructions) | 3. Country of Incorporation (enter country code from instructions) | 4. Post-1986 Undistributed Earnings (in functional currency - attach schedule) | 5. Opening Balance in Post-1986 Foreign Income Taxes | 6. Dividends and Deemed Inclusions Paid for Tax Year Indicated — (a) Taxes Paid | 6. (b) Taxes Deemed Paid (from Schedule D, Part I - see instructions) | 7. Post-1986 Foreign Income Taxes (add columns 5, 6(a), and 6(b)) | 8. Dividends and Deemed Inclusions — (a) Functional Currency | 8. (b) U.S. Dollars | 9. Divide Column 8(a) by Column 4 | 10. Tax Deemed Paid (multiply column 7 by column 9) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Jupiter Entertainment | 12/31/2010 | JA | 2006248369. | 14,076,106. | 26,758,334. | | 40,834,440. | 759,612,405. | 8,355,736. | 0.37866 | 15,462,369. |
| Technology Networks Co. LTD | 12/31/2010 | JA | 9385101241. | 9,568,168. | 50,614,797. | | 60,182,965. | 3,568,805,495. | 39,036,860. | 0.37813 | 22,756,985. |
| J-COM Finance Co., LTD | 12/31/2010 | JA | 279,736,325. | 830,933. | 416,904. | | 1,247,837. | 48,413,158. | 532,545. | 0.-7303 | 215,913. |
| Cablenet Kobe Ashiya Co | 12/31/2010 | JA | 4306290520. | 7,314,140. | 17,979,826. | | 25,293,966. | 1,241,975,193. | 13,661,727. | 0.28841 | 7,295,033. |
| J-COM Sapporo Co., LTD | 12/31/2010 | JA | 630,351,046. | 39,443. | 284,482. | | 323,925. | 400,941,086. | 4,410,352. | 0.63606 | 206,036. |
| J-COM Kanto Co., LTD | 12/31/2010 | JA | 271,550,307. | 42,298,254. | 32,447,950. | | 74,746,204. | 240,515,844. | 2,645,674. | 0.88578 | 66,208,692. |
| J-COM West | 12/31/2010 | JA | 1842360996 | 35,338,852. | 93,856,848. | | 129195700. | 6,565,126,736. | 72,216,383. | 0.35634 | 46,037,596. |

**Total** (Add amounts in column 10. Enter the result here and include on "Totals" line of Schedule B, Part I, column 3.) . . . . . . . . . . . . . . . . . . . . . . . . . ▲

### Part II—Dividends Paid Out of Pre-1987 Accumulated Profits

| 1. Name of Foreign Corporation (identify DISCs and former DISCs) | 2. Tax Year End (Yr-Mo) (see instructions) | 3. Country of Incorporation (enter country code from instructions) | 4. Accumulated Profits for Tax Year Indicated (in functional currency computed under section 902 (attach schedule) | 5. Foreign Taxes Paid and Deemed Paid on Earnings and Profits (E&P) for Tax Year Indicated (in functional currency) (see instructions) | 6. Dividends Paid — (a) Functional Currency | 6. (b) U.S. Dollars | 7. Divide Column 6(a) by Column 4 | 8. Tax Deemed Paid (see instructions) |
|---|---|---|---|---|---|---|---|---|

**Total** (Add amounts in column 8b. Enter the result here and include on "Totals" line of Schedule B, Part I, column 3.) . . . . . . . . . . . . . . . . . . . ▲

### Part III—Deemed Inclusions From Pre-1987 Earnings and Profits

| 1. Name of Foreign Corporation (identify DISCs and former DISCs) | 2. Tax Year End (Yr-Mo) (see instructions) | 3. Country of Incorporation (enter country code from instructions) | 4. E&P for Tax Year Indicated (in functional currency translated from U.S. dollars, computed under section 964) (attach schedule) | 5. Foreign Taxes Paid and Deemed Paid for Tax Year Indicated (see instructions) | 6. Deemed Inclusions — (a) Functional Currency | 6. (b) U.S. Dollars | 7. Divide Column 6(a) by Column 4 | 8. Tax Deemed Paid (multiply column 5 by column 7) |
|---|---|---|---|---|---|---|---|---|

**Total** (Add amounts in column 8. Enter the result here and include on "Totals" line of Schedule B, Part I, column 3.) . . . . . . . . . . . . . . . . . . . ▲

JSA
0C2230 1.000

Form **1118** (Rev. 12-2009)

09/14/2011  12:53:52

Exhibit 6-J
T.C. Docket No. 341-21

STIP-00000189

- App.91 -

Form 1118 (Rev. 12-2009)    Page **3**

## Schedule C — Tax Deemed Paid by Domestic Corporation Filing Return

Use this schedule to figure the tax deemed paid by the corporation with respect to dividends from a first-tier foreign corporation under section 902(a), and deemed inclusions of earnings from a first- or lower-tier foreign corporation under section 960(a). **Report all amounts in U.S. dollars unless otherwise specified.**

### Part I—Dividends and Deemed Inclusions From Post-1986 Undistributed Earnings

| 1. Name of Foreign Corporation (identify DISCs and former DISCs) | 2. Tax Year End (Yr-Mo) (see instructions) | 3. Country of Incorporation (enter country code from instructions) | 4. Post-1986 Undistributed Earnings (in functional currency - attach schedule) | 5. Opening Balance in Post-1986 Foreign Income Taxes | 6. Foreign Taxes Paid and Deemed Paid for Tax Year Indicated | | 7. Post-1986 Foreign Income Taxes (add columns 5, 6(a), and 6(b)) | 8. Dividends and Deemed Inclusions | | 9. Divide Column 8(a) by Column 4 | 10. Tax Deemed Paid (multiply column 7 by column 9) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | (a) Taxes Paid | (b) Taxes Deemed Paid (from Schedule D, Part I - see instructions) | | (a) Functional Currency | (b) U.S. Dollars | | |
| J-COM Chiba Co., LTD | 12/31/2010 | JA | 2952399217. | 11,932,907. | 18,081,925. | | 30,014,832. | 991,780,540. | 10,909,586. | 0.33592 | 12,082,582. |
| J-COM Saitama Co., LTD | 12/31/2010 | JA | 5587503619. | 14,944,463. | 51,500,423. | | 66,444,886. | 2,713,472,301. | 29,848,195. | 0.48563 | 32,267,630. |
| Tsuchiura Cable Televis | 12/31/2010 | JA | 253265320. | 4,697,957. | 15,350,041. | | 20,047,998. | 746,393,741. | 8,210,331. | 0.29478 | 5,909,749. |
| J-COM Shonan Co., LTD | 12/31/2010 | JA | 1002892779. | 20,100,511. | 64,278,281. | | 84,378,792. | 3,542,692,107. | 38,969,613. | 0.35350 | 29,827,903. |
| | | | | | | | | | | ▲ | 248319708. |

**Total** (Add amounts in column 10. Enter the result here and include on "Totals" line of Schedule B, Part I, column 3.) . . . . . . . . . . . . . . ▲

### Part II—Dividends Paid Out of Pre-1987 Accumulated Profits

| 1. Name of Foreign Corporation (identify DISCs and former DISCs) | 2. Tax Year End (Yr-Mo) (see instructions) | 3. Country of Incorporation (enter country code from instructions) | 4. Accumulated Profits for Tax Year Indicated (in functional currency computed under section 902) (attach schedule) | 5. Foreign Taxes Paid and Deemed Paid on Earnings and Profits (E&P) for Tax Year Indicated (in functional currency) (see instructions) | 6. Dividends Paid | | 7. Divide Column 6(a) by Column 4 | 8. Tax Deemed Paid (see instructions) | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | (a) Functional Currency | (b) U.S. Dollars | | (a) Functional Currency | (b) U.S. Dollars |
| | | | | | | | | | ▲ |

**Total** (Add amounts in column 8b. Enter the result here and include on "Totals" line of Schedule B, Part I, column 3.) . . . . . . . . . . . . . . ▲

### Part III—Deemed Inclusions From Pre-1987 Earnings and Profits

| 1. Name of Foreign Corporation (identify DISCs and former DISCs) | 2. Tax Year End (Yr-Mo) (see instructions) | 3. Country of Incorporation (enter country code from instructions) | 4. E&P for Tax Year Indicated (in functional currency translated from U.S. dollars, computed under section 964) (attach schedule) | 5. Foreign Taxes Paid and Deemed Paid for Tax Year Indicated (see instructions) | 6. Deemed Inclusions | | 7. Divide Column 6(a) by Column 4 | 8. Tax Deemed Paid (multiply column 5 by column 7) | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | (a) Functional Currency | (b) U.S. Dollars | | | |
| | | | | | | | | | ▲ |

**Total** (Add amounts in column 8. Enter the result here and include on "Totals" line of Schedule B, Part I, column 3.) . . . . . . . . . . . . . . ▲

Form **1118** (Rev. 12-2009)

JSA
0C2230 1.000

- App.92 -

Exhibit 6-J
T.C. Docket No. 341-21

STIP-00000190

Form 1118 (Rev. 12-2009)

Page **4**

## Schedule D — Tax Deemed Paid by First- and Second-Tier Foreign Corporations under Section 902(b)

Use Part I to compute the tax deemed paid by a first-tier foreign corporation with respect to dividends from a second-tier foreign corporation. Use Part II to compute the tax deemed paid by a second-tier foreign corporation with respect to dividends from a third-tier foreign corporation. **Report all amounts in U.S. dollars unless otherwise specified.**

### Part I — Tax Deemed Paid by First-Tier Foreign Corporations

#### Section A — Dividends Paid Out of Post-1986 Undistributed Earnings (Include the column 10 results in Schedule C, Part I, column 6(b).)

| 1. Name of Second-Tier Foreign Corporation and Its Related First-Tier Foreign Corporation | 2. Tax Year End (Yr-Mo) (see instructions) | 3. Country of Incorporation (enter country code from instructions) | 4. Post-1986 Undistributed Earnings (in functional currency-attach schedule) | 5. Post-1986 Balance in Post-1986 Foreign Income Taxes | 6. Foreign Taxes Paid and Deemed Paid for Tax Year Indicated (a) Taxes Paid | (b) Taxes Deemed Paid (see instructions) | 7. Post-1986 Foreign Income Taxes (add columns 5, 6(a), and 6(b)) | 8. Dividends Paid (in functional currency) (a) of Second-tier Corporation | (b) of First-tier Corporation | 9. Divide Column 8(a) by Column 4 | 10. Tax Deemed Paid multiply column 7 by column 9) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| CHELLO CENTRAL EUROPE ZRT | 12/31/2010 | HU | 20126630130. | 2,393,478. | 867,339. | | 3,260,817. | 19,096,040. | 179,286. | 0.02390 | 77,923. |
| LIBERTY GLOBAL HOLDING BV | | | | | | | | | | | |
| SiteL SA | 12/31/2010 | SZ | 6,536,897. | 384,363. | 5,262,233. | | 5,646,596. | 4,360,110. | 3,158,642. | 0.66700 | 3,766,280. |
| LIBERTY GLOBAL HOLDING BV | | | | | | | | | | | |

#### Section B — Dividends Paid Out of Pre-1987 Accumulated Profits (Include the column 8(b) results in Schedule C, Part I, column 6(b).)

| 1. Name of Second-Tier Foreign Corporation and Its Related First-Tier Foreign Corporation | 2. Tax Year End (Yr-Mo) (see instructions) | 3. Country of Incorporation (enter country code from instructions) | 4. Accumulated Profits for Tax Year Indicated (in functional currency - attach schedule) | 5. Foreign Taxes Paid for Tax Year Indicated (in functional currency - see instructions) | 6. Dividends Paid (in functional currency) (a) of Second-tier Corporation | (b) of First-tier Corporation | 7. Divide Column 6(a) by Column 4 | 8. Tax Deemed Paid (see instructions) (a) Functional Currency of Second-tier Corporation | (b) U.S. Dollars |
|---|---|---|---|---|---|---|---|---|---|

### Part II — Tax Deemed Paid by Second-Tier Foreign Corporations

#### Section A — Dividends Paid Out of Post-1986 Undistributed Earnings (Include the column 10 results in Section A, column 6(b), of Part I above.)

| 1. Name of Third-Tier Foreign Corporation and Its Related Second-Tier Foreign Corporation | 2. Tax Year End (Yr-Mo) (see instructions) | 3. Country of Incorporation (enter country code from instructions) | 4. Post-1986 Undistributed Earnings (in functional currency/attach schedule) | 5. Opening Balance in Post-1986 Foreign Income Taxes | 6. Foreign Taxes Paid and Deemed Paid for Tax Year Indicated (a) Taxes Paid | (b) Taxes Deemed Paid (see Schedule E, Part I, column 10) | 7. Post-1986 Foreign Income Taxes (add columns 5, 6(a), and 6(b)) | 8. Dividends Paid (in functional currency) (a) of Third-tier Corporation | (b) of Second-tier Corporation | 9. Divide Column 8(a) by Column 4 | 10. Tax Deemed Paid multiply column 7 by column 9) |
|---|---|---|---|---|---|---|---|---|---|---|---|

#### Section B — Dividends Paid Out of Pre-1987 Accumulated Profits (Include the column 8(b) results in Section A, column 6(b), of Part I above.)

| 1. Name of Third-Tier Foreign Corporation and Its Related Second-Tier Foreign Corporation | 2. Tax Year End (Yr-Mo) (see instructions) | 3. Country of Incorporation (enter country code from instructions) | 4. Accumulated Profits for Tax Year Indicated (in functional currency attach schedule) | 5. Foreign Taxes Paid and Deemed Paid for Tax Year Indicated (in functional currency - see instructions) | 6. Dividends Paid (in functional currency) (a) of Third-tier Corporation | (b) of Second-tier Corporation | 7. Divide Column 6(a) by Column 4 | 8. Tax Deemed Paid (see instructions) (a) In Functional Currency of Third-tier Corporation | (b) U.S. Dollars |
|---|---|---|---|---|---|---|---|---|---|

Form **1118** (Rev. 12-2009)

STIP-00000191

JSA
0C22240 1.000

09/14/2011   12:53:52

Exhibit 6-J
T.C. Docket No. 341-21

Form 1118 (Rev. 12-2009)

Page 4

STIP-00000192

## Schedule D — Tax Deemed Paid by First- and Second-Tier Foreign Corporations under Section 902(b)

Use Part I to compute the tax deemed paid by a first-tier foreign corporation with respect to dividends from a second-tier foreign corporation. Use Part II to compute the tax deemed paid by a second-tier foreign corporation with respect to dividends from a third-tier foreign corporation. **Report all amounts in U.S. dollars unless otherwise specified.**

### Part I - Tax Deemed Paid by First-Tier Foreign Corporations

#### Section A - Dividends Paid Out of Post-1986 Undistributed Earnings (Include the column 10 results in Schedule C, Part I, column 6(b).)

| 1. Name of Second-Tier Foreign Corporation and Its Related First-Tier Foreign Corporation | 2. Tax Year End (Yr-Mo) (see instructions) | 3. Country of Incorporation (enter country code from instructions) | 4. Post-1986 Undistributed Earnings (in functional currency/attach schedule) | 5. Post-1986 Foreign Income Taxes | 6. Opening Balance in Post-1986 Foreign Income Taxes | 7. Post-1986 Foreign Taxes Paid and Deemed Paid for Tax Year Indicated | 8. Dividends Paid (in functional currency) | | 9. Divide Column 8(a) by Column 4 | 10. Tax Deemed Paid multiply column 7 by column 9 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | (a) Taxes Paid | (b) Taxes Deemed Paid (see instructions) | columns 5, 6(a), and 6(b)) | (a) of Second-tier Corporation | (b) of First-tier Corporation | (b) U.S. Dollars |
| UPC AUSTRIA GMBH | 12/31/2010 | AU | -6,324,196. | 366,571. | | -2,323. | 364,248. | 9,411,462. | 9,411,462. | NONE. |
| LIBERTY GLOBAL HOLDING BV | | | | | | | | | | |
| UPC CESKA REPUBLICA AS | 12/31/2010 | EZ | -9878693637 | 132,955. | | 132,955. | 12,144,282. | 300000000. | 12,144,282. | NONE. |
| LIBERTY GLOBAL HOLDING BV | | | | | | | | | | |

#### Section B - Dividends Paid Out of Pre-1987 Accumulated Profits (Include the column 8(b) results in Schedule C, Part I, column 6(b).)

| 1. Name of Second-Tier Foreign Corporation and Its Related First-Tier Foreign Corporation | 2. Tax Year End (Yr-Mo) (see instructions) | 3. Country of Incorporation (enter country code from instructions) | 4. Accumulated Profits for Tax Year Indicated (in functional currency - attach schedule) | 5. Foreign Taxes Paid and Deemed Paid for Tax Year Indicated (in functional currency - see instructions) | 6. Dividends Paid (in functional currency) | | 7. Divide Column 6(a) by Column 4 | 8. Tax Deemed Paid (see instructions) | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | (a) of Second-tier Corporation | (b) of First-tier Corporation | | (a) Functional Currency of Second-tier Corporation | (b) U.S. Dollars |
| | | | | | | | | | |

### Part II - Tax Deemed Paid by Second-Tier Foreign Corporations

#### Section A - Dividends Paid Out of Post-1986 Undistributed Earnings (Include the column 10 results in Section A, column 6(b), of Part I above.)

| 1. Name of Third-Tier Foreign Corporation and Its Related Second-Tier Foreign Corporation | 2. Tax Year End (Yr-Mo) (see instructions) | 3. Country of Incorporation (enter country code from instructions) | 4. Post-1986 Undistributed Earnings (in functional currency/attach schedule) | 5. Post-1986 Foreign Income Taxes | 6. Opening Balance in Post-1986 Foreign Income Taxes | 7. Post-1986 Foreign Income Taxes Paid and Deemed Paid (add columns 5, 6(a), and 6(b)) | 8. Dividends Paid (in functional currency) | | 9. Divide Column 8(a) by Column 4 | 10. Tax Deemed Paid multiply column 7 by column 9 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | (a) Taxes Paid | (b) Taxes Deemed Paid (see instructions) for 2 Part I, column 10) | | (a) of Third-tier Corporation | (b) of Second-tier Corporation | (b) U.S. Dollars |
| | | | | | | | | | | |

#### Section B - Dividends Paid Out of Pre-1987 Accumulated Profits (Include the column 8(b) results in Section A, column 6(b), of Part I above.)

| 1. Name of Third-Tier Foreign Corporation and Its Related Second-Tier Foreign Corporation | 2. Tax Year End (Yr-Mo) (see instructions) | 3. Country of Incorporation (enter country code from instructions) | 4. Accumulated Profits for Tax Year Indicated (in functional currency - attach schedule) | 5. Foreign Taxes Paid and Deemed Paid for Tax Year Indicated (in functional currency - see instructions) | 6. Dividends Paid (in functional currency) | | 7. Divide Column 6(a) by Column 4 | 8. Tax Deemed Paid (see instructions) | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | (a) of Third-tier Corporation | (b) of Second-tier Corporation | | (a) In Functional Currency of Third-tier Corporation | (b) U.S. Dollars |
| | | | | | | | | | |

Form **1118** (Rev. 12-2009)

JSA
0C2240 1.000
09/14/2011  12:53:52

Exhibit 6-J
T.C. Docket No. 341-21

Form 1118 (Rev. 12-2009)

Page **4**

## Schedule D — Tax Deemed Paid by First- and Second-Tier Foreign Corporations under Section 902(b)

Use Part I to compute the tax deemed paid by a first-tier foreign corporation with respect to dividends from a second-tier foreign corporation. Use Part II to compute the tax deemed paid by a second-tier foreign corporation with respect to dividends from a third-tier foreign corporation. **Report all amounts in U.S. dollars unless otherwise specified.**

### Part I - Tax Deemed Paid by First-Tier Foreign Corporations

#### Section A - Dividends Paid Out of Post-1986 Undistributed Earnings (Include the column 10 results in Schedule C, Part I, column 6(b).)

| 1. Name of Second-Tier Foreign Corporation and Its Related First-Tier Foreign Corporation | 2. Tax Year End (Yr-Mo) (see instructions) | 3. Country of Incorporation (enter country code from instructions) | 4. Post-1986 Undistributed Earnings (in functional currency-attach schedule) | 5. Post-1986 Foreign Income Taxes | 6. Foreign Taxes Paid and Deemed Paid for Tax Year Indicated (b) Taxes Deemed Paid (see instructions) | 6. (a) Taxes Paid | 7. Post-1986 Foreign Income Taxes (add columns 5, 6(a), and 6(b).) | 8. Dividends Paid (in functional currency) (a) of Second-tier Corporation | 8. (b) of First-tier Corporation | 9. Divide Column 8(a) by Column 4 | 10. Tax Deemed Paid (multiply column 7 by column 9) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| UPC TELEKABEL FERNSEHNETZ REGI | 12/31/2010 | AU | 362,213. | 6,987. | | | 6,987. | 141,662. | 141,662. | 0.39132 | 2,734. |
| LIBERTY GLOBAL HOLDING BV | | | | | | | | | | | |
| UPC TELEKABEL KLAGENFURT GMBH | 12/31/2010 | AU | -677,336. | 5,628. | -2,323. | | 3,305. | 25,817. | 25,817. | | NONE |
| LIBERTY GLOBAL HOLDING BV | | | | | | | | | | | |

#### Section B - Dividends Paid Out of Pre-1987 Accumulated Profits (Include the column 8(b) results in Schedule C, Part I, column 6(b).)

| 1. Name of Second-Tier Foreign Corporation and Its Related First-Tier Foreign Corporation | 2. Tax Year End (Yr-Mo) (see instructions) | 3. Country of Incorporation (enter country code from instructions) | 4. Accumulated Profits for Tax Year Indicated (in functional currency - attach schedule) | 5. Foreign Taxes Paid for Tax Year Indicated (in functional currency - see instructions) | 6. Dividends Paid (in functional currency) (a) of Second-tier Corporation | 6. (b) of First-tier Corporation | 7. Divide Column 6(a) by Column 4 | 8. Tax Deemed Paid (see instructions) (a) in Functional Currency of Second-tier Corporation | 8. (b) U.S. Dollars |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

### Part II - Tax Deemed Paid by Second-Tier Foreign Corporations

#### Section A - Dividends Paid Out of Post-1986 Undistributed Earnings (Include the column 10 results in Section A, column 6(b), of Part I above.)

| 1. Name of Third-Tier Foreign Corporation and Its Related Second-Tier Foreign Corporation | 2. Tax Year End (Yr-Mo) (see instructions) | 3. Country of Incorporation (enter country code from instructions) | 4. Post-1986 Undistributed Earnings (in functional currency-attach schedule) | 5. Opening Balance in Post-1986 Foreign Income Taxes | 6. Foreign Taxes Paid and Deemed Paid for Tax Year Indicated (a) Taxes Paid | 6. (b) Taxes Deemed Paid (enter Part I, column 10) | 7. Post-1986 Foreign Income Taxes (add columns 5, 6(a), and 6(b).) | 8. Dividends Paid (in functional currency) (a) of Third-tier Corporation | 8. (b) of Second-tier Corporation | 9. Divide Column 8(a) by Column 4 | 10. Tax Deemed Paid (multiply column 7 by column 9) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | |

#### Section B - Dividends Paid Out of Pre-1987 Accumulated Profits (Include the column 8(b) results in Section A, column 6(b), of Part I above.)

| 1. Name of Third-Tier Foreign Corporation and Its Related Second-Tier Foreign Corporation | 2. Tax Year End (Yr-Mo) (see instructions) | 3. Country of Incorporation (enter country code from instructions) | 4. Accumulated Profits for Tax Year Indicated (in functional currency - attach schedule) | 5. Foreign Taxes Paid and Deemed Paid for Tax Year Indicated (in functional currency - see instructions) | 6. Dividends Paid (in functional currency) (a) of Third-tier Corporation | 6. (b) of Second-tier Corporation | 7. Divide Column 6(a) by Column 4 | 8. Tax Deemed Paid (see instructions) (a) In Functional Currency of Third-tier Corporation | 8. (b) U.S. Dollars |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

JSA
0C22240 1.000

09/14/2011  12:53:52

Exhibit 6-J
T.C. Docket No. 341-21

Form **1118** (Rev. 12-2009)

STIP-00000193

- App.95 -

Form 1118 (Rev. 12-2009)

Page **4**

## Schedule D — Tax Deemed Paid by First- and Second-Tier Foreign Corporations under Section 902(b)

Use Part I to compute the tax deemed paid by a first-tier foreign corporation with respect to dividends from a second-tier foreign corporation. Use Part II to compute the tax deemed paid by a second-tier foreign corporation with respect to dividends from a third-tier foreign corporation. **Report all amounts in U.S. dollars unless otherwise specified.**

### Part I — Tax Deemed Paid by First-Tier Foreign Corporations

#### Section A — Dividends Paid Out of Post-1986 Undistributed Earnings (Include the column 10 results in Schedule C, Part I, column 6(b).)

| 1. Name of Second-Tier Foreign Corporation and Its Related First-Tier Foreign Corporation | 2. Tax Year End (Yr-Mo) (see instructions) | 3. Country of Incorporation (enter country code from instructions) | 4. Post-1986 Undistributed Earnings (in functional currency-attach schedule) | 5. Opening Balance in Post-1986 Foreign Income Taxes | 6. Foreign Taxes Paid and Deemed Paid for Tax Year Indicated (a) Taxes Paid | (b) Taxes Deemed Paid (see instructions) | 7. Post-1986 Foreign Income Taxes (add columns 5, 6(a), and 6(b)) | 8. Dividends Paid (in functional currency) (a) of Second-tier Corporation | (b) of First-tier Corporation | 9. Divide Column 8(a) by Column 4 | 10. Tax Deemed Paid multiply column 7 by column 9 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Video 2000 SA | 12/31/2010 | SZ | 13,382,351. | 1,179,832. | 1,824,138. | | 3,003,970. | 2,928,254. | 2,121,347. | 0.21881 | 657,287. |
| LIBERTY GLOBAL HOLDING BV | | | | | | | | | | | |
| VTR Global Com, S.A. | 12/31/2010 | CI | 1031020l01607 | 2,077,590. | 18,035. | | 2,095,625, | 1441765338Z | 21,335,636. | | NONE |
| LIBERTY GLOBAL HOLDING BV | | | | | | | | | | | |

#### Section B — Dividends Paid Out of Pre-1987 Accumulated Profits (Include the column 8(b) results in Schedule C, Part I, column 6(b).)

| 1. Name of Second-Tier Foreign Corporation and Its Related First-Tier Foreign Corporation | 2. Tax Year End (Yr-Mo) (see instructions) | 3. Country of Incorporation (enter country code from instructions) | 4. Accumulated Profits for Tax Year Indicated (in functional currency - attach schedule) | 5. Opening Balance in Post-1986 Foreign Income Taxes | 6. Foreign Taxes Paid and Deemed Paid for Tax Year Indicated (in functional currency - see instructions) (a) of Second-tier Corporation | (b) of First-tier Corporation | 7. Divide Column 6(a) by Column 4 | 8. Tax Deemed Paid (see instructions) (a) Functional Currency of Second-tier Corporation | (b) U.S. Dollars |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

### Part II — Tax Deemed Paid by Second-Tier Foreign Corporations

#### Section A — Dividends Paid Out of Post-1986 Undistributed Earnings (Include the column 10 results in Section A, column 6(b), of Part I above.)

| 1. Name of Third-Tier Foreign Corporation and Its Related Second-Tier Foreign Corporation | 2. Tax Year End (Yr-Mo) (see instructions) | 3. Country of Incorporation (enter country code from instructions) | 4. Post-1986 Undistributed Earnings (in functional currency-attach schedule) | 5. Opening Balance in Post-1986 Foreign Income Taxes | 6. Foreign Taxes Paid and Deemed Paid for Tax Year Indicated (a) Taxes Paid | (b) Taxes Deemed Paid (see instructions) | 7. Post-1986 Foreign Income Taxes (add columns 5, 6(a), and 6(b)) | 8. Dividends Paid (in functional currency) (a) of Third-tier Corporation | (b) of Second-tier Corporation | 9. Divide Column 8(a) by Column 4 | 10. Tax Deemed Paid multiply column 7 by column 9 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | |

#### Section B — Dividends Paid Out of Pre-1987 Accumulated Profits (Include the column 8(b) results in Section A, column 6(b), of Part I above.)

| 1. Name of Third-Tier Foreign Corporation and Its Related Second-Tier Foreign Corporation | 2. Tax Year End (Yr-Mo) (see instructions) | 3. Country of Incorporation (enter country code from instructions) | 4. Accumulated Profits for Tax Year Indicated (in functional currency - attach schedule) | 5. Foreign Taxes Paid and Deemed Paid for Tax Year Indicated (in functional currency - see instructions) | 6. Dividends Paid (in functional currency) (a) of Third-tier Corporation | (b) of Second-tier Corporation | 7. Divide Column 6(a) by Column 4 | 8. Tax Deemed Paid (see instructions) (a) In Functional Currency of Third-tier Corporation | (b) U.S. Dollars |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

Form **1118** (Rev. 12-2009)

JSA
0C2240 1.000

09/14/2011    12:53:52

STIP-00000194

Exhibit 6-J
T.C. Docket No. 341-21

Form 1118 (Rev. 12-2010)

Page **6**

## Schedule F — Gross Income and Definitely Allocable Deductions for Foreign Branches

| 1. Foreign Country or U.S. Possession (Enter two-letter code from Schedule A, column 1. Use a separate line for each.) | 2. Gross Income | 3. Definitely Allocable Deductions |
|---|---|---|
| **A** AR | | |
| **B** JA | | |
| **C** NL | | |
| **D** OC | -6,473,127. | |
| **E** RQ | 111,335,757. | 105,578,703. |
| | | |
| **Totals (add lines A through F)\*** ▶ | 104,862,630. | 105,578,703. |

**\* Note:** The Schedule F totals are not carried over to any other Form 1118 Schedule. (These totals were already included in Schedule A.) However, the IRS requires the corporation to complete Schedule F under the authority of section 905(b).

## Schedule G — Reductions of Taxes Paid, Accrued, or Deemed Paid

| | |
|---|---|
| **A** | Reduction of Taxes Under Section 901(e) - Attach separate schedule |
| **B** | Reduction of Foreign Oil and Gas Taxes - Enter amount from Schedule I, Part II, line 6 |
| **C** | Reduction of Taxes Due to International Boycott Provisions - Enter appropriate portion of Schedule C (Form 5713), line 2b. **Important:** Enter only "specifically attributable taxes" here. |
| **D** | Reduction of Taxes for Section 6038(c) Penalty - Attach separate schedule |
| **E** | Other Reductions of Taxes - Attach schedule(s) |

**Total (add lines A through E).** Enter here and on Schedule B, Part II, line 3 . . . . . . . . . . . . . . . . . . . . . . ▶

Form **1118** (Rev. 12-2010)

09/14/2011  12:53:52

Exhibit 6-J
T.C. Docket No. 341-21

JSA
0C2250 1.000

STIP-00000195

- App.97 -

Form 1118 (Rev. 12-2009)

Page **8**

**Schedule H** | **Apportionment of Deductions Not Definitely Allocable** *(continued)*

**Part II - Interest Deductions, All Other Deductions, and Total Deductions**

**(a)** Average Value of Assets - Check method used:
☐ Fair market value   ☐ Tax book value
☐ Alternative tax book value

| | (i) Nonfinancial Corporations | (ii) Financial Corporations | **(b)** Interest Deductions (iii) Nonfinancial Corporations | (iv) Financial Corporations | **(c)** All Other Deductions Not Definitely Allocable | **(d)** Totals (add the corresponding amounts from column (c), Part I; columns (b)(iii) and (b)(iv), Part II; and column (c), Part I). Enter each amount from lines 3a through 3d below in column 10 of the corresponding Schedule A. |
|---|---|---|---|---|---|---|
| **1 a** Totals (see instructions) | 9709820306. | | 93,617,321. | | 259878400. | |
| **b** Amounts specifically allocable under Temp. Regs. 1.861-10T(e) | | | | | | |
| **c** Other specific allocations under Temp. Regs. 1.861-10T | | | | | | |
| **d** Assets excluded from apportionment formula | | | | | | |
| **2** Total to be apportioned (subtract the sum of lines 1b, 1c, and 1d from line 1a) | 9709820306. | | 93,617,321. | | | |
| **3** Apportionment among statutory groupings: | | | | | | |
| **a** General category income | 7755345193. | | 74,773,229. | | 207567865. | 282341094. |
| **b** Passive category income | 1425114219. | | 13,740,253. | | 38,142,455. | 51,882,708. |
| **c** Section 901(j) income* | | | | | | |
| **d** Income re-sourced by treaty* | | | | | | |
| **4** Total foreign (add lines 3a through 3d) | 9180459412. | | 88,513,482. | | 245710320. | 334223802. |

*Important: *See Computer-Generated Schedule H in instructions.*

Form **1118** (Rev. 12-2009)

09/14/2011 12:53:52

Exhibit 6-J
T.C. Docket No. 341-21

STIP-00000196

JSA
0C2260 1.000

- App.98 -

**COMMISSIONER'S SIMULTANEOUS OPENING BRIEF,
T.C. DOC. 34 (JUNE 30, 2023)**

**Received**
06/30/23 06:53 pm

**Filed**
06/30/23

Liberty Global, Inc.,

      Petitioner

      v.

Commissioner of Internal Revenue

      Respondent

Electronically Filed

Docket No. 341-21

Document No. 34

# Simultaneous Opening Brief



**Received**

06/30/23 06:53 pm

**Filed**

06/30/23

Liberty Global, Inc.,

      Petitioner

      v.

Commissioner of Internal Revenue

      Respondent

Electronically Filed

Docket No. 341-21

Document No. 34

# Simultaneous Opening Brief

# UNITED STATES TAX COURT

| | | |
|---|---|---|
| LIBERTY GLOBAL, INC., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Docket No. 341-21 |
| v. | ) | |
| | ) | Judge Toro |
| COMMISSIONER OF INTERNAL REVENUE, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |

_____

## OPENING BRIEF FOR RESPONDENT
_____


WILLIAM M. PAUL
Acting Chief Counsel
Internal Revenue Service


OF COUNSEL:
KATHRYN F. PATTERSON
Division Counsel
(Strategic Litigation)
JOHN M. ALTMAN
Deputy Division Counsel
(Strategic Litigation)
JOHN A. GUARNIERI
Strategic Litigation Counsel
(Strategic Litigation)

# CONTENTS

Page

PRELIMINARY STATEMENT ......................................................................1

QUESTIONS PRESENTED..........................................................................5

RESPONDENT'S REQUEST FOR FINDINGS OF FACT ...............................6

ULTIMATE FINDINGS OF FACT ...............................................................10

POINTS RELIED UPON ...........................................................................11

ARGUMENT ...........................................................................................13

I.   Background. .....................................................................................13

     A.   Sourcing Rules...........................................................................13

     B.   Purpose of the Foreign Tax Credit. ..........................................13

     C.   Section 904 Limitation, Generally. ...........................................14

II.  Section 904(f) Modifies § 904(a) to Recapture Foreign Losses Used
     to Offset U.S. Income in Prior Years...............................................18

     A.   Section 904(f)(1) Generally.......................................................19

     B.   Section 904(f)(3) OFL Recapture Upon Disposition. ..............20

          1.   Application of § 904(f)(1) and the Disposition Rules
               Under § 904(f)(3). ............................................................26

III. The Plain Language of § 904(f)(3)(A)(i) Provides that Only the
     Lesser of the Gain or the OFL Account Balance is Deemed to be
     Foreign Source Taxable Income for Purposes of § 904(f)(1)..........28

     A.   Section 904(f)(3) must be interpreted giving effect to its text
          and purpose.............................................................................28

     B.   Canons of Statutory Construction and Interpretation..............29

- i -

## CONTENTS

Page

C. Section 904(f)(3) is Not Ambiguous. ....................................................31

D. The Plain Language of § 904(f)(3) Forecloses LGI's
Interpretation of §1.904(f)-2(d). ..........................................................32

E. LGI's Interpretation Renders "*The Lesser Of*" language of the
statute Superfluous. .............................................................................34

F. Treas. Reg. § 1.904(f)-2(d)(1) Should be Read in the Context
of § 904(f)(3). ......................................................................................36

G. Respondent is Not Retroactively Applying the 2012
Amendments to § 1.904(f)-2(d)(1).......................................................39

IV. Section 904(f)(3) Does Not Exclude Gains from Taxable Income. ..............39

A. Section 904(f)(3) Does Not Override § 1001 ......................................40

B. LGI's Flawed Reading of § 904(f)(3)(A)(i) Reaches Absurd
Results. .................................................................................................43

V. LGI Can Elect to Deduct the Foreign Taxes Paid Under § 164 and
Reverse its § 78 Gross-Up. ...........................................................................44

CONCLUSION .................................................................................................45

- ii -

# CITATIONS

Page

**Cases**

*15 W 17th St. LLC v. Commissioner*, 147 T.C. 557 (2016) ................................. 35

*APTARGROUP Inc. v. Commissioner*, 158 T.C. No. 4 (2022) .......................... 32

*Associated Tel. & Tel. Co. v. United States*, 306 F.2d 824 (2d Cir. 1962) .......... 14

*Austin v. Commissioner*, 141 T.C. 551 (2013) ...................................................... 28

*Black & Decker Corp. v. Commissioner*, 986 F.2d 60 (4th Cir. 1993) ............... 32

*Burnet v. Chicago Portrait Co.*, 285 U.S. 1 (1932) .............................................. 13

*Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426 (1955) .............................. 41

*Commissioner v. Schleier*, 515 U.S. 323 (1995) .................................... 32, 38, 41

*Davis v. Michigan Dept. of Treasury*, 489 U.S. 803 (1989) ................................ 28

*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000) ................... 37

*Guardian Industries Corp., v. Commissioner*, 143 T.C. No. 1 (2014) ......... 29, 32

*Hershey Foods Corp. v. Commissioner*, 76 T.C. 312 (1981) ........... 15, 16, 20, 24

*K-Mart Corp. v. Cartier, Inc.*, 486 U.S. 281 (1988) ........................................... 28

*Mayo Found. for Medical Ed. v. United States*, 562 U.S. 44 (2011) ................. 41

*Patients Mutual Assistance Collective Corporation v. Commissioner,*
   151 T.C. 176 (2018) ......................................................................... 28, 29, 33

*Phillips Petroleum Co. v. Commissioner*, 97 T.C. 30 (1991) ....................... 32, 33

*Steen v. Commissioner*, 61 T.C. 298 (1973) ....................................................... 33

*Sunderland v. Commissioner*, 155 T.C. 95 (2020) ............................................. 34

# CITATIONS

Page

*Theo. H. Davies and Co. v. Commissioner*, 75 T.C. 443 (1980), *aff'd per curiam*, 678 F.2d. 1367 (9th Cir. 1982) ............................................................14

*Tice v. Commissioner*, 160 T.C. No. 8 (2023) ......................................................34

*United States v. Goodyear Tire & Rubber Co.*, 493 U.S. 132 (1989) ................13

*Yari v. Commissioner*, 143 T.C. 157 (2014) .........................................................37


**Internal Revenue Code**

*I.R.C.* §  61 ...........................................................................................................2

*I.R.C.* §  78 ......................................................................................................5, 44

*I.R.C.* §  104(a) ..................................................................................................42

*I.R.C.* §  108(a)(1) ..............................................................................................42

*I.R.C.* §  164 ................................................................................................5, 44

*I.R.C.* §  332 ......................................................................................................18

*I.R.C.* §  351 ......................................................................................................43

*I.R.C.* §  351(a) ..................................................................................................42

*I.R.C.* §  361 ......................................................................................................43

*I.R.C.* §  861 ......................................................................................................24

*I.R.C.* §  862 ......................................................................................................21

*I.R.C.* §  865 ...................................................................................... 2, 13, 24, 25

*I.R.C.* §  865(a) .................................................................................. 1, 11, 21, 27

*I.R.C.* §  901 .............................................................................................. passim

# CITATIONS

Page

*I.R.C.* § 901(a) ........................................................................ 37, 41

*I.R.C.* § 901(b)(1) ...........................................................................13

*I.R.C.* § 904 .................................................................... passim

*I.R.C.* § 904(a) ..........................................................................2, 14

*I.R.C.* § 904(c) .............................................................................14

*I.R.C.* § 904(f) ................................................................ 2, 25, 28, 36

*I.R.C.* § 904(f)(1) ...................................................................... passim

*I.R.C.* § 904(f)(1)(A) .......................................................................37

*I.R.C.* § 904(f)(1)(B) .............................................................. 23, 26, 37

*I.R.C.* § 904(f)(2) ...................................................................... 10, 18

*I.R.C.* § 904(f)(3) ....................................................................... passim

*I.R.C.* § 904(f)(3)(A) ................................................................... passim

*I.R.C.* § 904(f)(3)(A)(i) ............................................................... passim

*I.R.C.* § 904(f)(3)(A)(ii) ........................................................ 23, 26, 37

*I.R.C.* § 904(f)(3)(B) .......................................................................21

*I.R.C.* § 904(f)(3)(B)(i) .............................................................. 22, 42

*I.R.C.* § 904(f)(3)(B)(ii) ...................................................................22

*I.R.C.* § 904(f)(3)(D) ...................................................................8, 26

*I.R.C.* § 904(f)(3)(D)(i) ....................................................................22

*I.R.C.* § 904(f)(3)(D)(ii) ...................................................................22

# CITATIONS

Page

*I.R.C.* § 904(f)(3)(D)(v) .......................................................22

*I.R.C.* § 904(f)(3)(D)(vi) ......................................................22

*I.R.C.* § 909 ......................................................................18

*I.R.C.* § 957 ................................................................. 10, 22

*I.R.C.* § 958 (b)...................................................................22

*I.R.C.* § 958(a) .............................................................. 10, 22

*I.R.C.* § 1001 .................................................................2, 40

*I.R.C.* § 1248 .................................................................8, 11

## Treasury Regulations

*Treas. Reg.* § 1.904(f)-1(b) ...................................................18

*Treas. Reg.* § 1.904(f)-1(d)(1)……………………………….……………… 10, 18

*Treas. Reg.* § 1.904(f)-1(e) ...................................................18

*Treas. Reg.* § 1.904(f)-2……………………………………………………… 4

*Treas. Reg.* § 1.904(f)-2(a) ............................................... 19, 38

*Treas. Reg.* § 1.904(f)-2(d) ............................................ 33, 34, 38

*Treas. Reg.* § 1.904(f)-2(d)(1).......................................... passim

*Treas. Reg.* § 1.904(f)-2(d)(1)(i).............................................37

*Treas. Reg.* § 1.904(f)-2(d)(1)(ii)............................................37

*Treas. Reg.* § 1.904-4(a).......................................................14

## CITATIONS

Page

**Legislative and Regulatory History**

H.R. 4520, 108 Cong. (2d Sess. 2004), 150 Cong. Rec. S8281-02, § 455..........17

H.R. Rep. No. 108-755 (Conf. Rep.) (2004) ......................................................18

H.R. Rep. No. 94-658 (1976)....................................................................... 16, 17

S. Rep. No. 108-192 (2003) ...................................................................................15

S. Rep. No. 94-938 (1976) ........................................................ 15, 16, 17

**Other Authorities**

1 James Kent, Commentaries on American Law (1826).....................................29

Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* (2012) ...................................................................... 28, 29

# UNITED STATES TAX COURT

| | |
|---|---|
| LIBERTY GLOBAL, INC., | ) |
| | ) |
| Petitioner, | ) |
| | ) Docket No. 341-21 |
| v. | ) |
| | ) Judge Toro |
| COMMISSIONER OF INTERNAL REVENUE, | ) |
| | ) |
| | ) |
| Respondent. | ) |

---

## OPENING BRIEF FOR RESPONDENT

---

## PRELIMINARY STATEMENT

This case was submitted fully stipulated under Rule 122. The record consists of a stipulation of facts and exhibits. Opening briefs are to be filed on or before June 30, 2023. Reply briefs are due to be filed on or before August 11, 2023.

The dispute concerns the interpretation of the § 904[1] limitation on the allowable foreign tax credit – specifically, § 904(f)(3). Liberty Global, Inc. (petitioner, "LGI"), a U.S. corporation, sold its stock in J:COM, a controlled foreign corporation ("CFC"). Section 865(a) is clear that, except as otherwise

---

[1] Unless otherwise indicated, all section references in this Opening Brief for Respondent are references to the Internal Revenue Code (the "Code") and the regulations thereunder.

provided by *that section*, such a property sale by a U.S. resident is U.S. source income. Section 904(f)(3) provides a limited exception to this sourcing rule for foreign tax credit purposes.

In general, § 904(a) limits the foreign tax credit allowable in a year to the same proportion of tax as foreign source taxable income bears to total taxable income. But when a taxpayer has a foreign loss offsetting U.S. source income in prior years (an overall foreign loss, or "OFL"), § 904(f) modifies the computation of the allowable foreign tax credit in subsequent years to recapture those foreign losses by treating foreign source taxable income earned in those years as U.S source taxable income. Section 904(f)(3) provides specific rules for the recapture of foreign losses when property used in a trade or business outside the United States is sold. The statute is unambiguous and corresponding regulations merely explain the manner in which § 904(f) should be applied (e.g., ordering rules for allocating separate limitation losses among different categories of income, recapture of overall foreign losses, recharacterization of separate limitation income, and allocation of U.S. source losses).

Nevertheless, LGI disregards the plain language of these statutes and misstates the weight of authorities to posit that either § 1.904(f)-2(d)(1) or § 904(f)(3) is a sourcing rule that supplants § 865 in its entirety and modifies the § 904 computation beyond – well beyond – the amount of the necessary recapture of its OFL. In the alternative, LGI argues that § 904(f)(3) supplants § 61 and § 1001

to limit gain recognition when computing taxable income, in this case to LGI's OFL account balance. LGI's arguments are based on an illusory choice that either: (1) the regulation is interpretative based on an ambiguity contained in § 904(f)(3) and respondent is bound to LGI's interpretation, or (2) § 904(f)(3) is unambiguous and creates an income exclusion by capping income to the lesser of the gain or the balance of an OFL account. LGI's competing arguments create contradictory and inconsistent results. However, there is a third choice that is logical and legally justifiable: respondent's position that the statute (1) is unambiguous, (2) has an obvious meaning when considering every word of the statute within the context of the entire Internal Revenue Code, and (3) that the proper reading of the regulation is within the context of the unambiguous statute.

In this Brief, respondent will explain why § 904 limits the benefit of the foreign tax credit to no more than what might relieve taxpayers of double taxation, while preserving their obligation to bear the full weight of tax on U.S. source income. Respondent will explain how § 904(f)(3) ensures that taxpayers who used foreign losses to offset U.S. source income in earlier taxable years, recapture those losses in the subsequent years in which the taxpayer derives foreign source taxable

income. And respondent will explain why the Court should reject LGI's erroneous interpretations of § 904(f)(3) and § 1.904(f)-2(d)(1).[2]

---

[2] Unless otherwise noted, all references to the regulations in § 1.904(f)-2 are references to the regulations which were in effect in the taxable year ending December 31, 2010.

## QUESTIONS PRESENTED

1.      Whether gain, in excess of the OFL account, recognized by LGI on the sale of its 37.8% interest in Jupiter Telecommunications Co. Ltd. ("J:COM") – a foreign corporation – should be treated as foreign source taxable income for purposes of calculating LGI's allowable foreign tax credits under §§ 901 and 904.

2.      Alternatively, whether the taxable gain recognized by LGI on the J:COM sale is limited by § 904(f)(3) to the overall foreign loss account balance of $474,372,166.

3.      Alternatively, if the Court determines that LGI's foreign tax credits under §§ 901 and 904 are limited, can LGI elect to not use § 901 to credit foreign taxes for its 2010 tax year and instead deduct foreign taxes paid under § 164, and reverse the income included on its original 2010 tax return under § 78.

## RESPONDENT'S REQUEST FOR FINDINGS OF FACT

Respondent respectfully requests the Court to find the following facts:

**Parties and Procedural Background**

1.    Petitioner is Liberty Global, Inc., F.K.A. Lynx US Mergerco 1 Corp., as successor to Liberty Global, Inc. and Liberty Global, Inc. and Subsidiaries. Stip. ¶ 1.

2.    During 2010 and 2014, LGI, a Delaware Corporation, was the ultimate parent and direct or indirect owner of an affiliated group of U.S. and foreign corporations (the "LGI Global Group"). Stip. ¶ 2.

3.    LGI timely filed its consolidated income tax returns for the tax year 2010 (the "2010 Tax Year") and tax year 2014 (the "2014 Tax Year"). Stip. ¶ 3; Ex. 6-J and Ex. 7-J.

4.    During the 2010 Tax Year, LGI, together with its parent Liberty Global plc and other affiliates, operated converged video, broadband, and communications businesses. Stip. ¶ 4.

5.    On October 30, 2020, respondent timely issued a Statutory Notice of Deficiency to LGI for the 2010 Tax Year, in which respondent had determined that LGI is liable for a deficiency in federal income tax in the amount of $241,791,309. Stip. ¶¶ 6-7; Ex. 1-J.

6.    On October 30, 2020, respondent timely issued a Statutory Notice of Deficiency to LGI for the 2014 Tax Year, in which respondent determined that

LGI is liable for a deficiency in federal income tax in the amount of $2,014,291.

Stip. ¶¶ 7-8; Ex. 2-J.

7.    A predecessor of LGI formed J:COM with Sumitomo Corporation

("Sumitomo"), an unrelated foreign corporation. Stip. ¶ 11.

8.    J:COM was organized in Japan in January 1995. Stip. ¶ 12.

9.    J:COM provided broadband services in Japan through its subsidiaries,

including during the 2010 Tax Year. Stip. ¶ 13.

10.    From January 1995 until December 2004, J:COM was owned by

various entities (including certain entities of LGI). Stip. ¶ 14.

11.    In December 2004, various LGI entities and Sumitomo contributed

their respective ownership interests in J:COM to LGI/Sumisho Super Media LP

("Super Media"), a partnership for U.S. tax purposes. Stip. ¶ 15.

12.    In March 2005, J:COM completed its initial public offering. Stip. ¶

16.

13.    During the 2010 Tax Year, LGI, because of its majority ownership of

Super Media LP, controlled 58.13% of J:COM and through its other indirect

holdings, controlled more than 50% of the vote and value of J:COM. Stip. ¶ 31.

14.    Immediately prior to the J:COM Sale, through its majority share of

Super Media and through other related entities, LGI owned more than 50 percent

(by vote or value) of the stock of J:COM. J:COM was a CFC, as defined in § 957,

from the first day of the 2010 Tax Year until February 18, 2010. Stip. ¶¶ 31, 37,

and 38.

**The Transaction: LGI's Sale of Its Ownership In J:COM**

15.     On January 25, 2010, LGI entered into the Sale and Purchase Agreement between LGI International and KDDI. Stip. ¶¶ 33-34; Ex. 4-J.

16.     On February 12, 2010, LGI amended the January 25, 2010 Sale and Purchase Agreement between LGI International and KDDI. Stip. ¶ 35; Ex. 5-J.

17.     On February 18, 2010, LGI disposed of its interests in J:COM in a series of transactions treated for U.S. federal income tax purposes as a sale of J:COM to KDDI (the "J:COM Sale"). Stip. ¶ 37.

18.     Following the J:COM Sale, LGI did not directly or indirectly own stock in J:COM. Stip. ¶ 38.

19.     The J:COM Sale is a disposition of stock in a CFC under § 904(f)(3)(D), thus § 904(f)(3)(A) is applicable to the J:COM Sale. Stip. ¶ 38.

**LGI's Income Tax Returns**

20.     In the 2010 Tax Year, LGI had a beginning OFL balance of $474,372,166 in the general limitation category. Stip. ¶ 40.

21.     LGI recognized gain of $3,256,557,143 from the J:COM Sale on its 2010 U.S. consolidated income tax return. Stip. ¶ 41.

22.     Of the $3,256,557,143 of gain LGI included in income on its 2010 U.S. consolidated income tax return, $438,135,179 was characterized as a dividend pursuant to § 1248, and the remaining $2,818,421,964 as gain from the sale of

J:COM stock. Stip. ¶ 42.

 23. LGI claimed a $245,651,602 indirect foreign tax credit on its 2010

U.S. consolidated income tax return. Stip. ¶ 43.

 24. LGI included a Schedule UTP with its 2010 consolidated U.S. income

tax return disclosing the following:

> [LGI] entered into a transaction to sell its entire interest in its Japanese subsidiary, [J:COM]. During the year, [LGI] recognized a gain on the sale and due to recharacterization of the gain also recognized deemed section 902 credits as part of the overall transaction. The issues are the application of the rules under section 904 to the transaction and whether the amount of the foreign tax credit taken as a result of the transaction is appropriate.

Stip. ¶ 44.

## ULTIMATE FINDINGS OF FACT

Respondent respectfully requests that the Court make the following ultimate findings of fact:

1.  Until LGI consummated its sale of J:COM on February 18, 2010, the J:COM stock was property of LGI used predominantly outside the United States.

2.  Immediately before LGI's disposition of J:COM in 2010, the J:COM stock was considered to be owned by LGI within the meaning of § 958(a).

3.  J:COM was a CFC, as defined in § 957, from the first day of the 2010 Tax Year until February 18, 2010. Stip. ¶¶ 31, 37, and 38.

4.  The seven pre-planned steps LGI engaged in prior to the February 18, 2010, closing date on the sale of its interests in J:COM are a series of transactions each of which facilitated LGI's ultimate disposition J:COM. Stip. ¶ 37.

5.  LGI's January 2010 disposition of J:COM was a disposition of stock in a CFC. Stip. ¶ 38.

6.  On January 25, 2010, LGI had a balance of $474,372,166 in its OFL account (as defined by § 904(f)(2) and § 1.904(f)-1(d)(1)). Answer ¶ 5(o).

- 10 -

## POINTS RELIED UPON

1.   The gain recognized on LGI's sale of its entire interest in J:COM, after application of § 1248, is sourced in the United States pursuant to § 865(a).

2.   LGI previously elected to deduct foreign losses against its U.S. taxable income and had an OFL balance at the time of the J:COM Sale in 2010.

3.   Section 904(f)(3)(A)(i) applies to treat a portion of LGI's gain on the sale of its interest in J:COM, equal to its OFL account, as sourced outside the United States for purposes of calculating the limit on the allowable foreign tax credit under § 904.

4.   The amount treated as sourced outside the United States, pursuant to § 904(f)(3)(A)(i), is then treated as sourced in the United States for purposes of recapturing amounts in LGI's OFL account pursuant to § 904(f)(1).

5.   The computation of LGI's 2010 taxable income is not altered by the application of §§ 901 and 904, so when the Court determines that LGI's foreign tax credits under § 901 are limited by the application of § 904, LGI's computation of gain under § 1001, and taxable income under § 61, will remain unaffected by the balance of the OFL account.

- 11 -

6.   In lieu of a foreign tax credit under § 901, LGI can, in the alternative, deduct foreign taxes paid and reverse the § 78 gross-up for deemed paid foreign tax credit that LGI included in income on its original 2010 tax return.

# ARGUMENT

## I.    Background.

### A.    Sourcing Rules

Section 865 sets forth general rules for determining the source of income from the sale of stock and other personal property. Petition ¶ 5(n). The parties agree – at least before consideration of how § 904(f)(3) applies – that LGI's gain on the sale of J:COM is U.S. source income under § 865. Petition ¶ 5(n).

### B.    Purpose of the Foreign Tax Credit.

Chapter 1 of the Code reflects laws governing, *inter alia*, the determination of income tax liability, the computation of taxable income, gain or loss on the disposition of property, tax based on income from sources within or without the United States, and credits allowable against the income tax. One credit allowable against the tax, the foreign tax credit, is allowable for "the amount of any income, war profits, and excess profits taxes paid or accrued during the taxable year to any foreign country or to any possession of the United States". *I.R.C.* § 901(b)(1).

The foreign tax credit is a statutory mechanism aimed at eliminating double taxation of U.S. taxpayers on their foreign source income. *See, United States v. Goodyear Tire & Rubber Co.*, 493 U.S. 132, 139-40 (1989); *Burnet v. Chicago Portrait Co.*, 285 U.S. 1, 7 (1932) (the primary design is "to mitigate the evil of double taxation"). The foreign tax credit is not intended to "relieve taxpayers from

- 13 -

bearing the full United States tax burden attributable to income arising from sources within [the United States]." *Associated Tel. & Tel. Co. v. United States*, 306 F.2d 824, 832 (2d Cir. 1962); *see also, Theo. H. Davies & Co. v. Commissioner*, 75 T.C. 443, 446 n. 9, 450 (1980), *aff'd per curiam*, 678 F.2d 1367 (9th Cir. 1982) (the foreign tax credit should not relieve a taxpayer of the U.S. tax that would be otherwise payable on U.S. source income).

### C.    Section 904 Limitation, Generally.

Section 904(a) limits the allowable § 901 foreign tax credits.[3] The proportion described in § 904(a) can be expressed as:

$$\text{Maximum allowable foreign tax credit} = \text{U.S. Tax Liability} \times \frac{\text{Foreign source taxable income}^4}{\text{Worldwide taxable income}}$$

This expression contains a fraction (the "Section 904 Fraction"), in which foreign source taxable income is the numerator and worldwide taxable income is

---

[3] The amount of foreign taxes a domestic corporation pays or accrues during the taxable year that exceeds the limitation in section 904(a), can be carried back one year and forward ten years. *I.R.C.* § 904(c).

[4] A separate limitation is calculated for each separate category of income (e.g., capital gains) using the foreign source taxable income in the category as the numerator of this fraction; LGI did not allege any dispute regarding any separate limitations. *Treas. Reg.* § 1.904-4(a).

- 14 -

the denominator. This fraction is applied to the U.S. tax liability to determine the maximum allowable foreign tax credits in a tax year and, thus, the larger the amount of foreign source taxable income relative to worldwide taxable income, the larger the amount of the allowable foreign tax credit.

If there is no foreign source taxable income, there is no allowable foreign tax credit. That result makes sense when considering there is no risk of double taxation when there is no foreign source taxable income. When foreign losses exceed foreign income, no foreign tax credits are allowable, and excess foreign losses serve to reduce U.S. source income and reduce the effective tax rate on U.S. source income. *See*, S. Rep. No. 94-938, pt. 1, at 236 (1976); *see also*, *Hershey Foods Corp. v. Commissioner*, 76 T.C. 312, 322 (1981). Because of this reduction of U.S. source taxable income by foreign losses, "Congress felt that additional measures were necessary to ensure that *U.S. source income bore its full share* of Federal income tax." *Hershey Foods Corp.*, 76 T.C. at 322 (emphasis added).

To prevent taxpayers from obtaining the double benefit of (1) using foreign losses to reduce U.S. source taxable income in prior tax years and (2) reducing its U.S. tax liability, through the use of foreign tax credits (due to foreign source income earned) in a subsequent tax year, Congress requires taxpayers to recapture those excess foreign losses used to reduce U.S. source taxable income in prior

- 15 -

years out of foreign taxable income earned in subsequent tax years. This, at its most basic level, matches prior foreign source losses with future foreign source taxable income. As explained by the Senate Finance Committee in 1976, "where a taxpayer on the overall limitation reduces U.S. tax on domestic income by means of a loss from foreign sources, the committee believes that this tax benefit should be subject to recapture by the United States when foreign source income is subsequently derived." S. Rep. No. 94-938, pt. 1, at 236 (1976); *see also*, H.R. Rep. No. 94-658, at 228-229 (1976.

> The effect of Congress's remedy, enacted in § 904(f)(1), is that:
>
> when any excess foreign loss reduces U.S. source income otherwise subject to tax, future foreign source income equal in amount to the excess loss will be treated as U.S. source income. That will reduce the amount of foreign tax credits available since the amount of foreign source income will be reduced. Thus, when the year(s) of excess loss and the year(s) of recharacterization are viewed together, *U.S. source income will bear its full tax share.*

*Hershey Foods Corp.*, 76 T.C. at 322-323 (emphasis added); *see also*, I.R.C. § 904(f)(1).

Congress also considered that a taxpayer might dispose of foreign source income-producing assets before OFLs are recaptured. *See*, S. Rep. No. 94-938, at 239-240 (1976) ("[P]rovides for the recapture of a loss where property which was used in a trade or business, and which is used predominantly outside the United

- 16 -

States, is disposed of prior to the time the loss has been recaptured under the rules [provided].”); *see also,* H.R. Rep. No. 94-658, at 229 (1976). Such a disposition would terminate the potential for future foreign source taxable income that might otherwise recapture the OFL account because, in the absence of another rule, it would give rise to U.S. source income based on the residency of the transferor. § 865(a). To address this, when a taxpayer disposes of property which has been used predominately without the United States, § 904(f)(3) accelerates the recapture by the gain realized up to the amount of any previously unrecaptured OFL. *I.R.C.* § 904(f)(3)(A). The Jobs Creation Act of 2004, added to § 904(f)(3) "(D) Application to certain dispositions of stock in Controlled Foreign Corporation." *See*, H.R. 4520, 108 Cong. (2d Sess. 2004), 150 Cong. Rec. S8281-02, § 455. As explained in the Conference Report about the Senate Amendment to H.R. 4520:

> [u]nder the provision, the special recapture rule for overall foreign losses that currently applies to dispositions of foreign trade or business assets applies to the disposition of stock in a controlled foreign corporation controlled by the taxpayer. Thus, a disposition of controlled foreign corporation stock by a controlling shareholder results *in the recognition of foreign-source income in an amount equal to the lesser of the fair market value of the stock over its adjusted basis, or the amount of prior unrecaptured overall foreign losses*. Such income is [recharacterized] as U.S.-source income for foreign tax credit limitation purposes without regard to the 50-percent limit.

- 17 -

H.R. Rep. No. 108-755, at *1805 (Conf. Rep.) (2004) (emphasis added). The

Senate amendment was adopted with modifications to certain dispositions under §

332. *Id*.

## II.     Section 904(f) Modifies § 904(a) to Recapture Foreign Losses Used to Offset U.S. Income in Prior Years.

The mechanics accomplishing the OFL recapture warrant explanation. The

amount by which foreign losses exceed foreign income is the OFL. *I.R.C.* §

904(f)(2) (the amount by which gross income for the taxable year from foreign

sources is exceeded by the sum of the deductions[5] properly apportioned or

allocated thereto). Taxpayers maintain an "OFL account" which is increased each

year by the amount, if any, of an OFL the taxpayer sustains in that year, or is

decreased by the amount of the portion, if any, of the OFL account that is

recaptured –in that year – in the case where the taxpayer has foreign income.

*Treas. Reg.* §§ 1.904(f)-1(d)(1) and 1.904(f)-1(e).[6] If a taxpayer sustains an OFL in

any taxable year, then in each succeeding taxable year, solely for purposes of §§

901 through 909, an amount of the OFL is recaptured (to the extent not previously

recaptured) by treating an amount of foreign source taxable income equal to the

---

[5] Excludes net operating loss deductions and certain deductions for expropriation and casualty losses.

[6] OFL accounts are maintained for each separate category of income in which an OFL arises. *Treas. Reg.* § 1.904(f)-1(b).

- 18 -

lesser of the OFL account or 50% of the foreign source taxable income for that year as U.S. source taxable income in the Section 904 Fraction, thus reducing the foreign source taxable income in the numerator. *I.R.C.* § 904(f)(1); *Treas. Reg.* § 1.904(f)-2(a).[7]

### A.    Section 904(f)(1) Generally.

Section § 904(f)(1) provides the method for the recapture of an OFL. Section 904(f)(1) provides:

> [i]n the case of taxpayer who sustains an [OFL] for any taxable year, that portion of the taxpayer's taxable income from sources without the United States for each succeeding taxable year which is equal to the lesser of –
>
> (A) the amount of such loss (to the extent not used under this paragraph in prior taxable years, or
>
> (B) 50 percent (or such larger percent as the taxpayer may choose) of the taxpayer's taxable income from sources without the United States for such succeeding taxable year,
>
> shall be treated as income from sources within the United States (and not as income from sources without the United States.

*I.R.C.* § 904(f)(1). Section 904(f)(1) recharacterizes what would otherwise be foreign source taxable income, and includable in the numerator of the Section 904

---

[7] The citation to *Treas. Reg.* § 1.904(f)-2(a) is to the regulation in effect March 23, 2010, to June 21, 2012.

Fraction, to be U.S. source income for purposes of computing the allowable foreign tax credits under § 901, which reduces the amount of allowable credits. *Id.* The cumulative effect is that the taxpayer recaptures, over time, an amount of the OFL previously used to reduce its U.S. taxable income.[8] *I.R.C.* § 904(f)(1). The recapture prevents the double benefit of using excess foreign losses to offset U.S. taxable income in prior taxable years, and then including foreign source taxable income in the numerator of the Section 904 Fraction, in subsequent taxable years, allowing taxpayers to reduce their U.S. tax liability. *See generally*, *Hershey Foods Corp.,* 76 T.C. at 322-23. "Thus, when the year(s) of excess loss and the year(s) of recharacterization are viewed together, U.S. source income will bear its full tax share." *Id.* at 323. In the case of a disposition, § 904(f)(3)(A) accelerates the recapture process for taxpayers. *I.R.C.* § 904(f)(3)(A).

**B.    Section 904(f)(3) OFL Recapture Upon Disposition.**

If § 904(f) were limited to just subsection (1), then – all things equal – in circumstances in which a taxpayer maintained an OFL account and disposes of property with the potential to earn foreign source taxable income in succeeding

---

[8] Because § 904(f)(1) requires the lesser of the amount of the OFL account or 50 percent of the taxpayer's foreign source taxable income, it is possible that only a portion of the OFL, and not the entire OFL, may be recaptured in one taxable year.

- 20 -

taxable years, the ability to recapture any remaining balance of the OFL account after the normal application of § 904(f)(1) would be impaired by the loss of the property's income-producing potential.

Section 904(f)(3)(A) prescribes an accelerated recapture of an OFL account when taxpayers dispose of property which has been used predominately outside the United States and works as a "last chance" to recapture the OFL account.[9] Stock in a CFC, which is property predominately used in a trade or business outside the United States, typically produces foreign source taxable income, which can be used to recapture a taxpayer's OFL account prior to its disposition. *See*, *I.R.C.* § 862. However, the gain on the disposition of stock in the CFC has a different sourcing rule that generally applies: § 865(a), which depends on residency of the seller.

Section 904(f)(3) sources the gain on the disposition, or a portion of that gain, to match the source of the foreign income the property may have earned, and which would have been used to recapture the OFL, but for the disposition.

For purposes of § 904(f)(3)(B) a disposition "includes a sale, exchange, distribution, or gift of property whether or not gain or loss is recognized on the

---

[9] In the case of a taxpayer who has no other foreign source taxable income or assets which could recapture the OFL account, the disposition rules act as a "last chance" to recapture the OFL account.

- 21 -

transfer." *I.R.C.* § 904(f)(3)(B)(i). Thus, a disposition includes both recognition and non-recognition transactions. Further, an "applicable disposition" is the "disposition of any share of stock in a [CFC] in a transaction or series of transactions if, immediately before such transaction or series of transactions, the taxpayer owned more than 50 percent (by vote or value) of the stock of the [CFC]." *I.R.C.* §§ 904(f)(3)(D)(i) and (ii). Stock ownership for purposes of determining whether a disposition is an "applicable disposition" is determined in the same way as determining whether an entity is a CFC under § 957 by using the rules of §§ 958(a) and (b). *I.R.C.* §§ 904(f)(3)(D)(v) and (vi). In addition, § 904(f)(3)(B)(ii) provides "[a]ny taxable income recognized solely by reason of [§ 904(f)(3)(A)] shall have the same characterization it would have had if the taxpayer had sold or exchanged the property." With those definitions in place, the accelerated recapture of § 904(f)(3)(A) is accomplished through three steps.

First, the taxpayer, to the extent not already required by the Code, is deemed to recognize taxable income. Thus, nonrecognition transactions become recognition transactions to the extent provided by the statute.[10] The taxable income

---

[10] In the case of a non-recognition transaction, the amount that is deemed to recognized as foreign source taxable income is the lesser of the gain or the OFL account, the same amount that is deemed to be foreign source taxable income in recognition transactions.

recognized, or deemed to be recognized, is deemed to be foreign source "in the taxable year of the disposition, by reason of such disposition, in an amount *equal to the lesser of*" the gain or the remaining amount of the OFL account which was not recaptured under § 904(f)(1) "for such taxable year or any prior taxable year." *I.R.C.* § 904(f)(3)(A)(i) (emphasis added). Critically, the recognized gain is deemed foreign source "notwithstanding any other provision of" Chapter 1 (Normal Taxes and Surtaxes) other than § 904(f)(1). *Id.* (emphasis added).[11]

Second, § 904(f)(3)(A)(ii) directs taxpayers to § 904(f)(1), stating § 904(f)(1) "shall be applied with respect to such income, by substituting '100 percent' for '50 percent.'" This means § 904(f)(1) recaptures "100 percent" of the deemed foreign source taxable income, determined under § 904(f)(3)(A)(i) for this last chance to recapture the OFL account, i.e., it is not subject to the "50 percent" of foreign source taxable income recapture limitation in § 904(f)(1)(B). *I.R.C.* § 904(f)(3)(A)(ii).

Third, § 904(f)(1), is applied per the dual mandates of § 904(f)(3)(A)(i) and (ii), by converting the deemed foreign source taxable income to U.S. source

---

[11] In the case of a disposition which results in income which is U.S. sourced, prior to the application of § 904(f)(3)(A)(i), the income must be deemed to be foreign source in order to apply § 904(f)(1).

- 23 -

income for purposes of Subpart A (Foreign Tax Credit), to calculate the numerator of the Section 904 Fraction. Effectively, § 904(f)(3)(A)(i) deems the lesser of 100 percent of the gain on the sale or the OFL balance as foreign source taxable income then recharacterizes it as U.S. source taxable income under § 904(f)(1) to recapture the OFL account.

> Through the application of these steps, the combined effect:
>
> is to ensure, in the long run, that foreign losses only reduce foreign income – any foreign loss matched against U.S. source income either will cause a recharacterization of later foreign source income as U.S. income or will itself be recognized upon a disposition of foreign branch assets. *Thus, the objective of Congress, that U.S. income bear its Federal income tax share, is met.*

*Hershey Foods Corp.*, 76 T.C. at 323 (emphasis added) (internal citations omitted).

In some dispositions, whether or not gain or loss is realized and recognized, the income would be foreign sourced regardless of the application of § 904(f)(3)(A)(i). *See, I.R.C.* §§ 861-865. However, in other instances, such as the disposition of shares in a CFC, there would be no foreign source taxable income which could be recharacterized, under § 904(f)(1), as U.S. source taxable income to recapture the OFL account. Without § 904(f)(3)(A)(i) first deeming the lesser of the gain or the OFL account as foreign source taxable income, taxpayers that dispose of shares in a CFC would never recapture any of the OFL balance upon the disposition of the shares.

- 24 -

By treating what would otherwise be U.S. source taxable income under §

865, as foreign source taxable income for purposes of § 904(f)(3)(A)(i) and then

recharacterizing the income back to U.S. source income under § 904(f)(1), which it

would have been regardless, the ultimate amount of U.S. source income and

foreign source taxable income remain unchanged. In such circumstances, the OFL

is recaptured without having to reduce otherwise allowable foreign tax credits – a

"free recapture." In other words, despite the mechanics of § 904(f) and its subparts,

LGI's foreign source taxable income in the numerator in the Section 904(a)

Fraction does not change and therefore LGI's allowable foreign tax credits also

remain unchanged.[12] This "free recapture" allows taxpayers in LGI's position

(recognized U.S. source income from the gain on the disposition) to reduce its OFL

balance on certain dispositions, such as the disposition of stock in a CFC, without

---

[12] Recall that the general rule under § 865 is that the gain on the disposition of the
CFC is U.S. source income. And to recapture the OFL, §§ 904(f)(3) and 904(f)(1)
work in tandem to deem a portion of the gain that would be U.S. source income as
foreign source taxable income and then, for purposes of the Section 904 Fraction,
recharacterize that foreign source taxable income back to U.S. source income.

the corresponding reduction in allowable foreign tax credits that follow from the ordinary application of § 904(f)(1) recapture of OFL accounts.[13]

### 1. Application of § 904(f)(1) and the Disposition Rules Under § 904(f)(3).

LGI's disposition of J:COM stock is an applicable disposition within the meaning of § 904(f)(3)(D). Stip. ¶¶ 33-38. LGI's 2010 OFL account reflects $474,372,166 of losses from foreign sources which reduced its taxable income in prior taxable years. Stip. ¶ 40. LGI's gain on the sale of J:COM after application of § 1248 is $2,818,421,963. Stip. ¶ 42. Thus, pursuant to § 904(f)(3)(A)(i), $474,372,166 of LGI's U.S. source taxable income on the sale is deemed to be foreign source taxable income during the 2010 Tax Year, the lesser of the gain on the sale or the OFL account balance.

Under § 904(f)(1), the "50 percent" limitation in § 904(f)(1)(B) is modified by § 904(f)(3)(A)(ii) so that "100 percent" of the deemed foreign source taxable income determined under § 904(f)(3)(A)(i) – in this case $474,372,166 – is then

---

[13] Recall under the ordinary application of § 904(f)(1), when a taxpayer earns foreign source taxable income, a portion of that income is resourced under § 904(f)(1) in order to recapture an OFL, resulting in a reduction of the Section 904 Fraction numerator and a corresponding reduction in the amount of allowable foreign tax credits.

recharacterized as U.S. source taxable income under § 904(f)(1) and LGI's OFL account is recaptured.

This ordered treatment achieves two things: (1) it properly accounts for the reduction of the balance of LGI's OFL account through deemed foreign source taxable income being recharacterized as U.S. source taxable income in the amount required, and (2) permits LGI to recapture its OFL balance on the disposition of the J:COM stock, the gain on which would otherwise be U.S. source income, a "free recapture" of sorts.

In this case, there is no dispute that the disposition results in the recapture of the OFL account by deeming an amount of the gain equal to the OFL balance as foreign source taxable income under § 904(f)(3)(A)(i) which is then recharacterized under § 904(f)(1) as U.S. source taxable income to recapture the OFL account. Petition ¶¶ 5(s) and (t).[14] The dispute here is whether the gain from the disposition of the J:COM shares, in excess of the amount required to recapture the OFL account, is recharacterized as foreign source taxable income under § 904(f)(3)(A)(i) or if the gain remains U.S. source taxable income under § 865(a).

---

[14] While LGI references § 904(f)(3) in its petition, LGI does not explicitly reference that the OFL balance, which is deemed foreign source taxable income, is recaptured under § 904(f)(1) by treating that deemed foreign source taxable income as U.S. source taxable income.

- 27 -

Respondent's position is that the remaining gain from the disposition of the J:COM shares, after the recapture of the OFL account, remains U.S. source income.

**III.    The Plain Language of § 904(f)(3)(A)(i) Provides that Only the Lesser of the Gain or the OFL Account Balance is Deemed to be Foreign Source Taxable Income for Purposes of § 904(f)(1).**

    **A.    Section 904(f)(3) must be interpreted giving effect to its text and purpose.**

The plain language of § 904(f)(3) is clear. Section 904(f)(3) deems "*the lesser of*" the gain or the OFL account as foreign source taxable income to apply the recapture described by § 904(f)(1). While respondent does not believe there are two permissible constructions, LGI's interpretation has the effects of (i) violating multiple canons of construction, including by rendering the critical "lesser of" language superfluous, thereby pushing the reading of the statute to absurdity; and (ii) defeating the purpose of § 904(f), which is to limit foreign tax credits and prevent taxpayers from reducing the tax due on what would otherwise be U.S. source income. By treating the entirety of the gain on the disposition as foreign source and then recharacterizing only the $474,372,166 back into U.S. source income under § 904(f)(1), LGI is both violating the statute's plain meaning and

- 28 -

*increasing*, not decreasing, the numerator in the Section 904 Fraction.[15] LGI's

interpretation would reduce LGI's overall tax liability on U.S. source income and,

thereby, defeat the statute's legislative purpose. *Hershey Foods Corp.*, 76 T.C. at

322.

## B.    Canons of Statutory Construction and Interpretation.

The canons of statutory construction dictate that the interpretation of a

statute begins with the text of the law, giving effect to the plain meaning. *Patients*

*Mutual Assistance Collective Corporation v. Commissioner,* 151 T.C. 176, 191

(2018) (citing Antonin Scalia and Bryan Garner, *Reading Law: The Interpretation*

*of Legal Texts* at 69 (2012) ("[t]he ordinary meaning rule is the most fundamental

semantic rule of interpretation."). The interpretation should consider context, with

a view to the statute's place in the overall statutory scheme, and the language and

design of a statute as a whole. *Id.* at 194*; See also*, *K-Mart Corp. v. Cartier, Inc.*,

486 U.S. 281, 291 (1988); *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 809

(1989); *Austin v. Commissioner*, 141 T.C. 551, 563 (2013); 1 James Kent,

Commentaries on American Law 433 (1826) (quoted by Antonin Scalia and Bryan

---

[15] Because the income on the disposition is U.S. source taxable income, there
would be no foreign source taxable income to include in the Section 904 Fraction
numerator.

- 29 -

Garner, *Reading Law: The Interpretation of Legal Texts* at 69, n.1 (2012)) (statutes should be "taken together, and compared in the construction of" other sections of the *corpus juris* and "considered as having one object in view, and as acting upon one system").

Additionally, "[a]nother fundamental canon of construction, however, tells us to prefer textually permissive readings that don't render a statute ineffective." *Patients Mutual Assistance Collective Corp.*, 151 T.C. at 192 (2018) (citing Scalia & Garner, *Reading Law: Interpretation of Legal Texts* at 63, and *Citizens Bank of Bryan v. First State Bank*, 580 S.W.2d 344, 348 (Tex. 1979), "[i]f the language is susceptible of two constructions, one of which will carry out and the other defeat * * * [the statute's] object, it should receive the former construction."). Furthermore, courts should avoid reading statutes where the reading would "edge us close to absurdity". *Patients Mutual Assistance Collective Corp.,* 151 T.C. at 192 (internal citations omitted).

Finally, "[i]t is a well-accepted canon of construction that a statute ought to be construed so that no clause, sentence, or word is rendered superfluous, void, or insignificant." *Guardian Industries Corp., v. Commissioner*, 143 T.C. 1, 14-15 (2014). Section 904, and the regulations thereunder, should be interpreted using these canons of construction.

- 30 -

## C.   Section 904(f)(3) is Not Ambiguous.

Section 904(f)(3) is unambiguous that the *lesser of* the gain or the OFL account is foreign source taxable income. LGI implies that the language of § 904(f)(3) is ambiguous and the regulations provide the requisite clarification –- a predicate for its argument that § 1.904(f)-2(d)(1) applies and requires that all gain realized on the sale of property be treated as foreign source taxable income. Petition ¶ 5(p). The regulation cannot – and does not – apply in the manner LGI describes.

Section 904(f)(3)(A) is clear that the amount of income the taxpayer is deemed to recognize as foreign source taxable income is *the lesser of* the gain or the OFL account. Section 904(f)(3)(A) provides:

> [f]or purposes of this chapter, if property which has been used predominantly without the United States in a trade or business is disposed of during any taxable year – (i) the taxpayer, notwithstanding any other provision of this chapter (other than [§ 904(f)(1)]), shall be deemed to have received and recognized taxable income from sources without the United States in the taxable year of the disposition, by reason of such disposition, in an amount equal to *the lesser of* the excess of the fair market value of such property over the taxpayer's adjusted basis in such property or the remaining amount of the [OFLs] which were not used under [§ 904(f)(1)] for such taxable year or any prior taxable year.

*I.R.C.* § 904(f)(3)(A) (emphasis added).

- 31 -

As stated above, LGI's 2010 OFL account balance is $474,372,166, which is less than LGI's gain on the sale of J:COM of $2,818,421,963. Because the OFL account balance is less than the gain on the sale of the J:COM stock, the gain deemed to be foreign source taxable income for purposes of § 904(f)(3)(A)(i) is $474,372,166. *See*, *I.R.C.* § 904(f)(3)(A)(i).

The only amount of income which is deemed to be characterized as foreign source taxable income under § 904(f)(3)(A)(i) is *the lesser of* the two amounts, the gain on the disposition or the OFL balance of $474,372,166.

### D.    The Plain Language of § 904(f)(3) Forecloses LGI's Interpretation of §1.904(f)-2(d).

Regulations are interpreted in the same manner as statutes. *Black & Decker Corp. v. Commissioner*, 986 F.2d 60, 65 (4th Cir. 1993). Additionally, regulations also are interpreted to avoid conflict with the statute. *Guardian Industries Corp.*, 143 T.C. at 12; *Austin*, 141 T.C. at 563; *APTARGROUP Inc. v. Commissioner*, 158 T.C. No. 4, *4 (2022); *Phillips Petroleum Co. v. Commissioner*, 97 T.C. 30, 35 (1991). No clause, sentence, or word of a regulation should be construed to render it superfluous, void, or insignificant – the regulations should be given effect to the extent possible. *Guardian Industries Corp.*, 143 T.C. at 14-15; *Black & Decker Corp.* at 65. Simply put, LGI may not construe a regulation to "circumvent the plain language of" the statute that the regulation seeks to clarify. *Commissioner v.*

- 32 -

*Schleier*, 515 U.S. 323, 333 (1995). Interpreting § 904 and the regulations in § 1.904(f)-2(d) requires an understanding of its placement within Chapter 1 of the Code and the substantive rules governing Federal income taxation.

It is LGI's position that "the Treasury Regulations, as in effect in 2010, required [LGI] to treat all gain on the J:COM sale as foreign source income." Petition ¶¶ 5(p) and (q). LGI, in its petition, jumps directly from § 904(f)(3) to § 1.904(f)-2(d)(1) with no explanation or reasoning as to why its reading of the language in the regulation, and not the statute, is determinative. Petition ¶¶ 5(o)-(q).

There is no ambiguity in section 904(f)(3)(A) or conflict[16] between section 904(f)(3)(A) and the applicable regulations, but if there were, the statute takes precedence. *See*, *Phillips Petroleum Co.*, 97 T.C. at 35. A construction which gives effect to all the words of a statute or regulation is preferred over an interpretation which renders some of the statute or regulation ineffective. See *Patients Mutual Assistance Collective Corp.,* 151 T.C. at 192 (A fundamental canon of statutory construction is "to prefer textually permissible interpretations that do not render a statute/ ineffective."). Furthermore, it is a "well-recognized maxim that, in

---

[16] For example, §§ 904(f)(1) and 904(f)(3)(A) contain similar language as both sections refer to "the lesser of," the OFL account or the gain.

interpretating a regulation the courts should, if possible, avoid a construction that will bring into question the validity of the regulation." *Steen v. Commissioner*, 61 T.C. 298, 304 (1973) (internal citations omitted). To be clear, respondent is not arguing that the regulation is invalid. Rather, the canon applied in *Steen* further confirms that § 1.904(f)-2(d) should be read consistently with the plain meaning of § 904(f)(3) explained above.

Section 904(f)(3) states, in no uncertain terms, that where there is a disposition, "the taxpayer shall be deemed" to recognize foreign source taxable income "equal to *the lesser of* the [gain in excess of the adjusted basis] or the remaining amount of the overall foreign losses…." *I.R.C.* § 904(f)(3)(A)(i) (emphasis added). LGI's reading of § 1.904(f)-2(d)(1) would, in many cases including its own, give no meaning to the phrase "the lesser of," and LGI's reading would flip "the lesser of" on its proverbial head and, in this case, deem *the greater of* the gain or remaining OFL to be realized and recognized as foreign source taxable income.

### E.    LGI's Interpretation Renders "*The Lesser Of*" language of the statute Superfluous.

Statutes should also be read in a manner that avoids rendering words and clauses as superfluous. *See, Sunderland v. Commissioner*, 155 T.C. 95, 103 (2020) (internal citations omitted) (explaining and applying the canon against superfluity);

- 34 -

*Tice v. Commissioner*, 160 T.C. No. 8, * 4 (2023) ("If a taxpayer were deemed to have filed 'with both the United States and the Virgin Islands' by virtue of filing 'with the Virgin Islands' then section 932(a)(2) would be meaningless" and would violate the surplusage cannon); *15 W 17th St. LLC v. Commissioner*, 147 T.C. 557, 586 (2016) (internal citations omitted) (the Court should interpret statutes in a manner that avoids "rendering any part … meaningless surplusage"). LGI's interpretation of § 1.904(f)-2(d)(1), however, renders a portion of § 904(f)(3)(A)(i) superfluous.

To illustrate LGI's flawed reading, with respect to its disposition, see the text with the "superfluous" language stricken:

> (i) the taxpayer, notwithstanding any other provision of this chapter (other than (1)), shall be deemed to have received and recognized taxable income from sources without the United States in the taxable year of the disposition, by reason of such disposition, in an amount equal to ~~the lesser of~~ the excess of the fair market value of such property over the taxpayer's adjusted basis in such property ~~or the remaining amount of the overall foreign losses which were not used under paragraph (1) for such taxable year or any prior taxable year,~~ and….

*See*, *I.R.C.* § 904(f)(3)(A)(i). It should be clear that the phrase "the lesser of" is significant to the purpose of the statue and LGI's reading simply cannot be reconciled with the plain language or the purpose of the statute.

- 35 -

LGI's interpretation converts income that would otherwise be excluded from the numerator in the Section 904 Fraction (i.e., U.S. source income), into foreign source taxable income, out of thin air, thereby increasing the numerator of the Section 904 Fraction, and increasing the allowable foreign tax credits to offset its U.S. tax liability on U.S. source income.

This is the opposite of what the OFL recapture rules under § 904(f) are intended to do, which is to recharacterize foreign source taxable income as U.S. source taxable income and limit foreign tax credits after a taxpayer sustains an OFL.

### F.    Treas. Reg. § 1.904(f)-2(d)(1) Should be Read in the Context of § 904(f)(3).

LGI's reading of § 1.904(f)-2(d)(1) would treat, as foreign source taxable income, not only the portion of the recognized income on the J:COM sale required to recapture the OFL, but the entirety of the gain from the disposition. Petition ¶ 5(q). LGI would then recapture its OFL account by implementing § 904(f)(1) and recharacterizing an amount of that foreign source income equal to the OFL

- 36 -

account[17] as U.S. source taxable income. *I.R.C.* §§ 904(f)(1)(A) and (B). This interpretation of the regulation is contrary to the statutory scheme.

The language contained in both §§ 904(f)(1) and 904(f)(3) is part of a unified statutory scheme by which the Section 904 Fraction limits the credit taken under § 901(a). *See*, § 904(a); *Yari v. Commissioner*, 143 T.C. 157, 164 (2014) The Court interprets statutes "in their context with a view to their place in the overall statutory scheme." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000); *Yari*, 143 T.C. at 164.

The only permissible reading of the language in § 1.904(f)-2(d)(1) that "(i) gain will be recognized on the disposition of such property [and] (ii) such gain will be treated as foreign source income subject to the same limitation as the income the property generated," is in context with the statutory language, which deems taxpayers to have "received and recognized income from sources without the United States...in an amount equal to the lesser of the fair market value of such property over the taxpayer's adjusted basis in such property or the remaining amount of the overall foreign losses". *Treas. Reg.* §§ 1.904(f)-2(d)(1)(i) and (ii); *I.R.C.* § 904(f)(3)(A).

---

[17] Section 904(f)(3), as stated above, substitutes "100 percent" in place of "50 percent," when applying § 904(f)(1). *I.R.C.* § 904(f)(3)(A)(ii).

- 37 -

*Treas. Reg.* § 1.904(f)-2(d)(1), to which taxpayer points, must also be read in the context of the entire "-2" regulation. The "-2" regulation begins with § 1.904(f)-2(a), and explains that "[r]ecapture is accomplished by treating as United States source taxable income a portion of the taxpayer's foreign source taxable income of the same limitation as the foreign source loss that resulted in an [OFL] account" and "[r]ecapture continues until such time as the amount of foreign source taxable income recharacterized as United States source income equals the amount in the [OFL] account." *Treas. Reg.* § 1.904(f)-2(a). The language of the regulation, thus, merely describes how the gain is applied to the OFL account to reduce or eliminate the balance of the account.

*Treas. Reg.* § 1.904(f)-2(d) then describes how the disposition rules of § 904(f)(3) apply for purposes of the recapture. Pursuant to the statute and regulation, if taxpayers realize taxable gain on the disposition, there is a recharacterization of U.S source income as foreign source income and an amount of its OFL is recaptured. *Treas. Reg.* § 1.904(f)-2(d). But no provision in *Treas. Reg.* § 1.904(f)-2(d) instructs as to the amount of gain so recharacterized from U.S. source to foreign source in the case of a transaction, like the one here, that is otherwise fully recognized. And the proper reading of this regulation is not independent of § 904(f)(3), but rather in context with § 904(f)(3), which answers

- 38 -

this question, and deems the recognition and realization of foreign source taxable income in an amount equal to "*the lesser of*" the gain or the OFL account. *I.R.C.* § 904(f)(3)(A)(i) (emphasis added). Accordingly, it is impermissible for LGI to take a position contrary to § 904(f)(3)(A)(i) when the statute offers a more specific recharacterization rule than that in the regulation. *See, Schleier*, 515 U.S. at 333 (a regulation should not be construed to "circumvent the plain language of" the statute the regulation is intended to clarify).

### G.    Respondent is Not Retroactively Applying the 2012 Amendments to § 1.904(f)-2(d)(1).

Contrary to the assertion LGI makes in its petition, respondent is not retroactively applying the amendments to § 1.904(f)-2(d)(1). Petition ¶ 5(aa). As stated above, the Statute is not ambiguous and the regulations, read in context with the statute, provide the correct result by deeming the lesser of the OFL or the gain on the disposition as foreign source taxable income under § 904(f)(3)(A)(i) and then applying § 904(f)(1) to recapture the OFL amount by treating the deemed foreign source taxable income as U.S. source taxable income; the remaining gain from the disposition remains U.S. source income.

### IV.    Section 904(f)(3) Does Not Exclude Gains from Taxable Income.

In the alternative, LGI alleges that if § 904(f)(3)(A)(i) is not ambiguous, then the phrases "For purposes of this chapter" and "notwithstanding any other

- 39 -

provision of this chapter (other than paragraph 1)" in § 904(f)(3)(A)(i) means that

the section applies not just to income sourcing to determine the limit on the

allowable foreign tax credit, but to the entire computation of income. Petition ¶

5(jj). LGI argues that § 904(f)(3)(A)(i) is a provision broader than just determining

the amount of allowable foreign tax credits under § 901 through the recapture to

the OFL account for purposes of § 904. LGI argues that § 904(f)(3)(A)(i) caps

LGI's recognizable gain on the J:COM sale at the lesser of LGI's realized gain or

its OFL account balance. Petition at 11 (¶¶ 5(jj) and (kk)). As stated in the petition:

> [s]pecifically, Code section 904(f)(3) provides that for transactions
> like the J:COM sale, "the taxpayer, <u>notwithstanding any other
> provision of this chapter (other than [Code section 904(f)(1)], shall be
> deemed to have received and recognized taxable income</u> from sources
> without the United States in the taxable year of the disposition, by
> reason of the disposition, <u>in an amount equal to the lesser of the
> excess of the fair market value of such property over the taxpayer's
> adjusted basis in such property or the remaining amount of the
> [taxpayers OFL account balance]</u>."

Petition ¶ 5(jj) (emphasis in original). LGI's interpretation, as reflected in the

allegation, lacks context.

### A.     Section 904(f)(3) Does Not Override § 1001.

LGI's argument implies that § 904(f)(3) overrides § 1001 (computing gain

as the amount realized over adjusted basis), such that the "lesser of" language in

§ 904—a section on foreign tax credit limitations—somehow excludes otherwise

includible taxable income from gain. This is plainly wrong. Section 904(f)(3) simply caps the amount of gain that the taxpayer is "deemed to have received and recognized income … from sources without the United States…." Section 904(f)(3)(A)(i) (emphasis added), as explained below, limits the total gain recognized only in the context of what would otherwise be a nonrecognition transaction. Gain in excess of the lesser of the two amounts described in § 904(f)(3), is still taxable as provided elsewhere in the Code.

As previously stated above, § 904 is a limitation on the allowable foreign tax credits under § 901(a). Section 904 works in tandem with § 901 to limit the amount of foreign credits claimed to the "proportion of the tax against which such credit is taken which the taxpayer's taxable income from sources without the United States (but not in excess of the taxpayer's entire taxable income) bears to his entire taxable income for the same taxable year." *I.R.C.* § 904(a). Reading a non-recognition provision into § 904 would be contrary to the text and purpose of the statute.

Congress must clearly provide for an exclusion of income, and it cannot be implied from a vague and unworkable statutory construction, like the one LGI offers. "Exclusions from income must be narrowly construed." *Schleier*, 515 U.S. at 328 ; *see also, Mayo Found. for Medical Ed. v. United States*, 562 U.S. 44, 59-

- 41 -

60 (2011). This is a "corollary of § 61's broad construction" of gross income as "all income from whatever source derived." *Schleier, 515 U.S.* at 327-28 (*citing Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 429 (1955)). Thus, when excluding items from taxable income, Congress uses unmistakable language. *See, e.g.*, §§ 104(a) ("gross income does not include"), 108(a)(1) ("Gross income does not include any amount which…"), 351(a) ("No gain or loss shall be recognized if…").

The language LGI points to — "For purposes of this chapter"— does not exclude any amount from taxable gain and there is no reasonable reading of the statute that even implies such an exclusion. Rather, this language is necessary to require taxpayers in what would otherwise be a nonrecognition transaction, to recognize taxable income to the extent of gain that is used to recapture their overall foreign loss. In other words, "[f]or purposes of this chapter" overrides *non-recognition* provisions to the contrary in order to recapture the OFL account. A "disposition" to which section 904(f)(3) applies includes "a sale, exchange, distribution, or gift of property *whether or not gain or loss is recognized on transfer*." *I.R.C.* § 904(f)(3)(B)(i) (emphasis added). Section 904(f)(3)(A) thus deems gain as foreign sourced taxable income in an amount equal to the lesser of the OFL account or the gain on the disposition as foreign source even if the gain

- 42 -

were realized as part of a nonrecognition transaction (*e.g.*, § 351, § 361). *I.R.C.* § 904(f)(3)(A)(i). This income, just deemed by § 904(f)(3)(A)(i) to be foreign sourced taxable income, is then recharacterized as U.S. source taxable income for purposes of computing the numerator of the Section 904 Fraction pursuant to § 904(f)(1).

**B.    LGI's Flawed Reading of § 904(f)(3)(A)(i) Reaches Absurd Results.**

By isolating a portion of § 904(f)(3)(A)(i) without viewing this language in the context and the interplay of §§ 904(f)(1), 904(a), and 901 within the Code LGI's position yields absurd results.

Consider the following to illustrate the absurd results of LGI's alternative reading. Taxpayers A and B dispose of stock in a CFC, resulting in $500 million of gain. Taxpayer A has an OFL account balance of $1 and B has an OFL account balance of $250 million. Under LGI's alternative argument interpretation, A would recapture the $1 of the OFL account on its return and the remaining $499,999,999 would not be subject any U.S. taxation. Taxpayer B would recapture the $250 million of its OFL account on its return and the remaining $250 million would not be subject to any U.S. taxation. There is no apparent reason for excluding this income that is consistent with § 904's purpose, *viz.*, to limit the allowance of foreign tax credits to "the same proportion of [U.S. taxable income] which the

- 43 -

taxpayer's taxable income from sources without the United States…bears to his entire taxable income for the same taxable year." *I.R.C.* § 904(a).

Under the correct reading, both taxpayers recognize the full amount of the gain on the disposition, and both taxpayers recapture their OFL account. While LGI's reading would push the Code toward an interpretation where code sections do not interact with each other and work together in a unified statutory scheme, and where canons of construction are discarded for each taxpayer's interpretation du jour. This alternative argument fails for the same fundamental reason that LGI's primary argument failed; the statute is clear and unambiguous on its face and viewed in context of the Code as a whole, and respondent's position is wholly consistent therewith and represents the only proper and permissible reading of the statute and the Code.

## V.    LGI Can Elect to Deduct the Foreign Taxes Paid Under § 164 and Reverse its § 78 Gross-Up.

Respondent does not dispute that LGI may elect to deduct its foreign taxes paid and reverse the § 78 Gross-Up.

- 44 -

## CONCLUSION

It follows that the determination of the Commissioner of Internal Revenue should be sustained.

WILLIAM M. PAUL
Acting Chief Counsel
Internal Revenue Service

Date: <u>June 30, 2023</u>          By: _____

MATTHEW J. AVON
Special Trial Attorney
(Strategic Litigation)
Tax Court Bar No. AM0304
33 Maiden Lane
New York, NY 10038
Telephone: (646) 259-8012
Matthew.J.Avon@irscounsel.treas.gov

TIMOTHY L. SMITH
Special Trial Attorney
(Strategic Litigation)
Tax Court Bar No. ST0479
51 S.W. First Avenue, Suite 1114
Miami, FL 33130
Telephone: (305) 982-5335
Timothy.L.Smith@irscounsel.treas.gov

OF COUNSEL:
KATHRYN F. PATTERSON
Division Counsel
(Strategic Litigation)
JOHN M. ALTMAN

- 45 -

Deputy Division Counsel
(Strategic Litigation)
JOHN A. GUARNIERI
Strategic Litigation Counsel
(Strategic Litigation)

**LGI'S SIMULTANEOUS OPENING BRIEF,**
**T.C. DOC. 35 (JUNE 30, 2023)**

**Received**

06/30/23 09:04 pm

**Filed**

06/30/23

Liberty Global, Inc.,

      Petitioner

      v.

Commissioner of Internal Revenue

      Respondent

Electronically Filed

Docket No. 341-21

Document No. 35

# Simultaneous Opening Brief



Received                              Filed
06/30/23 09:04 pm                    06/30/23

Liberty Global, Inc.,

      Petitioner

      v.                                    Electronically Filed

Commissioner of Internal Revenue          Docket No. 341-21

      Respondent                            Document No. 35

# Simultaneous Opening Brief

# UNITED STATES TAX COURT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LIBERTY GLOBAL, INC.,

                     Petitioner,

       - v -

COMMISSIONER OF INTERNAL
REVENUE,

                   Respondent.

:

:

:

:   Docket No. 341-21

:   Judge Toro

:   Filed Electronically

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## PETITIONER'S OPENING BRIEF

# TABLE OF CONTENTS

FACTUAL BACKGROUND ....................................................................4

    I.      The J:COM Sale .................................................................4

    II.    Respondent's Notices of Deficiency ...................................6

LEGAL FRAMEWORK.......................................................................8

    I.      The Foreign Tax Credit, Section 904, and OFLs ................8

    II.    The Operative Statute: Section 904(f)(3)(A)(i) ................10

    III.   OFL Sourcing Regulations in Force in 2010 ....................12

    IV.   2012 Overhaul of Treasury Regulation Section 1.904(f)-2(d) ..........13

ARGUMENT......................................................................................14

    I.      Statutory Language Caps the Amount of Gain Recognized on the J:COM Sale at the Amount of LGI's OFL Account.....................17

          A.    The Plain and Ordinary Meaning of Section 904(f)(3)(A)(i) Limits the Gain Recognized by LGI on the J:COM Sale to the Balance of its OFL Account. ...............18

          B.    Respondent's Reading of the Statute Would Create Separate Rules for Recognition and Nonrecognition Transactions, Contravening Statutory Definitions and the Rule That Words in a Statute Have a Single Meaning.............23

               1.    Flaw #1: Respondent's Reading Contradicts the Plain Language of the Statute.......................................24

               2.    Flaw #2: Respondent's Reading Improperly Gives the Same Words Two Separate Meanings. ....................26

               3.    Flaw #3: Congress Could Have, But Did Not, Create Different Rules for Recognition and Nonrecognition Transactions. ........................................27

II.  Alternatively, The OFL Sourcing Regulations Control and Unambiguously Support LGI's Position. ..........................................28

    A.  If the Court Rejects LGI's Primary Argument, It Should Hold that Section 904(f)(3)(A)(i) Is Ambiguous. ...................29

        1.  Respondent's Reading of Section 904(f)(3)(A)(i) Requires Looking Past the Plain Language of the Statute, Necessarily Creating Ambiguity. ....................29

        2.  Section 904(f)(3)(A)(i) Does Not Clearly Articulate How to Source Income. ................................32

    B.  Treasury Regulation Section 1.904(f)-2(d)(1) Mandates that All Gain from the J:COM Sale Is Foreign-Source Income. ..................................................................................34

    C.  The 2012 Amended Regulations Objectively Demonstrate that the Regulations Applicable to the J:COM Sale Support LGI's Position. .....................................37

    D.  Respondent Cannot Disavow Its Own Regulations ................41

III.  Alternatively, if the Court Agrees With Respondent on the Income-Sourcing Question, LGI Elects to Deduct its Foreign Taxes for the 2010 Tax Year...........................................................44

CONCLUSION ......................................................................................44

ii

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Abdel-Fattah v. Commissioner*,
134 T.C. 190 (2010)...................................................................22

*Alumni Association of University of Oregon, Inc. v. Commissioner*,
71 T.C.M. (CCH) 2093 (1996)...................................................40

*American National Bank & Trust Co. v. United States*,
594 F.2d 1141 (7th Cir. 1979)...................................................37

*B.C. Cook & Sons, Inc. v. Commissioner*,
65 T.C. 422 (1975),
*aff'd*, 584 F.2d 53 (5th Cir. 1978), *nonacq.* 1977-2 C.B. 2 .........27

*Bittner v. United States*,
143 S. Ct. 713 (2023)................................................................41

*Bowen v. Georgetown University Hospital*,
488 U.S. 204 (1988)..................................................................40

*Burleson v. Commissioner*,
68 T.C.M. (CCH) 288 (1994)....................................................42

*Byrne v. Commissioner*,
84 T.C.M. (CCH) 704 (2002)....................................................42

*Carpenter Family Investments, LLC v. Commissioner*,
136 T.C. 373 (2011)..................................................................29

*Cisneros v. Alpine Ridge Group*,
508 U.S. 10 (1993)...............................................................20, 21

*Clayton v. Commissioner*,
52 T.C. 911 (1969)....................................................................20

iii

*Commissioner v. Lundy*,
    516 U.S. 235 (1996)...................................................................27

*Consumer Product Safety Commission v. GTE Sylvania, Inc.*,
    447 U.S. 102 (1980)...................................................................40

*Dixon v. Commissioner*,
    141 T.C. 173 (2013)...................................................................42

*Dover Corp. v. Commissioner*,
    122 T.C. 324 (2004)...................................................................42

*Falconwood Corp. v. United States*,
    422 F.3d 1339 (Fed. Cir. 2005) ................................................37

*Field v. Napolitano*,
    663 F.3d 505 (1st Cir. 2011) .....................................................20

*Food Marketing Institute v. Argus Leader Media*,
    139 S. Ct. 2356 (2019)..............................................................18

*General Dynamics Corp. v. Commissioner*,
    108 T.C. 107 (1997).............................................................35, 37

*Gould v. Gould*,
    245 U.S. 151 (1917)...................................................................37

*Guggenheim v. Commissioner*,
    24 B.T.A. 1181 (1931),
    *aff'd on this point and rev'd on other grounds*,
    58 F.2d 188 (2d Cir. 1932)........................................................37

*Hassett v. Welch*,
    303 U.S. 303 (1938)...................................................................37

*Home Concrete & Supply, LLC v. United States*,
    634 F.3d 249 (4th Cir. 2011).....................................................38

*Honeywell Inc. v. Commissioner*,
    87 T.C. 624 (1986)....................................................................43

*Jewell v. United States*,
    749 F.3d 1295 (10th Cir. 2014)...................................................22

*Kingdomware Technologies v. United States*,
    579 U.S. 162 (2016)...................................................22

*Knight v. Commissioner*,
    552 U.S. 181 (2008)...................................................27

*Larson v. Commissioner*,
    66 T.C. 159 (1976)...................................................37

*Loughrin v. United States*,
    573 U.S. 351 (2014)...................................................36

*Mayo Foundation for Medical Education & Research v. United States*,
    562 U.S. 44 (2011)...................................................29

*Mills Music, Inc. v. Snyder*,
    469 U.S. 153 (1985)...................................................27

*Montgomery v. Commissioner*,
    122 T.C. 1 (2004)...................................................42

*National Credit Union Administration Board v.*
    *Nomura Home Equity Loan, Inc.*,
    764 F.3d 1199 (10th Cir. 2014)...................................................29

*National Federation of Independent Business v. Sebelius*,
    567 U.S. 519 (2012)...................................................23

*Pennsylvania Medical Society v. Snider*,
    29 F.3d 886 (3d Cir. 1994)...................................................40

*Phillips v. Commissioner*,
    88 T.C. 529 (1987),
    *modified*, 851 F.2d 1492 (D.C. Cir. 1988)...................................................41

v

*Rauenhorst v. Commissioner,*
   119 T.C. 157 (2002)...................................................................42

*SEC v. Chenery Corp.,*
   332 U.S. 194 (1947)...................................................................41

*Transco Exploration Co. v. Commissioner,*
   95 T.C. 373 (1990),
   *aff'd*, 949 F.2d 837 (5th Cir. 1992) .........................................43

*Union Carbide Corp. v. Commissioner,*
   110 T.C. 375 (1998)...................................................................37

*United States v. Capers,*
   61 F. 3d 1100 (4th Cir. 1995).....................................................38

*United States v. Vogel Fertilizer Co.,*
   445 U.S. 16 (1982).....................................................................37

*United States ex rel. Accardi v. Shaugnessy,*
   347 U.S. 260 (1954)...................................................................42

*Woods Investment Co. v. Commissioner,*
   85 T.C. 274 (1985),
   *acq.* 1986-2 C.B. 1 ..............................................................42, 43

*Wright v. Federal Bureau of Prisons,*
   451 F.3d 1231 (10th Cir. 2006)..................................................29

*Xilinx Inc. v. Commissioner,*
   125 T.C. 37 (2005)...............................................................37, 41

## STATUTES & REGULATIONS

I.R.C. § 61 ........................................................................................8

I.R.C. § 78 ......................................................................................44

I.R.C. § 861 ......................................................................................8

I.R.C. § 862 .................................................................................8

I.R.C. § 863 .................................................................................8

I.R.C. § 865 .................................................................................8

I.R.C. § 884(f) .............................................................................9

I.R.C. § 901 ...............................................................................44

I.R.C. § 902 ...............................................................................44

I.R.C. § 904 .................................................................................6

I.R.C. § 904(a) .............................................................................8

I.R.C. § 904(f) .......................................................................9, 25

I.R.C. § 904(f)(1) ...................................................................9, 11

I.R.C. § 904(f)(3) ...............................................................passim

I.R.C. § 904(g) .............................................................................9

I.R.C. § 1001 ......................................................................passim

I.R.C. § 1248 .........................................................................6, 34

I.R.C. § 7805(b) .........................................................................40

Revenue Act of 1918,
    Pub. L. No. 65-254, 40 Stat. 1057 (1919)....................................8

Treas. Reg. § 1.901-1(d)(1) ......................................................44

Treas. Reg. § 1.904(f)-2 ............................................................13

Treas. Reg. § 1.904(f)-2(d)(1) (2010)...............................passim

Treas. Reg. § 1.904(f)-2(d)(3) (2010)........................................36

Treas. Reg. § 1.904(f)-2(d)(3)(ii) (2012) ........................................................ 14, 39

Treas. Reg. § 1.904(f)-2(d)(4) (2010) ............................................................. 26, 36

Treas. Reg. § 1.904(f)-2(d)(4) (2012) ............................................................. 26

Treas. Reg. § 1.904(f)-2(e) (2012) ................................................................. 14, 41

## OTHER AUTHORITIES

Black's Law Dictionary (11th ed. 2019) ......................................................... 20

Chief Counsel Notice CC-2003-014 (May 8, 2003) ....................................... 42

Merriam-Webster Dictionary, https://www.merriam-webster.com/ ................ 20

Staff of the Joint Comm. on Tax'n, 94th Cong.,
    General Explanation of the Tax Reform Act of 1976,
    H.R. 10612, Public Law 94-455 ............................................................... 10

T.D. 8153, 1987-2 C.B. 174 .......................................................................... 12

T.D. 9595, 2012-30 I.R.B. 71 ...................................................................... 13, 40

## INTRODUCTION

This case relates to the tax treatment of a straightforward business transaction that Liberty Global, Inc. ("LGI")[1] entered into in its taxable year ending December 31, 2010 (the "2010 Tax Year"). As detailed below, the deficiencies determined by Respondent must be rejected pursuant to (1) the plain language of the governing statute and (2) the plain language of the applicable regulations.

In 2010, LGI sold its longstanding investment in a Japanese telecommunications company, Jupiter Telecommunications Co. Ltd. ("J:COM"), to an unrelated foreign corporation (the "J:COM Sale"). At the time of the J:COM Sale, J:COM was a controlled foreign corporation ("CFC") and LGI had an overall foreign loss ("OFL") account. Accordingly, section 904(f)(3) undisputedly applies to the J:COM Sale, and that provision and the regulations thereunder determine the amount and source of LGI's gain.[2]

Section 904(f)(3)(A)(i) establishes bespoke rules for determining the amount and source of income realized when a taxpayer (1) has an OFL balance and (2)

---

[1] Petitioner, LGI, is the successor-in-interest to another corporation named Liberty Global, Inc. (the "Former LGI"), which was in existence in the 2010 Tax Year. In this motion, we refer to LGI and the Former LGI interchangeably.

[2] All "section" references are to the Internal Revenue Code of 1986, as amended and in effect for the applicable tax years at issue (the "Code"). All citations to Treasury Regulations are to the regulations in force and effect for LGI's 2010 Tax Year, unless otherwise stated.

disposes of specified types of property ("Qualified Property"). And importantly, section 904(f)(3)(A)(i), by its explicit terms, determines the amount and source of income "notwithstanding" any other provisions of Chapter 1 of the Code. That is, section 904(f)(3)(A)(i) overrides nonrecognition provisions such as section 351 and recognition provisions such as section 1001. In place of those general taxable income rules, section 904(f)(3)(A)(i) mandates that taxpayers in LGI's position that sell CFC stock "shall" recognize taxable income in "an amount equal to the lesser of" (1) the built-in gain in the CFC stock or (2) the taxpayer's OFL account balance. Thus, and as detailed below, a plain and ordinary reading of the operative statute dictates that LGI is required to report income from the J:COM Sale equal to its OFL account balance—no more and no less. Decision should be entered for LGI on that basis alone.

Alternatively, Respondent's position is also wrong for a second reason. Even if the statute were ambiguous (and it is not), then Respondent's position must be rejected as contrary to the controlling Treasury Regulations. Specifically, Treasury Regulation section 1.904(f)-2(d)(1) mandates that where "a taxpayer disposes of property used or held for use predominantly without the United States" (like the J:COM CFC stock) and the taxpayer has an OFL account, three things **must** happen:

- "gain **will** be recognized on the disposition" (even if the transaction would otherwise be a nonrecognition transaction);

- "the applicable [OFL] account **shall** be recaptured";

- and the "gain **will** be treated as foreign source income."

Treas. Reg. § 1.904(f)-2(d)(1) (emphasis added). That regulation directly conflicts with Respondent's position in this case, which relies on treating the vast majority of LGI's income from the J:COM Sale as foreign-source income. Under Respondent's own rules, all gain recognized on the J:COM Sale "**will be treated as foreign source income**." *Id.* (emphasis added).

Respondent's contrary arguments are meritless. *First*, Respondent argues that section 904(f)(3) unambiguously supports its view that only a portion of LGI's gain is foreign-source income, leaving no room for consideration of its regulations. To the extent that the Court rejects LGI's interpretation of that statute, however, section 904(f)(3) must be ambiguous. Indeed, Respondent's reading of the statute necessarily creates questions not answered under the plain language of the Code. And, in that case, Treasury's regulations on this point control, and those regulations unambiguously support LGI.

*Second*, Respondent argues that the applicable regulations should be read as capping the amount of the gain treated as foreign-source income at the amount of the OFL account. But the regulations in force in 2010 contained no such language,

and Treasury had to substantially re-write the regulations in 2012 to effect that change.

For those reasons, and as detailed below, Respondent's adjustments must be rejected in full, and a decision should be entered in LGI's favor.

## FACTUAL BACKGROUND

### I.    The J:COM Sale

LGI is a domestic corporation and the ultimate United States parent of an affiliated group of U.S. and foreign corporations (the "LGI Global Group").[3]  LGI and its affiliated U.S. corporations (the "LGI Consolidated Group") file a consolidated U.S. federal income tax return and are referred to as the "LGI Consolidated Group."[4]  At all relevant times, the LGI Global Group operated one of the world's leading converged video, broadband, and communications businesses.[5]

In 1995, LGI's predecessor, Tele-Communications International, Inc., formed J:COM as a joint venture with Sumitomo Corporation, an unrelated Japanese corporation.[6]  During the relevant tax years, J:COM operated a

---

[3]  First Stipulation of Facts ¶ 2 ("Stipulation"), Dkt. 31.

[4]  For simplicity, we sometimes refer to the LGI Consolidated Group as simply "LGI."

[5]  Stipulation ¶ 4.

[6]  Stipulation ¶¶ 11-12.

telecommunications business in Japan.[7]  By 2010, J:COM grew to be a leading

provider of wireless telephone, cable, and internet services in Japan.[8]  LGI owned,

directly and indirectly, a 58.13% share of J:COM.  Thus, J:COM was a CFC.[9]

In 2010, LGI decided to exit the Japanese market by selling its interest in

J:COM.[10]  That was purely a business decision.  As LGI announced at the time,

LGI decided to sell J:COM because "[e]xiting the Japanese market at a substantial

premium allows us to redirect our capital into more strategic consolidation

opportunities in our core markets as well as our ongoing stock buyback

initiatives."[11]

On February 18, 2010, the LGI Consolidated Group sold its interest in

J:COM to KDDI Corporation, an unrelated foreign corporation, for

$3,961,608,988.[12]  As a result of the J:COM Sale, the LGI Consolidated Group

recognized gain of $3,256,557,143 on its 2010 U.S. federal income tax return.[13]

Specifically, LGI reported that gain as follows:

---

[7]  Stipulation ¶ 13.

[8]  Petition ¶ 5.(g), Dkt.1.

[9]  Stipulation ¶ 31.

[10]  Stipulation ¶ 33.

[11]  Liberty Global, Inc., Ex. 99.1 to Current Report (Form 8-K) (Jan. 25, 2010).

[12]  Petition ¶ 5.(i); Answer ¶ 5.(i), Dkt. 6.

[13]  Stipulation ¶ 41.

- $438,135,179 was treated as a dividend under section 1248. The parties agree that the first $438,135,179 of any gain recognized by LGI is properly treated as a dividend.[14]

- The remaining $2,818,421,964 was reported as foreign-source income, pursuant to the Treasury Regulations in force at the time of the J:COM Sale.[15]

## II.    Respondent's Notices of Deficiency

On October 30, 2020, Respondent mailed to LGI statutory notices of deficiency for the 2010 Tax Year and the tax year ended December 31, 2014 (the "2014 Tax Year") (collectively, the "Notices of Deficiency").[16]  The deficiencies determined by Respondent are the result of two premises:

- *First*, Respondent takes the position that more than $2.3 billion of the $2.8 billion in non-dividend gain should be treated as U.S.-source income rather than foreign-source income.  As a consequence of that position, Respondent determined that section 904 applied to limit LGI's foreign tax credit, reducing such credit by $241,791,309 and $2,014,291 for the 2010 Tax Year

---

[14] Petition ¶ 5.(k); Answer ¶ 5.(k).

[15] Stipulation ¶ 42.

[16] Stipulation ¶¶ 5, 7.

and 2014 Tax Year, respectively.[17]  As discussed in more detail below, that position is contrary to the plain language of the regulations in effect at the time of the J:COM Sale.  Instead, Respondent's determination was based primarily on his position that the regulations are irrelevant and section 904(f)(3)(A)(i) treats only the income up to the amount of LGI's OFL account balance as foreign-source income.

- *Second*, Respondent's adjustment assumes that LGI is required to include in income for its 2010 Tax Year the full $3.2 billion of gain that would be recognized under the rules of section 1001 of the Code.

To be clear, LGI did report the full $3.2 billion of gain on its 2010 consolidated tax return.  In so doing, LGI simply followed the rules in the extant Treasury Regulations.  However, in light of Respondent's reliance on the statute, LGI has since reviewed section 904(f)(3)(A)(i) more closely.  As described below, the clear and ordinary meaning of the text of that provision sets a mandatory cap on the amount of gain LGI recognized on the J:COM Sale.  LGI was required to report taxable income equal to the balance of its OFL account—no more and no less.

---

[17] Stipulation ¶¶ 6, 8.

## LEGAL FRAMEWORK

### I.    The Foreign Tax Credit, Section 904, and OFLs

Domestic corporations, such as LGI, are subject to U.S. federal income tax on their worldwide income.  This includes both income derived from sources within the United States ("U.S.-source income") and income derived from sources without the United States ("foreign-source income").[18]

Although the United States subjects both U.S.-source income and foreign-source income to tax, since 1918 the United States has allowed certain foreign taxes paid or accrued or deemed paid by a taxpayer to be taken as a credit against U.S. federal tax.[19]  Broadly speaking, however, a taxpayer may not claim a credit for foreign income taxes in an amount that exceeds the U.S. tax imposed on such income.  Mechanically, this is achieved by section 904(a), which limits the foreign tax credits allowed for any year to the product of the U.S. tax otherwise imposed and a fraction, the numerator of which is the taxpayer's foreign-source taxable income and the denominator of which is the taxpayer's total taxable income.  The rules for determining whether income is U.S.-source or foreign-source are mainly contained in sections 861-863, section 865, and the regulations thereunder.

---

[18] *See* Section 61 ("gross income means all income from whatever source derived").

[19] Revenue Act of 1918, Pub. L. No. 65-254, § 238, 40 Stat. 1057, 1080 (1919).

However, the Code also contains discrete sourcing rules.[20]  One of those rules

applies here, as discussed in more detail below.

Just as taxpayers are subject to tax on foreign-source income, losses from

foreign sources are also taken into account in computing the taxpayer's taxable

income.  If a taxpayer incurs a foreign-source loss that offsets U.S.-source income,

such loss is referred to as an OFL described in section 904(f).[21]  If a taxpayer has

an OFL account, then in subsequent years it may be required to "recapture" some

or all of the OFL account as U.S.-source income—resulting in a reduction of

foreign-source income that can reduce the amount of foreign tax credits that a

taxpayer can use.  More specifically, the amount of foreign-source taxable income

subject to re-characterization is generally the lesser of the total amount of recapture

in all OFL accounts or 50% of the taxpayer's total foreign-source taxable income

for a taxable year (the "General Recapture Rule").[22]

The purpose of the OFL rules is to prevent a taxpayer from offsetting U.S.-

source income in one year, then claiming foreign tax credits on positive foreign-

---

[20] *E.g.*, section 884(f) (treating certain interest paid by a foreign corporation engaged in a trade or business in the United States as U.S.-source income).

[21] A corresponding provision in section 904(g) provides similar rules for overall domestic losses (i.e., when a taxpayer's domestic losses offset foreign-source income).

[22] Section 904(f)(1).

source income in a subsequent year.[23]  For example, a taxpayer that incurs a ($100) OFL in Year 1 and earns $100 of foreign-source income in Year 2 could, absent the OFL rules, claim foreign tax credits with respect to the entire $100 of foreign-source income in Year 2 even though the taxpayer earned zero net foreign-source income over both years combined and, in fact, offset U.S.-source income in Year 1.

## II.     The Operative Statute: Section 904(f)(3)(A)(i)

The key statutory provision in this case is section 904(f)(3)(A)(i).  While embedded within a statute primarily about income-sourcing and OFLs, that provision does far more.  As described below, section 904(f)(3)(A)(i) establishes a rule to determine the amount of gain recognized on the J:COM Sale and the source of any such gain.  And that rule overrides all other income recognition and sourcing rules.

To accomplish this result, sections 904(f)(3)(A) and 904(f)(3)(A)(i) provide the following:

> For purposes of this chapter, if property which has been used predominantly without the United States in a trade or business is disposed of during any taxable year . . . the taxpayer, notwithstanding any other provision of this chapter (other than [section 904(f)(1)]), shall be deemed to have received and recognized taxable income from sources without the United States in the taxable year of the disposition, by reason of such disposition, in an amount equal to the lesser of the

---

[23] *See* Staff of the Joint Comm. on Tax'n, 94th Cong., General Explanation of the Tax Reform Act of 1976, H.R. 10612, Public Law 94-455.

> excess of the fair market value of such property over the taxpayer's adjusted basis in such property or the remaining amount of the overall foreign losses which were not used under [section 904(f)(1)] for such taxable year or any prior taxable year.

This single provision, by its terms, does much work. In particular, this statute overrides all other provisions of Chapter 1 of the Internal Revenue Code (other than section 904(f)(1)) and creates new rules for both the **source** of gain on qualifying "dispositions" and the **amount** of gain recognized on such dispositions. Moreover, this statute applies to both recognition and nonrecognition transactions. Indeed, for purposes of section 904(f)(3), "disposition" is defined to include "a sale, exchange, distribution, or gift of property **whether or not gain is recognized on the transfer**."[24]

The rationale for Congress's mandate that gain on these "dispositions" be treated as foreign-source income is simple: treating such gain as foreign-source income facilitates the last-chance recapture of a taxpayer's OFL. In so doing, Congress overrode Code provisions that otherwise might treat the income as U.S.-source income (and therefore not eligible to reduce the taxpayer's OFL).

It is also clear, however, that section 904(f)(3)(A)(i) overrides other provisions of the Code dealing with the **amount** of gain recognized. As discussed above, that provision provides rules for both recognition and nonrecognition

---

[24] Section 904(f)(3)(B)(i) (emphasis added).

transactions.  For both types of transactions, section 904(f)(3)(A)(i) mandates that the taxpayer "**shall** be deemed to have received and **recognized taxable income** from sources without the United States."[25]  Thus, the statute overrides other provisions of Chapter 1 of the Code that would make a disposition a nonrecognition event, such as section 351, with the effect that "taxable income [is] recognized solely by reason of [section 904(f)(3)(A)]."[26]

In lieu of those general rules, dispositions to which section 904(f)(3)(A)(i) applies give rise to taxable income "in an amount equal to the lesser of the excess of the fair market value of such property over the taxpayer's adjusted basis in such property or the remaining amount of the overall foreign losses" of the taxpayer.[27]  This statutory rule applies equally to any disposition, whether that disposition would otherwise be a taxable or nontaxable transaction.

### III.   OFL Sourcing Regulations in Force in 2010

In 1987, Treasury issued regulations implementing and interpreting the statutory OFL recapture rules.[28]  In all respects material to this case, those same rules remained in force and effect at the time of the J:COM Sale.  Those regulations include a section that specifically creates rules for "dispositions" under

---

[25] (Emphasis added).

[26] Section 904(f)(3)(B)(ii).

[27] Section 904(f)(3)(A)(i).

[28] *See* T.D. 8153, 1987-2 C.B. 174.

section 904(f)(3): Treasury Regulation section 1.904(f)-2(d) (the "OFL Sourcing Regulations").

The OFL Sourcing Regulations provide a variety of detailed rules related to dispositions of Qualified Property.  Most importantly for this case, the OFL Sourcing Regulations are unambiguous as to the source of any gain recognized under section 904(f)(3).  For transactions to which those regulations are applicable—including the J:COM Sale—three things must occur: (1) gain will be recognized on the disposition of such Qualified Property; (2) **such gain will be treated as foreign-source income** subject to the same limitation as the income the property generated; and (3) the OFL account will be recaptured as provided in regulations.[29]

## IV.  2012 Overhaul of Treasury Regulation Section 1.904(f)-2(d)

In 2012—months after learning of the J:COM Sale and LGI's position that its gain from that sale is foreign-source income—Treasury re-wrote the OFL Sourcing Regulations.[30]  In particular, Treasury amended Treasury Regulation section 1.904(f)-2(d)(1) to impose a limit on the amount of gain resourced as foreign-source income (the "2012 Amended Regulations").

---

[29] Treas. Reg. § 1.904(f)-2(d)(1).

[30] The changes to Treasury Regulation section 1.904(f)-2 were promulgated in June 2012, approximately sixteen months after the J:COM sale.  T.D. 9595, 2012-30 I.R.B. 71.

In the 2012 Amended Regulations, Treasury modified Treasury Regulation section 1.904(f)-2(d)(1) to delete the exact language at the heart of this dispute. In particular, the 2012 Amended Regulations no longer state that "such gain will be treated as foreign source income subject to the same limitation as the income the property generated." In addition, Treasury substantially revised Treasury Regulation section 1.904(f)-2(d)(3)(ii) by adding a new paragraph to specifically limit the amount of gain that can be treated as foreign-source income: "The amount of gain treated as foreign source and the amount of overall foreign loss recaptured shall be the lesser of the balance in the overall foreign loss account or the full amount of the gain recognized on the disposition."

The changes made in the 2012 Amended Regulations were effective only prospectively, and therefore those regulations are inapplicable to the J:COM Sale (which occurred in 2010).[31]

## ARGUMENT

The deficiencies proposed in the Notices of Deficiency must be rejected, and LGI's position should be sustained based on: (1) the plain language of section 904(f)(3)(A); or (2) the plain language of Treasury Regulation section 1.904(f)-2(d). Respondent's proposed deficiencies are based on two key premises, each of which is wrong.

---

[31] Treas. Reg. § 1.904(f)-2(e) (2012).

*First*, Respondent's position is incorrectly premised on the position that LGI was required to report gain on the J:COM Sale under the rules of section 1001—i.e., that LGI has income equal to the amount realized less its adjusted basis in its J:COM stock.  Respondent is wrong.  Section 904(f)(3)(A)(i) creates a mandatory, distinct rule for income-recognition applicable to the J:COM Sale.  That rule overrides all other income-recognition rules of Chapter 1 of the Code—including section 1001.  And the plain and ordinary meaning of section 904(f)(3)(A)(i) requires that LGI's gain is limited to the balance of its OFL account, or $474 million.[32]  Accordingly, LGI is entitled to reduce its income in the 2010 Tax Year by nearly $2.8 billion.[33]

*Second*, Respondent incorrectly asserts that, if LGI is required to recognize that additional $2.8 billion in income, the full amount is treated as U.S.-source income.  If the Court determines that section 904(f)(3)(A)(i) does not cap LGI's income at its OFL account balance, however, the statute is necessarily ambiguous.  Such a reading by the Court would mean that there are gaps in the statute as to the amount and source of any income recognized.  Treasury's regulations then properly operate to fill the statutory gap, and the regulations in force in 2010

---

[32] As of the beginning of the 2010 Tax Year, LGI had an OFL account balance of $474,372,166.  Stipulation ¶ 40.

[33] LGI reported gain of 3,256,557,143 on its 2010 consolidated income tax return, which would be reduced by $2,782,184,977 to $474,372,166.

unambiguously provide that if a taxpayer disposes of property used in a trade or business outside the United States, the taxpayer will recognize gain and "**such gain will be treated as foreign source income**."[34]  Consequently, the full amount of LGI's gain from the J:COM Sale—including all $2.8 billion in excess of its OFL account balance—must be treated as foreign source income.

Respondent's attempts to avoid the result compelled by the extant regulations are meritless.  Respondent points to the "clarification" offered by the 2012 Amended Regulations, but those rules have only prospective effect and the substantial changes made in those regulations objectively demonstrate that Treasury was changing the law.  Finally, even if Respondent believes the OFL Sourcing Rules in effect were bad policy, binding precedent of this Court and other courts would treat the applicable Treasury Regulations as an admission that Respondent is bound to follow.  For all those reasons, all gain from the J:COM Sale must be treated as foreign-source income and Respondent's adjustments must be rejected in full.

Finally, if the Court agrees with Respondent on the first two points and treats a portion of the gain from the J:COM Sale as foreign-source income, LGI elects to deduct its foreign taxes for the 2010 Tax Year.  That election will reduce

---

[34] Treas. Reg. § 1.904(f)-2(d)(1) (emphasis added).

LGI's taxable income for the 2010 Tax Year, and Respondent's determinations in his Notices of Deficiency must be rejected to that extent.

### I. Statutory Language Caps the Amount of Gain Recognized on the J:COM Sale at the Amount of LGI's OFL Account.

The parties agree that section 904(f)(3)(A)(i) is the critical statute in this case. The plain and ordinary meaning of the text of that statute mandates that LGI's gain from the J:COM Sale is limited to the amount of its OFL account. Accordingly, LGI is entitled to reduce its gain from the J:COM Sale by approximately $2.8 billion to $474 million—the balance of LGI's OFL account.[35] If the Court agrees with LGI on this point, then the reduction in LGI's income would result in a reduction of foreign tax credits for 2010 and 2014 as proposed in the Notices of Deficiency.[36]

As detailed below, LGI's interpretation of the statute is supported by core principles of statutory construction. Indeed, LGI's position is compelled by the plain and ordinary meaning of the statutory text, which is dispositive. In contrast,

---

[35] Stipulation ¶40.

[36] Respondent's disallowance of foreign tax credits in the Notices of Deficiency is based on his position that gain realized on the J:COM Sale in excess of LGI's OFL account balance should be treated as U.S.-source income, leaving LGI with inadequate foreign-source income to claim such credits under section 904. Under LGI's primary position, it would have no income in excess of its OFL account, and it would therefore agree that section 904 limits its foreign tax credit capacity for the 2010 and 2014 Tax Years.

Respondent's argument improperly creates different rules for recognition and nonrecognition transactions, which cannot be reconciled with the fact that the language of the statute explicitly treats both types of transactions (recognition and nonrecognition) the same way. It also flies in the face of the principle that identical words in a statutory regime must be given the same meaning.

A.      The Plain and Ordinary Meaning of Section 904(f)(3)(A)(i) Limits the Gain Recognized by LGI on the J:COM Sale to the Balance of its OFL Account.

"In statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself. Where . . . that examination yields a clear answer, judges must stop."[37] Here, the ordinary meaning of the text of section 904(f)(3)(A)(i) yields only one result: that statute establishes the amount of income that must be recognized on dispositions like the J:COM Sale and dictates that LGI's gain cannot exceed the balance of its OFL account.

To start, we review the statutory text:

[I]f property which has been used predominantly without the United States in a trade or business is disposed of during any taxable year—

(i) the taxpayer, **notwithstanding any other provision of this chapter** (other than paragraph (1)), **shall** be deemed to have received and **recognized taxable income** from sources without the United States in the taxable year of the disposition, by reason of such disposition, **in an amount equal to the lesser of the excess of the fair market value of**

---

[37] *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019) (citation omitted).

**such property over the taxpayer's adjusted basis in such property or the remaining amount of the overall foreign losses** which were not used under paragraph (1) for such taxable year or any prior taxable year . . . .[38]

The plain meaning of Congress's words supports LGI's reading of the statute.

*First*, the statute controls when two conditions are met: (1) the taxpayer has an OFL account balance; and (2) there is a disposition of property used predominantly outside the United States in a trade or business (including CFC stock). Both conditions are undisputedly satisfied in this case. Thus, section 904(f)(3)(A)(i) controls the treatment of the J:COM Sale.

*Second*, the statute by its terms establishes a rule for "recogniz[ing] taxable income" from dispositions of Qualified Property (property that includes LGI's J:COM stock). In using these words, Congress unambiguously established that this provision is a taxation provision. Indeed, although embedded within a statute primarily about foreign-source income and limitations on foreign tax credits (section 904), this particular provision undisputedly mandates reporting of taxable income. For example, and as discussed in detail below, Respondent agrees that this provision mandates the recognition of taxable income with respect to transactions that otherwise would be nonrecognition transactions under the Code.[39]

---

[38] Section 904(f)(3)(A)(i) (emphasis added).

[39] *See infra* p. 25.

19

Consequently, the same provision (i.e., section 904(f)(3)(A)(i)) must also be a provision mandating the reporting of taxable income for transactions that would otherwise recognize taxable income.

*Third*, the rule in section 904(f)(3)(A)(i) applies "notwithstanding any other provision of [Chapter 1 of the Code] (other than [section 904(f)(1)])." By making this rule apply "notwithstanding" other Code provisions, Congress created a statute that establishes how gain is recognized for qualifying dispositions "in spite of" any other rule.[40] Indeed, the Supreme Court has noted that "the use of such a 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section."[41] As discussed above, section 904(f)(3)(A)(i) provides a rule regarding the recognition of taxable income and prescribes the precise amount that must be recognized. Any other provision in Chapter 1 of the Code that would provide for a different amount of income recognition is a "conflicting provision" that section

---

[40] Black's Law Dictionary (11th ed. 2019); Merriam-Webster Dictionary, https://www.merriam-webster.com/. *Cf. Carcieri v. Salazar*, 555 U.S. 379, 388 (2009) (using dictionary definitions to determine ordinary meaning of a word not expressly defined in the statute).

[41] *Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993). *See also Field v. Napolitano*, 663 F.3d 505, 511 (1st Cir. 2011) (citing *Cisneros*); *Clayton v. Commissioner*, 52 T.C. 911, 913 (1969) (holding that section 1245, which requires gain recognition notwithstanding any other provision of the relevant subtitle of the Code, "overrides section 337 with the consequence that the gain involved must be recognized").

904(f)(3)(A)(i) "override[s]."[42]  Such provisions include section 1001 (which

establishes the default rules for gain recognition) and various provisions of the

Code that make certain transactions nontaxable (e.g., section 351).

*Fourth*, Congress explicitly established how the amount of income

recognized on a qualifying disposition is determined.  Taxable income is "**equal to**

**the lesser of**" two amounts: (1) the excess of the fair market value of the disposed-

of Qualified Property over the taxpayer's adjusted basis in such property; or (2) the

remaining amount of the taxpayer's OFL account.[43]  Congress did not leave room

for any other options.  The amount of income recognized must be one of those

amounts.  Recognition of income in any other amount cannot be reconciled with

the language of section 904(f)(3)(A)(i) (which, to reiterate, overrides section 1001

and other gain recognition rules in the Code).

Finally—and critically—these rules are mandatory.  Congress required that

taxpayers "shall" follow the income-recognition and income-sourcing rules of that

statute.  The Supreme Court, the Tenth Circuit, and this Court have repeatedly held

---

[42] *Cisneros*, 508 U.S. at 18 (1993).

[43] Section 904(f)(3)(A)(i) (emphasis added).

that "[t]he word 'shall' usually connotes a requirement, unlike the word 'may,' which implies discretion."[44]

Taken together, the plain language of section 904(f)(3)(A)(i): (a) creates a rule for income-recognition applicable to the J:COM Sale; (b) displaces any other income-recognition provision in Chapter 1 of the Code; (c) clearly establishes that the amount of gain recognized is equal to the lesser of the taxpayer's OFL account and the built-in-gain of the disposed-of Qualified Property; and (d) establishes that the foregoing rules are mandatory. To illustrate this rule, an example may be helpful. Assume that a taxpayer owns 100% of the stock of a CFC and transfers that stock in exchange for consideration worth $100. Further assume the following facts:

| Attribute | Value |
|---|---|
| Fair Market Value of CFC Stock | $100 |
| Basis in CFC Stock | $20 |
| OFL Account Balance | $50 |

---

[44] *Kingdomware Techs. v. United States,* 579 U.S. 162, 163 (2016); *see also Jewell v. United States*, 749 F.3d 1295, 1298 (10th Cir. 2014) ("Thus, we begin with the meaning of 'shall.' This term indicates a mandatory intent."); *Abdel-Fattah v. Commissioner*, 134 T.C. 190, 207 (2010) (recognizing the mandatory nature of "shall").

In this example, the plain meaning of the statute dictates that the taxpayer will report taxable income of $50, which is the lesser of its OFL balance ($50) and the built-in gain in the CFC stock ($100 fair market value less $20 basis equals $80).

Here, section 904(f)(3)(A)(i) mandates that the taxable income recognized by LGI on the J:COM Sale is equal to $474,372,166—the balance of LGI's OFL account, which is less than the approximately $3.2 billion of gain on the J:COM stock (if section 1001 were applicable).

LGI acknowledges that this results in no tax on approximately $2.8 billion of income that would otherwise be taxed under other provisions of the Code. Respondent will likely argue that Congress did not intend that result in enacting this statute.  However, "the best evidence of Congress's intent is the statutory text."[45]  And the words used by Congress in this statute must be read as establishing—and limiting—the amount of taxable income recognized on the J:COM Sale.

B.    Respondent's Reading of the Statute Would Create Separate Rules for Recognition and Nonrecognition Transactions, Contravening Statutory Definitions and the Rule That Words in a Statute Have a Single Meaning.

Respondent proposes an alternative reading of the governing statute, arguing that the plain language of section 904(f)(3)(A)(i) dictates that (1) LGI must

---

[45] *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 544 (2012); *see also Grajales v. Commissioner*, 156 T.C. 55, 61 (2021) (citing *Nat'l Fed'n of Indep. Bus.*).

recognize the full amount of gain required under section 1001 and (2) that only the portion of that gain up to LGI's OFL account balance is treated as foreign-source income. That argument is flawed. Section 904(f)(3)(A)(i) contains a single rule that establishes the amount of income that must be reported in the disposition of any Qualified Property. Nothing in the statute permits Respondent to apply that rule one way to nonrecognition transactions and a different way to recognition transactions. Indeed, Respondent's position runs afoul of established canons of construction for three reasons detailed below.

1. *Flaw #1: Respondent's Reading Contradicts the Plain Language of the Statute.*

Respondent's reading of section 904(f)(3)(A)(i) is directly contrary to the plain language and structure of the statute. To refresh, the statute provides that: a taxpayer selling Qualified Property "notwithstanding any other provision of this chapter . . . shall be deemed to have received and recognized taxable income from sources without the United States in the taxable year of the **disposition**, by reason of such **disposition**, in an amount equal to the lesser of" the property's built-in gain or the taxpayer's OFL account balance.[46] Critically, Congress made clear on the face of the statute that this single income-recognition rule applies to both recognition transactions and nonrecognition transactions. As emphasized in the

---

[46] Section 904(f)(3)(A)(i) (emphasis added).

quoted language above, this rule applies to any "disposition" of Qualified Property.[47]  And the statute defines a "disposition" for purposes of section 904(f) to mean any "sale, exchange, distribution, or gift of property **whether or not gain or loss is recognized on the transfer**."[48]

In other words, Congress expressly contemplated that section 904(f)(3)(A)(i) would operate in the same way for both recognition and nonrecognition transactions.  Directly contradicting Congress's plain words, Respondent's interpretation of the statute creates two separate rules for nonrecognition and recognition transactions.  To demonstrate Respondent's inconsistency, consider again the example set forth above.[49]  For **nonrecognition** transactions, Respondent would apply section 904(f)(3)(A)(i) to require the taxpayer to recognize $50 of taxable income.  That is, Respondent would require the taxpayer to recognize income "notwithstanding" the Code's default nonrecognition rules (e.g., section 351).[50]  And Respondent would measure the amount of that taxable income using the statute's "lesser of" rule.[51]

---

[47] Section 904(f)(3)(A)(i).

[48] *See* section 904(f)(3)(B)(i) (emphasis added).

[49] *Supra* pp. 22-23.

[50] If this provision did not "turn off" the nonrecognition provisions, the taxpayer's income would be $0.

[51] Indeed, that is the result expressly prescribed for nonrecognition transactions under both the OFL Sourcing Regulations and the 2012 Amended Regulations.

*(cont'd)*

For **recognition** transactions, Respondent applies the same rule to require that the taxpayer recognize $80 of taxable income in the above example—$30 more than for a nonrecognition transaction. There is no textual basis for Respondent's differing results. Respondent would determine the amount of income recognized under section 1001. In so doing, Respondent ignores that section 904(f)(3)(A)(i) applies "notwithstanding" other income-recognition provisions. There is no way to read the text of section 904(f)(3)(A)(i) as turning-off one rule relating to income recognition (section 351) and not another (section 1001).

Respondent's position simply cannot be reconciled with Congress's language. Congress created only one rule, not two. And that statutory rule, read plainly, mandates that the taxpayer will recognize an amount of gain equal to the lesser of the built-in gain or the taxpayer's OFL account.

2. *Flaw #2: Respondent's Reading Improperly Gives the Same Words Two Separate Meanings.*

It is a cardinal canon of statutory construction that where the same words appear multiple times within a statute, those words should be given only a single

_____

*See* Treas. Reg. § 1.904(f)-2(d)(4)(i) (2010); Treas. Reg. § 1.904(f)-2(d)(4)(i) (2012).

26

meaning.[52]  Respondent would completely ignore this principle.  Indeed, Respondent is attempting to give the exact same words (i.e., the operative sentence in section 904(f)(3)(A)(i))—**used only once**—two different meanings.  For that additional reason, Respondent's reading of section 904(f)(3)(A)(i) must be rejected.

###### 3. Flaw #3: Congress Could Have, But Did Not, Create Different Rules for Recognition and Nonrecognition Transactions.

As discussed above, Respondent's position in this case depends on applying section 904(f)(3)(A)(i) differently to recognition transactions than it does to nonrecognition transactions.  Congress had the ability to create two different rules, but it chose to create only one rule applicable to both categories of transactions.  "The fact that [Congress] did not adopt [a] readily available and apparent alternative strongly supports rejecting [Respondent's] reading" of the statute to create that non-adopted alternative.[53]

*      *      *

---

[52] *See, e.g.*, *Commissioner v. Lundy*, 516 U.S. 235, 250 (1996) (articulating the "normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning"); *Mills Music, Inc. v. Snyder*, 469 U.S. 153, 164-65 (1985) ("It is logical to assume that the same word has the same meaning when it is twice used earlier in the same sentence."); *B.C. Cook & Sons, Inc. v. Commissioner*, 65 T.C. 422, 430 (1975) ("Where a phrase is used in different parts of the same statute it will be presumed to have the same meaning throughout."), *aff'd*, 584 F.2d 53 (5th Cir. 1978), *nonacq.* 1977-2 C.B. 2.

[53] *Knight v. Commissioner*, 552 U.S. 181, 188 (2008).

For the reasons set forth above, section 904(f)(3)(A)(i) must be read to mandate that the amount of gain recognized on the J:COM Sale is $474 million—the lesser of LGI's OFL account balance and the built-in gain on its J:COM stock. Thus, the Court should order that LGI is entitled to reduce its taxable income for the 2010 Tax Year, and it need not consider the parties' dispute on the source of a portion of LGI's income.

## II. Alternatively, The OFL Sourcing Regulations Control and Unambiguously Support LGI's Position.

As described above, section 904(f)(3)(A)(i) must be read to limit the gain recognized on the J:COM Sale. Even if the Court were to disagree with this conclusion (and it should not), the adjustments in the Notices of Deficiency must be rejected based on LGI's alternative position: the OFL Sourcing Regulations in force in 2010 unambiguously require that all gain reported on the J:COM Sale must be treated as foreign-source income. On that separate basis, Respondent's adjustments in his Notices of Deficiency must be rejected.

As discussed below, if section 904(f)(3)(A)(i) does not require that LGI's income be limited to the amount of its OFL account balance (LGI's primary argument), then at a minimum that provision is ambiguous. In light of that ambiguity, Treasury was authorized to issue—and the Court must consider—regulations that fill statutory gaps. And the OFL Sourcing Regulations in force in

2010 unambiguously support LGI's position that all gain recognized on the J:COM Sale must be treated as foreign-source income.

A.     <u>If the Court Rejects LGI's Primary Argument, It Should Hold that Section 904(f)(3)(A)(i) Is Ambiguous.</u>

Section 904(f)(3)(A)(i), if not read to limit the income recognized by LGI as discussed above, must be ambiguous. "A statute is ambiguous if it is reasonably 'susceptible to more than one interpretation.'"[54] Here, that ambiguity is demonstrated in two ways.

    *1. Respondent's Reading of Section 904(f)(3)(A)(i) Requires Looking Past the Plain Language of the Statute, Necessarily Creating Ambiguity.*

If Respondent's interpretation of section 904(f)(3)(A)(i) is correct, that provision must be ambiguous. Indeed, Respondent's position requires that several key parts of that statute be disregarded. That alone introduces ambiguity, as it requires one to interpret the provision based on something not clear on the face of the statute.

---

[54] *Nat'l Credit Union Admin. Bd. v. Nomura Home Equity Loan, Inc.*, 764 F.3d 1199, 1226 (10th Cir. 2014) (quoting *Wright v. Fed. Bureau of Prisons*, 451 F.3d 1231, 1235 (10th Cir. 2006)); *see also Carpenter Family Invs., LLC v. Commissioner*, 136 T.C. 373, 391 (2011) ("[T]he ambiguity *Mayo* talks about is not any textual ambiguity per se, but an ambiguity in congressional intent that remains after searching the 'statutory text. . .[for] insight into how Congress intended' the language at issue to apply." (second and third alterations in original (quoting *Mayo Found. for Med. Educ. & Rsch. v. United States*, 562 U.S. 44, 53 (2011)))).

Respondent cannot meaningfully dispute that his interpretation of the statute creates ambiguity in the statutory text and presents significant gaps in how to administer the rule. *First*, Respondent reads section 904(f)(3)(A)(i) to apply very differently for nonrecognition and recognition transactions. Nothing in the statute, however, states that the rule applies differently to recognition and nonrecognition transactions. To the contrary, the operative provision is a single sentence that creates a single rule applicable to all "dispositions." Because the statute provides for one thing (identical treatment for recognition transactions and nonrecognition transactions) and Respondent adopts another reading (disparate treatment), the statute must be susceptible to more than one reading. That demonstrates ambiguity that would need to be resolved through regulations.

*Second*, Respondent's differing applications of the section 904(f)(3)(A)(i) rule to recognition and nonrecognition transactions requires that "notwithstanding" mean one thing for recognition transactions and another for nonrecognition transactions.[55] Words in statutes should not be given more than one meaning, but if they are then the introduction of multiple meanings must create statutory ambiguity.

*Third*, Respondent may also argue that the income-recognition rule in section 904(f)(3)(A)(i) is drafted with only nonrecognition transactions in mind.

---

[55] *Supra* pp. 25-26.

Indeed, the statute does refer to the "deem[ing]" of income and uses "fair market value" of property to measure income. That language makes more sense in the context of nonrecognition transactions; for recognition transactions, income would not be deemed, and income would be measured using amount realized (or purchase price) rather than fair market value. On the other hand, several aspects of the statute make clear that the provision is intended to apply the same way for both recognition and nonrecognition transactions, leaving open the question of how gain should be calculated for recognition transactions. Even if the statute allows gain to be calculated two different ways for recognition and nonrecognition transactions, Congress did not articulate in what way gain should be calculated for recognition transactions.

Critically, this ambiguity must extend to the exact issue that is critical to Respondent's Notices of Deficiency: the sourcing of income from the J:COM Sale. The ambiguities described above regarding the amount of income recognized relate to the interpretation of the statutory requirement that "the taxpayer . . . shall be deemed to have received and recognized taxable income from sources without the United States . . . in an amount equal to the lesser of" the built-in gain in the disposed-of Qualified Property or the taxpayer's OFL account balance. It is undisputed that the exact same language also operates to determine the source of

income from the disposition.[56]  Accordingly, any ambiguity about the amount of income recognized under that provision also is ambiguity as to the source of income.  The two concepts, which are governed by the same statutory language, are inextricably linked.

### 2. *Section 904(f)(3)(A)(i) Does Not Clearly Articulate How to Source Income.*

Section 904(f)(3)(A)(i)'s rules regarding the source of income a taxpayer must recognize on a disposition are ambiguous for a different reason.  In particular, the statute is ambiguous regarding the sourcing of income that exceeds the taxpayer's OFL account balance.  Critically, the sourcing of such "excess" gain is the exact issue that the parties dispute.

To demonstrate this ambiguity, consider the following example based on Example 1 from the OFL Sourcing Regulations.[57]  Assume a taxpayer sells Qualified Property in a recognition transaction and would recognize gain of $1,000 on that sale under section 1001.  Further assume that the taxpayer has an OFL account balance of $500, and that the gain on the sale would be foreign-source income under the default sourcing rules.  Under section 904(f)(3)(A)(i), it is clear that the first $500 of gain—i.e., the amount up to the taxpayer's OFL account

---

[56] *See supra* p. 11.

[57] Treas. Reg. § 1.094(f)-2(d)(7), Ex. 1.

balance—should be treated as foreign-source income.  However, the treatment of the $500 of income that exceeds the taxpayer's OFL account balance is ambiguous.

On the one hand, the remaining $500 of income could be treated as foreign-source income, consistent with non-904(f)(3) sourcing rules.  However, the statutory language could be read to require that the remaining $500 of income be treated as U.S.-source income.  In particular, section 904(f)(3)(A)(i) mandates that the taxpayer "shall" recognize "taxable income from sources without the United States . . . **in an amount equal to** the lesser of" the property's built-in gain or the taxpayer's OFL.[58]  That could be read to mean that the taxpayer in the foregoing example would recognize $500 in foreign-source income and no more—i.e., its foreign-source income would be "an amount equal to" its OFL account balance. And, if the statute is read to limit the taxpayer's foreign-source income to $500, the additional $500 in income must be U.S.-source income.

The OFL Sourcing Regulations deal directly with that ambiguity.  Example 1 of those regulations clarifies that, in such a circumstance, all of the income recognized will be treated as foreign-source income.[59]

---

[58] (Emphasis added).

[59] Treas. Reg. § 1.094(f)-2(d)(7), Ex. 1.

The dispute between the parties in this case is directly analogous. Here, LGI recognized income of approximately $2.8 billion[60] (assuming the Court rejects LGI's primary argument) and had an OFL account balance of approximately $474 million. There is no question that the first $474 million of LGI's income is treated as foreign-source income. The question under this alternative argument is how to source the remaining $2.3 billion that exceeds LGI's OFL. The OFL Sourcing Regulations clarify the result, and they provide that the full amount of income recognized is treated as foreign-source income.

* * *

For the above reasons, section 904(f)(3)(A)(i) is ambiguous as to the sourcing of income from dispositions of Qualified Property. That means that the OFL Sourcing Regulations control this case, and Treasury Regulation section 1.904(f)-2(d)(1) wholly supports LGI's position.

B.    Treasury Regulation Section 1.904(f)-2(d)(1) Mandates that All Gain from the J:COM Sale Is Foreign-Source Income.

Treasury Regulation section 1.904(f)-2(d)(1) unambiguously requires that LGI's gain on the disposition of J:COM must be treated as foreign-source income.

As is relevant here, Treasury Regulation section 1.904(f)-2(d)(1) provides that when section 904(f)(3) is applicable, the gain realized on the disposition of

---

[60] This amount excludes the portion of gain undisputedly treated as a dividend under section 1248.

Qualified Property will be treated as foreign-source income.  Specifically, Treasury

Regulation section 1.904(f)-2(d)(1), as in effect in 2010, provided:

> *In general*.  If a taxpayer disposes of property used or held for use
> predominantly without the United States in a trade or business during
> the taxable year and that property generates foreign source taxable
> income subject to a separate limitation to which [Treas. Reg. § 1.904(f)-
> 2(a)] is applicable, (i) gain will be recognized on the disposition of such
> property, (ii) **such gain will be treated as foreign source income**
> **subject to the same limitation as the income the property**
> **generated**, and (iii) the applicable overall foreign loss account shall be
> recaptured as provided in [Treas. Reg. § 1.904(f)-2(d)(2), (d)(3), and
> (d)(4)].

(Emphasis added).

Respondent does not dispute that this regulation is applicable to the J:COM

Sale.  Instead, he quibbles only with how it should be applied.

Critically, however, the second prong of this test can only be read one

way—the gain "will be treated as foreign source income."  For recognition

transactions, like the J:COM Sale, that means that all gain recognized is foreign-

source income without any cap or limit.  Under basic rules of regulatory

interpretation, that plain language must be given its clear effect.[61]

---

[61] *Gen. Dynamics Corp. v. Commissioner*, 108 T.C. 107, 121 (1997) ("The rules
for interpreting a valid regulation are similar to those governing the interpretation
of statutes.  When construing . . . a regulation, we are to give effect to its plain and
ordinary meaning unless to do so would produce absurd results." (citations
omitted)).

The difference between how Treasury treated recognition transactions and nonrecognition transactions further supports LGI's position.  Treasury explicitly capped the amount of gain treated as foreign-source income in the applicable regulations for nonrecognition transactions.[62]  Treasury incorporated no cap for recognition transactions.[63]  Under general canons of interpretation, that decision to include a cap in one provision and not in the prior section must be presumed to be intentional.[64]

Moreover, Treasury's decision to treat all income from dispositions of Qualified Property as foreign-source income—even the amount exceeding the taxpayer's OFL account balance—was intentional.  Treasury made that rule to address fact patterns like the example in the preceding section.[65]  It adopted a rule that treated such "excess" income as foreign-source income.  And it did not qualify that rule in any way.

---

[62] Treas. Reg. § 1.904(f)-2(d)(4) (2010).

[63] *Compare* Treas. Reg. § 1.904(f)-2(d)(4) (cap included) *with* Treas. Reg. § 1.904(f)-2(d)(3).

[64] *See Loughrin v. United States*, 573 U.S. 351, 358 (2014) ("We have often noted that when 'Congress includes particular language in one section of a statute but omits it in another'—let alone in the very next provision—this Court 'presume[s]' that Congress intended a difference in meaning." (alteration in original)).

[65] *See supra* pp. 32-33; *see also* Treas. Reg. § 1.094(f)-2(d)(7), Ex. 1.

Thus, the plain and unambiguous regulations require that all of the gain from the J:COM Sale be treated as foreign-source income.[66]  To the extent the statute does not control, that is the beginning and end of the analysis.[67]

### C.  The 2012 Amended Regulations Objectively Demonstrate that the Regulations Applicable to the J:COM Sale Support LGI's Position.

Far from supporting Respondent's position, the 2012 Amended Regulations objectively support LGI's position that all income recognized on the J:COM Sale must be treated as foreign-source income.  The 2012 Amended Regulations **do**

---

[66] *See, e.g.*, *Union Carbide Corp. v. Commissioner*, 110 T.C. 375, 384 (1998) ("When the plain language of the . . . regulation is clear and unambiguous, that is where the inquiry should end."); *Xilinx Inc. v. Commissioner*, 125 T.C. 37, 58 (2005) ("[W]e must 'apply the provisions of respondent's regulations as we find them and not as we think they might or ought to have been written.'" (quoting *Larson v. Commissioner*, 66 T.C. 159, 186 (1976))); *Gen. Dynamics*, 108 T.C. at 120 ("Normally, we defer to regulations which 'implement the congressional mandate in some reasonable manner.'" (quoting *United States v. Vogel Fertilizer Co.*, 445 U.S. 16, 24 (1982))).

[67] If there were any doubt as to the interpretation of the OFL Sourcing Regulations applicable to the J:COM Sale (and there is not), such doubt must be resolved in favor of LGI.  *Hassett v. Welch*, 303 U.S. 303, 314 (1938) ("[I]f doubt exists as to the construction of a taxing statute, the doubt should be resolved in favor of the taxpayer."); *Gould v. Gould*, 245 U.S. 151, 153 (1917) ("In case of doubt, [statutes levying taxes] are construed most strongly against the government, and in favor of the citizen."); *Guggenheim v. Commissioner*, 24 B.T.A. 1181, 1192 (1931) ("[D]oubt as to a proper construction . . . must be resolved in favor of the taxpayer" and language "may not be extended by implication or otherwise."), *aff'd on this point and rev'd on other grounds*, 58 F.2d 188 (2d Cir. 1932); *Falconwood Corp. v. United States*, 422 F.3d 1339, 1348 (Fed. Cir. 2005) (following *Gould* in interpreting Reg. § 1.1502-75(d)(2)(ii) in favor of the taxpayer's interpretation); *Am. Nat'l Bank & Tr. Co. v. United States*, 594 F.2d 1141, 1148 (7th Cir. 1979) (construing an estate tax regulation against imposing an "unduly harsh result").

**explicitly** set forth the rule that Respondent seeks to apply to LGI in this case. Those regulations, however, have only prospective effect. And the fact that Treasury needed to completely re-write two key regulatory provisions objectively demonstrates that the 2012 Amended Regulations changed the law from the regulations applicable to the J:COM Sale (i.e., the OFL Sourcing Regulations).

To start, Respondent's position that the 2012 Amended Regulations merely clarified existing law is meritless; those regulations changed the existing law and altered the substantive rights of taxpayers.[68] Prior to the 2012 Amended Regulations, Treasury placed no limit on the amount of gain resourced as foreign-source income in a recognition transaction. To the contrary, those regulations explicitly stated that "such gain" (i.e., all of the gain) was foreign-source income.[69] And, while Treasury did cap the amount of gain and resourcing for nonrecognition transactions in the pre-2012 regulations, it declined to do so for recognition

---

[68] *See also Home Concrete & Supply, LLC v. United States*, 634 F.3d 249, 257 (4th Cir. 2011) ("[W]e are not persuaded by the IRS's argument that the regulation should apply retroactively to this case as a clarification of law established in *Colony* and other cases. . . . Rather, if applied, the regulation would change the law governing the taxpayers' 1999 tax returns and thereby subject the taxpayers to liability to which they would not have been subject under pre-regulation law."); *United States v. Capers*, 61 F. 3d 1100, 1110 (4th Cir. 1995) (declining to apply an amendment to the United States Sentencing Guidelines retroactively because the amendment changed Fourth Circuit law so as to deprive the defendant of a benefit to which he would have been entitled under pre-amendment law).

[69] *Supra* p. 35.

transactions.[70]  Thus, the OFL Sourcing Regulations in force in 2010 must be read to require that all gain recognized on the J:COM Sale is foreign-source income.

In sharp contrast, the 2012 Amended Regulations added the limitation that Respondent seeks to impose in this case: that is, to cap the amount of gain from the J:COM Sale treated as foreign-source income at "the lesser of the balance in the overall foreign loss account or the full amount of the gain recognized on the disposition."[71]  Similarly, Treasury had to delete a substantial portion of paragraph (d)(1) of the regulation and add an entire subparagraph (ii) to paragraph (d)(3) that embodies the rule that Respondent attempts to apply in this case.  These amendments created a different result from the regulations they replaced.  If the 2012 Amended Regulations were applicable to the J:COM Sale, LGI's gain would no longer be all foreign-source (as under the prior regulations) and instead any gain exceeding LGI's OFL balance would be U.S.-source income.

The different results compelled by these two different sets of regulations eviscerate Respondent's argument.  Amended regulations that create different results provide new substantive law, not mere clarity.  The fact that Treasury attempted stated in its Preamble that the 2012 Amended Regulations "clarif[ied]"

---

[70] *Supra* p. 36.

[71] Treas. Reg. § 1.904(f)-2(d)(3)(ii) (2012).

the meaning of the prior regulations is also irrelevant.[72]  Courts should carefully

scrutinize statements that new rules merely clarify existing law.[73]  And courts have

repeatedly stated that "[i]t is at best hazardous to infer the intent of an earlier

Congress from a later one" a principle which logically extends to regulations.[74]

Under this authority, Treasury's post hoc rationalizations carry no weight in

interpreting and applying the plain meaning of the pre-2012 Amended Regulations.

 Finally, Respondent's arguments here are an improper attempt to apply the

2012 Amended Regulations retroactively.[75]  Treasury did not take the position that

the 2012 Amended Regulations could apply retroactively at the time of issuance.

---

[72] *See* T.D. 9595, 2012-30 I,R.B. 71, 71.

[73] *See Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 118 n.13 (1980) ("[S]ubsequent legislative history will rarely override a reasonable interpretation of a statute that can be gleaned from its language and legislative history prior to its enactment."  As a general rule, "[a] mere statement in a conference report of [subsequent] legislation as to what the Committee believes an earlier statute meant is obviously less weighty" than a statement in the amendment itself); *see also Pa. Med. Soc'y v. Snider*, 29 F.3d 886, 900 (3d Cir. 1994) (attributing no value to a House committee report stating that an amendment clarifies prior law when the statement is inconsistent with a logical reading of the earlier version of the statute and with the legislative history of the earlier statute).

[74] *Alumni Ass'n of Univ. of Or., Inc. v. Commissioner*, 71 T.C.M. (CCH) 2093 (1996).

[75] It is well settled that agencies may issue retroactive rules only where "that power is conveyed by Congress in express terms."  *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208 (1988).  While Congress has prescribed some circumstances in which Treasury can make its rules retroactive, none is applicable here.  *See* section 7805(b).

To the contrary, Treasury purported to give the amended regulations only prospective effect.[76]  Respondent is not permitted to argue for retroactive application now; instead, the Court "must judge the propriety of [the agency] action solely by the grounds invoked by the agency."[77]  Neither can Respondent argue that the material, substantive **change** in the law effected in the 2012 Amended Regulations is a mere "clarification" that controls the outcome of cases arising in pre-change years.

Accordingly, the 2012 Amended Regulations do not support Respondent's position.  Instead, the plain language of the 2010 OFL Sourcing Regulations controls, and that language unambiguously resolves the matter in favor of Petitioner.

D. <u>Respondent Cannot Disavow Its Own Regulations</u>

It is well-established that an agency, such as the Internal Revenue Service, cannot argue contrary to its regulations.[78]  Respondent's own administrative

---

[76] Treas. Reg. § 1.904(f)-2(e) (2012).

[77] *SEC v. Chenery Corp.,* 332 U.S. 194, 196 (1947).

[78] *Phillips v. Commissioner*, 88 T.C. 529, 534 (1987) (stating that Respondent "may not choose to litigate against the officially published rulings"), *modified*, 851 F.2d 1492 (D.C. Cir. 1988); *Xilinx Inc. v. Commissioner*, 125 T.C. 37, 55 (2005) (stating that, in asserting authority to make allocations under the transfer pricing regulations without providing a comparability analysis, "respondent's litigating position [was] contrary to his regulations"); *Bittner v. United States*, 143 S. Ct. 713, 733 n.5 (2023) (ruling that Respondent's argument that the petitioner's FBAR
*(cont'd)*

practice is in accord.[79]  Based on this principle, this Court has repeatedly held that

positions in regulations—and other published guidance—are binding on

Respondent.[80]

This is true even where Respondent argues that his regulations lead to

improper results.  For example, in *Woods Investment Co. v. Commissioner*, 85 T.C.

274, 281-82 (1985), *acq.* 1986-2 C.B. 1, this Court considered whether Respondent

---

report was deficient went against its own publicly issued guidance, and that "when
the government . . . speaks out of both sides of its mouth, no one should be
surprised if its latest utterance isn't the most convincing one"); *United States ex
rel. Accardi v. Shaugnessy*, 347 U.S. 260, 267-68 (1954).

[79] *See, e.g.*, Chief Counsel Notice CC-2003-014 (May 8, 2003) ("Chief Counsel
attorneys may not argue contrary to final guidance.").

[80] *See, e.g.*, *Dixon v. Commissioner*, 141 T.C. 173 (2013); *Dover Corp. v.
Commissioner*, 122 T.C. 324, 350 (2004) (determining that respondent was not
permitted to argue against the principles articulated in a valid and outstanding
Revenue Ruling to assert that certain assets were not used in the parent company's
business prior to a deemed liquidation); *Rauenhorst v. Commissioner*, 119 T.C.
157, 170-71 (2002) (holding that Respondent may not argue "against the principles
and public guidance articulated in the Commissioner's currently outstanding
revenue rulings"); *Byrne v. Commissioner*, 84 T.C.M. (CCH) 704, 709 (2002)
(finding Respondent's position regarding the interpretation of certain service
retirement benefits to be "inconsistent with his own ruling positions"); *Burleson v.
Commissioner*, 68 T.C.M. (CCH) 288, 290 (1994) ("Commissioner's decision to
retroactively apply a modification or changed regulation" is reviewed for abuse of
discretion, wherein the "extent the taxpayer relied on the prior position" is a factor
and finding that the taxpayer in this case justifiably relied on a published Revenue
Ruling to deduct certain transportation expenses); *Montgomery v. Commissioner*,
122 T.C. 1, 8 n.3 (2004) ("Recently, by Chief Counsel Notice (CC-2002-043),
reprinted in Tax Notes Today, 2002 TNT 206-13, attorneys working in the Office
of Chief Counsel, Internal Revenue Service, were reminded that the office does not
take positions in litigation that are inconsistent with positions that the
Commissioner has taken in published guidance, including regulations.").

was bound by regulation under section 1502 that, in certain circumstances, resulted in a "double deduction" for taxpayers electing to file consolidated returns. This Court held that it would apply the regulations "as written," and that if the Commissioner believed that the taxpayer erroneously received a "double deduction" contrary to the clear-reflection-of-income purposes of section 1502, then Respondent's remedy was to "use his broad power to amend his regulations."[81] This Court has repeatedly reiterated the same principle in other cases, and has held that *Woods Investment* is "controll[ing]" in cases where Respondent attempts to argue against the clear mandate of his regulations.[82]

As in those cases, Respondent's newfound misgivings about the OFL Sourcing Regulations in force in 2010 are irrelevant. Treasury Regulation section 1.904(f)-2(d)(1) binds Respondent, and those rules must be given effect.

---

[81] *Woods Inv. Co. v. Commissioner*, 85 T.C. 274, 282 (1985), *acq.* 1986-2 C.B. 1. *See also Honeywell Inc. v. Commissioner*, 87 T.C. 624, 635 (1986) (noting "[r]espondent's reliance on cases defining dual purpose property as establishing a 'concept' to override the express language of his regulations is unpersuasive. Section 1.167(a)- 11(d)(3), Income Tax Regs., on its face is comprehensive. . . . Petitioner has not challenged, nor do we, respondent's right to amend the regulations. . . . He cannot, however, achieve this result by . . . judicial intervention." (citing *Woods Inv.*, 85 T.C. at 281-82)).

[82] *Transco Expl. Co. v. Commissioner*, 95 T.C. 373, 383 (1990), *aff'd*, 949 F.2d 837 (5th Cir. 1992).

### III.    Alternatively, if the Court Agrees With Respondent on the Income-Sourcing Question, LGI Elects to Deduct its Foreign Taxes for the 2010 Tax Year.

For all the reasons set forth above, LGI's gain from the J:COM Sale must be treated entirely as foreign-source income.  If the Court determines otherwise—thereby causing the limitation of section 904 to disallow some of LGI's foreign tax credit—then LGI elects to deduct its foreign taxes under section 164(a)(3).[83]  That election can be made at any time prior to the expiration of the period to file a refund claim for LGI's 2010 Tax Year.[84]  It is undisputed that such period remains open.

### <u>CONCLUSION</u>

For the reasons set forth above, decision should be entered for LGI.  First, the plain and ordinary meaning of section 904(f)(3)(A)(i) requires that the gain on the J:COM Sale is equal to—and cannot exceed—the amount of LGI's OFL account balance.  Accordingly, LGI is entitled to reduce its taxable income for 2010.  Second, if the Court decides the statute does not so mandate, then the OFL

---

[83] LGI has claimed foreign tax credits under section 901 and section 902.  For the section 902 credits, this election would cause the reversal of income recognized in the 2010 Tax Year because of the section 78 gross-up.

[84] Treas. Reg. § 1.901-1(d)(1) ("A choice to claim a deduction under section 164(a)(3), rather than a credit under section 901, for foreign income taxes paid or accrued in a particular taxable year can be made within the period prescribed by section 6511(a) or 6511(c), as applicable, for claiming a credit or refund of Federal income tax for that particular taxable year.").

Sourcing Regulations unambiguously require that all gain from the J:COM Sale be treated as foreign-source income.  Accordingly, LGI would be entitled to its claimed foreign tax credits.  Finally, if the Court rejects the first two arguments, then LGI is undisputedly allowed to elect to deduct foreign taxes paid in the 2010 Tax Year.

Respectfully submitted this 30th day of June, 2023.

Rajiv Madan
Skadden, Arps, Slate, Meagher
   & Flom LLP
1440 New York Avenue, N.W.
Washington, DC  20005
(202) 371-7020
Tax Court Bar No. MR1190
raj.madan@skadden.com

Nathan P. Wacker
Skadden, Arps, Slate, Meagher
   & Flom LLP
1440 New York Avenue, N.W.
Washington, DC  20005
(202) 371-7182
Tax Court Bar No. WN0090
nathan.wacker@skadden.com

Counsel for Petitioner, Liberty
Global, Inc.

46

**COMMISSIONER'S SIMULTANEOUS ANSWERING BRIEF, T.C. DOC. 36 (AUG. 11, 2023)**

**Received**

08/11/23 04:54 pm

**Filed**

08/11/23

Liberty Global, Inc.,

       Petitioner

      v.

Commissioner of Internal Revenue

       Respondent

Electronically Filed

Docket No. 341-21

Document No. 36

# Simultaneous Answering Memorandum Brief



**Received**

08/11/23 04:54 pm

**Filed**

08/11/23

Liberty Global, Inc.,

     Petitioner

     v.

Commissioner of Internal Revenue

     Respondent

Electronically Filed

Docket No. 341-21

Document No. 36

# Simultaneous Answering Memorandum Brief

# UNITED STATES TAX COURT

LIBERTY GLOBAL, INC.,       )
                                )

       Petitioner,      )
                                ) Docket No. 341-21

       v.              )
                                ) Judge Toro

COMMISSIONER OF INTERNAL    )
REVENUE,                     )
                                )

       Respondent.    )

---

## SIMULTANEOUS ANSWERING BRIEF FOR RESPONDENT

---

WILLIAM M. PAUL
Acting Chief Counsel
Internal Revenue Service

OF COUNSEL:
KATHRYN F. PATTERSON
Division Counsel
(Strategic Counsel)
JOHN M. ALTMAN
Deputy Division Counsel
(Strategic Counsel)
JOHN A. GUARNIERI
Strategic Litigation Counsel
(Strategic Litigation)

# CONTENTS

Page

PRELIMINARY STATEMENT ...........................................................0

RESPONDENT'S OBJECTIONS TO PETITIONER'S PROPOSED
FINDINGS OF FACT...........................................................................1

ARGUMENT ......................................................................................4

I.    Introduction. ................................................................................4

II.   LGI Fundamentally Misunderstands the Scope and Function of §
904(f)(3)(A)(i)......................................................................................5

III.  LGI's New Primary Argument, that § 904(f)(3)(A)(i) Limits the Gain
Recognition to the OFL Account, is Incorrect........................................10

   A.    Section 904(f)(3)(A)(i) Does Not Contain an Exclusion from
   Income. ...........................................................................................11

   B.    Section 904(f)(3)(A)(i) is Unambiguous. ................................14

      1.   Plain and Ordinary Meaning. ......................................................14

         a)   Deemed Recognition of Taxable Income from Sources Without
         the United States.............................................................................15

         b)   "Notwithstanding" Must be Read in Context. .......................18

   C.    Respondent Treats Recognition and Non-Recognition Transactions
   the Same. ..........................................................................................23

      1.   Respondent's Reading Does Not Contradict the Plain Meaning of §
      904(f)(3)(A)(i).................................................................................23

      2.   Respondent Does Not "Give the Same Words Separate Meanings."......26

      3.   Congress did Enact One Rule and Respondent, not LGI, is Properly
      Implementing that Rule.....................................................................26

- i -

# CONTENTS

Page

D.      The Consequences of LGI's New Primary Position are Unclear, and Seemingly Inconsistent With its Reporting Position. ...........................28

IV.    LGI's Alternative Argument that § 904(f)(3)(A)(i) is Ambiguous is Also Incorrect........................................................................................31

A.      LGI Presents a False Choice. ...................................................31

1.    LGI's Purported Ambiguity is Not Resolved by the Regulations. ...........32

2.    Section 904(f)(3)(A)(i) Only Deems as Foreign Source Taxable Income the Requisite Amount Required to Recapture the OFL Account Under § 904(f)(1). ...................................................34

3.    Respondent is Not Treating Recognition and Non-Recognition Transaction Disparately. ...................................................38

4.    Respondent's Position Does Not Require Looking Past the Plain Language. ...................................................39

5.    Treas. Reg. 1.904(f)-2(d)(1) Does Not Mandate That All the Gain from the Disposition is Foreign Source Taxable Income. .............................40

6.    The Regulations do Not Treat Recognition and Non-Recognition Transactions Differently in the Manner LGI Asserts. .....................................44

7.    Treasury did Not Adopt a Rule Treating Excess Gain in Recognition Transactions as Foreign Source Taxable Income......................46

B.      Respondent does Not Rely on the 2012 Amended Regulations. ..............47

C.      Respondent does Not Disavow Its Own Regulations. .............................48

V.     Petitioner is Permitted to Elect to Deduct its Foreign Taxes Paid. .............49

VI.    Conclusion. ...................................................50

- ii -

# CITATIONS

Page

## Cases

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).....................................................................................................33

*Clayton v. Commissioner*, 52 T.C. 911 (1969) .........................................................20

*Commissioner v. Schleier*, 515 U.S. 323 (1995).........................................................11

*Estate of Keeter v. Commissioner*, 2023 WL 4346009 (11th Cir. 2023)..................12

*Food Marketing Institute v. Argus Leader Media*, 139 S.Ct. 2356 (2019) .............15

*Gen. Dynamics Corp. v. Commissioner*, 108 T.C. 107 (1997)......................... 43, 44

*N.Y. Tr. Co. v. Commissioner*, 68 F.2d 19 (2d Cir. 1933), *aff'd sub nom. Helvering v. N.Y. Tr. Co.*, 292 U.S. 455 (1934)....................................................12

*Nat'l Credit Union Admin. Bd. v. Nomura Home Equity Loan*, *Inc.*, 764 F.3d 1199 (10th Cir. 2014) ............................................................................................32

*Patients Mutual Assistance Collective Corp. v. Commissioner*, 151 T.C. 176 (2018).......................................................................................................... 12, 13

*Pictet Overseas Inc. v. Helvetia Trust*, 905 F.3d 1183 (11th Cir. 2018)..................12

*Radzanower v. Touche & Ross Co.*, 426 U.S. 148 (1976).......................................19

*Williams v. Commissioner*, 151 T.C. 1 (2018).........................................................19

## Internal Revenue Code

I.R.C. §  351 ..............................................................................................................24

I.R.C. §  861 ........................................................................................... 10, 19, 35, 44

I.R.C. §  862 ........................................................................................... 10, 35, 38, 44

# CITATIONS

Page

*I.R.C.* § 863 ................................................................. 10, 19, 35, 44

*I.R.C.* § 864 ................................................................. 10, 19, 35, 44

*I.R.C.* § 865 ....................................................................... passim

*I.R.C.* § 865(a) ....................................................................... 6, 38

*I.R.C.* § 901 ........................................................................ 10, 25

*I.R.C.* § 904 ......................................................................... passim

*I.R.C.* § 904(a) ..................................................................... 15, 25

*I.R.C.* § 904(f) ......................................................................... 5, 6

*I.R.C.* § 904(f)(1) .................................................................. passim

*I.R.C.* § 904(f)(1)(B) ...................................................................... 13

*I.R.C.* § 904(f)(3) .............................................................. 4, 11, 43

*I.R.C.* § 904(f)(3)(A)(i) ........................................................... passim

*I.R.C.* § 904(f)(3)(B)(i) ................................................................. 5, 9

*I.R.C.* § 904(f)(3)(B)(ii) ............................................................. 9, 21

*I.R.C.* § 960 .............................................................................. 17

*I.R.C.* § 1001 .................................................................... passim

**Treasury Regulations**

*Treas. Reg.* § 1.904(f)-2(c) ............................................................ 28

*Treas. Reg.* § 1.904(f)-2(d) ..................................................... passim

*Treas. Reg.* § 1.904(f)-2(d)(1) ............................................. 40, 41, 42, 43

# CITATIONS

<u>Page</u>

*Treas. Reg.* § 1.904(f)-2(d)(1)(i).................................................................41

*Treas. Reg.* § 1.904(f)-2(d)(2)...................................................................41

*Treas. Reg.* § 1.904(f)-2(d)(3).............................................................. 41, 42

*Treas. Reg.* § 1.904(f)-2(d)(4).............................................................. 41, 44

**Other Authorities**

Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* (2012) ................................................................... 12, 13

Black's Law Dictionary (11th Ed. 2019).................................................17

*T.C. Rule* 122(a)...........................................................................................1

*T.C. Rule* 151(e)(3) ....................................................................................1

# UNITED STATES TAX COURT

| | |
|---|---|
| LIBERTY GLOBAL, INC., | ) |
| | ) |
| Petitioner, | ) |
| | ) Docket No. 341-21 |
| v. | ) |
| | ) Judge Toro |
| COMMISSIONER OF INTERNAL | ) |
| REVENUE, | ) |
| | ) |
| Respondent. | ) |

## SIMULTANEOUS ANSWERING BRIEF FOR RESPONDENT

## PRELIMINARY STATEMENT

This case was submitted fully stipulated under Rule 122. The record consists of a stipulation of facts and exhibits. Opening briefs were filed on June 20, 2023. Simultaneous Answering Briefs are due to be filed on or before August 11, 2023.

Docket No. 341-21

## RESPONDENT'S OBJECTIONS TO PETITIONER'S PROPOSED FINDINGS OF FACT

LGI did not include a section "Proposed Findings of Fact" as described and required by Rule 151(e)(3) of the Tax Court's Rules of Practice and Procedure. LGI describes certain facts in a section labeled "Factual Background" that includes facts that have not been admitted, stipulated, established by deposition, or included in the record in some other way. *See*, Rule 122(a) of the Tax Court's Rules of Practice and Procedure. Respondent objects to the following reflected in LGI's "Factual Background" section of its Opening Brief on the grounds that the following statements are either argument (not fact), misstate the record, or are unsupported by the record:

1.      "At all relevant times, the LGI Global Group operated one of the world's leading converged video, broadband, and communications businesses." Objection. Misstates the record. Stip. ¶ 4. states "[d]uring the 2010 Tax Year, LGI, together with other affiliates, operated converged video, broadband, and communications businesses."

2.      "By 2010, J:COM grew to be a leading provider of wireless telephone, cable, and internet services in Japan." Objection. Unsupported by the record. LGI cites its Petition for this proposition. Respondent, in his answer stated:

- 1 -

Docket No. 341-21

"First sentence. Admits J:COM was a broadband provider but denies for lack of sufficient information J:COM operates a "telecommunications business" in Japan. Second sentence. Denies for lack of sufficient information."

3.      "In 2010, LGI decided to exit the Japanese market by selling its interest in J:COM." Objection. Unsupported by the record. There is no evidence in the record to support the statement that "LGI decided to exit the Japanese market." Respondent stipulated that "[o]n January 25, 2010, LGI International, Inc. agreed to sell its entire ownership interest in J:COM to an unaffiliated foreign corporation, KDDI Corporation ("KDDI")." Stip. ¶ 33.

4.      "As LGI announced at the time, LGI decided to sell J:COM because '[e]xiting the Japanese market at a substantial premium allows us to redirect our capital into more strategic consolidation opportunities in our core markets as well as our ongoing stock buyback initiatives.'" Objection. Unsupported by the record. LGI cites to a document, which is not part of the record.

5.      Respondent's position that the gain in excess of the OFL account, and after the application of § 1248 is U.S. source income "is contrary to the plain language of the regulations in effect at the time of the J:COM sale." Objection. Not a statement of fact, this is LGI's argument.

- 2 -

Docket No. 341-21

6.    "Instead, Respondent's determination was based primarily on his position that the regulations are irrelevant and section 904(f)(3)(A)(i) treats only the income up to the amount of LGI's OFL account balance as foreign-source income." Objection. Unsupported by the record and irrelevant. The merits of respondent's determinations in the Notice of Deficiency position are reflected in Respondent's Opening and Answering Briefs.

7.    "In [reporting $3.2 billion of gain], LGI simply followed the rules in the extant Treasury Regulations." Objection. Not a statement of fact, this is LGI's argument.

8.    "As described below, the clear and ordinary meaning of the text of [§ 904(f)(3)(A)(i)] sets a mandatory cap on the amount of gain LGI recognized on the J:COM Sale." Objection. Not a statement of fact, this is LGI's argument.

9.    "LGI was required to report taxable income equal to the balance of its OFL account—no more and no less." Objection. Not a statement of fact, this is LGI's argument.

Docket No. 341-21

# ARGUMENT

## I.   Introduction.

LGI presents a false choice in its opening brief:[1] (1) that § 904(f)(3)[2] permits it to exclude from its U.S. taxable income nearly $2.8 billion of gain from its disposition of J:COM[3] or (2) that § 1.904(f)-2(d) supersedes § 904(f)(3) and re-sources all of the gain from the disposition as foreign source taxable income. While advocating for these very different approaches, LGI claims to adhere to some canons of construction while selectively ignoring other canons of construction. LGI's conflicting arguments ignore the overall statutory scheme and require the acceptance of absurd results.

Respondent, on the other hand, offers a logical and legally sound interpretation premised on the position that the statute is unambiguous and has an obvious meaning when considering every word of a statute within the context of the Code, and that the proper reading of the regulations is within the context of the

---

[1] In this instance respondent is referring only to LGI's primary and secondary arguments; LGI's third position that it can elect to deduct its foreign taxes is not included in this description.

[2] Unless otherwise indicated, all section references in this Simultaneous Answering Brief for respondent are references to the Internal Revenue Code (the "Code") and the regulations thereunder in effect during the years in question.

[3] LGI has re-ordered its arguments in its opening brief from the order in which it laid out its positions in its petition. This new primary argument is discussed below.

Docket No. 341-21
unambiguous statute.

## II.    LGI Fundamentally Misunderstands the Scope and Function of § 904(f)(3)(A)(i).

LGI states in its brief that "the purpose of the OFL[4] rules is to prevent a taxpayer from offsetting U.S.-source income in one year, then claiming foreign tax credits on positive foreign source income in a subsequent year." Specifically, with respect to § 904(f)(3)(A)(i), LGI states that "[t]he rationale for Congress's mandate that gain on these 'dispositions'[5] be treated as foreign-source income is simple: treating such gain as foreign-source income facilitates the last-chance recapture of a taxpayer's OFL." Pet. Op. Br. p. 11. Respondent generally agrees with LGI about the purpose and the proper context of § 904(f) for taxpayers that have an OFL account. *See also*, Resp. Op. Br. pp. 13-26. Section 904 provides the rules and mechanics for determining the limitation on § 901 credits, and § 904(f) is simply part of those mechanics by providing a mechanism for taxpayers to recapture OFLs which reduced U.S. source taxable income in prior taxable years. LGI pivots from the proper purpose of § 904(f)—to prevent foreign losses from offsetting taxes on

---

[4] "OFL" as it was defined in the Opening Briefs stands for Overall Foreign Loss. *See generally*, Resp. Op. Br. pp. 2, 14-19. Citations in this brief to petitioner's opening brief ("Pet. Op. Br.") and respondent's opening brief ("Resp. Op. Br.").
[5] A "disposition" includes "a sale, exchange, distribution, or gift of property whether or not gain or loss is recognized on the transfer." I.R.C. § 904(f)(3)(B)(i).

- 5 -

Docket No. 341-21

U.S. source income in one year and then permitting foreign tax credits on foreign source taxable income in a subsequent year—to argue that section 904(f) is an income exclusion provision.

LGI primarily argues that § 904(f)(3)(A)(i) should be read as allowing an exemption from taxable income of the $2.8 billion of gain from the disposition of the J:COM shares. Such a result is wildly beyond the scope and purpose of the statute. Additionally, in its alternative argument, despite admitting that the purpose of the OFL rules is to *limit* foreign tax credits in future years after an OFL has been incurred, LGI argues that the OFL recapture rules in the statute should be interpreted to permit *additional* foreign tax credits against the U.S. tax liability on $2.4 billion of the gain on the disposition of J:COM. Absent LGI's flawed interpretation of § 1.904(f)-2(d), this gain is properly characterized as U.S. source taxable income under § 865(a). LGI correctly explains the scope and function of § 904(f), only to offer two interpretations that are inconsistent with its explanation.

LGI's attempt to construe § 904(f)(3)(A)(i) as limiting the amount of total gain on the disposition to the lesser of the gain or the OFL account ignores both the legal significance of the word "deemed" in the context of the statute and the fact that § 904(f)(3)(A)(i) and § 1001 are not in conflict. The word "notwithstanding" does not limit the amount of gain in recognition transactions. LGI's attempts to

- 6 -

Docket No. 341-21

convert § 904 into a rule limiting the recognition of taxable income should be rejected.

LGI argues, in both of its positions, that respondent is treating recognition and non-recognition transactions differently. *See*, Pet. Op. Br. pp. 22, 30. LGI misunderstands § 904(f)(3)(A)(i) and how it operates. For the recapture of an OFL account to occur under § 904(f)(1) there must be foreign source taxable income to re-source as U.S. source income. The parties agree that when a taxpayer disposes of assets primarily used in a trade or business outside of the United States, § 904(f)(3)(A)(i) provides a last-chance opportunity to recapture an OFL account. However, the disposition may or may not result in foreign source taxable income.

To assure the OFL account is recaptured in the case where the disposition does not otherwise result in foreign source taxable income, § 904(f)(3)(A)(i) provides "that taxpayer, notwithstanding any other provision of this chapter…shall be deemed to have received and recognized taxable income from sources without the United States…." This rule overrides nonrecognition provisions and/or sourcing provisions only to the *extent required* to assure there is foreign source taxable income in order to recapture the OFL account under § 904(f)(1), hence the use of the phrase "the lesser of" in §§ 904(f)(1) and 904(f)(3)(A)(i). The phrase "the lesser of" in § 904(f)(3)(A)(i) does not exclude taxable income from taxation,

- 7 -

Docket No. 341-21

nor does it address the treatment of any gain in excess[6] ("excess gain") of the

amount recaptured upon the disposition which is recognized under § 1001.

A disposition can be (1) a recognition transaction that results in foreign

source taxable income under the default sourcing rules, in which case there is no

override necessary under § 904(f)(3)(A)(i); (2) a recognition transaction that

results in U.S. source taxable income under the default sourcing rules in which

case § 904(f)(3)(A)(i) would override the sourcing rules; (3) a non-recognition

transaction that would result in foreign source taxable income under the default

sourcing rules if it were a recognition transaction, in which case § 904(f)(3)(A)(i)

would override the non-recognition rules, or (4) a non-recognition transaction that

would result in U.S. source taxable income under the default sourcing rules if it

were a recognition transaction, in which case § 904(f)(3)(A)(i) would override both

the non-recognition and the sourcing rules.

Because a disposition may be a recognition or a non-recognition transaction,

and a disposition may result in U.S. source or foreign source income, the

disposition rules in § 904(f)(3)(A)(i) must encompass all the possibilities. I.R.C. §

---

[6] "Excess gain" is the gain recognized under § 1001 which exceeds the amount recaptured under § 904(f)(1).

- 8 -

Docket No. 341-21

904(f)(3)(B)(i).[7] In the case of a disposition, the amount of the override, if any, of

the nonrecognition or sourcing provisions, is limited to "an amount equal to the

lesser of the excess of the fair market value of such property over the taxpayer's

adjusted basis in the property or the remaining amount of the overall foreign

losses…." I.R.C. § 904(f)(3)(A)(i).

Respondent is not treating recognition and non-recognition transactions

differently. In all cases, § 904(f)(3)(A)(i) overrides non-recognition and/or

sourcing provisions *only* to the extent required to deem the lesser of the gain or the

OFL account as foreign source taxable income so that the OFL account can be

recaptured under § 904(f)(1). That is all § 904(f)(3)(A)(i) does; nothing more,

nothing less. Section 904(f)(3)(A)(i) does not limit the total amount of gain

otherwise realized in a § 1001 recognition transaction to the lesser of the gain or

the OFL account, nor does it provide a sourcing rule for the excess gain from the

disposition. Section 904(f)(3)(A)(i) is only concerned with deeming foreign source

---

[7] Section 904(f)(3)(B)(ii) states "[a]ny taxable income recognized solely by reason
of subparagraph (A) shall have the same characterization it would have had if the
taxpayer had sold or exchanged the property." Thus, if taxpayers dispose of stock
in a CFC in a non-recognition transaction, the income would initially be U.S.
source income under § 904(f)(3)(B)(ii), which is then deemed foreign source
taxable income under § 904(f)(3)(A)(i).

Docket No. 341-21

taxable income to effectuate the OFL recapture, not limiting recognition of income or sourcing any excess gain from the disposition.

Section 904(f)(3)(A)(i) *deems* the requisite amount of foreign source taxable income equal to the lesser of the gain or the OFL balance to recapture the OFL account under § 904(f)(1). LGI's interpretations to the contrary are simply erroneous and outside the overall statutory scheme of §§ 901 and 904. Any excess gain is not addressed by § 904(f)(3)(A)(i) nor § 1.904(f)-2(d). The excess gain from a disposition recognized under § 1001 is sourced under the default sourcing rules in §§ 861-865. Section 904(f)(3)(A)(i) only deems foreign source taxable-income, to the extent required, to recapture the remaining OFL account. *See generally*, Resp. Op. Br. pp. 31-41.

## III.    LGI's New Primary Argument, that § 904(f)(3)(A)(i) Limits the Gain Recognition to the OFL Account, is Incorrect.

Without explanation and inconsistent with its petition, LGI now asserts as its primary argument that § 904(f)(3)(A)(i) "sets a mandatory cap on the amount of gain LGI recognized on the J:COM sale." Pet. Op. Br. p. 7. And that "LGI was required to report taxable income equal to the balance of its OFL account—no more and no less." *Id*.

- 10 -

Docket No. 341-21

LGI stated that "in light of Respondent's reliance on the statute, LGI has since reviewed section 904(f)(3)(A)(i) more closely." Pet. Op. Br. p. 7. But respondent's position is not new. Respondent, in the Statutory Notice of Deficiency for the 2010 Tax Year, states that "[t]he amount of U.S. source gain that is recharacterized as foreign source under [§ 904(f)(3)] is limited to the amount necessary to recapture the [OFL] in the OFL account at the beginning of the year." *See*, Ex. 1-J. For whatever reason, and without prior notice, LGI decided to re-order its initial argument from its Petition. Regardless, as respondent outlined in his opening brief, § 904(f)(3)(A)(i) does not operate as LGI argues. Resp. Op. Br. pp. 39-44.

## A.    Section 904(f)(3)(A)(i) Does Not Contain an Exclusion from Income.

"Congress must clearly provide for an exclusion of income, and it cannot be implied from a vague and unworkable statutory construction," as LGI contends. Resp. Op. Br. p. 41. Furthermore, "exclusions from income must be narrowly construed." *Commissioner v. Schleier*, 515 U.S. 323, 328 (1995) (citation omitted) (described the maxim as a "default rule of statutory interpretation"); *see generally*, Resp. Op. Br. pp. 40-43. "[A] tax statute should be given its fair meaning, and this includes a fair interpretation of any exceptions it contains." *Estate of Keeter v.*

- 11 -

Docket No. 341-21

*Commissioner*, 2023 WL 4346009 *5 (11th Cir. 2023) (quoting Antonin Scalia &

Bryan Garner, *Reading Law: The Interpretation of Legal Texts*, at 362 (2012))

*aff'g* T.C. Memo. 2018-191. However, § 904(f)(3)(A)(i) does not provide an

exclusion from or limitation on the recognition of taxable income.

LGI reads the text of § 904(f)(3)(A)(i) selectively and without any regard to

the provision's context to provide an income exclusion of taxable income where

there is none. "One of the fundamental principles of statutory interpretation is the

supremacy of the text: 'The words of a governing text are of paramount concern,

and what they convey, *in their context*, is what the text means.'" *Pictet Overseas

Inc. v. Helvetia Trust*, 905 F.3d 1183, 1190 (11th Cir. 2018) (William Pryor, J.,

concurring) (quoting Scalia & Garner, *supra*, § 2 at 56 (2012) (emphasis altered)).

Furthermore, "strict construction— '[a]n interpretation according to the literal

meaning of the words, as contrasted with what the words denote in context

according to a fair reading'—disregards this fundamental principle." *Id*. The court

should reject LGI's proposed absurd interpretation because "there is an effective-

and-not-absurd meaning that is also permissible." *Patients Mutual Assistance

Collective Corp. v. Commissioner*, 151 T.C. 176, 192 (2018). "We must avoid 'a

sterile literalism which loses sight of the forest for the trees' and maintain 'a proper

scruple against imputing meanings for which the words give no warrant.'" *Id*.

- 12 -

Docket No. 341-21

(citing *N.Y. Tr. Co. v. Commissioner*, 68 F.2d 19, 20 (2d Cir. 1933) (L. Hand, J,

*aff'd sub nom. Helvering v. N.Y. Tr. Co.*, 292 U.S. 455 (1934); *see also*, Scalia &

Garner, *supra*, at 356. When reading statutes, one should avoid reading the text in

such a manner as to "edge close to absurdity…." *Patients Mutual Assistance

Collective Corp.*, 151 T.C. at 192.

Section 904(f)(3)(A)(i) ensures that, upon a disposition, taxpayers that have

an OFL balance after § 904(f)(1) has been applied, are deemed to realize and

recognize foreign source taxable income, to the extent required, in an amount equal

to the lesser of the gain or the OFL balance.[8] This deemed foreign source taxable

income[9] is then re-sourced as U.S. taxable income under § 904(f)(1) as part of the

OFL recapture for purposes of computing the § 904 limitation on the available §

901 foreign tax credits. In this case, without § 904(f)(3)(A)(i) deeming a portion of

the gain on the disposition as foreign source taxable income, there would be no

---

[8] If the income recognized under § 1001 is foreign source taxable income under the
default rules, there is no need to deem the income as foreign source taxable income
under § 904(f)(3)(A)(i). However, the substitution of "100 percent" for "50
percent" in § 904(f)(1)(B) still applies.

[9] Respondent uses "deemed foreign source taxable income" as shorthand to
describe "deemed to have realized and recognized taxable income from sources
without the United States" throughout this Simultaneous Answering Brief

- 13 -

Docket No. 341-21

foreign source taxable income to convert to U.S. source income under § 904(f)(1)

to recapture the OFL account.[10]

The statute and the regulations ensure there is a recapture of the OFL

account on the disposition by deeming, to the extent required, an amount of the

foreign source taxable income equal to the lesser of the gain or the OFL account as

U.S. source taxable income. The statute does not limit the recognition of taxable

income from the disposition to the lesser of the gain or the OFL account.

**B.  Section 904(f)(3)(A)(i) is Unambiguous.**

**1.  Plain and Ordinary Meaning.**

LGI asserts that § 904(f)(3)(A)(i) clearly limits the gain on the disposition to

the OFL balance, and that the "proper starting point lies in a careful examination of

the ordinary meaning and structure of the law itself. Where…that examination

yields a clear answer, judges must stop." *Food Mktg. Inst v. Argus Leader Media*,

---

[10] Section 904(f)(1) first re-sources recognized foreign source taxable income
under § 1001 equal to the lesser of 50 percent of the taxable gain or the OFL
account as U.S. source taxable income before implementing the disposition
provision of § 904(f)(3)(A)(i). Because a sale of shares in a CFC would result in
U.S. source taxable income, there is no foreign source taxable income to re-source
as U.S. source taxable income. Thus, gain from the disposition must be deemed
foreign source taxable income under § 904(f)(3)(A)(i) to implement § 904(f)(1).
*See generally*, Treas. Reg. § 1.904(f)-2(d)(7), Example 1 (showing the order of
operations for recapture of recognized foreign source taxable income).

- 14 -

Docket No. 341-21

139 S.Ct. 2356, 2364 (2019) (citation omitted); Pet. Op. Br. p. 18. The proposition

is correct. LGI, however, fails to do what its own citation directs: a careful

examination of the meaning and structure of the statute. Instead, LGI opts for a

hasty and inattentive review.

### a) Deemed Recognition of Taxable Income from Sources Without the United States.

LGI argues that if a taxpayer has an OFL balance and there is a disposition,

§ 904(f)(3)(A)(i) controls all aspects of the treatment of the J:COM sale. While

respondent agrees the § 904(f)(3)(A)(i) applies to the disposition of the J:COM

shares, the parties disagree as to the scope of § 904(f)(3)(A)(i). Section

904(f)(3)(A)(i) only *deems* a portion of the income as foreign source taxable

income, for purposes of determining the available § 901 foreign tax credits. To

determine the amount of available § 901 foreign tax credits, under § 904(a), a

taxpayer should multiply the U.S. tax liability by the Section 904 Fraction.[11]

Section 904, through the Section 904 Fraction, provides a limit on the foreign tax

credits available. Section 904, nor its subparts, limit the *total* amount of taxable

income a taxpayer reports as LGI suggests. Pet. Op. Br. p. 19.

---

[11] In the Section 904 Fraction the numerator is a taxpayer's foreign source taxable income, and the denominator is the taxpayer's worldwide taxable income. *See generally*, Resp. Op. Br. pp. 14-15.

- 15 -

Docket No. 341-21

LGI argues that § 904(f)(3)(A)(i) establishes a rule for "recogniz[ing] taxable income." Pet. Op. Br. p. 19. LGI, however, fails to read the phrase — deemed to have received recognized taxable income from sources without the United States— in its entirety and fails to discuss how its interpretation fits or makes any sense in the entirety and the context of the statute. Furthermore, LGI conveniently ignores the plain import of § 1001, which is the primary statute governing gain recognition.

LGI engages in a logical fallacy by inferring that because § 904(f)(3)(A)(i) provides for the realization and recognition of foreign source taxable income on a non-recognition transaction only for a limited amount, similarly, § 904(f)(3)(A)(i) must therefore be construed to limit the realization and recognition of *total* taxable income for recognition transactions. Pet. Op. Br. pp. 19-20. Section 904(f)(3)(A)(i) in both cases only *deems*—to the extent required—that there is foreign source taxable income in an amount equal to the lesser of the OFL balance or the gain, for purposes of effectuating § 904(f)(1). LGI would suggest that this limits the amount of *total* income recognized in a recognition transaction to only the OFL balance or the gain. However, this is not a limitation of the total amount of taxable income realized and recognized. Section 904(f)(3)(A)(i) only limits the amount of *deemed* foreign source taxable income required to recapture the OFL account.

- 16 -

Docket No. 341-21

The crux of this dispute boils down to the legal definition of "deem."

Black's Law Dictionary defines "Deem" as "To treat (something) as if (1) it were

really something else, or (2) it has qualities that it does not have. "Deem," Black's

Law Dictionary (11th Ed. 2019). Based on Black's definition of "Deem," compare

§ 904(f)(3)(A)(i) with § 1001. Section 1001 prescribes gain recognition equal to

the excess of the amount received over the taxpayer's adjusted basis in the

property.[12] Section 1001 prescribes the legal consequence of recognition based on

receipt and value; deemed receipt and recognition of foreign source taxable income

under § 904(f)(3)(A)(i) is only necessary when § 1001 is factually or legally

inapplicable.[13]

In its Opening Brief, LGI consistently refers to "taxable income" rather than

"deemed foreign source taxable income." While it may not seem important, the

---

[12] Section 904(f)(3)(A)(i) refers to the gain on a disposition as the "excess of the fair market value of such property over the taxpayer's adjusted basis in such property." In the case of a recognition transaction, that would be the consideration received over the adjusted basis in the property. *See*, I.R.C. § 1001.

[13] For example, consider § 960 "deemed paid credit for subpart F inclusions" in which a domestic corporation is deemed to have paid "so much foreign corporation's foreign income taxes as are properly attributable to such item of income." The domestic corporation need only be "deemed" to have paid the foreign income taxes and not actually pay the foreign income taxes. If the domestic corporation had actually paid the foreign income taxes, § 960 would be unnecessary.

- 17 -

Docket No. 341-21

distinction between "taxable income" and "deemed foreign source taxable income" is significant. Section 904(f)(1) cannot operate to recapture a taxpayer's OFL account without a taxpayer having *foreign source* taxable income, and not just taxable income, to convert to U.S. source taxable income. Therefore, § 904(f)(3)(A)(i) *deems* the realization and recognition of *foreign source* taxable income when necessary. LGI's constant references to "taxable income," rather than "deemed to have realized and recognized taxable income from sources without the United States," renders "deemed" superfluous, distorts the statute, its context, and how the statute should be interpreted. *See generally*, Resp. Op. Br. pp. 34-35.

### b)    "Notwithstanding" Must be Read in Context.

LGI asserts that because § 904(f)(3)(A)(i) contains the phrase "notwithstanding any other provision of [Chapter 1 of the Code] (other than [section 904(f)(1)])," Congress created a gain recognition statute for dispositions with a rule that limits the precise amount of "taxable income" to be recognized.[14]

---

[14] LGI states that "[t]axable income is '*equal to* the lesser of' two amounts: (1) the excess of the fair market value of the disposed of Qualified Property over the taxpayer's adjusted basis in such property; or (2) the remaining amount of the taxpayer's OFL account." Pet. Op. Br. p. 21 (emphasis in original). However, this interpretation runs afoul of the statute which "deems [foreign source taxable income on the disposition] in an amount equal to" the lesser of the two amounts. The conflating of "deemed" foreign source taxable income and taxable income is erroneous.

- 18 -

Docket No. 341-21

Pet. Op. Br. pp. 20-21. Here, LGI is attempting to read "notwithstanding" to limit the application of § 1001. However, LGI's view that §§ 904(f)(3)(A)(i) and 1001 are in conflict and thus § 904(f)(3)(A)(i) limits or overrides § 1001 is inconsistent with the overall statutory scheme of § 904. *See generally*, Resp. Op. Br. pp. 40-44.

Section 904(f)(3)(A)(i) only provides for an amount of *deemed foreign source taxable income* equal to the lesser of the gain or the OFL account required to effectuate § 904(f)(1). There is no override of § 1001 that limits the amount of *total* income recognized in a recognition transaction. *See, Radzanower v. Touche & Ross Co.*, 426 U.S. 148, 155 (1976) (when two statutes are capable of coexistence, the Court should regard each as effective); *See, e.g., Williams v. Commissioner*, 151 T.C. 1, 8 (2018) (§§ 6673(a)(1) and 6751(b) are not in irreconcilable conflict, one is not a substitute for the other, and Congress did not express a manifest intent to repeal § 6673(a)(1) or to modify longstanding rules). Both §§ 904(f)(3)(A)(i) and 1001 require gain recognition – there is no contradiction and therefore no override is necessary to get to the required amount of deemed foreign source income. In the case of a recognition transaction, the only possible contradiction with § 904(f)(3)(A)(i) that would require an override would be if the gain was not foreign source as determined under §§ 861-865. In that case, § 904(f)(3)(A)(i) would override the relevant sourcing statute, not § 1001, to the extent required to

- 19 -

Docket No. 341-21

get to the required amount of deemed foreign source taxable income to effectuate §

904(f)(1).

LGI erroneously relies on *Clayton v. Commissioner*, 52 T.C. 911 (1969), to

support its argument that "notwithstanding" clearly signals Congressional intent to

override § 1001. *Clayton v. Commissioner*, 52 T.C. 911. In *Clayton*, the taxpayer

liquidated its assets pursuant to a non-recognition transaction under § 337 and

among the assets liquidated was certain § 1245 property.[15] *Id.* The recapture under

§ 1245 is akin to § 904(f)(3)(A)(i) in which a taxpayer recaptures the OFL account

from the disposition of an asset in a non-recognition transaction.

The requirement to realize and recognize gain in non-recognition

transactions under §§ 1245 and 904(f)(3)(A)(i) are very similar. Section 1245

operates much like § 904(f)(3)(A)(i) to prevent taxpayers from getting a double

benefit.[16] Section 1245 works to recapture, upon a disposition, the depreciation

deductions which the taxpayer has claimed so when a taxpayer disposes of that

asset in a non-recognition transaction, the prior tax benefits are recaptured.

---

[15] Section 1245 relates to gain from disposition of certain depreciable property.

[16] The double benefit here would be depreciation deductions in prior taxable years
and non-recognition of income on the sale of the depreciated property.

- 20 -

Docket No. 341-21

Similarly, § 904(f)(3)(A)(i) overrides non-recognition provisions to recapture the

tax benefits that OFLs previously provided to the taxpayer.

*Clayton* supports respondent's position in that it provided § 337 was

overridden to the extent required to effectuate the clear purposes of § 1245. It does

not support LGI's position because LGI has not identified any purpose under §

904(f)(3)(A)(i) that would require an override of § 1001.

"Notwithstanding" in § 904(f)(3)(A)(i) works to ensure that taxpayers are

"deemed to have received and recognized taxable income from sources without the

United States…." The lesser of the gain or the OFL is deemed, to the extent

required, realized and recognized as foreign source taxable income for purposes of

recapturing the OFL and limiting foreign tax credits. To accomplish this, §

904(f)(3)(A)(i) must override non-recognition provisions to recognize income.

And, in cases where the disposition of property used in a foreign trade or business

would result in U.S. source income, § 904(f)(3)(A)(i) must override sourcing

provisions to create foreign source taxable income to effectuate the recapture under

§ 904(f)(1).[17] "Notwithstanding" only modifies nonrecognition provisions and/or

_____

[17] Section 904(f)(3)(B)(ii) sources the deemed realized and recognized income
from non-recognition transactions as if the property were sold. In the case of a non-
recognition transaction involving CFC shares, both the non-recognition and the

- 21 -

- App.244 -

Docket No. 341-21

sourcing provisions to ensure there is the requisite amount of deemed foreign

source taxable income to recapture the OFL account under § 904(f)(1).

Furthermore, "notwithstanding" does not limit the amount of gain deemed to be

foreign source taxable income; the phrase "the lesser of" is the phrase limiting the

amount of deemed foreign source taxable income required to recapture the OFL

account.

To the extent the taxpayer has taxable income under § 1001 from the

disposition, § 904(f)(3)(A)(i) does not operate to override § 1001 to limit the total

amount of foreign source taxable income in recognition transactions to the lesser of

the gain or the OFL account. *See generally*, Treas. Reg. § 1.904(f)-2(d)(7), Ex. 1

(demonstrating that in a recognition transaction under § 1001, § 904(f)(3)(A)(i)

does not limit the amount of total taxable income). Section 904(f)(3)(A)(i) merely

ensures there is foreign source taxable income with which to properly effectuate §

904(f)(1).

---

sourcing rules need to be overwritten, but only to the extent of the lesser of the
gain or the OFL account; nothing more than that is needed to effectuate §
904(f)(1).

- 22 -

Docket No. 341-21

### C.    Respondent Treats Recognition and Non-Recognition Transactions the Same.

#### 1.    Respondent's Reading Does Not Contradict the Plain Meaning of § 904(f)(3)(A)(i).

LGI alleges that respondent is inconsistent in its treatment of recognition and non-recognition transactions, creating separate rules for the two transactions, notwithstanding that Congress, in § 904(f)(3)(A)(i), made clear that the "single income-recognition rule applies to both recognition transactions and nonrecognition transactions." Pet. Op. Br. p. 24. Respondent agrees that there is a single rule that applies to both recognition and non-recognition transactions but contends that the plain meaning of § 904(f)(3)(A)(i) provides a single *deemed* foreign source taxable income rule, not a single rule that limits taxable income.

To illustrate its point, LGI provides an example where a taxpayer has a $50 OFL account, owns 100% of a controlled foreign corporation ("CFC"), with a basis of $20, and disposes of the stock in the CFC for $100. Pet. Op. Br. p. 25.

LGI asserts respondent would apply § 904(f)(3)(A)(i) so that if the disposition was a non-recognition transaction the taxpayer would recognize $50 of taxable income, or $80 in taxable income if the disposition was a recognition transaction. LGI asserts that this treatment by respondent is inconsistent. LGI believes this difference in *total* taxable income creates differing results depending

- 23 -

Docket No. 341-21

on whether the transaction was a non-recognition or recognition transaction. LGI's use of taxable income rather than *deemed* foreign source taxable income is intentional. By ignoring the text of § 904(f)(3)(A)(i), which only deems the lesser of the gain or the OFL account as foreign source taxable income, LGI misrepresents respondent's position. LGI's attempt to characterize how excess gain is treated by respondent for non-recognition and recognition transactions as running afoul of the statute is simply misguided. *See generally*, Pet. Op. Br. p. 21.

It is respondent's position that § 904(f)(3)(A)(i) applies equally to both the recognition and non-recognition transactions solely to ensure that the taxpayer ends up with at least $50 of deemed foreign taxable income in order to recapture its OFL account. Using LGI's example, respondent contends that $80 is recognized as income under § 1001 and that income is U.S. source income under § 865. Section 904(f)(3)(A)(i) then deems $50 as foreign source taxable income (the lesser of the gain or the OFL account) to effectuate the recapture under § 904(f)(1). Taxation of the excess gain recognized under § 1001 remains undisturbed. In the non-recognition transaction the taxpayer would not recognize any of gain under § 351, § 904(f)(3)(A)(i) deems recognition of foreign source taxable income of $50, and the remaining $30 of built-in gain is still not recognized under § 351, until a later date.

- 24 -

Docket No. 341-21

The difference in total *taxable income* that LGI highlights is not a result of respondent treating recognition and non-recognition transactions differently or applying different rules, but rather this difference is only a product of how *other* rules in the Code apply to recognition (§ 1001) and non-recognition (*e.g.*, § 351) transactions. Section 904(f)(3)(A)(i) is only concerned with deeming the requisite amount of foreign source taxable income required to effectuate § 904(f)(1) and re-source that income as U.S. source income to recapture the OFL account. Respondent in *both* situations only deems the taxpayer to receive and recognize $50, the lesser of the OFL or the gain, as foreign source taxable income. Sections 904(f)(3)(A)(i), 904(f)(1), 904(a), and 901 work together to recapture the OFL account and prevent a double benefit to taxpayers. Resp. Op. Br. pp. 20-26.

Respondent is applying the same rules to both transactions. LGI's interpretation, on the other hand, treats recognition and non-recognition transactions differently and creates two different rules. Under LGI's interpretation, in the case of recognition transactions, taxpayers would be exempt from realizing and recognizing the excess gain, while, in the case of non-recognition transactions, the unrecognized portion of the gain would merely be deferred until the property is disposed of in a recognition transaction. Using LGI's example, the $30 of excess gain would never be taxed for recognition transactions, but the $30 of the

- 25 -

Docket No. 341-21

unrecognized portion of the gain would merely be deferred in non-recognition

transactions.

### 2. Respondent Does Not "Give the Same Words Separate Meanings."

LGI asserts that respondent is giving "the same words two separate

meanings." Presumably, LGI is referring to "shall be deemed to have received and

recognized taxable income from sources without the United States…." I.R.C. §

904(f)(3)(A)(i). However, as stated above, respondent is giving the same meaning

of that phrase in both recognition and non-recognition transactions. Respondent is

doing exactly what the statute proscribes: deeming, to the extent necessary,—in

both recognition and non-recognition transactions— foreign source taxable income

in an amount equal to the lesser of the gain or the OFL account.

### 3. Congress did Enact One Rule and Respondent, not LGI, is Properly Implementing that Rule.

As explained above, LGI is simply incorrect about how to interpret §

904(f)(3)(A)(i) because it improperly reads the statute. Congress did enact the

same rule for both recognition and non-recognition transactions and the example

contained in the regulations demonstrate respondent's correct position.

Respondent's position is the statute is unambiguous, but also that the regulations,

when properly viewed in context with the statute and its purpose, lend additional

- 26 -

Docket No. 341-21

support to respondent's position. *See generally*, Resp. Op. Br. pp. 36-39. To

illustrate respondent's correct position, we need look no further than § 1.904(f)-

2(d)(7), Ex. 1.[18]

In Example 1, X Corporation, with $1,000 in U.S. source income and an

OFL account of $600, disposes of assets used in a foreign trade or business, *and

recognizes $1,000 of foreign source gain on the sale under section 1001*. Treas.

Reg. § 1.904(f)-2(d)(7), Ex. 1 (emphasis added). The example starts with the basic

premise that X Corporation recognizes $1,000 gain from the disposition and *never

revisits the amount of total gain*. *Id*. The example next applies § 904(f)(1) to the

proceeds from the sale to recapture the lesser of the OFL account of $600 or 50

percent of the gain on the disposition, $500. After recapturing $500 of the OFL

account by re-sourcing the foreign source taxable income as U.S. source under §

904(f)(1)—prior to the application of § 904(f)(3)(A)(i)— X Corporation's OFL

account is reduced to $100 ($600-$500). The remaining $100 in the OFL account

is then recaptured by the disposition rules in § 904(f)(3)(A)(i). Example 1 then

shows the computation of the Section 904 Fraction, reducing the numerator to

---

[18] LGI, in its secondary argument, relies on § 1.904(f)-2(d)(7), Ex. 1. to support its
interpretation of the regulations. While LGI's interpretation of the regulations is
flawed, respondent's interpretation supports his position which counters both of
LGI's arguments.

- 27 -

Docket No. 341-21

reflect the $600 of foreign source taxable income re-sourced as U.S. source income under § 904(f)(1), and the remaining $400 of foreign source taxable income remains in the numerator, *i.e.*, not excluded. Treas. Reg. § 1.904(f)-2(d)(7), Ex. 1.[19]

Treas. Reg. § 1.904(f)-2(d)(7), Ex. 1 illustrates the absurdity of LGI's argument and dispels LGI's assertion that § 904(f)(3)(A)(i) overrides § 1001 to limit LGI's taxable income to the OFL account.[20] As respondent has articulated, when the regulations are read in context with the statute and the statutory scheme, they —and these examples—fully support respondent's position. Respondent, as reflected in the regulation, is simply applying § 1001 then deeming foreign source taxable income to the extent required to effectuate the recapture, just like the example above. *See generally*, Treas. Reg. § 1.904(f)-2(d)(7), Ex. 1.

### D.    The Consequences of LGI's New Primary Position are Unclear, and Seemingly Inconsistent With its Reporting Position.

After re-ordering its arguments, LGI now takes the position "in light of

---

[19] Examples 1 and 2 in § 1.904(f)-2(d)(7) generally provide the same result that respondent has articulated above. The difference for the recognition transaction is the source of the income under the default rules. In the regulations, the default rule is foreign sourced taxable income. In LGI's case, the default rule results in U.S. sourced taxable income.

[20] While not explicit, Example 1 is clear that the sourcing of the disposition is foreign source taxable income under the default rules, as §§ 904(f)(1) and 1.904(f)-2(c) cannot function unless there is foreign source taxable income.

Docket No. 341-21

[r]espondent's reliance on [§ 904(f)(3)(A)(i)]," that it is now "entitled to reduce its income by nearly $2.8 billion." Pet. Op. Br. pp. 7, 15. LGI is now apparently arguing that it should be permitted to limit the taxable income reported on the J:COM disposition to the amount of the OFL account balance. LGI, however, failed to specifically plead in its Petition that respondent erroneously failed to reduce its income by $2,782,184,997.

LGI is also unclear about how its re-ordering of its positions in its Opening Brief affects the amount of its tax liability. Under its now alternative argument, LGI describes the deemed foreign source taxable income under § 904(f)(3)(A)(i) as being in addition the § 1248 dividend. Pet. Op. Br. p. 34. Specifically, it notes that the $2.8 billion of gain recognized under that position, which is also its reporting position, "excludes the portion of gain undisputedly treated as a dividend under section 1248." Pet. Op. Br. p. 34, Fn. 60. Additionally, LGI states "[t]here is no question that the first $474 million of [that $2.8 billion of] income is treated as foreign-source income" under § 904(f)(3)(A)(i). Pet. Op. Br. p. 34.

In its Petition, LGI is not alleging that respondent erroneously included as income the § 1248 dividend. In fact, LGI conceded that: "Of the amount described in Paragraph 5.(j), $438,135,179 was treated as a dividend under Code section 1248." Petition ¶5.(k). Furthermore, LGI further states that "[t]he remaining

- 29 -

Docket No. 341-21

amount, or $2,818,421,963, was treated as gain from the J:COM Sale," and that the "parties dispute whether all or just a portion of this gain should be treated as foreign source income." Petition ¶5.(l). Accordingly, the only thing the parties agreed upon was that $438 million was properly included in income as a § 1248 dividend.

LGI implies that it would treat the $438 million § 1248 dividend and the $474 million deemed foreign source taxable income amount as separate, cumulative taxable income amounts. Furthermore, LGI emphasizes that, "[t]here is no dispute in this case regarding the character or treatment of this [$438 million] amount that was characterized as a dividend." Petition ¶5.(k). Finally, when laying out what is now LGI's primary position, LGI states that, "LGI is entitled to reduce the amount of gain recognized on the J:COM Sale," suggesting an adjustment to the previously mentioned $2.8 billion, separate and apart from the $438 million conceded as a § 1248 dividend. Petition ¶5.(ii).

After framing its Petition to treat the § 1248 dividend separate and apart from the OFL account balance, LGI stated its alternative position that § 904(f)(3) "caps the amount of gain recognized by LGI on the J:COM sale at the amount of LGI's OFL account balance, or $474,372,166." Petition ¶5.(kk). Only now does LGI describe its current primary position as reducing its total income by $2.8

- 30 -

Docket No. 341-21

billion, instead of the $2.3 billion that both its Petition and its reporting position (as well as its now alternative position) would imply.

If LGI's position under its now primary argument is that the § 1248 dividend income is included in the income resulting in OFL recapture or not recognized, instead of being a separate amount of taxable income, LGI is taking a position that is inconsistent with its Petition. Further, it does so without explaining how it believes the Court should treat the § 1248 dividend under its primary position, much less providing an explanation for that treatment.

## IV.    LGI's Alternative Argument that § 904(f)(3)(A)(i) is Ambiguous is Also Incorrect.

### A.    LGI Presents a False Choice.

LGI in what is now its alternative argument presents a false choice: read § 904(f)(3)(A)(i) as LGI does or declare the statute ambiguous. And, according to LGI, if the Court agrees with LGI's view that there is an ambiguity, the Court must interpret the regulations as LGI does. Pet. Op. Br. pp. 28-32. The Court should decline LGI's invitation to play "heads the government loses, tails petitioner prevails." There is a sensible third option, which respondent has articulated: "the statute (1) is unambiguous, (2) has an obvious meaning when considering every word of the statute within the context of the entire Internal Revenue Code, and (3)

- 31 -

Docket No. 341-21

that the proper reading of the regulation is within the context of the unambiguous

statute." Resp. Op. Br. p. 3.

### 1.    LGI's Purported Ambiguity is Not Resolved by the Regulations.

LGI argues that if § 904(f)(3)(A)(i) is not read to limit the income

recognized on the disposition, there must be an ambiguity that must be resolved by

the regulations. Pet. Op. Br. p. 29. However, LGI quickly pivots from this

purported ambiguity to be resolved, to try and have the regulations answer a

separate question; i.e. what is the source of the excess gain remaining on the

disposition after the recapture of the OFL account.

LGI cites *Nat'l Credit Union Admin. Bd. v. Nomura Home Equity Loan,*

*Inc.*, 764 F.3d 1199 (10th Cir. 2014) for the proposition that if a statute is

ambiguous "a court may seek guidance from…the purpose behind the statute."

*Nat'l Credit Union*, 764 F.3d at 1226 (internal citations omitted). In *Nat'l Credit*

*Union*, the court was examining the language of the "Extender Statute" to

determine whether the meaning of "statute of limitations" was ambiguous. *Id*.

After the court determined that the "statute of limitations" was ambiguous, the

court then carefully reviewed the statutory language and its context to determine

what "statute of limitations" meant. *Id*. However, unlike the court in *Nat'l Credit*

- 32 -

Docket No. 341-21

*Union* which found a term to be ambiguous and sought to answer the ambiguous term, LGI does not seek to use the regulations in § 1.904(f)-2(d) to answer the ambiguity it purports to find in § 904(f)(3)(A)(i).

The purported ambiguity LGI alleges to be in § 904(f)(3)(A)(i), if the Court rejects its primary argument, is whether the amount of the income recognized from the disposition is limited by the statute. However, LGI attempts to use the regulations to resolve a different purported ambiguity in its secondary argument by asserting that an ambiguity on the amount of taxable income recognized must also be an ambiguity as to the sourcing of the taxable income. Pet. Op. Br. p. 32.[21] Those two purported ambiguities—recognition and source—are not the same. Purporting to link the two to use the regulations to answer an ambiguity that does not exist in the statute is not a permissible use of the regulations.

If a "statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's [regulation] is based on a permissible construction of the statute." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc*., 467 U.S. 837, 843 (1984). The inference in *Chevron* and its

---

[21] LGI does not even attempt to use the regulations to solve the purported ambiguity in their primary argument, presumably because there was nothing in the regulations that support their position.

- 33 -

Docket No. 341-21

progeny is that if a statute is ambiguous the proper question is whether the

regulation resolves that ambiguity. Even if there was an ambiguity as to the

amount of income recognized, which there is not, the regulations would need to

answer that particular question, not a wholly separate question. Furthermore, as

stated above, § 904(f)(3)(A)(i) is only concerned with deeming foreign source

taxable income to the extent required to recapture the OFL account. LGI is looking

to the regulations to resolve a purported ambiguity from a statute which does not

address the issue in the first place.

### 2.     Section 904(f)(3)(A)(i) Only Deems as Foreign Source Taxable Income the Requisite Amount Required to Recapture the OFL Account Under § 904(f)(1).

LGI next turns to the non-existent problem its flawed reading allegedly

presents: how to source the excess gain from the disposition. LGI alleges that §

904(f)(3)(A)(i) doesn't provide the sourcing for the excess gain, so it must go to

the regulations in search of an answer to an ambiguity it does not find in §

904(f)(3)(A)(i).[22] But there is no ambiguity because § 904(f)(3)(A)(i) simply does

not source the excess gain from the disposition, as the statute is only concerned

with deeming foreign source taxable income to the extent necessary to recapture

---

[22] LGI, in several citations, cites to § 1.094(f)-2(d)(7), Ex. 1. Respondent presumes
that this is a scrivener's error and LGI meant § 1.904(f)-2(d)(7), Ex. 1.

- 34 -

Docket No. 341-21

the OFL account. The sourcing of the excess gain is addressed clearly in §§ 861

through 865.

Turning a blind eye to the Code's extensive sourcing regime for recognized

taxable income and the fact that § 904(f)(3)(A)(i) is only concerned with

recapturing the OFL account, LGI feigns confusion over how to source the

remaining $500 of gain recognized, through its example based on § 1.904(f)-

2(d)(7), Ex. 1, after the first $500 is re-sourced under § 904(f)(3)(A)(i). Pet. Op.

Br. pp. 32-33. In this modified example, LGI states that the taxpayer recognizes

$1,000 of income under § 1001, which would all be foreign source income under

the default rules, and has a $500 OFL account. LGI uses § 904(f)(3)(A)(i) to deem

as foreign source taxable income (the lesser of the gain or the OFL). LGI then

claims it cannot determine the source of the remaining $500 under the statute, so it

must go to the regulations to solve this issue.

However, there are two fundamental problems with LGI's example. First,

LGI does not seem to understand that the income is first recognized under § 1001

and treated as foreign source taxable income under the relevant sourcing rules in

§§ 861-865. Because there is foreign source taxable income § 904(f)(1) operates

- 35 -

Docket No. 341-21

first to recapture the lesser of the OFL or 50 percent of the gain, which is $500.[23]

*See generally*, Treas. Reg. 1.904(f)-2(d)(7), Ex. 1. Second, after recapturing $500 of foreign source taxable income as U.S. source taxable income, there is no OFL account remaining so § 904(f)(3)(A)(i) doesn't apply. Section 904(f)(3)(A)(i) only overrides recognition and sourcing provisions to deem foreign source taxable income to the extent needed to recapture the remaining OFL account. In this example, there is no additional OFL account to recapture. The $500 of income remaining after the recapture is recognized under § 1001 and is foreign source taxable income under the default rules prior to the application of § 904(f)(1).

Assuming LGI's example required the use of § 904(f)(3)(A)(i), LGI proposes an absurd reading of § 904(f)(3)(A)(i) to suggest it "could be read to require the remaining $500 of income be treated as U.S.-source." Pet. Op. Br. p. 33. To create this purported ambiguity, LGI points to § 904(f)(3)(A)(i) which it alleges "mandates that the taxpayer 'shall' recognize 'taxable income from sources without the United States…. in an amount equal to the lesser of' the property's built-in gain or the taxpayer's OFL" and argues that this could be read to mean that

---

[23] LGI erroneously attempts to apply § 904(f)(3)(A)(i) prior to seeing if the recapture under § 904(f)(1) leaves any remaining OFL account.

Docket No. 341-21

no more income than that amount can be treated as foreign source. Pet. Op. Br. p.

33.

However, this ambiguity only exists if LGI omits the legally significant

language "shall *be deemed to receive and recognize* taxable income from sources

without the United States." I.R.C. § 904(f)(3)(A)(i) (emphasis added). Reading §

904(f)(3)(A)(i) in context and without omitting legally significant words does not

produce the ambiguity LGI seeks.

To resolve the ambiguity which doesn't exist in its example, LGI then points

to Example 1 in the regulations, which it purports as clarifying the sourcing of the

excess gain as always foreign source. LGI's reading of § 1.904(f)-2(d)(7), Ex. 1,

does not make sense in the context of the purpose of § 904, and misinterprets the

regulation and the example. The excess gain in § 1.904(f)-2(d)(7), Ex. 1 is foreign-

source income both before and after the application of § 904(f)(3)(A)(i) because §

904(f)(3)(A)(i) does not affect sourcing of the excess gain. Nowhere in the

Example does it say otherwise. Not only does § 1.904(f)-2(d)(7), Ex. 1 not support

LGI's assertion that the example and the regulations clarify that all the income

from the disposition should be foreign source income, it fully supports

respondent's position because the income recognized under § 1001 is initially

foreign source taxable income.

- 37 -

Docket No. 341-21

Additionally, LGI's facts are not analogous to § 1.904(f)-2(d)(7), Ex. 1, and the regulation also does not support LGI's position that the excess gain is foreign sourced taxable income. Pet. Op. Br. pp. 33-34. The income on the disposition of the J:COM stock is income recognized under § 1001 and is U.S. source income under § 865(a). Because there is no foreign source income to recapture the OFL account under § 904(f)(1),[24] § 904(f)(3)(A)(i) only deems, in this case, an amount of gain equal to the OFL account as foreign source taxable income. There is no need for § 904(f)(3)(A)(i) or the regulations to source the excess gain recognized under § 1001 because the default sourcing rule in § 865(a) apply. Section 904(f)(3)(A)(i) is only concerned with deeming the requisite amount to recapture the OFL account under § 904(f)(1).

### 3.    Respondent is Not Treating Recognition and Non-Recognition Transaction Disparately.

LGI then asserts, this time in a new context, that respondent, contrary to the statute, is treating recognition and non-recognition transactions differently and that the statute is clear. LGI believes that because they and respondent have different

---

[24] If the disposition of the J:COM stock had resulted in income recognized under § 1001 and foreign sourced under, e.g., § 862, only the lesser of the OFL or the 50 percent of the gain would re-sourced under § 904(f)(1) and the remaining income would still be foreign source taxable income.

Docket No. 341-21

readings, this demonstrates an ambiguity that needs to be resolved by the regulations. Pet. Op. Br. p. 30.

LGI states that the statute clearly provides for identical treatment but then describes how the regulations intentionally treat recognition and non-recognition transactions differently. Pet. Op. Br. p. 36. However, regulations should be interpreted in a manner that does not call into question their validity. *See*, Resp. Op. Br. pp. 33-34.

Regardless, respondent is not treating recognition and recognition transactions differently as respondent explained above. Respondent agrees that the statute treats both transactions identically but does not agree that LGI's interpretation treats recognition and non-recognition transactions the same. Section 904(f)(3)(A)(i) only deems the lesser of the gain or the OFL as foreign source taxable income, to the extent required, and does not alter the recognition or non-recognition provided by the default rules. Respondent's reading of the regulations is also consistent with its reading of the statute.

### 4.    Respondent's Position Does Not Require Looking Past the Plain Language.

LGI asserts that if respondent's reading of § 904(f)(3)(A)(i) is correct, "several key parts of the statute [must] be disregarded." Pet. Op. Br. p. 29.

- 39 -

Docket No. 341-21

However, LGI fails to identify which "key parts of the statute" respondent is

disregarding. Its failure to identify what respondent is striking from the statute is

only compounded by LGI's conflicting position on the statute and the regulations.

Section 904(f)(3)(A)(i) is clear: the lesser of the gain or the OFL in a

disposition is deemed to be foreign source taxable income, to the extent required,

in order to effectuate the OFL recapture under § 904(f)(1). Section 904(f)(3)(A)(i)

isn't concerned with and does not source any excess gain on the transaction; it

simply deems the requisite amount of foreign source taxable income to effectuate §

904(f)(1) to the extent possible.[25] The remaining excess gain, if there is any, is

income already recognized under § 1001 and sourced under the default rules. The

ambiguity LGI seeks, is simply not there.

### 5.    Treas. Reg. 1.904(f)-2(d)(1) Does Not Mandate That All the Gain from the Disposition is Foreign Source Taxable Income.

LGI asserts § 1.904(f)-2(d)(1)(ii) unambiguously requires that LGI's gain on

the disposition of J:COM must be treated as foreign source income. LGI's further

assertion that "the second prong of the test [in § 1.904(f)-2(d)(1)(ii)] can only be

read one way," is correct, but the one way it can only be read is not as LGI prefers.

---

[25] As a reminder, there may be situations where the lesser of the gain or the OFL account may be the gain on the disposition, thus, the entire OFL account may not be recaptured.

Docket No. 341-21

Pet. Op. Br. p. 35. The determination of the source of the excess taxable gain is made by the default sourcing rules, not § 1.904(f)-2(d)(1)(ii).

LGI's focus on the language in § 1.904(f)-2(d)(1)(ii) ignores the fact that § 1.904(f)-2(d)(1) is merely a general overview of the rules that provides specific gain required to be recognized, re-sourced, or recaptured. Section 1.904(f)-2(d)(1) reads in part as follows, "(i) gain will be recognized on the disposition of such property, (ii) such gain will be treated as foreign source income subject to the same limitation as the income the property generated, and (iii) the applicable overall foreign loss account shall be recaptured *as provided in paragraphs (d)(2), (d)(3), and (d)(4) of this section.*" (emphasis added).

The operative details are not in paragraph § 1.904(f)-2(d)(1) but rather in §§ 1.904(f)-2(d)(2), (3), and (4). LGI nevertheless argues that § 1.904(f)-2(d)(1)(ii) provides no limit on the amount of recognized gain that is treated as foreign source income under § 904(f)(3)(A)(i). Therefore, § 1.904(f)-2(d)(1)(i) which states "gain will be recognized" similarly provides no limit on the amount that gain must be fully recognized in the case of a non-recognition transaction. Yet LGI acknowledges that § 1.904(f)-2(d)(4), and not § 1.904(f)-2(d)(1), is the operative rule for determining the amount of foreign source taxable income deemed recognized in a non-recognition transaction. Pet. Op. Br. p. 36. LGI also points to §

- 41 -

Docket No. 341-21

1.904(f)-2(d)(3), not § 1.904(f)-2(d)(1), asserting that Treasury should have

included a "cap" if they had wanted to impose one on the amount of gain that is

treated as foreign source. Therefore, under their own arguments, LGI's focus on

the language of § 1.904(f)-2(d)(1)(ii) for determining the amount of foreign-source

income in a recognition transaction is misplaced.

Respondent agrees that § 1.904(f)-2(d)(3) is the operative paragraph for

applying § 904(f)(3)(A)(i) to recognition transactions, to the extent required.

Unfortunately for LGI, § 1.904(f)-2(d)(3) only speaks to recognition transactions

in which foreign source gain is otherwise recognized under the sourcing rules

before the application of § 904(f)(3)(A)(i). It is silent as to recognition transactions

in which U.S. source gain is otherwise recognized under the sourcing rules.[26] In the

absence of a regulatory rule, respondent turns to the unambiguous language of the

statute that provides the amount of deemed foreign source taxable income, to the

extent required, as the "lesser of" the gain or the OFL account.[27] I.R.C. §

904(f)(1)(A)(i).

---

[26] This gap was filled when Treasury revised the Regulations in 2012, as explained
herein. Respondent is relying on the statute, not the 2012 Regulations to fill that
gap in this case.

[27] As stated above, in a recognition transaction, the income is recognized under §
1001 and sourced under the default rules. Section 904(f)(3)(A)(i) is concerned in

- 42 -

- App.265 -

Docket No. 341-21

The phrase "such gain will be treated as foreign source income subject to the same limitation as the income of the property generated," must be read in "context with the statutory language, which deems a taxpayer to have 'received and recognized income from sources without the United States…in an amount equal to the lesser of the fair market value of such property over the taxpayer's adjusted basis in such property or the remaining amount of the overall foreign losses.'" Resp. Op. Br. p. 37 (internal citations omitted). LGI's impermissible reading of § 1.904(f)-2(d)(1) to source *all* the excess gain as foreign source taxable income completely eliminates key words including "deemed" and "the lesser of" from the statute it interprets, and thus does the exact opposite of clarifying a purported statutory ambiguity, as LGI claims.

Under LGI's alternative argument, "lesser of" in § 904(f)(3) no longer limits the income re-sourced as foreign source taxable income, and so it serves no purpose. Such a reading runs afoul of the canon against superfluidity. *See*, Resp. Op. Br. pp. 34-36. Moreover, it is foreclosed by the absurdity doctrine LGI invokes, citing *Gen. Dynamics Corp. v. Commissioner*, 108 T.C. 107 (1997). As LGI states, "[t]he rules for interpreting a valid regulation are similar to those

---

that case with only sourcing the requisite amount of income to effectuate § 904(f)(1).

- 43 -

Docket No. 341-21

governing the interpretation of statutes. When construing … a regulation, we are to

give effect to its plain and ordinary meaning *unless to do so would produce absurd*

*results*. *Gen. Dynamics Corp.*, 108 T.C. at 121. *See*, Pet. Op. Br. p. 35, FN 61.

LGI's position produces absurd results by effectively striking the phrase "the

lesser of" the gain or the OFL account from the statute and treating all the gain

from the disposition as foreign source taxable income. Respondent's proper

interpretation gives effect to the plain and ordinary meaning and neither pushes the

regulation toward absurdity, nor does it effectively strike language from the

statute.[28] *See generally*, Resp. Op. Br. pp. 34-37 (discussing proper statutory

interpretation).

### 6.    The Regulations do Not Treat Recognition and Non-Recognition Transactions Differently in the Manner LGI Asserts.

LGI asserts that the regulation "explicitly cap[s] the amount of gain treated

as foreign-source income…for non-recognition transactions." Pet. Op. Br. p. 36.

*See also*, Treas. Reg. § 1.904(f)-2(d)(4). LGI also asserts that "Treasury

---

[28] It also appears that LGI's interpretation would additionally strike "deemed" from the statute. LGI's interpretation of the regulations require the sourcing of *all* the gain in a recognition transaction to be foreign source income, regardless of how such excess gain would be sourced under §§ 861 through 865. Thus, LGI also removes "deemed" from the statute so § 904(f)(3)(A)(i) effectively reads "shall receive and recognize foreign source taxable income in an amount equal to the gain on the disposition."

- 44 -

Docket No. 341-21

incorporated no cap for recognition transactions." Pet. Op. Br. p. 36. *See also*,

Treas. Reg. § 1.904(f)-2(d)(3). LGI's assertions are simply not true.

As stated above, § 1.904(f)-2(d)(3) is silent on the sourcing of income which

would be U.S. source income from a disposition, including how much U.S. source

income is re-sourced. However, silence on the issue doesn't give LGI the ability to

override the statute.

It's respondent's position that § 904(f)(3)(A)(i) clearly states that only the

amount required to recapture the OFL is deemed to be foreign source taxable

income. There is no need to source the excess gain because the Code already

provides sourcing through the default rules. LGI is attempting to parse language in

a manner that simply does not make any sense. Treas. Reg. § 1.904(f)-2(d)(3) and

(4) *both* require that the taxpayer is deemed to realize and recognize foreign source

taxable income to the extent required to recapture the OFL account.

Both recognition and non-recognition transactions are subject to a "cap" on

the amount of deemed foreign source taxable income under § 904(f)(3)(A)(i)

which is re-sourced as U.S. source income under § 904(f)(1). The "cap" is "the

lesser of" the gain or the OFL account. I.R.C. § 904(f)(3)(A)(i). Section

904(f)(3)(A)(i) and the regulations only address the requisite amount of income to

be deemed realized and recognized as foreign source taxable income to recapture

Docket No. 341-21

the OFL account for both recognition and non-recognition transactions. Any excess

gain was already income recognized under § 1001 and sourced by the default

sourcing rules.

### 7.    Treasury did Not Adopt a Rule Treating Excess Gain in Recognition Transactions as Foreign Source Taxable Income.

LGI asserts that the regulations and the example adopted a rule treating all

excess gain as foreign source income. Pet. Op. Br. p. 36-37. However, as explained

above, the regulations and the example do not support the proposition that

respondent adopted a rule to address fact patterns involving recognition

transactions which would result in U.S. source income under the default rules.

LGI's attempt to interpret the regulation and the example in § 1.904(f)-2(d)(7), Ex.

1, as *always* treating the excess gain in recognition transactions as foreign source

taxable income is without merit.

LGI erroneously imputes from an example that a regulation intentionally

made a rule to address a fact pattern like LGI's. Pet. Op. Br. p. 36. First, there are

no direct statements in the example that the excess gain *must* be foreign source

when the disposition would result in U.S. source under the default rule. Second, the

income on the disposition in Example 1 is foreign source taxable income under the

default rules, not U.S. source income.

- 46 -

Docket No. 341-21

Treas. Reg. § 1.904(f)-2(d)(7), Ex. 1, the excess gain is foreign source

income, not because the example adopted a rule that treats *all* excess gain as

foreign source, but because the gain on the disposition was foreign source income

under the default rules. LGI infers the answer it wants from an example that does

not address the question it is asking: how to source excess gain on a disposition

which was U.S. source income prior to the application of § 904(f)(3)(A)(i).

Respondent consistently contends that § 904(f)(3)(A)(i) deems foreign source

taxable income only to the extent required to recapture the OFL account under §

904(f)(1).

### B.    Respondent does Not Rely on the 2012 Amended Regulations.

As stated in respondent's opening brief, respondent is not relying on the

2012 amendment to the § 1.904(f)-2 regulations, retroactively applying the 2012

amended regulations, or disavowing his own regulations. Regardless, LGI's

assertions that the 2012 amended regulations changed the regulations are incorrect.

As stated above, respondent's position is clear and correct from a reading of the

statute and the regulations in place in 2010 and is not altered by the 2012 amended

regulations.

LGI asserts that the 2012 amended regulations "added the limitation that

Respondent seeks to impose in this case: that is, to cap the amount of gain from the

- 47 -

Docket No. 341-21

J:COM Sale treated as foreign-source income at 'the lesser of the balance in the overall foreign loss account or the full amount of the gain recognized on the disposition.'" Pet. Op. Br. p. 39. While LGI believes this is a change in the law, that is simply not the case.

The 2012 amendment to the regulations clarifies the unanswered question in § 1.904(f)-2(d)(3) in the 2010 regulations as to how to treat dispositions involving U.S. source income. The clarification in the 2012 amendment to treat the excess gain as U.S. source income is consistent with respondent's interpretation of § 904(f)(3)(A)(i). Regardless, respondent is not relying on the 2012 amendment to the regulations in this case.

### C.    Respondent does Not Disavow Its Own Regulations.

Respondent is not disavowing the regulations. Respondent interprets § 1.904(f)-2(d) in the context of § 904(f)(3)(A)(i), and the Code in general, which provides the result respondent articulates. LGI's arguments that respondent is arguing against published guidance, its regulations, or administrative practice are unsupported. Pet. Op. Br. pp. 41-42. The only possible way that LGI could assert that respondent is disavowing its regulations would be if respondent was applying the 2012 Amended regulations *and* those amended regulations clearly provided a result that is contrary to the respondent's interpretation. However, as clearly stated

- 48 -

Docket No. 341-21

above and in his opening brief, respondent is interpreting the regulation in the context of the statute. LGI's position that respondent is disavowing the regulations stems only from its misreading of the statute and regulations.

**V.    Petitioner is Permitted to Elect to Deduct its Foreign Taxes Paid.**

Respondent does not dispute that LGI may elect to deduct its foreign taxes paid and reverse the § 78 Gross-Up.

- 49 -

Docket No. 341-21

## VI.  Conclusion.

It follows that the determination of the Commissioner of Internal Revenue

should be sustained.

WILLIAM M. PAUL
Acting Chief Counsel
Internal Revenue Service


Date: <u>August 11, 2023</u>          By: _____

MATTHEW J. AVON
Special Trial Attorney
(Strategic Litigation)
Tax Court Bar No. AM0304
33 Maiden Lane
New York, NY 10038
Telephone: (646) 259-8012
Matthew.J.Avon@irscounsel.treas.gov


TIMOTHY L. SMITH
Special Trial Attorney
(Strategic Litigation)
Tax Court Bar No. ST0479
51 S.W. First Avenue, Suite 1114
Miami, FL 33130
Telephone: (305) 982-5335
Timothy.L.Smith@irscounsel.treas.gov


OF COUNSEL:
KATHRYN F. PATTERSON
Division Counsel
(Strategic Litigation)

- 50 -

Docket No. 341-21
JOHN M. ALTMAN
Deputy Division Counsel
(Strategic Litigation)
JOHN A. GUARNIERI
Strategic Litigation Counsel
(Strategic Litigation)

**LGI'S SIMULTANEOUS REPLY BRIEF,
T.C. DOC. 37 (AUG. 11, 2023)**

**Received**
08/11/23 08:26 pm

**Filed**
08/11/23

Liberty Global, Inc.,

      Petitioner

      v.

Commissioner of Internal Revenue

      Respondent

Electronically Filed

Docket No. 341-21

Document No. 37

# Simultaneous Reply Brief

**Received**

08/11/23 08:26 pm

**Filed**

08/11/23

Liberty Global, Inc.,

   Petitioner

  v.

Commissioner of Internal Revenue

   Respondent

Electronically Filed

Docket No. 341-21

Document No. 37

# Simultaneous Reply Brief

# UNITED STATES TAX COURT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LIBERTY GLOBAL, INC.,

                         :

               Petitioner,

                         :

     - v -

                         :  Docket No. 341-21

COMMISSIONER OF INTERNAL
REVENUE,

                         :  Judge Toro

              Respondent.    :  Filed Electronically

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## PETITIONER'S SIMULTANEOUS REPLY BRIEF

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................1

ARGUMENT .......................................................................................4

    I.    The Plain Meaning of the Statute Supports LGI's Interpretation .........4

        A.    Respondent's "Plain Meaning" Argument is Flawed ................7

        B.    Respondent's Attempts to Override Plain Language are Meritless ....................................................................................11

            1.    The Absurd Results Canon Is Inapplicable ...................11

            2.    LGI's Interpretation Follows Clear Language ..............15

        C.    Respondent Eschews the Statute's Plain Text and Improperly Relies on Legislative Purpose ...............................17

    II.    Alternatively, the Statute is Ambiguous and the Regulations Favor LGI ......................................................................................19

        A.    The Statute Is Ambiguous on the Relevant Sourcing Question ...................................................................................20

        B.    The Statute's "Lesser Of" Language Does Not Resolve This Ambiguity .........................................................................24

        C.    The IRS Does Not Contest LGI's Regulatory Interpretation ..............................................................................25

CONCLUSION ...................................................................................28

i

# TABLE OF AUTHORITIES

**CASES**                                                                    Page(s)

*Applied Research Associates, Inc. & Affiliate v. Commissioner*,
    143 T.C. 310 (2014)..................................................................26

*Atlanta Athletic Club v. Commissioner*,
    980 F.2d 1409 (11th Cir. 1993) .................................................13

*Brown Group, Inc. v. Commissioner*,
    77 F.3d 217 (8th Cir. 1996) ......................................................13

*Clayton v. Commissioner*,
    52 T.C. 911 (1969).....................................................................9

*Coggin Automotive Corp. v. Commissioner*,
    292 F.3d 1326 (11th Cir. 2002) .......................................13, 14, 15

*Commissioner v. Schleier*,
    515 U.S. 323 (1995)..................................................................16

*CRI-Leslie, LLC v. Commissioner*,
    147 T.C. 217 (2016), *aff'd*, 882 F.3d 1026 (11th Cir. 2018).........................17

*Field v. Napolitano*,
    663 F.3d 505 (1st Cir. 2011).......................................................9

*Food Marketing Institute v. Argus Leader Media*,
    139 S. Ct. 2356 (2019)..............................................................19

*Fowler v. Commissioner*,
    98 T.C. 503 (1992)....................................................................13

*General Dynamics Corp. v. Commissioner*,
    108 T.C. 107 (1997)..................................................................22

*Gitlitz v. Commissioner*,
    531 U.S. 206 (2001)........................................................13, 14, 17

*Hanover Bank v. Commissioner*,
    369 U.S. 672 (1962)..........................................................12, 13

ii

*Hillman v. IRS*,
    263 F.3d 338 (4th Cir. 2001) .......................................................... 11

*Little Sisters of the Poor Saints Peter and Paul Home v. Pennsylvania*,
    140 S. Ct. 2367 (2020) ................................................................... 11

*Loughrin v. United States*,
    573 U.S. 351 (2014) ....................................................................... 22

*Mayo Foundation for Medical Education & Research v. United States*,
    562 U.S. 44 (2011) ......................................................................... 17

*Miller v. Commissioner*,
    836 F.2d 1274 (10th Cir. 1988) ..................................................... 18

*National Credit Union Administration Board v. Nomura Home Equity Loan, Inc.*,
    764 F.3d 1199 (10th Cir. 2014) ..................................................... 21

*National Federation of Independent Business v. Sebelius*,
    567 U.S. 519 (2012) ....................................................................... 17

*Patients Mutual Assistance Collective Corp. v. Commissioner*,
    151 T.C. 176 (2018), *aff'd*, 995 F.3d 671 (9th Cir. 2021) ....................... 11, 12

*St. Charles Investment Co. v. Commissioner*,
    232 F.3d 773 (10th Cir. 2000) ................................................. 12, 18

*United Therapeutics Corp. v. Commissioner*,
    160 T.C. No. 12, slip op. (May 17, 2023) ..................................... 15

*Whistleblower 972-17W v. Commissioner*,
    159 T.C. No. 1, slip op. (July 13, 2022) ....................................... 18

*Woods Investment Co. v. Commissioner*,
    85 T.C. 274 (1985) ........................................................................ 26

## STATUTES & REGULATIONS

I.R.C. § 104(a)(2) ................................................................................ 16, 17

I.R.C. § 312 ........................................................................................... 26

I.R.C. § 337 ........................................................................................... 10

I.R.C. § 865(e)(1) (1987) .........................................................................27

I.R.C. § 904 .............................................................................................8

I.R.C. § 904(f) ...............................................................................25, 26, 27

I.R.C. § 904(f)(3) ...............................................................................passim

I.R.C. § 1245 ............................................................................................9

I.R.C. § 1362 ..........................................................................................14

I.R.C. § 1363(d) ......................................................................................14

I.R.C. § 3121(b)(10) ................................................................................17

Treas. Reg. § 1.904(f)-2(d)(1)..........................................................3, 21, 28

Treas. Reg. § 1.904(f)-2(d)(3)..................................................................22

Treas. Reg. § 1.904(f)-2(d)(4)..................................................................22

Treas. Reg. § 1.904(f)-2(d)(7)..................................................................23

## OTHER AUTHORITIES

H.R. Rep. No. 108-755 (2004) (Conf. Rep.) ...........................................19

Tax Reform Act of 1986, Pub. L. No. 99-514, 100 Stat. 2085................27

T.D. 8153, 1987-2 C.B. 174......................................................................27

iv

# INTRODUCTION

The dispute in this case centers around a single Code[1] provision—§ 904(f)(3)(A)(i)—and regulations issued thereunder. Respondent's position in this case relies on a flawed, purposive interpretation of the statute that is at odds with the statutory text. Moreover, Respondent's interpretation of the regulations is inextricably linked to, and not distinct from, his statutory interpretation. Therefore, in order to rule for Respondent, the Court would need to hold that the statute **_unambiguously_** supports Respondent's flawed interpretation. If the Court finds **_either_** that the plain meaning of the text supports LGI's position **_or_** that the statute is ambiguous, then Respondent's arguments necessarily fail.

As detailed in LGI's Opening Brief, the plain language of section 904(f)(3)(A)(i) provides a specific, mandatory rule establishing the amount of gain that LGI "shall recognize" in connection with the J:COM Sale. Under that rule, LGI was required to recognize gain in an amount equal to its OFL account balance. Thus, under its primary argument, LGI is entitled to reduce its taxable income reported for its 2010 Tax Year.

---

[1]   All capitalized terms not defined herein have the same meaning as in LGI's Opening Brief.

1

Respondent's arguments in response to LGI's primary position are full of inconsistencies and should be rejected. Respondent initially acknowledges that "the interpretation of a statute begins with the text of the law."[2] Respondent's attempt to refute LGI's position, however, scarcely mentions the text of section 904(f)(3)(A)(i). Instead, Respondent proposes a purposive interpretation of that provision that ignores and even contradicts the plain language of the statute. To give just one example of these contradictions, Respondent argues that section 904(f)(3)(A)(i) affects only the source—and not the ***amount***—of income recognized from the J:COM Sale. However, Respondent separately acknowledges that the exact same provision ***does*** establish the ***amount*** of income recognized for other transactions. Respondent offers no textual explanation for this inconsistency, and indeed no explanation exists. As detailed below, Respondent's attempts to avoid the plain language of section 904(f)(3)(A)(i) are meritless.

In the alternative, should the Court determine that section 904(f)(3)(A)(i) does not fix the amount of gain recognized from the J:COM Sale at "an amount equal to" LGI's OFL account balance, then all of the gain recognized by LGI on that transaction must be treated as foreign-source income. Section 904(f)(3)(A)(i) is ambiguous as to the source of any income in excess of a taxpayer's OFL account

---

[2]     IRS Opening Brief at 29, Dkt. 34.

balance, and the regulations in force and effect at the time of the J:COM Sale unambiguously provide that all gain recognized on that transaction "will be treated as foreign source income." Treas. Reg. § 1.904(f)-2(d)(1). Accordingly, under this alternative position, LGI is entitled to claim the foreign tax credits disallowed in Respondent's Notices of Deficiency.

Respondent fares no better with his responses to LGI's alternative position. On this point, Respondent's argument rests almost entirely on his position that the plain language of section 904(f)(3)(A)(i) unambiguously provides that only the amount of gain "equal to the lesser of" the built-in gain or the taxpayer's OFL account balance can be treated as foreign-source income. However, to the extent that the statute does not limit the amount of gain recognized, that does not clearly prescribe the source of income in excess of the taxpayer's OFL account balance. And on that point—the very dispute between the parties—Respondent's own regulations contradict his argument here. Those regulations clearly provide that amounts *in excess* of the taxpayer's OFL account balance are treated as foreign-source income.

For those reasons and as discussed below, decision should be entered in favor of LGI.

**ARGUMENT**

As detailed below, LGI is entitled to reduce the amount of gain it reported in connection with the J:COM Sale. The plain language of section 904(f)(3)(A)(i) overrides all other provisions of Chapter 1 of the Code and operates to limit the gain recognized on the J:COM Sale to the amount of LGI's OFL account. Respondent's attempts to avoid that result are meritless. Indeed, his reading of section 904(f)(3)(A)(i) contradicts the text of the statute without any legal justification for doing so.

Alternatively, if the Court determines that section 904(f)(3)(A)(i) does not unambiguously support this interpretation, then it follows that the statute is (at a minimum) ambiguous. And in the face of that ambiguity, the applicable regulations control. The regulations in force and effect at the time of the J:COM Sale unambiguously support LGI's position that all gain recognized on the J:COM Sale is treated as foreign-source income, as Respondent essentially concedes in his brief. Thus, any gain recognized by LGI in excess of its OFL account balance is foreign-source income, and LGI is entitled to its claimed foreign tax credits.

**I.    The Plain Meaning of the Statute Supports LGI's Interpretation**

As Respondent himself recognizes, "[t]he canons of statutory construction dictate that the interpretation of a statute begins with the text of the law, giving

4

effect to the plain meaning."[3] Here, the plain language of section 904(f)(3)(A)(i)

provides that the amount of income that LGI must recognize from the J:COM Sale

is "equal to the lesser of" the built-in gain in the J:COM Stock and LGI's OFL

account balance.[4] The statute provides:

> For purposes of this chapter, if property which has been used predominantly without the United States in a trade or business is disposed of during any taxable year . . . the taxpayer, ***notwithstanding any other provision of this chapter*** (other than [§ 904(f)(1)]), ***shall be deemed to have received and recognized taxable income*** from sources without the United States in the taxable year of the disposition, by reason of such disposition, ***in an amount equal to the lesser of*** the excess of the fair market value of such property over the taxpayer's adjusted basis in such property or the remaining amount of the overall foreign losses which were not used under [§ 904(f)(1)] for such taxable year or any prior taxable year.[5]

Under the statutory text, section 904(f)(3)(A)(i):

1) Controls when the taxpayer: (i) has an OFL account balance and

   (ii) disposes of Qualified Property. These conditions are indisputably met in

   LGI's case, and thus section 904(f)(3)(A)(i) is controlling.

2) Is a single provision that creates rules applicable to both recognition and

   nonrecognition transactions. Indeed, section 904(f)(3)(B)(i) unambiguously

---

[3]   IRS Opening Brief at 29 (citing *Patients Mutual Assistance Collective Corp. v. Commissioner*, 151 T.C. 176, 191 (2018)).

[4]   *See* LGI Opening Brief at 17-23, Dkt. 35.

[5]   Section 904(f)(3)(A), (A)(i) (emphasis added).

defines "disposition" to include transfers in any transaction, whether a recognition or nonrecognition transaction.

3) Establishes a rule for "recogniz[ing] taxable income" from dispositions of Qualified Property.[6] In fact, Respondent acknowledges that the statute is a taxation provision, causing recognition of gain for transactions that otherwise would be nonrecognition transactions.[7]

4) Applies "notwithstanding any other provision" in Chapter 1 of the Code, other than section 904(f)(1), thus overriding the other recognition and nonrecognition provisions therein.[8]

5) Provides that its rules are mandatory and that taxpayers and the IRS "shall" follow the statute's income-recognition and income-sourcing rules.[9]

6) Explicitly establishes how much income is recognized on a qualifying disposition: the amount "***equal to the lesser of***" (1) the excess of the fair market value of the disposed-of Qualified Property over the taxpayer's

---

[6]   Section 904(f)(3)(A)(i).

[7]   IRS Opening Brief at 42.

[8]   Section 904(f)(3)(A)(i).

[9]   *Id.*

adjusted basis in such property; or (2) the remaining amount of the

taxpayer's OFL account balance.[10]

Accordingly, the terms of the statute support LGI's reading that it was required to

recognize gain on the J:COM Sale in an amount equal to its OFL account balance.

A.    Respondent's "Plain Meaning" Argument is Flawed

Although Respondent pays lip service to the primacy of statutory text, his

response to LGI's interpretation of the statute scarcely mentions any text from

section 904(f)(3).[11] Instead, Respondent quickly jumps to an argument based on his

view of the "purpose of the statute."[12] In so doing, Respondent advocates for a

reading of section 904(f)(3)(A)(i) that is internally inconsistent and completely

untethered from Congress's text in three distinct ways.

*First*, the heart of Respondent's problem is that he would read the relevant

statute to apply one way for nonrecognition transactions and another for

recognition transactions. Respondent acknowledges that section 904(f)(3)(A)(i)

operates to override ***nonrecognition*** treatment for certain transactions, causing

taxpayers to recognize income from transactions that would not otherwise give rise

---

[10]   Section 904(f)(3)(A)(i) (emphasis added).

[11]   *See* IRS Opening Brief at 39-44.

[12]   *Id.* at 41.

to income under the Code.[13] For ***recognition*** transactions, on the other hand, Respondent suggests that the same provision applies "just to income sourcing to determine the limit on the allowable foreign tax credit."[14] Respondent offers no textual support for this position, instead appealing simply to the overall purpose of section 904.[15] The text of the statute provides otherwise. Congress drafted a ***single*** statutory provision relevant here: section 904(f)(3)(A)(i). And Congress provided that the provision applies to any "disposition," which it expressly defined to include a "sale, exchange, distribution, or gift of property ***whether or not gain or loss is recognized on the transfer***."[16] Respondent's position—that the statute establishes separate regimes for recognition transactions and for nonrecognition transactions—has no textual basis. To the contrary, the text of section 904(f)(3) demonstrates that Congress created a single rule applicable to both recognition and nonrecognition transactions ***in the exact same way***.[17]

***Second***, Respondent selectively applies the statutory rule that section 904(f)(3)(A)(i) applies "notwithstanding" other provisions of Chapter 1 of

---

13   *Id.* at 22.

14   *Id.* at 40.

15   *Id.* at 41.

16   Section 904(f)(3)(B)(i) (emphasis added).

17   LGI Opening Brief at 25.

8

the Code. Respondent concedes that this phrase overrides the Code's general nonrecognition provisions such that "nonrecognition transactions become recognition transactions."[18] However, without any statutory support whatsoever, Respondent asserts that "Section 904(f)(3) [d]oes [n]ot [o]verride § 1001."[19] In other words, Respondent argues that section 904(f)(3)(A)(i) operates to determine the amount of "gain recognized *only* in the context of what would otherwise be a nonrecognition transaction."[20] But nothing in the statutory text indicates that when Congress created a rule that applied "notwithstanding" any other provision of Chapter 1 of the Code, it intended to override only nonrecognition provisions. To the contrary, Respondent's position is directly contrary to the text of the statute, because section 1001 is undisputedly part of Chapter 1 of the Code. Moreover, as discussed in LGI's Opening Brief, "the use of such a 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of *any other section*."[21] Thus, the statute is

---

[18]  IRS Opening Brief at 22.

[19]  *Id.* at 40.

[20]  *Id.* at 41 (emphasis added).

[21]  LGI Opening Brief at 20 (citing *Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993) (emphasis added)). *See also Field v. Napolitano*, 663 F.3d 505, 511 (1st Cir. 2011) (citing *Cisneros*); *Clayton v. Commissioner*, 52 T.C. 911, 913 (1969) (holding that section 1245, which requires gain recognition notwithstanding any
*(cont'd)*

9

properly read to override both the nonrecognition provisions of Chapter 1 and the recognition provisions.

*Third*, Respondent ignores that, under section 904(f)(3)(A)(i), the taxpayer "*shall* be deemed to have received and recognized taxable income" in an amount "*equal to the lesser of*" the gain on disposition or the OFL account balance.[22] This is a mandatory provision establishing an exact amount to be recognized for *both* recognition and nonrecognition transactions. However, with no basis in the statutory text, Respondent ignores this clear mandate in the case of recognition transactions. Instead, Respondent views "shall" to create a mandate only in the case of *nonrecognition* transactions, and—contrary to his own cited statutory canons[23]—reads "equal to" completely out of the statute for recognition transactions.

Thus, Respondent's interpretation conflicts with the plain text of the statute. That interpretation must be rejected because "[i]t is not for [the Court] to rewrite

---

other provision of the relevant subtitle of the Code, "overrides section 337 with the consequence that the gain involved must be recognized").

[22] Respondent makes much of the statute's "lesser of" language in his brief, arguing that LGI reads that language out of the statute. *See* IRS Opening Brief at 34-39. Respondent's argument—addressed *infra* pp. 20-24—focuses exclusively on the sourcing of any gain recognized. With respect to the gain-recognition aspect of section 904(f)(3)(A)(i), Respondent reads that language out of the statute without offering any textual justification for doing so.

[23] IRS Opening Brief at 34-36.

10

the statute so that it covers only what [the Court] think[s] is necessary to achieve what [the Court] think[s] Congress really intended."[24]

B.    Respondent's Attempts to Override Plain Language are Meritless

Respondent offers two justifications for his attempt to set aside the plain text of section 904(f)(3)(A)(i): (1) because his interpretation is necessary to avoid perceived absurd results, and (2) because exemptions from income must be narrowly construed. Each argument is without merit.

1.    *The Absurd Results Canon Is Inapplicable*

Respondent attempts to overcome the plain language of the statute by arguing that LGI's interpretation produces "absurd" results.[25] Respondent is mistaken.

While courts have, on occasion, interpreted statutes to avoid absurd results, the instances where courts deviate from applying the plain meaning of the text "are, and should be, exceptionally rare."[26] In fact, in the case Respondent cites to support his reading of the absurdity doctrine—*Patients Mutual Assistance*

---

[24]   *Little Sisters of the Poor Saints Peter and Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2381 (2020) (quoting *Lewis v. Chicago*, 360 U.S. 205, 215 (2010)).

[25]   IRS Opening Brief at 43.

[26]   *Hillman v. IRS*, 263 F.3d 338, 342 (4th Cir. 2001) (quoting *Sigmon Coal Co. v. Apfel*, 226 F.3d 291, 304 (4th Cir. 2000)).

*Collective Corp.*[27]—this Court acknowledged that "a legislature might enact an absurdity, and our job as judges would be to enforce it."[28] In any case, the Court in *Patients Mutual* did not deviate from the plain text of the statute; rather, it found that the statutory text was ambiguous. This is not such a case. As Respondent himself acknowledges, the language of section 904(f)(3)(A)(i) ***must*** be read to establish a rule for the amount of gain recognized for a qualifying disposition.[29] Once the decision is reached that this statute operates to establish the amount of gain recognized for some transactions, it would be absurd to read the statute as not governing gain recognition for other transactions.

In support of his position that LGI's reading yields absurd results, Respondent simply states that the reading would give taxpayers a windfall by "excluding . . . income" in excess of their OFL account balance.[30] However, even in cases where it appears to result in a windfall to the taxpayer, courts must follow the plain meaning of the text.[31] Indeed, the Supreme Court in *Hanover Bank v.*

---

[27]  151 T.C. at 191 (2018), *aff'd*, 995 F.3d 671 (9th Cir. 2021).

[28]  *Id*. at 192.

[29]  IRS Opening Brief at 42.

[30]  *Id.* at 43.

[31]  *See, e.g.*, *St. Charles Inv. Co. v. Commissioner*, 232 F.3d 773, 779 (10th Cir. 2000) (observing that "[i]n the past we have held that the Internal Revenue Code should not be interpreted to grant the taxpayer a windfall absent unequivocal support for such a result in the statutory text. [W]e find that in this

*(cont'd)*

12

*Commissioner*[32] has clearly stated that it is "not at liberty, notwithstanding the apparent tax-saving windfall bestowed upon taxpayers, to add to or alter the words employed to effect a purpose which does not appear on the face of the statute."[33] The Supreme Court further reiterated in *Gitlitz v. Commissioner*[34] that if "the Code's plain text permits the taxpayers . . . to receive [such] benefits, [the court] need not address [Respondent's] policy concern."[35]

---

case the language of section 469 is sufficiently unequivocal to require this result"); *Brown Grp., Inc. v. Commissioner*, 77 F.3d 217, 222 (8th Cir. 1996) ("Although our holding may result in a tax windfall to the Brown Group due to the particularized definition of 'related person' under the pre-1987 version of section 954(d)(3) of the Internal Revenue Code, such a tax loophole is not ours to close but must rather be closed or cured by Congress."); *Coggin Auto. Corp. v. Commissioner*, 292 F.3d 1326 (11th Cir. 2002); *Atlanta Athletic Club v. Commissioner*, 980 F.2d 1409, 1414-15 (11th Cir. 1993) (stating "Congress enacted this tax provision; if it is too generous, the power to tighten it also rests with Congress. . . . 'It may be that the statute gives an undeserved benefit to a particular class of taxpayers . . . . [But] [w]e can no more grant relief to the Government from hardships than we could to a taxpayer.'" (alterations in original) (citation omitted)); *Fowler v. Commissioner*, 98 T.C. 503, 510 (1992) (stating that "a literal reading may . . . produce results that were not anticipated by Congress at the time the statute was originally drafted, but this consequence is not sufficient, in and of itself, to warrant a departure from the plain meaning of the statute. . . . [I]t is up to Congress, and not the courts, to deal with the inadequacies.").

[32]   369 U.S. 672 (1962).

[33]   *Id*. at 687.

[34]   531 U.S. 206 (2001).

[35]   *Id*. at 220.

Lower courts have consistently applied the principle set forth in *Gitlitz*. In *Coggin*, a holding company ("Coggin") owned several operating subsidiaries that made elections to account for inventory under the last-in first-out ("LIFO") method. Coggin itself never made a LIFO election because, as a pure holding company, it did not own any inventory. Pursuant to a structural reorganization, the subsidiaries were liquidated into Coggin and Coggin then elected Subchapter S status under section 1362.

Section 1363(d), as in effect, provided that (1) if an S corporation was a C corporation before the S election, and (2) "the corporation inventoried goods under the LIFO method" for the last taxable year preceding the election, then a LIFO recapture amount had to be included in gross income. Coggin did not inventory any goods at any point in time, thus this recapture rule was inapplicable by its plain terms. Nonetheless, the Commissioner attempted to require Coggin to recognize the section 1363(d) gain. The Eleventh Circuit, citing *Gitlitz*, refused to eschew plain language "in order to close what [the Tax Court] perceives to be a loophole."[36] As the court correctly recognized, taxpayers who enter into "a legitimate business transaction" have "the right to be able to" rely on "the plain meaning of the statute."[37] This is true even if the plain meaning of the statute

---

[36]  292 F.3d at 1332.

[37]  *Id*. at 1333.

confers a potentially unintended tax benefit—"[a]ny potential windfall to holding companies must be cured by Congress, not the judiciary."[38]

So too here. If the Court were to follow Respondent's interpretation, it "would require that [the Court] ignore 'the ordinary, contemporary, common meaning' of the duly enacted statute that gave [LGI] the very benefit it seeks."[39] Thus, in the face of the statute's plain text, Respondent's flawed, purpose-driven interpretation must be rejected.

### 2.    *LGI's Interpretation Follows Clear Language*

Respondent also argues that LGI's position should be rejected because "when excluding items from taxable income, Congress uses unmistakable language."[40] Respondent's argument fails for two reasons.

***First***, section 904(f)(3)(A)(i) does use clear and unmistakable language that operates to "exclude" income. The statute provides that the taxpayer "shall be deemed to have received and recognized taxable income from sources without the United States . . . ***in an amount equal to***" the lesser of the OFL balance or fair

---

[38]  *Id*. at 1334.

[39]  *United Therapeutics Corp. v. Commissioner*, 160 T.C. No. 12, slip op. at *14 (May 17, 2023).

[40]  IRS Opening Brief at 42.

15

market value over basis.[41] Thus, the statutory text provides for gain recognition in a specific amount. Indeed, under Respondent's own view, that language unambiguously and specifically overrides other Code provisions such that it requires taxpayers "to recognize taxable income" even in connection with "what would otherwise be a nonrecognition transaction."[42] But Respondent provides no explanation why this language, which clearly overrides some gain recognition provisions, is not sufficiently clear to override others.

*Second*, the case law Respondent cites is wholly inapposite because the dispute in the cited cases is whether a statutory provision applies at all in the first instance, not whether the statute itself provides for an exclusion to income. For example, in *Commissioner v. Schleier* the parties had a dispute as to whether a portion of a settlement was excludable from gross income.[43] The central issue in the case was whether a portion of the settlement attributable to liquidated damages constituted "damages received . . . on account of personal injuries or sickness" and was therefore excludable under section 104(a)(2).[44] In other words, the question was whether the relevant transaction was among those transactions covered by

---

[41]  Section 904(f)(3)(A)(i) (emphasis added).

[42]  IRS Opening Brief at 42.

[43]  515 U.S. 323, 327-28 (1995).

[44]  *Id*. at 323.

16

section 104(a)(2). Here, there is no such dispute. Indeed, the parties agree that the J:COM Sale is among the categories of transactions covered by section 904(f)(3)(A)(i).[45]

C.    Respondent Eschews the Statute's Plain Text and Improperly Relies on Legislative Purpose

Finally, Respondent argues that the legislative purpose of section 904(f)(3) supports his reading of the text. This is misguided for two reasons. ***First***, legislative history and purpose may not be used to contradict the plain text of an unambiguous statute. ***Second***, even if relevant, the legislative history does not support Respondent's position.

Courts may "look beyond the plain meaning of the words used in the statute only when their meaning is 'inescapably ambiguous.'"[46] And where the statute is clear, that is the end of the inquiry because "the best evidence of Congress's intent is the statutory text."[47] Here, the statute mandates that gain is recognized ***only to***

---

[45]    The dispute in *Mayo Foundation for Medical Education v. United States*, 562 U.S. 44 (2011) was similar. There, the question was whether medical residents properly were "students" under section 3121(b)(10) of the Code.

[46]    *CRI-Leslie, LLC v. Commissioner*, 147 T.C. 217, 224 (2016) (quoting *Venture Funding, Ltd. v. Commissioner*, 110 T.C. 236, 241-242 (1998), *aff'd without published opinion*, 198 F.3d 248 (6th Cir. 1999)), *aff'd*, 882 F.3d 1026 (11th Cir. 2018).

[47]    *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 544 (2012). *See also Gitlitz*, 531 U.S. 206.

17

***the extent of*** the OFL account balance. LGI's position merely follows the plain statutory formula for determining the amount of foreign-source gain.

Even if the legislative history were relevant to the analysis, which it is not, such legislative history must be "sufficiently specific, clear and uniform" to be a "reliable indicator of intent" and may not be used to "create" ambiguity.[48] Here, the legislative history cited by Respondent adds nothing beyond the statutory text. For example, Respondent points to a Senate Finance Committee report from 1976, which states:

> [W]here a taxpayer on the overall limitation reduces U.S. tax on domestic income by means of a loss from foreign sources, the committee believes that this tax benefit should be subject to recapture by the United States when foreign source income is subsequently derived.[49]

The above language merely serves to establish that Congress sought to create a set of rules for OFL recapture. Respondent also cites a 2004 Conference Report, which parrots the statutory language:

---

[48]  *Miller v. Commissioner*, 836 F.2d 1274, 1282-83 (10th Cir. 1988). *See also Whistleblower 972-17W v. Commissioner*, 159 T.C. No. 1, slip. op. at *11 (July 13, 2022) ("Even [members of the Supreme Court] who sometimes consult legislative history will never allow it to be used to 'muddy' the meaning of 'clear statutory language.'" (alterations in original) (citations omitted)); *St. Charles Inv. Co.*, 232 F.3d at 776 (stating "legislative history may not be used to create ambiguity in the statutory language" (citing *United States v. Richards*, 583 F.2d 491, 495 (10th Cir. 1978)).

[49]  IRS Opening Brief at 16 (quoting S. Rep. No. 94-938, pt. 1, at 236 (1976); H.R. Rep. No. 94-658, at 228-229 (1976)).

Under the provision, the special recapture rule for overall foreign losses that currently applies to dispositions of foreign trade or business assets applies to the disposition of stock in a controlled foreign corporation controlled by the taxpayer. Thus, a disposition of controlled foreign corporation stock by a controlling shareholder results *in the recognition of foreign-source income in an amount equal to the lesser of the fair market value of the stock over its adjusted basis, or the amount of prior unrecaptured overall foreign losses*. Such income is [recharacterized] as U.S.-source income for foreign tax credit limitation purposes without regard to the 50-percent limit.[50]

This language mirrors the statutory text, adding no further "clarity" that could undermine the plain statutory meaning. In fact, the legislative history states even more clearly that LGI's qualifying disposition "results in the recognition" of income in the amount of LGI's OFL account balance.[51]

*     *     *     *     *

Where "a careful examination of the ordinary meaning" of the statute "yields a clear answer, judges must stop."[52] Here, the analysis begins and ends with the statutory text, which clearly supports LGI's position.

## II.    Alternatively, the Statute is Ambiguous and the Regulations Favor LGI

For the reasons set forth above, the text of section 904(f)(3)(A)(i) must be read to require that the gain recognized on the J:COM Sale is equal to LGI's OFL

---

[50]  H.R. Rep. No. 108-755, at *766 (2004) (Conf. Rep.) (emphasis added); IRS Opening Brief at 17-18.

[51]  H.R. Rep. No. 108-755, at *766 (2004) (Conf. Rep.).

[52]  *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019).

19

account balance. If the Court agrees with that reading, then it should decide for LGI.

If it determines that the statute should not be interpreted that way, then the Court must determine the source of any gain in excess of LGI's OFL account balance. On this point, the statute is ambiguous with the result dictated by the governing regulations: all such gain is treated as foreign-source income.

A.    <u>The Statute Is Ambiguous on the Relevant Sourcing Question</u>

Section 904(f)(3)(A)(i) does not clearly answer the question presented under LGI's alternative argument—the source of any gain recognized in excess of LGI's OFL account balance. The ambiguity of the statute on this point is demonstrated in two ways.

***First***, Respondent's own view of the interpretation of the statute necessarily creates ambiguity. Indeed, Respondent's position depends on his view that the Court must look past the plain language of the statute and interpret based on something other than plain language. To give just one example, the text of section 904(f)(3)(A)(i) provides a single rule that applies to all transactions, yet Respondent adopts an interpretation which applies inconsistently to recognition

and nonrecognition transactions. This is only permissible if the statute is "susceptible to more than one interpretation," and therefore ambiguous.[53]

    ***Second***, assuming that section 904(f)(3)(A)(i) allows for gain to be recognized in excess of the taxpayer's OFL account balance, the statute provides no explanation for how income that exceeds such amount should be sourced.[54] Resolving that ambiguity, the Regulations provide rules that unambiguously answer that question: all such income is treated as foreign-source income. Specifically, Treasury Regulation section 1.904(f)-2(d)(1) provides that:

> If a taxpayer disposes of property used or held for use predominantly without the United States in a trade or business during the taxable year and that property generates foreign source taxable income subject to a separate limitation to which [Treas. Reg. § 1.904(f)-2(a)] is applicable, (i) gain will be recognized on the disposition of such property, (ii) ***such gain will be treated as foreign source income subject to the same limitation as the income the property generated***, and (iii) the applicable overall foreign loss account shall be recaptured as provided in [Treas. Reg. § 1.904(f)-2(d)(2), (d)(3), and (d)(4)].[55]

The regulations thus unambiguously support LGI's position that all gain is foreign-source income because:

---

[53]   *Nat'l Credit Union Admin. Bd. v. Nomura Home Equity Loan, Inc.*, 764 F.3d 1199, 1226 (10th Cir. 2014) (quoting *Wright v. Fed. Bureau of Prisons*, 451 F.3d 1231, 1235 (10th Cir. 2006)).

[54]   *See* LGI Opening Brief at 32-34.

[55]   Emphasis added.

- ▪ The plain text reading of the regulation provides that the gain "will be treated as foreign source income," and such reading must be given full force and effect.[56]

- ▪ Treasury ***explicitly*** capped the amount of gain treated as foreign-source income for nonrecognition transactions,[57] yet incorporated no cap for recognition transactions,[58] which is presumed to be intentional.[59]

- ▪ Treasury's decision to treat as foreign-source income all income from dispositions of Qualified Property—even the amount exceeding the OFL account balance—is explicitly supported by the examples provided in the regulations.

---

[56] *Gen. Dynamics Corp. v. Commissioner*, 108 T.C. 107, 121 (1997) ("The rules for interpreting a valid regulation are similar to those governing the interpretation of statutes. When construing . . . a regulation, we are to give effect to its plain and ordinary meaning unless to do so would produce absurd results." (citations omitted)).

[57] Treas. Reg. § 1.904(f)-2(d)(4).

[58] *Compare* Treas. Reg. § 1.904(f)-2(d)(4) (capping foreign source income based on a formula), *with* Treas. Reg. § 1.904(f)-2(d)(3) (describing recapture of the OFL account in recognition transactions with no limitation on the amount of foreign source income).

[59] *See Loughrin v. United States*, 573 U.S. 351, 358 (2014) ("We have often noted that when 'Congress includes particular language in one section of a statute but omits it in another'—let alone in the very next provision—this Court 'presume[s]' that Congress intended a difference in meaning." (alteration in original) (citation omitted)).

Specifically, Example 1 of Treasury Regulation section 1.904(f)-2(d)(7) states, in full:

> X Corporation has a balance in its general limitation overall foreign loss account of $600 at the close of its taxable year ending December 31, 1984. In 1985, X sells assets used predominantly outside the United States in a trade or business and recognizes $1,000 of gain on the sale under section 1001. This gain is subject to the general limitation. This sale is a disposition within the meaning of paragraph (d)(5)(i) of this section, and to which this paragraph (d) applies. X has no other foreign source taxable income in 1985 and has $1,000 of United States source taxable income. Under paragraph (c), X is required to recapture $500 (the lesser of the balance in X's general limitation overall foreign loss account ($600) or 50 percent of $1,000) of its overall foreign loss account. The balance in X's general limitation overall foreign loss account is reduced to $100 in accordance with § 1.904(f)-1(e)(2). In addition, under paragraph (d)(3) of this section, X is required to recapture $100 (the lesser of the remaining balance in its general limitation overall foreign loss account ($100) or 100 percent of its foreign source taxable income recognized on such disposition that has not been previously recharacterized ($500)). The total amount recaptured is $600. X's foreign tax credit limitation for income subject to the general limitation in 1985 is $200 ($400/$2,000 × $1,000) instead of $500 ($1,000/$2,000 × $1,000). The balance in X's general limitation overall foreign loss account is reduced to zero in accordance with § 1.904(f)-1(e)(2).

In this example, all $1,000 of the gain from the sale of assets is treated as foreign-source income—clearly $400 more than the "lesser of" the OFL account or the gain in the X assets. This result is mandated by Treasury's own regulations, a position Respondent now attempts to disavow. Under Respondent's position, only $600 of the gain would be treated as foreign-source income, a result clearly refuted by the example.

23

B.     The Statute's "Lesser Of" Language Does Not Resolve This
       Ambiguity

Respondent incorrectly asserts that the statute unambiguously caps the
amount of gain treated as foreign-source income at the "lesser of" the built-in gain
and the taxpayer's OFL account balance.[60] That is not true. Under Respondent's
own reading of section 904(f)(3)(A)(i), that statute unambiguously requires that the
amount of gain ***up to*** the amount of the taxpayer's OFL account balance be treated
as foreign-source income. However, the statute itself says nothing about how to
source any gain recognized in excess of that amount.[61] And, as explained above,
the extant Treasury Regulations unambiguously require that the gain in excess of
the taxpayer's OFL account balance must be treated as foreign-source income.
That regulatory rule completely belies Respondent's position here that the statute
unambiguously precludes the taxpayer from recognizing foreign-source income in
excess of its OFL account balance.

---

[60]  IRS Opening Brief at 34-39.

[61]  Under LGI's primary argument, there would be no recognized gain in excess of
the OFL account balance because the gain recognized would be "***equal to***" that
amount. However, if the Court does not agree with this interpretation, then the
"equal to" language in the statute only serves to dictate the treatment of the gain
up to the amount of the OFL account balance, and there is thus a statutory gap
regarding the treatment of the gain above and beyond that amount.

24

Finally, Respondent argues that LGI's reading of the statute renders "the lesser of" language of the statute superfluous.[62] In reality, LGI's interpretation does the exact opposite. As detailed above, LGI's interpretation takes the text at its face such that gain recognized from the J:COM Sale is "equal to the lesser of" the gain on the disposed-of property and the OFL account balance. Respondent's interpretation, on the other hand, reads the gain recognition element of the "lesser of" language out of the statute, diluting such language to only apply for sourcing purposes.

C.     The IRS Does Not Contest LGI's Regulatory Interpretation

Notably, Respondent does not—and cannot—directly dispute that the regulations under section 904(f), if applicable, resolve the case in LGI's favor. Instead, Respondent effectively concedes that the plain language of the regulations in force in 2010 plainly requires that all gain recognized on the J:COM Sale is foreign-source income. Rather than confronting the language of his regulations, Respondent merely argues that the regulation must be interpreted "in context with the statutory language."[63] In other words, Respondent's interpretation of the regulations merely repackages his statutory interpretation argument. And since

---

[62]   *See* IRS Opening Brief at 34-36.

[63]   *Id.* at 37.

25

section 904(f)(3) is ambiguous regarding the sourcing of gain in excess of a taxpayer's OFL account, that statute-based argument gets Respondent nowhere.

Indeed, this Court has repeatedly held that Respondent must follow the clear requirements of his regulations, even when Respondent disagrees with the result.[64] The decision in *Applied Research Associates* is particularly instructive. In that case, Respondent argued that the taxpayer's interpretation of the relevant regulations would create a "double deduction" caused by a subsequent amendment to section 312. The Court held that was irrelevant; rather than attempting to fix his rules through litigation, "Respondent should [have] use[d] his broad power to amend his regulations."[65] The Court further held that Respondent's failure to amend his regulations in a timely manner "does not justify judicial interference in what is essentially a legislative and administrative matter."[66] So too here.

Respondent may argue that the OFL Sourcing Regulations in force in 2010 had not been updated to reflect the 2004 statutory amendment adding CFC stock to the category of property which would trigger recapture upon disposition under section 904(f)(3). Prior to that amendment, the dispositions subject to section

---

[64] *See, e.g.*, *Applied Research Assocs., Inc. & Affiliate v. Commissioner*, 143 T.C. 310, 321 (2014); *Woods Inv. Co. v. Commissioner*, 85 T.C. 274, 281 (1985).

[65] *Applied Research Associates*, 143 T.C. at 321.

[66] *Id.*

904(f)(3) would predominantly have resulted in foreign-source gain under the

default sourcing rules. Thus, Respondent may argue that the pre-2012 regulations

simply reflect an assumption that qualifying dispositions would give rise to

foreign-source income.[67] The 2004 amendment to section 904(f)(3) added CFC

stock to the type of property subject to that provision, and as Respondent states,

sales of stock by U.S. residents generally gives rise to domestic-source income.[68]

Thus, the implicit presumption in the regulations that all or a majority of the

income subject to section 904(f)(3) would be foreign-source was no longer correct.

Even if the amendment created new questions about the sourcing of gain on

qualifying dispositions, however, Respondent was required to promptly change his

regulations if he wanted to change the result. Respondent in fact did change his

regulations to address this result—just not until after the J:COM Sale.

Indeed, the prospective amendments made to the regulations in 2012 further

prove that LGI's reading of the 2010 regulations is accurate. The 2012 Amended

Regulations, which apply only ***prospectively***, explicitly set forth the rule that

---

[67]  The section 904(f) regulations were issued in 1987. T.D. 8153, 1987-2 C.B.
      174. Section 865(e)(1), as in effect in 1987, provided that, "if a United States
      resident maintains an office or other fixed place of business outside the United
      States, income from sales of personal property attributable to such office or
      other fixed place of business shall be sourced outside the United States" if a 10-
      percent tax was actually paid to a foreign country with respect to such income.
      Tax Reform Act of 1986, Pub. L. No. 99-514, 100 Stat. 2085, 2544.

[68]  IRS Opening Brief at 13.

Respondent seeks to apply to LGI in this case. But Treasury needed to adopt this completely new rule and substantially re-write the key regulatory provisions to *change* the law applicable to the J:COM Sale (i.e., the OFL Sourcing Regulations).

*    *    *    *    *

Although the statute is clear on its face,[69] any perceived ambiguity regarding the source of income recognized in excess of the amount specified in section 904(f)(3)(A)(i) is resolved conclusively by Treasury Regulation section 1.904(f)-2(d)(1). Treasury changed the regulations in 2012 to provide the result Respondent attempts to apply to the J:COM Sale, but Respondent is precluded from applying those regulations to this case. Respondent should not be permitted to do an end-run around the effective date of the 2012 *changes* by adopting a contorted view of the regulations as in effect at the time of the J:COM Sale.

**CONCLUSION**

For the reasons set forth above and in LGI's Opening Brief, decision should be entered for LGI. The plain meaning of section 904(f)(3)(A)(i) mandates that LGI recognize gain on the J:COM sale equal to the amount of LGI's OFL account balance. Thus, LGI is entitled to reduce its taxable income for 2010. In the

---

[69]  *See supra* Part I.

28

alternative, if the Court decides that such interpretation is not correct, the statute is therefore ambiguous, and the regulations resolve the ambiguity in LGI's favor. The regulations require that the gain from the J:COM sale be entirely foreign-source income. In this case, LGI would be entitled to its claimed foreign tax credits. Respondent's attempts to bend the plain meaning of the statute via a purposive rewrite of the text is improper.

Respectfully submitted this 11th day of August, 2023.



Rajiv Madan
Skadden, Arps, Slate, Meagher
  & Flom LLP
1440 New York Avenue, N.W.
Washington, DC  20005
(202) 371-7020
Tax Court Bar No. MR1190
raj.madan@skadden.com



Nathan P. Wacker
Skadden, Arps, Slate, Meagher
  & Flom LLP
1440 New York Avenue, N.W.
Washington, DC  20005
(202) 371-7182
Tax Court Bar No. WN0090
nathan.wacker@skadden.com

Counsel for Petitioner, Liberty
Global, Inc.

30

**OPINION, 161 T.C. NO. 10, T.C. DOC. 38 (NOV. 8, 2023)**

# United States Tax Court

161 T.C. No. 10

LIBERTY GLOBAL, INC.,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 341-21.                    Filed November 8, 2023.

————————

At the beginning of 2010, P had an overall foreign loss (OFL) account balance of approximately $474 million. That year, P sold all its stock in a controlled foreign corporation (CFC), realizing gain of more than $3.25 billion.

On its 2010 return, P reported approximately $438 million of the gain as dividend income pursuant to I.R.C. § 1248 and approximately $2.8 billion as foreign-source income, taking the view that Treas. Reg. § 1.904(f)-2(d)(1) required this result. The increased foreign-source income allowed P to claim foreign tax credits of more than $240 million for the year.

R examined P's 2010 return and eventually issued a Notice of Deficiency determining that P overstated its foreign-source income for the year and consequently overstated its foreign tax credit.

P timely petitioned our Court for redetermination of the deficiency. The case is before us for decision under Rule 122. The parties agree that I.R.C. § 904(f)(3) applied to P's sale of CFC stock. Furthermore, they agree that I.R.C. § 904(f)(3)(A) recaptured P's OFL through the recognition of gain in an amount equal to P's OFL

**Served 11/08/23**

2

($474 million) and recharacterization of that amount as foreign-source income. But they disagree regarding the implications of I.R.C. § 904(f)(3) for P's gain beyond the amount needed to accomplish its OFL recapture.

P contends that I.R.C. § 904(f)(3)(A), when applicable, is the only mechanism for recognizing gain from the disposition of CFC stock, overriding all other recognition provisions in chapter 1 of the Internal Revenue Code. As a result, P claims that it was not required to recognize any gain that exceeded what was necessary to recapture its OFL balance. Alternatively, P argues that I.R.C. § 904(f)(3)(A) is ambiguous and that Treas. Reg. § 1.904(f)-2(d)(1) requires treating the gain as foreign-source income. Further in the alternative, P elects to deduct its foreign taxes under I.R.C. § 164(a)(3).

R maintains that I.R.C. § 904(f)(3)(A) does not govern the treatment of the remaining $2.8 billion in gain, which is instead subject to the rules of I.R.C. §§ 865, 1001, and 1248. R disagrees that I.R.C. § 904(f)(3)(A) is ambiguous and also disagrees with P's reading of Treas. Reg. § 1.904(f)-2(d)(1). R agrees, however, that P is entitled to elect to deduct its foreign taxes under I.R.C. § 164(a)(3).

*Held*: I.R.C. § 904(f)(3)(A) speaks only to the gain necessary to recapture the OFL, and no more.

*Held, further*, I.R.C. § 904(f)(3)(A) does not override any recognition provisions under chapter 1.

*Held, further*, I.R.C. § 904(f)(3)(A) is not ambiguous and does not recharacterize as foreign source gain in excess of that necessary to recapture the OFL.

*Held, further*, Treas. Reg. § 1.904(f)-2(d)(1) does not recharacterize as foreign source gain in excess of that necessary to recapture the OFL.

*Held, further*, for 2010, P may deduct its foreign taxes under I.R.C. § 164(a)(3).

_____

3

*Rajiv Madan* and *Nathan P. Wacker*, for petitioner.

*Matthew J. Avon* and *Timothy L. Smith*, for respondent.


OPINION

TORO, *Judge*:  This deficiency case calls on us to confront an issue of first impression regarding the scope of section 904(f)(3).[1]  As relevant here, that provision governs the recapture[2] of an overall foreign loss (OFL) (a concept we discuss in detail below in Discussion Part I.C), when a taxpayer disposes of shares of stock in a controlled foreign corporation (CFC) in certain types of transactions.  The parties offer competing interpretations of the statute.

Petitioner, Liberty Global, Inc., the successor to Liberty Global, Inc., and Liberty Global, Inc. & Subsidiaries (collectively, Liberty Global), maintains that section 904(f)(3) not only operates to recapture its 2010 OFL beginning account balance of some $474 million, but also exempts from U.S. taxation altogether some $2.8 billion of the gain Liberty Global realized (and ordinarily would recognize) when disposing of the stock of one of its CFCs.  Alternatively, Liberty Global maintains that section 904(f)(3) coupled with Treasury Regulation § 1.904(f)-2(d)(1) operates to convert more than $2.8 billion from U.S.-source income to foreign-source income, increasing Liberty Global's foreign tax credit by more than $240 million and offsetting its federal income tax liability accordingly.

The Commissioner of Internal Revenue counters that section 904(f)(3) and the relevant regulations have a much more modest scope.  In his view, they serve to recapture Liberty Global's OFL of about

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (I.R.C. or Code), in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

[2] In tax parlance, the term "recapture" typically refers to a scenario where a taxpayer has received a tax benefit in a prior year and circumstances change such that, in the current year, the taxpayer is required to "recapture"—i.e., give back—that benefit.

4

$474 million, but otherwise neither exempt from taxation the remaining portion of Liberty Global's gain nor change its source.

As we explain below, the text of the relevant statutory and regulatory provisions, the structure of the Code, and policy considerations all favor the Commissioner's interpretation.[3]

*Background*

The parties submitted this case fully stipulated under Rule 122. The facts below are based on the pleadings and the parties' Stipulation of Facts (including the Exhibits attached thereto). The parties' Stipulation of Facts with the accompanying Exhibits is incorporated herein by this reference.

Liberty Global is a Delaware corporation with its principal place of business in Colorado. It is the ultimate U.S. parent company, and the direct or indirect owner, of an affiliated group of U.S. and foreign corporations. Liberty Global, together with its affiliates, operated converged video, broadband, and communications businesses during 2010.

In January 2010, Liberty Global indirectly owned more than 50% of the voting interests in Jupiter Telecommunications Co. Ltd. (J:COM), a Japanese entity, making J:COM a CFC, as defined in section 957, for 2010.[4] In a series of transactions that took place on February 18, 2010, Liberty Global's interests in J:COM were transferred to an unaffiliated foreign corporation for $3,961,608,988 in a transaction treated as a sale for U.S. federal income tax purposes.[5] Liberty Global did not own any stock in J:COM following the sale.

---

[3] In the event the Court agrees with the Commissioner on the primary issues in the case, Liberty Global elects to deduct its foreign taxes under section 164(a)(3) for one of the years at issue. The Commissioner does not dispute that Liberty Global may do so. Given our disposition, Liberty Global's election shall be taken into account when the parties prepare the computations under Rule 155.

[4] Liberty Global indirectly owned and eventually disposed of the J:COM stock through a complex network of affiliates. Because this organizational structure does not affect our analysis, we do not discuss it further.

[5] To simplify our discussion, we refer to these transactions collectively as Liberty Global's sale of the stock of J:COM, even though Liberty Global transferred its ownership interests in J:COM in transactions involving various indirectly owned entities.

5

Liberty Global timely filed its 2010 U.S. consolidated income tax return. That return reported recognized gain of $3,256,557,143 from the sale of the J:COM stock and showed a beginning balance of $474,372,166 for Liberty Global's general limitation category OFL account. Liberty Global characterized $438,135,179 of the gain as dividend income pursuant to section 1248 and the remaining $2,818,421,964 as capital gain. It treated the capital gain as foreign-source income.

Liberty Global attached to its 2010 return Schedule UTP (Form 1120), Uncertain Tax Position Statement. The Schedule UTP stated as follows:

> [Liberty Global] entered into a transaction to sell its entire interest in its Japanese subsidiary, [J:COM], during the year. [Liberty Global] recognized a gain on the sale and due to recharacterization of the gain also recognized deemed section 902 credits as part of the overall transaction. The issues are the application of the rules under section 904 to the transaction and whether the amount of the foreign tax credit taken as a result of the transaction is appropriate.

The Commissioner examined Liberty Global's 2010 return and issued a Notice of Deficiency, in which he determined a deficiency of $241,791,309. In relevant part, the Commissioner determined that Liberty Global overstated its foreign-source income and was not entitled to any foreign tax credit for the year. The Notice of Deficiency explained the determination as follows:

> It is determined that no foreign tax credit is allowed due to adjustments affecting foreign source income. The amount of U.S. source gain that is recharacterized as foreign source under [I.R.C. §] 904(f)(3) is limited to the amount necessary to recapture of the Overall Foreign Losses ("OFLs") in the OFL account at the beginning of the year. . . . [Y]our foreign tax credit allowed for [the] tax year ended December 31, 2010 is $0.00 rather than . . . $241,791,309.00.

6

Liberty Global timely petitioned our Court for redetermination of the deficiency.[6]

*Discussion*

I.    *The Foreign Tax Credit*

A.    *General Principles*

The United States generally taxes the worldwide income of its citizens and domestic corporations. *See, e.g.*, *Cook v. Tait*, 265 U.S. 47, 56 (1924); *Huff v. Commissioner*, 135 T.C. 222, 230 (2010). This policy choice creates the potential for double taxation—that is, the taxation of the same income by both the United States and another country. *See AptarGroup Inc. v. Commissioner*, 158 T.C. 110, 112 (2022). To address the risk of double taxation, the Code allows U.S. citizens and domestic corporations to elect to claim a credit for income tax paid to a foreign country. I.R.C. § 901(a); *see also Am. Chicle Co. v. United States*, 316 U.S. 450, 451 (1942). A domestic corporation may also claim a credit for a tax that it is deemed to have paid or accrued. I.R.C. § 960; *AptarGroup Inc.*, 158 T.C. at 112.

For almost as long as the foreign tax credit has been part of the U.S. tax system, Congress has expressed concern that the foreign tax credit might be misused to reduce U.S. tax due on U.S.-source income. *See* Dirk J.J. Suringa, *The Foreign Tax Credit Limitation Under Section 904* (Section 904 Portfolio), 6060-1st Tax Mgmt. (BNA) at III (setting out an abbreviated history of the foreign tax credit and highlighting Congress's addition of limitations on the credit); *see also* 1 Joel D. Kuntz & Robert J. Peroni, *U.S. International Taxation* ¶ B4.16[1], at B4-185–86 (2022). Several Code provisions address this concern, chief among them, section 904. *See AptarGroup Inc.*, 158 T.C. at 112 (citing *Theo. H. Davies & Co. v. Commissioner*, 75 T.C. 443, 446 n.9 (1980), *aff'd per curiam*, 678 F.2d 1367 (9th Cir. 1982)).

---

[6] The Commissioner also issued to Liberty Global a Notice of Deficiency for 2014, and Liberty Global timely sought redetermination of that deficiency. Because the Commissioner's determination concerning 2014 flows directly from his determination with respect to 2010, we do not discuss it separately.

7

B.    *Section 904(a)—The Foreign Tax Credit Limitation*

The principal rule in section 904 appears at subsection (a), which provides as follows:

> The total amount of the credit taken under section 901(a) shall not exceed the same proportion of the tax against which such credit is taken which the taxpayer's taxable income from sources without the United States (but not in excess of the taxpayer's entire taxable income) bears to his entire taxable income for the same taxable year.

We have previously expressed the limitation set out in section 904(a) as an equation:

$$\text{Maximum credit} = \frac{\text{Taxable income from without U.S.}}{\text{Worldwide taxable income}} \times \text{U.S. tentative tax}$$

*Theo. H. Davies & Co.*, 75 T.C. at 444.  As the formula makes clear, the amount of taxable income from sources without the United States (also known as foreign-source income) is a key driver of the section 904(a) limitation.  All else being equal, the higher the foreign-source income, the higher the foreign tax credit a taxpayer may be entitled to take.

C.    *Section 904(f)—OFL Recapture*

The provision at the core of this case—section 904(f)—also sets out rules intended to protect the right of the United States to impose U.S. tax on U.S.-source income.  Some background may be helpful to understand how section 904(f) operates and the potential issues an OFL presents.  We find it easiest to provide that background through an example.

1.    *The OFL Problem*

Imagine that USCo, a U.S. corporation with existing U.S. operations, opens a branch in Country A at the beginning of Year 1.[7]  Now assume that, by the end of Year 1, USCo's U.S. operations generate taxable income of $300 (or, in tax parlance, $300 of U.S.-source

---

[7] Generally speaking, a branch is a division of a business within a corporation. *See Dover Corp. & Subs. v. Commissioner*, 122 T.C. 324, 351 (2004).  As relevant here, the U.S. tax system generally requires that a U.S. parent include in its taxable income the profits earned by its foreign branches.  *See Columbian Rope Co. v. Commissioner*, 42 T.C. 800, 817 (1964).

income), while the branch's operations result in a loss of $100. Assuming that USCo has no other foreign operations, the $100 loss comprises its OFL for the year. *See* I.R.C. § 904(f)(2) (generally providing that an OFL exists when a taxpayer's gross foreign-source income for the year is less than the deductions properly apportioned or allocated to that income).

Under our regime of worldwide taxation, USCo must report in its Year 1 U.S. federal income tax return both the income from its operations in the United States and the loss from the branch's operations in Country A. Thus, USCo's overall taxable income for Year 1 would be $200 ($300 U.S.-source income less the $100 foreign-source loss). Assuming a tax rate of 35%, USCo's Year 1 return would show $70 of tax due ($200 taxable income × 35%).

Imagine further that in Year 2 USCo's U.S. operations again generate U.S.-source income of $300, but this time the branch's operations turn profitable, generating foreign-source income of $100. Once again, under our regime of worldwide taxation, USCo must report in its Year 2 return the results of its U.S. and Country A operations, and its overall taxable income would be $400 ($300 U.S.-source income plus $100 foreign-source income). Assuming a tax rate of 35%, one would expect USCo's Year 2 return to show $140 of tax due ($400 taxable income × 35%).

Here is where the foreign tax credit may complicate things. Assume that, under Country A's rules, USCo's branch is not permitted to use prior year losses to offset current year income and that Country A imposes a 35% tax on income from Country A sources. Under these rules, the branch would be required to pay to Country A $35 of tax for Year 2 ($100 of Country A source income × the 35% Country A tax rate). If the usual foreign tax credit rules were applied without modification for Year 2, under the section 904(a) formula discussed above, USCo would be allowed a foreign tax credit of $35, computed as follows: Taxable income from without the United States (i.e., foreign-source income) ($100) / worldwide income ($400) × U.S. tentative tax ($140) = Maximum credit of $35. Thus, taking into account the foreign tax credit, USCo would be required to pay only $105 in U.S. tax for Year 2 (U.S. tentative tax of $140 less $35 foreign tax credit).

Considering the two years together, we notice that USCo earned $600 in U.S.-source income ($300 in each year) and no income from the Country A branch (the $100 income in Year 2 is offset by the $100 loss

9

in Year 1). Given these results, one would have expected USCo to have paid $210 in U.S. tax ($600 × 35%) and no tax in Country A. But, as the example shows, the combined effect of (a) Country A's decision not to permit branch losses to be carried forward and offset future income and (b) the ordinary application of section 904(a) would lead to the United States collecting only $175 in tax ($70 in Year 1 and $105 in Year 2), while Country A would collect $35 in tax (all in Year 2).

Congress did not believe this outcome to be consistent with the objectives of the foreign tax credit, *see Hershey Foods Corp. v. Commissioner*, 76 T.C. 312, 322–23 (1981) (citing Staff of J. Comm. on Tax'n, 94th Cong., General Explanation of the Tax Reform Act of 1976, at 236 (J. Comm. Print), *as reprinted in* 1976-3 C.B. (Vol. 2) 1, 248; S. Rep. No. 94-938, at 236 (1976), *as reprinted in* 1976-3 C.B. (Vol. 3) 248, 274); Section 904 Portfolio at III.J.2; James P. Fuller & Robert Feinschreiber, *The New Foreign Tax Credit Rules: Analysis and Planning*, 3 Int'l Tax J. 393, 394 (1977), and in 1976 added a new section 904(f) to address the issue, *see* Tax Reform Act of 1976, Pub. L. No. 94-455, § 1032(a), 90 Stat. 1520, 1624–25; *Hershey Foods Corp.*, 76 T.C. at 322; Section 904 Portfolio at III.J.2. As relevant here, Congress proceeded in two steps.

## 2. *Section 904(f)(1)—OFL Recapture from Future Income*

First, in section 904(f)(1), Congress addressed the fact pattern illustrated by the example—a taxpayer that earns foreign-source income after having incurred a foreign-source loss that previously offset U.S.-source income (i.e., an OFL).[8] *See Hershey Foods Corp.*, 76 T.C.

---

[8] In 2010, section 904(f)(1) read as follows:

(1) General rule.—For purposes of this subpart and section 936, in the case of any taxpayer who sustains an overall foreign loss for any taxable year, that portion of the taxpayer's taxable income from sources without the United States for each succeeding taxable year which is equal to the lesser of—

    (A) the amount of such loss (to the extent not used under this paragraph in prior taxable years), or

    (B) 50 percent (or such larger percent as the taxpayer may choose) of the taxpayer's taxable income from sources without the United States for such succeeding taxable year,

shall be treated as income from sources within the United States (and not as income from sources without the United States).

10

at 322–23.  Section 904(f)(1) requires such taxpayers to recharacterize, for purposes of determining their foreign tax credit, some or all of the foreign-source income as U.S.-source.  This resourcing reduces the amount reflected in the numerator of the section 904(a) formula, thus reducing the foreign tax credit available to the taxpayer.  Put another way, section 904(f)(1) recaptures the prior benefit of permitting USCo to offset its U.S. income with the foreign-source loss, so that "when the year(s) of excess loss and the year(s) of recharacterization are viewed together, U.S. source income will bear its full tax share."  *See Hershey Foods Corp.*, 76 T.C. at 323.[9]

Congress recognized, though, that a taxpayer might dispose of the assets used in its foreign operations before an OFL had been fully recaptured.  *See id.*  The disposition of those assets would leave the mechanism reflected in section 904(f)(1) ineffectual as the taxpayer would no longer have any foreign-source income that might be recharacterized as U.S.-source.

3.  *Section 904(f)(3)—OFL Recapture from Asset Dispositions*

That led Congress to its second step:  adding rules that govern the disposition of assets used in foreign operations in section 904(f)(3).  The provision "accelerates the recapture process upon such disposition by requiring recognition at the time of disposition of an amount of income equal to the lesser of the gain realized or the amount of any previously unrecaptured excess foreign loss."  *Hershey Foods Corp.*, 76 T.C. at 323; *see also* Harvey P. Dale, *The Reformed Foreign Tax Credit: A Path Through the Maze*, 33 Tax L. Rev. 175, 217 (1978) ("[Section 904(f)(3)'s] evident purpose is to prevent avoidance of [section 904(f)(1)'s] rule by transfer or abandonment of a business which is pregnant with OFL recapture.").

Following passage of the Tax Reform Act of 1976, section 904(f)(3)(A) read in relevant part:

---

With exceptions not pertinent to our discussion, section 904(f)(2) defined the term "overall foreign loss" to mean "the amount by which the gross income for the taxable year from sources without the United States . . . for such year is exceeded by the sum of deductions properly apportioned or allocated thereto."

[9] To maintain fairness, section 904(g) now includes similar rules allowing taxpayers to recapture "overall domestic losses" that limited the availability of foreign tax credits in prior years.

11

In general.—For purposes of this chapter, if property which has been used predominantly without the United States in a trade or business is disposed of during any taxable year—

> (i) the taxpayer, notwithstanding any other provision of this chapter (other than paragraph (1)), shall be deemed to have received and recognized taxable income from sources without the United States in the taxable year of the disposition, by reason of such disposition, in an amount equal to the lesser of the excess of the fair market value of such property over the taxpayer's adjusted basis in such property or the remaining amount of the overall foreign losses which were not used under paragraph (1) for such taxable year or any prior taxable year, and
>
> (ii) paragraph (1) shall be applied with respect to such income by substituting "100 percent" for "50 percent".[10]

In 2004, Congress amended section 904(f)(3) to cover certain dispositions of stock in a CFC.[11]  *See* American Jobs Creation Act of 2004, Pub. L. No. 108-357, § 895, 118 Stat. 1418, 1647; I.R.C. § 904(f)(3)(D).  That amendment made section 904(f)(3) applicable to Liberty Global's sale of J:COM stock in 2010, giving rise to the dispute before us.

---

[10] Section 904(f)(3)(B)(i) provides that "[f]or purposes of this subsection, the term 'disposition' includes a sale, exchange, distribution, or gift of property whether or not gain or loss is recognized on the transfer."  Under section 904(f)(3)(B)(ii), "[a]ny taxable income recognized solely by reason of subparagraph (A) shall have the same characterization it would have had if the taxpayer had sold or exchanged the property."

[11] As relevant to our discussion, in 2010, section 904(f)(3)(D) read as follows:

> (i) In general.—This paragraph shall apply to an applicable disposition in the same manner as if it were a disposition of property described in subparagraph (A) . . . .
>
> (ii) Applicable disposition.—For purposes of clause (i), the term "applicable disposition" means any disposition of any share of stock in a controlled foreign corporation in a transaction or series of transactions if, immediately before such transaction or series of transactions, the taxpayer owned more than 50 percent (by vote or value) of the stock of the controlled foreign corporation.

12

II.  *Application of Section 904(f) to the Sale of J:COM Stock*

    The parties agree on many of the issues in this case.  They agree, for example, that Liberty Global realized gain of more than $3.25 billion on its sale of J:COM stock.  They further agree that, absent section 904(f)(3), the Code's normal rules would require the gain to be fully recognized under section 1001, would treat the gain as U.S.-source income under section 865, and would recharacterize approximately $438 million of the gain as dividend income under section 1248.

    Even regarding the application of section 904(f)(3), the parties agree on a great deal.  They agree that Liberty Global's sale of J:COM stock was a qualifying disposition under section 904(f)(3)(D) and therefore that section 904(f)(3)(A) applied to recharacterize at least a portion of the gain from that transaction.  They further agree that section 904(f)(3) operated as intended to the extent of Liberty Global's beginning OFL balance of $474,372,166—i.e., that the provision recaptured the OFL by (1) recharacterizing $474,372,166 of gain from the J:COM stock sale as foreign-source income, *see* I.R.C. § 904(f)(3)(A)(i), and (2) applying paragraph 904(f)(1) with respect to that income, substituting 100% for 50%, *see* I.R.C. § 904(f)(3)(A)(ii).

    Where the parties diverge is on the implications of section 904(f)(3) for Liberty Global's remaining gain—in other words, gain beyond the amount needed to accomplish the OFL recapture.

    According to the Commissioner, section 904(f)(3) has no further implications.  Once it recaptures the outstanding OFL, its work is done and it does not affect the balance of a taxpayer's gain.  Instead, the remaining gain is taxed under other Code provisions, which in this case require the gain to be fully recognized (section 1001), to some extent recharacterized (section 1248), and treated as U.S.-source income (section 865).

    Liberty Global, on the other hand, says that section 904(f)(3) does a great deal more than recapture the beginning balance of its OFL account, offering two competing interpretations.  First, Liberty Global contends that, when section 904(f)(3) applies, it is the only mechanism for recognizing gain from a transaction, overriding section 1001 and any other gain recognition provisions in chapter 1 of the Code.  As a result, Liberty Global says it was not required to recognize any gain on its sale of J:COM stock beyond the $474,372,166 needed to recapture its OFL.  In other words, Liberty Global's first argument is that section 904(f)(3)

13

completely exempted its remaining $2.8 billion of gain from U.S. federal income tax.[12]

Second, in the event we disagree with this outcome, Liberty Global argues that section 904(f)(3) is by necessity ambiguous and that Treasury Regulation § 1.904(f)-2(d)(1) requires it to treat all its gain as foreign-source income. In combination with the section 904(a) formula we have already discussed, this view results in Liberty Global being allowed foreign tax credits totaling more than $240 million for 2010, permitting it to offset U.S. tax on gain that, absent the proposed recharacterization, would have been U.S.-source.

Notably, Liberty Global makes no attempt to explain why, in a rule that it agrees was adopted "to prevent a taxpayer from offsetting U.S.-source income in one year, then claiming foreign tax credits on positive foreign-source income in a subsequent year," Pet'r's Opening Br. 9–10, Congress would have provided for either one of these rather remarkable results. Indeed, it seems to acknowledge the absence of any potential rationale in its briefing. Pet'r's Opening Br. 23 ("[Liberty Global] acknowledges that this results in no tax on approximately $2.8 billion of income that would otherwise be taxed under other provisions of the Code. . . . However, 'the best evidence of Congress's intent is the statutory text.'" (quoting *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 544 (2012))). The Court agrees that policy arguments cannot override clear text. *See United States ex rel. Schutte v. SuperValu Inc.*, 143 S. Ct. 1391, 1404 (2023) ("Nor do we need to address any of the parties' policy arguments, which 'cannot supersede the clear statutory text.'" (quoting *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 192 (2016))). But we disagree with Liberty Global's reading of the text. We take its two arguments in turn.

A.    *Section 904(f)(3) Does Not Cap Liberty Global's Recognized Gain.*

Liberty Global first argues that section 904(f)(3)(A)(i) served to limit the gain it recognized on the stock sale to $474,372,166—i.e., the

---

[12] The parties appear to disagree about whether, if Liberty Global were to prevail on either of its arguments, amounts effecting OFL recapture under section 904(f)(3) could also be recharacterized as dividends under section 1248, essentially performing double duty. Because we reject both of Liberty Global's arguments, this dispute does not affect the outcome of the case, and we do not address it further.

14

amount of its OFL balance. "As in all statutory construction cases, we begin with the language of the statute." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002). And as the Supreme Court has explained:

> In statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself. *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 407 (2011). Where . . . that examination yields a clear answer, judges must stop. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999).

*Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019).

In 2010, section 904(f)(3)(A) read the same as it did following the passage of the Tax Reform Act of 1976. In relevant part, section 904(f)(3)(A)(i) says that upon the disposition of certain property,

> the taxpayer, notwithstanding any other provision of this chapter (other than paragraph (1)), shall be deemed to have received and recognized taxable income from sources without the United States in the taxable year of the disposition, by reason of such disposition, in an amount equal to the lesser of the excess of the fair market value of such property over the taxpayer's adjusted basis in such property or the remaining amount of the overall foreign losses which were not used under paragraph (1) for such taxable year or any prior taxable year . . . .

In other words, when a taxpayer disposes of the right kind of property, the taxpayer, notwithstanding any other provision of chapter 1, is deemed to recognize foreign-source income in an amount sufficient to offset its remaining OFL, but only to the extent of the taxpayer's actual gain from the transaction.

As the quoted text demonstrates, section 904(f)(3)(A) mandates specific treatment for a portion of a taxpayer's gain from a disposition (i.e., an amount equal to the lesser of the taxpayer's remaining OFL and its actual gain). But the provision is silent as to the treatment of any gain beyond that amount.

The parties infer very different outcomes from this silence. The Commissioner posits that existing Code provisions continue to apply to the remaining gain, while Liberty Global contends that

15

section 904(f)(3)(A)(i) supplants all other Code sections, precluding the taxation of any gain beyond the amount it specifies. The statute provides a clear answer to this dispute, which we resolve in the Commissioner's favor.

To begin with, the Commissioner's interpretation adheres to the text of section 904(f)(3)(A)(i), which provides no instruction at all regarding amounts in excess of the gain necessary to recapture an OFL balance. Nor does that provision say that any amount from an applicable disposition is exempt from recognition. We take the statute at its word: If the text does not speak to the excess gain, then it does not control the treatment of that gain. Silence is insufficient to create a new exclusion. *Cf. Commissioner v. Schleier*, 515 U.S. 323, 328 (1995) (noting that "exclusions from income must be narrowly construed" (quoting *United States v. Burke*, 504 U.S. 229, 248 (1992) (Souter, J., concurring in the judgment)). Instead, we read section 904(f)(3)(A)(i) as doing exactly what it purports to do regarding excess gain—nothing. And the provision's inaction leaves other applicable Code sections (here, sections 865, 1001, and 1248) to operate unimpeded.

Adopting Liberty Global's opposing interpretation would require us to infer a limiting principle that is not present in the statute's text. Specifically, we would need to read the provision as requiring gain recognition that is *limited to* the amount specified therein. But neither those words nor similar ones appear in section 904(f)(3), and we decline Liberty Global's invitation to add them. *See, e.g.*, *Bates v. United States*, 522 U.S. 23, 29 (1997) ("[W]e ordinarily resist reading words or elements into a statute that do not appear on its face.").

Liberty Global might counter that the statute mandates its preferred result by negative inference. In other words, in Liberty Global's view, because section 904(f)(3)(A) requires a taxpayer to recognize a specified amount of gain as taxable income, it must follow that the remaining gain need not be recognized. But what the statute actually says is that, with respect to the specified gain, "the taxpayer . . . *shall be deemed* to have received and recognized taxable income from sources without the United States." I.R.C. § 904(f)(3)(A)(i) (emphasis added). Thus, even if one were to accept an argument by negative inference, the more natural inference would be that there is no deeming with respect to the excess gain. Or, put differently, that existing Code provisions continue to apply with respect to the excess gain.

16

Importantly, our interpretation is far more consistent with the broader statutory scheme. *See West Virginia v. EPA*, 142 S. Ct. 2587, 2607 (2022) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." (quoting *Davis v. Mich. Dept. of Treasury*, 489 U.S. 803, 809 (1989))). In order to apply section 904, generally a taxpayer must first elect to claim the foreign tax credit. *See* I.R.C. § 901(a). And, even when applying section 904, a taxpayer turns to subsection (f) only if it has an outstanding OFL balance, and to paragraph (f)(3) only if, in addition to having an outstanding OFL balance, it also disposes of qualifying foreign property. One would not expect such a narrow rule, helpfully titled "Recapture of overall foreign loss" and adopted to *limit* a taxpayer's foreign tax credit, to serve the dual function of exempting billions of dollars of gain from U.S. taxation. As the Supreme Court has said, "Congress does not 'hide elephants in mouseholes' by 'alter[ing] the fundamental details of a regulatory scheme in vague terms or ancillary provisions." *Sackett v. EPA*, 143 S. Ct. 1322, 1340 (2023) (quoting *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001)).

Consider the following example, which illustrates the implications of Liberty Global's interpretation: Assume that, in the same tax year, taxpayer A and taxpayer B each sell 100% of their stock in separate CFCs.[13] Each taxpayer realizes $500 million of gain from its respective sale. Taxpayer A has a beginning OFL balance of $10, and taxpayer B has no OFL. Because taxpayer A has an OFL and made a qualified disposition of CFC stock, section 904(f)(3) would apply. Under our reading of that section, $10 of taxpayer A's gain would be recharacterized as foreign-source income and subject to the recapture rule in section 904(f)(1). I.R.C. § 904(f)(3). And that is where the reach of section 904(f)(3) would end. But, in Liberty Global's view, the mere fact that section 904(f)(3) applies also means that all of taxpayer A's remaining gain ($499,999,990) would not be recognized and would therefore be exempt from U.S. tax. By contrast, because taxpayer B had no OFL to implicate section 904(f)(3), all $500 million of its gain would be recognized and taxable. We see nothing in the statute, nor indeed in common sense, to support these drastically disparate results.

Liberty Global makes much of section 904(f)(3)(A)(i)'s prefatory language, which states that the provision applies "notwithstanding any

---

[13] For simplicity, we assume that there is no dividend recharacterization under section 1248 for either transaction.

17

other provision of this chapter." To Liberty Global, this text signals that section 904(f)(3) turns off all other recognition provisions. But Liberty Global overreads the text.

"In statutes, the word ['notwithstanding'] 'shows which provision prevails in the event of a clash.'" *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 301 (2017) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 126–27 (2012)). On the facts before us, there is no conflict between section 904(f)(3) and section 1001 or any other provision requiring recognition. Rather, section 904(f)(3) operates to ensure the minimum amount of recognition necessary to recapture a taxpayer's OFL. It does not prevent recognition beyond the minimum amount and, as a result, does not conflict with provisions that require additional recognition. The text of section 904(f)(3)(A)(i) confirms this point, as Liberty Global itself appears to acknowledge in its brief:

> Indeed, the statute does refer to the "deem[ing]" of income and uses "fair market value" of property to measure income. That language makes more sense in the context of nonrecognition transactions; for recognition transactions, income would not be deemed, and income would be measured using [the] amount realized (or purchase price) rather than fair market value.

Pet'r's Opening Br. 31.

Section 904(f)(3) does, however, sometimes conflict with *nonrecognition* provisions (e.g., section 351). And it does sometimes conflict with sourcing rules (e.g., section 865), as in the case before us. And in those circumstances, the rule of section 904(f)(3) prevails over the conflicting rule elsewhere in the Code. In short, although the inclusion of "notwithstanding" in the statute makes perfect sense, it does not support Liberty Global's reading.

Liberty Global's argument that the Commissioner's and our interpretation of the statute impermissibly creates different rules for recognition and nonrecognition transactions fails for similar reasons. When it applies, section 904(f)(3) ensures an amount of recognition sufficient to recapture a taxpayer's OFL. This rule, by its nature, has different implications for recognition transactions, where no recharacterization is required to effect recapture (at least as to recognition), and nonrecognition transactions, where at least some recharacterization is required. Nothing about this result is

18

impermissible; rather, it reflects the statute operating as drafted. And this result is fully consistent with this Court's interpretation of section 904(f)(3) shortly after it was adopted. *See Hershey Foods Corp.*, 76 T.C. at 323 ("Section 904(f)(3) accelerates the recapture process upon such disposition by requiring recognition at the time of disposition of an amount of income equal to the lesser of the gain realized or the amount of any previously unrecaptured excess foreign loss."). Liberty Global's reading, on the other hand, would result in different recognition rules being applied to taxpayers with OFL balances and those without, giving the taxpayers with OFL balances much more beneficial tax treatment, as our example above illustrates. Moreover, as the Commissioner points out, Liberty Global's reading is internally inconsistent when it comes to recognition and nonrecognition transactions. *See* Resp't's Answering Br. 24–25 ("Under [Liberty Global's] interpretation, in the case of recognition transactions, taxpayers would be exempt from realizing and recognizing the excess gain, while, in the case of non-recognition transactions, the unrecognized portion of the gain would merely be deferred until the property is disposed of in a recognition transaction.").

In summary, we disagree that section 904(f)(3) exempts the excess gain from Liberty Global's sale of J:COM stock and decide this issue in the Commissioner's favor.

B.    *Treasury Regulation § 1.904(f)-2(d)(1) Does Not Permit Liberty Global to Treat All of Its Gain on the J:COM Stock Sale as Foreign-Source Income.*

Alternatively, Liberty Global argues that the statute is ambiguous and that, because of the ambiguity, Treasury Regulation § 1.904(f)-2(d)(1) applies to treat all of its gain on the J:COM stock sale as foreign-source income. If Liberty Global were correct, then any gain in excess of its remaining OFL balance, which would otherwise be U.S.-source income under section 865, would become foreign-source income. As a result, the numerator in its foreign tax credit computation under section 904(a) would increase, allowing it to use more than $240 million in additional foreign tax credits.

As we have already discussed, however, the statute is not ambiguous. By its plain terms, the statute directs a taxpayer to deem amounts necessary to recapture an OFL as recognized foreign-source taxable income. It does not speak to gain beyond that amount because it has no reason to. And silence in this instance, where other Code

19

provisions address the salient points, is not ambiguity; rather, section 904(f)(3)(A)(i) leaves those other provisions to do their work.

Even assuming, however, for the sake of argument only, that the statute were ambiguous, we do not read the regulations as supplying the rule that Liberty Global attempts to draw from them.

We begin with the observation that the regulatory text Liberty Global relies on was adopted in 1987, long before Congress enacted the statutory provision applicable here.[14]  It would be unusual for a regulation to speak with specificity regarding an issue not implicated at all by the then-existing statute.  And, indeed, the regulation did not address sales of CFC stock.  Instead, paragraph (d)(1) at the time read the same as it did in 2010.  Specifically, it instructed taxpayers on what to do "[i]f [the] taxpayer disposes of property used or held for use predominantly without the United States in a trade or business."  Treas. Reg. § 1.904(f)-2(d)(1).  Needless to say, Liberty Global did not dispose of such property in 2010, calling into question the relevance of the regulation to the facts before us.

Even more problematic for Liberty Global's position, the regulations, like the statute, speak to the amount of gain necessary to effect the recapture of an OFL, nothing more.  This is evident from both the text of the specific rule on which Liberty Global relies and the overall regulatory context.

Starting with the former, the text of the relevant regulation reads as follows:

> Treas. Reg. § 1.904(f)-2(d)(1)  In general.  If a taxpayer disposes of property used or held for use predominantly without the United States in a trade or business during a taxable year and that property generates foreign source taxable income subject to a separate limitation to which paragraph (a) of this section is applicable, (i) gain will be recognized on the disposition of such property, (ii) such gain will be treated as foreign source income subject to the

---

[14] We refer to section 904(f)(3)(D), which (as we have already noted) was added in 2004 to apply existing rules to certain dispositions of stock in a CFC.  *See* American Jobs Creation Act of 2004, § 895, 118 Stat. at 1647; *see also* Section 904 Portfolio at XII.E.4.e ("Until 2004, § 904(f)(3) did not apply to gain realized on the transfer of corporate stock held for investment purposes, which covered most types of stock ownership.").

20

same limitation as the income the property generated, and (iii) the applicable overall foreign loss account shall be recaptured as provided in paragraphs (d)(2), (d)(3), and (d)(4) of this section.

Liberty Global asks us to read paragraph (d)(1), and in particular paragraph (d)(1)(ii), of the regulation in isolation, a method prohibited by our caselaw.[15] But even if we were to take this approach, all it would tell us, in plain terms, is that when a taxpayer disposes of qualifying property (1) some amount of gain is recognized, (2) "such [recognized] gain will be treated as foreign source income," and (3) any OFL balance will be recaptured. Treas. Reg. § 1.904(f)-2(d)(1). It does not specify the amount of gain to be recognized nor, by implication, the amount of gain to be treated as foreign-source income. And it certainly does not say that it applies to amounts beyond those necessary for recapturing an OFL balance.

Moreover, when we read the regulation in the context of the greater regulatory scheme, its meaning becomes even more apparent. Treasury Regulation § 1.904(f)-2(d)(1) directs us to paragraph (a) for the portion of income to which it applies. Treasury Regulation § 1.904(f)-2(a) says that "[r]ecapture is accomplished by treating as United States source income *a portion of the taxpayer's foreign source taxable income of the same limitation as the foreign source loss that resulted in an overall foreign loss*." (Emphasis added.) In other words, the regulation speaks only to the portion of gain necessary to recapture an OFL balance. *See also, e.g.*, Treas. Reg. § 1.904(f)-2(a) ("A taxpayer shall be required to recapture an overall foreign loss as provided in this section."); *id.* para. (b)(1) (explaining how to determine the amount of a taxpayer's "overall foreign loss subject to recapture"); *id.* para. (d)(4)(iii) ("The provisions of paragraphs (a) and (b) of this section shall be applied to the extent of 100 percent of the foreign source taxable income which is recognized under paragraph (d)(4)(i) of this section."); *id.* subpara. (7) (example 3). The broad sourcing rule that Liberty Global advances is nowhere to be found in the regulation.

Finally, it is worth noting that Liberty Global's preferred reading of the regulation is disfavored under general rules of interpretation. We

---

[15] We interpret regulations using canons of statutory construction, beginning with the text of the regulation, and giving effect to its plain meaning. *See, e.g.*, *Austin v. Commissioner*, 141 T.C. 551, 563 (2013). To determine a regulation's plain meaning, we look to its text as well as the text and design of the regulation as a whole. *See, e.g.*, *id.*

21

interpret regulations in a manner that avoids conflicts with the corresponding statute. *See, e.g.*, *Austin*, 141 T.C. at 563 (citing *Phillips Petroleum Co. & Affiliated Subs. v. Commissioner*, 97 T.C. 30, 35 (1991), *aff'd without published opinion*, 70 F.3d 1282 (10th Cir. 1995)). Because the statute applies only to amounts necessary to recapture an OFL balance, Liberty Global's reading of the regulation is directly at odds with the statutory text.[16]

In summary, section 904(f)(3)(A)(i) is not ambiguous, and Treasury Regulation § 1.904(f)-2(d)(1) does not support Liberty Global's position. We therefore find for the Commissioner on this issue as well.

III.  *Election to Deduct Foreign Taxes*

Because we decide against Liberty Global with respect to both its arguments under section 904(f)(3), it alternatively wishes to deduct its foreign taxes under section 164(a)(3), which it says will also cause the reversal of income recognized for its 2010 tax year under section 78.[17] The Commissioner has conceded that Liberty Global may deduct its foreign taxes in lieu of claiming a foreign tax credit. Therefore, we have no occasion to discuss the matter further and conclude that Liberty Global may deduct its foreign taxes and reverse the income recognized under section 78.

IV.  *Conclusion*

For the reasons stated above, we resolve the case as it relates to section 904(f)(3) in favor of the Commissioner, but conclude that Liberty Global may deduct its foreign taxes for 2010.

To reflect the foregoing,

*Decision will be entered under Rule 155.*

---

[16] Liberty Global argues that subsequent amendments to the regulation in 2012 support its interpretation. *See* T.D. 9595, 2012-30 I.R.B. 71, 71. But the fact that the regulation was later clarified does not change our reading of the plain text for the years at issue, for the reasons we have already discussed. Moreover, for the same reasons, we find unpersuasive Liberty Global's argument that the Commissioner is improperly attempting to apply here a regulatory rule that did not become effective until after 2010.

[17] For a general description of the objective and operation of section 78, see *Champion International Corp. v. Commissioner*, 81 T.C. 424, 426–27 & n.6 (1983).

**AGREED COMPUTATION FOR ENTRY OF DECISION,
T.C. DOC. 44 (MAR. 25, 2024)**

**Received**
03/25/24 03:12 pm

**Filed**
03/25/24

Liberty Global, Inc.,

      Petitioner

      v.

Commissioner of Internal Revenue

      Respondent

Electronically Filed

Docket No. 341-21

Document No. 44

# Agreed Computation for Entry of Decision

## UNITED STATES TAX COURT

| | |
|---|---|
| LIBERTY GLOBAL, INC., | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Docket No. 341-21 |
| | ) Judge Toro |
| COMMISSIONER OF INTERNAL REVENUE, | ) |
| | ) Filed Electronically |
| | ) |
| Respondent. | ) |

### RESPONDENT'S COMPUTATION FOR ENTRY OF DECISION

The attached computation is submitted, on behalf of respondent, in compliance with the Court's opinion determining the issues in this case, together with a proposed decision which is being lodged concurrently with the computation.

The computation is submitted without prejudice to respondent's right to contest the correctness of the decision entered herein by the Court.

Date: <u>March 25, 2024</u>                By: _____

MATTHEW J. AVON
Special Trial Attorney
(Strategic Litigation)
33 Maiden Lane, 12th Floor
New York, NY 10038
Telephone: (646) 259-8012
Tax Court Bar No. AM0304
matthew.j.avon@irscounsel.treas.gov

Docket No. 341-21                    - 2 -


OF COUNSEL:
JOHN M. ALTMAN
Division Counsel
(Strategic Litigation)
PATRICIA P. DAVIS
Deputy Division Counsel
(Strategic Litigation)
JOHN A. GUARNIERI
Strategic Litigation Counsel
(Strategic Litigation)

Docket No. 341-21                    - 3 -

Without prejudice to the right of appeal, it is agreed that the attached

computation is in accordance with the opinion of the Tax Court in this case.

_____
RAJIV MADAN
Counsel for Petitioner
Skadden, Arps, Slate, Meagher
& Flom LLP
1440 New York Ave., NW
Washington, D.C. 20005
Telephone: (202) 371-7020
Fax: (202) 661-9020
Tax Court Bar No. MR1190
raj.madan@skadden.com

Date: March 25, 2024

# UNITED STATES TAX COURT

| | |
|---|---|
| LIBERTY GLOBAL, INC., | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Docket No. 341-21 |
| | ) Judge Toro |
| COMMISSIONER OF INTERNAL REVENUE, | ) |
| | ) Filed Electronically |
| | ) |
| Respondent. | ) |

## DECISION

Pursuant to the opinion of the Court filed November 8, 2023, and incorporating herein the facts recited in respondent's computation as the findings of the Court, it is

ORDERED AND DECIDED: That there is a deficiency in income tax due from petitioner for the taxable year 2010 in the amount of $153,585,549.00 and,

That there is a deficiency in income tax due from petitioner for the taxable year 2014 in the amount of $2,014,291.00, without regard to any net operating loss carryback from the taxable year 2019.


Judge.


Entered:

\*    \*    \*    \*    \*

The parties stipulate that the foregoing decision is in accordance with the opinion of the Court and respondent's computation, and that the Court may enter this decision, without prejudice to the right of either party to contest the correctness of the decision entered herein.

It is further stipulated that interest will be assessed as provided by law on the deficiency in tax due from petitioner.

It is further stipulated that the foregoing decision does not take into consideration the Form 1139 Corporate Application for Tentative Refund, filed on December 22, 2020, claiming a carryback of a net operating loss from the 2019 taxable year to taxable year 2014. Petitioner reserves the right to claim such carrybacks and respondent reserves the right to adjust the net operating loss and any carryback amounts upon examination.

MARJORIE A. ROLLINSON
Chief Counsel
Internal Revenue Service

RAJIV MADAN
Counsel for Petitioner
Skadden, Arps, Slate, Meagher
& Flom LLP
1440 New York Ave., NW
Washington, D.C. 20005
Telephone: (202) 371-7020
Fax: (202) 661-9020
Tax Court Bar No. MR1190
raj.madan@skadden.com

By: _____

MATTHEW J. AVON
Special Trial Attorney
(Strategic Litigation)
33 Maiden Lane, 12th Floor
New York, NY 10038
Telephone: (646) 259-8012
Tax Court Bar No. AM0304
matthew.j.avon@irscounsel.treas.gov

341-21

# COMPUTATION STATEMENT

In re: LIBERTY GLOBAL, INC. V. COMMISSIONER
1550 Wewatta St
Suite 1000
Denver. CO 80202-6300

T.C. Docket No. 341-21

## Income Tax

### Taxable Year 2010

| | | |
|---|---|---|
| Tax Shown on Return | $ 212,428,078.00 | |
| Less: Form 1139 Tentative allowance | $ (31,854,037.00) | |
| Less: Partial Assessment (dated 12/23/2019) | $   (1,905,948.00) | |
| Tax on Return | | $ 178,668,093.00 |
| | | |
| Corrected tax | $ 332,471,475.00 | |
| Less: Foreign Tax Credit | $                    - | |
| Less: Minimum Tax Credit | $      (271,833.00) | |
| Tax Imposed | | $ 332,253,642.00 |
| | | |
| Tax Imposed | $ 332,253,642.00 | |
| Less: Tax on Return | $ 178,688,093.00 | |
| Statutory Deficiency in Tax to be Assessed | | $ 153,585,549.00 |

TL-341-21                                  - 1 -

<u>Taxable Year 2014</u>

| | | |
|---|---|---|
| Tax Shown on Return | $ 4,028,582.00 | |
| Less: Foreign Tax Credit | $ 2,014,291.00 | |
| Tax on Return | | $ 2,014,291.00 |
| | | |
| Corrected Tax Liability | $ 4,028,582.00 | |
| Less: Foreign Tax Credit | $            - | |
| Tax Imposed | | $ 4,028,582.00 |
| | | |
| Tax Imposed | $ 4,028,582.00 | |
| Less: Tax on Return | $ 2,014,291.00 | |
| Statutory Deficiency in tax to be assessed | | $ 2,014,291.00 |

**DECISION, T.C. DOC. 45 (MAR. 27, 2024)**

# UNITED STATES TAX COURT

| | |
|---|---|
| LIBERTY GLOBAL, INC., | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Docket No. 341-21 |
| | ) Judge Toro |
| COMMISSIONER OF INTERNAL REVENUE, | ) |
| | ) Filed Electronically |
| | ) |
| Respondent. | ) |

## DECISION

Pursuant to the opinion of the Court filed November 8, 2023, and incorporating herein the facts recited in respondent's computation as the findings of the Court, it is

ORDERED AND DECIDED: That there is a deficiency in income tax due from petitioner for the taxable year 2010 in the amount of $153,585,549.00 and,

That there is a deficiency in income tax due from petitioner for the taxable year 2014 in the amount of $2,014,291.00, without regard to any net operating loss carryback from the taxable year 2019.

**(Signed) Emin Toro**
**Judge**

Entered:

\*    \*    \*    \*    \*

**Entered and Served 03/27/24**
- App.345 -

The parties stipulate that the foregoing decision is in accordance with the opinion of the Court and respondent's computation, and that the Court may enter this decision, without prejudice to the right of either party to contest the correctness of the decision entered herein.

It is further stipulated that interest will be assessed as provided by law on the deficiency in tax due from petitioner.

It is further stipulated that the foregoing decision does not take into consideration the Form 1139 Corporate Application for Tentative Refund, filed on December 22, 2020, claiming a carryback of a net operating loss from the 2019 taxable year to taxable year 2014. Petitioner reserves the right to claim such carrybacks and respondent reserves the right to adjust the net operating loss and any carryback amounts upon examination.

MARJORIE A. ROLLINSON
Chief Counsel
Internal Revenue Service

By:

**Matthew J. Avon**
Digitally signed by
Matthew J. Avon
Date: 2024.03.25
15:00:19 -04'00'

_____
RAJIV MADAN
Counsel for Petitioner
Skadden, Arps, Slate, Meagher
& Flom LLP

███████████
███████████

Tax Court Bar No. MR1190
███████████

_____
MATTHEW J. AVON
Special Trial Attorney
(Strategic Litigation)

███████████
███████████

Tax Court Bar No. AM0304
███████████

**NOTICE OF APPEAL, T.C. DOC. 46 (JUNE 2, 2024)**

Received
06/21/24 05:20 pm

Filed
06/21/24

Liberty Global, Inc.,

      Petitioner

      v.

Commissioner of Internal Revenue

      Respondent

Electronically Filed

Docket No. 341-21

Document No. 46

# Notice of Appeal

SERVED 06/21/24

# UNITED STATES TAX COURT

|  |  |  |
|---|---|---|
| LIBERTY GLOBAL, INC., | ) | |
| | ) | |
| Petitioner, | ) | Docket No. 341-21 |
| | ) | |
| v. | ) | |
| | ) | Judge Toro |
| COMMISSIONER OF INTERNAL REVENUE, | ) | |
| | ) | Filed Electronically |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

## NOTICE OF APPEAL

Pursuant to Rule 190, notice is hereby given that Liberty Global, Inc., hereby appeals to the United States Court of Appeals for the Tenth Circuit from the decision of this Court entered in the above-captioned proceeding on March 27, 2024, and all orders that, for purposes of appeal, merge into that decision.

Dated:     June 21, 2024          Respectfully submitted,

<br>

_____
Rajiv Madan
Skadden, Arps, Slate, Meagher
  & Flom LLP
1440 New York Avenue, N.W.
Washington, DC  20005
(202) 371-7020
Tax Court Bar No. MR1190
raj.madan@skadden.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2024, I electronically filed Plaintiff-Appellant Liberty Global, Inc.'s Appendix with the Clerk of Court for the United States Court of Appeals for the Tenth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: September 4, 2024

*s/ Parker Rider-Longmaid*
Parker Rider-Longmaid
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
202-371-7000
parker.rider-longmaid@skadden.com

*Counsel for Petitioner-Appellant*
  *Liberty Global, Inc.*

## CERTIFICATE OF COMPLIANCE

I hereby certify that (1) Plaintiff-Appellant Liberty Global, Inc.'s Appendix complies with Fed. R. App. P. 25(a)(5) and 10th Cir. R. 25.5 because no privacy redactions were required, (2) the hard copies of these documents to be filed with this Court and the electronic copies are identical, and (3) Microsoft Defender Antimalware Client Version 4.18.23110.3 Antivirus Version 1.403.2426.0 was run on these documents and no virus was detected.

Dated: September 4, 2024

*s/ Parker Rider-Longmaid*
Parker Rider-Longmaid
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
202-371-7000
parker.rider-longmaid@skadden.com

*Counsel for Petitioner-Appellant*
  *Liberty Global, Inc.*