# No. 24-9004

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

————————

### LIBERTY GLOBAL, INC.,

Petitioner-Appellant,

v.

### COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee.

————————

### ORAL ARGUMENT REQUESTED

————————

### ON APPEAL FROM THE DECISION
### OF THE UNITED STATES TAX COURT
### JUDGE EMIN TORO
### No. 341-21

————————

### BRIEF FOR THE APPELLEE

————————

DAVID A. HUBBERT
  *Deputy Assistant Attorney General*

FRANCESCA UGOLINI                (202) 514-3361
JENNIFER M. RUBIN                (202) 307-0524
JUDITH A. HAGLEY                 (202) 514-8126
  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, DC 20044*

# TABLE OF CONTENTS

**Page**

Table of contents.......................................................................................i

Table of authorities ............................................................................. iii

Glossary .............................................................................................viii

Statement of related cases ....................................................................ix

Statement of the issue............................................................................1

Statement of the case .............................................................................2

      A.      Background..............................................................................3

              1.     The foreign tax credit ...................................................3

              2.     Sourcing rules ...............................................................5

              3.     Recapturing overall foreign losses that offset U.S. income...................................................................................9

      B.      LGI  ..................................................................................18

      C.      The Tax Court proceedings.................................................22

Summary of argument ........................................................................28

Argument:

      The Tax Court correctly determined that §904(f)(3)(A)(i) and Reg. §1.904(f)-2(d)(1) do not override §865(a)'s sourcing rule regarding gain in excess of LGI's OFL account balance...............31

      A.      Introduction..........................................................................31

      B.      The text, context, and purpose of §904(f)(3)(A)(i) demonstrate that it applies to no more than the amount necessary to recapture an OFL account balance .................37

**Page**

1.    The text of §904(f)(3)(A)(i) ...............................................38

2.    The context of §904(f)(3)(A)(i) .......................................40

3.    The purpose of §904(f)(3)(A)(i) ......................................43

C.    Section 904(f)(3)(A)(i)'s "notwithstanding" clause does not displace §865(a)'s sourcing rule for gain greater than an OFL account balance ........................................................47

D.    LGI's reliance on Reg. §1.904(f)-2(d)(1) is misplaced because the regulation (like the statute) reaches only gain necessary to recapture an OFL account balance ..........52

1.    LGI rewrites the text of Reg. §1.904(f)-2(d)(1) ...........56

2.    LGI ignores the context of Reg. §1.904(f)-2(d)(1) ........62

3.    LGI's interpretation of Reg. §1.904(f)-2(d)(1) fails to harmonize that provision with the rest of the statutory and regulatory scheme ................................65

Conclusion.......................................................................................68
Statement regarding oral argument.........................................................68
Certificate of compliance ......................................................................69
Certificate of service ...........................................................................70

# TABLE OF AUTHORITIES

**Cases:**                                                                        **Page(s)**

*Babb v. Wilkie,*
    589 U.S. 399 (2020) ............................................................... 38

*Brayman v. KeyPoint Gov't Sols., Inc.,*
    83 F.4th 823 (10th Cir. 2023) ........................................ 48, 51

*Cisneros v. Alpine Ridge Grp.,*
    508 U.S. 10 (1993) ................................................................. 48

*Citizens Elec. Corp. v. Bituminous Fire & Marine Ins. Co.,*
    68 F.3d 1016 (7th Cir. 1995) ................................................ 52

*City of Arlington v. FCC,*
    569 U.S. 290 (2013) ............................................................... 53

*Davis v. Michigan Dep't of Treasury,*
    489 U.S. 803 (1989) ............................................................... 55

*FDA v. Brown & Williamson Tobacco Corp.,*
    529 U.S. 120 (2000) ............................................................... 65

*Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel.*
    *Wilson,*
    559 U.S. 280 (2010) ............................................................... 55

*Hershey Foods Corp. v. Commissioner,*
    76 T.C. 312 (1981) ............................................. 10, 13, 43, 44

*Home Depot U.S.A., Inc. v. Jackson,*
    587 U.S. 435 (2019) ............................................................... 40

*Joy Techs., Inc. v. Sec'y of Labor,*
    99 F.3d 991 (10th Cir. 1996) ......................................... 55, 65

*Loper Bright Enters. v. Raimondo,*
    144 S. Ct. 2244 (2024) .......................................................... 37

*Mid Atl. Cap. Corp. v. Bien,*
    956 F.3d 1182 (10th Cir. 2020) ............................................ 43

*NLRB v. SW Gen., Inc.,*
    580 U.S. 288 (2017) ......................................................... 26, 47

*Pugin v. Garland,*
    599 U.S. 600 (2023) ............................................................... 47

*Richison v. Ernest Group, Inc.,*
    634 F.3d 1123 (10th Cir. 2011) ............................................ 33

## Cases (cont'd): Page(s)

*Tax & Acct. Software Corp. v. United States*,
 301 F.3d 1254 (10th Cir. 2002) ................................ 65
*Time Warner Ent. Co. v. Everest Midwest Licensee, L.L.C.*,
 381 F.3d 1039 (10th Cir. 2004) ............................... 55
*United States v. Dolan*,
 571 F.3d 1022 (10th Cir. 2009) ............................... 48
*United States v. Leffler*,
 942 F.3d 1192 (10th Cir. 2019) ............................... 27
*United States v. Novak*,
 476 F.3d 1041 (9th Cir. 2007) ................................ 52
*United States v. Vasquez-Alvarez*,
 176 F.3d 1294 (10th Cir. 1999) ............................... 52
*Van Sant & Co. v. Town of Calhan*,
 83 F.4th 1254 (10th Cir. 2023) ............................... 33
*Whirlpool Fin. Corp. v. Commissioner*,
 19 F.4th 944 (6th Cir. 2021) ................................. 53

## Statutes:

Internal Revenue Code (26 U.S.C.):

§61(a) ......................................................... 3
§164 .......................................................... 25
§164(a)(3) ..................................................... 5
§351 .............................................. 15, 51, 54, 58
§361 .......................................................... 51
§367(d) .................................................... 60, 61
§§861-865 ............................................... 6, 40, 54
§862(a)(2) .............................................. 8, 15, 34
§865 ............. 1, 8, 9, 21, 25, 26, 31, 36, 37, 49, 53
§865(a) ................... 7, 8, 16, 17, 20, 21, 23, 27-29, 31
                          33, 36, 37, 40, 44, 46-51, 54, 66
§865(a)(1) .................................................... 31
§865(e) ........................................................ 8
§865(f) .............................................. 8, 17, 31, 32
§865(k)(1) ................................................. 8, 34
§§901-909 ...................................................... 3

**Statutes (cont'd):**                                                    **Page(s)**

Internal Revenue Code (26 U.S.C.) (cont'd):

§902 ................................................................20, 21, 34

§904 ...........................................................2, 4, 5, 22, 34, 40

§904(a) .............................. 4, 10, 11, 15, 21, 29, 41, 45, 46, 64

§904(c)...............................................................................5

§904(d)...............................................................................5

§904(f) ................................1, 10, 11, 17, 18, 28, 36, 41, 43-47

§904(f)(1)..................................10-17, 23, 25, 38-44, 46, 49, 63

§904(f)(1)(A)&(B) ..........................................................12

§904(f)(2) ........................................................................9

§904(f)(3)......................................11-16, 18, 21, 23-25, 32, 39

41-45, 49, 56-63

§904(f)(3)(A) ..................................................28, 38, 42, 47, 49

§904(f)(3)(A)(i) .................................1, 2, 12, 14, 16, 17, 25-27

29-32, 37-40, 42-54, 58, 65

§904(f)(3)(A)(i)&(ii).................................................29, 39, 42

§904(f)(3)(A)(ii) .................................12, 16, 17, 39, 40, 42, 49

§904(f)(3)(D)...............................................................14, 23

§951 ...............................................................................7

§957(a) ............................................................................6

§1001...............................................7, 19, 20, 23-27, 37, 49-51, 54

§1001(a) ...........................................................................7

§1248........................3, 8, 19, 20, 23, 25, 26, 34, 37, 40, 49-51

§1248(a) ...........................................................................7


American Jobs Creation Act of 2004, P.L. 108-357,

118 Stat. 1647..........................................................14


Tax Cuts & Jobs Act, P.L. 115-97,

131 Stat. 2221..................................................20, 22


Tax Reform Act of 1976, P.L. 94-455, 90 Stat. 1624.....................10

**Regulations and Regulatory Materials:**                    **Page(s)**

Treasury Regulations (26 C.F.R.):

§1.904-1..................................................................4

§1.904-4(a) ...........................................................5

§1.904(f)-1(b) ......................................................11

§1.904(f)-1(d)(1) ..........................................11, 18

§1.904(f)-1(e) ...............................................11, 18

§1.904(f)-2 ....................................................61, 62

§1.904(f)-2(a)...........................................58, 62-64

§1.904(f)-2(b) .....................................................62

§1.904(f)-2(c) .....................................................18

§1.904(f)-2(c)(2) ...............................................63

§1.904(f)-2(d).....................................58-61, 63

§1.904(f)-2(d)(1) ................... 1, 18, 25, 27, 29-32, 52
                                                    54-59, 61-63, 65

§1.904(f)-2(d)(1)(i)&(ii) .................................57

§1.904(f)-2(d)(1)(i) ..........................................56

§1.904(f)-2(d)(1)(ii)..........................................57

§1.904(f)-2(d)(3) .................................18, 59, 62

§1.904(f)-2(d)(4) .................................18, 58, 59

§1.904(f)-3 .........................................................18

51 Fed. Reg. 3,193 (1986) .................................63

52 Fed. Reg. 31,992 (1987) ........................17, 64

72 Fed. Reg. 72,592 (2007) ........................17, 64

77 Fed. Reg. 37,576 (2012) ..................18, 60, 61

IRS Field Service Advice Memo. 200041004 (available at
     https://www.irs.gov/pub/irs-wd/0041004.pdf
     and https://perma.cc/677L-BYNH)............................31, 60-62

**Other Authorities:**                                                **Page(s)**

Bittker & Eustice, *Fed. Income Tax'n of Corps. &
Shareholders* (2024) ................................................. 10

Bittker & Lokken, *Fed. Tax'n of Income,
Estates & Gifts* (2024) .............................................. 5

Goulder, <u>*Liberty Global:*</u> *Do Litigants Believe Their Own Tax
Planning*, 113 Tax Notes Int'l 1403 (Mar. 4, 2024) ........ 54, 67

H.R. Conf. Rep. 99-841 (Pt.2) (1986) .............................. 8

H.R. Conf. Rep. 108-755 (2004) .................................... 45

Joint Comm. on Taxation, *Gen'l Expl. of the Tax Reform
Act of 1986*, JCS-10-87 (1987) ......................... 5, 6, 8, 9, 36, 67

Kuntz & Peroni, *U.S. Int'l Tax'n* (2024) ........................ 3, 4, 20, 35

S. Rep. 94-938 (I) (1976) ............................................ 10, 13

S. Rep. 108-192 (2003) ............................................... 14, 45

Scalia & Garner, *Reading Law: The Interpretation of
Legal Texts* (2012) .................................................. 48

Tax Court Rule 122 ................................................... 22

# GLOSSARY

| | |
|---|---|
| Add. | Addendum bound with Appellant's brief |
| App. | Appellant's Appendix (one volume) |
| Br. | Opening brief filed by Liberty Global, Inc. |
| CFC | Controlled foreign corporation |
| Commissioner | Appellee Commissioner of Internal Revenue |
| I.R.C. | Internal Revenue Code (26 U.S.C.) |
| J:COM | A Japanese subsidiary of Liberty Global, Inc. |
| LGI | Appellant Liberty Global, Inc., a U.S. corporation |
| OFL | Overall foreign loss |
| Reg. | Treasury Regulations (26 C.F.R.) |

## STATEMENT OF RELATED CASES

Pursuant to Tenth Circuit Rule 28.2(C)(3), counsel for the

Commissioner state that there are no prior or related appeals.

