No. 24-9004

In the
# United States Court of Appeals
### for the Tenth Circuit

LIBERTY GLOBAL, INC.,

*Petitioner-Appellant*,

v.

COMMISSIONER OF INTERNAL REVENUE,

*Respondent-Appellee.*

On Appeal from the United States Tax Court, No. 341-21,
Hon. Emin Toro, *Judge*

## PETITIONER-APPELLANT LIBERTY GLOBAL, INC.'S REPLY BRIEF

Shay Dvoretzky
Rajiv Madan
Christopher Bowers
Nathan Wacker
Parker Rider-Longmaid
Sylvia O. Tsakos
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
Telephone: 202-371-7000
parker.rider-longmaid@skadden.com

*Counsel for Petitioner-Appellant*
*Liberty Global, Inc.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iv

GLOSSARY ........................................................................................ viii

INTRODUCTION AND SUMMARY OF ARGUMENT ...................................1

ARGUMENT .........................................................................................8

    A.    Section 904(f)(3) is silent about how to treat dispositions of covered property generating gain beyond the amount needed to recapture an OFL, authorizing Treasury to provide the answer ...........................................................................8

        1.    Section 904(f)(3) governs the source and recognition treatment of dispositions of CFC stock, and the gap it leaves authorizes Treasury to promulgate rules for dispositions where gain exceeds an OFL balance. ...................................................................8

        2.    The IRS's counterarguments lack merit. ............................11

            a.    The IRS ignores § 904(f)(3)(A)'s reach, which governs every *disposition* of covered property by an OFL accountholder, not just a specific amount of gain. ...........................................................11

            b.    The IRS overlooks the conflict between § 904(f)(3)(A) and Treasury's gap-filling, on the one hand, and other Code provisions, on the other. ....................................................................12

            c.    The IRS's context and purpose arguments ignore § 904(f)(3)(A)'s terms and the broader operation and design of § 904. ...............................16

# TABLE OF CONTENTS
(continued)

Page

B.  The OFL Sourcing Rule treats gain from the disposition of property as foreign-source, even when the gain exceeds the OFL account balance. .................................................. 19

   1.  The OFL Sourcing Rule's plain text directs that, when a taxpayer with an OFL account balance disposes of covered property, the gain is foreign-source. .................................................. 19

   2.  Statutory and regulatory history confirm that, when a taxpayer with an OFL account balance disposes of covered property, the gain is treated as foreign-source. .................................................. 20

   3.  Treating the income from a covered disposition as foreign-source aligns with the tax policy reflected in other Code provisions and avoids double taxation. .......... 21

   4.  The IRS's counterarguments fail. .......................................... 23

       a.  The IRS ties its interpretation of § 1.904(f)-2(d)(1) to its incorrect reading of § 904(f)(3)(A). .............................................. 23

       b.  "Such gain" in § 1.904(f)-2(d)(1)(ii) refers to all the gain recognized in a § 904(f)(3) disposition. .............................................. 24

       c.  Contrary to the IRS's argument, statutory and regulatory context show that the gain is treated as foreign-source income under § 1.904(f)-2(d)(1). ....................................... 25

# TABLE OF CONTENTS
(continued)

**Page**

C.    Under I.R.C. § 904(f)(3) and the OFL Sourcing Rule, LGI's gain from the sale of J:COM stock—including the gain beyond the amount necessary to recapture LGI's OFL account—is treated as foreign-source. ..........................................29

    1.    LGI's gain from the sale of J:COM stock is treated as foreign-source. .........................................................29

    2.    The government's counterarguments are meritless. ........29

CONCLUSION ....................................................................................32

CERTIFICATE OF COMPLIANCE ...................................................33

CERTIFICATE OF SERVICE ............................................................34

# TABLE OF AUTHORITIES

**Page(s)**

<small>C</small>ASES

*Brayman v. KeyPoint Government Solutions, Inc.,*
  83 F.4th 823 (10th Cir. 2023) ...................................................... 14, 15

*Burnet v. Chicago Portrait Co.,*
  285 U.S. 1 (1932) ...................................................................... 30, 31

*Eateries, Inc. v. J.R. Simplot Co.,*
  346 F.3d 1225 (10th Cir. 2003) ........................................................22

*Energy West Mining Co. v. Lyle ex rel. Lyle,*
  929 F.3d 1202 (10th Cir. 2019) .......................................................19

*Gitlitz v. Commissioner,*
  531 U.S. 206 (2001) ......................................................................31

*Hanover Bank v. Commissioner,*
  369 U.S. 672 (1962) ......................................................................31

*Heller v. Doe,*
  509 U.S. 312 (1999) ......................................................................31

*Helvering v. R.J. Reynolds Tobacco Co.,*
  306 U.S. 110 (1939) ......................................................................20

*King v. Burwell,*
  576 U.S. 473 (2015) ................................................................. 24, 25

*Littlefield v. Mashpee Wampanoag Indian Tribe,*
  951 F.3d 30 (1st Cir. 2020) ....................................................... 24, 25

*Loper Bright Enterprises v. Raimondo,*
  144 S. Ct. 2244 (2024) ..............................................................4, 10

*Lorillard v. Pons,*
  434 U.S. 575 (1978) ......................................................................20

*NLRB v. SW General, Inc.,*
  580 U.S. 288 (2017) ......................................................... 4, 9, 14, 15

*Schaffner v. Monsanto Corp.,*
  113 F.4th 364 (3d Cir. 2024) ...........................................................10

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Tax & Accounting Software Corp. v. United States*,
301 F.3d 1254 (10th Cir. 2002) ...................................................2, 31

*United States v. Morgan*,
922 F.2d 1495 (10th Cir. 1991) ........................................................31

*Woods Investment Co. v. Commissioner*,
85 T.C. 274 (1985).............................................................................17

**STATUTES**

I.R.C. § 351..................................................................................... 27, 28

  I.R.C. § 861(a)(2) ..............................................................................16

I.R.C. § 861....................................................................... 8, 9, 16, 17

I.R.C. § 862....................................................................... 8, 9, 16, 17

  I.R.C. § 862(a)(2) ..............................................................................16

I.R.C. § 863....................................................................... 8, 9, 16, 17

I.R.C. § 864....................................................................... 8, 9, 16, 17

I.R.C. § 865.................................................................... 4, 5, 8, 9,
.................................................................................13, 14, 16, 17

  I.R.C. § 865(e) ..................................................................................28

  I.R.C. § 865(f) ............................................................................. 21, 22

I.R.C. § 902(a) .................................................................................7, 30