## STATEMENT OF THE ISSUE

Section 865 of the Internal Revenue Code (26 U.S.C.) provides rules for determining whether gain from the sale of personal property (including stock in a foreign company) is U.S.-source or foreign-source income.  Under that provision, gain on foreign stock sold by a U.S. taxpayer is U.S.-source income unless one of §865's exceptions applies.  It is undisputed that those exceptions do not apply here.  Section 904(f) and its implementing regulations re-source a taxpayer's income for purposes of recapturing the taxpayer's overall foreign losses.  The question presented is whether §904(f)(3)(A)(i) and Reg. §1.904(f)-2(d)(1) override §865's sourcing rule so as to treat all the gain from the taxpayer's sale of foreign stock as foreign-source income (as the taxpayer contends) or only an amount necessary to recapture a taxpayer's overall foreign losses (as the Commissioner contends and the Tax Court held).

This issue was raised (App.136-137, 195-196) and ruled on (Add.18-21).

## STATEMENT OF THE CASE

This case concerns §904 of the Internal Revenue Code, a provision that limits the amount of the foreign tax credit a taxpayer may claim in any given year. That amount depends on (among other things) the amount of foreign-source income earned by the taxpayer that year. The more foreign-source income earned by a taxpayer, the greater the amount of allowable foreign tax credit. Taxpayers who have zero foreign-source income (or a net foreign loss) for the year are allowed no foreign tax credit. In this case, the taxpayer (Liberty Global, Inc. (LGI)) sold stock in a Japanese corporation and realized $3.2 billion[1] in gain. None of that gain was subject to double taxation, i.e., taxation by the United States and Japan on the same income. LGI argued that §904(f)(3)(A)(i) allows it to exclude most of that gain from income, or, alternatively, treat it as foreign-source income — thereby increasing its allowable foreign tax credit for the tax year 2010. The Commissioner disagreed, determining that under the Code's applicable recognition and sourcing provisions, LGI must recognize all the gain from the stock sale and treat it as U.S.-source income, not foreign-source income (other

---

[1] Dollar figures are approximations.

than $438 million treated as a foreign-source dividend under §1248).
The Tax Court agreed with the Commissioner and upheld the
Commissioner's disallowance of LGI's claimed foreign tax credit. LGI
appeals the court's ruling that the stock-sale gain is U.S.-source income
but not its ruling that the gain must be included in income.

### A.    Background

#### 1.    The foreign tax credit

The United States taxes the income of its domestic corporations on
a worldwide basis. I.R.C. §61(a). Therefore, when calculating its
income for U.S. tax purposes, a U.S. corporation must include income
earned abroad, even if that foreign income was subject to foreign tax.
To mitigate double taxation, U.S. citizens and domestic corporations
may claim a foreign tax credit for income taxes they paid to another
country, subject to several limitations. I.R.C. §§901-909. The foreign
tax credit, however, is not designed to subsidize taxpayers who invest
abroad, and it is not allowed to the extent that another country's tax
rate exceeds that of the United States. Kuntz & Peroni, *U.S. Int'l Tax'n*
§B4.16[1] (2024). For example, if a taxpayer earns $100 of foreign-
source income that is subject to a 35% tax rate by the United States and

-4-

40% by the foreign country, the taxpayer may only claim a foreign tax credit of $35.

Congress has long been concerned with taxpayers misusing the foreign tax credit to avoid U.S. tax due on U.S.-source income. *See* Kuntz, above, §B4.16[1]. Accordingly, the Internal Revenue Code limits the amount of a foreign tax credit that a taxpayer can claim in any given year to prevent taxpayers from using the credit to reduce U.S. tax on their U.S.-source income. *See* I.R.C. §904; *see* Suringa, *Foreign Income: The Foreign Tax Credit Limitation under Section 904*, 6060 Tax Mgmt. Portfolios at A-1 (2016) (§904 is designed "to prevent the foreign tax credit from relieving a taxpayer of the U.S. tax that would otherwise be payable on U.S.-source income"). Section 904(a) restricts the allowable foreign tax credit to the U.S. tax proportionate to the taxpayer's foreign-source share of total income. I.R.C. §904(a); Reg. §1.904-1. Under §904(a), the ratio of the foreign tax credit to the taxpayer's pre-credit U.S. tax liability cannot exceed the ratio of the taxpayer's taxable income from foreign sources to the taxpayer's total taxable income. Or, stated as an equation:

$$\text{Maximum credit} = \frac{\text{Foreign-source taxable income}}{\text{Worldwide taxable income}} \times \text{U.S. tax}$$

As this equation illustrates,[2] reductions in a taxpayer's foreign-source taxable income (the numerator of the §904 fraction) proportionally decreases the allowable foreign tax credit. If a taxpayer's foreign losses exceed its foreign income, the fraction's numerator is zero, reducing the taxpayer's foreign tax credit limitation to zero and precluding it from claiming any foreign tax credit that year against its U.S. tax liability. Foreign taxes paid (or deemed paid) that exceed the taxpayer's foreign tax credit limitation in any given year may be carried over and used in a different tax year. I.R.C. §904(c). Instead of obtaining a tax credit, taxpayers may opt to deduct such taxes in the year that they were paid (or deemed paid). I.R.C. §164(a)(3).

### 2.    Sourcing rules

As explained, a critical premise of the U.S. foreign tax credit is that it should not reduce a taxpayer's U.S. tax on its U.S.-source income, but only a taxpayer's U.S. tax on foreign-source income. Joint

---

[2] Technically, §904 divides foreign-source income into separate categories and then creates separate limitations for each category. I.R.C. §904(d); Reg. §1.904-4(a); *see generally* Bittker & Lokken, *Fed. Tax'n of Income, Estates & Gifts* ¶72.8 (2024). There is no dispute in this case regarding separate limitations so, for simplicity, this brief refers generally to the foreign tax credit limitation on foreign-source income.

-6-

Comm. on Taxation, *Gen'l Expl. of the Tax Reform Act of 1986*, JCS-10-87, at 916 (1987).  Although the United States acknowledges that foreign countries have the first right to tax foreign-source income, it imposes its full tax on U.S.-source income.  *Id*.  Thus, to ensure that the foreign tax credit operates properly, Congress has provided detailed rules that determine whether particular income is U.S.-source or foreign-source.  *Id*.; *see generally* I.R.C. §§861-865.

Congress revamped the Code's sourcing rules in the Tax Reform Act of 1986 to better ensure that only income that was "likely to be subject to foreign tax" is treated as foreign-source income.  Joint Comm. on Taxation, above, JCS-10-87, at 918.  The foreign tax credit mechanism was established to mitigate "double taxation" of the same income by the United States and foreign countries, but double taxation is unlikely where income probably will not be subject to foreign tax.  *Id*. The sourcing rules are "important" because they ensure that the United States can impose its full tax on U.S.-source income.  *Id*. at 916.

This case concerns a U.S. taxpayer that sold its stock in a foreign corporation that qualified as a controlled foreign corporation (CFC).  *See* I.R.C. §957(a) (defining CFC).  If a U.S. taxpayer sells (or otherwise

disposes of) stock or other personal property, it must recognize gain on that disposition to the extent that the amount realized exceeds the taxpayer's adjusted basis in the property, I.R.C. §1001(a), unless one of the Code's nonrecognition provisions applies.[3]  For example, if a taxpayer pays $30 for stock, and then later sells it for $100, its taxable gain equals $70 (i.e., $100-$30).  If the taxpayer is a U.S. shareholder of a CFC and sells its stock for gain, the gain is treated as a dividend (rather than gain from a capital asset under §1001), to the extent of its share of the CFC's undistributed earnings and profits.[4]  I.R.C. §1248(a).  So, in the above example, if the taxpayer sold CFC stock, and the taxpayer's share of the CFC's undistributed earnings is $10, $10 of the $70 gain is treated as a dividend.

Congress has determined that the source of gain from a sale of stock and other types of personal property should be determined by the residence of the seller.  I.R.C. §865(a).  Accordingly, if a U.S. taxpayer

---

[3]  The Code contains certain nonrecognition provisions but none apply here.

[4]  For this purpose, the CFC's undistributed earnings and profits do not include undistributed earnings and profits that have been previously included in income by the U.S. shareholder under I.R.C. §951.

sells stock in a foreign corporation, any gain from that sale is U.S.-source income. *Id*. Although §865 contains certain exceptions to its general sourcing rule, *see, e.g.,* I.R.C. §865(e), (f), those exceptions do not apply here (as LGI acknowledges (Br.50)). If a U.S. taxpayer has gain from a stock sale that is treated as dividend income under §1248, then the sourcing rule for dividends from foreign corporations (§862(a)(2)), rather than the sourcing rule for gains on personal property (§865(a)), applies to that dividend income. *See* I.R.C. §865(k)(1) (providing that §865(a)'s source rule does not apply to gain from the sale of stock in a CFC that §1248 treats as a dividend). Under §862(a)(2), dividends from foreign corporations are foreign-source income. Applying these two sourcing rules to the example in the prior paragraph, the $10 dividend is foreign-source income under §862(a)(2), and the $60 capital gain is U.S.-source income under §865(a).

Prior to the Tax Reform Act of 1986, gains from the sale of personal property generally were sourced where title to the property passed to the purchaser (the "title passage" rule). H.R. Conf. Rep. 99-841 (Pt.2), at 595 (1986). Congress changed that rule by adopting §865 because it was concerned that "prior law's source rules for income

derived from sales of personal property sometimes allowed U.S.

taxpayers to freely generate foreign income subject to little or no foreign

tax." Joint Comm. on Taxation, above, JCS-10-87, at 918. Congress

concluded that the "residence of the seller" should determine the source

of the gain from personal property since "countries rarely tax personal

property gains" based on where title to the property passed. *Id.* Section

865 is designed to enforce Congressional policy that income "not likely

to be taxed" by a "foreign country" should "not be treated as foreign

source income for purposes of the foreign tax credit limitations." *Id*. at

919.

### 3. Recapturing overall foreign losses that offset U.S. income

Because U.S. corporations are taxed on their worldwide income, a

foreign loss could potentially reduce a U.S. corporation's U.S. tax

liability on its U.S.-source income. That happens when the U.S.

corporation's foreign-source deductions exceed its foreign-source income

(referred to as an overall foreign loss or OFL), and, as a result, the

excess foreign loss offsets U.S.-source income. *See* I.R.C. §904(f)(2)

(defining OFL). If the foreign country's law does not provide for loss

carryovers, foreign-source income earned by the corporation in a later

year would be subject to foreign tax that could be credited against U.S.
income tax and so result in a second U.S. tax benefit. *See generally*
Bittker & Eustice, *Fed. Income Tax'n of Corps. & Shareholders*
¶15.21[7] (2024). Congress concluded that this result conflicted with
the objectives of the foreign tax credit. *See* S. Rep. 94-938 (I), at 236
(1976); *Hershey Foods Corp. v. Commissioner*, 76 T.C. 312, 322-323
(1981).

To prevent taxpayers from obtaining the double benefit of (i) using
foreign losses to reduce U.S.-source taxable income in prior tax years
and (ii) reducing U.S. tax liability through a foreign tax credit (due to
foreign-source income) in a subsequent tax year, Congress enacted
§904(f). *See* Tax Reform Act of 1976, P.L. 94-455, §1032, 90 Stat. 1624;
*see* Bittker & Eustice, above, ¶15.21[7]. Section 904(f)(1) requires a
taxpayer that has used an OFL to offset U.S.-source income to
recapture the benefit of the OFL in later years as the taxpayer
generates foreign-source income. The recapture rule operates by
reducing the numerator (foreign-source taxable income) in the §904(a)
equation (*see*, above, p.4) by the amount of previous OFLs that the
taxpayer had used to reduce its U.S.-source taxable income and that

had not yet been recaptured, i.e., the taxpayer's outstanding OFL

balance.  The recapture rule's reduction of foreign-source taxable

income reduces the annual foreign tax credit limitation calculated

under §904(a)'s equation.  In effect, §904(f) "re-sources" subsequent

foreign-source income to the United States to compensate for the fact

that prior foreign losses were deductible against U.S.-source income.