I.R.C. § 904........................................................................ 4, 5, 16, 18

  I.R.C. § 904(a) ..................................................................................22

  I.R.C. § 904(b)(2)(A) .........................................................................13

  I.R.C. § 904(f) ............................................................................. 11, 12

  I.R.C. § 904(f)(1) ......................................................... 8, 9, 11, 15, 16, 22

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

I.R.C. § 904(f)(3) ........................................................................ 1, 2, 5, 6, 7, 8,
............................................................................... 10, 16, 17, 18, 19, 20,
............................................................... 22, 23, 24, 26, 27, 28, 29, 30

I.R.C. § 904(f)(3)(A) ................................................................... 2, 3, 4, 5, 7, 8,
............................................................................... 9, 10, 11, 12, 13, 14,
............................................................... 15, 16, 17, 21, 23, 24, 29

I.R.C. § 904(f)(3)(A)(i) ............................................ 2, 3, 9, 12, 13, 16

I.R.C. § 904(f)(3)(B)(i) ................................................... 2, 9, 10, 26

I.R.C. § 904(f)(3)(D) ............................................... 2, 5, 6, 8, 9, 20, 28

I.R.C. § 904(g) ....................................................................... 18, 19

I.R.C. § 904(h)(10) .........................................................................18

I.R.C. § 1001 .........................................................................................27

I.R.C. § 1248 ................................................................................. 7, 16, 30

I.R.C. § 7805(a) .........................................................................3, 10

I.R.C. § 7806(b) .........................................................................18

Tax Cuts and Job Act of 2017, Pub. L. No. 115-97,
131 Stat. 2054 ....................................................................................30

## REGULATIONS

26 C.F.R. § 1.904(f)-2(a) ...........................................................22

26 C.F.R. § 1.904(f)-2(d) .........................................................5, 20

26 C.F.R. § 1.904(f)-2(d)(1).......................................... 1, 4, 5, 7, 10, 16,
............................................................... 19, 23, 24, 25, 26, 27, 29

26 C.F.R. § 1.904(f)-2(d)(1)(i)..........................................................20

26 C.F.R. § 1.904(f)-2(d)(1)(ii)........................................ 1, 3, 5, 7, 10, 11,
............................................................... 19, 20, 22, 23, 24, 25, 29

26 C.F.R. § 1.904(f)-2(d)(2)............................................................26

26 C.F.R. § 1.904(f)-2(d)(3)................................................. 26, 27

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

26 C.F.R. § 1.904(f)-2(d)(3)(ii) (2014) ...........................................1, 21

26 C.F.R. § 1.904(f)-2(d)(4) ........................................... 25, 26, 27, 28

26 C.F.R. § 1.904(f)-2(d)(5)(i) ................................................26

26 C.F.R. § 1.904(f)-2(d)(7), Example 1 .......................................27

**OTHER AUTHORITIES**

Boris I. Bittker & James S. Eustice,
  *Federal Income Taxation of Corporations & Shareholders*,
  Westlaw (updated November 2024) ...............................................30

IRS National Office Field Service Advice Memorandum
  No. 200041004 (Oct. 13, 2000)
  https://www.irs.gov/pub/irs-wd/0041004.pdf ............................... 22, 28

# GLOSSARY

| | |
|---|---|
| App. | Appellant's Appendix |
| Add. | Addendum bound with this brief |
| CFC | Controlled foreign corporation, as defined in I.R.C. § 957(a) |
| Commissioner | Commissioner of the Internal Revenue Service |
| I.R.C. | Internal Revenue Code (*i.e.,* Title 26 of the U.S. Code). Unless otherwise indicated, all section references and citations are to the Code provisions in effect for LGI's 2010 tax year—the tax year at issue. |
| IRS | Internal Revenue Service |
| J:COM | Jupiter Telecommunications Co. Ltd., a Japanese former CFC of LGI's |
| LGI | Liberty Global, Inc., a U.S. corporation and subsidiary of Liberty Global plc |
| Liberty Global plc | A U.K. corporation and ultimate owner of LGI and its affiliates |
| OFL | Overall foreign loss |
| Tax Code or Code | Title 26 of the U.S. Code—the Internal Revenue Code |
| Treasury regulations | Title 26 of the Code of Federal Regulations. Unless otherwise indicated, all section references and citations are to the regulations in effect for LGI's 2010 tax year—the tax year at issue. |

## INTRODUCTION AND SUMMARY OF ARGUMENT

This case concerns whether LGI can claim foreign tax credits from selling its stock in J:COM, a Japanese telecommunications company. J:COM paid income taxes to Japan, and the Tax Code treated LGI itself as paying $248 million of those taxes. When LGI sold its interest in J:COM, it had an OFL account balance. Under I.R.C. § 904(f)(3) and the OFL Sourcing Rule, 26 C.F.R. § 1.904(f)-2(d)(1)(ii), LGI's gain from the sale is treated as foreign-source. That makes sense: the gain represents the value of J:COM's future Japanese earnings, which, had LGI retained its J:COM stock, would have been treated as foreign-source income after LGI hit its OFL account balance. Accordingly, LGI can claim foreign tax credits and is entitled to a refund.

For decades, Treasury regulations required foreign-source treatment when a taxpayer's gain from a covered transaction exceeded the taxpayer's OFL—just like LGI's gain from the J:COM sale. Specifically, Treasury provided that "gain will be recognized on the disposition" and "such gain will be treated as foreign source income." 26 C.F.R. § 1.904(f)-2(d)(1). But in 2012, Treasury decided that the amount of gain that could be treated as foreign-source in a § 904(f)(3) transaction would be capped at the amount necessary to recapture an OFL account balance. 26 C.F.R. § 1.904(f)-2(d)(3)(ii) (2014).

- 1 -

That amendment removed the critical language directing that "such gain will be treated as foreign source income." Because that change was prospective only, it doesn't apply to LGI's 2010 sale of J:COM stock.

Even so, the IRS claims that neither § 904(f)(3) nor the applicable, pre-2012 implementing regulations permit LGI to treat its gain as foreign-source. But the IRS can't justify that position based on the statute's or regulations' text, context, or purpose. And when, as here, plain text provides "for a particular credit, … the credit is allowable." *Tax & Accounting Software Corp. v. United States*, 301 F.3d 1254, 1261 (10th Cir. 2002).