*Id.*

Section 904(f) recaptures a taxpayer's outstanding OFLs through

two interrelated rules — a general rule (§904(f)(1)) and a disposition

rule (§904(f)(3)).  Under §904(f)(1)'s general rule, if a taxpayer has an

outstanding OFL account balance,[5] it must treat a certain amount of its

foreign-source taxable income as U.S.-source taxable income for

purposes of calculating §904(a)'s foreign tax credit limitation.  The

statute specifies the amount: "the lesser of" (i) the "amount of such loss"

(i.e., the outstanding balance in the taxpayer's OFL account) or (ii) 50%

---

[5] Taxpayers are required to maintain (and report on their federal tax returns) an "OFL account" which is increased each year by the amount, if any, of an OFL the taxpayer sustains in that year, and is decreased by the amount, if any, of an OFL balance that is recaptured in that year.  Reg. §1.904(f)-1(d)(1), (e).  OFL accounts are maintained for each separate category of income (*see*, above, n.2) in which an OFL arises.  Reg. §1.904(f)-1(b).

-12-

of the taxpayer's foreign-source taxable income (or such larger percentage that a taxpayer may choose). I.R.C. §904(f)(1)(A)&(B). Thus, in any taxable year, the amount of OFLs subject to recapture under §904(f)(1)'s general rule will not exceed 50% of the taxpayer's foreign-source taxable income unless the taxpayer chooses to have a greater percentage of foreign-source taxable income recharacterized as U.S.-source taxable income under §904(f)(1).

Section 904(f)(3) modifies §904(f)(1)'s general rule when taxpayers with an OFL account balance dispose of certain assets that generate foreign-source taxable income. In that situation, the taxpayer "shall be deemed to have received and recognized" a certain amount of foreign-source taxable income. §904(f)(3)(A)(i). The statute specifies the amount of deemed foreign-source taxable income: "the lesser of" (i) the excess of the fair market value of the property over the taxpayer's adjusted basis in the property (i.e., the gain on the disposition) or (ii) the remaining amount of the OFL account balance after applying §904(f)(1). I.R.C. §904(f)(3)(A)(i). Section 904(f)(1)'s OFL-recapture rule is then applied to that amount of deemed foreign-source taxable income but is modified to substitute 100% for 50%. I.R.C. §904(f)(3)(A)(ii).

Reading §904(f)(1) and §904(f)(3) together, when a taxpayer with an OFL account balance disposes of qualifying property, it is deemed to recognize a certain amount of foreign-source taxable income and 100% of that amount will be used to recapture the taxpayer's remaining OFLs.  Accordingly, 100% of the deemed foreign-source taxable income will be recharacterized as U.S.-source income under §904(f)(1) and reduce the taxpayer's OFL account balance.

Section 904(f)(3)'s accelerated recapture rule operates as a last chance to recapture a taxpayer's OFLs.  When it enacted §904(f)(1)'s general OFL-recapture rule in 1976, Congress recognized that taxpayers might dispose of assets used in their foreign operations before an OFL account balance was fully recaptured.  *See* S. Rep. 94-938 (I), at 239-240.  Disposing of assets that generate foreign-source taxable income would leave §904(f)(1) ineffectual as the taxpayer would cease to have foreign-source taxable income that could be recharacterized as U.S.-source income under §904(f)(1)'s recapture rule.  *Hershey*, 76 T.C. at 323.  To address that problem, Congress adopted §904(f)(3)'s disposition rule.  *See* S. Rep. 94-938 (I), at 239-240.  In 2004, Congress

-14-

amended §904(f)(3) to cover certain dispositions of CFC stock.[6]

American Jobs Creation Act of 2004, P.L. 108-357, §895, 118 Stat. 1647

(codified at §904(f)(3)(D)).

To ensure that a taxpayer's outstanding OFLs can be recaptured

even where the disposition does not otherwise result in foreign-source

taxable income, §904(f)(3)'s disposition rule applies "notwithstanding

any other provision of this chapter (other than paragraph (1) [i.e.,

§904(f)(1)])." I.R.C. §904(f)(3)(A)(i). Accordingly, §904(f)(3)(A)(i)

"deem[s]" a taxpayer to receive and recognize the prescribed amount of

foreign-source taxable income on a disposition of qualifying property

even if that disposition is otherwise part of a nontaxable transaction

or otherwise generates U.S.-source income. Section 904(f)(3) does not,

however, deem the taxpayer to receive and recognize foreign-source

taxable income greater than the outstanding OFL account. I.R.C.

§904(f)(3)(A)(i); *see* S. Rep. 108-192, at 171-172 (explaining §904(f)(3)'s

---

[6] Congress enacted the amendment because owning foreign stock "can lead to, or increase, an overall foreign loss as a result of interest expenses allocated against foreign-source income under the interest expense allocation rules." S. Rep. 108-192, at 172 (2003).

-15-

limited application to dispositions in an otherwise "non-taxable transaction," such as an I.R.C. §351 corporate organization).

To illustrate the operation of §904(f)(1)'s general OFL-recapture rule and §904(f)(3)'s disposition rule, assume U.S.-Co owns stock in a Japanese CFC and has an existing OFL account balance of $100 (i.e., it had previously used $100 in foreign losses to offset $100 in U.S.-source taxable income). In Year 1, it receives a $20 dividend from the Japanese CFC. The dividend is foreign-source taxable income, I.R.C. §862(a)(2), and can be used under §904(f)(1) to recapture part of the taxpayer's outstanding OFLs. Applying §904(f)(1)'s general OFL-recapture rule to the $20 foreign-source taxable income, the lesser of (i) U.S.-Co's OFL account balance ($100) or (ii) 50% of its foreign-source taxable income (i.e., 50% of $20, or $10) is treated as U.S.-source taxable income for purposes of calculating U.S.-Co's foreign tax credit limitation under §904(a). The lesser of those two amounts is $10, and that amount is treated as U.S.-source, reducing the outstanding OFL account balance to $90. If U.S.-Co receives similar dividends in subsequent years (and has no other foreign-source taxable income or OFLs), it can eliminate its OFL account balance by Year 10, re-sourcing

$10 of its foreign-source dividend income as U.S.-source taxable income each year.

But assume instead that U.S.-Co sells its CFC stock in Year 2 and realizes $200 in gain.  That gain is U.S.-source taxable income, I.R.C. §865(a), and, but for §904(f)(3), could not be used to reduce the taxpayer's OFL account balance under §904(f)(1) because §904(f)(1) — standing alone — applies only to <u>actual</u> foreign-source taxable income. Applying §904(f)(3) to U.S.-Co's gain from its disposition of the CFC stock, the lesser of (i) U.S.-Co's remaining OFL account balance ($90) or (ii) U.S.-Co's gain ($200) is <u>deemed</u> to be foreign-source taxable income. The lesser amount is $90, and, pursuant to §904(f)(3)(A)(ii)'s direction, §904(f)(1) applies to the $90 of deemed foreign-source taxable income, and re-sources 100% of that income as U.S.-source taxable income for purposes of calculating U.S.-Co's foreign tax credit limitation.  After applying §904(f)(1) and (3) to its gain from the stock sale, U.S.-Co's outstanding OFL account balance is reduced to zero in Year 2, and all the gain remains U.S.-source: $90 of the $200 stock-sale gain is temporarily deemed foreign-source taxable income under §904(f)(3)(A)(i), and then is re-sourced back to U.S.-source taxable

income under §904(f)(1), (3)(A)(ii).  The remaining $110 of the $200

stock-sale gain is U.S.-source taxable income under §865(a) and is not

affected by §904(f)'s OFL-recapture rules, because that amount exceeds

the outstanding OFL account balance.

In some dispositions, the income would be foreign-source

irrespective of §904(f)(3)(A)(i).  *E.g.,* I.R.C. §865(f).  But in other

dispositions, such as U.S.-Co's CFC stock sale in the above example,

there would be no foreign-source taxable income that could be

recharacterized, under §904(f)(1), as U.S.-source taxable income to

recapture the OFL account.  *See* I.R.C. §865(a).  Without §904(f)(3)(A)(i)

first deeming the lesser of the stock-sale gain or the OFL account

balance as foreign-source taxable income, and then treating that

deemed foreign-source taxable income as U.S.-source taxable income to

recapture OFLs, taxpayers like U.S.-Co that dispose of shares in a CFC

could not reduce their OFL account balance.

In 1987, Treasury promulgated regulations implementing §904(f)'s

OFL-recapture rule.  52 Fed. Reg. 31,992 (1987).[7]  The regulations

_____

[7]  The regulations were amended in 2007, *see* 72 Fed. Reg. 72,592
(2007), but in all material respects, the rules promulgated in 1987
(continued…)

-18-

explain the manner in which §904(f) should be applied, including details regarding maintaining an OFL account, the treatment of loss carryovers and carrybacks, and how to apply the recapture rule during years that the taxpayer deducts, rather than credits, foreign taxes. Reg. §§1.904(f)-1(d)(1), (e), -2(c), -3.  The regulations also describe §904(f)(3)'s disposition rule, Reg. §1.904(f)-2(d)(1), and explain how it applies (i) when a taxpayer recognizes foreign-source income irrespective of §904(f)(3), Reg. §1.904(f)-2(d)(3), and (ii) when a taxpayer would not otherwise recognize income (U.S.-source or foreign-source), Reg. §1.904(f)-2(d)(4).  During the year at issue, the regulations did not address dispositions where a taxpayer recognizes income irrespective of §904(f)(3), but the income is U.S.-source, such as a sale of CFC stock. That specific situation was addressed in regulations promulgated in 2012.  77 Fed. Reg. 37,576 (2012).

### B.    LGI

LGI is a U.S. telecommunications corporation and parent of a group of U.S. companies that file a consolidated tax return.  (App.73;

---

remained in force during the year at issue (2010).  Unless otherwise noted, all references to the regulations are to those in effect during 2010.  (*See* Add.66-73.)

Add.4-5.) It also owns (directly and indirectly) an affiliated group of foreign corporations. (App.73; Add.4.) As pertinent here, LGI indirectly owned a controlling interest in Jupiter Telecommunications Co. (J:COM), a Japanese company. (App.73-77; Add.4.) As such, J:COM constituted a CFC of LGI for U.S. tax purposes. (App.76-77; Add.4.)

In 2010, LGI transferred its interest in J:COM to an unrelated party for $3.96 billion in a transaction treated as a sale for U.S. tax purposes. (App.77; Add.4.) LGI recognized gain of $3.25 billion on that sale and reported that amount on its 2010 U.S. tax return. (App.78; Add.5.) LGI characterized $438 million of the gain as foreign-source dividend income under §1248[8] and the remaining $2.8 billion as a capital gain under §1001. (App.78; Add.5.) It also reported a $245 million indirect foreign tax credit. (App.78.)

The indirect foreign tax credit related to tax that J:COM had paid Japan on its undistributed earnings. (App.89.) By way of brief background, a U.S. corporation that receives dividends from a foreign corporation, or is deemed to have received such dividends, may be

---

[8] As explained above, §1248 converts what is otherwise gain on the sale of CFC stock into a deemed dividend for U.S. tax purposes to the extent of the CFC's undistributed earnings.

treated as having paid foreign taxes that were actually paid by that foreign corporation on its earnings that gave rise to the dividend. *See* I.R.C. §§902, 1248. The credit that the U.S. corporation might receive for such deemed tax payments is often referred to as an "indirect" foreign tax credit because the corporation gets a credit for taxes it did not actually pay. *See* Kuntz, above, at §B4.05[1]. As noted above, LGI is deemed to have received a foreign-source dividend equal to its share of J:COM's undistributed earnings (i.e., $438 million), and J:COM had paid tax to Japan on those earnings. (App.78.) LGI is also deemed to have paid that foreign tax and claimed an indirect foreign tax credit under former §902.[9] (App.78-79, 89.)