**A.    1.**    Section 904(f)(3)(A) is a gain-recognition and sourcing framework that applies "notwithstanding any other provision" of the Tax Code whenever a taxpayer with an OFL account balance disposes of CFC stock (or other foreign trade or business property). *See* I.R.C. § 904(f)(3)(D). A taxpayer who disposes of such property must recognize gain and treat it as foreign-source "in an amount equal to the lesser of" the built-in gain of the property or the taxpayer's OFL account balance. I.R.C. § 904(f)(3)(A)(i). That's true no matter whether the transaction would otherwise be a taxable or nontaxable transaction. I.R.C. § 904(f)(3)(B)(i).

But § 904(f)(3)(A) is silent about how to treat dispositions where the gain otherwise recognized exceeds the amount needed to recapture an OFL. That silence authorizes Treasury to provide the sourcing rule "notwithstanding" other Code provisions, given Treasury's authority to "prescribe all needful rules and regulations for the enforcement of" the Code, I.R.C. § 7805(a). Treasury did just that when it promulgated § 1.904(f)-2(d)(1)(ii), which requires foreign-source treatment for all the gain from the disposition.

**2.** The IRS's reading of the statute lacks merit. The IRS agrees that § 904(f)(3)(A) applies to the sale of CFC stock when a taxpayer has an OFL balance at the time of the sale—like LGI's sale of J:COM stock. The IRS also agrees that § 904(f)(3)(A) doesn't provide a specific rule for dispositions where gain exceeds the amount necessary to recapture an OFL. But the IRS says § 904(f)(3)(A) becomes irrelevant once a taxpayer's OFL account is recaptured. In that circumstance, claims the IRS, other Code provisions dictate the source of gain above the recapture amount, despite § 904(f)(3)(A)'s "notwithstanding any other provision" language.

That's wrong. By its terms, § 904(f)(3)(A)(i) governs every *disposition* of covered property by an OFL accountholder, not just a specific amount of gain in a covered disposition. And because § 904(f)(3)(A) is silent about

- 3 -

dispositions where gain surpasses the OFL account, the Court must look to Treasury regulations to supply the rule. The IRS misunderstands the statute's silence and overlooks the conflict between that silence, which the Treasury regulations fill, and the rules that other Code provisions might otherwise supply when there is no OFL balance. The conflict is that § 904(f)(3)(A) requires looking to Treasury regulations for the rules—in particular, § 1.904(f)-2(d)(1) for sourcing treatment—whereas other Code provisions (like § 865) would treat LGI's gain as U.S.-source income, as the IRS itself contends. Put another way, § 904(f)(3)(A)'s silence authorizes Treasury "to prescribe rules to 'fill up the details' of [the] statutory scheme," *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2263 (2024), and the resulting rules conflict with other Code provisions. Given that clash and the "notwithstanding" language, § 904(f)(3)(A) and its implementing regulations provide the relevant rule, "in spite of" what other Code provisions would have to say, *NLRB v. SW General, Inc.*, 580 U.S. 288, 301 (2017).

The IRS's context and purpose arguments fail, too. They can't overcome § 904(f)(3)(A)'s text, and they disregard the operation and design of § 904 more generally. Section 904, for example, is designed to determine the *correct* amount of foreign tax credits—not the fewest possible. Accordingly,

- 4 -

§ 904 sometimes *increases*, rather than restricts, a taxpayer's available credits—just like § 904(f)(3)(A) here.

**B.** Treasury filled in the details that § 904(f)(3) left open by promulgating the OFL Sourcing Rule, § 1.904(f)-2(d)(1)(ii). Under that rule, all gain from a disposition of covered property where the taxpayer has an OFL balance is treated as foreign-source income. In contrast, under the general sourcing rule, I.R.C. § 865, the income would be U.S.-source.

**1.** Section 1.904(f)-2(d)(1)(ii)'s plain text directs that, when a taxpayer with an OFL account balance disposes of covered property, *all* the gain from the disposition is foreign-source. The rule says that "(i) gain will be recognized on the disposition of such property" and "(ii) such gain will be treated as foreign source income." 26 C.F.R. § 1.904(f)-2(d)(1). "Such gain" refers to the gain that is "recognized on the disposition"—*i.e.*, the amount needed to recapture the OFL account *and* the remaining gain—so *all* the gain is treated as foreign-source.

**2.** Statutory and regulatory history confirm that all the gain is treated as foreign-source. When Treasury promulgated § 1.904(f)-2(d) in 1987, the rule was that "such gain"—all the gain—from the disposition of covered property was foreign-source. That remained the rule even after

Congress amended § 904(f)(3) in 2004 to make its sourcing and gain-recognition rules apply to the disposition of CFC stock. *See* I.R.C. § 904(f)(3)(D). When Treasury issued temporary regulations in 2007, it retained the rule that "such gain" would be foreign-source. It wasn't until 2012 that Treasury decided to cap the amount of gain recharacterized as foreign-source income at the amount necessary to recapture the taxpayer's OFL account. Because those rules are prospective only, they don't apply to the J:COM sale.

3.      Treating the gain from a covered disposition as foreign-source makes sense. It's consistent with the understanding that gain from a disposition of foreign property serves as a proxy for the income the property *would have* generated had it been retained. Here, LGI's gain from the J:COM sale represented the present value of J:COM's future earnings. Had LGI retained its J:COM stock, the income LGI would have received would be treated as foreign-source after its OFL account was recaptured. What's more, treating the gain from a covered disposition as foreign-source avoids double taxation, which the foreign tax credit regime is designed to mitigate.

4.      The IRS's counterarguments about the interpretation of the regulations fail. The IRS ties its interpretation of the regulations to its incorrect construction of § 904(f)(3), claiming that "the regulation (like the statute)

reaches only gain necessary to recapture an OFL account balance." Br. 52. But the IRS is wrong about the statute—it governs every *disposition* of covered property where the taxpayer has an OFL account balance, "notwithstanding" other Code provisions—so it's wrong about the regulations, too. The regulations require foreign-source treatment.

**C.** **1.** There's no dispute that § 904(f)(3)(A) applies to the sale of CFC stock when a taxpayer has an OFL account balance at the time of the sale, and that it thus applies to the J:COM sale. When LGI sold its interest in J:COM (then a CFC) in 2010, LGI had an OFL balance. That balance was recaptured, and the applicable version of § 1.904(f)-2(d)(1) directed that the gain from the disposition be treated as foreign-source. That foreign-source income permits LGI to claim a foreign tax credit.

**2.** The IRS can't dispute that, if LGI's interpretation of § 904(f)(3) and the OFL Sourcing Rule is correct, LGI is entitled to foreign tax credits. But the IRS suggests that LGI shouldn't be able to claim credits because there's no double taxation here. That argument contravenes the facts and the law. J:COM indisputably paid about $248 million in Japanese taxes, and the Code treated LGI as if *it* had paid those taxes to Japan. *See* I.R.C. §§ 902(a), 1248. Under the IRS's interpretation of § 904(f)(3) and the regulations, LGI

will have paid taxes on its investment in J:COM to the United States *and* Japan, but cannot claim any foreign tax credits. That's double taxation. The IRS's desire to disallow foreign tax credits here isn't a license to rewrite the Code and regulations.