LGI treated the remaining $2.8 billion received in the stock sale as a capital gain under §1001. (App.78.) As a gain on the sale of personal property by a U.S. taxpayer, the $2.8 billion is U.S.-source income under §865(a), unless an exception applies. In the Tax Court proceedings, LGI did not claim to fit within any of the exceptions in

---

[9] Section 902 was repealed in 2017 by the Tax Cuts & Jobs Act, P.L. 115-97, §14301(a), 131 Stat. 2221.

§865 (App.159-213, 278-312), and acknowledges on appeal that they do
not apply (Br.50).

Prior to 2010, LGI had foreign losses that reduced its U.S. taxable
income. (App.78; Add.5.) When it sold its J:COM stock, LGI had a
beginning OFL account balance of $474 million. (*Id*.) LGI applied
§904(f)(3) to the $2.8 billion capital gain from its stock disposition and
used $474 million of that gain to recapture its outstanding OFL account
balance. (App.16-18.) It claimed that the remaining $2.3 billion in gain
should be treated as foreign-source income under §904(f)(3) rather than
U.S.-source income under §865(a). (App.14, 18.)

LGI relied on that foreign-source income to support using a
foreign tax credit of $240 million in 2010. (App.13-14.) Although LGI
was entitled to a deemed-paid foreign tax credit under §902 for the
Japanese tax imposed on J:COM's earnings, it could not use that credit
in 2010 unless it had sufficient foreign-source income for purposes of
§904(a)'s foreign tax credit limitation. During 2010, however, LGI's did
not earn any net foreign-source income and used more than $1 billion in
foreign-source losses that year to offset U.S.-source income. (App.31.)
To increase its foreign tax credit limitation for 2010, LGI claimed that

the capital gain that it realized on its sale of J:COM stock was (after using $474 million of the gain to recapture its outstanding OFL account balance) foreign-source income that increased the numerator in its §904 fraction by $2.3 billion and thereby increased its foreign tax credit limitation.  (App.14-18.)

The Commissioner determined that LGI had overstated its foreign-source income by $2.3 billion and that its foreign tax credit limitation for 2010 was zero because it had no net foreign-source income that year.  (App.31.)  Accordingly, he disallowed the $240 million foreign tax credit used by LGI in 2010 and issued it a notice of deficiency for that amount.[10]  (App.28, 31.)

## C.    The Tax Court proceedings

LGI challenged the deficiency notice in Tax Court.  (App.11-23.) The parties submitted the case for decision on a fully stipulated record under Tax Court Rule 122.  (Add.4.)  They agreed on a number of key points (App.77-78; Add.12):

---

[10]  The Commissioner also determined a deficiency for 2014 that flowed directly from his 2010 determination.  (Add.6 n.6.)  Like the Tax Court, we do not discuss that determination separately.  (*Id.*)

- LGI realized gain of more than $3.25 billion on the sale of the J:COM stock.

- $438 million of that gain is recharacterized as foreign-source dividend income under §1248.

- Absent §904(f)(3), the remaining gain on the stock sale (i.e., $2.8 billion) would be taxable U.S.-source income under §865(a) and §1001.

- Section 904(f)(3) applies to LGI's sale of J:COM stock because LGI had an OFL account balance of $474 million at the time of the sale, and the sale of CFC stock was a "disposition" under §904(f)(3)(D).

- Applying §904(f)(3) to the stock-sale gain, an amount equal to LGI's beginning OFL balance of $474 million is deemed foreign-source and §904(f)(1) applies to 100% of that income.

- Applying §904(f)(1) to the $474 million deemed-foreign-source income, that income is recharacterized as U.S-source income and recaptures LGI's outstanding OFL account balance.

The parties disputed the implications of §904(f)(3) for LGI's remaining gain — i.e., the gain beyond the $474 million needed to recapture the OFL balance. (Add.12.) LGI argued that §904(f)(3) does more than recapture all or a portion of a taxpayer's OFL account balance. It argued that the statute completely "overrides all other provisions" and "creates new rules for both the source" and "amount" of gain on qualifying dispositions. (App.178-179.) In so arguing, LGI took two alternative positions. First, LGI argued that it erred in recognizing $3.2 billion in gain from the stock sale and that the "plain" language of §904(f)(3) "overrides" §1001's gain-recognition rule and "limited" its gain to the "balance of its OFL account, or $474 million." (App.182 & n.33.) In so arguing, LGI acknowledged that its reading of the statute "results in no tax on approximately $2.8 billion of income that would otherwise be taxed under other provisions of the Code." (App.190.) Alternatively, LGI argued that all of its gain from the stock sale should be treated as foreign-source income. It asserted that §904(f)(3) is "ambiguous regarding the sourcing of income that exceeds the taxpayer's OFL account balance" (App.199), and that the regulations in effect in 2010 filled the "statutory gap" by treating all its gain —

including the $2.3 billion non-dividend gain that exceeded its OFL account — as foreign-source income (App.182-183 (citing Reg. §1.904(f)-2(d)(1))). Finally, LGI argued that if §904(f)(3) operated only to reduce its OFL account balance, and did not recharacterize the U.S.-source gain from the sale of its J:COM stock, then it was entitled to deduct its foreign taxes for the 2010 tax year. (App.183.)

The Commissioner agreed that LGI could elect to deduct under §164 the foreign taxes that it was deemed to pay in 2010 instead of claiming a foreign tax credit for those taxes. (App.153.) But he disagreed with LGI's interpretation of §904(f)(3)(A)(i) and Reg. §1.904(f)-2(d)(1). The Commissioner argued that the plain language of §904(f)(3)(A)(i) provides that it applies to <u>only</u> the <u>lesser</u> of the gain from the sale of J:COM stock or the OFL account balance for purposes of §904(f)(1)'s mechanism of recapturing OFLs, and that any gain beyond that amount is governed by other applicable Code provisions (i.e., §§865, 1001, and 1248). (App.137, 149-150, 228-230.) He further argued that the plain language of §904(f)(3)(A)(i) forecloses LGI's interpretation of Reg. §1.904(f)-2(d)(1), and that, in any event, LGI misreads the regulation. (App.141-148, 263-271.) As the Commissioner

explained, neither the statute nor the regulation applies to gain in excess of the OFL account balance.  (*Id.*)

The Tax Court agreed with the Commissioner.  It first held that the text of §904(f)(3)(A)(i) clearly and unambiguously addresses only amounts necessary to recapture an outstanding OFL balance.  (Add.15, 18-19.)  As the court explained, the statute "does not speak" to gain beyond that amount, "leav[ing] other applicable Code sections (here, sections 865, 1001, and 1248) to operate unimpeded."  (Add.15.)

The Tax Court rejected LGI's reliance on §904(f)(3)(A)(i)'s prefatory language, which states that the provision applies "notwithstanding any other provision of this chapter."  (Add.16-17.)  As the court explained, the word "'notwithstanding'" merely "'shows which provision prevails in the event of a clash.'"  (Add.17 (quoting *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 301 (2017)).)  In this case, there is no clash between §904(f)(3)(A)(i) and any other Code provision regarding gain that exceeds the OFL account balance because §904(f)(3)(A)(i) does not apply to such gain in the first instance.  (Add.17-19.)

The Tax Court rejected LGI's primary argument, holding that LGI could not exclude from U.S. taxable income the $2.8 billion gain that

exceeds its OFL account balance under §904(f)(3)(A)(i) because that

provision does not override §1001's recognition rule with regard to that

gain.[11]  (Add.13-18.)

The Tax Court also rejected LGI's alternative argument that the

2010 version of Reg. §1.904(f)-2(d)(1) permitted it to treat all of its

stock-sale gain as foreign-source income.  (Add.18-21.)  The court held

that the Code is clear and that §904(f)(3)(A)(i) does not override §865(a)

beyond "amounts necessary to recapture an OFL."  (Add.18-21.)  The

court further held that, even if §904(f)(3)(A)(i) were "ambiguous," the

regulations in effect in 2010 did not provide the rule that LGI

attempted to draw from them.  (Add.19.)  As the court explained, the

"regulations, like the statute, speak to the amount of gain necessary to

effect the recapture of an OFL, nothing more" (Add.19), and Reg.

§1.904(f)-2(d)(1) "does not say that it applies to amounts beyond those

necessary for recapturing an OFL account" (Add.20).  The court

concluded that, in arguing to the contrary, LGI inappropriately read

certain regulatory language "in isolation" from the regulation's

---

[11]  LGI has not challenged this ruling in its opening brief and has therefore waived the issue on appeal.  *See United States v. Leffler*, 942 F.3d 1192, 1196 (10th Cir. 2019).

remaining text and context (Add.20), and violated the interpretative principle of avoiding regulatory interpretations that are "directly at odds with the statutory text" (Add.20-21).

Finally, the Tax Court concluded that LGI could deduct its foreign taxes for 2010. (Add.21.)

## SUMMARY OF ARGUMENT

This case concerns how to interpret laws (§904(f) and its implementing regulation) that are designed to limit a taxpayer's foreign tax credit by limiting its foreign-source taxable income. Claiming a foreign tax credit requires foreign-source taxable income, and reducing a taxpayer's foreign-source taxable income (relative to its U.S-source taxable income) reduces its ability to claim foreign tax credits. LGI sold appreciated stock and realized a $3.2 billion gain. There is no dispute that, if LGI had not previously used OFLs to avoid tax on U.S. income, $2.8 billion of the gain would be U.S.-source under the Code's applicable sourcing rule (i.e., §865(a)). But because LGI had an outstanding OFL account balance when it sold the stock, §904(f)(3)(A) requires LGI to recapture the OFLs. To recapture its OFLs, the statute requires LGI (i) to deem the "<u>lesser</u>" of the stock-sale gain or the outstanding OFL

balance (i.e., $474 million) as foreign-source taxable income, and

(ii) then treat that amount of deemed foreign-source taxable income as

U.S.-source taxable income for purposes of §904(a)'s foreign tax credit

limitation.  I.R.C. §904(f)(3)(A)(i)&(ii) (emphasis added).  The lesser

amount here is LGI's outstanding OFL balance of $474 million.  LGI

contends that §904(f)(3)(A)(i) and Reg. §1.904(f)-2(d)(1) permit it to treat

the non-dividend gain <u>greater</u> than its OFL account balance ($2.3

billion) as foreign-source taxable income, rather than U.S.-source

taxable income as §865(a) requires.  The Tax Court rejected that

contention, holding that §904(f)(3)(A)(i) and Reg. §1.904(f)-2(d)(1) do not

apply to amounts greater than a taxpayer's outstanding OFL account

balance and therefore do not override other Code provisions —

including §865(a)'s sourcing rule — regarding excess gain.

1.      The Tax Court correctly determined that gain in excess of

LGI's OFL account balance is U.S-source income under §865(a).  The

text of §904(f)(3)(A)(i) plainly states that it applies to the "lesser" — not

the greater — of a taxpayer's gain or its OFL account balance.  The

context of §904(f)(3)(A)(i) makes clear that it is part of a statutory

scheme that recaptures OFLs by reducing — not increasing — foreign-

source (or deemed foreign-source) taxable income. And the purpose of

§904(f)(3)(A)(i) is to limit — not expand — a taxpayer's ability to use

foreign tax credits. LGI's position on appeal conflicts with each of these

three points. Together, the text, context, and purpose of §904(f)(3)(A)(i)

decisively demonstrate that it applies to no more than an amount

necessary to recapture a taxpayer's OFL account balance. Gain in

excess of that amount is governed by other Code provisions. LGI's

contrary argument is predicated on a misconstruction of

§904(f)(3)(A)(i)'s "notwithstanding" clause, a clause that serves no

function where — as here — there is no clash between §904(f)(3)(A)(i)

and other applicable rules as to the amount of gain in excess of the

taxpayer's OFL account.

2.    The Tax Court correctly determined that the OFL-recapture

regulation, Reg. §1.904(f)-2(d)(1), does not convert U.S.-source taxable

income greater than a taxpayer's OFL balance into foreign-source

taxable income. The regulation's text and context make that clear. To

achieve its desired outcome, LGI distorts the regulation — rewriting

regulatory language, reading words in isolation, and ignoring the bulk

of the regulation altogether. Although LGI claims (Br.47) that its

-31-

strained interpretation of the regulation has prevailed for "more than 25 years," it cites <u>no</u> authority that has endorsed its interpretation. Indeed, the singular administrative document that it cites — IRS Field Service Advice Memorandum 200041004 — is to the contrary and supports the Tax Court's ruling.