The Court should reverse the grant of summary judgment for the IRS and order entry of summary judgment for LGI.

## ARGUMENT

**A.    Section 904(f)(3) is silent about how to treat dispositions of covered property generating gain beyond the amount needed to recapture an OFL, authorizing Treasury to provide the answer.**

    **1.    Section 904(f)(3) governs the source and recognition treatment of dispositions of CFC stock, and the gap it leaves authorizes Treasury to promulgate rules for dispositions where gain exceeds an OFL balance.**

**a.**    As explained (Br. 14-15), the Code provides general rules for determining when income is U.S.-source and when it is foreign-source. *See* I.R.C. §§ 861 through 865. But it also provides more specific rules for particular situations. As relevant here, when a taxpayer has "sustain[ed] an overall foreign loss," I.R.C. § 904(f)(1), and then "dispose[s] of" "property which has been used predominantly without the United States in a trade or business," I.R.C. § 904(f)(3)(A), including CFC stock, I.R.C. § 904(f)(3)(D), the

- 8 -

disposition is governed by § 904(f)(3)(A). LGI Br. 41-43. By its terms, § 904(f)(3)(A) applies to dispositions, not only discrete amounts of gain. And it applies and governs the sourcing of income from a disposition "notwithstanding any other provisions of [Chapter 1 of the Code] (other than [§ 904(f)(1)])" (which explains how to recapture a taxpayer's overall foreign loss). I.R.C. § 904(f)(3)(A)(i). That "notwithstanding" language "confirms" that § 904(f)(3)(A) "applies even when it conflicts with" the general sourcing rules, *SW General*, 580 U.S. at 301, like §§ 861 through 865.

**b.**     Once it kicks in, § 904(f)(3)(A) does two important things: (1) it provides particular sourcing and recognition rules for OFL recapture, and (2) it leaves a gap for Treasury to fill by regulation as to the treatment of dispositions where there is gain beyond the OFL recapture amount.

*First*, § 904(f)(3)(A)(i) directs that the taxpayer must recognize gain and treat it as foreign-source "in an amount equal to the lesser of" the built-in gain of the property or the taxpayer's OFL account balance. LGI Br. 41-43. That's true no matter whether the transaction otherwise would be a taxable or nontaxable transaction. *See* I.R.C. § 904(f)(3)(B)(i) (disposition includes "a sale, exchange, distribution, or gift of property whether or not gain or loss is

recognized"). That's because § 904(f)(3) governs the recognition and sourcing treatment "notwithstanding" chapter 1 of the Tax Code.

*Second*, § 904(f)(3)(A) leaves a gap for Treasury to fill about the treatment of a disposition where a taxpayer's gain exceeds the taxpayer's OFL account balance. That silence doesn't mean that § 904(f)(3)(A) falls away or that other Code provisions govern. To the contrary, § 904(f)(3)(A) applies by its terms to the disposition, not just a particular amount of gain, and it expressly governs "notwithstanding any other [Code] provision." Put another way, § 904(f)(3)(A) sets a floor for the amount of gain from the disposition of covered property that a taxpayer must treat as foreign-source; it doesn't set a *limit* for how much gain a taxpayer must treat as foreign-source. Given the statute's coverage and "notwithstanding" clause, the Tax Code's rulemaking provision kicks in and directs Treasury to "prescribe all needful rules and regulations," I.R.C. § 7805(a), "to 'fill up the details' of [the] statutory scheme," *Loper Bright*, 144 S. Ct. at 2263. *See, e.g.*, *Schaffner v. Monsanto Corp.*, 113 F.4th 364, 381 n.9 (3d Cir. 2024). Treasury did just that when it prescribed rules in 26 C.F.R. § 1.904(f)-2(d)(1) for what happens when a disposition—like LGI's disposition of its J:COM stock—results in more gain than is needed to recapture an OFL account. LGI Br. 23-26, 43-44. As discussed

below, under the applicable version of § 1.904(f)-2(d)(1)(ii), all the gain is treated as foreign-source.

### 2. The IRS's counterarguments lack merit.

The IRS agrees (Br. 23, 28-29) that § 904(f)(3)(A) applies to the sale of CFC stock when a taxpayer has an OFL account balance at the time of the sale, and that it thus applies to LGI's sale of J:COM stock. The IRS also agrees (Br. 30, 37-39) that § 904(f)(3)(A) does not prescribe a specific rule for what happens when gain exceeds the amount necessary to recapture an OFL account. But in the IRS's view, § 904(f)(3)(A) ceases to apply above the OFL recapture amount, and other Code provisions—not Treasury regulations filling up § 904(f)(3)(A)'s details—determine what happens when a transaction results in gain *beyond* what is necessary to recapture an OFL account. IRS Br. 37-40. The IRS's arguments fail.

> ### a. The IRS ignores § 904(f)(3)(A)'s reach, which governs every *disposition* of covered property by an OFL accountholder, not just a specific amount of gain.

According to the IRS, § 904(f)(3)(A)'s role ends at the OFL recapture amount. That's wrong. Section 904(f) governs "in the case of any taxpayer who sustains an overall foreign loss," I.R.C. § 904(f)(1), and § 904(f)(3)(A) in

particular governs when such a taxpayer "dispose[s] of" covered property. Section 904(f)(3)(A) thus governs every *disposition* of covered property by an OFL accountholder. Accordingly, it governs no matter whether the gain is above, at, or below the amount necessary to recapture the OFL account, because it's triggered when an OFL accountholder disposes of qualifying property. And nothing in § 904(f)(3)(A) or any other Code provision says § 904(f)(3)(A) switches off above the OFL account balance.

### b.   The IRS overlooks the conflict between § 904(f)(3)(A) and Treasury's gap-filling, on the one hand, and other Code provisions, on the other.

The IRS claims that, when a taxpayer with an OFL account disposes of property and the gain recognized exceeds the OFL account balance, "other applicable Code provisions" determine how to treat the remaining gain. Br. 40, 54. In the IRS's view, § 904(f)(3)(A)(i)'s "notwithstanding" clause doesn't override other Code provisions and permit the Treasury regulations to provide the relevant rules, because there's no conflict between § 904(f)(3)(A)(i) and other Code provisions. Br. 47-52. Those arguments fail.