**ARGUMENT**

**The Tax Court correctly determined that §904(f)(3)(A)(i) and Reg. §1.904(f)-2(d)(1) do not override §865(a)'s sourcing rule regarding gain in excess of LGI's OFL account balance**

**A.    Introduction**

This case concerns a taxpayer (LGI) that sold its appreciated stock in a foreign subsidiary and realized more than $3.2 billion in gain. Section 865 of the Code provides the source rules for sales of stock and other personal property.  It states that, "[e]xcept as otherwise provided in this section," income from the sale of personal property by a U.S. resident "shall be sourced in the United States."  I.R.C. §865(a)(1). Although §865 provides exceptions, including for certain sales of stock of a foreign affiliate, I.R.C. §865(f), LGI has never argued that those exceptions apply and concedes on appeal (Br.50) that they do not.

Unable to satisfy the terms of §865(f) or any other exception to the general rule that gain from stock sold by a U.S. resident is U.S.-source income, LGI nevertheless argues (Br.8) that "all income recognized from the sale of its stock in a CFC is foreign-source income" under §904(f)(3)(A)(i) and Reg. §1.904(f)-2(d)(1). The Tax Court correctly rejected that argument, holding that it conflicts with the text, context, and purpose of the statute (*see*, below, §B) and misreads the regulation (*see*, below, §D). LGI's contrary argument is predicated on a misconstruction of §904(f)(3)(A)(i)'s "notwithstanding" clause, as the Tax Court further correctly held. (*See*, below, §C.)

Before turning to those rulings, we first address a flawed policy argument that permeates LGI's brief. It repeatedly refers to "double taxation" in an attempt to justify a "remarkable" result (Add.13) that is contrary to the text, context, and purpose of §904(f)(3). *See* Br.1, 2, 9, 29, 30, 33, 36, 37, 39, 40, 49, 52, 56, 60. But there is no double taxation here. In the Tax Court, LGI never alleged — let alone demonstrated — that its income from the J:COM stock sale had been subject to double taxation. Indeed, LGI did not even use the phrase "double taxation" (or any version of that phrase) in any of its core Tax Court filings. *See*

App.11-23 (Petition), App.72-79 (Stipulated Facts), App.159-213 (LGI's Tax Court Opening Brief), App.278-312 (LGI's Tax Court Reply Brief). Although it now embraces the concept, any argument premised on double taxation has been waived. *E.g., Van Sant & Co. v. Town of Calhan*, 83 F.4th 1254, 1276 (10th Cir. 2023); *Richison v. Ernest Group, Inc.*, 634 F.3d 1123, 1130-1131 (10th Cir. 2011).

LGI's newly minted argument is also wholly misconceived. There is no double taxation in this case. Double taxation occurs where a taxpayer pays tax to the United States and a foreign country on the same income. LGI has not — and cannot — identify any income that has been taxed both by the United States and Japan (or any other foreign country). As LGI concedes (Br.15), treating gain on a stock sale as U.S.-source under §865(a) generally does not result in double taxation because foreign countries rarely tax U.S. sellers on such gain. Japan is no exception — it did not tax LGI on its $3.2 billion gain from selling the J:COM stock. (App.89.) LGI points (Br.1) to the Japanese tax that J:COM paid on LGI's share of J:COM's earnings, a tax that LGI is deemed to have paid (App.89). But there is no double taxation on J:COM earnings, because the United States has not taxed those

earnings.  Although J:COM's earnings caused LGI to treat a portion of

the stock-sale gain equal to the amount of its share of J:COM's

undistributed earnings as taxable dividend income under §1248 (i.e.,

$438 million, an amount that reduced LGI's capital gain on the J:COM

stock sale from $3.2 billion to $2.8 billion), the United States did not

effectively impose any tax on that dividend income.  The $438 million in

dividend income was treated as foreign-source income, I.R.C.

§§862(a)(2), 865(k)(1), and offset by LGI's foreign deductions in 2010,

leaving LGI with overall foreign losses for that year.  (App.31.)  As the

Commissioner explained in the Tax Court — and LGI did not dispute —

"there is no risk of double taxation when there is no [net] foreign source

taxable income."  (App.124.)  In other words, only Japan taxed J:COM's

earnings that are deemed distributed to LGI as a foreign-source

dividend under §1248.[12]  And the remaining gain on the stock sale —

---

[12] Even if LGI did not have foreign losses in 2010, and therefore the United States had imposed tax on the foreign-source dividend income, LGI would not have been subject to double taxation.  Any such tax imposed by the United States would have been offset by the indirect foreign tax credit that LGI received under §902.  *See*, above, pp.19-21.  LGI's real complaint is that it cannot use the credit in years (like 2010) where it has no net foreign-source income and therefore has a §904 foreign tax credit limitation of zero.  (App.31.)

the $2.8 billion in capital gain — is not subject to Japanese tax, only U.S. tax, as LGI recognizes (Br.15).[13]  (App.89.)

The fact that Japan's tax rate (40%) was higher than the U.S. tax rate (35%) during the year at issue, and the foreign tax credit is limited by the U.S. rate, does not mean that a company faces "double taxation," as LGI suggests (Br.60-61).  If Japan imposes a $40 tax on a U.S. taxpayer's foreign-source income, and the United States imposes a $35 tax on that same income, then a foreign tax credit of $35 eliminates any double taxation.  The taxpayer is simply taxed at a higher rate by Japan.  The foreign tax credit is not designed to subsidize taxpayers who pay higher taxes to foreign countries.  *See* Kuntz, above, §B4.16[1] ("The United States is willing to allow a credit for foreign taxes on foreign-source income up to the effective rate of tax paid by the taxpayer in the United States on that income.  If a foreign country imposes a higher effective rate of tax, however, the United States does not wish to subsidize the foreign country.  That is, the United States is

---

[13]  LGI asserts (Br.49) that the capital gain generated in its stock sale is a "proxy" for J:COM's potential <u>future</u> earnings, but LGI (having shed its J:COM ownership) will not be taxed by Japan if those earnings materialize.

willing to reduce its tax down to zero, but is not willing to have a negative U.S. tax on the foreign-source income.").

Ultimately, although LGI purports to interpret §904(f) and the related regulation, the real target of its argument is §865's sourcing rules. It acknowledges that gain from the sale of CFC stock by a U.S. taxpayer is U.S.-source income under §865(a) (Br.15), unless one of §865's exceptions (admittedly inapplicable here (Br.50)) applies, but complains that Congress's treatment of that gain is "counterintuitive[ ]" (Br.9). In LGI's view, ignoring §865's sourcing rules, and treating gain from a CFC stock sale as foreign-source, rather than U.S.-source, "makes sense" (Br.50). LGI's self-serving opinion, however, ignores that Congress enacted §865's sourcing rule to ensure that only income that was "likely to be subject to foreign tax" is treated as foreign-source income and that gain from a U.S. taxpayer's sale of CFC stock admittedly is <u>not</u> likely to be subject to foreign tax (Br.15), as this case bears out. Joint Comm. on Taxation, above, JCS-10-87, at 918. But whatever the merits of LGI's views on tax policy, Congress — not LGI — writes the tax rules. And those rules dictate that LGI's excess $2.3 billion non-dividend gain is taxed as U.S-source income.

**B.    The text, context, and purpose of §904(f)(3)(A)(i) demonstrate that it applies to no more than the amount necessary to recapture an OFL account balance**

The Tax Court correctly concluded that §904(f)(3)(A)(i)'s sourcing provision is limited to amounts necessary to recapture LGI's OFL account balance (i.e., $474 million) and that the remaining $2.3 billion in non-dividend capital gain that LGI realized when it sold its J:COM stock is U.S.-source income under §865(a).  (Add.14-19.)  As the court explained, §904(f)(3)(A)(i) unambiguously purports to do "nothing" regarding excess gain, leaving "other applicable Code sections (here, sections 865, 1001, and 1248) to operate unimpeded."  (Add.15.)  *See* I.R.C. §§865 (sourcing rule), 1001 (recognition rule), 1248 (rule recharacterizing certain capital gains as dividend income).  That conclusion is the "best reading of the statute," *see Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2266 (2024), because it is supported by the text, context, and purpose of §904(f)(3)(A)(i).  (*See*, below, §B.1-3.)  LGI's contention (Br.33-34, 37, 41) that §904(f)(3)(A)(i) overrides §865(a)'s sourcing rule with regard to excess gain ignores the statute's text, context, and purpose and is based on a misconstruction of §904(f)(3)(A)(i)'s "notwithstanding" clause.  (*See*, below, §C.)

### 1.    The text of §904(f)(3)(A)(i)

To resolve a question of statutory interpretation, courts must "start with the text of the statute," read in light of its surrounding context. *Babb v. Wilkie*, 589 U.S. 399, 404 (2020).  Where "[t]he plain meaning of the statutory text" yields a clear answer to the question presented, "it is not necessary to go any further." *Id.*

The text of §904(f)(3)(A)(i) explicitly limits the amount of U.S.-source gain that can be recharacterized (temporarily) as foreign-source income under that provision to the amount necessary to recapture a taxpayer's outstanding OFL account balance under §904(f)(1)'s OFL-recapture rule.  Section §904(f)(3)(A) provides in relevant part:

> [I]f property which has been used predominantly without the United States in a trade or business is disposed of during any taxable year —
>
> (i) the taxpayer, notwithstanding any other provision of this chapter (other than paragraph (1)), shall be deemed to have received and recognized taxable income from sources without the United States in the taxable year of the disposition, by reason of such disposition, <u>in an amount equal to the lesser of the excess of the fair market value of such property over the taxpayer's adjusted basis in such property or the remaining amount of the overall foreign losses</u> which were not used under paragraph (1) for such taxable year or any prior taxable year, and
>
> (ii) paragraph (1) shall be applied with respect to such income by substituting "100 percent" for "50 percent."

I.R.C. §904(f)(3)(A)(i)&(ii) (emphasis added).  As the underlined language makes clear, the statute applies to only a specific, limited amount of gain on a disposition and does not apply to gain greater than the taxpayer's OFL balance.  The "statute is not ambiguous" on this point, as the Tax Court correctly held.  (Add.18.)  Section 904(f)(3)(A)(i) limits the amount of gain that will be "deemed" foreign-source taxable income under §904(f)(3)(A)(i) to the "lesser" of two amounts including the "remaining amount of the overall foreign losses."  I.R.C. §904(f)(3)(A)(i).  In that way, the statute ensures that §904(f)(3)'s disposition rule does no more than recapture any outstanding OFLs when §904(f)(1) is "applied" to "such income" (i.e., the deemed foreign-source taxable income) by substituting 100% for 50%.  I.R.C. §904(f)(3)(A)(ii).

Applying that text to LGI's disposition of the J:COM stock, the only amount of income that is deemed to be treated as foreign-source taxable income under §904(f)(3)(A)(i) is the "lesser" of two amounts: (i) LGI's gain on its stock sale or (ii) LGI's OFL account balance at the time of the sale.  LGI's outstanding OFL account balance was $474 million.  (App.78.)  That amount is far less than the $2.8 billion that

LGI reported as gain on the disposition (after applying §1248).

(App.78.)  Because the OFL account balance is the "lesser" amount, the

gain deemed to be foreign-source taxable income under §904(f)(3)(A)(i)

is limited to $474 million.  And that $474 million is ultimately treated

as U.S.-source income under the combined application of §904(f)(1) and

§904(f)(3)(A)(ii).  By its express terms, §904(f)(3)(A)(i) does not apply to

gain <u>greater</u> than LGI's outstanding OFL account balance, leaving that

gain to be governed by other applicable Code provisions, including

§865(a).