*First*, the IRS's interpretation of § 904(f)(3)(A)'s "notwithstanding" clause and silence about gain beyond the OFL account balance hinges on its incorrect premise that § 904(f)(3)(A) doesn't apply to such gain. As

explained, § 904(f)(3)(A)(i) governs whenever an OFL accountholder disposes of covered property, no matter whether the transaction is otherwise taxable or nontaxable, or results in gain below or exceeding the taxpayer's OFL. What's more, § 904(f)(3)(A) doesn't say that "other applicable Code provisions" provide the answer for how to treat dispositions where gain exceeds the taxpayer's OFL account balance. Congress could have added that language, or said that the taxpayer may treat gain as foreign-source income only "to the extent" of the OFL account balance. *Cf.* I.R.C. § 904(b)(2)(A). Instead, as LGI explained (Br. 43-44, 54-56), § 904(f)(3)(A)(i)'s "notwithstanding" language means otherwise applicable provisions *don't* apply. Given § 904(f)(3)(A)'s scope, its "notwithstanding" clause, its silence about the treatment of dispositions where gain exceeds the OFL balance, and Treasury's authorization to fill in the details, § 904(f)(3)(A)'s implementing regulations — not other Code provisions — govern how to treat such dispositions.

*Second*, the IRS claims (Br. 47-50) that the "notwithstanding" clause doesn't apply to gain exceeding the OFL account balance because there is no conflict on that question between § 904(f)(3)(A) and other Code provisions. That argument lacks merit. The conflict is that other Code provisions (like

- 13 -

§ 865) purport to provide sourcing rules, whereas § 904(f)(3)(A) leaves a gap for Treasury to fill by regulation and thus requires looking to Treasury regulations for the answer. Indeed, the IRS's own argument rests on this conflict, because the premise of the IRS's argument is that other Code provisions provide a different answer (treatment as U.S.-source income) from the regulations if indeed the regulations require foreign-source treatment above the OFL account balance. *See* IRS Br. 48-50. Given that clash and § 904(f)(3)(A)'s "notwithstanding" clause, § 904(f)(3)(A) and its implementing regulations provide the relevant rule, LGI Br. 43-51, "in spite of" the treatment that other Code provisions would prescribe, *SW General*, 580 U.S. at 301.

The IRS points (Br. 48) to *Brayman v. KeyPoint Government Solutions, Inc.*, 83 F.4th 823, 834 (10th Cir. 2023), to argue that where a "'notwithstanding' provision leaves something 'unsaid,'" other statutory provisions must answer the question. But *Brayman*, a contractual arbitration case involving a delegation clause, doesn't help the IRS. In *Brayman*, the "[n]otwithstanding any other language" clause carved certain disputes out from arbitration, but did not say *who*—the court or arbitrator—would decide whether a dispute was arbitrable. *Id.* But the "Arbitrator Decides Clause"—tracking basic

arbitration law principles—did. *Id.* at 833-34. In that context, where the "notwithstanding" exception from arbitration "says nothing about who decides arbitrability," the exception left "unsaid who is to interpret it," meaning the Arbitrator Decides Clause controlled. *Id.* at 834-36. Here, in contrast, § 904(f)(3)(A) *does* address the relevant topics—covered dispositions and their sourcing. Section 904(f)(3)(A) thus displaces other sourcing provisions and allows Treasury to determine how to treat dispositions of covered property where the gain exceeds a taxpayer's OFL account balance.

What's more, a "'notwithstanding' clause … confirms rather than constrains breadth." *SW General*, 580 U.S. at 302. As *SW General* makes clear, § 904(f)(3)(A) need not enumerate every potential conflict that might arise between its sourcing rules and those that Treasury might promulgate to fill the statute's gaps, on the one hand, and other provisions in the Tax Code, on the other—including the conflict that arises when a taxpayer recognizes gain that exceeds its OFL account balance. *See id.* at 301-05. No "negative inference" can be drawn from § 904(f)(3)(A)'s silence. *Id.* at 303. Rather, the "notwithstanding" clause shows that § 904(f)(3)(A)'s sourcing rules apply despite *any* conflict with another Code provision ("other than" § 904(f)(1)). And the best reading of the "notwithstanding" clause, together with

§ 904(f)(3)(A)'s application to entire covered dispositions and the statute's silence, is that Treasury may fill in the details of the statutory scheme and provide the relevant rule. That's what it did when it promulgated § 1.904(f)-2(d)(1). LGI Br. 43-44; *infra* pp. 19-23.

*Finally*, the IRS argues that "LGI acknowledged that § 904(f)(3)(A)(i) does not displace § 1248 regarding gain in excess of the OFL account balance." Br. 50. But the parties stipulated that a portion of the gain would be treated as a dividend under § 1248. App.78. That stipulation says nothing about the operation of § 904(f)(3), particularly when dividends under § 1248 are treated as foreign-source anyway. I.R.C. §§ 861(a)(2), 862(a)(2).

        **c.**    **The IRS's context and purpose arguments ignore § 904(f)(3)(A)'s terms and the broader operation and design of § 904.**

The IRS claims that other Tax Code provisions must apply to determine sourcing rules because § 904(f)(3)(A) and § 904(f)(1) together play a narrow role: limiting a taxpayer's foreign tax credit in a given year. If § 904(f)(3)(A) allows some income to be re-sourced permanently as foreign-source, the IRS says (Br. 40-43), that would *increase* a taxpayer's available foreign credit, contrary to § 904(f)(3)'s discrete role and the purpose of § 904 to limit the available foreign tax credit in a given year. As evidence that

§ 904(f)(3)(A) isn't a sourcing rule that can increase foreign tax credits, the IRS stresses (Br. 40) that § 904(f)(3) isn't located in the same sections as the general sourcing provisions, I.R.C. §§ 861 through 865. Those arguments lack merit.

*First*, § 904(f)(3)(A)'s plain terms show that the provision doesn't apply as narrowly as the IRS contends. *See* IRS Br. 37. As explained (at 8-11), § 904(f)(3)(A) governs dispositions of covered property by an OFL accountholder. And the Code permitted Treasury to promulgate the rules for how to treat dispositions where the gain exceeds the OFL balance. That's because § 904(f)(3)(A) governs the entire disposition—not just one discrete *result* of the disposition, as the IRS would have it. The consequence is that Treasury may fill in the details or Congress can change the statute—but the IRS must abide by the statutory and regulatory scheme. *See Woods Investment Co. v. Commissioner*, 85 T.C. 274, 282 (1985). The IRS's policy concerns can't justify judicial amendment of the statute or regulations. And, in fact, Treasury modified the regulations prospectively in 2012 to cap the amount of gain recharacterized as foreign-source at the amount necessary to recapture an OFL. LGI Br. 26-27, 47-49. But that change wasn't retroactive, so it doesn't apply here.