### 2.    The context of §904(f)(3)(A)(i)

Statutory text cannot be interpreted in isolation.  "[T]he words of

a statute must be read in their context and with a view to their place in

the overall statutory scheme."  *Home Depot U.S.A., Inc. v. Jackson*, 587

U.S. 435, 441 (2019) (citation omitted).  Section 904(f)(3)(A)(i)'s context

reinforces the limited role reflected in its text.

To begin with, §904(f)(3)(A)(i) is not part of the Code's "source

rules" provided in Part I of Subchapter N (i.e., §§861-865).  It is part of

§904's framework for <u>limiting</u> a taxpayer's foreign tax credit in any

given year.  And, as the §904 equation demonstrates, the foreign tax

credit is limited by decreasing — not increasing — foreign-source

taxable income:

$$\text{Maximum credit} = \frac{\underline{\text{Foreign-source taxable income}}}{\text{Worldwide taxable income}} \times \text{U.S. tax}$$

To the extent that §904(f) re-sources a taxpayer's income, it does so in

the context of limiting — not increasing — a taxpayer's available

foreign tax credit. Section 904(f) — titled "Recapture of overall foreign

loss" — <u>limits</u> a taxpayer's ability to claim foreign tax credits (and

thereby reduce their U.S. tax liability) if they have an OFL account

balance. The general rule in §904(f)(1) enforces that limit by reducing a

taxpayer's foreign-source taxable income (i.e., recharacterizing a certain

amount as U.S.-source taxable income) for purposes of determining

§904(a)'s foreign tax credit limitation. This re-sourcing of a taxpayer's

foreign-source taxable income reduces the numerator (i.e., the top

number) in the fraction of §904(a)'s equation and thus limits the foreign

tax credit available to the taxpayer that year. (Add.10.) Section

904(f)(3) ensures that §904(f)(1) continues to operate whenever

taxpayers dispose of assets that — but for the disposal — could have

been used to reduce an outstanding OFL account balance under

§904(f)(1) when they generated foreign-source income. (This was

-42-

illustrated above (pp.15-17) in the example of foreign-source dividends

generated by CFC stock.)  Section 904(f)(3) thereby provides "a last

chance to recapture an OFL," as LGI acknowledges (Br.4).[14]  This last-

chance context supports the Tax Court's interpretation of §904(f)(3) and

its limited role.

Moreover, §904(f)(3)(A)(i) is not a standalone provision — it is

designed to work with §904(f)(1).  *See* §904(f)(3)(A)(i)&(ii) (incorporating

§904(f)(1) into §904(f)(3)(A)'s operation).  Critically, §904(f)(3)(A)(ii)

directs that §904(f)(1) "shall be applied" to the income deemed foreign-

source under §904(f)(3)(A)(i) and, after §904(f)(1) applies, that income is

U.S.-source.  In other words, §904(f)(3)(A)(i) is not designed to

permanently deem income foreign-source, as LGI suggests.  It is

designed to temporarily deem income foreign-source so that it can be

treated as recognized U.S.-source taxable income for purposes of

§904(f)(1)'s OFL recapture.  *See*, above, pp.16-17.  Like the text, the

context and structure of the statute support the Tax Court's

---

[14]  In this case, LGI (rather than the Government) benefits from
the OFL-recapture rule.  Without §904(f)(3), LGI would recognize U.S.-
source taxable income on its sale of J:COM stock but would not have
been able to use that income to reduce its OFL balance under §904(f)(1).

interpretation of §904(f)(3)(A)(i) as re-sourcing no more income than is needed to recapture OFLs under §904(f)(1).

### 3.    The purpose of §904(f)(3)(A)(i)

In addition to examining a statute's text and context, this Court also considers how its "purposes" shed light on its plain meaning. *Mid Atl. Cap. Corp. v. Bien*, 956 F.3d 1182, 1192-1193 (10th Cir. 2020) ("Faced with one interpretation of [a statutory provision] that furthers the [statute's] purposes and one that undermines them, we prefer the former."). In this case, the Tax Court's interpretation furthers §904(f)(3)(A)(i)'s purpose and LGI's contrary interpretation completely undermines it.

The purpose of §904(f)'s general and disposition rules is to limit a taxpayer's ability to claim the foreign tax credit when the taxpayer previously claimed foreign losses against U.S.-source taxable income. *See*, above, pp.9-15. As the Tax Court in *Hershey* long ago explained, §904(f)(3) addresses a specific problem — taxpayers who have used excess foreign losses to offset U.S.-source taxable income — and provides a limited remedy to address that problem by requiring recognition and sourcing of "an amount of income equal to the <u>lesser</u> of

the gain realized or the amount of any previously unrecaptured excess foreign loss." 76 T.C. at 323 (emphasis added). The purpose of this remedy is to ensure that "U.S. source income will bear its full tax share." *Id*.

By ensuring that LGI's stock-sale gain remains U.S.-source income subject to full U.S. taxation (as Congress directed in §865(a)), the Tax Court's interpretation of §904(f)(3)(A)(i) enforces its purpose. Section 904(f)'s goal is to "reduce the amount of foreign tax credits available" to taxpayers who have an outstanding OFL balance by reducing their foreign-source taxable income. *Hershey*, 76 T.C. at 322-323. Refusing to re-source any U.S.-source taxable income under §904(f)(3) beyond what was needed to implement §904(f)(1)'s OFL recapture, the court prevented LGI from claiming foreign tax credits on U.S.-source taxable income and thereby "protect[ed] the right of the United States to impose U.S. tax on U.S.-source income." (Add.7.)

LGI's interpretation, in contrast, perverts §904(f). By deeming the entirety of its stock-sale gain (i.e., $3.2 billion) as foreign-source taxable income, and then recharacterizing only the $474 million back into U.S.-source taxable income under §904(f)(1), LGI defeats the purpose of the

statute by grossly <u>increasing</u> — not <u>decreasing</u> — its ability to claim

foreign tax credits.  Before applying §904(f)(3)(A)(i), LGI had <u>zero</u>

foreign-source taxable income for 2010 (App.31), but it claims it can use

§904(f)(3)(A)(i) to increase its foreign-source taxable income by more

than $2 billion.  Under LGI's interpretation, the statute operates to

dramatically increase — not decrease — the numerator (foreign-source

taxable income) in the §904(a) equation and thereby pad — not limit —

the amount of foreign tax credit that a taxpayer with an OFL account

could claim.  That anomalous interpretation stands §904(f) on its head.

When Congress amended §904(f)(3)'s disposition rule in 2004 to

include dispositions of CFC stock, it did so on the understanding that

the amount of deemed foreign-source taxable income would be limited to

an amount that was the "lesser" of the gain on the disposition or the

outstanding OFL account balance.  *See* S. Rep. 108-192, at 172

("dispositions of controlled foreign corporation stock result in the

recognition of foreign-source income in an amount equal to the <u>lesser</u> of

the fair market value of the stock over its adjusted basis, or the amount

of prior unrecaptured overall foreign losses" and then "resourced as

U.S.-source income") (emphasis added); H.R. Conf. Rep. 108-755, at 766

(2004) (same). There is <u>no evidence</u> whatsoever — in the statute's text or history — that Congress intended to convert gains from CFC stock sales to foreign-source taxable income in amounts <u>greater</u> than the OFL account balance.

In short, §904(f) is designed to <u>limit</u> foreign-source taxable income and foreign tax credits for taxpayers who have used OFLs to avoid U.S. tax on U.S.-source taxable income. That LGI's interpretation completely thwarts Congressional design can be illustrated by a simple example. In a year when they had no foreign-source income, taxpayers A and B (both U.S. taxpayers) each dispose of stock in a CFC, resulting in $3 billion in gain. Taxpayer A has an OFL account balance of $0, and Taxpayer B has an OFL account balance of $1. Under LGI's theory, Taxpayer A recognizes $3 billion in U.S.-source taxable income under §865(a) and, applying §904(a)'s equation, has a foreign tax credit limitation of zero because it has zero foreign-source taxable income. Taxpayer B, however, can (in LGI's view) use §904(f) to deem the entire $3 billion in gain as foreign-source under §904(f)(3)(A)(i), treat $1 of that $3 billion as U.S.-source under §904(f)(1), and rely on the $2,999,999,999 in remaining deemed foreign-source taxable income to

-47-

claim a foreign tax credit limitation in excess of $1 billion. That result

inverts the intended effect of §904(f), grossly inflating — not limiting —

the ability of OFL taxpayers to use foreign tax credits. It also defies

common sense. *See Pugin v. Garland*, 599 U.S. 600, 606 (2023)

(adopting statutory interpretation that "reflects common sense").

### C.  Section 904(f)(3)(A)(i)'s "notwithstanding" clause does not displace §865(a)'s sourcing rule for gain greater than an OFL account balance

Ignoring the text, context, and purpose of §904(f)(3)(A)(i), LGI

contends that §865(a) does not "supply the answer" regarding gain

greater than an OFL account balance because "§904(f)(3)(A) applies

'notwithstanding' other Code provisions" (Br.52 (quoting

§904(f)(3)(A)(i))). It further contends (Br.55) that §904(f)(3)(A)(i)'s

"notwithstanding" clause allows Treasury to promulgate regulations

that override the Code's sourcing rules. LGI misconstrues the statutory

term "notwithstanding," as the Tax Court held (Add.17) and LGI

ignores.[15]

When used in statutes and contracts, a "'notwithstanding'" clause

determines "'which provision prevails in the <u>event of a clash</u>.'" *NLRB v.*

---

[15] LGI also misreads the regulations. (*See*, below, §D.)

*SW Gen., Inc.*, 580 U.S. 288, 301 (2017) (quoting Scalia & Garner,

*Reading Law: The Interpretation of Legal Texts* 126-127 (2012))

(emphasis added).  As this Court has explained when interpreting a

contract, "the purpose of <u>notwithstanding</u> language is to override

contrary language."  *Brayman v. KeyPoint Gov't Sols., Inc.*, 83 F.4th

823, 834 (10th Cir. 2023).  But it does not displace any other applicable

provision when "[n]othing in the ["notwithstanding" provision] is

contrary to the [applicable provision at issue]."  *Id.*  Where (as here) the

"notwithstanding" provision leaves something "unsaid," then "one

turns" to other applicable parts of the contract (or statute) to resolve the

question at issue.  *Id.*  The cases cited by LGI (Br.42) similarly conclude

that a "notwithstanding" clause in a contract or statute overrides

another provision only to the extent the two are "conflicting."  *Cisneros

v. Alpine Ridge Grp.*, 508 U.S. 10, 18-19 (1993) (contract); *United States

v. Dolan*, 571 F.3d 1022, 1026 (10th Cir. 2009) (statute).

     In this case, §904(f)(3)(A)(i) does not conflict with any other Code

provision, including §865(a), concerning the gain that exceeds a

taxpayer's OFL account balance — here, $2.8 billion in gain.  Section

904(f)(3)(A)(i) applies only to gain equal to or "lesser" than a taxpayer's

outstanding OFL account balance.  I.R.C. §904(f)(3)(A)(i).  It is "silent as to gain-recognition and sourcing above the OFL account balance," as LGI concedes (Br.55).  Given that silence, §904(f)(3)(A)(i) does not apply to gain above that balance, and therefore cannot clash with any other Code provision regarding gain above that balance.  Other Code provisions, including §§865, 1001, and 1248, apply "unimpeded" to gain above the OFL account balance.  (Add.14-15.)  Section 904(f)(3)(A)(i) overrides §865(a)'s sourcing rule for stock-sale gain only to the extent that §904(f)(3)(A)(i) conflicts with treating the gain as U.S.-source.

Here, the conflict between the §904(f)(3)(A)(i) and §865(a) begins and ends with LGI's outstanding OFL account balance — $474 million.[16]  Once that account balance is recaptured using §904(f)(3)(A)(i)'s deeming rule,[17] any remaining gain on the disposition

---

[16]  Of course, even that limited conflict disappears after §904(f)(3)(A) is considered as a whole.  Income momentarily deemed foreign-source under §904(f)(3)(A)(i) is returned to U.S.-source status under §904(f)(3)(A)(ii), demonstrating that there is no real clash between §904(f)(3) and §865(a).