*Second*, I.R.C. § 7806(b) expressly refutes the IRS's argument that § 904(f)(3)'s location in the Tax Code implies that it's not a sourcing rule. Section 7806(b) provides that "[n]o inference, implication, or presumption of legislative construction shall be drawn or made by reason of the location or grouping of any particular section or provision or portion of this title." Section 904(f)(3)'s plain text shows that it sets out sourcing rules, and it's irrelevant that those rules aren't "locat[ed]" in the "particular section or provision" where the IRS thinks they should be codified.

*Third*, the IRS suggests that § 904 should only ever reduce a taxpayer's foreign tax credits. That's wrong. The point of § 904 is to ensure that a taxpayer can claim the *correct* amount of foreign tax credits to offset double taxation, and no more than the taxpayer would otherwise pay in U.S. tax. LGI Br. 10-12. It doesn't reduce available credits at all costs. Indeed, the IRS overlooks that § 904 sometimes increases a taxpayer's foreign tax credits. Under § 904(h)(10), for example, income is treated as foreign-source when "a treaty obligation of the United States" requires that treatment, even though that treatment would increase a taxpayer's foreign tax credit limit. In addition, § 904(g) addresses situations where a taxpayer has "an overall domestic loss," and provides that certain income be treated as foreign-

source. That, too, would increase a taxpayer's foreign-source income and, in turn, its foreign tax credit limit.

### B.  The OFL Sourcing Rule treats gain from the disposition of property as foreign-source, even when the gain exceeds the OFL account balance.

#### 1.  The OFL Sourcing Rule's plain text directs that, when a taxpayer with an OFL account balance disposes of covered property, the gain is foreign-source.

As explained (Br. 44-47), Treasury filled the gap in § 904(f)(3) with the OFL Sourcing Rule, § 1.904(f)-2(d)(1)(ii). The applicable version of § 1.904(f)-2(d)(1) (emphasis added) directs that, when § 904(f)(3) applies to a disposition, three results follow: "(i) gain will be recognized on the disposition of such property, (ii) *such gain will be treated as foreign source income* … , and (iii) the applicable overall foreign loss account shall be recaptured" as provided in the regulations. "Such gain" refers to *all* the gain that is "recognized on the disposition," which means *all* the gain is treated as foreign-source—including the amount exceeding what is necessary to recapture an OFL account. Here, LGI recognized gain on its sale of J:COM stock, and under § 1.904(f)-2(d)(1)(ii), all that gain is foreign-source. LGI Br. 51-53. The regulatory text is clear, and the IRS must follow its own regulations. *See Energy West Mining Co. v. Lyle ex rel. Lyle*, 929 F.3d 1202, 1209 (10th Cir. 2019).

## 2. Statutory and regulatory history confirm that, when a taxpayer with an OFL account balance disposes of covered property, the gain is treated as foreign-source.

Statutory and regulatory history confirm that the OFL Sourcing Rule treats gain beyond the OFL balance as foreign-source income. When Treasury first promulgated § 1.904(f)-2(d) in 1987, the rule was that "such gain"—*i.e.*, all the gain—from the disposition of covered property was foreign-source. LGI Br. 47-49. Even after Congress enacted § 904(f)(3)(D) so that § 904(f)(3)'s gain recognition and sourcing rules apply to dispositions of CFC stock, Treasury issued temporary regulations in 2007 and kept the same rule in place. Treasury thus confirmed its understanding that "gain will be recognized on the disposition of such property," 26 C.F.R. § 1.904(f)-2(d)(1)(i), *and* that "such gain will be treated as foreign source," *id.* § 1.904(f)-2(d)(1)(ii). And when Congress amended the statute without changing the regulations' operation, it ratified the understanding that § 904(f)(3) leaves a gap for Treasury to fill by regulation as to the source and recognition treatment for transactions where gain exceeds the taxpayer's OFL account balance. *See Helvering v. R.J. Reynolds Tobacco Co.*, 306 U.S. 110, 114-15 (1939); *cf. Lorillard v. Pons*, 434 U.S. 575, 580–81 (1978).

In 2012, however, Treasury changed the rule. It decided to cap the amount of gain recharacterized as foreign-source at the amount necessary to recapture an OFL account. In particular, Treasury amended the regulation to provide that "[t]he amount of gain treated as foreign source and the amount of overall foreign loss recaptured shall be the lesser of the balance in the overall foreign loss account or the full amount of the gain recognized on the disposition." 26 C.F.R. § 1.904(f)-2(d)(3)(ii) (2014); LGI Br. 26-27. In doing so, Treasury removed the critical language directing that "such gain will be treated as foreign source income." The upshot is that the amended regulation recognizes all the gain in transactions that, outside of § 904(f)(3)(A), would be taxable (like the J:COM sale), but treats only the portion of the gain necessary to recapture the OFL as foreign-source. But because the new regulation has only prospective effect, the earlier rule—that the gain would be foreign-source—applies to the J:COM sale.

### 3. Treating the income from a covered disposition as foreign-source aligns with the tax policy reflected in other Code provisions and avoids double taxation.

As explained (Br. 49-51), treating the income beyond the amount necessary to recapture an OFL account makes sense and is consistent with the policy reflected in other sourcing provisions in the Code. For example,

§ 865(f) provides that gain from the sale of foreign affiliate stock that "occurs in a foreign country" where the affiliate does business is foreign-source. Although not technically applicable here, that provision aligns with treating the gain from the J:COM sale as foreign-source, too, because the sale occurred in Japan, where J:COM conducted business. LGI Br. 49-50.

Treating the gain beyond the amount necessary to recapture an OFL account as foreign-source also makes sense, because the gain from the disposition is treated "as a surrogate for the income that would have been generated by the property and recharacterized under the general recapture rules of section 904(f)(1) if the property had been retained." IRS National Office Field Service Advice (FSA) Memorandum No. 200041004, at 6 (Oct. 13, 2000), https://www.irs.gov/pub/irs-wd/0041004.pdf. The gain thus represented "the present value of [J:COM's] projected profit stream." *Eateries, Inc. v. J.R. Simplot Co.*, 346 F.3d 1225, 1236 (10th Cir. 2003). Had the property (here, the J:COM stock) been retained, it would have generated foreign-source income; the income would have been used to recapture LGI's OFL account, I.R.C. § 904(f)(1); 26 C.F.R. § 1.904(f)-2(a); and LGI then could have claimed foreign tax credits, I.R.C. § 904(a). Section 904(f)(3) simply accelerates that process at the time of the disposition. And § 1.904(f)-2(d)(1)(ii)

reflects the fact that all the income from the property would be treated as foreign-source anyway. LGI Br. 50-51.