[17]  Under §904(f)(3)'s limited deeming rule, gain that may be U.S.-source or nontaxable is "deemed" to be foreign-source (before §904(f)(1) applies) and taxable for purposes of recapturing OFLs.  I.R.C. §904(f)(3)(A)(i).

is subject to the same Code provisions that apply to taxpayers who do not have OFL accounts. Accordingly, the $2.8 billion in gain above the OFL account balance is recognized under §1001, is recharacterized as a foreign-source dividend to the extent of J:COM's undistributed earnings under §1248 (i.e., $438 million), and is U.S.-source to the extent of the remaining amount under §865(a) (i.e., $2.3 billion).

In the Tax Court, LGI acknowledged that §904(f)(3)(A)(i) does not displace §1248 regarding gain in excess of the OFL account balance. It stipulated that "LGI characterized $438,135,179 as a dividend pursuant to I.R.C. §1248," thus treating that amount as foreign-source dividend income and not U.S.-source capital gain. (App.78; *see also* Br.28.) The IRS accepted LGI's application of §1248 to the stock-sale gain that exceeded its OFL account balance (i.e., $2.8 billion) and determined that LGI had overstated its foreign-source income by only $2.34 billion (rather than the full $2.8 billion), thus accepting that $438 million of the gain could be recharacterized as foreign-source dividend income under §1248. (App.16, 18, 31.) Similarly, LGI acknowledges on appeal (*see*, above, n.11) that §904(f)(3)(A)(i) does not displace §1001 regarding gain in excess of the OFL account balance. (Add.17-18.) And LGI also

apparently acknowledges that §904(f)(3)(A)(i) does not displace the Code's nonrecognition rules (*e.g.*, I.R.C. §§351, 361) to the extent that gain in an otherwise nonrecognition transaction exceeds an OFL account balance. (*See* Br.42-43 (hypothetical involving a nonrecognition transaction where only gain sufficient to recapture an OFL account is deemed taxable under §904(f)(3)(A)(i)).)

LGI nevertheless insists (Br.50) that §904(f)(3)(A)(i) displaces §865(a) completely in this case and treats "all the gain from the disposition of a CFC as foreign-source when the taxpayer has an OFL account balance." That self-serving argument not only conflicts with its position regarding §1248, §1001, and the Code's nonrecognition provisions, it conflicts with binding authority. *E.g.*, *Brayman*, 83 F.4th at 834. As the Court in *Brayman* made clear, a "notwithstanding" clause does not displace another provision where (as here) the two can be applied harmoniously.

Moreover, LGI reads the word "notwithstanding" in isolation, ignoring the context in which that term is used in §904(f)(3)(A)(i) and §904(f)(3)(A)(i)'s place in the overall statutory scheme. (*See*, above, §B.2.) That reading conflicts with established rules of statutory

construction.  A "notwithstanding" clause must be read in "context" and "in conjunction" with other clauses in the statute that operate to limit the extent that the statute at issue displaces other laws.  *United States v. Vasquez-Alvarez*, 176 F.3d 1294, 1297 (10th Cir. 1999) (rejecting party's broad reading of a "notwithstanding" clause); *see also United States v. Novak*, 476 F.3d 1041, 1046 (9th Cir. 2007) ("determin[ing] the reach of each such 'notwithstanding' clause by taking into account the whole of the statutory context in which it appears"); *Citizens Elec. Corp. v. Bituminous Fire & Marine Ins. Co.*, 68 F.3d 1016, 1019 (7th Cir. 1995) (relying on a statute's "context" to limit the scope of a "notwithstanding" clause).  In this case, the "notwithstanding" clause is in a provision that is explicitly limited to the "lesser" amount of (i) the gain on the disposition or (ii) an OFL account balance and therefore — understood in context — does not displace other laws regarding gain exceeding the statutorily defined "lesser" amount.

**D.    LGI's reliance on Reg. §1.904(f)-2(d)(1) is misplaced because the regulation (like the statute) reaches only gain necessary to recapture an OFL account balance**

The Tax Court correctly rejected LGI's argument that §904(f)(3)(A)(i) is "ambiguous" regarding the amount of income deemed

foreign-source under that provision.  (Add.18.)  The text, context, and purpose of §904(f)(3)(A)(i) confirm that the "statute directs a taxpayer to deem amounts necessary to recapture an OFL as recognized foreign-source taxable income" and "does not speak to gain beyond that amount," leaving other relevant Code provisions — including §865 — "to do their work."  (Add.18-19.)  Given that the statute is clear and unambiguous, it is unnecessary to look to the regulations.  *See City of Arlington v. FCC*, 569 U.S. 290, 296 (2013) (holding that where "the intent of Congress is clear, that is the end of the matter," and any agency regulations must "give effect to the unambiguously expressed intent of Congress") (citation omitted); *Whirlpool Fin. Corp. v. Commissioner*, 19 F.4th 944, 952-953 (6th Cir. 2021) (rejecting the taxpayer's reliance on Treasury Regulations to obtain a "result different from the one mandated by the statute itself" because "the agency's regulations can only implement the statute's commands, not vary from them").

LGI has not challenged the Tax Court's ruling that §904(f)(3)(A)(i) is unambiguous and concedes that the statute itself does not apply to gain in excess of the OFL balance because it is "silent" regarding that

amount (Br.37-38). But it characterizes that silence as a "gap" in the statute that Treasury was authorized to fill by providing rules for the excess gain (Br.38). That argument is misconceived. *See* Goulder, *Liberty Global: Do Litigants Believe Their Own Tax Planning*, 113 Tax Notes Int'l 1403, 1405 (Mar. 4, 2024) ("It can't be the case that statutory silence gives taxpayers a green light to claim sweeping tax exemptions that were never envisioned by taxwriters. Silence can't spawn conflict between source and recharacterization rules where no tensions exist."). There is no gap in §904(f)(3)(A)(i), only a limit of its scope. And when that limit is reached, other statutory provisions (*e.g.*, §§351, 861-865, 1001) step in and resolve all questions regarding the treatment of gain beyond §904(f)(3)(A)(i)'s limit. In this case, §865(a) directs that LGI's gain greater than its OFL account balance is U.S-source. Section 904(f)(3)(A)(i) does not impose a contrary rule.

Nor has Treasury promulgated a contrary rule. LGI contends (Br.34) that Reg. §1.904(f)-2(d)(1) "directs that, when a taxpayer with an OFL account balance disposes of covered property, all the gain from the disposition is treated as foreign-source income." LGI misreads the regulation, which — like the statute — speaks <u>only</u> to the amount of

gain necessary to effectuate recapture of an OFL and "nothing more." (Add.19.) LGI's contrary interpretation cannot withstand scrutiny.

To interpret regulations, this Court applies "general rules of statutory construction," focusing on their "text" and "context." *Time Warner Ent. Co. v. Everest Midwest Licensee, L.L.C.*, 381 F.3d 1039, 1050 (10th Cir. 2004). Moreover, "a regulation must be interpreted so as to harmonize with and further and not to conflict with the objective of the statute it implements." *Joy Techs., Inc. v. Sec'y of Labor*, 99 F.3d 991, 996 (10th Cir. 1996) (citation omitted). The Tax Court correctly rejected LGI's interpretation of Reg. §1.904(f)-2(d)(1) because it (i) rewrites the regulation's text, (ii) ignores its context, and (iii) creates a conflict with the corresponding statute. In arguing to the contrary, LGI reads Reg. §1.904(f)-2(d)(1), and in particular paragraph (d)(1)(ii), in "isolation." (Add.20.) That approach violates fundamental rules of interpretation. *See, e.g., Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 290 (2010) ("Courts have a 'duty to construe statutes, not isolated provisions.'") (citation omitted); *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989) (rejecting interpretation of words "examined in isolation" because "statutory

language cannot be construed in a vacuum" and "the words of a statute

must be read in their context and with a view to their place in the

overall statutory scheme").

### 1.    LGI rewrites the text of Reg. §1.904(f)-2(d)(1)

LGI predicates its argument on Reg. §1.904(f)-2(d)(1) (as in effect

in 2010, *see* Add.66-73.)  Reg. §1.904(f)-2(d)(1) (2010) is entitled

"Recapture of overall foreign losses from dispositions under section

904(f)(3)" and provides as follows:

> <u>In general</u>.  If a taxpayer disposes of property used or held
> for use predominantly without the United States in a trade
> or business during a taxable year and that property
> generates foreign source taxable income subject to a separate
> limitation to which paragraph (a) of this section is
> applicable, (i) gain will be recognized on the disposition of
> such property, (ii) such gain will be treated as foreign source
> income subject to the same limitation as the income the
> property generated, and (iii) the applicable overall foreign
> loss account shall be recaptured as provided in paragraphs
> (d)(2), (d)(3), and (d)(4) of this section.  See paragraph (d)(5)
> of this section for definitions.

As this text makes clear, the regulation does not state that "<u>all</u> the gain

is treated as foreign-source income" (Br.44 (emphasis added)).  Reg.

§1.904(f)-2(d)(1) does not even include the word "all" — it merely notes

that "gain" will be recognized on the disposition, Reg. §1.904(f)-

2(d)(1)(i), and that "such gain will be treated as foreign source income,"

Reg. §1.904(f)-2(d)(1)(ii), without specifying the amount of the gain. The amount of the gain is specified in the statute itself, and the regulation does not purport to change the statute's reach. In particular, Reg. §1.904(f)-2(d)(1) "does not say that it applies to amounts beyond those necessary for recapturing an OFL balance," as the Tax Court correctly observed. (Add.20.) Any reference to "gain" or "such gain" in Reg. §1.904(f)-2(d)(1)(i)&(ii) must be read in light of §904(f)(3)'s limitation, which caps its operation at the amount of the OFL balance. By grafting the word "all" into Reg. §1.904(f)-2(d)(1)(i)&(ii) (Br.5, 44), LGI rewrites the OFL-recapture regulation.

Other text in Reg. §1.904(f)-2(d)(1) undermines LGI's attempted revision and makes clear that the regulation does not apply to amounts in excess of a taxpayer's OFL account balance. Reg. §1.904(f)-2(d)(1) itself purports to implement "dispositions under section 904(f)(3)," and that statute reaches only the gain necessary to recapture the OFL balance, as demonstrated above. Thus, although Reg. §1.904(f)-2(d)(1) does not address the amount of gain that is deemed recognized and treated as foreign-source, the statute that the regulation incorporates

by reference does: the amount is "the lesser of" the gain or "the remaining amount of the overall foreign losses." I.R.C. §904(f)(3)(A)(i).

Similarly, Reg. §1.904(f)-2(d)(1) refers to income to which Reg. §1.904(f)-2(a) "is applicable," and Reg. §1.904(f)-2(a) applies only "until such time as the amount of foreign source taxable income recharacterized as United States source income equals the amount in the overall foreign loss account." Once the account is recaptured, neither Reg §1.904(f)-2(a) nor Reg. §1.904(f)-2(d)(1) continues to apply.

LGI's revision (Br.5, 44) of Reg. §1.904(f)-2(d)(1) as applying to "all" gain on a disposition ignores that Reg. §1.904(f)-2(d)(1) (like the rest of the regulation) implements a statute that explicitly limits the amount of gain at issue. Although Reg. §1.904(f)-2(d)(1) does not address the amount of gain to which §904(f)(3) applies, other parts of Reg. §1.904(f)-2(d) do when explaining how Reg. §1.904(f)-2(d)(1)'s "general" rule for dispositions operates in specific situations. In this regard, Reg. §1.904(f)-2(d)(4) addresses dispositions where "gain would not otherwise be recognized" (*e.g.*, a §351 exchange), and explains that the amount of foreign-source gain recognized under Reg. §1.904(f)-2(d)(1) is limited to the "lesser" of the OFL account balance or the gain

on the disposition; any gain greater than that balance remains subject to the Code's nonrecognition rules.  Reg. §1.904(f)-2(d)(4).  To read Reg. §1.904(f)-2(d)(1) as treating <u>all</u> gain on a disposition as foreign-source taxable income — as LGI asks this Court to do (Br.5, 44) — would conflict with the explicit language of Reg. §1.904(f)-2(d)(4), not to mention the statute itself.