### 4.    The IRS's counterarguments fail.

The IRS claims that the applicable version of § 1.904(f)-2(d)(1) doesn't require gain beyond the amount necessary to recapture an OFL account to be considered foreign-source. The IRS is wrong.

### a.    The IRS ties its interpretation of § 1.904(f)-2(d)(1) to its incorrect reading of § 904(f)(3)(A).

The IRS says that § 1.904(f)-2(d)(1) doesn't address the treatment of gain beyond the amount necessary to recapture an OFL account "because the regulation (like the statute) reaches only gain necessary to recapture an OFL account balance." IRS Br. 52; *see* IRS Br. 54-67. The IRS gets there by arguing that "[t]he amount of the gain [referenced in the regulation] is specified in the statute itself," that "the regulation does not purport to change the statute's reach," and that the regulation "implements a statute that explicitly limits the amount of gain at issue." Br. 54-55, 57-58. Put simply, the IRS's view of how the regulations work turns entirely on its incorrect interpretation of § 904(f)(3).

As explained (at 11-19), however, the IRS's interpretation of § 904(f)(3) is wrong. Section 904(f)(3)(A) governs dispositions of covered property where the taxpayer has an OFL account balance, and that provision, though governing "notwithstanding any other provision," leaves a gap for Treasury to fill as to the treatment of transactions where the gain exceeds the tax-payer's OFL account balance. Treasury did just that when it promulgated the OFL Sourcing Rule and required gain from the disposition of covered property to be treated as foreign-source.

### b. "Such gain" in § 1.904(f)-2(d)(1)(ii) refers to all the gain recognized in a § 904(f)(3) disposition.

The IRS contends that § 1.904(f)-2(d)(1)(ii) doesn't require the gain to be treated as foreign-source, because it refers only to "such gain" and doesn't say "all gain will be treated as foreign source." Br. 57. But the IRS—not LGI—reads the regulation myopically. Section 1.904(f)-2(d)(1) says that when a taxpayer disposes of covered property: "(i) gain will be recognized on the disposition of such property, (ii) such gain will be treated as foreign source income subject to the same limitation as the income the property generated, and (iii) the applicable overall foreign loss account shall be recaptured" as provided in the regulations. Context makes clear that "such gain" refers to

the "gain … recognized on the disposition." *See King v. Burwell*, 576 U.S. 473, 487 (2015); *Littlefield v. Mashpee Wampanoag Indian Tribe*, 951 F.3d 30, 37 (1st Cir. 2020). Here, the "gain [that LGI] recognized on the disposition of [its J:COM stock" *exceeded* the amount of its OFL balance. And "such gain" — meaning the amount necessary to recapture the OFL account *and* the remaining amount — "will be treated as foreign source income." 26 C.F.R. § 1.904(f)-2(d)(1)(ii).

> **c.     Contrary to the IRS's argument, statutory and regulatory context show that the gain is treated as foreign-source income under § 1.904(f)-2(d)(1).**

*i.*     The IRS contends (Br. 57-59) that § 1.904(f)-2(d)(4), which addresses dispositions where "gain would not otherwise be recognized," shows that the regulations treat *only* the amount of gain needed to recapture the OFL account as foreign-source. The IRS says that under § 1.904(f)-2(d)(4), "the amount of foreign-source gain recognized under Reg. § 1.904(f)-2(d)(1) is limited to the 'lesser' of the OFL account balance or the gain on the disposition; any gain greater than that balance remains subject to the Code's nonrecognition rules." Br. 58-59. Thus, in the IRS's view, § 1.904(f)-2(d)(1) cannot require treating *all* gain on a disposition as foreign-source taxable

income, because under the regulations, gain in a nonrecognition transaction is recognized only up to the OFL account.

That argument fails.

*First*, nothing in § 1.904(f)-2(d)(4) limits the amount of gain that can be treated as foreign-source to the OFL account balance. In fact, that's the change Treasury made in 2012, confirming that it wasn't the rule before. *Supra* p. 21. And while § 1.904(f)-2(d)(1) is a sourcing rule, § 1.904(f)-2(d)(2), (3), and (4) set forth particular recapture mechanisms. None limits the sourcing rule in § 1.904(f)-2(d)(1).

*Second*, § 904(f)(3)'s silence where gain exceeds the OFL account balance authorizes Treasury to determine gain and sourcing treatment for all dispositions of covered property, "whether or not gain or loss is recognized" under other Code provisions. I.R.C. § 904(f)(3)(B)(i). Filling the gap, Treasury expressly addressed all dispositions, "whether or not gain … is recognized under other provisions of the Code." 26 C.F.R. § 1.904(f)-2(d)(5)(i). For dispositions of covered property "where gain is recognized" under other Code provisions, *id.* § 1.904(f)-2(d)(3) (citing *id.* § 1.904(f)-2(d)(1)), Treasury's "general" rule is that "gain will be recognized on the disposition," *id.* § 1.904(f)-2(d)(1). But for transactions where "gain would not

otherwise be recognized" under other Code provisions, § 1.904(f)-2(d)(4) caps gain recognition and foreign-source treatment at the OFL balance.

The IRS nonetheless protests that "§ 1.904(f)-2(d)(1) does not address the *amount* of gain to which § 904(f)(3) applies." Br. 58. That's wrong. For starters, *§ 904(f)(3)* applies to *all* gain because it applies to the entirety of covered dispositions. Further, "gain" under § 1.904(f)-2(d)(1) means *all* gain precisely because the regulations define the amount of gain to be afforded foreign-source treatment by reference to other Code provisions. Where other provisions, like § 1001, *would* recognize gain, all the gain that would be recognized "will be recognized" and "treated as foreign source income." 26 C.F.R. § 1.904(f)-2(d)(1); *see also id.* § 1.904(f)-2(d)(7), Example 1 (using § 1001 to determine amount of gain). Indeed, in referring to "gain … recognized irrespective of section 904(f)(3)," § 1.904(f)-2(d)(3) makes clear that the regulations recognize the same amount of gain that other Code provisions would otherwise require a taxpayer to recognize. LGI Br. 25. Conversely, for dispositions where gain *wouldn't* be recognized under other provisions of the Code—the IRS gives a § 351 exchange as an example—§ 1.904(f)-2(d)(4) caps gain recognition and foreign-source treatment at the OFL recapture amount, showing that Treasury specified the amount of gain to be recognized when

it wanted to—but that otherwise, *all* gain is recognized. Simply put, the regulations fill the gap in § 904(f)(3) by providing for the amount of gain recognized and treated as foreign-source by reference to the treatment the Code would otherwise provide.