LGI contends (Br.38-39) that a different subsection of Reg. §1.904(f)-2(d) — Reg. §1.904(f)-2(d)(3) — "make[s] clear" that gain greater than the OFL account is deemed foreign-source under the regulations.  LGI misreads the regulation.  Reg. §1.904(f)-2(d)(3) addresses only "foreign source gain" that would have been recognized "irrespective" of §904(f)(3), and does not address the situation here — <u>U.S.-source gain</u> that would have been recognized "irrespective" of §904(f)(3).  In the limited situation addressed by Reg. §1.904(f)-2(d)(3), the foreign-source income recognized by the taxpayer "can exceed the taxpayer's OFL account" (Br.38-39) <u>only</u> because the gain was foreign-source income "irrespective" of §904(f)(3).  Gain exceeding the OFL account is not re-sourced or <u>deemed</u> to be foreign-source income under the regulation; the gain <u>is</u> foreign-source income to begin with, before

applying §904(f)(3) and its implementing regulations.  That is not the case here.  During the year at issue, none of the subsections in Reg. §1.904(f)-2(d) addressed the specific situation here, where the recognized gain is U.S.-source income under other Code provisions.[18]

Indeed, the IRS guidance document from 2000 that LGI cites (Br.20, 50) makes this very point.  *See* IRS Field Service Advice Memo. 200041004, at 7 (available at https://www.irs.gov/pub/irs-wd/0041004.pdf and https://perma.cc/677L-BYNH) (observing that "Reg. §1.904(f)-2(d) does not provide guidance on dispositions where U.S. source gain is recognized irrespective of section 904(f)(3)").  In that document, the IRS addressed how §904(f)(3) and Reg. §1.904(f)-2(d) applied to gain recognized under §367(d) that would otherwise be U.S.-source.  It concluded that where a taxpayer with an OFL account balance disposed of property where the gain would otherwise be recognized U.S.-source income, only a limited amount was "treated as foreign source income" under §904(f)(3) and Reg. §1.904(f)-2(d) — an amount "up to the amount of the taxpayer's balance in its OFL

---

[18]  In 2012, Treasury revised the regulations to specifically address recognition transactions that generate U.S.-source income.  77 Fed. Reg. at 37,577.

account." IRS Field Service Advice Memo. 200041004, at 8. Any
amount that exceeded the balance in the OFL account remained U.S.-
source income under the applicable provision (§367(d)) and was not
"treated as foreign source income" under §904(f)(3) or Reg. §1.904(f)-
2(d). *Id.* LGI cites no contrary authority. Thus, its assertion (Br.47)
that its reading of the regulation has prevailed for "more than 25 years"
(i.e., from 1987-2012) is utterly baseless.

The regulations promulgated in 2012 did not "change[ ]" Reg.
§1.904(f)-2(d)(1)'s rule regarding U.S.-source income, as LGI suggests
(Br.48). Prior to 2012, Reg. §1.904(f)-2(d)(1) "address[ed] only
recognized foreign source gains" and did "not provide guidance on
dispositions where U.S. source gain is recognized irrespective of section
904(f)(3)." IRS Field Service Advice Memo. 200041004, at 7, 8. That
additional guidance was provided in 2012 because, almost 25 years
after Reg. §1.904(f)-2 was first promulgated, Treasury learned that
some taxpayers were questioning how §904(f)(3)'s disposition rule
applied to recognized gain that is "otherwise treated as U.S. source
income under the Code." 77 Fed. Reg. at 37,577. In response, Treasury
reiterated the point made a decade earlier in the IRS's 2000 Field

Service Advice Memorandum: §904(f)(3)(A) is "clear" that U.S.-source gain on dispositions is "recharacterized as foreign source income only to the extent of the applicable section 904(f)(3) recapture amount" and that recognized gain greater than the OFL balance remains U.S-source income under the applicable sourcing rules. *Id.* Treasury clarified the regulatory language to reflect that statutory limit. *Id.*; *see id.* at 37,579 (promulgating Reg. §1.904(f)-2(d)(3)(ii) (2012), which describes dispositions where gain is recognized irrespective of §904(f)(3) and the gain is "U.S. source gain").

## 2. LGI ignores the context of Reg. §1.904(f)-2(d)(1)

As noted above, regulatory text (like statutory text) must be read in context, and the context here is recapturing an OFL balance, not re-sourcing U.S.-source income as foreign-source income. Reg. §1.904(f)-2 repeatedly makes the point that its rules are designed for that limited purpose. (Add.20.) *See* Reg. §1.904(f)-2(a) (providing that a "taxpayer shall be required to recapture an overall foreign loss as provided in this section" and describing how "[r]ecapture is accomplished"), (b) (describing how to calculate foreign-source income "[f]or purposes of determining the amount of an overall foreign loss subject to recapture"),

(c)(2) (describing "special recapture rules"). Nothing in Reg. §1.904(f)-2(d)(1) — which provides rules for the "[r]ecapture of overall foreign losses from dispositions under section 904(f)(3)" — evidences a different focus.

The operation of the regulation confirms this point. Reg. §1.904(f)-2(d)(1) is not designed to permanently convert gain from U.S.-source taxable income to foreign-source taxable income, as LGI suggests. Like the statute, the regulation operates to only temporarily treat gain from a disposition as "foreign source," Reg. §1.904(f)-2(d)(1), so that it can be "treat[ed] as United States source income" under Reg. §1.904(f)-2(a) and §904(f)(1). And since those provisions are crafted to recapture a taxpayer's outstanding OFLs, it makes sense that gain exceeding the OFL account balance is not within Reg. §1.904(f)-2(d)(1)'s reach. In short, the "broad sourcing rule that [LGI] advances is nowhere to be found in the regulation." (Add.20.)

Nor is there a hint of such an expansive rule in the regulatory history. According to that history, Reg. §1.904(f)-2(d) was designed "for recapturing an overall foreign loss" when a taxpayer disposed of certain property. 51 Fed. Reg. 3,193, 3,195 (1986) (proposed regulations);

*accord* 52 Fed. Reg. 31,992, 31,993 (1987) (final regulations). The preambles to those regulations discuss that limited purpose; they do not discuss whether gain in excess of an OFL balance is re-sourced from U.S.-source to foreign-source taxable income. The 2007 regulatory amendments likewise confirm the limited role of the regulations. *See* 72 Fed. Reg. 72,592, 72,593 (2007) (describing how the OFL regulations are designed so that "[r]ecapturing the overall foreign loss reduces the foreign tax credit limitation").

Moreover, like the statute that they implement, the overall goal of the regulations is to limit the foreign tax credit for taxpayers with an outstanding OFL balance. The very first paragraph of the regulations makes this clear. *See* Reg. §1.904(f)-2(a) (providing that "the taxpayer's foreign tax credit limitation with respect to such income is decreased"). LGI's interpretation of the regulation is directly counter to that directive because it grossly increases — by hundreds of millions — LGI's foreign tax credit limitation under §904(a).

### 3.    LGI's interpretation of Reg. §1.904(f)-2(d)(1) fails to harmonize that provision with the rest of the statutory and regulatory scheme

To the extent there is any doubt regarding the scope of Reg. §1.904(f)-2(d)(1), the regulation should be construed in a way that harmonizes with the rest of the statutory and regulatory scheme.[19]  *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (provisions within the same regulatory scheme should be interpreted so that they "fit, if possible, … into an harmonious whole") (citation omitted); *Joy*, 99 F.3d at 996 ("a regulation must be interpreted so as to harmonize with and further and not to conflict with the objective of the statute it implements") (citation omitted).  LGI's distorted interpretation of Treasury's OFL-recapture regulation violates that principle, as the Tax Court correctly held.  (Add.20-21.)

Section 904(f)(3)(A)(i) caps its operation at the amount of the OFL balance, and allows other statutory provisions to govern amounts

---

[19]  LGI asserts (Br.56) that provisions that are part of "Congress's regime to relieve taxpayers from double taxation" should be construed broadly in a taxpayer's favor, but "tax credits" — which includes the double-taxation-relieving foreign tax credit — are matters of "legislative grace" and, as such, are "to be strictly and narrowly construed."  *Tax & Acct. Software Corp. v. United States*, 301 F.3d 1254, 1261 (10th Cir. 2002) (citation omitted).

beyond that balance.  It leaves no room for a regulation that expands its operation beyond that statutory limit.  LGI's "reading of the regulation" is thus "directly at odds with the statutory text."  (Add.21.)  It also undermines the very purpose of the statutory and regulatory scheme, which is to recapture OFLs and thereby limit a taxpayer's foreign tax credit.

Finally, it is worth noting that LGI has provided no plausible reason as to why Treasury would create a major exception to §865(a)'s sourcing rule for taxpayers who happen to have an OFL account — i.e., taxpayers who had previously avoided U.S. tax on U.S.-source income by utilizing foreign losses to reduce U.S. income.  The illogic of LGI's position is illustrated by the hypothetical above (pp.46-47).  Moreover, if the pre-2012 regulations really provided the massive tax benefit that LGI claims it does — re-sourcing billions in U.S.-source income as foreign-source income and thereby inflating LGI's foreign tax credit limitation — then the 2012 regulations would have been a major policy shift that would have prompted widespread taxpayer protest.  But there was no such shift and resulting protest because the 2012 regulations

merely clarified the early regulations by spelling out what the statute already mandated.

At the end of the day, LGI is left with its policy complaint that (in its view) gain from the sale of CFC stock should be treated as foreign-source income.  (*See* Br.36, 49-51, 59.)  Congress, of course, had good reasons for rejecting that self-serving suggestion, not least of which is that such gain is not subject to foreign tax.  *See* Joint Comm. on Taxation, above, JCS-10-87, at 918, 920.  But whatever the merits of LGI's policy position, it cannot displace clear statutory language or justify the fiction of LGI's "strained" regulatory interpretation. Goulder, above, at 1406.

## CONCLUSION

The decision of the Tax Court should be affirmed.

## STATEMENT REGARDING ORAL ARGUMENT

Counsel for the Commissioner respectfully inform the Court that

oral argument would be beneficial in this complicated tax case.

Respectfully submitted,

DAVID A. HUBBERT
  *Deputy Assistant Attorney General*

s/ Judith A. Hagley

| | |
|---|---|
| FRANCESCA UGOLINI | (202) 514-3361 |
| JENNIFER M. RUBIN | (202) 307-0524 |
| JUDITH A. HAGLEY | (202) 514-8126 |

  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, DC 20044*
  *Judith.a.hagley@usdoj.gov*
  *Appellate.Taxcivil@usdoj.gov*

OCTOBER 17, 2024

# CERTIFICATE OF COMPLIANCE

## Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type-Style Requirements

     1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 10th Cir. R. 32(B):

     [X]   this brief contains <u>12,932</u> words, **or**

     [ ]   this brief uses a monospaced typeface and contains
     \_\_\_\_\_ lines of text.

     2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

     [X]   this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in Century Schoolbook 14, **or**

     [ ]   this brief has been prepared in a monospaced typeface using _____ with _____.

Date: October 17, 2024    <u>s/ Judith A. Hagley</u>
                                 Judith A. Hagley
                                 Attorney for Appellee Commissioner of
                                 Internal Revenue
                                 P.O. Box 502
                                 Washington, DC 20044
                                 (202) 514-8126
                                 Judith.a.hagley@usdoj.gov

# CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2024, I electronically filed this brief with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I further certify that with respect to the foregoing:

(1) all required privacy redactions have been made per 10th Cir. R. 25.5;

(2) if required to file additional hard copies, that the ECF submission is an exact copy of those documents;

(3) the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, Microsoft Windows Defender, and according to the program are free of viruses.

Date: October 17, 2024    s/ Judith A. Hagley
                                           Judith A. Hagley
                                           Attorney for Appellee Commissioner of
                                           Internal Revenue
                                           P.O. Box 502
                                           Washington, DC 20044
                                           (202) 514-8126
                                           Judith.a.hagley@usdoj.gov