*ii.*     The IRS Field Service Memorandum doesn't say otherwise. *See* IRS Br. 60-62. The memorandum sets forth the mechanics for recapturing an OFL account balance. IRS FSA Memorandum No. 200041004, at 7-9. But it doesn't purport to dictate the *source* of gain beyond the OFL account balance.

*iii.*     What's more, treating gain from a covered disposition where gain exceeds the OFL account balance as foreign-source aligns with § 904(f)(3)(D). That provision says that § 904(f)(3) applies to a disposition of CFC stock "in the same manner as if it were a disposition of property" used in a foreign trade or business. When the taxpayer does not have an OFL account balance, dispositions of foreign trade or business property often result in foreign-source treatment. *See* I.R.C. § 865(e). Treating gain from a disposition of CFC stock when a taxpayer has an OFL account balance as foreign-source simply means treating that disposition "in the same manner as if it were a disposition of property" used in a foreign trade or business.

**C.  Under I.R.C. § 904(f)(3) and the OFL Sourcing Rule, LGI's gain from the sale of J:COM stock—including the gain beyond the amount necessary to recapture LGI's OFL account—is treated as foreign-source.**

**1.  LGI's gain from the sale of J:COM stock is treated as foreign-source.**

There is no dispute that § 904(f)(3)(A) applies to the sale of CFC stock when a taxpayer has an OFL account balance at the time of the sale, and that it thus applies to LGI's sale of J:COM stock. IRS Br. 23, 28-29. When LGI sold its interest in J:COM in 2010, LGI owned more than 50% of stock in J:COM (a CFC) and LGI had an OFL account balance. LGI Br. 27-28. LGI's balance was recaptured, and although § 904(f)(3) leaves a gap about how to treat the remaining gain, the applicable version of § 1.904(f)-2(d)(1) directed that the remaining gain from the disposition be treated as foreign-source. *Supra* pp. 19-23; LGI Br. 44-52. That foreign-source income permits LGI to claim a foreign tax credit.

**2.  The government's counterarguments are meritless.**

The IRS cannot dispute that, if LGI's interpretation of § 904(f)(3) and the OFL Sourcing Rule is correct, LGI is entitled to a foreign tax credit. The IRS nonetheless suggests (Br. 31-36) that LGI shouldn't be able to claim foreign tax credits because there is no double taxation here. But under the Code,

- 29 -

LGI *did* pay significant taxes to Japan, and the IRS's reading of § 904(f)(3) would thus result in double taxation.

a.    LGI indirectly paid substantial taxes to Japan on its investment in J:COM. As the IRS acknowledges (Br. 19-21), J:COM paid Japanese income tax, and LGI was "deemed to have paid" about $248 million of that tax based on the J:COM sale because LGI owned at least 10 percent of J:COM. *See* I.R.C. § 902(a) (effective during the J:COM transaction; repealed by the Tax Cuts and Job Act of 2017, Pub. L. No. 115-97, 131 Stat. 2054, 2221); I.R.C. § 1248. That deeming reflects LGI's responsibility for its share of J:COM's Japanese tax burden. Indeed, the Tax Code treated LGI as having paid a portion of J:COM's foreign taxes precisely because "U.S. corporations usually conduct their foreign operations through foreign subsidiaries," and "the foreign tax credit would not sufficiently reduce international double taxation if it did not extend to income taxes paid by such subsidiaries." Boris I. Bittker & James S. Eustice, *Federal Income Taxation of Corporations & Shareholders*, § 15.21[5][a], Westlaw (updated November 2024). Consequently, if the IRS taxes LGI's gain from selling its interest in J:COM, then the IRS *and* Japan will have taxed LGI's investment in J:COM. That would be double

taxation—the risk of which Congress designed the foreign tax credit regime to alleviate. *Burnet v. Chicago Portrait Co.*, 285 U.S. 1, 7 (1932); LGI Br. 10-14.

**b.** Regardless, policy concerns can't override statutory and regulatory text. *See, e.g.*, *Gitlitz v. Commissioner*, 531 U.S. 206, 219-20 (2001); *United States v. Morgan*, 922 F.2d 1495, 1496-97 (10th Cir. 1991). Legislative choices often involve "imperfect" line-drawing. *Heller v. Doe*, 509 U.S. 312, 320-21 (1999). But when plain text provides "for a particular credit, … the credit is allowable." *Tax & Accounting Software Corp.*, 301 F.3d at 1261; *see Hanover Bank v. Commissioner*, 369 U.S. 672, 687 (1962).

## CONCLUSION

The Court should reverse the grant of summary judgment for the IRS and order entry of summary judgment for LGI.


Dated: November 21, 2024                  Respectfully submitted,

                                          */s/ Parker Rider-Longmaid*

                                          Shay Dvoretzky
                                          Rajiv Madan
                                          Christopher Bowers
                                          Nathan Wacker
                                          Parker Rider-Longmaid
                                          Sylvia O. Tsakos
                                          SKADDEN, ARPS, SLATE,
                                            MEAGHER & FLOM LLP
                                          1440 New York Ave., NW
                                          Washington, DC 20005
                                          Telephone: 202-371-7000
                                          parker.rider-longmaid@skadden.com

                                          *Counsel for Petitioner-Appellant*
                                            *Liberty Global, Inc.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because, as calculated by Microsoft Word, it contains 6,495 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Circuit Rule 32(B). I also certify that this brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) and Circuit Rule 32(A) because it has been prepared in a proportionally spaced typeface using Microsoft Word in a 14-point Book Antiqua font.


Dated: November 21, 2024          Respectfully submitted,

                                  */s/ Parker Rider-Longmaid*
                                  Parker Rider-Longmaid
                                  SKADDEN, ARPS, SLATE,
                                    MEAGHER & FLOM LLP
                                  1440 New York Ave., NW
                                  Washington, DC 20005
                                  202-371-7000
                                  parker.rider-longmaid@skadden.com

                                  *Counsel for Petitioner-Appellant*
                                    *Liberty Global, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2024, I electronically filed this brief with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: November 21, 2024          Respectfully submitted,

/s/ Parker Rider-Longmaid
Parker Rider-Longmaid
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
202-371-7000
parker.rider-longmaid@skadden.com

Counsel for Petitioner-Appellant
  Liberty Global, Inc.